# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons,

*Plaintiffs-Appellants*

*v.*

PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
For the District of Maryland, Case No. 8:22-cv-01768

## JOINT APPENDIX
## VOLUME II of IV (JA528–1210)

Jeremy D. Cutting
Sumayya Saleh
Jeffrey D. Stein
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
cody@civilrightscorps.org

Elizabeth R. Cruikshank
Mary B. McCord
William Powell
Seth Wayne
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY
   LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
erc56@georgetown.edu

*Counsel for Plaintiffs-Appellants*

Shelley L. Johnson
Andrew J. Murray
PRINCE GEORGE'S COUNTY
   OFFICE OF LAW
1301 McCormick Dr., Suite 4100
Largo, Maryland 20774
sljohnson@co.pg.md.us

*Counsel for County-Appellees*

Kathryn Elizabeth Hummel
Kevin M. Cox
James O. Spiker IV
OFFICE OF THE ATTORNEY
   GENERAL OF MARYLAND
200 St Paul Pl., 20th Floor
Baltimore, MD 21202
khummel@oag.state.md.us

*Counsel for Judge-Appellees*

(listing of counsel continued on next page)

Howard M. Shapiro
Matthew T. Martens
Sonika Data
Britany Riley-Swanbeck
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
howard.shapiro@wilmerhale.com

Robert L. Boone
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
robert.boone@wilmerhale.com

*Additional counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

## Volume I

Page

Docket Entries re Case No. 8:22-cv-01768...........................................................JA1

Doc. 1: Complaint, filed July 19, 2022..................................................................JA20

Exhibits to Plaintiffs' Motion for Preliminary Injunction, filed July 19, 2022

    Doc. 2-4: Declaration of Peter Im ............................................... JA70
    Doc. 2-5: Declaration of Allison Heldreth ................................. JA82
    Doc. 2-6: Case Documents of Leslie Sharp ................................ JA94
    Doc. 2-11: Declaration of Christina Meiring.............................. JA111
    Doc. 2-15: Pretrial Division Response to Maryland Public
        Information Act Request (May 2022) ................................. JA119
    Doc. 2-16: Pretrial Division Response to Maryland Public
        Information Act Request (March 2021).............................. JA130
    Doc. 2-22: Declaration of Jeffrey Campbell and Exhibit A ...................... JA141
    Doc. 2-23: Declaration of Brandon Ruben and Exhibit A ........................ JA162
    Doc. 2-24: Declaration of Maria Hughes..................................... JA177
    Doc. 2-25: Declaration of Claire Glenn (2022) .......................... JA181
    Doc. 2-31: Declaration of Miramba Williams ........................... JA190
    Doc. 2-33: Declaration of Claire Glenn (2020) .......................... JA193
    Doc. 2-35: Case Documents of Donnell Davis ........................... JA197
    Doc. 2-36: Case Documents of Robert Frazier ........................... JA213
    Doc. 2-38: Case Documents of Anibal Hernandez ..................... JA224
    Doc. 2-39: Declaration of Christopher Butler.............................. JA226
    Doc. 2-43: Declaration of Allie Horwitz...................................... JA228
    Doc. 2-48: Declaration of Elmer Laguan-Salinas ...................... JA233
    Doc. 2-49: Declaration of Adrienne Worthington ...................... JA248

Doc. 59: County Defendants' Notice Regarding Named Plaintiffs,
    filed August 3, 2022 ........................................................................JA256

    Doc. 59-1: Robert Frazier Court Records ................................... JA264
    Doc. 59-2: Anibal Hernandez Court Records ............................. JA274
    Doc. 59-3: D.P. Court Records ................................................... JA284
    Doc. 59-4: Christopher Butler Court Records ............................ JA293
    Doc. 59-5: Miramba Williams Court Records ............................ JA296
    Doc. 59-6: Donnell Davis Court Records ................................... JA307

Doc. 59-7: Leslie Sharp Court Records ..................................................JA317

Doc. 59-8: Elmer Laguan-Salinas Court Records.....................................JA334

Doc. 59-9: Adrienne Worthington Court Records ....................................JA352

Doc. 60: County Defendants' Corrected Notice Regarding Named Plaintiffs,
    filed August 4, 2022 .......................................................................JA370

Exhibits to Defendants' Motion to Dismiss and Opposition to Motion for Preliminary
    Injunction, filed September 26, 2022

    Doc. 64-1: County Defendants' Memorandum of Law in Support .........JA378

    Doc. 64-2: Affidavit of Jeffery Logan ....................................................JA415

    Doc. 64-3: Pretrial PowerPoint ..............................................................JA420

    Doc. 64-4: Levels of Pretrial Supervision ..............................................JA428

    Doc. 64-5: Pretrial Policy Manual ..........................................................JA437

    Doc. 64-6: Notification to Court .............................................................JA458

Doc. 65: Affidavit of Corenne Labbé..................................................................JA461

Doc. 66: Judge Defendants' Motion to Dismiss...................................................JA463

    Doc. 66-3: Plaintiffs' Status – Summary Chart ......................................JA465

    Doc. 66-4: Affidavit of Jeffrey Logan ....................................................JA467

    Doc. 66-5: Robert Frazier's Case Docket (District Court) ......................JA473

    Doc. 66-6: Robert Frazier's Case Docket (Circuit Court) .......................JA475

    Doc. 66-7: Anibal Hernandez's Case Docket (District Court) ................JA479

    Doc. 66-8: Christopher Butler's Case Docket (District Court)................JA482

    Doc. 66-9: Christopher Butler's Case Docket (Circuit Court)................JA485

    Doc. 66-10: Miramba Williams's Case Docket (District Court) .............JA491

    Doc. 66-11: Elmer Laguan-Salinas's Case Docket (District Court)........JA494

    Doc. 66-12: Elmer Laguan-Salinas's Case Docket (Circuit Court)..........JA497

    Doc. 66-13: Transcript, Telephone Conference,
        August 17, 2022 (excerpts) ..............................................................JA501

Exhibit to County Defendants' Supplement to their Motion to Dismiss,
    filed October 7, 2022

    Doc. 69-1: Affidavit of Guy Merritt.......................................................JA517

Exhibits to Judge Defendants' Supplement to their Motion to Dismiss,
    filed October 7, 2022

Doc. 70-1: Affidavit of Guy Merritt.........................................JA518
Doc. 70-2: Plaintiffs' Status – Summary Chart ........................JA520

Exhibit to Plaintiffs' Reply in Support of Their Motion for Preliminary Injunction, filed October 10, 2022

Doc. 72-4: D. Owens Declaration ...........................................JA522

Doc. 80: Order Granting Motion to Dismiss for Lack of Jurisdiction, filed October 25, 2022 ....................................................................JA526

## Volume II

Exhibits to Plaintiffs' Notice of Filing Court Records, filed November 24, 2022

Doc. 83-1: Robert Frazier Court Records  ................................JA528
Doc. 83-2: Anibal Hernandez Court Records  ..........................JA600
Doc. 83-4: Christopher Butler Court Records ..........................JA616
Doc. 83-5: Miramba Williams Court Records  .........................JA721
Doc. 83-6: Elmer Laguan-Salinas Court Records ....................JA728
Doc. 83-7: Donnell Davis Court Records  ................................JA754
Doc. 83-8: Leslie Sharp Court Records  ..................................JA769
Doc. 83-9: Adrienne Worthington Court Records  ...................JA782

Doc. 85: Plaintiffs' Supplemental Notice of Filing Court Records, filed December 16, 2022...............................................................JA805

Doc. 85-1: Robert Frazier Supplemental Case Documents .....................JA818
Doc. 85-2: Anibal Hernandez Supplemental Case Documents ................JA823
Doc. 85-3: Miramba Williams Supplemental Case Documents ...............JA894
Doc. 85-4: Elmer Laguan-Salinas Supplemental Case Documents..........JA927
Doc. 85-5: Donnell Davis Supplemental Case Documents .....................JA985
Doc. 85-6: Leslie Sharp Supplemental Case Documents  ......................JA1017
Doc. 85-7: Adrienne Worthington Supplemental Case Documents .......JA1043

Doc. 87: Plaintiffs' Second Supplemental Notice of Filing Court Records and Response to Defendants' Letter, filed January 12, 2023 .....................JA1082

Doc. 87-3: Christopher Butler Hearing Transcript, October 28, 2021 ..............................................................JA1141

Doc. 87-4: Leslie Sharp Hearing Transcript, June 14, 2021 ..................JA1167

Doc. 90: Memorandum Opinion on Defendants' Motions to Dismiss .............JA1184

Doc. 91: Order on Defendants' Motions to Dismiss ........................JA1209

### Volume III

Doc. 92: Plaintiffs' Third Supplemental Notice of Filing Court Record, filed
February 1, 2023 .......................................................JA1211

    Doc. 92-1: Christopher Butler Supplemental Case Documents..............JA1223
    Doc. 92-2: Robert Frazier Transcript of Hearing, May 31, 2022 ..........JA1228

Doc. 97-2: Plaintiffs' Motion for Reconsideration Under Rule 54(b) .............JA1291

Exhibits to Judge Defendants' Motion for Clarification and Reconsideration, filed
February 21, 2023

    Doc. 98-1: Plaintiffs' Status Updates......................................JA1293
    Doc. 98-2: Miramba Williams's Case Docket (Circuit Court) ..............JA1294
    Doc. 98-3: Christopher Butler Trial Assignment ...................JA1298
    Doc. 98-4: Miramba Williams Bail Order ...........................JA1300

Doc. 104: Order Regarding Class Certification, Motions for Reconsideration,
Motion for Preliminary Injunction, filed March 3, 2023 ...........................JA1301

Doc. 108: Order Denying Motion for Preliminary Injunction,
filed March 14, 2023....................................................JA1303

Exhibit to Judge Defendants' Reply in Support of Motion for Clarification and
Reconsideration, filed March 27, 2023

    Doc. 112-1: Plaintiffs' Status Updates....................................JA1304

Doc. 118: Correspondence re: Letter to Hon. Peter J. Messitte,
filed April 7, 2023, with Attachments A & B ............................JA1307

Exhibit to County's Status Report, filed April 28, 2023

Doc. 124-1: Revised Pretrial Release Level 4 SOP ...............................JA1312

Doc. 124-2: Pretrial Release Document...................................................JA1326

Doc. 124-3: Response to Appendix A Questions...................................JA1330

Doc. 128: Memorandum Opinion on Motions for Reconsideration ................JA1333

Doc. 129: Order on Motions for Reconsideration ..............................................JA1344

Doc. 137: Memorandum Order ........................................................................JA1346

Doc. 143: Memorandum Opinion Denying Plaintiff's Motion for
Partial Judgment or for Certification or Partial Appeal .............................JA1347

Doc. 144: Order Denying Plaintiff's Motion for Partial Judgment
or for Certification or Partial Appeal .........................................................JA1352

Doc. 147: Judge Defendants' Notice, excerpts .................................................JA1354

Doc. 149: Scheduling Order ............................................................................JA1358

Doc. 151: County Defendant's Answer.............................................................JA1363

Doc. 153: Judge Defendants' Answer, excerpts.................................................JA1381

Doc. 156: Memorandum Opinion Denying Plaintiffs' Motion
for Preliminary Injunction, filed November 22, 2023 ................................JA1385

Doc. 157: Order Denying Plaintiffs' Motion for Preliminary Injunction
and Setting Hearing ....................................................................................JA1395

Doc. 170-1: Transcript of Status Conference Held on 12/20/23 .......................JA1396

Doc. 173: County Defendant's Motion for Judgment on the Pleadings ...........JA1421

Doc. 173-1: Memorandum of Law in Support.......................................JA1423

Doc. 174: Judge Defendants' Motion for Judgment on the Pleadings..............JA1435

Doc. 174-1: Memorandum of Law in Support.......................................JA1437

Doc. 175: Judge Defendants' Motion to Quash ................................JA1456

Doc. 180: Order Granting Motion to Stay Discovery ......................JA1458

Exhibit to County Defendant's Notice, filed January 30, 2024

 Doc. 183-1: Butler Sentencing Docs.......................................JA1460

Doc. 184: Memorandum Regarding Deadlines ................................JA1462

Doc. 185: Plaintiffs' Opposition to Judges' Motion to Quash ........................JA1463

 Doc. 185-1: Plaintiffs' First Interrogatories to Judge Defendants..........JA1489

Doc. 211: Memorandum Opinion Granting Motion to Quash and Motions for
Judgment on the Pleadings .........................................................JA1498

Doc. 212: Order Granting Motion to Quash and Motions for
Judgment on the Pleadings .........................................................JA1537

Doc. 213: Notice of Appeal ...........................................................JA1539

**Volume IV—Sealed**

Exhibit to Plaintiffs' Notice of Filing Court Records, filed November 24, 2022

 Doc. 84: D.P. Court Records [FILED UNDER SEAL] ........................JA1541

# Exhibit A
# Robert Frazier
# Case Documents

BM 40

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY
<u>PRETRIAL INTAKE FACT SHEET</u>

STATE OF MARYLAND
VS.
<u>Robert Sylvester Frazier</u>

ID NO.: <u>051950</u>
CASE NO.: <u>3E00714640</u>
CHARGE: <u>Handgun in Vehicle</u>
TOTAL BOND: <u>$ 0.00</u>

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: _____
   <u>Not to contact or harass victim. Not to enter or be near the location of incident.</u>

2) AKA's: <u>Jamel Evan; Roberts Frazier; Roberts Frasier; Tyrone Hart</u>

3) Detainers: <u>1) VA, 2019-102110121, Eluding, 10/28/19, Surrounding State Only</u>

4) Also In Jail On: _____

5) PreTrial Release: _____

6) P&P Information: <u>1) Mont Co., Probation, 0D00115738, UUV, 2/28/02, Closed, 8/14/03, Pending</u>
   <u>Warrant Service, Spady, Forestville</u>

7) Residence: <u>Unable to Interview</u>                    Employment: <u>Unable to Interview</u>

   Length: _____                            Length: _____
   Tel. #: ( )_____                         Position: _____
   Lives With: _____                        Can S/he Return: _____
   Verified By: _____                       Verified By: _____

8) COMMENTS: _____

   <u>Pretrial Investigation unable to contact victim - no number.</u>

TOTAL FTA's: CR <u>1</u> /MV <u>0</u>    TOTAL CONTEMPTS: <u>0</u>    DRUG TEST: _____
Pending: _____                   NCIC: _____
_____                            <u>Mont Co., MV/Unlawful Taking 1/28/02 (G)</u>
_____                            <u>5m + 1y 5m Probation</u>
Prior: _____                     <u>DC Threat 8/19/98 (ND)</u>
   <u>No Prior Local Data Found</u>            <u>DCUSM Robbery 7/19/00 (ND)</u>
_____                            <u>DCUSM Conspiracy 7/6/01 (G) 4y</u>
_____                            <u>DC UUV 9/12/02 (ND)</u>                    (1/2)
_____                            LEVEL: 1  2  3  4   DM/CM <u>0</u>       None
_____                            CONDITIONS: _____
_____

Investigator: <u>K. Brown</u>                   Date: <u>05/29/22</u>

Distribution:  White: Judge   Green: Computer Work   Yellow: State's Attorney   Pink: File Copy   Green: Public Defender

PGC Form 3088 (Rev. 9/13)

**JA529**

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND                    CASE NO.: 3E00714640
          VS.

Robert Sylvester Frazier

## PRETRIAL INTAKE FACT SHEET (continued)

PRIOR: _____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

                                        _____

NCIC: _____    _____

DC UUV 3/26/04 (ND)

DC Robbery 10/4/05 (G) 120d

DC Escape- Parole Violation 6/1/16 (ND)    _____

DC Parole 6/2/16 (ND)

DC Possess of Drug Paraphernalia 8/6/19 (ND)    _____

DC Assault on a Police Off. 10/24/19 (G) 6m + 1y

Probation                                _____

COMMENTS: _____

_____

_____

_____

_____

_____

_____

_____

P.G.C. FORM #3088A                    **JA530**

6/28/22
261
845

IN THE DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND                          :
                                           :
        v.                     2022 JUN -P  A  11: 22    3E00714640
                                           :
ROBERT FRAZIER                             :
                                           :

---

## MOTION FOR MODIFICATION OF PRETRIAL RELEASE CONDITIONS AND REQUEST FOR EVIDENTIARY HEARING

COMES NOW defendant, Robert Frazier, by and through counsel, and moves this Honorable Court to set a bond review hearing in the above-captioned matter.  In support of this motion, Mr. Frazier states the following:

### FACTUAL BACKGROUND

1. Mr. Frazier is charged with carrying a handgun in a motor vehicle and related charges in the above captioned matter.

2. Mr. Frazier was initially held without bond by the Commissioner on May 29, 2022, and had a bond hearing on May 31, 2021, where the Court continued to hold him without bond, but authorized pre-trial release at Level 4. Private home detention was not authorized.

3. There has been a significant change of circumstances warranting a change in Mr. Frazier's bond conditions. Specifically, undersigned counsel received news on June 2, 2022, that Mr. Frazier's mother passed away the morning of June 2, 2022, with the funeral to follow shortly. If Mr. Frazier is not released from the Prince George's County jail, he may miss his mother's funeral.

4. Further, undersigned counsel learned that Mr. Frazier is currently in the midst of a multiple-stage dental surgery. On information and belief, he currently requires antibiotic mouthwash as prescribed by his dentist to avoid infection, which he has not been able to receive at the jail.

WHEREFORE, Mr. Frazier respectfully asks this Honorable Court: To issue an <u>unsecured bond</u> or set a bond hearing in this matter for the earliest available date and to grant such other and further relief as the Court deems appropriate.

Please contact Mr. Logan to arrange a private viewing & have Dr. Hernandez verify th. prescribed mouthwash is unavailable

Robert W. Hoffman Jr.
MD# _____ 6 - 2022

1

IN THE DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

| STATE OF MARYLAND | : | |
| | : | |
| v. | : | 3E00714640 |
| | : | |
| ROBERT FRAZIER | : | |

_____

### MOTION FOR MODIFICATION OF PRETRIAL RELEASE CONDITIONS

  The defendant Robert Frazier, through counsel, APD Jeff Campbell, moves this Honorable Court to set a bond review hearing in the above-captioned matter.  Mr. Frazier states:

  1. Mr. Frazier is charged with illegal possession of a handgun, PS 5-133(c), and related misdemeanor charges.  His preliminary hearing is scheduled for June 28.

  2. On May 31, Mr. Frazier appeared for bond review.  Applying Rule 4-216.1, Judge Bereano determined that there were release conditions sufficient to reasonably assure the safety of the community and the appearance of the defendant.  Judge Bereano determined that the appropriate condition was electronic monitoring, and therefore authorized Mr. Frazier's release on Pretrial Level IV.

  3. As everyone knew at the time of the hearing, Mr. Frazier's pretrial sheet reflected a detainer from Virginia for "eluding".

  4. Pretrial will not release Mr. Frazier because of this detainer.

  5. After contacting the Arlington County district court, circuit court, and police department warrants desk, I have been able to determine that this is an unserved arrest warrant from a traffic violation in October 2019.  It is not an open court case yet and does not stem from an FTA.  Because of this status, the only way for Mr. Frazier to deal with this warrant is to be released to the detainer and appear before a magistrate in Virginia.

  6. As Judge Bereano determined, Mr. Frazier can be safely released on electronic monitoring.  In order to make that finding functional, Mr. Frazier requests that his bond be modified to an unsecured bond with a condition of beginning electronic monitoring upon his release from Virginia.

Respectfully submitted,

*/s/  Jeff Campbell*
Jeff Campbell
Assistant Public Defender
14735 Main St Ste. 272B
CPF 200804005
(301) 327-0717
jeffreyj.campbell@maryland.gov


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of June, 2022, a copy of the foregoing motion was hand-delivered, via the District Court Clerk's Office, to the following:

Office of the State's Attorney
Prince George's County, Maryland


*/s/  Jeff Campbell*
Jeff Campbell
Assistant Public Defender
14735 Main St Ste 272B
(301) 327-0717
jeffreyj.campbell@maryland.gov

2

**JA533**

**IN THE DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY**

| | | |
|---|---|---|
| **STATE OF MARYLAND** | **:** | |
| | **:** | |
| **v.** | **:** | **3E00714640** |
| | **:** | |
| **ROBERT FRAZIER** | **:** | |

---

<u>**O R D E R**</u>

UPON CONSIDERATION of the foregoing Motion for Modification of Pretrial Release

Conditions, it is this _____ day of _____, 2022, hereby

ORDERED that the Defendant be released on an unsecured bond of _____.

ORDERED that a Bond Review Hearing is scheduled on _____, 2022, in

Courtroom _____.


_____
J U D G E


**Copies to:**

Jeff Campbell, Assistant Public Defender
Office of the State's Attorney

3

**JA534**

IN THE DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

| | | |
|---|---|---|
| STATE OF MARYLAND | : | |
| | : | |
| v. | : | 3E00714640 |
| | : | |
| ROBERT FRAZIER | : | |

---

## <u>MOTION FOR MODIFICATION OF PRETRIAL RELEASE CONDITIONS</u>

The defendant Robert Frazier, through counsel, APD Jeff Campbell, moves this Honorable Court to release him on an unsecured bond.  Counsel states:

1.  On June 15, 2022, I filed a bond review hearing in this case.  The matter was heard on June 21, and the Court <u>ordered</u> Mr. Frazier released to pretrial level 4.  The Court did so fully understanding that he has a Virginia detainer for a traffic offense.

2.  On June 21, I emailed Jeff Logan to alert him of the change to a court order in this case. I asked him to let me know right away what pretrial would do.  He said he'd get back to me.

3.  On June 24, I followed up again with Mr. Logan.  I did not hear back.

4.  On June 27, I followed up a third time with Mr. Logan.  He said he'd get back to me.

5.  On June 28, a preliminary hearing was held.  The State produced testimony that the gun in this case was found on the passenger floorboard in a bag that looked like a woman's purse.  A woman was sitting in the passenger seat.  The police officer did not recall whether she took the purse with her once Mr. Frazier was arrested.  The Court nevertheless found probable cause for the charge.  The Court then re-instated the same pretrial release order already in effect.

6.  On June 29, I reached out to Mr. Logan a fourth time, asking for a decision.  I did not hear back.

7.  On July 1, I reached out to Mr. Logan a fifth time.  He responded later in the day that he would follow up "when I get a chance."

8.  As of the date of filing of this motion, I still have not gotten an answer from Mr. Logan and pretrial has still not released Mr. Frazier.

9.  <u>The first change of circumstances in this case is nearly three weeks of inaction by pretrial, despite five follow-up requests by me.</u>  I have followed up with Mr. Logan five times. Mr. Frazier has had a release <u>order</u> for nearly three weeks.  Pretrial has not even given me an answer about whether they will release him or why they have not already done so.

1

10. I have also done my due diligence on the Virginia side of the detainer problem.  But this is a traffic arrest warrant, not a bench warrant, so there is no actual court case currently pending.  I have spoken to the Virginia warrants desk; the only way to get rid of the warrant is for Mr. Frazier to be released to the detainer.

11. This is a traffic case.  I fully expect that Mr. Frazier will be released on this case in Virginia and able to return very soon to this County.

12. <u>The second change in circumstances is the deterioration of Mr. Frazier's medical situation</u>.  Before I was involved in this case, previous counsel filed a bond-review motion because of the dental care that Mr. Frazier needs and, on information and belief, was not getting in the jail.   The Honorable Judge Heffron instructed OPD to inquire with Dr. Hernandez whether Mr. Frazier would be able to get the necessary medication within the jail.

13. I have left two voicemails with Dr. Hernandez asking to speak about Mr. Frazier's medical situation.  As of the filing of this motion, I have not received a call back.

14. For his part, Mr. Frazier informs me that he is not getting the soft-food diet that he needs due to his severe dental needs.  Most meals, he gets the same meal as everyone else, with a "soft" label attached.  For example, he is served hamburgers and hot dogs, even though he has repeatedly explained that he cannot eat these foods.

15. When Mr. Frazier gets foods he cannot eat, he lets the jail staff know.  They typically respond by saying things like "my mother has no teeth, and she can eat."  CO Guzman called him a "piece of shit."

16. The jail staff are not medical professionals and they don't know what they're talking about.  Mr. Frazier's mouth is swollen and he has open sores in his mouth.  He is concerned they are infected.  He has repeatedly requested a dentist or doctor's visit, but has not seen either.

17. <u>Respectfully, enough is enough</u>.  Mr. Frazier has suffered a great deal already, and he has suffered for a great deal longer because pretrial is not making a "decision" on a case in which the decision has already been made: Mr. Frazier has been <u>ordered</u> released on pretrial monitoring.

18. Mr. Frazier should not have to wait another day in jail, particularly under such dangerous, painful, and humiliating conditions.

19. Mr. Frazier isn't just presumed innocent—the evidence the State produced at the hearing strongly suggests that he is demonstrably innocent.  The gun was in a woman's purse, at the feet

of his female passenger.  Reasonable minds may differ on the Court's view that those facts amount to probable cause, but they surely do not amount to clear and convincing evidence or proof beyond a reasonable doubt.

20. As every judge to review this case has agreed, Mr. Frazier can be safely released on electronic monitoring.  In order to make that finding functional, Mr. Frazier requests that his bond be modified to an unsecured bond with a condition of beginning electronic monitoring upon his release from Virginia.

Respectfully submitted,

*/s/  Jeff Campbell*
Jeff Campbell
Assistant Public Defender
14735 Main St Ste. 272B
CPF 200804005
(301) 327-0717
 jeffreyj.campbell@maryland.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of July, 2022, a copy of the foregoing motion was hand-delivered, via the District Court Clerk's Office, to the following:

Office of the State's Attorney
Prince George's County, Maryland

*/s/  Jeff Campbell*
Jeff Campbell
Assistant Public Defender
14735 Main St Ste 272B
(301) 327-0717
 jeffreyj.campbell@maryland.gov

3

**JA537**

**IN THE DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY**

| | | |
|---|---|---|
| **STATE OF MARYLAND** | : | |
| | : | |
| **v.** | : | **3E00714640** |
| | : | |
| **ROBERT FRAZIER** | : | |

---

### O R D E R

      UPON CONSIDERATION of the foregoing Motion for Modification of Pretrial Release

Conditions, it is this _____ day of _____, 2022, hereby

ORDERED that the Defendant be released on an unsecured bond of _____; special

condition to report for electronic monitoring within twenty-four hours of release from Virginia.


                                           _____
                                           J U D G E

**Copies to:**

Jeff Campbell, Assistant Public Defender
Office of the State's Attorney

4

**JA538**

C EPK OF THE
CI CUIT COURT

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

2022 JUL 18  PH 12: 43

STATE OF MARYLAND

PR GEO. CO. MD #47

v.                                     738   CT220860X

ROBERT FRAZIER                   :

## MOTION FOR MODIFICATION OF PRETRIAL RELEASE CONDITIONS

The defendant Robert Frazier, through counsel, APD Jeff Campbell, moves this Honorable Court to release him on an unsecured bond. Counsel states:

1. On June 15, 2022, I filed a bond review hearing in this case in the District Court. The matter was heard on June 21, and the Court ordered Mr. Frazier released to pretrial level 4. The Court did so fully understanding that he has a Virginia detainer for a traffic offense.

2. On June 21, I emailed Jeff Logan, director of Population Management, to alert him of the change to a court order in this case. I asked him to let me know right away what pretrial would do. He said he'd get back to me.

3. On June 24, I followed up again with Mr. Logan. I did not hear back.

4. On June 27, I followed up a third time with Mr. Logan. He said he'd get back to me.

5. On June 28, a preliminary hearing was held. The State produced testimony that the gun in this case was found on the passenger floorboard in a bag that looked like a woman's purse. A woman was sitting in the passenger seat. The police officer did not recall whether she took the purse with her once Mr. Frazier was arrested. The Court nevertheless found probable cause for the charge. The Court then re-instated the same pretrial release order already in effect.

6. On June 29, I reached out to Mr. Logan a fourth time, asking for a decision. I did not hear back.

7. On July 1, I reached out to Mr. Logan a fifth time. He responded later in the day that he would follow up "when I get a chance."

8. On July 13, I had not yet heard back. I followed up again with Mr. Logan, for the sixth time.

9. Mr. Logan replied "I responded back to the judge yesterday. The judge Court-ordered the defendant fully aware that he had a detainer pending in Virginia; however, if he's signed out by us, on pretrial release, he'll be extradited to Virginia."





1

10. Mr. Logan's email aptly summarizes the situation, but it doesn't explain whether pretrial is refusing to abide by the Court order or answer what Mr. Logan's response to the judge was.

11. I replied to Mr. Logan asking him whether he had told the judge that he would release Mr. Frazier, or wouldn't release him, or something else. As of the date of filing of this motion, I have not received a response from Mr. Logan and pretrial has still not released Mr. Frazier.

12. The first change of circumstances in this case is nearly a month of inaction by pretrial, despite seven follow-up requests by me. I have followed up with Mr. Logan seven times. Mr. Frazier has had a release order for nearly a month.

13. I have also done my due diligence on the Virginia side of the detainer problem. But this is a traffic arrest warrant, not a bench warrant, so there is no actual court case currently pending. I have spoken to the Virginia warrants desk; the only way to get rid of the warrant is for Mr. Frazier to be released to the detainer.

14. This is a traffic case. I fully expect that Mr. Frazier will be released on this case in Virginia and able to return very soon to this County.

15. The second change in circumstances is the deterioration of Mr. Frazier's medical situation. Before I was involved in this case, previous counsel filed a bond-review motion because of the dental care that Mr. Frazier needs and, on information and belief, was not getting in the jail. The Honorable Judge Heffron instructed OPD to inquire with Dr. Hernandez whether Mr. Frazier would be able to get the necessary medication within the jail.

16. I have left three voicemails with Dr. Hernandez asking to speak about Mr. Frazier's medical situation. As of the filing of this motion, I have not received a call back.

17. For his part, Mr. Frazier informs me that he is not getting the soft-food diet that he needs due to his severe dental needs. Most meals, he gets the same meal as everyone else, with a "soft" label attached. For example, he is served hamburgers and hot dogs, even though he has repeatedly explained that he cannot eat these foods.

18. When Mr. Frazier gets foods he cannot eat, he lets the jail staff know. They typically respond by saying things like "my mother has no teeth, and she can eat." CO Guzman called him a "piece of shit."

19. The jail staff are not medical professionals and they don't know what they're talking about. Mr. Frazier's mouth is swollen and he has open sores in his mouth. He is concerned they are infected. He has repeatedly requested a dentist or doctor's visit, but has not seen either.

2

**JA540**

20. Mr. Frazier has suffered a great deal already, and he has suffered for a great deal longer because pretrial is not making a "decision" on a case in which the decision has already been made: Mr. Frazier has been <u>ordered</u> released on pretrial monitoring.

21. Mr. Frazier should not have to wait another day in jail, particularly under such dangerous, painful, and humiliating conditions.

22. Mr. Frazier isn't just presumed innocent—the evidence the State produced at the hearing strongly suggests that he is demonstrably innocent. The gun was in a woman's purse, at the feet of his female passenger. Reasonable minds may differ on the Court's view that those facts amount to probable cause, but they surely do not amount to clear and convincing evidence or proof beyond a reasonable doubt.

23. As every judge to review this case has agreed, Mr. Frazier can be safely released on electronic monitoring. In order to make that finding functional, Mr. Frazier requests that his bond be modified to an unsecured bond with a condition of beginning electronic monitoring upon his release from Virginia.

Respectfully submitted,

/s/ *Jeff Campbell*
Jeff Campbell
Assistant Public Defender
14735 Main St Ste. 272B
CPF 200804005
(301) 327-0717
jeffreyj.campbell@maryland.gov

3

SCANNED



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of July, 2022, a copy of the foregoing motion was hand-delivered, via the District Court Clerk's Office, to the following:

Office of the State's Attorney
Prince George's County, Maryland

/s/ Jeff Campbell
Jeff Campbell
Assistant Public Defender
14735 Main St Ste 272B
(301) 327-0717
jeffreyj.campbell@maryland.gov

4

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND                    :

      v.                                          :               CT220860X

ROBERT FRAZIER                       :

## O R D E R

UPON CONSIDERATION of the foregoing Motion for Modification of Pretrial Release

Conditions, it is this _____ day of _____, 2022, hereby

ORDERED that the Defendant ~~be released on an unsecured bond of~~ _____; special

~~condition to report for electronic monitoring within twenty-four hours of release from Virginia.~~

SET FOR A BOND HEARING

_____
JUDGE

Copies to:                                          Judge Nicholas E. Rattal

Jeff Campbell, Assistant Public Defender
Office of the State's Attorney

ENTERED: 8/3/22
#822

5

**JA543**

Sent to Cael mgmt
8/4/22
#822

COPY

1

1          IN THE CIRCUIT COURT FOR

2        PRINCE GEORGE'S COUNTY, MARYLAND

3

4    STATE OF MARYLAND                    )

5                                         )   Case No.

6         vs.                            )   CT22-0860X

7    ROBERT SYLVESTER FRAZIER            )

8                        _    _    _    _    _

9

10           OFFICIAL TRANSCRIPT OF PROCEEDINGS

11                          Hearing

12                   Tuesday, August 16, 2022

13                   Upper Marlboro, Maryland

14

15    BEFORE:   THE HONORABLE LAWRENCE V. HILL, JR., JUDGE

16

17

18

19    APPEARANCES:

20    On Behalf of the State:

21         KIMERY WILLIAMS, ESQ.

22    On Behalf of the Defendant:

23         JEFF CAMPBELL, ESQ.

24

25    Transcribed by:   Kathy J. DeMent, CET

2

```
1                    P R O C E E D I N G S
2                                         (1:32 p.m.)
3            THE COURT:  All right.  Calling State vs.
4    Robert Frazier, CT22-0860X.
5            MR. WILLIAMS:  Good afternoon, Your Honor.
6    Kimery Williams on behalf of the State.
7            MR. CAMPBELL:  For Mr. Frazier, Jeff Campbell,
8    Assistant Public Defender.
9            THE COURT:  Okay.  So we're here on Defense
10   motion.
11           MR. CAMPBELL:  Thank you, Your Honor.  Ms.
12   Fishell (phonetic), is that you labeled as iPhone?
13           MS. FISHELL:  Yes.
14           MR. CAMPBELL:  Okay.  Thank you very much.
15   Just making sure you're here before I proceed.
16           Your Honor, we're here on my motion for a bond
17   review.  Mr. Frazier's current release status, which he
18   brought with him from the District Court, was an order of
19   release at Level 4 to Pretrial Services.
20           We have no problem with that, electronic
21   monitoring release would be perfectly fine.
22           THE COURT:  Wait a minute.  Ordered or he was
23   given the option?
24           MR. CAMPBELL:  Ordered, Your Honor.
25           THE COURT:  What day was he ordered?
```

3

1          MR. CAMPBELL:  58 days ago.  With the Court's

2     brief indulgence, I'll have the exact date -- which was

3     June 21st.

4          THE COURT:  All right.  Just a second.  June

5     21, that was the hearing in front of Judge Clark-Edwards?

6          MR. CAMPBELL:  Yes, Your Honor.

7          THE COURT:  And you say she ordered him into

8     it?

9          MR. CAMPBELL:  Yes, she did, Your Honor.

10          THE COURT:  So when -- if that didn't happen,

11     why didn't you go back to Judge Clark-Edwards in District

12     Court?

13          MR. CAMPBELL:  I did, Your Honor, but before my

14     motion got a hearing, this case was indicted so Judge

15     Clark-Edwards was divested of jurisdiction.

16          THE COURT:  Okay.  Well, so if the status is

17     he's ordered, then what are you asking me to do?

18          MR. CAMPBELL:  I'm asking you to effectuate

19     that order, Your Honor, because the reason Pretrial won't

20     release him is that he has a traffic detainer out of

21     Arlington, Virginia.

22          So what I'm asking you to do is to slightly

23     modify the condition.  I'd ask to release him on an

24     unsecured bond or a money bond that he can afford, with

25     the condition that within 24 hours of his release from

4

```
1        Virginia, which I expect to be extremely quick, that he
2        then turn himself in at the jail, to be established on
3        home detention.
4                    THE COURT:  So he's got a detainer?
5                    MR. CAMPBELL:  Yes, Your Honor.  The detainer
6        is for a 2019 traffic case out of Virginia.
7                    THE COURT:  That's jailable.
8                    MR. CAMPBELL:  Yes, it is jailable, Your Honor.
9        But it's not something that I anticipate is going to hold
10       him for a very long time.  In fact, I think it's likely
11       that he would be -- I'm sorry?
12                   THE COURT:  Virginia said they would come pick
13       him up, you know, if released?
14                   MR. CAMPBELL:  Yes.
15                   THE COURT:  Okay.  So he wouldn't be hitting
16       the streets then?
17                   MR. CAMPBELL:  I'm sorry?
18                   THE COURT:  He would not be hitting the
19       streets?  Before he got to Virginia, is what I'm saying.
20                   MR. CAMPBELL:  Right.  He will be -- he will be
21       transported, if Your Honor does what I'm asking, he will
22       be transported to Virginia and --
23                   THE COURT:  By who?  By who?
24                   MR. CAMPBELL:  Virginia comes and picks people
25       up from the Prince George's Country Detention Center.
```

5

```
1               THE COURT:  Correct.  But it doesn't happen
2       that day.  I mean, it doesn't happen like that.
3               MR. CAMPBELL:  You're right.  But he will be
4       held on the detainer, so typically it --
5               THE COURT:  I don't know the time limit, I know
6       he's held on the detainer, but -- and either they come
7       pick him up or then an extradition would have to be filed
8       and things like that.
9               MR. CAMPBELL:  Right.  So none of that will
10      result in his release.  That will just be the procedural
11      machinations to get him from here to Virginia.
12              THE COURT:  Well, if he's been in -- he's been
13      in Upper Marlboro jail for how long?
14              MR. CAMPBELL:  For 81 days, Your Honor.
15              THE COURT:  Have you -- does he have an
16      attorney in Virginia and why not try to get the Virginia
17      detainer lifted?
18              MR. CAMPBELL:  That was the first thing I tried
19      to do.  He does not, because that case isn't a bench
20      warrant, it's just an arrest warrant.  So there is no
21      criminal case actually initiated in Virginia yet.  And
22      before that case is actually initiated, which is what
23      will happen at his initial appearance, he doesn't have a
24      right to a lawyer there, so he doesn't have a lawyer
25      there.
```

6

1              THE COURT:  So what's the penalty for the

2    offense he's charged with in Virginia?

3              MR. CAMPBELL:  I do not know that, Your Honor.

4              THE COURT:  Okay.  So you're asking me to do an

5    unsecured bond?

6              MR. CAMPBELL:  Unsecured or a bond that his

7    family can afford, yes, Your Honor.  With the condition

8    that he then do Pretrial 4 once he's released from

9    Virginia.

10             THE COURT:  He couldn't do Pretrial 4, because

11    then he would be out free on the street.

12             MR. CAMPBELL:  So this is something I've done

13    before, Your Honor, once he's released from Virginia, he

14    can then check himself in at the jail to begin electronic

15    monitoring.  It's not uncommon, it can be done and it has

16    been done in my cases.

17             THE COURT:  I've never heard -- how could you

18    do that?  I mean, if somebody is out either on bond or

19    somebody is out on PR, how can they just check themselves

20    into the jail?  And basically -- because if he's on

21    Pretrial Level 4, he's in jail, he's getting credit for

22    his time, right?

23             MR. CAMPBELL:  You do get credit for Pretrial

24    Level 4, yes.

25             THE COURT:  Because he's detained.  So if

7

1    you're free on a case, how do you just come back in and

2    say I want to go to jail?

3              MR. CAMPBELL:  So what I've done in the past is

4    I've asked the Judge to make the condition, released on

5    an unsecured bond, with the special condition of turning

6    himself in for electronic monitoring within 24 hours of

7    his release from Virginia.

8              And it works basically exactly like serving a

9    home -- like when people are serving a sentence on home

10   detention, as opposed to pretrial release, it works

11   through the same program in the jail.  And people there

12   do that all the time, they're ordered to turn themselves

13   in --

14             THE COURT:  No, because they have a report

15   date.  Like, the person on home -- okay, your sentence is

16   going to start September 15th, right?

17             MR. CAMPBELL:  Yes.

18             THE COURT:  There's no start date here.

19             MR. CAMPBELL:  Sir, you're right that there's

20   not a fixed start date, but I took Your Honor's question

21   to be more logistical.  And this works in the exact same

22   way.

23             THE COURT:  No, because that's -- that's

24   totally different, because one is starting a sentence and

25   you're given a report date.  Here, there's no report

8

1    date, it's a Pretrial case.  So his bond would have to be
2    -- his status would have to be revoked.
3              MR. CAMPBELL:  That's not my view, but if
4    that's Your Honor's view, that's fine with us.
5              THE COURT:  I'm not saying that's what I'm
6    doing, but I'm just questioning now could I even do what
7    you're asking me to do.
8              MR. CAMPBELL:  I feel confident that you could,
9    Your Honor.  As I said, it's something that I've done
10   before.  And I'm confident that it would work.
11             THE COURT:  And who --
12             MR. CAMPBELL:  If the Court prefers, though,
13   I'm equally happy to ask that this just be changed to a
14   bond and that he be released on bond again.  A bond
15   instead.  He has only -- he's 40 years old and has only
16   one failure to appear, and I would be happy to proceed
17   and explain to Your Honor the situation and why his
18   release is so necessary.
19             THE COURT:  If I did it your way, who is even
20   going to know that -- you said report within 24 hours,
21   who is going to know when that is -- I mean, who is going
22   to know when he's released from Virginia?
23             MR. CAMPBELL:  I am in good contact with both
24   him and his fiancee, Ms. Fishell, who is on the line
25   under iPhone, and --

9

```
1              THE COURT:  But you wouldn't -- you wouldn't,
2    and actually you can't, you know, rat out your client.
3    So who would let the Court know that he got out within 24
4    hours?
5              MR. CAMPBELL:  Well, Your Honor, a few
6    possibilities occur to me as ways to do that.  One is Ms.
7    Fishell, the other is to make an obligation on Mr.
8    Frazier --
9              THE COURT:  You want to rely on his fiancee to
10   tell us that he got out?
11             MR. CAMPBELL:  In my experience, people do tend
12   to follow Court orders, Your Honor.  But, you know,
13   there's also the possibility of ASA Williams, who I am
14   happy to keep in touch with about this case.
15             THE COURT:  So he's going to monitor it daily
16   to know when he got out?
17             MR. CAMPBELL:  Well, I --
18             THE COURT:  You've got to know how the
19   procedure is going to work.  Pretrial is not going to do
20   it, right?  So, you know, you're his attorney -- I mean,
21   I trust you as an officer of the Court, but even if he
22   didn't, you're duty bound, you couldn't tell the Court he
23   didn't, you know.
24             MR. CAMPBELL:  What about this, Your Honor, I
25   think this is a good way of threading the needle, of not
```

10

1    putting any work on Mr. Williams, while honoring my

2    obligations to my client.  I will provide proof every

3    week to Mr. Williams of Mr. Frazier's incarceration in

4    Virginia, although I don't expect it to last long at all,

5    and in the event that if on any, you know, Monday,

6    Tuesday, whatever it is that Your Honor wants to do, Mr.

7    Williams doesn't receive that proof from me, the Court

8    can take that as proof that he's no longer incarcerated

9    in Virginia.

10              That way I'm not ratting out my client, Mr.

11   Williams doesn't have the check-in obligation on him, and

12   everything works for everyone.

13              THE COURT:  All right.  Well, why don't you go

14   into the reasons why I should modify his bond or release

15   it because -- you're telling me that he was ordered for

16   Pretrial Level 4, if I do unsecured, or even a nominal

17   bond, then that would be doing something less than the

18   Judge in District Court wanted done.

19              MR. CAMPBELL:  You're right.  Which is why my

20   first ask is just to effectuate what the Judge wanted

21   done.  I'd point out that Judge Clark-Edwards ordered him

22   released knowing about this detainer situation, so she

23   knew that this is what was going on and ordered him

24   released, with the intent that Pretrial would release

25   him.

11

1           THE COURT:  She can't release him.  A judge
2     can't order somebody released if they have a detainer.
3           MR. CAMPBELL:  We can agree to disagree about
4     that, Your Honor.  I'm happy to --
5           THE COURT:  No, we can't.  A judge can't order
6     -- the jail has to hold somebody if they have a detainer.
7           MR. CAMPBELL:  Right.
8           THE COURT:  They can't ignore the detainer and
9     still let the person go.
10          MR. CAMPBELL:  Well, I think what should happen
11    is that Mr. Frazier should be served with the detainer
12    and transported to Virginia.  And I'm trying to make that
13    happen.  And here's why, Your Honor --
14          THE COURT:  He's not going to be served with a
15    detainer until he's no longer being held.  So if I
16    granted him PR, right?  Then, you're right, then he would
17    get served with a detainer.  You don't get served a
18    detainer until you're not being held on a charge.
19          MR. CAMPBELL:  Right.  And that's the problem
20    that I'm here proposing as many solutions as I can to try
21    to fix it.  And let me tell you why.
22          Mr. Frazier is 40 years old, he has four
23    children, three of whom are under the age of 16, who he
24    supports by working.  He works in construction.  While he
25    was incarcerated on this case, his beloved mother passed

12

1    away, so he has experienced already the pain of losing

2    his mother and not getting to see her, because he was not

3    released in this matter.

4            His family very much needs him, they need him

5    out, they need his paycheck to support them.

6            He also has serious medical needs, in

7    particular, dental problems.  When he was arrested in

8    this case, he was in the middle of a complicated and

9    long-term dental procedure of teeth removal.  And since

10   his time in the jail, he's been in excruciating pain

11   because of those dental problems.  He's had one tooth

12   removed in jail, but that was only after months of effort

13   and he needs a lot more done than he's getting done.  And

14   I have a letter from him that I will read later to

15   explain the full breadth of those needs.

16           But his acute medical concerns are certainly an

17   important factor that I'm asking the Court to keep in

18   mind.

19           That is also -- because of his inability to

20   chew hard foods he has been requesting a soft diet, but

21   of course the -- you know, the jail has been uneven in

22   accommodating that.  A lot of the time that just means

23   that he can only eat a very few things on his tray or

24   have to try to drink Ensure or something like that to

25   subsist, because he's unable to get full calories from

13

1     the full meal that he would otherwise be able to eat. He

2     does have an address in Prince George's County where he

3     can live to do home detention.  But I think his uncle is

4     there with Ms. Fishell and he can verify for Your Honor

5     that he lives in this County and that Mr. Frazier can

6     stay with him upon release.

7               With the Court's permission, Mr. Frazier wrote

8     a letter to Your Honor and I would like to read it to

9     you.

10              THE COURT:  Go ahead.

11              MR. CAMPBELL:  "Dear Your Honor, I am writing

12    this letter to tell you a little bit about myself, my

13    life before this incarceration and some things that I've

14    been dealing with since.

15              "First of all, I pray that this letter finds

16    you in good spirits.  These are trying times for us all

17    right now.  I understand that your time is very important

18    and so I am going to keep this as short as I can.

19              "I'm an active father to four children, as well

20    as a stepfather to one.  I have three girls and one boy,

21    three of them are under 16.  My fiancee and I recently

22    buried our six week old baby girl on February 17th of

23    this year.

24              "Before my incarceration I was also helping my

25    brother care for my mother, who passed away while I was

14

1    incarcerated.  My mother suffered from dementia, as well

2    as cancer.  I was the power of attorney solely for my

3    mother.  Since I've been incarcerated, I've had to sign

4    paperwork to have my mother cremated and have not been

5    able to have a proper memorial service.

6            "Prior to my incarceration, I was balancing

7    caring for my family, as well as working at Higher-Quest

8    doing construction work.  My fiancee, stepdaughter and

9    myself went through a short-term shelter program due to

10   homelessness and were finally able to get an apartment of

11   our own.  My fiancee struggles with mental health issues,

12   such as PTSD and depression.  The death of our newborn

13   has only aggravated those issues.

14           "As the man of the house I'm mentally

15   struggling with not being able to be there to help with

16   bills and daily stress.

17           "Two days before my arrest date I had six teeth

18   removed.  I was scheduled to have the rest of my teeth

19   removed and to get a full set of dentures.  I suffer from

20   a calcium deficiency and as I've gotten older my teeth

21   have become soft.  It's extremely hard for me to eat,

22   being though I only have pieces of broken teeth.  My

23   dentist was taking them out in sections because of this,

24   to expedite the process.  My dental work is halfway done

25   and I have two sections left.

1          "Not being able to eat properly because I can't

2      chew hard foods has been one of my biggest issues since

3      I've been here.  Only picking at the softer foods and not

4      being able to eat any fruit, meats or hard food is taking

5      a toll on my body.  I can't use the restroom like I'm

6      supposed to and I'm not digesting my food because I can't

7      chew it.

8          "My fiancee has made contact with Captain Reno

9      (phonetic) to try and help me get Ensure drinks and soft

10     trays, but as of late there's been a lot of confusion

11     with the kitchen staff.

12         "I constantly have migraines because of my

13     teeth and I have an abscess.  I was finally able to get

14     one of the teeth that hurt the most extracted, but just

15     that one.  I'm grateful for that, but I'm still in

16     constant pain.

17         "I also have a seizure disorder, which is

18     exacerbated by migraines, physical pain, stress, and

19     every once in a while it comes out of nowhere.  I did not

20     receive any antibiotics after my extraction, but I have

21     been getting my seizure medication.  But even so, I've

22     had two seizures, which have stemmed from my dental pain.

23         "I understand that I have a traffic warrant out

24     of Arlington County.  This matter has been going on since

25     2019 and I have not been pulled over since.  And I was

16

1    told the matter was resolved.

2              "Being that it is obviously not, I wish to be

3    released to handle this matter.  I would gladly accept

4    house arrest so that I can get things in order regarding

5    my dental procedures, as well as my mother's memorial

6    service and spending time with my family awaiting Court.

7              "I was released from jail and successfully

8    completed probation while having this traffic warrant.

9    Again, when my probation officer called, they were told

10   the matter was resolved.

11             "I'm saying all that to say I am not a flight

12   risk.  I wish to have the matter resolved so I can get my

13   dental procedures done.  I was approved for home

14   detention and the Judge ordered home detention, but I

15   have to take care of the Arlington matter first.

16             "Thank you for taking the time to read my

17   letter.  I ask that you take my dental matters, as well

18   as everything else I've relayed, into consideration.  I

19   would be beyond grateful if granted some time to get

20   these things in order before our next Court date.  Thank

21   you, Your Honor."

22             Ms. Fishell is also on the line, under iPhone,

23   and with the Court's permission, I'd ask her to be able

24   to speak to you as well.

25             THE COURT:  About what?

1          MR. CAMPBELL:  About his medical needs, as well

2    as the difficulties of not having him in the home.

3          THE COURT:  She just told me -- I mean, he just

4    told me about his medical needs.

5          MR. CAMPBELL:  Sometimes, Your Honor, I think

6    some Courts find it useful to have some statements

7    verified.  And so part of this would be in order to

8    verify that.  And she would also talk about the

9    difficulties to their family of not having Mr. Frazier.

10         THE COURT:  No, Counsel, I'm not going to have

11    his girlfriend verify his medical condition.  You told me

12    in detail and the impact it has, his letter told me about

13    it.

14         MR. CAMPBELL:  All right.  Would you like to

15    hear from his uncle to verify that he has a place in this

16    county where he can stay and do home detention?

17         THE COURT:  No.  I assume pretrial's already

18    done that, they said the reason they didn't take him out

19    was because of the detainer, not because he didn't have

20    an address.

21         MR. CAMPBELL:  Okay.  So with that in mind,

22    Your Honor, I think the review determination that has

23    been made is the correct one.  I think there are

24    conditions under which Mr. Frazier can safely be

25    released, to wit, electronic monitoring.

1        The only thing I'm asking Your Honor to do is
2   to slightly modify it, just to allow that to actually
3   happen.  I don't think that the traffic case should be
4   the thing that prevents his release, especially given his
5   severe medical condition.  And so I would ask Your Honor
6   to work with me to craft an order.  I've suggested it,
7   but -- I've suggested several ways it could work, but,
8   you know, I'm open to different ways it could work.
9        But I think the important thing is that we come
10  up with something that does work, because Mr. Frazier has
11  been waiting and been in jail 81 days already on this.
12  Thank you.
13        THE COURT:  Why didn't you ask Judge Clark-
14  Edwards to do any of these scenarios that you say can
15  happen?
16        MR. CAMPBELL:  Your Honor, after -- when Judge
17  Clark-Edwards ordered pretrial, it was my -- pretrial was
18  not telling us that they would refuse to release him.  So
19  it was my hope that when it changed from an option to an
20  order, that that would work.
21        Once -- then I followed up repeatedly, about
22  seven times with pretrial, just to get an answer.  When I
23  finally got the answer that they weren't going to release
24  him, because, you know, Mr. Logan (phonetic) didn't tell
25  me, no, he has a detainer, Mr. Logan told me, Oh, I have

1   to see, we'll have to see about it.  So that caused

2   delays while I followed up repeatedly with Mr. Logan.

3          When I finally got an answer that they weren't

4   going to release him, then I did file a motion.  I filed

5   actually the same motion I filed in this Court, just with

6   the caption different, I had filed with Judge Clark-

7   Edwards.  But before a hearing was set, the case was

8   indicted.

9          THE COURT:  Well, I see the motions.  As your

10   motion said, the whole time Judge Haifer (phonetic) knew,

11   Judge Edwards knew, that he had this detainer.  So why

12   didn't you get the District Court Judge to do these

13   maneuvers that you say can happen, when -- there's no new

14   information that's happened since he had his bond, right?

15          MR. CAMPBELL:  Correct.

16          THE COURT:  So why didn't you tell them to do

17   these things that you say can be done?

18          MR. CAMPBELL:  Because I asked them when it was

19   an option.  I thought that the detainer problem could be

20   fixed by making it an order, because Jeff Logan wasn't

21   telling me that they wouldn't release him, even on an

22   order.  When we got the order, then it took me a long

23   time to find out if they'd actually release him or not.

24          I followed up repeatedly by calling and

25   emailing to Mr. Logan and he wasn't telling me that it

1    was a no, because of the detainer.  He was telling me

2    that it was a possibility.

3            So I was trying to not bother the Court every

4    day, I was instead trying to do my due diligence to make

5    sure it could actually work or not.  When I finally got

6    the answer that it couldn't work, then I did go back to

7    Judge Clark-Edwards.  But then the State indicted the

8    case, which is why we are here.

9            THE COURT:  What I'm saying is a detainer is a

10   detainer, right?

11           MR. CAMPBELL:  Yes, Your Honor.

12           THE COURT:  You have a detainer, you verify

13   it's open, and the second question, you contact the other

14   jurisdiction to say are you willing to come pick him up?

15   Because sometimes they're not, you know, for something --

16   a trespassing thing, if there's a warrant from North

17   Carolina -- sometimes they'll say no.  So, yes, that

18   person gets released.

19           But after that, a detainer is a detainer.  If

20   the other jurisdiction says we're willing to come pick

21   him up, the person cannot be released, period.

22           MR. CAMPBELL:  So, that's not my experience,

23   Your Honor.  I have had clients --

24           THE COURT:  It doesn't matter what type of

25   case, if there's a detainer -- if there's another State

21

1   who says we have a legal, you know, detainer out, Prince

2   George's County can't just say we're going to let him out

3   anyway.  You can't.

4            MR. CAMPBELL:  So I agree with you, but I think

5   where we're disagreeing is a matter of semantics.  No one

6   is asking for him to be let out, in terms of released

7   from the jail.  What we're asking for is for him to be

8   designated released, so that he will be served with a

9   detainer and taken to Virginia.  And that is what I have

10  had happen in other cases with a Pretrial order.

11           THE COURT:  That's different.  You asked me to

12  release him and then say -- and then after he's released,

13  after 24 hours he comes back.

14           MR. CAMPBELL:  Correct.

15           THE COURT:  You didn't say that.

16           MR. CAMPBELL:  So here's what I'm saying,

17  Judge.  You're right.  I am asking you to release him to

18  the detainer, which will result in him being held here

19  until he's brought to Virginia.

20           What I was explaining earlier with the Pretrial

21  order is that it's not always the case that Pretrial

22  refuses to release someone to a detainer with an order.

23  I have had other clients in cases where with a Pretrial

24  order they are actually --

25           THE COURT:  Not Level 4.  Not Level 4.  Maybe

1     Pretrial in general.  What I'm saying is if it's Pretrial

2     in general, maybe they just have to call in, maybe they

3     have to come in and contest it, yes, because that person

4     is pretty much given PR, they just have to come back and

5     verify.

6            But Pretrial Level 4, you remain in the custody

7     technically of the Department the whole time.  So I know

8     that they don't release people on Pretrial Level 4 who

9     have any type of detainer.

10           MR. CAMPBELL:  I would have to check whether

11     it's happened with a Level 4 or not, Your Honor.  But I'm

12     only going down this rabbit hole to explain my diligent

13     efforts in District Court to try to get this resolved

14     before we got to Circuit Court.

15           THE COURT:  I'm not questioning your efforts.

16     I asked -- I said it because you're asking me to do

17     something that I don't do, so I don't order people in

18     Level 4, okay?  I don't do that.  I don't tell Pretrial

19     you have to take somebody out.  You know, I give the

20     options.  One reason I don't order people out, because

21     there's a waiting list.  I'm sure, as you know, you have

22     clients, you order somebody, then that person gets to

23     jump to the head of the line, because he's ordered to be

24     taken out.  So I don't order people out.

25           MR. CAMPBELL:  And I wish I -- I don't think

1    that problem is -- I don't think that problem is

2    presented here, Your Honor.  Because he has been -- he

3    has been waiting for 81 days.  And at this point he's

4    going to wait forever, and even though every Judge to

5    review this has thought that he's an appropriate

6    candidate for electronic monitoring, he's going to wait

7    until this case, his trial, unless we can just slightly

8    modify the conditions.

9              And I'm not even asking Your Honor to do

10   something you don't do and order Pretrial 4.  You can

11   make it an option, so long as it's an option after he's

12   released to Virginia.  Because this is a minor case in

13   Virginia that is holding up everything here.  I've done

14   everything I can on the Virginia side, there's nothing to

15   be done on the Virginia side.  That part is

16   undislodgeable.

17             So what I'm asking Your Honor to do is to order

18   him released to the detainer, under whether that's with a

19   money bond or an unsecured bond, and then with the

20   special condition of doing electronic monitoring once

21   he's released from Virginia.

22             Or if Your Honor prefers, just by giving him a

23   bond to pay in lieu of pretrial release.

24             Either one of those options I think works and

25   either one of them I think is eminently fair under these

24

```
1    circumstances.

2              THE COURT:  State?

3              MR. WILLIAMS:  Very briefly, Your Honor, the

4    State's concern regarding this matter is that the State

5    just  believes that Mr. Frazier needs to be under some

6    form of monitoring.

7              So he has the traffic matter that happened in

8    2020, we would point to the statement of probable cause,

9    in which it was based on an eluding.  And it wasn't

10   served until 2022.  So for over two years he's had this

11   arrest warrant out in Virginia, in which he's -- his

12   residence is actually in Washington, D.C..  Just based on

13   that, the State believes that there is a chance in which

14   Mr. Frazier may pose a flight risk in terms of not

15   showing up for Court.

16             At the same time, it looks like there hasn't

17   even been a trial date set for this matter.

18             THE COURT:  For what case?

19             MR. WILLIAMS:  Excuse me?

20             THE COURT:  For what case are you talking

21   about?

22             MR. WILLIAMS:  For the case that Mr. Frazier is

23   held on here, in Prince George's County.

24             THE COURT:  There's no trial date for this

25   case?
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**JA567**

```
1              MR. WILLIAMS:  It doesn't look like there's a
2      trial date.
3              THE COURT:  Okay.
4              MR. WILLIAMS:  The problem is that -- in
5      regards to the arguments that Mr. Campbell has made, I
6      mean, the State is willing to agree with that, it's just
7      that -- the issue is I don't know if there would be any
8      reassurance that Mr. Frazier would actually appear for
9      Court and be a willing participant in this whole process,
10     which is why the State would, I guess, object to any form
11     of unsecured bond.
12             But the State would not object to some form of
13     home monitoring or private home monitoring or Pretrial
14     Level 4.
15             THE COURT:  What about any record?
16             MR. WILLIAMS:  So that's another thing.  So he
17     has five convictions, two of which are crimes of
18     violence.  In terms of statement of probable cause --
19     Court's brief indulgence.  Now, the State will admit that
20     a lot of these do have some age to them, but nonetheless
21     they're still part of his record.
22             But he has a 2002 motor vehicle unlawful taking
23     in Montgomery County, a 2003 unlawful use of a vehicle in
24     Washington, D.C., 2005 armed robbery, 2019 unlawful
25     possession of a firearm in Washington, D.C., as well as
```

26

```
1       an assault on a police officer in Washington, D.C., in
2       2019.
3               MR. CAMPBELL:  And, Your Honor, I guess I would
4       -- as far as the record, I would point out he has --
5       according to his Pretrial sheet there's one conviction
6       since 2006.  So he does have from the early 2000's more
7       convictions than that, but he's now 40 years old and so
8       in the last 15 years only the one conviction.
9               And I think most prominently, given the
10      discussion we're having, in all that time only one
11      failure to appear.  I don't -- as a 40 year old man with
12      four children to support, fiancee to support, his home
13      here, he's not going to be a flight risk.
14              And particularly in this case, where, you know,
15      without trying the case today -- the gun was found in a
16      woman's purse, in the passenger seat of the car where
17      there was a female passenger.  So the --
18              THE COURT:  Who was the passenger?
19              MR. CAMPBELL:  I'm sorry?
20              THE COURT:  Who was the passenger?
21              MR. CAMPBELL:  It was Ms. Fishell, Your Honor.
22              THE COURT:  I mean, you're just saying it like
23      it was some strange person.  I mean, she's been here, we
24      know her relationship.
25              MR. CAMPBELL:  I don't mean to suggest that
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**JA569**

1  she's a strange person.  But what I do -- what I do think
2  is that Mr. Frazier has a very strong defense in this
3  case and that his record shows there was only one failure
4  to appear in 40 years of life, that he is not a flight
5  risk.
6          I think Judge Clark-Edwards acknowledged that
7  by ordering him to home detention, and all that I am
8  asking is a tweak so that he can actually be on home
9  detention.
10         MR. WILLIAMS:  Your Honor, I believe that Judge
11 Clark-Edwards probably ordered home detention or Pretrial
12 Level 4 because it's a gun offense, as opposed to a full
13 crime of violence.  So I think that's why.
14         THE COURT:  So the Pretrial initial appearance
15 questionnaire on the prior conviction says, yes, per
16 attorney.  And then it says 2020 handgun and a -- it says
17 2 0 0 4 1 kidnaping.
18         MR. CAMPBELL:  I did not have that  -- give me
19 just a second because I did not have that on the District
20 Court Pretrial sheet and it's my experience that
21 sometimes they list the wrong charge, not the charge of
22 conviction.
23         Mr. Williams, do you have a kidnaping
24 conviction in your records?
25         MR. WILLIAMS:  No.  That's a surprise to me.

28

1          MR. CAMPBELL:  I don't -- Your Honor, I am very
2     dubious that that is correct.
3          THE COURT:  All right.  And what about the 2020
4     handgun?
5          MR. CAMPBELL:  That was not indicated on this
6     sheet prepared by Pretrial for the bond hearing.
7          THE COURT:  Your Honor, are those in Prince
8     George's County?
9          THE COURT:  It just says -- again, it says per
10    attorney, which I assume it means the attorney spoke to
11    Mr. Frazier.  It just says per attorney.
12         MR. CAMPBELL:  Not per me.
13         THE COURT:  No, in the statement of charges it
14    says November 2019, unlawful possession of a firearm.
15         MR. CAMPBELL:  And that does not show on the
16    actual Pretrial sheet.  It's my experience with
17    statements of charges that police, too, sometimes list
18    cases that did not actually result in convictions.  But I
19    don't -- right now, I don't know one way or the other,
20    all I can say is that was not on the Pretrial sheet and
21    usually some -- you know, usually all the convictions
22    show on the Pretrial sheet.
23         MR. WILLIAMS:  And, Your Honor, my experience,
24    typically once a gun arrest is made, the police officers,
25    they then contact Maryland State Police to get a

1    debriefing, in which they prepare the Maryland Gun Center

2    Report, in which their convictions are displayed,

3    providing why they are prohibited from possessing a

4    firearm.

5          THE COURT:  Well, in the statement of charges,

6    it lists unlawful possession of the firearm and assault

7    on a police officer, both in D.C., and after that it has

8    the same case number.

9          MR. WILLIAMS:  So I imagine that those are part

10   of the same -- that's the same case and multiple charges

11   for the same case.

12         MR. CAMPBELL:  Right.  But it's -- I mean, it

13   suggests itself to me as certainly possible that both

14   those things were charged and only one was the crime of

15   conviction.  No one is disputing the assault conviction.

16         MR. WILLIAMS:  Or that he's convicted of both

17   offenses.

18         THE COURT:  Yeah, it could go either way.  They

19   could have just listed both of the charges as the most

20   serious or he could have been pled or had a trial and

21   been found guilty of both.

22         MR. CAMPBELL:  I'll go on Court View.  Mr.

23   Williams, do you have the case number?

24         THE COURT:  It's in the statement of probable

25   cause, it's 2019 Charlie, Frank, 2013665.  It has the

1     same case number for the assault on officer, which I

2     don't think that you disputed.

3              MR. CAMPBELL:  You're right, I don't.

4              MR. WILLIAMS:  Your Honor, I'm looking at the

5     Maryland Gun Center Report and those charges are the

6     convictions.

7              THE COURT:  You say are or are not?

8              MR. WILLIAMS:  Are.

9              MR. CAMPBELL:  I don't have any disagreement

10    with that, Your Honor.

11            THE COURT:  The eluding, do you -- I guess, you

12    know, they gave him a citation and he's free to go, do

13    you get a Court date in the mail?  Or did he get arrested

14    or did he miss his Court date?  Or did they just go

15    directly to some point -- I don't know how they do it in

16    Virginia -- of somebody issuing an arrest warrant?  Do

17    you know?

18            MR. CAMPBELL:  My understanding is that they

19    just issued an arrest warrant.  It is certainly not a

20    case where he was cited or arrested.  And it's my

21    understanding that it was, in fact, a misunderstanding.

22    That it was based on a license plate or a car

23    registration and that he was not the driver of the

24    vehicle at all.

25            I know for sure -- and I verified with the

```
 1        Virginia Court -- this is not a case where there was an
 2        arrest or anything like that, because that would have
 3        initiated the actual case there.
 4                It's just a case where an arrest warrant was
 5        issued and the arrest warrant has apparently just been
 6        out there ever since, even though Mr. Frazier has since
 7        had this D.C. case that we're looking at and it didn't
 8        come up at that time.  So it's just coming back years
 9        later, a case that he did not know was active or pending,
10        is now interfering with his release.
11                THE COURT:  All right.  So, number one,
12        procedurally, I think the only way that this could be
13        effectuated would be for the Court to either release him
14        on unsecured bond essentially, so he's not being held on
15        this case, then the Virginia detainer would kick in.
16        They'd serve extradition papers, if someone from Virginia
17        did come up to pick him up.
18                And then the Court could -- but this whole
19        thing about reporting in 24 hours to turn back to
20        Pretrial, I don't believe that can happen procedurally at
21        all.  And I wouldn't do it, in any event, because I'm not
22        going to just release him on a word that he'll contact in
23        24 hours.
24                So what I have done, similarly when I was in
25        Juvenile Court, you know, I would release somebody on
```

32

1   their case, with the understanding that after their

2   release, I'm going to issue a bench warrant back here.

3   So once they finish in the other county, then they come

4   back and then once they're here, they can go ahead and do

5   whatever.  All right?

6           I don't feel like a bond would be appropriate,

7   I never do unsecured bond because that's the same thing

8   as personal recognizance -- I mean, if I were going to do

9   that I would just do personal recognizance, not an

10  unsecured bond.

11          The bigger concern is his number of convictions

12  for violent offenses -- number one standing out is the

13  conviction for a firearm.  And the charge here is a

14  firearm possession.  I understand that the Defense has

15  credible defenses, in reading the statement of charges,

16  the gun, I think, was found in maybe a purse, bag,

17  passenger seat.  I get that.  But, nevertheless, he's

18  still faced with the charges.  And it's at least his

19  second time being accused of a firearm, the first one we

20  know was a conviction.  So for public safety reasons, I'm

21  not going to modify the bond.

22          So that's where we are.  And I don't -- as I

23  said, I don't order people -- I mean, he has an order,

24  I'm not going to take that away from him, because that's

25  Judge Clark's decision so I'm not going to take that away

1     from him, but I'm not doing anything further.  I think

2     that would be a public safety concern about him being out

3     on the street, even with this "he reports in 24 hours"

4     scenario that you think can be done.

5          MR. CAMPBELL:  Your Honor, I have no problem

6     with this -- with what you propose, where you issue an

7     arrest warrant or a bench warrant for him after he goes

8     to Virginia.  Could we please do that?

9          THE COURT:  I don't know, I have to think about

10    that.  Because when he comes back, then that means you're

11    going to assume that I'm going to order him to Pretrial,

12    which I say I don't do.

13         MR. CAMPBELL:  And I would be fine with a

14    Pretrial option when he comes back.  I would be fine with

15    a *de novo* hearing when he comes back.  What he has --

16    without committing yourself to anything -- what he has

17    now is no hope.

18         THE COURT:  So how would I know when -- how

19    would I know when Virginia served him with the

20    extradition papers, he got to Virginia and all that?  How

21    would I know any of that?

22         MR. CAMPBELL:  I am happy to file reports with

23    this Court letting you know that.

24         THE COURT:  How are you going to do that?

25         MR. CAMPBELL:  I would assume by filing them in

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**JA576**

34

1    the Court file.  If you'd prefer another way, such as by

2    email, cc-ing the State, I'm happy to do it in whatever

3    form Your Honor wishes.

4           THE COURT:  So you're going to notify the Court

5    when, of what?

6           MR. CAMPBELL:  Whatever events that Your Honor

7    orders me to, I am happy to -- you know, I -- what I

8    would think off the top of my head for a proposal would

9    be when he's served with the detainer, I will notify you

10   of that; when he's extradited to Virginia, I will notify

11   you of that.  And then once he is, then I would request

12   that at that point you issue the bench warrant.

13          THE COURT:  And how would you know when he's

14   extradited to Virginia?  (Inaudible) don't schedule these

15   things, they just come pick him up.

16          MR. CAMPBELL:  So I keep an excel spreadsheet

17   pinned to my computer of my clients who are in jail and

18   so I run them all the time, so with Mr. Frazier I would

19   just be running it every morning to see if he was still

20   here or if he'd gone to Virginia.  I check that in the

21   public website inmate look-up, which shows from the jail

22   whether someone is still there or not.  And that's how

23   I've always done it in the past.

24          I have a recent client, whose name I won't put

25   on the record, but who just went through the same thing,

```
 1        in terms of being extradited to Virginia and I followed
 2        that same procedure in order to call his mother and
 3        notify her when he was taken to Virginia and to call his
 4        lawyer and to call her when he was taken to Virginia.
 5               So this is nothing out of the ordinary for me,
 6        Your Honor.  This is my normal practice.
 7               THE COURT:  All right.  So, again, if that were
 8        to happen and a bond review comes back in front of me,
 9        you understand I'm not committing to anything.
10               MR. CAMPBELL:  I do understand that, Your
11        Honor.
12               THE COURT:  I may just no bond.
13               MR. CAMPBELL:  I fully understand that.
14               THE COURT:  I mean, I would look at it just as
15        I look at any other case.  And like I said, I already
16        have concerns because he --
17               MR. CAMPBELL:  Mr. Williams, can you hear Judge
18        Hill?
19               MR. WILLIAMS:  No.  In fact, his screen is
20        blacked out.
21               MR. CAMPBELL:  Okay.
22               MR. WILLIAMS:  He must have got disconnected.
23               MR. CAMPBELL:  Yeah.  I'm sure the Clerk might
24        be able to let him know.
25               THE CLERK:  Judge Hill will be back on in a
```

```
 1    minute.

 2                  MR. CAMPBELL:  Thank you so much.

 3                  MR. WILLIAMS:  Thank you.

 4            (Brief pause to proceedings.)

 5                  THE COURT:  All right.  Computer issues.

 6            So I was saying that you understand that that

 7    -- essentially I mean he comes here and he starts afresh

 8    and there's no promise, even informally, that he would

 9    come back, that I would do the same status.

10                  MR. CAMPBELL:  I do understand that, Your

11    Honor.

12                  THE COURT:  All right.  And, sir, that's what

13    you want me to do?

14                  THE DEFENDANT:  Yes.

15                  THE COURT:  And you understand that once you

16    come back here, then you have to start all over, as far

17    as your bond status?

18                  THE DEFENDANT:  Yes, Your Honor.

19                  THE COURT:  And you understand -- again, what

20    I've already said a couple of times, that I don't order

21    people into Pretrial.

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  And due to concerns about at least

24    one of your prior convictions.

25                  THE DEFENDANT:  Yes, sir.
```

37

```
1                    THE COURT:  All right.  Okay.  So, again, just
2        the last part, so if something were to happen and
3        Virginia says we're not going to come pick him up, the
4        Court is going to issue a bench warrant.  And, in fact,
5        if he were to be released for some reason, to hit the
6        street, then he is -- his condition is that he notify his
7        attorney, not within 24 hours but immediately.  And then
8        Defense Counsel would have to notify the Court
9        immediately of this and the Court would issue a bench
10       warrant.  Because without any bench warrant, he couldn't
11       even turn himself back in to the jail.
12                   Do you understand that, Mr. Campbell?
13                   MR. CAMPBELL:  Yes, Your Honor.
14                   THE COURT:  All right.
15                   MR. WILLIAMS:  Excuse me.  Excuse me, Your
16       Honor.
17                   THE COURT:  Yes?
18                   MR. WILLIAMS:  Wouldn't it be better if the
19       bench warrant was lodged after he's released from --
20                   THE COURT:  Well, what I'm saying is if
21       something happens and the jail up here just releases him
22       to the street -- you know, sometimes mistakes happen --
23       then he has to notify Mr. Campbell that Virginia came and
24       picked me up, I went, and they just let me out.
25                   MR. WILLIAMS:  Okay.
```

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**JA580**

38

1          THE COURT:  You know, if that happened -- let's
2     say hypothetically he got out at 3:00 today, they just
3     let him out, then by 4:00 he went straight to the
4     Virginia Court, if that was verified I would be okay with
5     that.
6          MR. WILLIAMS:  Okay.  Gotcha.
7          THE COURT:  Beforehand, not after the fact.
8     But if I find out he got out on the street and you didn't
9     let me know, then that's going to be a big problem, even
10    if he did end up going to Virginia.  You've got to be
11    proactive, yeah.
12         MR. CAMPBELL:  And, Your Honor, would you like
13    the notice from me by email or a letter filed with the
14    Court or how would you prefer?
15         THE COURT:  Come on, if you file a letter in
16    the file, how long is it going to take me to get it?  The
17    whole purpose of this is to keep me updated, right?
18         MR. CAMPBELL:  I'm only trying to be respectful
19    of your wishes, Your Honor.
20         THE COURT:  A letter put in the file.  All
21    right, based upon all the information that's been placed
22    on the record, again, the record is clear that the Court
23    believes that there's a public safety concern.  However,
24    the Court believes that in this scenario if the jail in
25    Virginia follows protocol, that the Defendant would not

39

1    be on the street at any time, at least before he were to
2    come back to Prince George's County.
3            So the Court is going to release the Defendant
4    on his personal recognizance, again with the condition
5    that he is to notify his attorney immediately of his
6    release from any institution, that his attorney is to
7    notify chambers immediately by email, you know, that's
8    after hours, it's on the weekends, of his release.
9            The Defendant also understands that the Court,
10   upon his release or service to another jurisdiction, that
11   a bench warrant will be issued with his consent.
12           THE DEFENDANT:  I do.  Yes, sir.
13           THE COURT:  So now let me see if I can get you
14   some Court dates.
15               **(Brief pause to proceedings.)**
16           THE COURT: So how is motions September 23rd?
17           MR. CAMPBELL:  That's fine for the Defense.
18           THE COURT:  That's in, like, five weeks, is
19   that going to be enough time for you to get all the
20   discovery out, Mr. Williams?
21           MR. WILLIAMS:  Yes, Your Honor.  In fact, I'll
22   send over discovery to Defense today.
23           THE COURT:  All right.  And how is a trial date
24   of October 25th?
25           MR. CAMPBELL:  I'm in a murder trial, but if it

40

1      ends up going I can file something.

2              MR. WILLIAMS:  Give me a minute.  The State

3      would respectfully request a different date.  I have

4      seven trials scheduled for that day -- in fact, eight,

5      actually.

6              THE COURT:  How's November 21st, 22nd?

7              MR. CAMPBELL:  Good for the Defense.

8              MR. WILLIAMS:  That's fine for the State.

9              THE COURT:  So the Court has scheduled this

10     matter for motions September 23rd, trial November 21st

11     and 22nd.

12             And, Mr. Campbell, you do have to monitor this

13     status daily, you don't have to send me a report daily,

14     but the first incident, you know, you need to tell me

15     like, you know, served with extradition or released.  You

16     need to keep me updated whenever there's a change.

17             MR. CAMPBELL:  I will do that, Your Honor.

18             THE COURT:  All right.

19             MR. CAMPBELL:  Thank you, Your Honor.

20             MR. WILLIAMS:  Thank you, Your Honor.

21             THE DEFENDANT:  Thank you, sir.

22             **(Whereupon, at 2:23 p.m., the proceedings in**

23     **the above matter were concluded.)**

24

25

41

```
1
2                    CERTIFICATE OF TRANSCRIBER
3
4           I hereby certify that the proceedings in the
5      matter of State of Maryland vs. Robert Sylvester Frazier,
6      case No. CT22-0860X, heard in the Circuit Court for
7      Prince George's County, Upper Marlboro, Maryland, on
8      August 16, 2022, before the Honorable Lawrence V. Hill,
9      Jr., Judge, were recorded by means of audio file.
10          I further certify that, to the best of my
11     knowledge and belief, page numbers 1 through 41
12     constitute the official transcript of the proceedings as
13     transcribed by me from said audio file to the within
14     typewritten matter in a complete and accurate manner.
15          I further certify that I am neither related to,
16     nor an employee of, any attorney or party herein, and
17     that I have no interest in the outcome of this case.
18          In Witness Whereof, I have affixed my signature
19     this 15th day of November, 2022.
20
21
22
23                 KATHY J. DeMENT, CET
24
25
```

10J

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

## DAILY SHEET

| | |
|---|---|
| | Civil Action No. _____ |
| **State of Maryland** | Criminal No. CT220860X |
| **Plaintiff** | |
| | Judge ___Hill, Jr.___ |
| **Kimery Williams** | |
| **State's Attorney** | Date   August 16, 2022 |
| -v- | |
| | Court Clerk   652msh |
| **Robert Sylvester Frazier** | |
| **Defendant** | ☐ J  ☐ C    Day _____ |
| | (J=Jury Sworn) Start: 1:32pm |
| | (C=Court Trial) End: 2:23pm |
| **Jeffery Campbell** | |
| **Defendant's Attorney** | |

### DOCKET ENTRIES

Hearing on Defendant's Motion for Modification of Pre- Trial Release Conditions

Judge Hill, Jr.; CS M1410

Motion Granted:

Bond set at Personal Recognizance

Defendant released on Personal Recognizance as to this case only

Conditions of release is that the defendant is to notify his counsel once he is released from custody in Virginia

Motions Hearing set for September 23, 2022 before any Judge

Trial Set for November 21-22, 2022 before any Judge

COPY

1

1                IN THE CIRCUIT COURT FOR

2            PRINCE GEORGE'S COUNTY, MARYLAND

3

4     STATE OF MARYLAND           )

5                         )  Case No.

6         vs.             )  CT22-0860X

7     ROBERT SYLVESTER FRAZIER    )

8                  -    -    -    -    -

9

10          OFFICIAL TRANSCRIPT OF PROCEEDINGS

11                 Bond Review

12             Thursday, August 25, 2022

13             Upper Marlboro, Maryland

14

15    BEFORE:  THE HONORABLE LAWRENCE V. HILL, JR., JUDGE

16

17

18

19    <u>APPEARANCES</u>:

20    <u>On Behalf of the State:</u>

21        **KIMERY WILLIAMS, ESQ.**

22    <u>On Behalf of the Defendant:</u>

23        **JEFF CAMPBELL, ESQ.**

24

25    Transcribed by:  Kathy J. DeMent, CET

2

```
1                    P R O C E E D I N G S

2                                          (10:13 a.m.)

3              THE CLERK:  Calling add-on, State vs. Robert

4      Frazier, CT22-0860X.

5              MR. CAMPBELL:  Jeff Campbell for Mr. Frazier,

6      who is coming forward, we're approaching the table.

7              THE COURT:  All right.  I know that the State

8      is here, but I don't think they're going to be needed.

9              So this case, this matter, is before me for a

10     bond review.  Previously Judge Clark-Edwards of the

11     District Court had ordered Pretrial Level 4 to take Mr.

12     Frazier out, but they could not because he had a detainer

13     from Virginia.

14             So in order to let him deal with the detainer,

15     the Court had released him on his recognizance, so the

16     detainer would kick in.  It was understood that once

17     Virginia took him, then the Court would issue a bench

18     warrant to act as a detainer.  And then when he finished

19     in Virginia, that detainer would bring him back here and

20     then he could get Level 4.

21             I guess Virginia did it very quickly, so there

22     was no -- I appreciate Counsel letting me know like

23     almost day to day what was going on, but I guess it still

24     happened so quickly.

25             So, in any event, Mr. Frazier is here.  So as I
```

3

1          said -- I communicated to my law clerk, I still want to

2          do the detention, because you said he still has to go

3          back on Monday for the Court date?

4                    MR. CAMPBELL:  That's right, Your Honor.

5                    THE COURT:  For the arraignment?

6                    MR. CAMPBELL:  I'm sorry?

7                    THE COURT:  You said for the arraignment on

8          Monday in Virginia?

9                    MR. CAMPBELL:  That -- and I'm relaying what

10         the Commissioner told him.  I've been trying to learn

11         anything about Virginia criminal procedure and, candidly,

12         I'm not that confident that I know, but that's what the

13         Commissioner told him it would be.

14                   THE COURT:  That's fine.  I mean, I don't know

15         about that quick, but I know that's similar to the way we

16         do it here.  Like there was a warrant say from a Circuit

17         Court, Commissioner released -- I don't think they give a

18         date, they would say, here, do you want to get the

19         arraignment in the mail.

20                   But in any event, so what I communicated to my

21         law clerk is because, no, I'm not comfortable him just

22         being on his recog until Monday, so what I said, with the

23         intent that we all agreed on is that he comes in today,

24         then I'll revoke his PR, then I'm going to -- the order

25         is going to -- what time does he need to be in Virginia

4

```
1      Monday?
2                  MR. CAMPBELL:  2:00 p.m., Your Honor.
3                  THE COURT:  Not until 2:00 p.m.?  And how does
4      he plan on getting there?
5                  MR. CAMPBELL:  His uncle, who lives in this
6      county, is able to drive him there.
7                  THE COURT:  If I say release him Monday
8      morning, but then how does he get back in, say, Monday
9      afternoon?
10                  MR. CAMPBELL:  I mean --
11                  THE COURT:  I guess I could -- I'll be here
12      Monday, so actually we'll do the same thing again on
13      Monday, tell him to come to my courtroom Monday -- you
14      say he has to be, I'm sorry, in Virginia at 2:00?
15                  MR. CAMPBELL:  2:00 p.m..
16                  THE COURT:  So I don't have my docket for
17      Monday, but if he can get here by 4, I'll issue another
18      warrant, so then he needs to get to the jail sometime
19      Monday afternoon/evening and then I'll order Pretrial to
20      take him out on Level 4.
21                  So in that theory, he would be -- he could be
22      released on Level 4 Tuesday morning.
23                  Are you here for this case?
24                  MR. WILLIAMS:  Yes.  I'm obviously not --
25                  THE COURT:  I got you.  This was an add-on,
```

5

1    because of this situation.  So are you aware about what's

2    -- like, my plan?

3             MR. WILLIAMS:  Yes.  So you're going to request

4    a bench warrant?

5             THE COURT:  No.  I mean, he's here today, so

6    the plan is I'm going to revoke his recog today, order

7    that he can be released Monday sometime morning, we'll

8    get the time.  He has a 2:00 arraignment in Virginia, and

9    either Monday at 4:00 we'll do this again, he comes back

10   to the courtroom, say by 4:00 Monday, or if not then I'll

11   issue a bench warrant Monday.  So then he'll have to turn

12   himself in Monday evening or so.

13            And then either Monday evening or Tuesday

14   morning, I'll do what Judge Clark-Edwards did, which was

15   order that he be released Level 4.

16            MR. CAMPBELL:  Your Honor, would the Court

17   consider committing him to Level 4 today?  Because when

18   he's committed to Level 4 --

19            THE COURT:  How's he going to get out Monday?

20            MR. CAMPBELL:  He would -- I mean, he would be

21   out today on Level 4.

22            THE COURT:  Oh, I got you.  Because it's not a

23   detainer, so he could go out.

24            MR. CAMPBELL:  Exactly.

25            THE COURT:  Oh.

```
1              MR. CAMPBELL:  It saves us an extra hearing.

2              THE COURT:  Yeah, yeah, yeah.  All right.

3     Again, I already know State objected to the Level 4, but

4     what's your position on that?

5              MR. WILLIAMS:  No objection.

6              THE COURT:  All right.  So, you're right, that

7     makes everything -- and it should -- the arraignment

8     would not prevent them from releasing him and I'm not

9     even sure they would know about the arraignment, quite

10    frankly.

11             But anyway, okay.  So at this time the Court --

12    with the understanding of the previous hearing, the Court

13    is going to revoke the Defendant's personal recognizance.

14    He will be -- before, was it no bond and electronic

15    monitoring or was there a bond and electronic monitoring?

16             MR. CAMPBELL:  It was no bond, electronic

17    monitoring.

18             MR. WILLIAMS:  No bond.

19             THE COURT:  So he'll be held on no bond, but

20    the County Detention Center, Home Detention Unit, is

21    ordered to release the Defendant, to release the

22    Defendant under their rules.

23             Anything else I need to say?

24             MR. CAMPBELL:  I don't believe so, Your Honor.

25    Can he just turn himself in to the jail, rather than
```

7

1    going through booking right now?  They can just get him

2    set up on --

3              THE COURT:  No, because they -- how would they

4    do that?

5              MR. CAMPBELL:  We would just go and I would

6    call Tonya Law or Jeff Logan and then he would go to the

7    jail and --

8              THE COURT:  No, because he's being held on no

9    bond.  I mean, technically there's no bond, but they're

10   going to release him with the no bond.

11             MR. CAMPBELL:  I'm just proposing an

12   alternative course of action.

13             THE COURT:  I don't think they can do that.  So

14   if this were like a sentence, you know, so he's sentenced

15   to six months home detention, then he could do it that

16   way.  You understand what I'm saying?  I could say he's

17   going to report at 5:00 to start his six months home

18   detention.  But this is different.  This is Pretrial.  So

19   it can't work that way.

20             MR. CAMPBELL:  I understand that this is

21   Pretrial, but I do think it can work that way.  I --

22             THE COURT:  How so?

23             MR. CAMPBELL:  I think all Your Honor has to do

24   it is order it.  Order him to report to be set up on the

25   level that Your Honor has ordered, which is electronic

8

1    monitoring.

2              THE COURT:  But then he wouldn't be on bond.

3    You're leaving out the no bond portion.

4              MR. CAMPBELL:  Well, no bond is almost like

5    legal make-weight.  Like the condition is --

6              THE COURT:  I don't know what that means.

7              MR. CAMPBELL:  No bond doesn't -- that term

8    doesn't have legal effects.  The term that does have

9    legal effect is that his release conditions are that he

10   is ordered to Pretrial Level 4, electronic monitoring.

11             It's understood, based on that, there is no

12   money bond in the case.  We all know there's no money

13   bond in the case.  So the only difference is whether he

14   goes into the jail, gets booked into the jail and then

15   Pretrial starts taking him out, which my concern is that

16   might cause some extra additional delay, versus just

17   going straight to Pretrial Level 4, where they can

18   establish him on electronic monitoring.

19             THE COURT:  No.  I mean, I think you're making

20   -- I don't think it will make that much of a difference,

21   it's 10:30, he'll probably be -- they'll probably get him

22   in jail by noon.

23             MR. CAMPBELL:  I just -- I just speak from long

24   and hard experience with this, Your Honor, that nothing

25   ever goes smoothly with Pretrial.  And so that is my

9

```
1     concern.
2              THE COURT:  Well, why would turning himself in
3     make it smoother?
4              MR. CAMPBELL:  Because then he wouldn't be in
5     the jail in the meantime.  He would just be going
6     straight to the Pretrial office, which would cut down on
7     the delay.  Pretrial is going to tell me -- when I call
8     Pretrial immediately after this, they're going to tell
9     me, oh, we have to wait to get the commitment paperwork--
10             THE COURT:  They're going to get that today.
11             MR. CAMPBELL:  Believe me, I'm -- I agree with
12    you, Your Honor, but I --
13             THE COURT:  Well, look, Counsel --
14             MR. CAMPBELL:  -- deal with these people every
15    day.
16             THE COURT:  The whole theory was I was going to
17    release him, he was going to turn himself in in Virginia,
18    I was going to issue a warrant, the detainer was going to
19    bring him back.  So, really, he was never going to be in
20    the street at all anyway.
21             MR. CAMPBELL:  I -- I agree with that, Your
22    Honor, I'm just trying to make it easier.
23             THE COURT:  So we're still doing what was the
24    intent of my decision.
25             MR. CAMPBELL:  Okay.
```

10

1          THE COURT:  You know, I do acknowledge and
2     respect the fact that he let you know what happened and
3     he came in at 10:00 this morning, yeah.  Yeah, I'm glad.
4     And he showed me that he can be trusted on that level.
5          But procedurally, I don't think it's going to
6     -- no, I think it's just going to be more difficult.
7          MR. CAMPBELL:  Would Your Honor include in your
8     order that he is to be released today on Pretrial Level
9     4?
10          THE COURT:  Is that -- okay.  Is there a
11     difference?  If I say he's ordered, I mean, I assume they
12     mean, like, now.  But, okay.
13          MR. CAMPBELL:  It's -- I have a long list of
14     nightmare scenarios that have happened to my clients and
15     so I'm just trying to --
16          THE COURT:  I'll be here.  Tomorrow I'm working
17     a half day, so I'm leaving like around noon.  If you have
18     some problems, you know, you find out this evening,
19     tomorrow morning I'll add it to the docket and do
20     whatever.  But you've got to -- I'd say you've got to --
21     make sure you probably at least get here by 10:30.
22          MR. CAMPBELL:  Okay.
23          THE COURT:  So I can make sure I have time to
24     do it.  All right?
25          MR. CAMPBELL:  Okay.

11

1          THE COURT:  So again, it's no bond, he's

2    ordered into the, again, County Home Detention Program,

3    Level 4.  And he needs to be released today.

4          MR. CAMPBELL:  Thank you, Your Honor.  I'll

5    just wait around so I can get a copy of the order, if I

6    could.

7          THE COURT:  Okay.  Just let the record reflect

8    that all set Court dates remain.  Yeah, because I never

9    did issue a bench warrant, did I?

10          MR. CAMPBELL:  No.

11          THE COURT:  So that wouldn't interrupt the

12    Court dates.  Okay.

13          MR. CAMPBELL:  Not to my knowledge.

14          **(Whereupon, at 10:24 a.m., the proceedings in**

15    **the above matter were concluded.)**

16

17

18

19

20

21

22

23

24

25

12

1

2                    <u>CERTIFICATE OF TRANSCRIBER</u>

3

4            I hereby certify that the proceedings in the

5    matter of State of Maryland vs. Robert Sylvester Frazier,

6    case No. CT22-0860X, heard in the Circuit Court for

7    Prince George's County, Upper Marlboro, Maryland, on

8    August 25, 2022, before the Honorable Lawrence V. Hill,

9    Jr., Judge, were recorded by means of audio file.

10           I further certify that, to the best of my

11   knowledge and belief, page numbers 1 through 12

12   constitute the official transcript of the proceedings as

13   transcribed by me from said audio file to the within

14   typewritten matter in a complete and accurate manner.

15           I further certify that I am neither related to,

16   nor an employee of, any attorney or party herein, and

17   that I have no interest in the outcome of this case.

18           In Witness Whereof, I have affixed my signature

19   this 15th day of November, 2022.

20

21

22

23                   KATHY J. DeMENT, CET

24

25

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY,
MARYLAND

STATE OF MARYLAND    |

|

v.                     |     Case No.: **CT22=0860X**

|

ROBERT FRAZIER    |
        Defendant

|

### ORDER

UPON CONSIDERATION of the Defendant's Motion for Modification and
the State's Opposition, it is on the  25th day of August, 2022, by the Circuit Court
for Prince George's County, Maryland,

ORDERED, that the Defendant's personal recognizance is revoked, it is
further,

ORDERED, that the Pre Trial Unit of the County Detention Center shall
accept the Defendant into it's Level 4 Unit and release the Defendant under it's
supervision as of August 25, 2022, it is further,

ORDERED, that the Pre Trial Unit is to contact the judge's chambers if any
further clarification is needed.

_____

Judge Lawrence V. Hill, Jr.
Circuit Court for Prince Georges County, Maryland

*Robert Frazier 8-26-22*

**JA598**



Add-on
J

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

## DAILY SHEET

| State of Maryland | |
|---|---|
| Plaintiff | |

Kimery Williams
_Plaintiff or State's Attorney_

-vs-

Robert Sylvester Frazier
Defendant (Present)

Jeffery Campbell
_Defendant's Attorney_

Criminal No.   CT220860X

Judge   Hill, Jr.

Date   August 25, 2022

Court Clerk   7945K

☐ J   ☐ C   Day _____
(J=Jury Sworn)
(C=Court Trial)
Case Start Time: 10:12am
Case End Time: 10:23am
# Alternate Jurors

### DOCKET ENTRIES

Hearing on Defendant's Motion to Review Bond

Judge Hill, Jr; CS-M2408

Motion-Granted

Personal Recognizance is revoked

Bond set at Court Ordered Pre-Trial Release Level 4

Order signed and attached

Case to remain set for Motions and Trial

8/25/22

E
3

JA599

# Exhibit B
# Anibal Hernandez
# Case Documents

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY
PRETRIAL INTAKE FACT SHEET

STATE OF MARYLAND
VS.
Anibal Erick Hernandez Jr

ID NO.: 052124
CASE NO.: 5E00715391
CHARGE: PWID
TOTAL BOND: $ 0.00

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: _____

2) AKA's: AnibalErik Hernandez _____

3) Detainers: _____

4) Also In Jail On: _____

5) PreTrial Release: _____

6) P&P Information: _____

7) Residence: Unable/No Answer _____

Length: _____
Tel. #: ( ) _____
Lives With: _____
Verified By: _____

Employment: Self-Employed

Length: _____
Position: Furniture Installer
Can S/he Return: _____
Verified By: _____

8) COMMENTS: Defendant states he lives at 6815 Decator Street, Hyattsville, MD 20784 _____

TOTAL FTA's: CR 0 /MV 0    TOTAL CONTEMPTS: 0    DRUG TEST: _____
Pending: _____

Prior: _____
CR CDS Para (Stet) 06/28/12
CR Poss Mari (Dism) 07/30/15
CR Theft (NP)  10/22/20
CR CDS Para (Stet) 05/08/15

NCIC: _____
MDPPD - Drunken Driving 01/18/18
(G) 12 months probation

LEVEL: 1 2 3 4  DM/CM 0    None
CONDITIONS: _____

Investigator: K Brown _____    Date: 06/23/22 _____

Distribution: White: Judge  Green: Computer Work  Yellow: State's Attorney  Pink: File Copy  Green: Public Defender

PGC Form 3088 (Rev. 9/13)

**JA601**

 

# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772          Case No. 5E00715391

## STATE OF MARYLAND VS. HERNANDEZ, ANIBAL ERICK JR
6815 DECATUR ST
HYATTSVILLE MD 207840000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge LAKEECIA RENEE ALLEN on 06/24/2022.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
  COURT ORDERED PTR/PTSU TO VERIFY ADDRESS/
  LIVE AT VERIFIED ADDRESS/DO NOT OWN/
  POSSESS FIREARMS/AMMO OF ANY KIND

YOU ARE SCHEDULED FOR PRELIMINARY HEARING
  on 07/25/2022 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and
terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court
Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as
soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner
regarding the status of your Application.

06/24/2022  2:30 p.m.  Room:  5

_____          _____
Defendant Signature                  Date

**Tracking No.  190001145902**

**JA602**

## IN THE DISTRICT COURT OF MARYLAND
### FOR PRINCE GEORGE'S COUNTY

**STATE OF MARYLAND**    2022 JUL 12 P 4: 04

    **V.**    :    **5E00715391**

                         :

**ANIBAL ERICK HERNANDEZ JR.**    :

### REQUEST FOR SHOW CAUSE ORDER FOR CONTEMPT
### PURSUANT TO MD. R. SPEC. P. 15-206

COMES NOW defendant Anibal Erick Hernandez Jr., by and through counsel, requests that this Honorable Court require Mary Lou McDonough, Director of the Prince George's County Department of Corrections, appear in Court and show cause why the Court should not find her in constructive civil contempt of the Court's order of June 24, 2022, which required that Mr. Hernandez be released under the supervision of the Pre-Trial Supervision Unit at Levels IV. In support whereof, Mr. Hernandez states as follows:

1. Mr. Hernandez is charged with possession with intent to distribute, possession of marijuana, possession of a firearm in relation to a drug trafficking crime, and other related drug charges. At Mr. Hernandez's initial bond hearing on June 24, 2022, the Honorable Judge Lakeisha Allen presiding, the Court ordered Mr. Hernandez be released on under the supervision of the Pre-Trial Supervision Unit at level IV.

2. On June 24, undersigned counsel sent an email to Jeffrey E. Logan, a Pre-Trial officer, informing him that the court had ordered pretrial release for Mr. Hernandez. *See* Ex. A. Undersigned counsel received an acknowledgment of the email but was provided no information as to whether Mr. Hernandez would be released.

3. Undersigned counsel proceeded to follow-up with Jeffrey E. Logan five more times. *See* Ex. A. (noting follow-up emails on June 27, 2022, July 1, 2022, July 6, 2022, July 8, 2022, and July 12, 2022).

4. To the date of this filing, Jeffrey E. Logan has not provided any information as to Mr. Hernandez's release status, aside from forwarding information to other Pretrial colleagues.

5. As of the date of this filing, Mr. Hernandez is still detained and has been detained for **19 days** after pretrial was ordered to release him.

6. The Pre-Trial Supervision Unit has been on actual notice of Judge Allen's order of June 24 since June 24, when it received undersigned counsel's email. Despite having actual knowledge of the order, the officials in the Unit have failed to comply.

7. The Pretrial Supervision Unit is part of the Community Supervision Section in the Population Management Division of the Prince George's County Department of Corrections' Bureau of Operations.  Corenne Labbé is the Acting Director of the Department of Corrections.

WHEREFORE, Mr. Hernandez asks the Court to require Corenne Labbé to appear in Court and show cause why the Court should not find her in constructive civil contempt of the Court's order of June 24, 2022, requiring that Mr. Hernandez be released on pretrial supervision.

Respectfully Submitted,


*/s/  Brandon Ruben*
Brandon Ruben, Esq.
Assistant Public Defender
4990 Rhode Island Avenue, Room 345
Hyattsville, MD 20781
(240) 324-6371
Brandon.ruben@maryland.gov

2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of July, 2022, a copy of the foregoing motion

was delivered, via fax, on July 12, 2022, to:

Mary Lou McDonough
Director
Prince George's County Department of Corrections
13400 Dille Drive
Upper Marlboro, MD 20772
301-952-7159 (fax)

/s/ *Brandon Ruben*
Brandon Ruben, Esq.
Assistant Public Defender
4990 Rhode Island Avenue, Room 345
Hyattsville, MD 20781
(240) 324-6371
Brandon.ruben@maryland.gov

3

## IN THE DISTRICT COURT OF MARYLAND
## FOR PRINCE GEORGE'S COUNTY

| | | |
|---|---|---|
| **STATE OF MARYLAND** | 2022 JUL 12 ⊡ 4 04 | |
| | : | |
| **V.** | : | 5E00715391 |
| | : | |
| **ANIBAL ERICK HERNANDEZ JR.** | : | |

## SHOW CAUSE ORDER FOR CONTEMPT

UPON CONSIDERATION of the foregoing request for a show cause order,

IT IS HEREBY ORDERED that

Mary Lou McDonough
Director
Prince George's County Department of Corrections
13400 Dille Drive
Upper Marlboro, MD 20772

appear in person before this Court at _____

to show cause why this Court should not find her in constructive civil contempt of the Court's

order of June 24, 2022, which required that defendant Anibal Hernandez be released under the

supervision of the Pre-Trial Supervision Unit at Level IV.

A copy of this Request for a Show Cause Order and this Order shall be served on

Corenne Labbé on or before _____.

This _____ day of July, 2022.

_____
J U D G E

**NOTICE** If you fail to appear, an order may be issued resulting in your arrest and you may be found in contempt of court.

4



**EXHIBIT A**

BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>

Maryland

## Pretrial Ordered Any Level: Hernandez, 5E00715391
15 messages

2022 JUL 12 PM 4:09

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>    Fri, Jun 24, 2022 at 2:35 PM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

Mr. Logan:

Judge Allen today **ordered** Mr. Hernandez released at any level in 5E00715391. I attach the SOC and pretrial sheet.

His girlfriend is reached at (240) 743-6873 and his mom is reached at (240) 476-5846.

Please let me know if I might provide any further information.

Thank you,

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

**2 attachments**

📎 **Hernandez_SOC.pdf**
645K

📎 **Hernandez_Pretrial.pdf**
31K

**Logan, Jeffrey E.** <JELogan@co.pg.md.us>    Fri, Jun 24, 2022 at 4:07 PM
To: BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>

Received and thank you.

**From:** BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>
**Sent:** Friday, June 24, 2022 2:36 PM
**To:** Logan, Jeffrey E. <JELogan@co.pg.md.us>
**Subject:** Pretrial Ordered Any Level: Hernandez, 5E00715391

**CAUTION:** This email originated from an external email domain which carries the additional risk that it may be a phishing email and/or contain malware.

[Quoted text hidden]

*CONFIDENTIALITY NOTICE: This message and any accompanying files contain information belonging to the sender which may be confidential and legally privileged. This information is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this message and any accompanying files is strictly prohibited. If you have received this message in error, please contact the sender immediately and delete the message. Thank you.*

This E-mail and any of its attachments may contain Prince George's County Government or Prince George's County 7th Judicial Circuit Court proprietary information or Protected Health Information, which is privileged and confidential. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited by federal law and may expose you to civil and/or criminal penalties. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout.

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>                    Mon, Jun 27, 2022 at 2:58 PM
To: "Logan, Jeffrey E." <JELogan@co.md.us>

Morning, Jeff. Just circling back to check-in on Mr. Hernandez's release.

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]

**Logan, Jeffrey E.** <JELogan@co.pg.md.us>                    Mon, Jun 27, 2022 at 3:17 PM
To: BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>

Hi back. Did Ms. Law ever send you a response? I guess my interrogatory is rhetorical if you're reaching out to me.

[Quoted text hidden]
[Quoted text hidden]

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>                    Mon, Jun 27, 2022 at 3:20 PM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

She hasn't yet.

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]

**Logan, Jeffrey E.** <JELogan@co.pg.md.us>                    Mon, Jun 27, 2022 at 3:35 PM
To: BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>

Gotcha…

[Quoted text hidden]
[Quoted text hidden]

---

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>                    Fri, Jul 1, 2022 at 2:10 PM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

Jeff:

Hope you're well. Just following up on Mr. Hernandez's release at any level.

Thanks so much,

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]

---

**Logan, Jeffrey E.** <JELogan@co.pg.md.us>                    Fri, Jul 1, 2022 at 2:14 PM
To: BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>

Wishing the same for you too.

I've submitted your previous emails to Mr. Gray and Ms. Law.

I'll check again after bond hearing.

[Quoted text hidden]
[Quoted text hidden]

---

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>                    Fri, Jul 1, 2022 at 2:14 PM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

Thank you sir.

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]

---

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>                    Wed, Jul 6, 2022 at 8:40 AM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

Jeff:

Just checking in on Mr. Hernandez.

Thank you,

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]

---

**Logan, Jeffrey E.** <JELogan@co.pg.md.us>                     Wed, Jul 6, 2022 at 11:41 AM
To: BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>

Good Morning to you Brandon.  I'll try to check in on your client's status and provide you with some feedback.

Thanks,

Jeff

[Quoted text hidden]
[Quoted text hidden]

---

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>           Fri, Jul 8, 2022 at 11:04 AM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

Mr. Logan:

Thank you. I am circling back to check on Mr. Hernandez's release status. He was ordered released on 6/24. Do you know when that order will be effectuated and if not why not?

Thank you,

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]

---

**Logan, Jeffrey E.** <JELogan@co.pg.md.us>                     Fri, Jul 8, 2022 at 11:27 AM
To: BRANDON RUBEN -OPD- <brandon.ruben@maryland.gov>

Good morning again.

I've sent a request to Home Detention for an update.  I'll let you know what status I receive.

[Quoted text hidden]
[Quoted text hidden]

---

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>                    Mon, Jul 11, 2022 at 9:35 AM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

Thanks, Jeff. Looking forward to hearing.

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]

---

**BRANDON RUBEN -OPD-** <brandon.ruben@maryland.gov>                    Tue, Jul 12, 2022 at 9:20 AM
To: "Logan, Jeffrey E." <JELogan@co.pg.md.us>

Jeff:

I hope you are well. I'm circling back for an update on Mr. Hernandez. The Court ordered him
released on 6/24.

Thanks so much,

Brandon Ruben
Assistant Public Defender
Maryland Office of the Public Defender
Prince George's County, District V
(240) 324-6371

[Quoted text hidden]



# PRINCE GEORGE'S COUNTY GOVERNMENT
## Department of Corrections

Angela D. Alsobrooks
County Executive

**July 13, 2022**

| | |
|---|---|
| **TO:** | The Honorable LaKeecia Renee Allen |
| **FROM:** | Hope Clark, Case Manager, Monitoring Services |
| **DEFENDANT:** | Anibal Hernandez Jr. |
| **CASE/CHARGE:** | [1. CR5E007115391 Firearm/Drug Trafficking] 5E7|5391 |

*(handwritten: T/D 7/25/ 26/ 8:45AM)*

[ X ]   The above defendant has been evaluated for program placement;

[ ]   The above defendant is being reconsidered for pretrial release;

[ x ]   The above defendant is no longer eligible for pretrial release;

[ ]   The above defendant violated "Conditions of Release";

[ ]   The above defendant's whereabouts are currently unknown/absconded;

**STATUSES**

1.   [ ]   **Victim Fears**

2.   [ ]   **Pending Case (s)/Detainer (s)**

3.   [ ]   **Criminal History**

4.   [ X ]   **No Verifiable Address**

5.   [ ]   **Mental Health Issue / Evaluation Pending**

6.   [ ]   **Medical Health Issue(s)**

7.   [ ]   **Violated "Conditions of Release"**

8.   [ ]   **Federal Hold or State Hold**

9.   [ ]   **Other-See Explanation**

*(handwritten: Recieved DOC 7/9/22)*

**EXPLANATION:**

cc:   Lisa Hall Johnson, Administrative Judge
      PGCDOC-Corenne Labbe, Director
      PGCDOC-Guy Merritt,  Deputy Director, Bureau of Administration
      PGCDOC-Elizabeth Coker-Nnam, Acting Division Chief, Community Corrections

 

# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772          Case No. 5E00715391

## STATE OF MARYLAND  VS.  HERNANDEZ, ANIBAL ERICK JR
6815 DECATUR ST
HYATTSVILLE MD 207840000

| | | |
|---|---|---|
| CC #:22-0029163 | State ID: 0004181618 | LocID: |
| Eyes: BRN       Hair: BLK | Height: 5'09" | Weight: 170 lb. |
| Race:2       Sex:M       DOB:02/09/1993       DL #: | | |

**Charge | Statute | AR/Citation**
CDS: POSS W/I DIST: NARC | 1 1119 CR5602(2) |
CDS: POSSESS-NOT MARIJUANA | 1 1111 CR5601(a)(1) |
FIREARM/DRUG TRAF CRIME | 1 0493 CR5621(b)(1) |

**Charge | Statute | AR/Citation**
CDS:IMPORT INTO STATE | 3 3550 CR5614 |
CDS: POSS MARIJUANA 10 GM+ | 1 1564 CR5601(a)(1) |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
   13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant
who is charged with the offense(s) listed above.
Trial/Hearing was held by Judge KATINA S. STEUART and the Defendant is committed
In default of  $5,000.00 bail (greater of $25.00 or 10% acceptable)

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
   NO CDS/ WEAPONS/ FIREARMS/AMMUNITION

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
   on 08/24/2022 at 10:15 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNT
   located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 07/25/2022   Time: 4:07 p.m.          JUDGE/CLERK:_____

**Tracking No. 190001145902**                                            ye Katina S. Steuart

CC-DC-CR-028 (Rev. 07/2017)

JA614



Page: 1     Date: 07/25/2022
Room: 5     Time: 4:07 PM

Case No. 5E00715391



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772
## STATE OF MARYLAND  VS.  HERNANDEZ, ANIBAL ERICK JR
6815 DECATUR ST
HYATTSVILLE MD 207840000



CC #:22-0029163      State ID:0004181618      LocID:
Eyes: BRN   Hair: BL   Height: 5'09"      Weight: 170 lb.
Race: 2      Sex: M     DOB:02/09/1993  ·    DL #:

## DEFENDANT TRIAL SUMMARY

The Preliminary Hearing in the above case was POSTPONED today, 07/25/2022.
   REASON: PROBABLE CAUSE FOUND.

YOUR NEXT COURT APPEARANCE IS SCHEDULED FOR FELONY DISMISSAL on 08/24/2022 at 10:15 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772.

THE COURT HAS REVISED YOUR BAIL:
Ordered that you be held in default of $5,000.00 bond, greater of $25.00 or 10% acceptable if posted in cash or certified check only; or the full amount if posted with collateral security or obligation of a corporation which is an insurer.
AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
NO CDS/ WEAPONS/ FIREARMS/AMMUNITION

If you have been convicted of, pled guilty to, or received probation before judgment for a crime, it may be unlawful for you to possess or purchase a firearm, including a rifle, shotgun, pistol, revolver, or ammunition, pursuant to state and/or federal law. If you have any questions about whether it is now illegal for you to possess or purchase a firearm, you should immediately consult an attorney. For additional information about these prohibitions or the surrender of firearms (even if you are currently incarcerated), please consult http://www.marylandattorneygeneral.gov/Forms/ Form_77R_gun_questions.pdf or contact Maryland State Police at: 1-410-653-4500.

You may be entitled to expunge this record and any DNA sample and DNA record relating to the charge or charges against you.  Effective October 1, 2021, certain cases shall be automatically expunged after three years if all charges resulted in any combination of acquittal, dismissal, not guilty or nolle prosequi, or you may file for expungement of those charges within three years upon completion of the attached Petition for Expungement of Records and General Waiver and Release. To learn more about which cases may be eligible for expungement, see the Expungement Brochure available in the Clerk's office or visit the Maryland Courts website: www.mdcourts.gov/legalhelp/expungement

07/25/2022     Defendant_____        (HERNANDEZ, ANIBAL ERICK JR)

Tracking No. 190001145902  .

# Exhibit D
# Christopher Butler
# Case Documents

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY
PRETRIAL INTAKE FACT SHEET

32 BM

STATE OF MARYLAND
VS.
Christopher Daniel Butler

ID NO.: 017098
CASE NO.: CR5E00704415
CHARGE: Murder 2nd Degree
TOTAL BOND: $ 0.00

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: Do not enter or be near scene of (alleged) crime.

2) AKA's: Daniel Butler Christopher

3) Detainers: No know detainers

4) Also In Jail On: n/a

5) PreTrial Release: 0-PTR

6) P&P Information: n/a

7) Residence: Unable/ No Answer

Length:
Tel. #: (  )
Lives With:
Verified By:

Employment: Unemployed

Length:
Position:
Can S/he Return:
Verified By:

8) COMMENTS: Defendant states he lives at 500 Quarry Ave, Capital Heights, MD, 20743

TOTAL FTA's: CR 0 /MV 0    TOTAL CONTEMPTS: 0    DRUG TEST:
Pending:
No known pending cases

NCIC:
no NCIC convictions found

Prior:
CR Fail Pay Fare (Stet) 6/13/13
CR CDS Poss w/Int (NP) 12/23/14
CR Aslt 2nd (NP) 9/9/16- NVI
CR Loaded Handgun (NP) 8/13/21

LEVEL: 1 2 3 4  DM/CM 0    None
CONDITIONS:

Investigator: Thompson

Date: 10/28/21

Distribution:  White: Judge  Green: Computer Work  Yellow: State's Attorney  Pink: File Copy  Green: Public Defender

PGC Form 3088 (Rev. 9/13)

 

# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 5E00704415

## STATE OF MARYLAND  VS.  BUTLER, CHRISTOPHER DANIEL
500 QUARRY AVE
CAPITOL HEIGHTS MD 207430000

CC #:21-0049445     State ID:0004157898    LocID:
Eyes: BRN    Hair: BLK    Height: 5'08"    Weight: 120 lb.
Race: I    Sex:M    DOB:09/13/1989    DL #:

**Charge | Statute | AR/Citation**
MURDER-SECOND DEGREE | 1 1107 CR2204 |
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |

**Charge | Statute | AR/Citation**
MANSLAUGHTER | 1M0910 CR2207(a) |
FIREARM USE/FEL-VIOL CRIME | 1 5299 CR4204b |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge ADA ELIZABETH CLARK-EDWARDS and the Defendant is committed Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
APPEAR IN COURT.NOT ENTER OR BE NEAR 1010 ATLEE DRIVE, LANDOVER, MARYLAND, PRINCE GEORGE'S COUNTY.NOT OWN/POSSESS WEAPONS. RESET BH TO 10/29/2021 @ 1:15P IN 261 VIA ZOOM

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 11/24/2021 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 10/28/2021  Time: 2:51 p.m.

JUDGE/~~CLERK~~: _____

Judge Ada Clark Edwards

**Tracking No. 180001450543**
CC-DC-CR-028 (Rev. 07/2017)

JA618



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 5E00704415

## STATE OF MARYLAND  VS.  BUTLER, CHRISTOPHER DANIEL
500 QUARRY AVE
CAPITOL HEIGHTS MD 207430000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge ADA ELIZABETH CLARK-EDWARDS on 10/28/2021.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
    APPEAR IN COURT.NOT ENTER OR BE NEAR 1010
    ATLEE DRIVE, LANDOVER, MARYLAND, PRINCE GE
    ORGE'S COUNTY.NOT OWN/POSSESS WEAPONS.
    RESET BH TO 10/29/2021 @ 1:15P IN 261 VIA
    ZOOM

YOU ARE SCHEDULED FOR PRELIMINARY HEARING
    on 11/24/2021 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner regarding the status of your Application.

10/28/2021  2:51 p.m.  Room:  5

_____      _____
Defendant Signature               Date

Tracking No.  180001450543          JA619



# DISTRICT COURT OF MARYLAND FOR Prince George's County

## BUTLER, CHRISTOPHER DANIEL

Case No. 5E00704415

500 QUARRY AVE
CAPITOL HEIGHTS, MD 20743-0000

Sex: M    Ht: 5' 08"    Wt: 120    Race: I    Eyes: BRN    Hair: BLK
DOB: 09/13/1989    Home phone: 240-603-0431    Cellphone:
CC#: 21-0049445    LID:        SID: 0004157898
DL#:        ☐ DEFENDANT IS A MINOR

CHARGE 001 OF 4  1 1107   CR2204  --Felony40 Y   MURDER-SECOND DEGREE

**More charges on continuation page.**

## THE COURT ON THE DATE SHOWN BELOW ---

☑ MADE CERTAIN THE DEFENDANT RECEIVED COPY OF CHARGING DOCUMENT        ☐ RIGHTS GIVEN BY VIDEO
☐ INFORMED DEFENDANT OF RIGHT TO COUNSEL AND IMPORTANCE OF ASSISTANCE OF COUNSEL        ☐ BAIL REVIEW POSTPONED
   ☐ DEFENDANT WAIVED ATTORNEY FOR BAIL REVIEW
   ☐ THE PUBLIC DEFENDER PROVIDED PROVISIONAL REPRESENTATION AT THE BAIL REVIEW
   ☐ REPRESENTED BY:_____
☐ DEFENDANT ADVISED OF RIGHT AT        ☐ INITIAL APPEARANCE        ☐ PRELIMINARY INQUIRY
☐ REQUIRED TO READ OR ☐ READ TO DEFENDANT THE NOTICE OF RIGHTS TO COUNSEL.
☐ ADVISED DEFENDANT OF THE NATURE OF THE CHARGES AND ALLOWABLE AND ANY MANDATORY OR ENHANCED PENALTIES
☐ ADVISED DEFENDANT THAT MAKING NEXT APPEARANCE WITHOUT COUNSEL COULD BE A WAIVER
   ☐ REMINDED THE DEFENDANT THAT REPRESENTATION BY THE OPD AT BAIL REVIEW ENDS WITH THE BAIL REVIEW
☐ ADVISED FELONY DEFENDANT OF RIGHT TO PRELIMINARY HEARING
   ☐ DEFENDANT REQUESTED PRELIMINARY HEARING AT THIS TIME
☐ ADVISED DEFENDANT OF RIGHT TO JURY TRIAL
☐ RELEASED DEFENDANT ON OWN RECOGNIZANCE
☐ HOLD WITHOUT BOND
☑ ORDERED BAIL TO REMAIN SAME        ☐ CONDITION(S)/RESTRICTION(S) TO REMAIN THE SAME
☐ REVISED BAIL $_____.00        ☐ CASH (MAY BE POSTED BY THIRD PARTY)        ☐ FAILURE TO PAY SUPPORT, TO BE CASH,
   POSTED BY DEFENDANT ONLY        ☐ PCT___%        ☐ UNSECURED PERSONAL BOND $_____ .00
☐ REINSTATED BAIL $_____.00        ☐ POSTED ON ___ / ___ / ___
☐ COMMITTED IN DEFAULT OF BOND
☐ DEFENDANT IS A MINOR AND
   ☐ SHALL BE HELD IN A SECURE JUVENILE FACILITY PROVIDED DEPARTMENT OF JUVENILE SERVICES DETERMINES THERE IS AVAILABLE CAPACITY TO HOLD DEFENDANT
   ☐ SHALL NOT BE HELD IN A SECURE JUVENILE FACILITY. COURT FINDS THAT DETENTION IN A SECURE JUVENILE FACILITY WILL POSE A RISK OF HARM TO THE MINOR DEFENDANT
   OR OTHERS FOR THE FOLLOWING REASONS:

## IMPOSED THE FOLLOWING CONDITION(S)/RESTRICTION(S) ON THE DEFENDANT:

☒ REQUIRED CONDITIONS OF RELEASE: 1) DEFENDANT WILL NOT ENGAGE IN ANY CRIMINAL CONDUCT DURING THE PERIOD OF PRETRIAL
   RELEASE AND 2) THE DEFENDANT WILL APPEAR IN COURT WHEN REQUIRED TO DO SO.
☐ BOND TO BE CO-SIGNED BY:_____
☐ COMPLETE PTSU INTERVIEW
☐ PROOF OF ADDRESS TO        ☐ PTSU        ☐ COMMISSIONER BEFORE RELEASE
☐ PTSU TO VERIFY ADDRESS BEFORE RELEASE
☐ LIVE AT ADDRESS THAT PTSU HAS VERIFIED
☐ PROOF OF IDENTITY TO        ☐ PTSU        ☐ COMMISSIONER BEFORE RELEASE
☐ SURRENDER CURRENT PASSPORT/ALL TRAVEL DOCUMENTS TO THE COURT BEFORE RELEASE
☐ SUBSTANCE ABUSE TREATMENT IF _____ DEEMS NECESSARY
☐ MENTAL HEALTH TREATMENT IF PTSU DEEMS NECESSARY
☐ NO CONTACT WITH VICTIMS/STATE'S WITNESSES/CO-DEFENDANTS
☐ STAY AWAY FROM _____
   ☐ USE ELECTRONIC MONITORING TO CONFIRM AREA OF RESTRICTION
☐ CURFEW: AS SET BY PTSU OR _____
☐ REPORT TO PROBATION OFFICER NEXT BUSINESS DAY AFTER RELEASE
☐ TRANSFER DIRECTLY TO_____ BY _____ WHEN BED AVAILABLE
☐ RELEASE TO THE FOLLOWING RESIDENTIAL TREATMENT PROGRAM_____
   ☐ REFERRED DEFENDANT FOR COMPETENCY EVALUATION        ☐ OUT-PATIENT
TRIAL SCHEDULED:   DATE:_____   TIME:_____   LOC:_____   ROOM:_____
☐ BAIL REVIEW        ☐ PREL. INQUIRY        ☐ PREL. HEARING        ☐ TRIAL        ☐ VOP        ☐ SENTENCING
☐ PLACED IN CUSTODY OF_____
☐ PRE-TRIAL SUPERVISION BY_____
☐ ALCOHOL SCREENING        ☐ DRUG SCREENING
☐ ALCOHOL PROGRAM        ☐ DRUG PROGRAM

**Prince George's County Only:**
☐ GPS TRACKING:    ☐ $_____ FEE ASSESSED        ☐ FEE WAIVED
☐ OTHER:_____

Date  10/28/21        Judge   JA620        ID Number

**Tracking No. 180001450543**
DC-BR-DOC-001 BAIL REVIEW DOCKET (Rev. 11/2017)



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 5E00704415

## STATE OF MARYLAND  VS.  BUTLER, CHRISTOPHER DANIEL
500 QUARRY AVE
CAPITOL HEIGHTS MD 207430000

| | |
|---|---|
| CC #:21-0049445 | State ID:0004157898 | LocID: |
| Eyes: BRN    Hair: BLK | Height: 5'08" | Weight: 120 lb. |
| Race: I    Sex:M    DOB:09/13/1989    DL #: | | |

**Charge | Statute | AR/Citation**
MURDER-SECOND DEGREE | 1 1107 CR2204 |
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |

**Charge | Statute | AR/Citation**
MANSLAUGHTER | 1M0910 CR2207(a) |
FIREARM USE/FEL-VIOL CRIME | 1 5299 CR4204b |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant
who is charged with the offense(s) listed above.

Bail review was held by Judge CLAYTON ANTHONY AARONS and the Defendant is committed
Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
NONE

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 11/24/2021 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 10/29/2021   Time: 2:02 p.m.

JUDGE

Clayton A. Aarons

**Tracking No. 180001450543**

CC-DC-CR-028 (Rev. 07/2017)

JA621



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 5E00704415

## STATE OF MARYLAND  VS.  BUTLER, CHRISTOPHER DANIEL
500 QUARRY AVE
CAPITOL HEIGHTS MD 207430000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge CLAYTON ANTHONY AARONS on 10/29/2021.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
  No restrictions imposed.

YOU ARE SCHEDULED FOR PRELIMINARY HEARING
  on 11/24/2021 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner regarding the status of your Application.

10/29/2021   2:02 p.m.   Room: 5

_____       _____
Defendant Signature                          Date

Tracking No.   180001450543                    JA622




# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 5E00704415
Tracking No. 180001450543

## BAIL REVIEW DOCKET
## STATE OF MARYLAND  VS.  BUTLER, CHRISTOPHER DANIEL

**BUTLER, CHRISTOPHER DANIEL**  CC #:21-0049445      State ID: 0004157898      LocID:
500 QUARRY AVE                Eyes: BRN    Hair: BLK     Height: 5'08"      Weight: 120 lb.
CAPITOL HEIGHTS MD 207430000  Race: 1      Sex:M      DOB:09/13/1989      DL #:
☐ DEFENDANT IS A MINOR

CHARGE: 1 OF 4  1 1107 CR2204 --Felony  40 Y  $0.00  MURDER-SECOND DEGREE
CHARGE: 2 OF 4  1M0910 CR2207(a) --Felony  10 Y  $500.00  MANSLAUGHTER

**Charges on continuation page.**

## THE COURT ON THE DATE SHOWN BELOW ---
☑ MADE CERTAIN THE DEFENDANT RECEIVED COPY OF CHARGING DOCUMENT                    ☐ RIGHTS GIVEN BY VIDEO
☑ INFORMED DEFENDANT OF RIGHT TO COUNSEL AND IMPORTANCE OF ASSISTANCE OF COUNSEL   ☐ BAIL REVIEW POSTPONED
☐ DEFENDANT WAIVED ATTORNEY FOR BAIL REVIEW
☑ THE PUBLIC DEFENDER PROVIDED PROVISIONAL REPRESENTATION AT THE BAIL REVIEW
☐ REPRESENTED BY:_____ D. HAMILTON
☑ DEFENDANT ADVISED OF RIGHTS AT    ☑ INITIAL APPEARANCE    ☐ PRELIMINARY INQUIRY
☐ REQUIRED DEFENDANT TO READ OR    ☑ READ TO DEFENDANT THE NOTICE OF ADVICE OF RIGHTS TO COUNSEL.
☑ ADVISED DEFENDANT OF THE NATURE OF THE CHARGES AND ALLOWABLE AND ANY MANDATORY OR ENHANCED PENALTIES
☐ ADVISED DEFENDANT THAT MAKING NEXT APPEARANCE WITHOUT COUNSEL COULD BE A WAIVER
☐ REMINDED THE DEFENDANT THAT REPRESENTATION BY THE OPD AT BAIL REVIEW ENDS WITH THE BAIL REVIEW
☐ ADVISED FELONY DEFENDANT OF RIGHT TO PRELIMINARY HEARING
☐ DEFENDANT REQUESTED PRELIMINARY HEARING AT THIS TIME
☐ ADVISED DEFENDANT OF RIGHT TO JURY TRIAL
☐ RELEASED DEFENDANT ON OWN RECOGNIZANCE
☑ HOLD WITHOUT BOND
☑ ORDERED BAIL TO REMAIN THE SAME    ☐ CONDITION(S)/RESTRICTION(S) TO REMAIN THE SAME
☐ REVISED BAIL $_____.00    ☐ CASH (MAY BE POSTED BY THIRD PARTY)    ☐ FAILURE TO PAY SUPPORT, TO BE CASH,
     POSTED BY DEFEDANT ONLY    ☐ PCT_____%    ☐ UNSECURED PERSONAL BOND $_____.00
☐ REINSTATED BAIL $_____.00    POSTED ON ___/___/_____
☐ COMMITTED IN DEFAULT OF BOND
☐ DEFENDANT IS A MINOR, AND
     ☐ SHALL BE HELD IN A SECURE FACILITY PROVIDED DEP. OF JUVENILE SERVICES DETERMINES THERE IS AVAILABLE CAPACITY TO HOLD DEFENDANT.
     ☐ SHALL NOT BE HELD IN A SECURE JUVENILE FACILITY. COURT FINDS THAT DETENTION IN A SECURE JUVENILE FACILITY WILL POSE A RISK OF HARM
        TO THE MINOR DEFENDANT OR OTHERS FOR THE FOLLOWING REASONS:_____
     _____

## IMPOSED THE FOLLOWING CONDITION(S)/RESTRICTION(S) ON THE DEFENDANT:

☒ REQUIRED CONDITIONS OF RELEASE: 1) DEFENDANT WILL NOT ENGAGE IN ANY CRIMINAL CONDUCT DURING THE PERIOD OF PRETRIAL
     RELEASE AND 2) THE DEFENDANT WILL APPEAR IN COURT WHEN REQUIRED TO DO SO.
☐ BOND TO BE CO-SIGNED BY:_____
☐ COMPLETE PTSU INTERVIEW
☐ PROOF OF ADDRESS TO        ☐ PTSU        ☐ COMMISSIONER BEFORE RELEASE
☐ PTSU TO VERIFY ADDRESS BEFORE RELEASE
☐ LIVE AT ADDRESS THAT PTSU HAS VERIFIED
☐ PROOF OF IDENTITY TO       ☐ PTSU        ☐ COMMISSIONER BEFORE RELEASE
☐ SURRENDER CURRENT PASSPORT/ALL TRAVEL DOCUMENTS TO THE COURT BEFORE RELEASE
☐ SUBSTANCE ABUSE TREATMENT IF _____ DEEMS NECESSARY
☐ MENTAL HEALTH TREATMENT IF PTSU DEEMS NECESSARY
☐ NO CONTACT WITH VICTIMS/STATE'S WITNESSES/CO-DEFENDANTS
☐ STAY AWAY FROM_____
     ☐ USE ELECTRONIC MONITORING TO CONFIRM AREA OF RESTRICTION
☐ CURFEW: AS SET BY PTSU OR _____
☐ REPORT TO PROBATION OFFICER NEXT BUSINESS DAY AFTER RELEASE
☐ TRANSFER DIRECTLY TO_____ BY _____ WHEN BED AVAILABLE
☐ RELEASE TO THE FOLLOWING RESIDENTIAL TREATMENT PROGRAM_____
     ☐ REFERRED DEFENDANT FOR COMPETENCY EVALUATION        ☐ OUT-PATIENT
☐ TRIAL SCHEDULED: DATE:_____ TIME:_____ LOC:_____ ROOM:_____
     ☐ BAIL REVIEW    ☐ PREL. INQUIRY    ☐ PREL. HEARING    ☐ TRIAL    ☐ VOP    ☐ SENTENCING
☐ PLACED IN CUSTODY OF_____
☐ PRE-TRIAL SUPERVISION BY_____
☐ ALCOHOL SCREENING                      ☐ DRUG SCREENING
☐ ALCOHOL PROGRAM                        ☐ DRUG PROGRAM
### Prince George's/Washington County Only:
☐ GPS TRACKING    ☐ $_____ FEE ASSESSED    ☐ FEE WAIVED
☐ OTHER:_____

_10-29-21_____          _____          _____CAB_____
Date                                Judge                           ID Number

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

THE STATE OF MARYLAND,                    *

   v.                                          *

CHRISTOPHER BUTLER                        *  Case No.: CT211239X

  Defendant                                   *

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## MOTION FOR BAIL REVIEW

Defendant, Christopher Butler, through counsel, Allison Heldreth, respectfully requests that this Honorable Court review his pretrial detention status and states the following in support:

1. Mr. Butler is currently being held without bond on charges of, *inter alia*, murder in the first degree

2. Mr. Butler does not currently have any court date sets.

3. Mr. Butler is looking at weathering yet another wave of the COVID-19 virus in a congregate living facility. According to the Center for Disease Control, the variant causing this new wave spreads more easily than prior versions.[1]

4. Given that Mr. Butler does not have even a status date set to pick dates, it is likely that his trial date will not be anytime soon. Mr. Butler requests that he be able to make the case that he should spend that time on house arrest instead of in the dangerous situation developing at the local jail.

WHEREFORE, the Defendant requests that this Court set a bail review as soon as the Court's calendar will allow.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html




**JA624**

Respectfully submitted,

Allison E. Heldreth
Assistant Public Defender
CPF # 1406170131
14735 Main St. Suite 272B
Upper Marlboro, MD 20772
(301) 952-2561

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 6, 2022, a copy of the foregoing motion was delivered to the State's Attorney Office for Prince George's County.

Allison E. Heldreth

**JA625**

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | | |
|---|---|---|
| THE STATE OF MARYLAND, | * | |
| v. | * | |
| CHRISTOPHER BUTLER | * | Case No.: CT211239X |
| Defendant | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

Upon consideration of the Defendant's Motion for Bail Review, and any opposition

thereto, it is this __18__ day of __January__, 2022 hereby;

_____**ORDERED** that a **virtual** review of the Defendant's bail be set for the

_____day of _____, 2022 in court room #_____ at _____.___M

_____
Judge

Nicholas E. Rattal, Judge

ENTERED: _____

**JA626**

IN THE CIRCUIT COURT FOR
PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND,

vs.                                          Case Number:
                                             CT211239X
CHRISTOPHER BUTLER,

      Defendant.

_____

OFFICIAL TRANSCRIPT OF PROCEEDINGS


(Status Hearing and Bond Review)


Upper Marlboro, Maryland

Friday, February 18, 2022

BEFORE:

HONORABLE CATHY H. SERRETTE, Associate Judge



APPEARANCES:

    FOR THE STATE:

    STEVEN D. SMITH, ESQUIRE, ASA

    FOR THE DEFENDANT:

    ALLISON HELDRETH, ESQUIRE

2

T A B L E   O F   C O N T E N T S

P A G E

Ruling by the Court (Judge Rattal)              13
Regarding Scheduling

Bond Hearing:

Argument by Ms. Heldreth                         17

Argument by Mr. Smith                            22

Further Argument by Ms. Heldreth                 26

Further Argument by Mr. Smith                    28

The Court's Ruling                               29

```
 1                    P R O C E E D I N G S

 2        (On the record at 10:30:39.)

 3             THE COURT:  Can you call the case, Madam Clerk?

 4             THE DEPUTY CLERK:  Now calling number 5 and

 5    number 6 on the docket, CT211239X, State of Maryland

 6    versus Christopher Butler.

 7             MR. SMITH:  Good morning, Your Honor.  Steven D.

 8    Smith on behalf of the State.

 9             MS. HELDRETH:  Good morning.  Allison Heldreth

10    on behalf of Mr. Butler and he is present virtually from

11    the Detention Center.

12             THE COURT:  Okay.  Guys, we have two things to

13    do, a status as well as a bond review.  Mr. Smith, while

14    you were gone, we were looking for Motions dates and trial

15    dates, as you know, because Ms. Burton was texting with

16    you.  It turns out that the Hicks date, pursuant to the

17    docket entry, is May 23rd, and I don't have a week before

18    May 23rd, so I think the first thing we need to do is try

19    to get Judge Rattal here about a date.  I suppose we

20    should clear a date so that when he comes, we could tell

21    him when that would be, so he has all the facts in front

22    of him.

23             And then while we're waiting for him, we could

24    do everything else we can do on the status hearing as well

25    as the appeal, okay.
```

4

1          MR. SMITH:  Okay.  Very well, Your Honor.

2          THE COURT:  So I'm sorry, Madam Clerk.  I know

3     you gave a week, but I don't know what week that was.

4          THE DEPUTY CLERK:  No, it's okay.  For Motions

5     they gave me March 16th.

6          MR. SMITH:  That date doesn't work.

7          THE DEPUTY CLERK:  That doesn't work.

8          MS. HELDRETH:  Doesn't work for me either.

9          THE DEPUTY CLERK:  Okay.  Do you have a date

10    that does work?

11         MS. HELDRETH:  That week in June I referred to,

12    basically any -- I have Wednesday or Thursday, besides the

13    first of week for me.

14         THE DEPUTY CLERK:  For motions?

15         MS. HELDRETH:  For motions, yes.

16         THE DEPUTY CLERK:  Okay.

17         THE COURT:  While Madam Clerk is talking to

18    calendar management, this is not a superceding Indictment,

19    am I correct?

20         MR. SMITH:  It was not, Your Honor, no.

21         THE COURT:  Okay.  So we don't have to transfer

22    any bond.  Do we know what the Motions are going to be,

23    what issues?

24         MR. SMITH:  (indiscernible at 10:33:00.)

25         MS. HELDRETH:  Your Honor, there's a statement.

1              THE COURT:  There's a statement?

2              MS. HELDRETH:  Yes, Your Honor, and there was

3    also -- there were search warrants.  I have to nail down

4    whether there were any issues, but there were searches and

5    seizures, so it's possible those would be subject to

6    motions as well.

7              THE COURT:  Okay.  And you're saying, you're

8    guesstimating two hours?  Is that what you're asking for?

9              MS. HELDRETH:  I am.  I will certainly let the

10   Court know if we feel like we need more time than that,

11   but I think it's safe to carve out at least a couple of

12   hours.

13             THE COURT:  Okay.  When you say you'll let the

14   Court know, by the time you let me know, that other time

15   will probably be committed.  So do you need three hours?

16   I mean, I would rather get you the time and condense it,

17   than ask to spread it because, as you could see today, our

18   calendars don't allow that.

19             MS. HELDRETH:  I think that's fair, Your Honor.

20   So can we actually settle it for a half day just to be --

21             THE COURT:  For three hours?

22             MS. HELDRETH:  Yes, Your Honor.

23             THE COURT:  Okay.  Madam Clerk, it's three hours

24   for motions.  And are we going to need any interpreters?

25             MR. SMITH:  No, Your Honor.

6

1          MS. HELDRETH:  Not from our end.

2          THE COURT:  And Ms. Heldreth estimated four

3    days.  Mr. Smith, does that make sense to you?

4          MR. SMITH:  I would probably say three, but it's

5    better to be safe than sorry, so --

6          THE COURT:  Absolutely.  We also don't know what

7    the jury selection is going to look like at that time.

8          MR. SMITH:  Right.

9          THE DEPUTY CLERK:  They said June 13th.  Is that

10   okay for motions?

11         MR. SMITH:  No, I'm sorry.  I have a trial that

12   week, so I can do any of the other following two weeks for

13   then.

14         THE DEPUTY CLERK:  Is June 27th, okay?

15         MR. SMITH:  Yes.

16         MS. HELDRETH:  It doesn't work for me, but I can

17   do later that week.  The Mondays are not real good, but --

18         THE DEPUTY CLERK:  Is the 28th or the 29th okay?

19         MS. HELDRETH:  The 29th.

20         MR. SMITH:  That's fine for me.

21         THE COURT:  Madam Clerk, these are tentative

22   because it all depends, of course, on whether or not Judge

23   Rattal finds good cause.  Has there been a plea offer at

24   this point?

25         MR. SMITH:  No, Your Honor.  Those cases, that's

**JA632**

1   not new, but no, not yet, but one will be.

2           THE DEPUTY CLERK:  The date that calendar

3   management can fit is November 29th through the 30th and

4   then going November 28th to December 1st.

5           MS. HELDRETH:  I know it sounds improbable, but

6   I have a murder trial scheduled that week.  I'm free in

7   the months before, but there is already a trial, I know,

8   that's going that week.

9           THE DEPUTY CLERK:  It's just they're going off

10  of Judge Serrette's calendar and she's not available.

11          MS. HELDRETH:  Before then?  I'm sorry.  I hate

12  to do this, but I can't do that week.  I can't double

13  book, you know, you know, homicide trials.

14          THE DEPUTY CLERK:  I understand.

15          MR. SMITH:  And then I have two weeks in

16  October, but if that doesn't work for the Court --

17          THE DEPUTY CLERK:  The next available date will

18  have to be in 2023.

19          MR. SMITH:  Okay.  I do have something already

20  set for the week of, I think, the 23rd, so anytime other

21  than that is good for me.

22          MS. HELDRETH:  I have nothing in 2023.

23          THE COURT:  They have January 2nd through

24  January 5th, 2023.

25          MS. HELDRETH:  I'm available and I'll do this

1    before Judge Rattal, but again, we just note Mr. Butler's

2    demand for a speedy trial and objection to going past

3    Hicks.

4             MR. SMITH:  And that on a holiday, the 2nd?

5             THE DEPUTY CLERK:  I'm sorry.  What did you say

6    about the 2nd?

7             MR. SMITH:  Is the 2nd being used as a holiday?

8             THE DEPUTY CLERK:  They said January 3rd, so we

9    didn't do -- if it is, that's not part of the dates

10   selected.

11            MR. SMITH:  Okay.  Ms. Heldreth, are you okay

12   with --

13            THE COURT:  That's three days instead of four.

14   That's three, four, five.

15            MS. HELDRETH:  I mean, I have nothing in 2023,

16   so my schedule is not going to impact anything.

17            MR. SMITH:  If Counsel is okay with those dates,

18   then I'll make -- they're fine for me as well.

19            THE COURT:  Just FYI.  The fourth day would be a

20   Friday because the 3rd is a Tuesday.

21            MR. SMITH:  So with that in mind, Ms. Heldreth,

22   would you prefer them to just go another week so we can

23   get the full four days?

24            MS. HELDRETH:  Or we can just --

25            THE DEPUTY CLERK:  It would be -- I'm sorry.  It

1    would be January 2nd through the 5th.

2            MS. HELDRETH:  Okay.  So that would be four

3    days.

4            THE COURT:  Court is closed on the 2nd.

5            MR. SMITH:  Right.

6            MS. HELDRETH:  Right.

7            THE DEPUTY CLERK:  You said we're closed on the

8    2nd?

9            MS. HELDRETH:  Yeah.  Could we schedule, then, 3

10   through the 4th and then the 9th we could.

11           THE COURT:  Yeah.  Let's do 3 through the 9th.

12           THE DEPUTY CLERK:  The 9th is CA day, but

13   Calendar Management is saying we're not closed on the 2nd.

14   They don't see anything, but.

15           THE COURT:  My calendar shows it being closed.

16           MS. HELDRETH:  Mine as well.

17           THE DEPUTY CLERK:  Is January 16th through the

18   19th okay?

19           MR. SMITH:  It's good for me.

20           MS. HELDRETH:  I have nothing, so.

21           THE COURT:  Okay.  Have we called Judge Rattal?

22   I'm calling him right now.

23           MR. SMITH:  Your Honor, while we're doing that

24   and I don't recall it being asked, but discovery has been

25   provided.  And I think from my recollection, if I could

1   just look at my notes real quick, the only thing that I

2   haven't provided yet, I'm still waiting for the autopsy

3   report. And due to the backlog up in Baltimore is taking a

4   while, so as soon as I get that, of course, I will provide

5   it.

6           THE COURT:  Ms. Heldreth, anything else that you

7   need that you haven't received?

8           MS. HELDRETH:  Your Honor, I'm looking at my

9   notes, but that was one thing I noted was the autopsy

10  report.  If the Court would give me one second to pull it

11  up.

12          THE DEPUTY CLERK:  Judge Serrette, I am sending

13  Judge Rattal the link now.  He said if you'd give him

14  three to four minutes, he's doing another good cause

15  hearing.

16          THE COURT:  Thank you.  Appreciate it.

17          THE DEPUTY CLERK:  You're welcome, Judge.

18      (Pause.)

19          MS. HELDRETH:  Mr. Smith, can we get the 911 and

20  radio runs?

21          MR. SMITH:  Let me just check real quick.

22          MS. HELDRETH:  I think any cruiser cam or body

23  cam from the officers on that night, if any exist.

24          MR. SMITH:  I don't think there were any of

25  those, but I will check just to be sure.

**JA636**

1          MS. HELDRETH:  Thank you.

2          THE COURT:  If you would just give me one

3    second.

4          MR. SMITH:  I do have a thing on my computer I

5    saw.  I'll just send it again just to be sure, to make

6    sure you have that.

7          MS. HELDRETH:  Thank you.

8          MR. SMITH:  Sure.

9          THE COURT:  There he is.

10       (Judge Rattal enters via Zoom.)

11          THE COURT II:  Guys, has the case been called?

12          THE COURT:  Yes.

13          THE DEPUTY CLERK:  I can recall it if you'd

14    like.

15          THE COURT II:  No, no.  As long as it's been

16    called, it doesn't matter.  So I guess Mr. Smith or Ms.

17    Heldreth, if you want to tell me -- I have a pretty good

18    idea why I'm here, but somebody's got to tell me what's

19    going on.

20          MR. SMITH:  Yes, Your Honor.  Good morning.

21    This matter has a Hicks date of May 23rd and neither of

22    the parties has any dates available prior to then, and I

23    don't believe the Court does either.  As a result of that,

24    the earliest date we were able to find that works for both

25    parties and the Court's calendars would be the week of

1    January 3rd, 2023.

2              THE COURT:  January 16th, if I'm not mistaken.

3              MR. SMITH:  Oh, I'm sorry.  Yes, January 16th.

4    And this would be the first trial date in this case, and

5    so we are asking the Court to find good cause to go beyond

6    that.

7              MS. HELDRETH:  And Mr. Butler is objecting, so.

8              THE COURT II:  But you're not disagreeing with

9    any of Mr. Smiths' factual?

10             MS. HELDRETH:  No, Your Honor.  I will say the

11   Court schedule, I believe, wouldn't allow a trial before

12   June 27th, and just to lay the foundation and make a

13   record for Mr. Butler, certainly I would have tried to

14   make an earlier date work, so I just wanted to put that on

15   the record.

16             THE COURT:  Judge Rattal, my calendar was also

17   part of the problem.

18             THE COURT II:  Okay.  Was there a week that the

19   two attorneys could do that Judge Serrette couldn't do?

20             THE DEPUTY CLERK:  Yes, there was.  There was

21   actually quite a few weeks.  I don't remember the

22   particular weeks.  It was just she does have a few trials

23   that were back to back.  I can also find, if there's a

24   common week between the attorneys again that's earlier.  I

25   just really don't remember the dates because I was just

 1    given so many dates.

 2          THE COURT II:  Okay.  So what I've been doing in

 3    these instances because quite honestly I fell over

 4    backwards, was it yesterday or the day before, when the

 5    parties told me they agreed to, it was like May 20th, and

 6    I'm like, "Oh, that's great."  They said, "No, May 20th of

 7    '23.  And I'm like, no, I can't do that.

 8          And so I've asked Judge Adams, would she be

 9    inclined if the parties could do it, if we could find

10    another available judge to do it, could we move up.

11          MS. HELDRETH:  Your Honor -- oh, I apologize.

12          THE COURT II:  No, go ahead.

13          MS. HELDRETH:  You know, I think, I'm making a

14    record, but honestly I don't know if that would really be

15    feasible, so I think we just want to object for the record

16    and leave that alone.

17          THE COURT II:  Okay.  No problem, guys.  I just

18    -- that one that was going to go another 12 months,

19    actually 14 months, I just couldn't deal with a gentleman

20    standing in jail, so I've been able to help reassign two

21    cases to speed people up.  But if -- okay.  I understand.

22    I'm not trying to --

23          Okay.  So in this case what's happening is this.

24    I get sick of saying the same thing over and over again,

25    but as we sit here today for the next two weeks, we are in

1   another jury trial suspension because of the Omicron

2   variant. I think this is the fifth suspension order, if I

3   remember correctly, because I keep extending from going

4   back.

5           In March of two years ago, now, when we had the

6   first time we actually sat down for COVID, I was so naive,

7   I thought we'd be out like four weeks and come back and

8   everything would be good.  Boy, was I way off base, but I

9   was smart enough to look to see how good or bad we were

10  and I've never -- I'll always remember the number.  We had

11  622 pending, 622 pending felony trials.  We were shut down

12  basically for almost a full calendar year for doing jury

13  trials, except for about a month and a half we reopened

14  and reopened in the following October and shut back down

15  in November.  Then we opened again and now we have to shut

16  down again.  The numbers kept rising because we were not

17  doing jury trials and the number kept going up and going

18  up and going up.

19          I know the numbers, last December which is now,

20  what, two months ago, yeah, about two months ago because

21  mid December, I had to make a presentation to the Criminal

22  Justice Coordinating Counsel and I remember we were at

23  1,802 cases backlogged and I was so happy, as stupid as it

24  sounds because that was the first three month period we

25  actually were going down.  I mean, the cases were going

1    down again.  We had hit over 1,900 at one point and the

2    numbers going down.  That was mid-December.  And then I

3    think the week after that, we stopped doing jury trials

4    for Christmas and then Omicron hit and we've been

5    suspended for jury trials for nine weeks.

6              My estimate is we continue, we will -- haven't

7    continued but by the time we hit March 7th, we've

8    continued approximately 440 more cases because we've been

9    scheduling anywhere from 60 cases a week to try to catch

10   up.  So we do 9 times 60.  That's 540, but I know one day

11   it was 71 by itself, so.  The numbers are up and down a

12   little bit.

13             We put all those cases on top of the 1,800 cases

14   already set.  It's not like the calendars are blank

15   because our calendars are full and booked through the rest

16   of this year, pretty much and into next year.

17             So what has happened is, this backlog plus

18   another backlog has created a volume that has overwhelmed

19   the State's Attorneys Office and the Public Defender's

20   office and many private bar, and I know especially on the

21   homicide cases.  And I say this all the time.  If you walk

22   up and down Main Street, you have a DWI, any lawyer on

23   Main Street will touch a DWI, but the lawyers to do the

24   homicide cases are the more experienced, more seasoned

25   attorneys, and their number gets much smaller.

1          In here you have two experienced seasoned

2    attorneys and the more seasoned attorney and, quite

3    honestly, usually the better the attorney, the more booked

4    they are because you don't want a rookie to represent you

5    one way or the other on a case where you're facing this

6    much time.

7          They've looked at their calendars.  It might be

8    a week or two here or there, but basically they're both

9    overwhelmed, and that's the truth and I'm acutely aware of

10   that, so I'm going to make it a Court's continuance

11   because a lot of the blame goes to Omicron, meaning they

12   would never have this many pending cases in a normal

13   situation.  So I'll make it a Court's continuance, finding

14   good cause, move it to the agreed-upon dates and I'll note

15   Defense's objection and demand for speedy trial.

16          MR. SMITH:  Thank you, Your Honor.

17          THE COURT II:  You have a great weekend,

18   everybody.  State safe.

19          MR. SMITH:  You, too.

20          MS. HELDRETH:  Thank you, Your Honor.  You, as

21   well.

22          THE COURT II:  Yeah.  I'll see you next week.

23          MS. HELDRETH:  Thank you.

24          THE COURT:  Thank you.  Okay.  So we have

25   January 16th, the 19th, 2023.

**JA642**

1             (indiscernible at 10:52:35.) motions.

2             THE DEPUTY CLERK:  June 29th for 3 hours.

3             THE COURT:  Okay.  Anything else we need to do

4     on this status part, aspect?

5             MR. SMITH:  I don't think so, Your Honor.  Thank

6     you.

7             MS. HELDRETH   Not for the status.

8             THE COURT:  Okay.  So now, Ms. Heldreth, I'll

9     hear you initially.

10            MS. HELDRETH:  Thank you so much, Your Honor.

11    So, obviously, Mr. Butler's trial date was moved pretty

12    far out, and so we don't feel it's appropriate for Mr.

13    Butler to be held in the Detention Center until his trial

14    in mid-January.  Your Honor, I understand these charges

15    are serious.  However, the legislature, of course, and

16    fashioning the rules for Pretrial release under 4-216.1

17    said that each case must be given a particularized,

18    individualized assessment.  And of course, if the

19    legislature felt it necessary to make a per se, no bond

20    situation, they would have done so.

21            We believe that there are factors that point to

22    Mr. Butler being able to be released on home detention.

23    That's what we're asking for.  Mr. Butler lives in Prince

24    George's County.  He's lived there for decades.  As you

25    can see, his mother and other family members are on the

1  line for him.  He has good family support in the area.  He

2  also has a daughter who is currently in virtual school,

3  and that has been difficult for his mother to kind of

4  manage while he's been incarcerated.

5          Your Honor, of course, a lot of these issues

6  will be hashed out at trial, but I just wanted to note

7  that, you know, not every murder has the same set of

8  facts, and I think that the alleged facts of this one and

9  the Defense facts that we feel have come out, point to

10  this not being -- Mr. Butler not being a danger if he were

11  to be released.  If I had a situation where, for instance,

12  he was robbing somebody and killed them in the act, it's

13  not a situation where, you know, there's domestic abuse

14  that ends up in a fatality.  It's a situation where we

15  believe that there are strong arguments for self defense

16  and this being an accidental borne out of self protection.

17          Mr. Butler was actually, he was working at Fedex

18  Field a couple of weeks before this and he was attacked

19  randomly.  It was very traumatic for him.  And that case

20  was actually charged.  It's set for trial in the District

21  Court in April, and Mr. Butler just received, you know,

22  notice of that.  So I just wanted to point that out

23  because that's something that's going to be part of the

24  facts surrounding everything in the context of this issue.

25          Even in the State's allegations, you know, when

1  you look at the discovery that we've been provided,

2  witnesses around the scene indicate that Mr. Butler was

3  making numerous apologies.  He didn't know what happened.

4  It is not a situation that we're talking about where

5  somebody is a danger to society.  I want to point out,

6  too, he doesn't have any prior convictions, but he has

7  prior contacts.  And the reason I point that out is

8  because despite his prior contacts, he doesn't have any

9  failures to appear.  So clearly, this is somebody who when

10  he is called to court, comes to court.  When he is charged

11  with something, he does not fail to appear for court.

12         Mr. Butler has really impressed me in the short

13  time I've been representing him with how thorough and

14  diligent he is, looking at the law in his case.  He very

15  much wants to present his side of the story.  He's not a

16  flight risk.  He's not trying to run from this.  He will

17  come to Court and he is incredibly involved in his

18  defense.

19         I think one of the things, when we're talking

20  about bond in these situations, especially that is hard to

21  realize or that people don't bring up a lot, is how it is

22  to defend yourself in jail.  Now, certainly, when courts

23  find by clear and convincing evidence that someone is a

24  danger, you know, they have to hold that person, you know,

25  notwithstanding the fact that, A, it's difficult to meet

1   with clients in jail and, you know, B, there's a lot less

2   resources in jail, but this is a not a situation like

3   that.

4          Currently, there is still a COVID outbreak in

5   the jail, although it's weaning down a little bit, but Mr.

6   Butler and I have to meet either through, you know, some

7   plexiglass where we have to yell.  And his particular

8   unit, there's construction right around, so sometimes it's

9   hard to hear.  Or he can video visit, but those are very,

10  very, few and far between and, you know, it's hard to grab

11  those in time frankly.

12         If you are out on home detention, of course, we

13  could meet whenever we wanted, as long as we alerted

14  Pretrial level 4 what was going on.  And in this

15  particular matter, Your Honor, it is going to involve a

16  lot of preparation for Defense because we do have facts to

17  present on the Defense.  So we're asking the Court to

18  order Pretrial level 4 in this matter.

19         Mr. Butler has, at 32-years-old, again a clean

20  record, no convictions, and he has an established record

21  of coming to court when he is called to come to court.

22  The State's own allegations -- and of course, you know,

23  don't, you know, say the truth of any of those allegations

24  because we absolutely dispute some of them.  But even

25  looking at it in the light most favorable to the State,

1  there are people who would testify from the State's side

2  that, you know, Mr. Butler indicated this was an accident

3  on the day, and that he appeared extremely upset and did

4  not appear a person who was trying to hurt anyone, much

5  less kill anybody.

6          So this is absolutely a situation where despite

7  the seriousness of the charges, the Court can fashion a

8  Pretrial release situation that ensures the safety of the

9  community, as well as Mr. Butler's safety.

10         I might have something else to add after the

11  State speaks, but I'll submit on that for now, Your Honor.

12         THE COURT:  Ms. Heldreth, let me ask a question.

13  Was the victim found to have a gun or any other weapon,

14  when you say, self defense?

15         MS. HELDRETH:  No, Your Honor.  There was

16  physical violence though.

17         THE COURT:  I'm sorry.

18         MS. HELDRETH:  There was physical violence

19  towards Mr. Butler.

20         THE COURT:  And is the deceased the same person

21  who said you can go in my house and use the bathroom?  Is

22  that alleged on that --

23         MS. HELDRETH:  Yeah.  That goes kind of into

24  some facts that are disputed right now, Your Honor.  So we

25  don't believe that he was actually, you know, living at

1   the house.  I think the State is going to say he was.  So

2   that goes into facts that are in dispute right now.

3           THE COURT:  Okay.  Thank you.  Yes.

4           MS. SMITH:  I'm sorry.  May I proceed, Your

5   Honor?  I'll start by saying I have shot a gun before, and

6   I know from experience that they don't just go off on

7   their own.  It takes effort to actually pull a trigger.

8   It takes, first of all, you have to have it at your

9   disposal to begin with.  Then, you have to retrieve it.

10  Then you have to raise it.  Then, there has to be a

11  conscious thought to pull the trigger.  The victim in this

12  case was shot in the middle of his chest.  This isn't, I

13  was walking with a gun and I tripped and fell and it went

14  off.  That's what an accident is.  The deliberate and

15  conscious act to retrieve a weapon, raise it, pull the

16  trigger is not accidental in any way, shape or form.  The

17  fact that the Defendant may have been remorseful after the

18  fact doesn't matter because that's not what's at issue.

19  The facts in this case and even by the Defendant's own

20  interview, he doesn't allege that he -- so after the

21  shooting happened, the Defendant was at the home of the

22  victim's girlfriend.  He, my understanding is that he

23  spends a lot of time there, but it' not his primary

24  residence.  Mr. Butler, my understanding from the facts,

25  was using the restroom and one witness described him as

1   being agitated when he arrived on the scene.  Apparently,

2   and again, this is from my understanding of the witness

3   statements, he was being, quote/unquote, loud and

4   disrespectful.  So the victim went in to ask him to

5   essentially keep it down because you're being

6   disrespectful to the parents of one of the occupants in

7   the home.

8          That is when a gunshot was heard.  No witness

9   described hearing any tussling or any punching or any sort

10  of a scuffle that would indicate that Mr. Butler was being

11  attacked.  Mr. Butler did have injuries to his person

12  after the fact, but those injuries we would argue, were

13  not caused by the victim.  After the shooting, in his own

14  words Mr. Butler says, "They attacked me.  I kept getting

15  attacked by people," because the people in the home were

16  agitated and upset that Mr. Butler had just shot the

17  victim, so they went on the offensive.  So that is where

18  the State would argue that Mr. Butler's injuries came

19  from.

20         Mr. Butler was asked to describe, in his

21  interview, how is it self defense, what was the victim

22  doing?  And he was just very vague and said, "Oh, it

23  happened so fast.  I don't remember.  He was going to kill

24  me.  I don't know why he attacked," but he could not give

25  any facts that would rise to the level that I was in fear

1   for my life in that moment and that was the only option
2   that I had was to use deadly force.
3          So I know self defense is kind of the, I don't
4   want to say catchall, but it's something that gets thrown
5   around very easily.  But the Court knows that there are
6   several factors that go into someone asserting self
7   defense, and the fact that he may have been attacked a
8   week earlier somewhere else by other people doesn't mean
9   in that moment that his life was in danger and that was
10  the only action he could have taken to save his life.
11         Your Honor, I know the link was sent to Ms.
12  Youngerton, who is the victim's mother.  I don't know if
13  she's on, but she was advised of today's hearing and the
14  link was provided.  I'm looking at the screen and it
15  doesn't appear that she is on here, but I did just want to
16  put on the record that she was given notice of the hearing
17  and the link was provided.
18         So in short, Your Honor, the State does not in
19  any way believe that this is a self defense case, the
20  Defendant acted with malice.  He was angry for whatever
21  reason and premeditated murder.  We acknowledge that, and
22  the jury instructions say that you don't need a lot of
23  time to form premeditation to be formed.  So we do not
24  believe that any release at this point would be
25  appropriate under any condition.  Thank you, Your Honor.

1           MS. HELDRETH:  Your Honor, may I respond?

2           MR. SMITH:  Your Honor, you're muted.

3           THE COURT:  I'm sorry.  I'm on mute.  You may,

4     Ms. Heldreth, after I -- but this is my question to you.

5     So I heard the argument, as well as Ms. Heldreth, is about

6     whether or not he's going to be found guilty or whether or

7     not he's got a self defense, which of course this Court is

8     not going to make and determinations of.  That's for the

9     jury.  My question to you, is, for purposes of the bond

10    review, is the dangerous decision.  I'm not worried about

11    Mr. Butler returning to court.  I'm assuming he would

12    return to court.  So that's not the part that worries.

13    The question that I have in my head in terms of the bond

14    as to whether or not Mr. Butler should remain inside or

15    whether or not he should be let out on Pretrial level 4,

16    is whether or not he poses a danger to the community and

17    who.  Is there a danger to the witnesses or, you know, the

18    victim's girlfriend or whatever, but it's really, what I'm

19    trying to measure in my head, is whether it's safe to put

20    Mr. Butler on Pretrial release, which is one of the

21    factors that the Court is required to consider under the

22    Rule, not so much who's going to win the trial.  Okay.

23          MR. SMITH:  Your Honor, my response to that is,

24    I don't know.  This is a unique situation in which the

25    Defendant obviously knows where the witnesses reside and

1    he has been to that residence before.  He knows who the

2    witnesses are.  These are not strangers to him.  So if

3    anything, the State would argue that would incentivize

4    him to either intimidate or threaten them to not show up

5    to Court.

6             THE COURT:  Is there one witness or is there a

7    panoply?

8             MR. SMITH:  There's several, some more important

9    than others, but I would say for, as far as witness who

10   would probably be called to testify, probably three, and

11   they all reside at the same location, at least they were

12   at the time.  I don't know if that's changed, but I

13   believe they still are.

14            THE COURT:  Ms. Heldreth.

15            MS. HELDRETH:  Yes, Your Honor, and just

16   addressing dangerousness, there is no non-hypothetical

17   evidence that Mr. Butler poses a danger.  In fact, under

18   the State's allegation, these same people beat up Mr.

19   Butler and, you know, that night, apparently he was so

20   traumatized he didn't do anything back to them because of,

21   you know, the issue, the fact that he was, of course, not

22   premeditated, trying to kill anybody.

23            So I think that the only evidence the State has

24   is that there's a danger in the other direction.  There

25   have been no threats.  There's you know, nothing that Mr.

1    Butler has said that would indicate that he is planning to

2    do, you know, anything to these people.  And I understand

3    the Court doesn't want to litigate the trial today, of

4    course, but just as it pertains --

5              THE COURT:  No.

6              MS. HELDRETH:  I understand that, Your Honor.

7    Just as it pertains to the dangerousness, I just wanted to

8    point out that the witnesses, you know, we believe, have a

9    bias to testify against Mr. Butler in terms of all of them

10   have ties to the decedent in this case.  And I think that

11   does put him at a disadvantage in the State's summation of

12   the facts.

13             But again, there's not evidence that there's a

14   continuing danger, especially in light of the State's own

15   facts which say, well, these are the same people who beat

16   him up afterwards and there doesn't seem to be any

17   retaliation against that.  So, I just wanted to point that

18   out for the Court.

19             And of course, the Court would have --

20             THE COURT:  Wasn't he picked up right away after

21   that?

22             MS. HELDRETH:  Yes, Your Honor.

23             MR. SMITH:  I'm sorry.  I didn't hear question.

24   What was the question, Your Honor?

25             THE COURT:  I said, "Wasn't he picked up

**JA653**

1    immediately?"

2            MR. SMITH:  Oh, yeah.  And one more thing I will

3    add, Your Honor is that --

4            THE COURT:  Let Ms. Heldreth and then you can

5    add more.

6            MR. SMITH:  Okay.  I'm sorry.

7            MS. HELDRETH:  I just wanted to add, in terms of

8    that, you know, of course I think it pertains to

9    dangerousness that Mr. Butler was making statements and

10   that he went and gave an interview and waived his Miranda

11   rights.  So I think that also goes to a lack of

12   dangerousness because he was cooperative.  I think it's

13   more dangerous, somebody who is trying, you know, not to

14   be, who wouldn't say things like he said right after the

15   event.

16           THE COURT:  Thank you.  Mr. Smith, you had

17   something.

18           MR. SMITH:  I just wanted to add, Your Honor,

19   that the gun in his case was never recovered and the

20   witnesses -- and there was another witness on the scene

21   who described the Defendant going to his vehicle that was

22   parked outside.  A search of that vehicle did not uncover

23   the gun, so no one knows what happened to it, and it was

24   not on his person when he was apprehended.

25           THE COURT:  But he was apprehended on the scene,

1    right?

2            MR. SMITH:  Yes, but it took the police a few

3    minutes to get there, but yes.  There was a short span of

4    time from the time the call went out until police

5    responded, and within that time frame the gun disappeared.

6            MS. HELDRETH:  I'll just note, Your Honor, too,

7    he was kind of apprehended before the police got there by

8    a security guard and he was making statements to that

9    person as well.

10           THE COURT:  Okay.

11           MR. SMITH:  And the gun wasn't recovered by him

12   either.

13           THE COURT:  That's odd.  Okay.  Anything else

14   from anybody?

15           MR. SMITH:  Nothing further, Your Honor.  Thank

16   you.

17           MS. HELDRETH:  Nothing, Your Honor.  Thank you.

18           THE COURT:  Okay.  Criminal Code 4-216, is that

19   the factors that the party is required to consider

20   relative to Pretrial release in determining whether a

21   Defendant should be released, and the conditions the

22   judicial officers take into account the following

23   information to the extent available, the nature and

24   circumstances of the offense charged and the evidence and

25   the potential sentence, the nature of the crime of course

1   is the most serious of crimes, taking a life.

2          There is, from what the Court has been told, a

3   confession, and witnesses, and obviously the potential

4   sentence is life.  As for the prior record or appearance

5   at Court, the Court has been told that Mr. Butler has had

6   previous contact with the criminal justice system, that he

7   has no convictions, and that he's appeared for all of his

8   hearings.

9          As per family ties, I have Mr. Butler's mother

10  on the phone, a young woman behind her who I'm guessing is

11  his daughter, though I don't know that.  No?  Sister

12  maybe, I don't know who it is.  Maybe a sister -- I'm

13  getting heads shaking yes.  And there was a gentleman who

14  had been on the phone but who subsequently left, who was a

15  family member.  I'm told that he has ties in Prince

16  George's County.  Any recommendations of an agency that

17  conducts Pretrial release investigations, unfortunately we

18  don't have that.

19         Any recommendation of the State, the State is

20  asking that he be held and not released.  Any information

21  presented by the Defendant or Defense Attorney, Defense

22  Attorney is asking that he be placed on Pretrial level 4

23  for a number of reasons, including the fact that it's

24  important for her preparation of his defense.

25         The danger of the Defendant to the alleged

1   victim, another person or the community, the victim is

2   deceased and so obviously that's not the issue.  The issue

3   really is is whether any of the witnesses or his

4   girlfriend or (indiscernible at 11:15:52) was a witness as

5   well, is in any danger.  The Court notes Mr. Butler makes

6   a statement in this case, that he was arrested

7   immediately.  That according to the parties, he was

8   apologetic even at that point, and he did give the

9   Defendant to himself or herself.  I don't think there's

10  been any suggestion that Mr. Butler is a danger to

11  himself.  Any other factor, bearing on the risk on a

12  willful failure to appear and safety of the alleged victim

13  and other persons of the community, including all prior

14  convictions and any prior adjudications of delinquency

15  that occurred within three years of the date, the

16  Defendant is charged as an adult in the instant case.

17  There are apparently no prior convictions or any willful

18  failures to appear.

19          The Court, as I said when I was asking my

20  questions from the get-go, the Court's biggest concern is

21  the safety of the community and the safety of the

22  witnesses.  There's no suggestion that there's been any

23  threats towards the witnesses, and there was a statement

24  there was no prior convictions, no failures to appear, and

25  certainly both parties have told me their theories of the

1  case and Mr. Butler is innocent until and unless a jury

2  deems otherwise.

3          Based on all of that, I will provide that Mr.

4  Butler may be eligible for Pretrial release, level 4.  The

5  conditions being he may not leave his house, he may not

6  work on Pretrial release.  It will be strictly to stay in

7  his home or if there's any medical issues that arise,

8  medical care, but no other community activities and no

9  other reason to leave the property.

10          Also, the other factor, of course, is that the

11  Court can't get to this case until January of 2023.  And

12  so, Mr. Butler would be in the Detention Center for

13  another year amidst the COVID outbreak awaiting trial.

14  Anything further from anyone?

15          MS. HELDRETH:  No, Your Honor.

16          MR. SMITH:  Nothing further, Your Honor.

17          THE COURT:  Okay.  Thank you, everybody.

18          MR. SMITH:  Thank you, Your Honor.  Have a good

19  day.

20          THE COURT:  You, too.

21          MR. SMITH:  Thank you.

22          THE DEPUTY CLERK:  So Pretrial release 4,

23  correct, Judge.

24          THE COURT:  He's eligible for Pretrial release,

25  level 4, not allowed to -- only -- not allowed to leave

1    the home.

2              THE DEPUTY CLERK:  To leave home, for medical

3    only.

4              THE COURT:  Not allowed to leave the home but

5    for medical emergencies.

6              THE DEPUTY CLERK:  All right.  Thank you.  I

7    just wanted to be clear.  Thank you.

8              THE COURT:  Okay.  Thank you.

9              MR. BUTLER:  Allison left?

10             THE DEPUTY CLERK:  I'm sorry.  Say it again?

11             MR. BUTLER:  My attorney left?

12             THE DEPUTY CLERK:  Yeah.  She had another case,

13   so I'll do the paperwork and send it over to the judge.

14             MR. BUTLER:  I don't understand about what's

15   going on, the language.

16             THE DEPUTY CLERK:  So what she's saying is, if

17   you're eligible for Pretrial release level 4, so you'll

18   have to get interviewed for Pretrial release level 4,

19   which I'll put.  And if you're eligible, you'll be

20   released in Pretrial release level 4 with the conditions

21   of staying in your home only for medical reasons and no

22   working.

23             MR. BUTLER:  Okay.  No problem.

24             THE DEPUTY CLERK:  Yeah.  So when I do that, I'm

25   going to send it over right to the jail ASAP.

34

1           MR. BUTLER  I got a question.  So what is that
2    has to happen to become eligible, do you know?
3           THE DEPUTY CLERK:  It's just an interview.  They
4    just ask you certain questions.  I don't know the
5    questions.
6           THE DEPUTY CLERK:  And it's just certain
7    requirements that you will have to meet and I don't know
8    the requirements, and then it will go from there.
9           MR. BUTLER:  Okay.  No problem.  Thank you.
10          THE DEPUTY CLERK:  You're welcome.  So I'll send
11   it over.
12          MR. BUTLER:  Thank you.
13          THE DEPUTY CLERK:  You're welcome.  Bye.
14       (The hearing was concluded at 11:21:17 a.m.)
15
16
17
18
19
20
21
22
23
24
25

35

1

CERTIFICATE OF TRANSCRIBER

     I hereby certify that the proceedings in the matter of State of Maryland versus Christopher Butler, Case No. CT211239X, heard in the Circuit Court for Prince George's County, on February 18, 2022, were recorded by means of digital media with video.

     I hereby certify that the proceedings herein contained were transcribed by me or under my direction. That said transcript is a true and accurate record to the best of my ability and constitutes the official transcript thereof.

     In witness thereof, I have hereunto subscribed my name this 29th day of September, 2022.


_____

Donna R. McCormick

JA661

S: 10:29AM
E: 11:19AM

5 - JAIL

### IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

## DAILY SHEET

State of Maryland
Plaintiff

Steven D. Smith
State's Attorney

-v-

Christopher Daniel Butler
Defendant

Allison Heldreth
Defendant's Attorney

Case No.    CT211239X

Judge    Serrette

Date    February 18, 2022

Court Clerk    708AJ
☐ J   ☐ C   Day
(J=Jury Sworn)
(C=Court Trial)
Deliberations Start Date:
Deliberations End Date:
Alternate Jurors:            Code: _____

### DOCKET ENTRIES

Hearing on Defendant's Motion for Bail Review.

Judge Serrette; CS – M1421.

Motion – Granted.

Court Orders Pretrial Release Level 4 if eligible:

   Defendant is not allowed to work.

   Defendant is not allowed to leave the house, only for medical reasons.

IN THE CIRCUIT COURT FOR
PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND,

vs.                                    Case Number:
                                       CT211239X
CHRISTOPHER BUTLER,

     Defendant.

_____

OFFICIAL TRANSCRIPT OF PROCEEDINGS


(Motion for Continuance)


Upper Marlboro, Maryland

Wednesday, June 29, 2022

BEFORE:

HONORABLE CATHY H. SERRETTE, Associate Judge



APPEARANCES:

    FOR THE STATE:

    STEVEN D. SMITH, ESQUIRE, ASA


    FOR THE DEFENDANT:

    ALLISON HELDRETH, ESQUIRE,

2

T A B L E   O F   C O N T E N T S

P A G E

Motion for Postponement by Ms. Heldreth          3

Argument by Mr. Smith                            6

Argument by Ms. Heldreth                         7

The Court's Ruling                               8

Discussion as to Pretrial Release               10

Argument by the State                           11

3

```
 1                   P R O C E E D I N G S
 2        (On the record at 09:18:17 a.m.)
 3             THE COURT:  Good morning, everybody.
 4             MS. HELDRETH:  Good morning.
 5             MR. SMITH:  Good morning, Your Honor.
 6             THE COURT:  Madam Clerk.
 7             THE DEPUTY CLERK:  Good morning.  Can you hear
 8  me, Judge?
 9             THE COURT:  I can.  Thank you.
10             THE DEPUTY CLERK:  CT211239X, State versus
11  Christopher Daniel Butler.
12             MR. SMITH:  Good morning, Your Honor.  Steven D.
13  Smith on behalf of the State.
14             MS. HELDRETH:  Good morning.  Allison Heldreth
15  on behalf of Mr. Butler, who is present virtually from
16  DOC.
17             THE COURT:  Okay, folks.  So we have, what, two
18  hours or three hours of motions?
19             MS. HELDRETH:  We are going to be asking for a
20  postponement.  I am home with my daughter who is sick.  I
21  would also prefer to have motions in person.  I also asked
22  the Prosecutor in the chat about an FEU report.  I don't
23  think we received it, and that would be the basis for one
24  of our motions.  Trial in this case is not until January.
25             MR. SMITH:  I'm sorry.  What would be the basis
```

4

1   for one of the motions?

2          MR. HELDRETH:  If there's any FEU report.  I saw

3   there was a Request for Analysis, but I didn't see the

4   report.

5          MR. SMITH:  How would that be a basis for a

6   motion?

7          MS. HELDRETH:  In a Daubert hearing.

8          MR. SMITH:  Okay.  Well, there was no gun

9   recovered in this case, so --

10         MS. HELDRETH:  It's agreed --

11         THE COURT:  Guys, I apologize.  First off, you

12   should be talking to me.  Secondly, it's mumbled.  So I'm

13   having a hard time hearing what you said.  So Mr. Smith,

14   what did you say?

15         MR. SMITH:  I was saying that Counsel had said

16   that the FEU report formed the basis for one of her

17   motions.

18         THE COURT:  Right.

19         MR. SMITH:  And I was just kind of extrapolating

20   that there was no gun recovered in this case, so there

21   would be no opinion formed by an FEU expert.  All of it

22   probably says is that a bullet was fired from the gun.

23         MS. HELDRETH:  I was just checking because there

24   is no FEU request for analysis.

25         MR. SMITH:  I don't have the physical file with

**JA666**

1   me, so I will check on that when I get back to the office

2   part of it tomorrow.

3            THE COURT:  So a couple of things.  Thing one,

4   Mr. Smith, I'll hear you if you have any issues, but Ms.

5   Heldreth, just for future purposes, for planning purposes

6   for our chambers, my staff told me that they emailed you a

7   couple of times asking you if you planned on going forward

8   this morning because you guys have all mornings and they

9   didn't get a response, and it's not emailed to you. That

10  happens frequently.  If you get an email from our

11  chambers, if you could answer that, it could be really

12  helpful because we don't have any other way.  You have

13  your three-hour block, and there's a number of things we

14  could put in a block and so we're always asking in advance

15  whether or not folks are going -- wanting to go forward,

16  anticipate going forward, so we can prep for what's going

17  forward and also use our time as best we can.

18           MS. HELDRETH:  Your Honor, I understand.  And my

19  apologies.  I was called yesterday to go get my daughter

20  and it's kind of upended a lot.

21           THE COURT:  No, I realize -- I'm just saying in

22  general --

23           MS. HELDRETH:  Yes.  Absolutely.

24           THE COURT:  Very difficult for us to get

25  responses when we're just saying, hey, is this going

1  forward.  And we just don't get responses.  And I don't

2  mean you in particular.

3          MS. HELDRETH:  I understand.

4          THE COURT:  I just mean (indiscernible at

5  9:22:20) attorneys, and it just doesn't make any sense

6  that we can't get responses and my staff ends up wasting a

7  whole lot of time.  (indiscernible at 9:22:25) check your

8  email, et cetera.

9          MS. HELDRETH:  Absolutely.

10          MR. SMITH:  Your Honor, as to your question, I

11  would be objecting because -- I'm sorry -- discovery in

12  this case was sent months ago and actually overtly, I

13  think about a year ago, as well as a statement was

14  provided, and pursuant to rule, I believe it was 4-252.

15  No motions have been file in this case and the State is

16  not on notice and I haven't been provided a chance to

17  respond to anything, and this has been set now for months.

18          THE COURT:  So I think we have, you know, the

19  kind of mandatory motions, global motion that we receive.

20  That was back in November of 2021.  If I don't continue

21  it, Ms. Heldreth is going to move through her motions

22  filed.  So I'm not sure there's much point in that.  Also,

23  the Court doesn't have -- is the statement on a disk?

24          MR. SMITH:  It was provided electronically, but

25  I do believe I do have a physical disk.  But it's just

1    easier with the electronic version because it makes
2    planning it much easier because you don't have to wait for
3    anything to spin up and nothing is skipping.
4            THE COURT:  Okay.  Ms. Jones, do we have that?
5            THE DEPUTY CLERK:  I'm sorry, Judge.
6            THE COURT:  It's okay.  Did we receive an
7    electronic version of this statement in this case?
8            THE DEPUTY CLERK:  I have not received anything
9    about a statement in this case.
10           THE COURT:  So the other thing that would be
11   helpful when doing the motions, if we can get the
12   statement in advance.  Typically, if I receive in advance,
13   I will review it in advance, so then I know what I'm
14   listening for when Counsel are arguing.  It's not
15   obviously required.  You could obviously do it at the
16   hearing and then it will just delay even longer our
17   ruling.  But it's helpful to have it in advance.
18           MS. HELDRETH:  Yes, Your Honor.  And just to
19   clear up a couple of things.  Discovery was not sent a
20   year ago.  It was sent earlier this spring in February.  I
21   just to be very clear about that.  This case isn't even a
22   year ago.  And furthermore, like part of it is, obviously
23   I have childcare issues right now, but part of it is also
24   we would be requesting an in-person hearing.  So whatever
25   we need to do to make that happen.  It changes sometimes.

1    I don't know if chambers can request it or if I need to

2    file something.

3              THE COURT:  We'll figure it out.

4              MS. HELDRETH:  Okay.

5              THE COURT:  Yeah.  We'll find out now.

6              MS. HELDRETH:  Thank you.

7              THE COURT:  So an in-person hearing, when you

8    need an in-person hearing, again, that needs to be asked

9    in advance, so that should have been asked before today.

10   A childcare emergency cannot be avoided.  We all have

11   them.  And this Court accommodates Counsel and parties

12   when there are health issues that unfortunately, too

13   often, impede our ability to go forward, but they're

14   pretty global.  And so it just seems to this Court that to

15   really ensure that people are healthy, are able to put the

16   appropriate attention to what they're doing, it's the

17   appropriate thing to accommodate those.  So we will reset

18   this.  Is it two hours or three hours?  Three hours.  Do

19   we need three hours?

20             MS. HELDRETH:  I think that's fair for the -- if

21   there's no -- if there's no FEU, then two hours should be

22   fine.

23             THE COURT:  Two?

24             MS. HELDRETH:  Yes.

25             THE COURT:  Mr. Smith?

9

1          MR. SMITH:  That should be fine, Your Honor.

2          THE COURT:  Ms. Jones or whomever, what's the

3    current protocol for in-person motions?

4          THE DEPUTY CLERK:  They have to put their

5    request in writing and submit it to the Administrative

6    Judge, and they'll call and get your take on it, whether

7    you have an issue with it and then from there, they'll

8    grant it and they'll notify everyone that it's been

9    approved.  They'll notify calendar management, the

10   Sheriff's Department so that we can get the proper

11   courtroom that's needed in case someone is virtual as

12   opposed to being in person.

13         THE COURT:  Okay.  So, Ms. Heldreth, it's a

14   motion apparently.  I have no problem.  So if I get

15   contacted and asked about -- and as far I'm concerned,

16   everything contested should be in a courtroom, but you

17   know, that's me.

18         The integrity of some of the hearings that are

19   contested that aren't in a courtroom really -- not these

20   kind as much, ironically.  It's some of the other ones

21   when you really don't know who else is in the room, who is

22   looking things up on Google.  You don't know what people

23   are looking at, who's texting to her.  They kind of drive

24   me crazy, but we believe purposefully our maximizing

25   courtroom availability for criminal cases to alleviate the

1   backlog that occurred because of COVID.  So that's the

2   reason that it's even an issue, is just to have a

3   sufficient number of courtrooms that we can get all of our

4   criminal cases tried so people aren't waiting periods --

5   unconscionable amount of time for hearings.  So that's

6   where we are.

7          THE DEPUTY CLERK:  Ms. Heldreth, can you also

8   make sure that you make mention that your client is in

9   custody so that calendar management can notify the proper

10  people?

11         MS. HELDRETH:  Yes, I can.

12         THE COURT:  Because they won't know.  Okay.  So

13  three hours, guys.

14         MS. HELDRETH:  I just had the week of July 25th

15  open up because I had a trial fall out.

16         THE COURT:  Yeah, they'll call calendar

17  management and throw out some dates.

18         MS. HELDRETH:  And while we're waiting, I did

19  want to just bring up there was a Pretrial, for an Order

20  issued in this case -- I'm sorry, not calendar management

21  -- Pretrial had been mentioning that they would not

22  release Mr. Butler because of the nature of the case.  I

23  don't know if there's anything you can do to clear that up

24  because obviously the nature of the case was contemplated

25  at our bail review.

1          THE COURT:  Is this the one that was in front of

2    Judge Whalen.

3          MS. HELDRETH:  (indiscernible at 9:30:03)

4          THE COURT:  Did go in front of Judge Whalen?

5          MS. HELDRETH:  That was a different case.  We've

6    had a number of issues at pretrial.

7          THE COURT:  Okay.  What are they saying?

8          MS. HELDRETH:  They said due to the nature of

9    the case, which --

10          THE COURT:  Was this -- give me a second.  Was

11    this a pretrial trial level 4.

12          MS. HELDRETH:  I have in the docket entry that

13    it was an Order.

14          MS. SMITH:  Your Honor, my notes indicate -- I'm

15    sorry.  Let me double check.  My notes indicate that the

16    Court authorized Pretrial level 4, but I don't have

17    anywhere where it was ordered.  It was authorized, so they

18    were given the option.

19          MS. HELDRETH:  And pretrial has that as well,

20    but it was ordered and that's what the docket entry

21    reflects, but the problem is, they keep saying the nature

22    of the case.  I was hoping that we could --

23          THE COURT:  Yeah, no.  Actually, what it says on

24    the docket entry is "Court Orders pretrial release level 4

25    if eligible."  So it says "if eligible.  When it says, "if

1    eligible," that that means Pretrial can screen.

2              MS. HELDRETH:  I guess I just --

3              THE COURT:  The Defendant's not allowed to work,

4    Defendant is not allowed to leave the house, only for

5    medical reasons.

6              MS. HELDRETH:  Right.  I think the issue is

7    there's no rule that says this type of charge is not

8    eligible for pretrial, so I don't know if there would be

9    any way we could clarify that the nature of the case was

10   contemplated by the Court.  I don't know if there's

11   anything we could just clear up for that because that's

12   kind of the issue I'm having with them.  I never heard

13   that being an eligibility requirement.

14             THE COURT:  I don't think it is.  I mean I've

15   had other murder cases for which Pretrial level 4 --

16             MS. HELDRETH:  Right.

17             THE COURT:  I don't have any idea what the issue

18   is.  If you want, we could set another bond hearing and if

19   they're here, either you or Mr. Smith can bring them and

20   let me -- and I can hear from their perspective why they

21   don't deem him eligible.

22             MS. HELDRETH:  I think that would be helpful if

23   we could set that as well.

24             THE COURT:  We could probably do it the same day

25   as the motions.

```
 1              MS. HELDRETH:  Okay.

 2              THE COURT:  So we know that.  And just because

 3    we're not the only folks on, can everybody on the screen

 4    identify themselves, Mr. Deere and Mr. Gonzalez?

 5              DET. DEERE:  I'm sorry.  Detective Deere, Prince

 6    George's County Police Department.

 7              THE COURT:  Thank you.

 8              DET. GONZALEZ:  Detective Gonzalez, ma'am.

 9    Prince George's County Police Department.

10              THE COURT:  Thank you.  Appreciate it.

11              THE DEPUTY CLERK:  And just so we're clear, am I

12    looking for two hours for a motion or three hours?

13              THE COURT:  Look for three since we're throwing

14    in a bond hearing on this one.

15              THE DEPUTY CLERK:  July 25th at 1:30.

16              MS. HELDRETH:  That's perfect.

17              THE COURT:  Mr. Smith, is that good?

18              MR. Smith:  That's fine, Your Honor.  I assume

19    this works for both detectives as well.  If not, please

20    let me know now.

21              DET. DEERE:  That's fine with me.

22              DET. GONZALEZ:  It works for me, too.

23              MR. SMITH:  Thank you.

24              THE COURT:  Okay.  Thank you all.  I appreciate

25    your time.
```

14

1          MS. HELDRETH:  Thank you, Your Honor.  And

2  again, I apologize about not responding to chambers.  Can

3  I please have a breakout room with Mr. Butler?  Is that

4  possible?

5          THE COURT:  You certainly may.

6          MS. HELDRETH:  Thank you.  I appreciate it.

7          MR. SMITH:  Thank you, Your Honor. May I be

8  excused?

9          THE COURT:  You may.  Thank you, Mr. Smith.

10  Thank you, Detectives Gonzalez and Deere.

11          DET. DEERE:  Thank you, Judge.

12          MR. SMITH:  Have a good day, Your Honor.

13          DET. GONZALES:  Thank you, Your Honor.

14          THE COURT:  Sure.  Thank you.

15     (The hearing was concluded at 9:34:37 a.m.)

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF TRANSCRIBER

       I hereby certify that the proceedings in the matter of State of Maryland versus Christopher Butler, Case No. CT211239X, heard in the Circuit Court for Prince George's County, Maryland, on June 29, 2022, were recorded by means of digital media with video.

       I hereby certify that the proceedings herein contained were transcribed by me or under my direction. That said transcript is a true and accurate record to the best of my ability and constitutes the official transcript thereof.

       In witness thereof, I have hereunto subscribed my name this 27th day of September, 2022.

_____

Donna R. McCormick

```
                 IN THE CIRCUIT COURT FOR
              PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND,


vs.                                   Case Number:
                                      CT211239X
CHRISTOPHER BUTLER,

      Defendant.

            _____


             OFFICIAL TRANSCRIPT OF PROCEEDINGS



                      (Motion for Continuance)


                             Upper Marlboro, Maryland

                             Monday, July 25, 2022
              BEFORE:

              HONORABLE KRYSTAL Q. ALVES, Associate Judge



              APPEARANCES:

                    FOR THE STATE:

                    FRANK SHELTON, ESQUIRE, ASA

                    FOR THE DEFENDANT:

                    ALLISON HELDRETH, ESQUIRE, APD
```

2

T A B L E   O F   C O N T E N T S

P A G E

Request for Continuance                          3

```
 1                    P R O C E E D I N G S

 2       (On the record at 1:40:28 p.m.)

 3            THE DEPUTY CLERK:   Calling CT211239X, State of

 4   Maryland versus Christopher Daniel Butler.

 5            MR. SHELTON:   Good afternoon.   Franklin Shelton

 6   appearing on behalf of the State.   Mr. Butler is

 7   represented by Allison Heldreth.   I've been in

 8   communications with Ms. Heldreth this afternoon, Your

 9   Honor.   There are a couple of things.   She has a conflict.

10   She's got another hearing set for the same time, and she

11   would prefer that this matter, regarding the new court

12   date, to be addressed with the assigned prosecutor.

13   Steven Smith is available.   I'm standing in for Mr. Smith

14   today because he is in a carryover trial.   And after

15   communicating with Ms. Heldreth, she indicated to me this

16   Motion and our hearing may be a little complicated because

17   she also wants to address the issue of bail.   So for those

18   reasons, I'm asking Your Honor to postpone this case until

19   tomorrow with Ms. Heldreth's consent.

20            THE COURT:   Okay.   I'm just going to clear it

21   with Assignment and see if I can put it at 9:00 a.m.

22            MR. SHELTON:   Okay.

23            THE COURT:   Either 9:00 or 1:30.   Does she

24   prefer -- ask her if she has a preference 9:00 or 1:30.

25            It's a bond hearing, motion/bond hearing.
```

4

1              MR. SHELTON:  Ms. Heldreth -- I'm sorry, Your

2    Honor.  She prefers 1:30.

3              THE COURT:  Can we do it at 1:30 tomorrow?

4              THE DEPUTY CLERK:  That's fine.

5              THE COURT:  That's fine.  1:30 tomorrow.

6              MR. SHELTON:  All right.  Thank you, Your Honor.

7              THE COURT:  Uh-huh.

8         (The hearing was concluded at 1:41:48 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

CERTIFICATE OF TRANSCRIBER

I hereby certify that the proceedings in the matter of State of Maryland versus Christopher Butler, Case No. CT211239X, heard in the Circuit Court for Prince George's County, Maryland, on July 25, 2022, were recorded by means of digital media without video.

I hereby certify that the proceedings herein contained were transcribed by me or under my direction. That said transcript is a true and accurate record to the best of my ability and constitutes the official transcript thereof.

In witness thereof, I have hereunto subscribed my name this 27th day of September, 2022.

_____

Donna R. McCormick

IN THE CIRCUIT COURT FOR
PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND,

vs.                                    Case Number:
                                       CT211239X
CHRISTOPHER BUTLER,

     Defendant.

_____

OFFICIAL TRANSCRIPT OF PROCEEDINGS

(Motions Hearing)
)

Upper Marlboro, Maryland

Tuesday, July 26, 2022

BEFORE:

HONORABLE KRYSTAL Q. ALVES, Associate Judge

APPEARANCES:

    FOR THE STATE:

    STEVEN SMITH, ESQUIRE, ASA

    FOR THE DEFENDANT:

    ALLISON HELDRETH, ESQUIRE

2

T A B L E   O F   C O N T E N T S

P A G E

Scheduling Discussions                                    3

Argument by Ms. Heldreth                                  6

Argument by Mr. Smith                                     8

Further Argument by Ms. Heldreth                          9

3

```
 1                  P R O C E E D I N G S
 2       (On the record at 1:38:34 p.m.)
 3             THE COURT:  Beth, you want to call the case.
 4             THE BAILIFF:  Court is now in session.  The
 5  Honorable Judge Crystal Alves presiding by video.
 6             THE DEPUTY CLERK:  Calling CT211239X, State of
 7  Maryland versus Christopher Butler.
 8             MR. SMITH:  Good afternoon, Your Honor.  Steven
 9  B. Smith on behalf of the State.
10             MS. HELDRETH:  Good afternoon, Your Honor.
11  Allison Heldreth on behalf of Mr. Butler who is present
12  next to me.  Can the Court hear us okay?
13             THE COURT:  Yes.
14             MS. HELDRETH:  Perfect.
15             THE COURT:  This case was here for motions and
16  then -- it was assigned to Judge Serrette.  I guess it got
17  reassigned to me and I just want to make -- I don't know
18  if the Motions dates are okay with my calendar.
19             MS. HELDRETH:  So we had talked about November
20  for constitutional motions, which there's at least a
21  statement.  I'm still going, you know, to make sure that
22  that's the only one, but I know that that would be one of
23  the constitutional motions.
24             THE COURT:  November what?  What were the dates?
25             MR. SMITH:  I believe it was the week of
```

4

1    November twenty-something.  But those were with Judge

2    Serrette's calendar.  At that time we didn't know that the

3    case had been reassigned.

4             MS. HELDRETH:  Right.  I think it's the 21st,

5    22nd and 23rd.

6             MR. SMITH:  Right.  So we had three options.

7             MS. HELDRETH:  Right.

8             THE COURT:  One-day motions?

9             MS. HELDRETH:  I think half a day even would be

10   fine, but we just wanted to clear multiple options between

11   the two of us.

12            THE COURT:  No.  That's not good for me, so

13   we're going to have to pick new motions dates.

14            MR. SMITH:  Okay.  So Your Honor, would you like

15   to do that now or should we --

16            THE COURT:  Yes.

17            MR. SMITH:  Okay.  So this is set for trial the

18   week of January 16th.  So does Your Honor have any dates

19   that she would suggest where you are free before then?

20            THE COURT:  Beth, call Assignment and see what

21   day they have for criminal motions for one day.

22            This is not showing up -- this is January 2023

23   or 2024?

24            MR. SMITH:  Three.

25            MS. HELDRETH:  Three.

**JA686**

5

```
1              THE COURT:  What are the trial dates?

2              MR. SMITH:  January 16th through 19th.

3              THE COURT:  As of -- well, this may be

4   (indiscernible at 1:41:30).  Hold on.

5              THE DEPUTY CLERK:  Monday, (indiscernible)?

6              MR. SMITH:  Yes.

7              MS. HELDRETH:  Yes.

8              THE DEPUTY CLERK:  That's fine.  What about

9   November 17th?

10             MR. SMITH:  No.  We have a trial that week.

11             THE DEPUTY CLERK:  November 9 or 10?

12             MR. SMITH:  I believe those should work.

13             MS. HELDRETH:  10 is better, but I can do it

14  (indiscernible at 1:43:00).

15             MR. SMITH:  You said 10 is better?

16             MS. HELDRETH:  10 is better.

17             MR. SMITH:  Okay.  The 10th should be fine.

18             THE DEPUTY CLERK:  Judge, are you there?

19             THE COURT:  Yeah.  I'm talking with Lasette.

20  Hold on.

21             MR. SMITH:  November 10th.

22             THE COURT:  Sorry about that.  Okay.  What date

23  do you have?

24             MS. HELDRETH:  We have November 10th.

25             THE COURT:  November 10th. I think that will
```

6

1    work.  I mean, as far as Assignment gave it to you, that

2    works.  And the trial, they do have this as a trial down

3    for me; right, Beth?  Because it's not showing up at least

4    as of the 21st.  I didn't have it on my scheduled events.

5    I think that switched from Serrette to me, like, the 20th.

6                So you know at least there's a statement, right?

7                MS. HELDRETH:  Yes, Your Honor.

8                THE COURT:  All right.  And this is 2023, right?

9                MR. SMITH:  Yes, Your Honor.

10               MS. HELDRETH:  Yes.

11               THE COURT:  Okay.  So while Beth's looking at

12    that, what else is there?

13               MS. HELDRETH:  So just for today's purposes as

14    well, this case was still before Judge Serrette; there's

15    been an ongoing issue with Pretrial.  So Judge Serrette

16    specifically ordered pretrial at level 4 if eligible.

17    There's been kind of another ongoing issue with pretrial

18    because --

19               THE COURT:  Well, let me stop you right there.

20    I'm not Judge Serrette.  So I'm not necessarily sure that

21    I'm going to even order Pretrial level 4.  Since it's my

22    case now, I mean, we can look at it.

23               MS. HELDRETH:  I do believe there is good law

24    that the Court can't change a bond status unless there is

25    a change in circumstances if there is, I guess, a lowering

1    of the bond status, or I guess if the Court intends to

2    make it less favorable to the Defendant.  I don't believe

3    that can be done absent a change in circumstances, so

4    that's why I bring it up because there is an outstanding

5    Order that we've had trouble with Pretrial complying with.

6    And so I wanted to clear that up because Pretrial has

7    essentially said no because of the nature of the case.

8    However, that was something that Judge Serrette did have

9    in front of her when she made the determination.  So

10   there's an ongoing issue pretrial, refusing to comply with

11   the Order in that respect.

12          THE COURT:  How is Pretrial not complying with

13   the Order?

14          MS. HELDRETH:  Well, they told me, and this has

15   been kind of an ongoing issue, that they did not want to

16   release Mr. Butler because of the nature of the case.

17   However, they indicated that there's actually no criteria

18   in terms of which cases are allowed to be on pretrial

19   because, you know, I myself have another individual who's

20   charged with the same type charge and is on Pretrial level

21   4.  So there's no prohibition for people with Mr. Butler's

22   charges being released on pretrial level 4, but Pretrial

23   is now claiming, I guess, an arbitrary condition.

24          THE COURT:  Okay.  Hold on a second.  I mean, I

25   want to back up to Judge Serrette's determination of what

1    the bond status is.  Can you give me that case law?

2              MR. SMITH:  Your Honor, may I interject just

3    briefly?

4              THE COURT:  Yes.

5              MR. SMITH:  So what happened was on February

6    18th in 2022, Judge Serrette authorized pretrial.  She

7    never ordered it.  And when it's authorized, it's then up

8    to Pretrial to make an independent determination as to

9    whether or not they will accept Mr. Butler.  So I think

10   that is the distinction.  It was never an order by Judge

11   Serrette.  She granted pretrial, essentially, with

12   discretion, so it was authorized but never ordered, and

13   that is a big distinction because if it were ordered, then

14   they would then have to comply, but it was never ordered,

15   and I think that is where the difference lies because

16   they're not thumbing their nose at Judge Serrette's

17   orders.  They're saying, no, we have made a determination

18   that we do not believe he is a good candidate for Pretrial

19   level-4 release.  And that is within their discretion to

20   make that determination.

21             THE COURT:  I understand.  Yeah, I understand

22   that point that you're making, and I'm not saying that's

23   not a valid point, but I'm backing this up a little

24   further to, I want to first take a look at the case law

25   that says about Pretrial release.  You know, I got

9

1    reassigned this case.  I don't know anything about the
2    case outside of, you know, that it was assigned to me, and
3    what's barely in the file.  And so, I want to just take a
4    look at that.
5             MS. HELDRETH:  Your Honor --
6             THE COURT:  Before we even get to the other
7    situation of pretrial release, whether it was ordered,
8    whether it was not ordered, that's number one, just for my
9    benefit.  I'm not saying I won't, but I just want to look
10   at it.
11            MS. HELDRETH:  And I'm texting someone in my
12   office to get that for me.  And I guess I just assumed
13   that the Order would stand because it had already been
14   determined.  In terms of while they're doing that, I know
15   the Court wants to look at that, however, it is in the
16   docket entries that it was ordered if eligible.  That's
17   the whole issue, and there's actually a pending federal
18   case right now concerning what the State is saying, that
19   pretrial has some sort of independent judicial authority
20   to make these decisions.  We very much disagree with that.
21   We do not believe that Pretrial ever should be granted
22   authority to accept or reject people, and that is actually
23   a subject of an ongoing other legal issue going on.
24            THE COURT:  I understand that, and I also
25   understand that if there's a difference between what's in

**JA691**

1    the docket entry -- has anybody listened to the tape or

2    the Zoom hearing?  I don't even know if this was on a Zoom

3    hearing or live.  Did anybody get the transcript from the

4    hearing because there seems to be a factual dispute on

5    whether it was ordered or whether it was authorized, or

6    just given to the discretion.  I understand your argument

7    about Pretrial, the larger argument, that Pretrial doesn't

8    have the authority, but did anybody get the transcript?

9         MS. HELDRETH:  Not for today's purposes.  I have

10   the docket entry.

11        THE COURT:  I'd like to see a copy of the

12   transcript if someone can get that for me.  It wasn't in

13   the file, so if you could get a copy of that, maybe that

14   will resolve the factual issue on what Judge Serrette

15   actually said.  I'm not saying -- you know sometimes there

16   are mistakes on docket entries and there seems to be a

17   dispute between the State and you on whether it was

18   ordered or whether it was just recommended, for lack of a

19   better way to put it.

20        MS. HELDRETH:  You know, I wouldn't be able to

21   get that today.  I will say, we were back up before Judge

22   Serrette where I think we both kind of put our own

23   understandings of what happened on the record, and it did

24   seem to be that Judge Serrette --

25        THE COURT:  I'm not Judge Serrette.  It's been

1    reassigned to me.  I'd like to see what was said on the

2    record.

3              MS. HELDRETH:  Your Honor, I can get that

4    transcript, but again, it wouldn't be today if the Court

5    wants a written transcript.

6              THE COURT:  Yeah, I would.  Can you just -- I me

7    we can reset this to -- how long do you think it's going

8    to take to get the transcript?

9              MS. HELDRETH:  To get a rush turnaround, I mean,

10   I think --

11             THE COURT:  I don't mean -- was it on Zoom?  Was

12   it live?  Was it court reported?

13             MS. HELDRETH:  Yes.

14             THE COURT:  Huh?

15             MS. HELDRETH:  It was on Zoom.

16             THE COURT:  Okay.  So can you give me the date.

17   I mean I can have, you know, see if they can pull up the

18   Zoom hearing for me.  Do you remember the date?

19             MR. SMITH:  2/18/22.

20             THE COURT:  2/18/22.  Okay.  And that was the

21   date for the hearing before Judge Serrette.

22             MR. SMITH:  Yes, Your Honor.

23             THE COURT:  Okay.  And you don't have to get me

24   a written transcript, just as long as I can, you know,

25   hear what transpired, that will give me some background,

1   you know, because I'm coming into this cold.

2           MS. HELDRETH:  Yes, Your Honor.  And, also

3   6/30/22 was when I reraised this issue, so I think that

4   would be (indiscernible at 1:53:30) for the Court as well.

5           THE COURT:  Was that also on Zoom?

6           MS. HELDRETH:  That was also on Zoom, yes.

7           THE COURT:  Okay.  So I want to get a copy of

8   that or listen to it, and you all will take my

9   representations on what I heard if I have any.  You're

10  more than welcome I think, to hear it, or you know, if you

11  need to, so we don't have to wait and get it transcribed.

12  That will take too long.  It's better for me if I could

13  just pull the Zoom hearing and listen to it.

14          MR. SMITH:  The State is fine with that, Your

15  Honor.

16          THE COURT:  What was that, Mr. Smith?

17          MR. SMITH:  I said, the State is fine with that.

18          THE COURT:  Okay.  So 2/28/22 and 6/30/22

19          MS. HELDRETH:  It's 2/18/22.

20          THE COURT:  2/18/22.

21          MR. SMITH:  Yes.

22          THE COURT:  And 6/30/22.  Correct?

23          MR. SMITH:  Yes.

24          MS. HELDRETH:  That's correct, Your Honor.

25          THE COURT:  So yes, I would definitely like to

1  hear what transpired at those hearings since there is a

2  dispute between you two, and I know the larger issue on

3  whether the parole and -- not parole and probation --

4  whether Pretrial Release has the authority to do these

5  things.  And I think I'm going to need that in order to

6  make an intelligent decision on what's going to happen

7  moving forward.

8          MR. SMITH:  (inaudible at 1:55:07) Your Honor.

9          MS. HELDRETH:  (inaudible at 1:55:07).

10         THE COURT:  And the case law, also.  You know,

11 just refresh my memory what case law you're referring to.

12 Give me the case on, you know, the determination on

13 Pretrial Release.  I'm not saying you're wrong.  You may

14 be totally right.  I just want to read it for myself.

15         MS. HELDRETH:  Of course, Your Honor.  I totally

16 understand that.  And does the Court mean that you want

17 the legal documents from the, I guess, the case that we

18 were talking about with Pretrial?

19         THE COURT:  You mean in Federal Court?

20         MS. HELDRETH:  I mean, you, I thought you stated

21 to me that there's, you know, basically once Pretrial has

22 been set, it cannot be -- it cannot be raised to the

23 detriment of a Defendant.

24         MS. HELDRETH:  Yes, Your Honor.

25         THE COURT:  Yes, I want that case.

```
1           MS. HELDRETH:  Yes, Your Honor.  I just didn't
2    know if the Court also wanted the larger argument about
3    whether or not pretrial can make their own determinations.
4           THE COURT:  The larger argument I don't think is
5    really before me.  You filed that in Federal Court or it's
6    filed in Federal Court.
7           MS. HELDRETH:  Filed in Federal Court.  Yes,
8    Your Honor.
9           THE COURT:  Okay.  Well, I think that's for the
10   Federal Court to decide.
11          MS. HELDRETH:  Yes, Your Honor.  So I will get
12   that case law and the Court will listen to those two
13   hearing dates and then I, you know, I'm free the rest of
14   this week.  I'm also free Monday.  I don't know when the
15   Court wants to come back to discuss the issue.
16          THE COURT:  Mr. Smith, what's your availability?
17          MR. SMITH:  Your Honor, I am available on
18   Friday.  I have something before Judge Cotton, but I
19   believe that's in the morning.  If we can set this in the
20   afternoon --
21          THE COURT:  This Friday?
22          MR. SMITH:  Yes.
23          THE COURT:  In the afternoon?  Let me see.  This
24   is what, Tuesday.  They should be able to get that to me.
25   you can get the cases to me before Friday or the case?
```

1          MS. HELDRETH:  Oh, yes, Your Honor.  I'll do

2     that right now.

3          THE COURT:  And you can just either email it to

4     me or email it to my law clerk.  Yeah, email it to my law

5     clerk, D as in dog, A, Brown, B-r-o-w-n, B as in boy, at

6     CO.PG.MD.US.  And can you copy my admin on it also.

7          MS. HELDRETH:  Yes.

8          THE COURT:  And her email is R as in red, D as

9     in dog, Winchester, W-i-n-c as in Charlie, h-e-s-t-e-r, at

10    CO.PG.MD.US.

11         MS. HELDRETH:  Yes, also (indiscernible at

12    1:38:07).

13         MR. SMITH:  Can I --

14         THE COURT:  Go ahead, Mr. Smith.

15         MR. SMITH:  She already has my email, so I was

16    just asking that I be copied.

17         THE COURT:  Oh, of course.  We always copy you,

18    you know, both sides.  So you said this Friday at 1:30.

19         MR. SMITH:  Yes, Your Honor.  Is that good for

20    you, Counsel?

21         MS. HELDRETH:  That's fine for me, Your Honor.

22         THE COURT:  Beth, can you check Assignment and

23    see if I can do that.  Fridays are kind of tricky because

24    I don't know if I'm going to be in Motions, so --

25         THE DEPUTY CLERK:  Are we setting it for a bond

1   hearing?

2           THE COURT:  Yes.

3           THE DEPUTY CLERK:  And also the trial dates are

4   -- what Calendar Management gave me -- were January 17th

5   through the 19th of '23, and they are booked for you

6   already.

7           THE COURT:  Okay.  Thanks.  17th through the

8   19th, January.

9           THE DEPUTY CLERK:  Friday at 1:30?

10          THE COURT:  Yeah.  Monday might be better

11  because you never know if they're going to put me on

12  Motions or not.  I'll ask.

13          MR. SMITH:  I have something before Judge Rattal

14  on Monday, so that's why I went out (indiscernible at

15  1:59:19), Friday.  I have a trial set at this time.  I

16  don't know if it's going forward if there's contention on

17  whether or not a witness is able to be served.

18          THE COURT:  Okay.  If we can do Friday at 1:30,

19  that's fine with me.

20          THE DEPUTY CLERK:  They don't do bond hearings

21  on Friday.

22          MS. HELDRETH:  And Your Honor, just to be clear,

23  we're not -- essentially, we're not requesting a bond

24  hearing.  We want Mr. Butler's bond to remain the same and

25  be enforced.

1          THE COURT:  So what do you want to call it?
2     Just call it a hearing, Beth.  My question is, your client
3     wants to be here, correct?
4          MS. HELDRETH:  Yes, but let me just check if
5     he's okay --
6          THE COURT:  Yeah.  No, I mean, he can be here.
7     I'm just saying sometimes because they have so many
8     people, they may or may not transport him.  That's my
9     concern.  Friday is a busy day and if we pick a day that's
10    not a Friday, it's more likely, like today, that he would
11    be transported.  I don't know what their schedule is.
12         MS. HELDRETH:  Your Honor, we can do Zoom and
13    just make sure that the jail has the link.
14         THE COURT:  Okay.  That's fine.
15         MS. HELDRETH:  Okay.  So you have a full docket,
16    but if you want to squeeze it in, you can.
17         THE COURT:  No, don't like squeezing.  Mr. Smith
18    -- I mean, it depends.  How long do you think this is
19    going to take?
20         MS. HELDRETH:  I suppose it depends on whether
21    or not there's still a disagreement after listening, if
22    we're all on the same page, but I don't think it should
23    take long with the case law.
24         THE DEPUTY CLERK:  She said you could do it on
25    Thursday.  You only have one thing on Thursday if you can.

18

```
1              THE COURT:  Are you all available on Thursday?

2              MR. SMITH:  I am, Your Honor.

3              THE COURT:  Is that a yes?

4              MS. HELDRETH:  I'm available as well.

5              THE COURT:  You are, Mr. Smith?

6              MR. SMITH:  Yes, I am.

7              THE COURT:  I'm sorry.  You're breaking up.

8              MR. HELDRETH:  Oh, is it technical?  We are both

9   available, Your Honor, State and Defense.

10             THE COURT:  Okay, great.  What time, then?

11             THE DEPUTY CLERK:  Thursday at 11:00?

12             MS. HELDRETH:  That's fine.

13             THE COURT:  Thursday at 11:00.  And do you want

14  it in person or do you want it on Zoom?

15             MS. HELDRETH:  I would generally prefer in

16  person, however --

17             THE COURT:  Okay.  That's fine with me.  In

18  person.  Thursday at 11:00 in person.  And I will work

19  with the Zoom team to get those -- to listen to those

20  hearing.  Counsel will get me the case and we'll convene

21  back Thursday at 11:00.

22             MR. SMITH:  Yes, Your Honor.

23             MS. HELDRETH:  Yes, Your Honor.

24             THE COURT:  Okay.  Thank you so much. Is there

25  anything else?
```

**JA700**

19

1              MR. SMITH:  Nothing further, Your Honor.

2              MS. HELDRETH:  If we could just put down that

3    Mr. Butler could be transferred to Court (indiscernible at

4    2:02:51 p.m.)

5              THE COURT:  That's what we'll put down on the

6    docket entry.  Thursday at 11:00 would be August 4th,

7    correct?

8              THE DEPUTY CLERK:  July 28th.

9              THE COURT:  Excuse me.  Hold on a second.  What

10   date?

11             MR. SMITH:  It's this Thursday, the 28th.

12             THE COURT:  Oh, this Thursday, the 28th.  Okay.

13   Got you.  28th at 11:00.

14             MR. SMITH:  Yes.

15             THE COURT:  All right.  Anything further?

16             MR. SMITH:  No, Your Honor.

17             MS. HELDRETH:  Nothing else.

18             THE COURT:  Thank you.

19             MR. SMITH:  Thank you, and have a good day.

20             THE COURT:  You, too.  Bye-bye.

21        (The hearing was concluded at 2:02:33 p.m.)

22

23

24

25

**JA701**

20

CERTIFICATE OF TRANSCRIBER

I hereby certify that the proceedings in the matter of State of Maryland versus Christopher Butler, Case No. CT211239X, heard in the Circuit Court for Prince George's County, Maryland, on July 26, 2022, were recorded by means of digital media with video.

I hereby certify that the proceedings herein contained were transcribed by me or under my direction. That said transcript is a true and accurate record to the best of my ability and constitutes the official transcript thereof.

In witness thereof, I have hereunto subscribed my name this 27th day of September, 2022.


_____

Donna R. McCormick

IN THE CIRCUIT COURT FOR
PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND,

vs.                                        Case Number:
                                           CT211239X
CHRISTOPHER BUTLER,

     Defendant.

———————————————————

OFFICIAL TRANSCRIPT OF PROCEEDINGS

(Motions Hearing)

Upper Marlboro, Maryland

Thursday, July 28, 2022

BEFORE:

HONORABLE KRYSTAL Q. ALVES, Associate Judge

APPEARANCES:

    FOR THE STATE:

    STEVEN SMITH, ESQUIRE, ASA

    FOR THE DEFENDANT:

    ALLISON HELDRETH, ESQUIRE, APD

2

T A B L E   O F   C O N T E N T S

P A G E

Argument by Ms. Heldreth                    3

Argument by Mr. Smith                       5

Argument by Ms. Heldreth                    6

The Court's Decision                       13

Scheduling Discussions                     13

3

```
 1                P R O C E E D I N G S
 2       (On the record at 11:11:10 a.m.)
 3            THE DEPUTY CLERK:  Calling CT211239X, State of
 4   Maryland versus Christopher Butler.
 5            MR. SMITH:  Good morning, Your Honor.  Steven B.
 6   Smith on behalf of the State.
 7            MS. HELDRETH:  Good morning.  Allison Heldreth
 8   on behalf of Mr. Butler who is present and seated next to
 9   me.
10            THE COURT:  Okay.  So I guess we're here on the
11   bond hearing portion?
12            MS. HELDRETH:  We don't want to change Mr.
13   Butler's bond.  We just wanted the bond condition
14   enforced.  So I think the Court indicated that they, you
15   would listen to the, I think, February 16th and June 30th,
16   and we also provided a case to chambers in addition to
17   that.  I just want to update the Court, as well.
18            The Federal lawsuit, there's a discussion about
19   the preliminary injunction, and apparently the Defendants,
20   including the home detention program, have until Tuesday
21   to explain why this fellow hasn't been released.  So we
22   would ask if the Court wants to make any change, that that
23   be, you know, we (indiscernible at 11:12:23), but I also
24   wanted to see if the Court had come to a decision about
25   what the documents (indiscernible -- 11:12) state first.
```

4

1          THE COURT:  I have.  The Court had the

2   opportunity to listen to the two hearings.  I had it on my

3   docket.  I think one was in May and one was in February,

4   but I listened to both of them, and the exact wording from

5   Judge Serrette stated that the Defendant, Mr. Butler, may

6   be eligible for Pretrial release level 4.  That was at the

7   February hearing.  And then she also said "eligible for

8   Pretrial release level 4."

9          At the main hearing she clarified and again

10  stated that, you know, Pretrial Release has, and I'm

11  paraphrasing, basically the option, so it wasn't a Court

12  Order.  It was "may be eligible for Pretrial release level

13  4."  The Pretrial release, we'll -- and again, I'm

14  paraphrasing -- take a look at it and see whether he's

15  eligible.  That was her wording.  There was never an

16  order.  I know what the docket entry said, and there was a

17  discussion with the courtroom clerk after everybody was

18  gone, with your client, and he didn't understand what

19  happened, so the courtroom clerk kind of explained it to

20  him, but it was Judge Serrette.  And you can listen to it

21  if you want.  Judge Serrette never uttered the words

22  "ordered."  She said "may be eligible for."  And she

23  clarified in May that Pretrial Release, you know, can take

24  a look and see whether he's eligible.  And that was the

25  extent of it.  So it was never Court ordered at my view of

1   her statement, was it was never court-ordered Pretrial

2   release, level 4.

3         MS. HELDRETH:  So we're still asking to keep it

4   whatever state it is until after clarification next week

5   concerning the (indiscernible at 11:14:54) and the lawsuit

6   (indiscernible).

7         THE COURT:  Well, that's point two.  You know, I

8   know the State at both hearings objected to any bond

9   change.  I read your case which is Gillis versus

10  Commissioner, Department of Corrections, 52 Md.App 26,

11  (1982), and this member of the bench doesn't think that

12  it's applicable to this case, and I don't know of any case

13  law that says that a Court cannot modify a Defendant's

14  bond.  But, I mean, you know, it was the Defense who asked

15  for the bond hearing.  The State objected to the bond

16  hearing.  That was with Judge Serrette. It's now with me,

17  but I don't, you know, I don't know what the State's

18  position is.

19        MR. SMITH:  Your Honor, the State's position is

20  the same as it was in June, or whenever we had that first

21  hearing.  Is that the State believes that the Defendant

22  should be kept or held in the same no-bond status as he

23  was in because there had been no change in circumstances

24  from when he was initially arrested and indicted and

25  nothing had changed, and still nothing has changed, so we

1    are in the same position we were in back then and we're

2    asking for bond to remain at no bond.

3              THE COURT:  All right.  Well, the Court is not

4    going to make a decision.  What's coming up in the Federal

5    case?

6              MS. HELDRETH:  On Tuesday, my understanding is

7    there was a meeting last night with the federal judge and

8    he essentially ordered the Defendant's pretrial

9    specifically to let him know by Tuesday what was the

10   reason for why the named Plaintiffs had not been released

11   and because it's under consideration for a preliminary

12   injunction at this point.  And so in order to rule on

13   that, my understanding is that needed that information

14   from the Defendant before the Judge makes a ruling on the

15   Preliminary Injunction which I believe would -- what their

16   asking for, the Plaintiffs are asking for, is that

17   everyone who's name as a Plaintiff be released by

18   Pretrial, so that's what, you know, what we're waiting on

19   to see, the clarification from the Federal Court about

20   whether or not they're going to grant a preliminary

21   injunction.

22             THE COURT:  But that doesn't prohibit this Court

23   from making the determination as to bond.

24             MS. HELDRETH:  Well, Your Honor, I would argue

25   there's a due process issue here.  Number one, the State

7

1   is kind of confusingly logically saying you should change

2   his bond because there was no change in circumstances

3   months ago and there's no change in circumstances now, so

4   essentially putting the onus on us to provide a change in

5   circumstance to make Mr. Butler's bond better, but they

6   get to make his bond worse without change in circumstance.

7   I am extremely confused by the State's argument here.

8           In terms of the case I provided, I do believe at

9   some point, because even though it talks about money bond

10  and cases about pretrial specifically, you know, tend not

11  to make it to higher courts until now because this is a

12  fairly new system we have.  But in any event, it still

13  stands for the proposition that there are due process

14  issues when somebody has a Pretrial Release status, in

15  this case -- or in that case, a cash bond and it

16  essentially, you know, kind of arbitrarily changed.  I

17  understand -- the reason I say "arbitrarily," and I'm not

18  trying to insult this member of the bench at all.

19          THE COURT:  No, no, no.

20          MS. HELDRETH:  The issue is appears that Mr. --

21  and I don't know specifically -- but the timing to me says

22  that the case being reassigned because of the Federal

23  lawsuit coming down and the last judge being named as part

24  of the Federal lawsuit just because of Mr. Butler's case,

25  is probably the reason I got reassigned and so I think

1   there is a due process issue if Mr. Butler's bond

2   condition were to be changed when, as the State indicated,

3   nothing has actually happened.  It's not like he's gone

4   out and robbed a bank.  It's not like he's escaped from

5   the jail, for instance.  I think the case I provided

6   speaks to that as well, like, when you see an intervening

7   event that changes the Court's mind, but essentially

8   you'll be punished for filing a lawsuit.

9           So I think that's my concern here, is that the

10  only changes he enlisted the help of a civil rights firm

11  and was a named Plaintiff, and if that's the only change,

12  then I think that that does raise due process concerns for

13  Mr. Butler because, again, as the State indicated, nothing

14  else has changed since February to justify.

15          THE COURT:  The Court has changed since

16  February.

17          MS. HELDRETH:  Right but it appears because Mr.

18  Butler filed a Federal lawsuit, so.

19          THE COURT:  I don't know why I was assigned this

20  case.  I can just say that.  But I also know that had this

21  case originally been assigned to me, and all due respect

22  to my colleague on the bench, I would have analyzed

23  whether or not he was eligible for Pre-Trial Release or

24  whether the bond would be changed, differently.  I can say

25  that.  And now that the case is mine, and I don't think

1    there's any prohibition, well, meaning is (indiscernible

2    at 11:20:36) has been assigned to me.  I don't know if

3    there's any prohibition for this Court, if the State

4    objected at that time and I honestly am not -- I don't

5    think that your case is on point to the facts of this case

6    and I'm not here to trample over anybody's constitutional

7    rights at all.  But what the Court does know is that this

8    is now a case assigned to me.

9            I would have analyzed the bond criteria

10   differently and I may be -- I may have to keep the other

11   judges' decision in place, but that would not have been my

12   decision.

13           MS. HELDRETH:  And I understand.  I don't -- of

14   course, the Court knows better than me.  I don't dispute

15   that all.  You know, I'm just, you know, I guess, raising

16   the issue, you know -- people aren't entitled to a certain

17   judge being assigned, anything like that.  However, I do

18   think that that case does stand for the proposition that,

19   you know, once someone is given that opportunity for

20   release, you know, and he's had a full hearing about that,

21   I don't see any authority for the opposite, that it can

22   just be, you know, taken away without, again, Mr. Butler

23   escaping the jail.  You know, those are extreme examples.

24   But like, you know, something to show that the information

25   that the Judge had at the bond hearing has now changed,

1    that there's been a material change in circumstance.  And

2    again, what's problematic about what the State's saying

3    is they're saying there's no change -- there wasn't a

4    change in circumstance at the last bond hearing.  It

5    should not ever be incumbent on the Defendant to show a

6    change in circumstance to better a situation, but they

7    have no obligation to show a change in circumstance to

8    worsen the situation.  I mean, he's presumed innocent.

9    You know, there's very longstanding case law in both the

10   Supreme Court and the Maryland Rules that they favor

11   freedom.  They favor liberty, that pretrial detention

12   should be a carefully crafted exception.

13           And so looking at all of that as a whole, I'm

14   not sure how it's incumbent upon us to prove change in

15   circumstance and the State does not have to show any kind

16   of reason for why a pretrial condition that's already been

17   set, even you know, with the factual dispute, you know,

18   made the ruling the Court made, why that should even be

19   taken away when, again, the State says there's no change

20   in circumstances.  So I don't know why -- it's on them, I

21   think, to show an authority for why they can then change

22   that.

23           THE COURT:  I don't necessarily agree with the

24   State's reasoning, but what I understand is that, again,

25   this case has now been assigned to me.  I would not have

**JA712**

1   made the decision that my colleague made regarding bond.

2   I see the fact situation differently when you take the

3   factors into consideration on whether Pretrial Release

4   should be granted.  But again, I'm not trying to -- I'm

5   not here to -- I'm not exactly clear on whether the Court

6   is able to do anything.

7           But again, in the case that you cited when I say

8   it's not -- I don't think it's applicable, in that case,

9   there was a clear abuse of discretion for the Judge for

10  basically, it was a ruse that that Judge used in granting

11  an appeal bond and revoking his bond after giving the

12  appeal bond.  She essentially gave a bond that thought he

13  or she was giving a bond that the person couldn't make.

14  And then when the person made the bond, then arbitrarily

15  revoked the bond.  That is not the situation here.

16          This member of the bench would go through the

17  criteria to establish pretrial release, and as Judge

18  Serrette did, but this member of the bench would analyze

19  it differently.  And I don't know where I am with that.

20          MS. HELDRETH:  I, just on the case, very

21  briefly, I agree with the Court's summation.  I think,

22  what it is, is this is obviously a pretty well cited case

23  and it's cited for different reasons, and I think that

24  there are distinct holdings and the holding about, you

25  know, monetary bond not being illusory, is separate from

1    the idea that there, you know, due process requires that

2    there be some intervening event to give the Court pause.

3    I think that that's separate from it because we're not

4    talking, of course, about money bond here, and certainly I

5    think that's what the case is most often cited for, the

6    idea you shouldn't give a money bond that's so high that

7    it's essentially held without bond.

8         But I think that the issue about nothing, you

9    know changing, is also, even if it's not talking about

10   money bond, I think that that, you know, precedent does

11   hold in terms of, you know, the Court's due process juris

12   prudence.

13        THE COURT:  I don't find that holding in this

14   case, that it can't be taken away once it's set.

15        MS. HELDRETH:  I think near the end they talk

16   about intervening circumstances that give the Court pause

17   about flight risk or safety.  And that was kind of the

18   second part of it.  You know, clearly, as I agree before,

19   the Judge in that case was, you know, providing a ruse,

20   was giving a money bond and didn't think the person was

21   going to make and was surprised when he did.  But at the

22   end the Court does discuss the fact that looked like, you

23   know, this could have been fine if the person did

24   something that in their intervening time, that gave the

25   Court reason to believe that they no longer were, you

1  know.

2          THE COURT:  I agree, but that is not the Court's

3  holding in this case.  I know people can cite it for that,

4  but I don't see that as the Court's holding in this case,

5  and that's all I'm saying.  So that's why I'm saying it's

6  not on point.  We don't have a fact situation here like

7  that.  We have one member of the bench, you know, as we

8  do.  I mean, it's a bail when you're looking at the

9  factors, you know, somewhat -- people can differ and I

10  differ, so but you know, the Court's not going to do

11  anything.  It's going to wait and see what happens in the

12  Federal Court.  And I still want to research whether his

13  bond can be changed.  I mean, the State still has a

14  position that Pretrial Release should not have been

15  granted.  They haven't changed that, and I don' know that

16  effect of the case, now being assigned to me, can modify

17  that what was done previously, so.  But I'm not going to

18  do anything now.  I'll just wait for the Federal Court to

19  do what they're going to do.

20          MS. HELDRETH:  Yes, Your Honor.

21          MR. SMITH:  I have just one more -- while we're

22  here, Your Honor.  So if you recall, we had picked a

23  motion date in this case of November 10th.

24          THE COURT:  Uh-huh.

25          MR. SMITH:  When I let the Detective, the one

1   who's needed for the motions, he advised me that he has to

2   attend a wedding in, I believe either, in Central America.

3   I can't remember -- I think in Guatemala.

4          THE COURT:  Uh-huh.

5          MR. SMITH:  So he will be out of the country

6   from November 9th through the 14th.

7          THE COURT:  Is this '22 or '23?

8          MR. SMITH:  '22.

9          THE COURT:  Okay.  You never know, that we're in

10  '23 and '24.

11         MR. SMITH:  Yes, '22.

12         THE COURT:  Okay.

13         MR. SMITH:  So I figured, since we're all here,

14  I'm not sure if the Court wanted to just try and pick a

15  different date now.

16         THE COURT:  Sure.  I mean, if you don't have a

17  problem with it, I don't have a problem with it.

18         MR. SMITH:  Okay.

19         THE COURT:  Do you have a problem with it?

20         MS. HELDRETH:  No problem.

21         THE COURT:  Okay.  All right.  Let me go get my

22  scheduled events, but you two talk.  Or actually -- is

23  three hours you need, a Motion, two hours, one hour?

24         MS. HELDRETH:  I think three is fine.

25         MR. SMITH:  I think three.

1          THE COURT:  Can you ask for a three-hour motions

2     date in this case.  It's currently set for November 22nd.

3     That's probably the best way to do it.

4          MR. SMITH:  It's set for November 10th.

5          THE COURT:  November 10th.  Yes.  November 10th.

6          THE DEPUTY CLERK:  Uh-huh.

7          THE COURT:  Yeah.  It's currently set for

8     November 10th.  They need to move it and I need a three-

9     hour motions date before the trial in January, 2023.

10         MR. SMITH:  Yes.

11         MS. HELDRETH:  Yes, Your Honor.

12         THE COURT:  Yeah, okay.  I'll be right back.

13    I'm going to grab my scheduled events.  Okay.

14         THE DEPUTY CLERK:  Her first date is January

15    4th.

16         MR. SMITH:  Your Honor, I'm pretty sure I have a

17    trial.  Yeah, I only have two things set for that day.

18         THE DEPUTY CLERK:  Okay.  What day is the trial?

19         MR. SMITH:  I have it down for the 16th.

20         THE DEPUTY CLERK:  The 15th?  Are you still in

21    trial on the 5th?

22         MR. SMITH:  No.  I have Motions and Sentencing

23    on the 4th, so I should be good on the 5th.

24         THE DEPUTY CLERK:  Okay.  Her first order is

25    January 5th.

**JA717**

```
1                   THE COURT:  January 5th.  January 5th, of 2023,
2    right?
3                   THE DEPUTY CLERK:  Yes.
4                   MR. SMITH:  Yes.
5                   THE COURT:  Okay.  Sounds good to me.
6                   MR. SMITH:  So the 5th is good?
7                   THE DEPUTY CLERK:  January 5th.
8                   MR. SMITH:  Okay.  At what time?  Morning?
9                   THE COURT:  9:00.
10                  MR. SMITH:  9:00?  Okay.
11                  THE COURT:  And is that in person or is it --
12                  MR. SMITH:  In person.
13                  THE COURT:  It's in person?
14                  MR. SMITH:  Yes.  Defense had (indiscernible at
15   11:32:41).
16                  THE COURT:  Okay.  Everything in person?
17                  MR. SMITH:  Yes.
18                  THE COURT:  Okay.  Okay.  That's fine.  Do I
19   have to keep asking that these hearings be in person?
20   That's not for you to answer.
21                  MR. SMITH:  I think once the Court approves it,
22   initially, even if it gets continued, I think that carries
23   over.
24                  THE COURT:  Okay.
25                  MR. SMITH:  Automatically.
```

```
 1              THE COURT:  Yeah.  Because I know I specifically
 2    requested an in-person hearing for this and they
 3    reapproved it again.  So I just want to make sure I don't
 4    have to keep reapproving and reapproving and reapproving.
 5              MS. HELDRETH:  I'm sorry, Your Honor.  Do I need
 6    to file a line or is it --
 7              THE COURT:  No, I saw it in the file.
 8              MS. HELDRETH:  Okay.
 9              THE COURT:  I just needed to know whether on our
10    end, whether once they're granted it's good for the whole
11    shebang.
12              MS. HELDRETH:  Right.  Right.
13              THE COURT:  Okay.  And make sure they know it's
14    in person, put it on the docket entry "in person."  Is
15    there anything else?
16              MR. SMITH:  Nothing else, Your Honor.
17              THE COURT:  Okay.  Thank you.
18              MS. HELDRETH:  I'll certainly follow up if we
19    have anything.  Thank you, Your Honor.
20              THE COURT:  Have a great day.
21              MR. SMITH:  You, too.  Thank you, Your Honor.
22         (The hearing was concluded at 11:33:54 p.m.)
23
24
25
```

18

CERTIFICATE OF TRANSCRIBER

       I hereby certify that the proceedings in the matter of State of Maryland versus Christopher Butler, Case No. CT211239X, heard in the Circuit Court for Prince George's County, Maryland, on July 28, 2022, were recorded by means of digital media without video.

       I hereby certify that the proceedings herein contained were transcribed by me or under my direction. That said transcript is a true and accurate record to the best of my ability and constitutes the official transcript thereof.

       In witness thereof, I have hereunto subscribed my name this 27th day of September, 2022.

_____

Donna R. McCormick

**JA720**

# Exhibit E
# Miramba Williams
# Case Documents

BM
27

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY
PRETRIAL INTAKE FACT SHEET

| | |
|---|---|
| | ID NO.: 052188 |
| STATE OF MARYLAND | CASE NO.: 2E00715535 |
| VS. | CHARGE: Handgun In Vehicle |
| Miramba Williams | TOTAL BOND: $ 0.00 |

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: _____

2) AKA's:   None.

3) Detainers: _____

4) Also In Jail On: _____

5) PreTrial Release: _____

6) P&P Information: (Montgomery County) 122077C, PBJ, Burglary First Degree, 5/1/13, Closed, 5/1/16, Early Termination, Silver Spring, Ramina Johnson.

7) Residence: 2516 Darel Dr, Apt 102,          Employment: Unemployed
   Suitland, MD, 20746          (7/4/22)
   Length: 2 years          (1249)          Length: _____
   Tel. #: (  ) (202) 270-6257          (KS)          Position: _____
   Lives With: Miramba Williams (Dad)          Can S/he Return: _____
   Verified By: Miramba Williams          Verified By: _____

8) COMMENTS: (Montgomery Co) Prot. Order D06FM22001788, Rashel Gomez, isd: 05/31/22 exp:5/31/23 (Montgomery Co) Probation 135109C, Poss. Firearm, 10/28/19, Active, Exp. 10/28/22, Upper Marlboro (Frederick) Pretrial Release D111CR2100, CDS PWID, 3/10/21, Closed, Closed 7/21/21, Silver Spring.

TOTAL FTA's: CR 0 /MV 0     TOTAL CONTEMPTS: 0     DRUG TEST: _____
Pending: _____          NCIC: _____
_____          (Montgomery Co) Reg. Firearm: Illegal Poss.
_____          4/17/19 (G) 18 months jail/ 3 years probation
Prior: _____          _____
_____          _____
_____          _____
_____          LEVEL:  1  2  3  4   DM/CM 0      None
_____          CONDITIONS: _____
_____
Investigator: I. Mills          Date: 07/04/22

Distribution:  White: Judge   Green: Computer Work   Yellow: State's Attorney   Pink: File Copy   Green: Public Defender

PGC Form 3088 (Rev. 9/13)



**DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY**
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 2E00715535

## STATE OF MARYLAND  VS.  WILLIAMS, MIRAMBA KINTE
2516 DAREL DR #102
SUITLAND MD 207460000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge GREGORY C. POWELL on 07/05/2022.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
OR PR TO PTR
DO NOT POSSESS ANY FIREARMS, WEAPONS OR
AMMO.

YOU ARE SCHEDULED FOR PRELIMINARY HEARING
on 08/02/2022 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and
terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court
Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as
soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner
regarding the status of your Application.

07/05/2022   3:50 p.m.   Room: 5

_____        _____
Defendant Signature                              Date

**Tracking No.   180001569952**                    **JA723**





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 2E00715535

## STATE OF MARYLAND  VS.  WILLIAMS, MIRAMBA KINTE
2516 DAREL DR #102
SUITLAND MD 207460000

| | | |
|---|---|---|
| CC #:220031773 | State ID:0003884781 | LocID: |
| Eyes: BRN | Hair: BLK | Height: 6'03" | Weight: 180 lb. |
| Race:1 | Sex:M    DOB:10/03/1994    DL #: | |

**Charge | Statute | AR/Citation**
HANDGUN IN VEHICLE | 1 0175 CR4203 |
LOADED HANDGUN IN VEHICLE | 1 1454 CR4203(a)(1)(v) |

**Charge | Statute | AR/Citation**
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |
ILLEGAL POSS AMMO | 1 1285 PS5133.1 |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
   13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge GREGORY C. POWELL and the Defendant is committed Without Bail.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
OR PR TO PTR
DO NOT POSSESS ANY FIREARMS, WEAPONS OR
AMMO.

### YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing
on 08/02/2022 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 07/05/2022  Time: 3:50 p.m.

**Tracking No. 180001569952**

CC-DC-CR-028 (Rev. 07/2017)

JUDGE/CLERK: _____

**JA724**       Judge Gregory C. Powell

# PRINCE GEORGE'S COUNTY GOVERNMENT
## Department of Corrections

Angela D. Alsobrooks
County Executive

July 15, 2022

**TO:**               **The Honorable Gregory C. Powell**

**FROM:**          **Jermaine Mills, Case Manager, Monitoring Services**

**DEFENDANT:**   **Miramba Williams**

**CASE/CHARGE:**   **[1. CR2E00715535 Loaded Handgun Vehicle]**

[ X ]   The above defendant has been evaluated for program placement;

[ ]   The above defendant is being reconsidered for pretrial release;

[ x ]   The above defendant is no longer eligible for pretrial release;

[ ]   The above defendant violated "Conditions of Release";

[ ]   The above defendant's whereabouts are currently unknown/absconded;

## STATUSES

1.    [ ]   **Victim Fears**

2.    [ X ]   **Pending Case (s)/Detainer (s) Warrant was requested by Montgomery County Agent Rashel Gomez for Violation of Probation. (case#D06FM22001788 Violation of protective Order).**

3.    [ ]   **Criminal History**

4.    [ ]   **No Verifiable Address**

5.    [ ]   **Mental Health Issue / Evaluation Pending**

6.    [ ]   **Medical Health Issue(s)**

7.    [ ]   **Violated "Conditions of Release"**

8.    [ ]   **Federal Hold or State Hold**

9.    [ ]   **Other-See Explanation**

**EXPLANATION:**

cc:     Lisa Hall Johnson, Administrative Judge
        PGCDOC-Corenne Labbe, Director
        PGCDOC-Guy Merritt,  Deputy Director, Bureau of Administration
        PGCDOC-Elizabeth Coker-Nnam, Acting Division Chief, Community Corrections  $e CN$





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772          Case No. 2E00715535

## STATE OF MARYLAND VS. WILLIAMS, MIRAMBA KINTE
2516 DAREL DR #102
SUITLAND MD 207460000

CC #:220031773          State ID: 0003884781      LocID:
Eyes: BRN      Hair: BLK          Height: 6'03"      Weight: 180 lb.
Race: 1      Sex: M      DOB: 10/03/1994      DL #:

**Charge | Statute | AR/Citation**
HANDGUN IN VEHICLE | 1 0175 CR4203 |
LOADED HANDGUN IN VEHICLE | 1 1454 CR4203(a)(1)(v) |

**Charge | Statute | AR/Citation**
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |
ILLEGAL POSS AMMO | 1 1285 PS5133.1 |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant
who is charged with the offense(s) listed above.
Trial/Hearing was held by Judge PATRICE E. LEWIS and the Defendant is committed
Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
NONE

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 11/17/2022 at 8:45 a.m. in Court Room 262 at the District Court of Maryland For PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 08/12/2022   Time: 11:28 a.m.      JUDGE/CLERK: _____

**Tracking No. 180001569952**

CC-DC-CR-028 (Rev. 07/2017)

Patrice E. Lewis, Judge

**JA727**

# Exhibit F
# Elmer Laguan-Salinas
# Case Documents

W/H M 30

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY
PRETRIAL INTAKE FACT SHEET

STATE OF MARYLAND
VS.
Elmer Uriel Laguan-Salinas

ID NO.:       033578
CASE NO.:     1) 1E00721379
CHARGE:       Assault 1st Degree
TOTAL BOND:   $ 0.00

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: 2) 3E00732028, Assault 2nd Deg, $2,500
   Not to contact or harass victim. Not to enter or be near the location of incident.

2) AKA's:    Elmer Uriel Laguan-Salines; Elmer Uriel Salinas-Laguan; Salinas Laguan Elmer

3) Detainers: _____

4) Also In Jail On: _____

5) PreTrial Release: _____

6) P&P Information: 1) Mont Co., Probation, 6D00314873, Assault 2nd, 2/27/17, Referred to CCU, 3/8/18,
   Revocation New Off, Beyene, Silver Spring

7) Residence: Unable to Interview                    Employment: Unable to Interview

   Length: _____               Length: _____
   Tel. #: (   ) _____               Position: _____
   Lives With: _____               Can S/he Return: _____
   Verified By: _____              Verified By: _____

8) COMMENTS: _____

   Pretrial Investigation unable to contact victim - no number.

TOTAL FTA's: CR 0  /MV 0     TOTAL CONTEMPTS: 0      DRUG TEST: _____
Pending: 1) 2E00721373, Mal Dest,           NCIC: _____
( SUMI: 7/7/21), 4/13/22                     Mont Co., Viol Protection Order
_____            10/16/18 (G) 60d
Prior: _____          Mont Co., Assault 2nd 2/27/17 (G)
   CR Assault 2nd (NP) 3/26/15                4d + 2y Probation
   Victim: Maria Angel                        Mont Co., Viol Protection Order
   CR Trespass (NP) 10/3/18                   11/16/17 (G) 2y Probation
   CR Assault 2nd (NP) 11/17/16               LEVEL: 1 2 3 4  DM/CM 0      None
   Victim: Canthia Garrido                    CONDITIONS: _____
_____            _____
Investigator: K. Brown                       Date: 03/17/22

Distribution: White: Judge  Green: Computer Work   Yellow: State's Attorney  Pink: File Copy   Green: Public Defender

PGC Form 3088 (Rev. 9/13)

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND
VS.                                        CASE NO.: 1E00721379/3E00732028

Elmer Uriel Laguan-Salinas

PRETRIAL INTAKE FACT SHEET (continued)

PRIOR: _____    _____
_____           _____
_____           _____
_____           _____
_____           _____
_____           _____
_____           _____
_____           _____

NCIC: _____     _____
Mont Co., DUI 10/15/19 (PBJ) 3d + 1y Probation  _____
_____           _____
_____           _____
_____           _____
_____           _____
_____           _____
_____           _____

COMMENTS: _____    P&P Continued: _____

2) Mont Co., 6D00374954, Probation, Viol Protection Order, 11/17/17, Closed, 3/8/28, Appealed,

Beyenne, Silver Spring

3) Mont Co., Probation, 132921C, Viol Proetect Order, 2/12/18, Closed, 10/16/18, Revocation Technical,

Cox, Silver Spring

4) Mont Co., PBJ, KN0H79, DUI, 10/15/19, Referred to CCU, 4/15/20, Exp of Sentence, Frasier,

Silver Spring

P.G.C. FORM #3088A

**JA730**



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 1E00721379

## STATE OF MARYLAND  VS.  LAGUAN-SALINAS, ELMER URIEL
5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge STACEY MARIA COBB SMITH on 03/17/2022.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
OR PR TO PTR LEVEL #4
PTSU TO VERIFY ADDRESS BEFORE RELEASE AND
LIVE AT ADDRESS/NO CONTACT W/ VICTIMS OR
STATE'S WITNESSES/STAY AWY FROM VICTIMS
RESIDENCE/NO WEAPONS/FIREARMS/AMMO/CDS

YOU ARE SCHEDULED FOR PRELIMINARY HEARING
on 04/15/2022 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and
terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court
Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as
soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner
regarding the status of your Application.

03/17/2022  2:00 p.m.  Room: 5

_____          _____
Defendant Signature                                   Date

Tracking No.  211001246374                    JA731



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 1E00721379

## STATE OF MARYLAND VS. LAGUAN-SALINAS, ELMER URIEL
5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

CC #:20-2462
Eyes: BRN
Race:2

Hair: OTH
Sex:M

State ID:0004177347
Height: 5'05"
DOB:11/17/1991

LocID:
Weight: 155 lb.
DL #:

**Charge | Statute | AR/Citation**
ATT-HOME INVASION | 1A1338 CL |
FIREARM USE/FEL-VIOL CRIME | 1 5299 CR4204b |
RECKLESS ENDANGERMENT | 1 1425 CR3204(a)(1) |
HANDGUN ON PERSON | 1 5212 CR4203 |

**Charge | Statute | AR/Citation**
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |
FIREARM POSS W/FEL CONVICT | 1 1609 PS5133c |
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge STACEY MARIA COBB SMITH and the Defendant is committed Without Bail.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
OR PR TO PTR LEVEL #4
PTSU TO VERIFY ADDRESS BEFORE RELEASE AND
LIVE AT ADDRESS/NO CONTACT W/ VICTIMS OR
STATE'S WITNESSES/STAY AWY FROM VICTIMS
RESIDENCE/NO WEAPONS/FIREARMS/AMMO/CDS

### YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing
on 04/15/2022 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 03/17/2022   Time: 2:00 p.m.

JUDGE/~~CLERK~~: _____

**Tracking No. 211001246374**

CC-DC-CR-028 (Rev. 07/2017)

Judge Stacey M. Cobb Smith

JA732

Page: 3
Room: 5
Date: 04/15/2022
Time: 10:13 AM

Case No. 1E00721379



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

## STATE OF MARYLAND  VS.  LAGUAN-SALINAS, ELMER URIEL
5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

| | | |
|---|---|---|
| CC #:20-2462 | State ID:0004177347 | LocID: |
| Eyes: BRN  Hair: OT | Height: 5'05" | Weight: 155 lb. |
| Race: 2   Sex: M | DOB:11/17/1991 | DL #: |

## DEFENDANT TRIAL SUMMARY

The Preliminary Hearing in the above case was POSTPONED today, 04/15/2022.
    REASON: PROBABLE CAUSE FOUND.
YOUR NEXT COURT APPEARANCE IS SCHEDULED FOR TRIAL on 05/12/2022 at 10:15 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772.

The Court's finding is as follows:

Charge # 002  ASSAULT-FIRST DEGREE   was DISMISSED.

If you have been convicted of, pled guilty to, or received probation before judgment for a crime, it may be unlawful for you to possess or purchase a firearm, including a rifle, shotgun, pistol, revolver, or ammunition, pursuant to state and/or federal law. If you have any questions about whether it is now illegal for you to possess or purchase a firearm, you should immediately consult an attorney. For additional information about these prohibitions or the surrender of firearms (even if you are currently incarcerated), please consult http://www.marylandattorneygeneral.gov/Forms/Form_77R_gun_questions.pdf or contact Maryland State Police at: 1-410-653-4500.

You may be entitled to expunge this record and any DNA sample and DNA record relating to the charge or charges against you. Effective October 1, 2021, certain cases shall be automatically expunged after three years if all charges resulted in any combination of acquittal, dismissal, not guilty or nolle prosequi, or you may file for expungement of those charges within three years upon completion of the attached Petition for Expungement of Records and General Waiver and Release. To learn more about which cases may be eligible for expungement, see the Expungement Brochure available in the Clerk's office or visit the Maryland Courts website: www.mdcourts.gov/legalhelp/expungement

04/15/2022     Defendant_____     (LAGUAN-SALINAS, ELMER URIEL)

Tracking No. 211001246374

**JA733**



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 1E00721379

## STATE OF MARYLAND  VS.  LAGUAN-SALINAS, ELMER URIEL
5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

CC #:20-2462                    State ID:0004177347      LocID:
Eyes: BRN        Hair: OTH        Height: 5'05"          Weight: 155 lb.
Race:2           Sex:M     DOB:11/17/1991      DL #:

**Charge | Statute | AR/Citation**
ATT-HOME INVASION | 1A1338 CL |
FIREARM USE/FEL-VIOL CRIME | 1 5299 CR4204b |
RECKLESS ENDANGERMENT | 1 1425 CR3204(a)(1) |
HANDGUN ON PERSON | 1 5212 CR4203 |

**Charge | Statute | AR/Citation**
DISM | ASSAULT-FIRST DEGREE | 1 1420 CR3202 |
FIREARM POSS W/FEL CONVICT | 1 1609 PS5133c |
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant
who is charged with the offense(s) listed above.

Trial/Hearing was held by Judge SCOTT MICHAEL CARRINGTON and the Defendant is committed
Without Bail.

## SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
OR PR TO PTR LEVEL #4
PTSU TO VERIFY ADDRESS BEFORE RELEASE AND
LIVE AT ADDRESS/NO CONTACT W/ VICTIMS OR
STATE'S WITNESSES/STAY AWAY FROM VICTIMS
RESIDENCE/NO WEAPONS/FIREARMS/AMMO/CDS

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 05/12/2022 at 10:15 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNT
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 04/15/2022   Time: 10:13 a.m.          JUDGE/CLERK: _____

**Tracking No. 211001246374**

CC-DC-CR-028 (Rev. 07/2017)          JA734 Judge Scott Carrington

Room:  5            Time:  10:47 AM



Case No. 1E00721379



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

## STATE OF MARYLAND  VS.  LAGUAN-SALINAS, ELMER URIEL
5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

| | | |
|---|---|---|
| CC #:20-2462 | State ID:0004177347 | LocID: |
| Eyes: BRN    Hair: OT | Height: 5'05" | Weight: 155 lb. |
| Race:2    Sex: M | DOB:11/17/1991 | DL #: |

# DEFENDANT TRIAL SUMMARY

The above case was POSTPONED today, 05/12/2022.

REASON: FELONY NP.

YOUR NEXT COURT APPEARANCE IS SCHEDULED FOR TRIAL on 08/18/2022 at 08:45 a.m. in Room 3 at the District Court of Maryland for PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD  20781.

The Court's finding is as follows:

Charge # 004  FIREARM POSS W/FEL CONVICT  was NOLLE PROSEQUIED.

If you have been convicted of, pled guilty to, or received probation before judgment for a crime, it may be unlawful for you to possess or purchase a firearm, including a rifle, shotgun, pistol, revolver, or ammunition, pursuant to state and/or federal law. If you have any questions about whether it is now illegal for you to possess or purchase a firearm, you should immediately consult an attorney. For additional information about these prohibitions or the surrender of firearms (even if you are currently incarcerated), please consult http://www.marylandattorneygeneral.gov/Forms/ Form_77R_gun_questions.pdf or contact Maryland State Police at: 1-410-653-4500.

You may be entitled to expunge this record and any DNA sample and DNA record relating to the charge or charges against you.  Effective October 1, 2021, certain cases shall be automatically expunged after three years if all charges resulted in any combination of acquittal, dismissal, not guilty or nolle prosequi, or you may file for expungement of those charges within three years upon completion of the attached Petition for Expungement of Records and General Waiver and Release. To learn more about which cases may be eligible for expungement, see the Expungement Brochure available in the Clerk's office or visit the Maryland Courts website: www.mdcourts.gov/legalhelp/expungement

(LAGUAN-SALINAS, ELMER URIEL)

05/12/2022      Defendant_____

Tracking No. 211001246374

JA735



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 1E00721379

## STATE OF MARYLAND  VS.  LAGUAN-SALINAS, ELMER URIEL
5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

| | | |
|---|---|---|
| CC #:20-2462 | State ID:0004177347 | LocID: |
| Eyes: BRN | Hair: OTH      Height: 5'05" | Weight: 155 lb. |
| Race:2 | Sex:M      DOB:11/17/1991      DL #: | |

**Charge | Statute | AR/Citation**
ATT-HOME INVASION | 1A1338 CL |
NP | FIREARM POSS W/FEL CONVICT | 1 1609 PS5133c |
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |

**Charge | Statute | AR/Citation**
FIREARM USE/FEL-VIOL CRIME | 1 5299 CR42O4b |
RECKLESS ENDANGERMENT | 1 1425 CR3204(a)(1) |
HANDGUN ON PERSON | 1 5212 CR4203 |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Trial/Hearing was held by Judge JOHN ANTHONY BIELEC and the Defendant is committed Without Bail.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
NO CONTACT W/DILSIA MORALES. STAY AWAY
FROM 3536 MADISON ST HYATTSVILLE MD
HAVE NO GUNS OR AMMO

### YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing
on 08/18/2022 at 8:45 a.m. in Court Room 3 at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781

Date: 05/12/2022  Time: 10:47 a.m.

**Tracking No. 211001246374**

CC-DC-CR-028 (Rev. 07/2017)

JUDGE/CLERK: _____

JA736          Judge John Bielec

*8/18/22*
*3*
*8:45*

## IN THE DISTRICT COURT OF MARYLAND
## FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND : 

      V. :       1E00721379

       :

ELMER URIEL LAGUAN SALINAS : 

---

### MOTION FOR BOND REVIEW HEARING

      COMES NOW defendant Elmer Uriel Laguan Salinas, by and through counsel, and moves this Honorable Court to set a bond review hearing in the above-captioned case.  In support thereof, Mr. Laguan Salinas states as follows:

1. Mr. Laguan Salinas is charged in the above-captioned case with (1) attempted home invasion, (3) firearm use in the commission of a crime of violence, (5) reckless endangerment, (6) illegal possession of a regulated firearm, and (7) carrying a handgun on his person.  His trial is scheduled for August 18, 2022, at 8:45 a.m. in Hyattsville Courtroom 3.

2. There is no allegation that any handgun was recovered.

3. The date of the alleged incident was on October 4, 2020, over twenty months ago.  The warrant was served on March 16, 2022.  On April 15, 2022, count 2 was dismissed, and on May 12, count 4 was entered *nolle prosequi*.

4. Since Mr. Laguan Salinas' initial bond hearing on March 17, 2022, Mr. Laguan Salinas has had the pretrial option.  Undersigned counsel has called pretrial services at least 7 times to inquire about this case.  Pretrial services has refused even to look at Mr. Laguan Salinas' file.  It has not even filed a notice saying that he is not eligible.

5. According to his pretrial sheet, Mr. Laguan Salinas has **no failures to appear**.

6. Between October 4, 2020, when the warrant issued, and March 16, 2022, when the warrant was served, Mr. Laguan Salinas was not convicted of any crimes.

7. As of the time of filing, Mr. Laguan Salinas has spent **91 days** in jail.  By his trial date, he will have spent **156 days** in jail.

      Accordingly, Mr. Laguan Salinas asks the Court to set a bond review hearing in the above-captioned case on the earliest available date.

Respectfully Submitted,

Peter Im, Esq., Assistant Public Defender
4990 Rhode Island Avenue, Room 345
Hyattsville, MD 20781
(301) 291-7537
peter.im@maryland.gov
CPF# 2105130005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th day of June, 2022, a copy of the foregoing motion

was hand-delivered, via the Court Clerk's Office, to the following:

Office of the State's Attorney
Prince George's County, Maryland

Peter Im, Esq.
Assistant Public Defender

2

**JA738**



# DISTRICT COURT OF MARYLAND FOR Prince George's County
Located at 4990 Rhode Island Ave., Hyattsville, Maryland 20781

Case No. 1E00721379

**STATE OF MARYLAND**      **VS.**      **LAGUAN-SALINAS, ELMER URIEL**
5200 FLINTRIDGE DRIVE
HYATTSVILLE, MD 20783-0000

CC#: 20-2462              SID: 0004177347
LID:                     DL#:
Race: 2  Sex: M   Ht: 5' 05"    Wt: 155    Hair: OTH  Eyes: BRN
DOB: 11/17/1991   Home phone: 240-764-9834   Cellphone:

| Charge \| Statute \| AR/Citation \| CJISCode | Charge \| Statute \| AR/Citation \| CJISCode |
|---|---|
| ATT-HOME INVASION \| CL   \| \| 1A1338 | FIREARM USE/FEL-VIOL CRIME \| CR 4 204 b \| \| 1 5299 |
| RECKLESS ENDANGERMENT \| CR 3 204 (a)(1) \| \| 1 1425 | REG FIREARM:ILLEGAL POSSESSION \| PS 5 133 (b) \| \| 1 1106 |
| HANDGUN ON PERSON \| CR 4 203 \| \| 1 5212 | |

## RELEASE FROM COMMITMENT

TO:  PRINCE GEORGES COUNTY CORRECTIONAL CENTER
     13400 DILLE DRIVE       UPPER MARLBORO    20772

YOU ARE HEREBY COMMANDED to release the above-named Defendant
subject to the following condition(s)/restriction(s):

OR PR TO PTR
NO CONTACT W/EDNA YULEYSSI PEREZ OR HER
ENTIRE FAMILY/DO NOT RETURN TO 3536
MADISON ST HYATTSVILLE /NOT TO OWN/POSSESS
FIREARMS/AMMO

Unsecured Personal Bond in the amount of $25,000.00 was posted by: DEFENDANT.

☐ Fine of $_____ , the payment of which was in default, has now been paid.

**NOTE: This release applies only to the case listed above. Before release check for detainers.
If Defendant is committed for any other reason, hold Defendant pursuant to that commitment.**

Date: 06/17/2022  Time: 11:24 AM        Judge/Clerk: _____

## NOTICE TO DEFENDANT

**You are scheduled for a Trial/Hearing on 08/18/2022 at 8:45AM in Court Room 3**

Tracking No:  211001246374           CC-DC-CR-013(Rev. 06/15)           DV

Rev. 2/09                            JA739



# DISTRICT COURT OF MARYLAND FOR Prince George's County
Located at 4990 Rhode Island Ave., Hyattsville, Maryland 20781

Case No. 1E00721379

**STATE OF MARYLAND     VS.     LAGUAN-SALINAS, ELMER URIEL**
5200 FLINTRIDGE DRIVE
HYATTSVILLE, MD 20783-0000

Hearing or Trial Date: 08/18/2022
at 08:45 AM in Courtroom 3

CC#: 20-2462                    SID: 0004177347
LID:                            DL#:
Race: 2   Sex: M   Ht: 5' 05"   Wt: 155   Hair: OTH  Eyes: BRN
DOB: 11/17/1991   Home phone: 240-764-9834   Cellphone:

| Charge \| Statute \| AR/Citation \| CJISCode | Charge \| Statute \| AR/Citation \| CJISCode |
|---|---|
| ATT-HOME INVASION \| CL   \| \| 1A1338 | FIREARM USE/FEL-VIOL CRIME \| CR 4 204 b \| \| 1 5299 |
| RECKLESS ENDANGERMENT \| CR 3 204 (a)(1) \| \| 1 1425 | REG FIREARM:ILLEGAL POSSESSION \| PS 5 133 (b) \| \| 1 1106 |
| HANDGUN ON PERSON \| CR 4 203 \| \| 1 5212 | |

## BAIL BOND

**KNOW ALL PERSONS BY THESE PRESENTS:**

That I/we, the undersigned, jointly and severally acknowledge that I/we, our personal representatives, successors, and assigns are held and firmly bound unto the State of Maryland in the penalty sum of $25,000.00 (Twenty Five Thousand Dollars) without collateral security.

THE CONDITION OF THIS BOND IS that the Defendant personally appear, as required, in any court in which the charges are pending, or in which a charging document may be filed based on the same acts or transactions, or to which action may be transferred, removed, or, if from the District Court, appealed.

If, however, the Defendant fails to perform the foregoing condition, this bond shall be forfeited forthwith for payment of the above penalty sum in accordance with law.

IT IS AGREED AND UNDERSTOOD that this bond shall continue in full force and effect until discharged pursuant of Rule 4-217.

**RELEASE CONDITIONS:**
The Defendant above is subject to the following condition(s)/ restriction(s):

NO CONTACT W/DILSIA MORALES. STAY AWAY
FROM 3536 MADISON ST HYATTSVILLE MD
HAVE NO GUNS OR AMMO

IN WITNESS WHEREOF, these presents have been executed under seal this 17th day of June, 2022.

| | | |
|---|---|---|
| Defendant: _____ (SEAL) | Address: _5200 Highridge Drive_ (SEAL) | |
| | Defendant | |
| Pers.Surety/Individual:_____ (SEAL) | Address:_____ | |
| | Surety | |
| Surety/Ins:_____ (SEAL) | Address:_____ | |
| | Surety-Insurer | |
| By Bondsman:_____ (SEAL) | Address:_____ | |
| | Power of Attorney No. | |

SIGNED, sealed, and acknowledged before me:
Date: 06/17/2022                    Clerk: _____
                                    For Prince George's County

Tracking No. 211001246374                                    DV

CC-DC-CR-008 (Rev. 07/2017)

JA740





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 1E00721379

## STATE OF MARYLAND  VS.  LAGUAN-SALINAS, ELMER URIEL
5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

# BAIL REVIEW SUMMARY

Your bail review was held by Judge PATRICE E. LEWIS on 06/17/2022.

THE COURT, ON THE DATE SHOWN ABOVE,

Revised your bail:
Ordered that you be held in default of $25,000.00 bond, to be posted without collateral security (unsecured personal bond);

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
    OR PR TO PTR
    NO CONTACT W/EDNA YULEYSSI PEREZ OR HER
    ENTIRE FAMILY/DO NOT RETURN TO 3536
    MADISON ST HYATTSVILLE /NOT TO OWN/POSSESS
    FIREARMS/AMMO

YOU ARE SCHEDULED FOR TRIAL
    on 08/18/2022 at 08:45 a.m. in Room 3 at the District Court of Maryland for PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD  20781.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner regarding the status of your Application.

PLEASE BE ADVISED THAT, IF RELEASED,

1. you must follow all conditions of release and appear in court as directed;
2. a warrant for your arrest will be issued if you violate the condition(s) of release; that if the recognizance or bail bond is forfeited and you willfully fail to surrender within 30 days following the forfeiture, you may be charged and fined not more than $5000.00 or imprisoned not more than 5 years or both, if given in connection with felony charge, or charged and fined not more than $1000.00 or imprisoned not more than 1 year or both, if given in connection with a misdemeanor charge; that you may be cited for contempt of court;
3. you must notify the court in writing of any change of address or telephone number.

06/17/2022   9:28 a.m.   Room: 5

_____  _____
,   Defendant Signature   Date

**Tracking No.  211001246374**

JA741



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 1E00721379

## STATE OF MARYLAND VS. LAGUAN-SALINAS, ELMER URIEL

5200 FLINTRIDGE DRIVE
HYATTSVILLE MD 207830000

| | | |
|---|---|---|
| CC #:20-2462 | State ID:0004177347 | LocID: |
| Eyes: BRN | Hair:OTH   Height: 5'05" | Weight: 155 lb. |
| Race:2 | Sex:M   DOB:11/17/1991   DL #: | |

**Charge | Statute | AR/Citation**
ATT-HOME INVASION | 1A1338 CL |
FIREARM USE/FEL-VIOL CRIME | 1 5299 CR4204b |
RECKLESS ENDANGERMENT | 1 1425 CR3204(a)(1) |
HANDGUN ON PERSON | 1 5212 CR4203 |

**Charge | Statute | AR/Citation**
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |
FIREARM POSS W/FEL CONVICT | 1 1609 PS5133c |
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |

## COMMITMENT PENDING HEARING

TO: PRINCE GEORGES COUNTY DETENTION CENTER

13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge PATRICE E. LEWIS and the Defendant is committed In default of $25,000.00 bail, unsecured personal bond required.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):

OR PR TO PTR
NO CONTACT W/EDNA YULEYSSI PEREZ OR HER
ENTIRE FAMILY/DO NOT RETURN TO 3536
MADISON ST HYATTSVILLE /NOT TO OWN/POSSESS
FIREARMS/AMMO

### YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing

on 08/18/2022 at 8:45 a.m. in Court Room 3  at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781

Date: 06/17/2022  Time: 9:28 a.m.

JUDGE/CLERK

**Tracking No. 211001246374**

CC-DC-CR-028 (Rev. 07/2017)

JA742   Patrice E. Lewis, Judge

T22 1040 X

STATE OF MARYLAND, Prince George's County, to wit:

COUNT 1

AUG 1 6 2022

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID ASSAULT DILSIA MORALES IN THE FIRST DEGREE IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, CRIMINAL LAW SECTION 3-202, AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(FIRST DEGREE ASSAULT)**

COUNT 2

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID USE A FIREARM IN THE COMMISSION OF A CRIME OF VIOLENCE IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, CRIMINAL LAW SECTION 4-204(B), AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(FIREARM USE DURING A VIOLENT CRIME)**

COUNT 3

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID POSSESS A REGULATED FIREARM AFTER HAVING BEEN CONVICTED OF: A CRIME OF VIOLENCE AS DEFINED IN PUBLIC SAFETY SECTION 5-101(C), IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, PUBLIC SAFETY SECTION 5-133(C), AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(REGULATED FIREARM POSSESSION WITH A PRIOR DISQUALIFYING CONVICTION FOR A CRIME OF VIOLENCE)**



**JA743**

COUNT 4

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID KNOWINGLY POSSESS A REGULATED FIREARM BEING A PERSON CONVICTED OF A DISQUALIFYING CRIME TO WIT: SECOND DEGREE ASSAULT, A VIOLATION CLASSIFIED AS A MISDEMEANOR IN THE STATE THAT CARRIES A STATUTORY PENALTY OF MORE THAN 2 YEARS, IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, PUBLIC SAFETY SECTION 5-133(B), AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(REGULATED FIREARM: ILLEGAL POSSESSION)**

COUNT 5

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID POSSESS AMMUNITION, BEING PROHIBITED FROM POSSESSING A REGULATED FIREARM UNDER PUBLIC SAFETY ARTICLE SECTION 5-133(B) OF THE ANNOTATED CODE OF MARYLAND, AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(ILLEGAL POSSESSION OF AMMUNITION)**

COUNT 6

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID ASSAULT DILSIA MORALES IN THE SECOND DEGREE IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, CRIMINAL LAW SECTION 3-203, AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(SECOND DEGREE ASSAULT)**

COUNT 7

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID RECKLESSLY ENGAGE IN CONDUCT, TO WIT: FORCING ENTRY INTO A HOME WHILE WIELDING A HANDGUN THAT CREATED A SUBSTANTIAL RISK OF DEATH OR SERIOUS PHYSICAL INJURY TO DILSIA MORALES, IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, CRIMINAL LAW SECTION 3-204(A)(1), AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(RECKLESS ENDANGERMENT)**

COUNT 8

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID ATTEMPT TO BREAK AND ENTER THE DWELLING HOUSE OF DILSIA MORALES LOCATED AT 3536 MADISON STREET, HYATTSVILLE, PRINCE GEORGE'S COUNTY, WITH THE INTENT TO COMMIT A CRIME OF VIOLENCE IN VIOLATION OF THE COMMON LAW OF MARYLAND, AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(ATTEMPTED HOME INVASION)**

COUNT 9

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID CARRY A HANDGUN ON THEIR PERSON IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, CRIMINAL LAW SECTION 4-203, AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. **(WEAR, CARRY AND TRANSPORT HANDGUN UPON THEIR PERSON)**

**JA745**

COUNT 10

THE GRAND JURORS OF THE STATE OF MARYLAND FOR THE BODY OF PRINCE GEORGE'S COUNTY ON THEIR OATH DO PRESENT THAT **ELMER URIEL LAGUAN-SALINAS** ON OR ABOUT THE 4th DAY OF OCTOBER, 2020, IN PRINCE GEORGE'S COUNTY, MARYLAND, DID CARRY A LOADED HANDGUN UPON OR ABOUT THEIR PERSON IN VIOLATION OF THE ANNOTATED CODE OF MARYLAND, CRIMINAL LAW SECTION 4-203(A)(1)(V), AGAINST THE PEACE, GOVERNMENT AND DIGNITY OF THE STATE. (**LOADED HANDGUN ON PERSON**)

_____
ASSISTANT STATE'S ATTORNEY FOR
PRINCE GEORGE'S COUNTY, MARYLAND

CLERK OF THE
CIRCUIT COURT

**IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND**

2022 OCT -6 PM 2: 18

**THE STATE OF MARYLAND,**          *

v.          *

PR GEO CO MD #47
832

**ELMER LAGUAN-SALINAS**          *          Case No.: **CT221040X**

Defendant          *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MOTION FOR BAIL REVIEW

Defendant, Elmer Laguan-Salinas, through counsel, Allison Heldreth, respectfully requests that this Honorable Court review his pretrial detention status and states the following in support:

1. Mr. Laguan-Salinas is currently being held without bond in the above captioned matter.

2. The allegations in this matter do not warrant that bond status. For instance, this case concerns a bafflingly late report as well as late charges. Portions of the initial report were not corroborated as well.

3. Mr. Laguan-Salinas has prior contacts but no failures to appear, which is the best evidence that he is not a flight risk and will come to court.

WHEREFORE, the Defendant requests that this Court order a bail review as soon as the Court's calendar will allow.

Respectfully submitted,

Allison E. Heldreth
Assistant Public Defender
CPF # 1406170131
14735 Main St. Suite 272B
Upper Marlboro, MD 20772





**JA747**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October ___, 2022, a copy of the foregoing motion was delivered to the State's Attorney Office for Prince George's County.

_____
Allison E. Heldreth

1

```
 1                  IN THE CIRCUIT COURT FOR

 2               PRINCE GEORGE'S COUNTY, MARYLAND

 3

 4      STATE OF MARYLAND              )

 5                                     )   Case No.

 6           vs.                       )   CT22-1040X

 7      ELMER SALINAS                  )

 8                     -    -    -    -    -    -

 9

10            OFFICIAL TRANSCRIPT OF PROCEEDINGS

11                        Request for Continuance

12                        Thursday, November 10, 2022

13                        Upper Marlboro, Maryland

14

15      BEFORE:  THE HONORABLE NICHOLAS RATTAL, JUDGE

16

17

18

19      APPEARANCES:

20      On Behalf of the State:

21           COLIN CARMELLO, ESQ.

22      On Behalf of the Defendant:

23           ALLISON HELDRETH, ESQ.

24

25      Transcribed by:  Kathy J. DeMent, CET
```

2

1                    **P R O C E E D I N G S**

2                                              **(9:35 a.m.)**

3              THE CLARK:  Now calling case number 79 on the

4    docket, CT22-1040X, State vs. Elmer Salinas.

5              MS. HELDRETH:  Allison Heldreth for Mr. Laguan

6    Salinas.  And I apologize, Your Honor, I would like him

7    brought up.  Mr. Carmello has just stepped out.

8              BAILIFF:  He's probably right in the back, I'll

9    go grab him, Judge.

10             THE COURT:  Okay.  Do we have -- can you bring

11   up Mr. Salinas?  Is he downstairs?  You don't have a

12   Salinas?  Is he under --

13             MS. HELDRETH:  Laguan.  L A G U A N.

14             MR. CARMELLO:  Colin Carmello for the State,

15   Your Honor.

16             MS. HELDRETH:  Okay.  Well, if he's not here,

17   then --

18             THE COURT:  What number is this again?

19             MS. HELDRETH:  79.

20             THE COURT:  Yeah, I show him downstairs -- I

21   mean, not downstairs.  I know he's incarcerated.

22             MS. HELDRETH:  He's incarcerated.

23             THE COURT:  It's Elmer S A L I N A S.  Elmer.

24   Okay, let's double-check.

25             MS. HELDRETH:  Okay.  Thank you.

3

1           THE COURT:  We'll pass it for a minute and then
2      we'll call it.  Allison, is he in jail under some other
3      name?
4           MS. HELDRETH:  I mean, his --
5           UNIDENTIFIED MALE:  I believe it's under
6      Laguan.  It's under the L.
7           MS. HELDRETH:  I think so.
8           THE COURT:  Not under Salinas.
9           MS. HELDRETH:  There is, unfortunately
10     sometimes, a mixing up.
11          THE COURT:  Yeah, because I got him as Salinas.
12          MS. HELDRETH:  Okay.
13          UNIDENTIFIED MALE:  I believe under inmate
14     locater he's under the Laguan.
15          THE COURT:  What do you guys want to do?  I
16     guess we don't have him.  What do you guys want me to do?
17          MS. HELDRETH:  So I did ask Mr. Carmello to --
18     it's a continuance request to next week, so Mr. Carmello
19     can pull up a body camera.  It's Hyattsville Police.  I
20     know they've had body cameras since at least 2017.
21          Furthermore, I did publish for a bond review a
22     few weeks ago.  I'm not sick, my allergies make me lose
23     my voice, just so everyone knows.
24          And so I wanted the Court -- I wanted him in
25     here so that we could address that and see if it had been

4

1    ruled on.

2              THE COURT:  I set it for a hearing the 7th.

3              MS. HELDRETH:  On the 7th?

4              THE COURT:  No, I set it the 7th.

5              MS. HELDRETH:  Oh, okay, okay.  So it will be

6    set for hearing, okay.

7              THE COURT:  No, no, but that was -- that's the

8    day I signed it.  Let's see if we can get you -- can we

9    get a bond hearing date for her today?

10             MS. HELDRETH:  Thank you so much.

11             **(Schedule discussion among several people.)**

12             THE COURT:  So this will be set for bond next

13   Wednesday -- at what time?

14             THE CLERK:  At 9:00.

15             THE COURT:  At 9:00.  And then this is a

16   State's continuance granted and motions to the 17th?  A

17   joint continuance?  Okay, joint continuance and motions

18   to the 17th.  Okay, and you have a bond hearing on

19   Wednesday.  So you'll be here Wednesday and Thursday.

20             MS. HELDRETH:  Okay.

21             THE COURT:  Okay.

22             **(Whereupon, at 9:39 a.m., the proceedings in**

23   **the above matter were concluded.)**

24

25

5

1

2                    CERTIFICATE OF TRANSCRIBER

3

4            I hereby certify that the proceedings in the

5    matter of State of Maryland vs. Elmer Salinas, case No.

6    CT22-1040X, heard in the Circuit Court for Prince

7    George's County, Upper Marlboro, Maryland, on November

8    10, 2022, before the Honorable Nicholas Rattal, Judge,

9    were recorded by means of audio file.

10           I further certify that, to the best of my

11   knowledge and belief, page numbers 1 through 5 constitute

12   the official transcript of the proceedings as transcribed

13   by me from said audio file to the within typewritten

14   matter in a complete and accurate manner.

15           I further certify that I am neither related to,

16   nor an employee of, any attorney or party herein, and

17   that I have no interest in the outcome of this case.

18           In Witness Whereof, I have affixed my signature

19   this 20th day of November, 2022.

20

21

22                                  *S/Kathy J. DeMent*

23                                  KATHY J. DeMENT, CET

24

25

For The Record, Inc.
(301) 870-8025 - www.ftrinc.net - (800) 921-5555

**JA753**

# Exhibit G
# Donnell Davis
# Case Documents



IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY
PRETRIAL INTAKE FACT SHEET

STATE OF MARYLAND
VS.
Donnell Dajuan Davis

ID NO.: 046723
CASE NO.: 3E00713044
CHARGE: Assault First Degree
TOTAL BOND: $ 0.00

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: Not intimidate, contact, or harass Ajah McKnight. Not enter or be near 5805 Cherrywood Terrace Greenbelt, Maryland.

2) AKA's:  Dajuan Donnell; Dontell Davis; Darnell Davis.

3) Detainers:

4) Also In Jail On:

5) PreTrial Release:

6) P&P Information:

7) Residence: Unable- No Answer

   Length:
   Tel. #: (   )
   Lives With:
   Verified By:

   Employment: Unemployed

   Length:
   Position:
   Can S/he Return:
   Verified By:

8) COMMENTS: The defendant stated that she resides at 3608 Rock Creek Church Road Washington DC. Pretrial was unable to contact the victim; no victim information.

TOTAL FTA's: CR 0 /MV 0     TOTAL CONTEMPTS: 0     DRUG TEST:
Pending: 3e00689230, Trespass,
2/28/20 ROR.    5E00711884,
Rogue and Vagabond No Date.
Prior:
   CR Unauth Removal Of MV (NP)
   4/9/19
   CR Motor Veh/Unlawful Taking
   (NP) 3/2/20

NCIC:
No NCIC Convictions

LEVEL:  1 2 3 4   DM/CM · ()     None
CONDITIONS:

Investigator: J Mills

Date: 10/09/20

Distribution:  White: Judge   Green: Computer Work   Yellow: State's Attorney   Pink: File Copy   Green: Public Defender

PGC Form 3088 (Rev. 9/13)

**JA755**

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND                    CASE NO.: 3E00713044
    VS.
Donnell Dajuan Davis

## PRETRIAL INTAKE FACT SHEET (continued)

PRIOR:
N/A.

NCIC:
N/A.

COMMENTS:

Pending: 5E00711513, Theft: $100 To Under $1500, No Date.

Pending: 5E00711569, School: Trespass On Ground, 3/3/20 ROR.

Pending: 3E00690294, Theft Less Than $100, No Date.

Pending: 4e00712380, Rogue and Vagabond, No Date.

Pending: 5E00691850, Assault Second Degree, No Date, Victim: Ajah McKnight.

P.G.C. FORM #3088A

 

# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00713044

## STATE OF MARYLAND VS. DAVIS, DONNELL
8125 48TH AVE #218B
COLLEGE PARK MD 207400000

| CC #: | | State ID: 0004788247 | LocID: X0890594 |
| Eyes: BRN | Hair: BLK | Height: 6'01" | Weight: 190 lb. |
| Race: I | Sex: M   DOB: 12/01/1993   DL #: | | |

**Charge | Statute | AR/Citation**
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
   13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant
who is charged with the offense(s) listed above.

Bail review was held by Judge ROBERT WILSON HEFFRON and the Defendant is committed
Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
   OR PR TO PTR LEVEL #4 MAY BE CELLPHONE / GPS
   COMPLETE PTSU INTERVIEW/PTSU TO VERIFY ADD
   BEFORE RELEASE/NO CONT W/ AJAH MCKNIGHT
   STAY AWAY FROM 5805 CHERRYWOOD TERR
   GREENBELT, MD

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
   on 11/09/2020 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY
   located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 10/09/2020  Time: 1:59 p.m.

**Tracking No. 201001501923**

CC-DC-CR-028 (Rev. 07/2017)

JUDGE/CLERK:

JA757

Jge Robert W. Heffron





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00713044

## STATE OF MARYLAND VS.  DAVIS, DONNELL
8125 48TH AVE #218B
COLLEGE PARK MD 207400000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge ROBERT WILSON HEFFRON on 10/09/2020.

THE COURT, ON THE DATE SHOWN ABOVE,

    Advised you of your right to Preliminary Hearing;

    You deferred your right to a Preliminary Hearing;

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:

    OR PR TO PTR LEVEL #4 MAY BE CELLPHONE

    COMPLETE PTSU INTERVIEW/PTSU TO VERIFY ADD

    BEFORE RELEASE/NO CONT W/ AJAH MCKNIGHT

    STAY AWAY FROM 5805 CHERRYWOOD TERR

    GREENBELT, MD

YOU ARE SCHEDULED FOR PRELIMINARY HEARING

    on 11/09/2020 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and
terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court
Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as
soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner
regarding the status of your Application.

10/09/2020  1:59 p.m.  Room:  5

_____
Defendant Signature

_____
Date

Tracking No.  201001501923

JA758

# PRINCE GEORGE'S COUNTY GOVERNMENT
## Department of Corrections

Angela D. Alsobrooks
County Executive

October 28, 2020

| | |
|---|---|
| **TO:** | **The Honorable Robert Wilson Heffron** |
| **FROM:** | **Tanya Law, Unit Chief, Monitoring Services** |
| **DEFENDANT:** | **Donnell Davis** |
| **CASE/CHARGE:** | **[1. CR3E00713044 1st Degree Assault]** |

[ X ]   The above defendant has been evaluated for program placement;

[ ]   The above defendant is being reconsidered for pretrial release;

[ x ]   The above defendant is no longer eligible for pretrial release;

[ ]   The above defendant violated "Conditions of Release";

[ ]   The above defendant's whereabouts are currently unknown/absconded;

**STATUSES**

1.   [ ]   **Victim Fears**

2.   [ ]   **Pending Case (s)/Detainer (s)**

3.   [ ]   **Criminal History**

4.   [ ]   **No Verifiable Address**

5.   [ ]   **Mental Health Issue / Evaluation Pending**

6.   [ ]   **Medical Health Issue(s)**

7.   [ ]   **Violated "Conditions of Release"**

8.   [ ]   **Federal Hold or State Hold**

9.   [ x ]   **Other-See Explanation**

**EXPLANATION:** Defendant was granted the option of Pre-trial Services Level 4 on October 9, 2020. Please contact Monitoring Services for additional information at 301-952-7111 or 301-952-7064.

cc:   Lisa Hall Johnson, Administrative Judge
      PGCDOC-Corenne Labbe, Interim Director
      PGCDOC-Jeffrey Logan, Division Chief, Population Management

*11-2-2020*
*sb*
*lgl .*



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00713044

## STATE OF MARYLAND VS. DAVIS, DONNELL
8125 48TH AVE #218B
COLLEGE PARK MD 207400000

CC #:
Eyes: BRN          Hair: BLK          State ID: 0004788247          LocID: X0890594
Race: I          Sex: M          Height: 6'01"          Weight: 190 lb.
          DOB: 12/01/1993          DL #:

**Charge | Statute | AR/Citation**
NP | ASSAULT-FIRST DEGREE | 1 1420 CR3202 |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

## COMMITMENT PENDING HEARING

TO: PRINCE GEORGES COUNTY DETENTION CENTER
13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Trial/Hearing was held by Judge ROBERT WILSON HEFFRON and the Defendant is committed Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
OR PR TO PTR LEVEL #4 MAY BE CELLPHONE
COMPLETE PTSU INTERVIEW/PTSU TO VERIFY ADD
BEFORE RELEASE/NO CONT W/ AJAH MCKNIGHT
STAY AWAY FROM 5805 CHERRYWOOD TERR
GREENBELT, MD

YOU WILL BE NOTIFIED of the defendant's next hearing or trial.

Date: 11/09/2020   Time: 9:17 a.m.          JUDGE/CLERK: _____

**Tracking No. 201001501923**          Judge Robert W. Heffron

CC-DC-CR-028 (Rev. 07/2017)          JA761

Page: 1    Date: 11/09/2020
Room: 5    Time: 9:17 AM

**Case No. 3E00713044**





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

## STATE OF MARYLAND VS.  DAVIS, DONNELL

8125 48TH AVE #218B
COLLEGE PARK MD 207400000

| | | | | |
|---|---|---|---|---|
| CC #: | | State ID: 0004788247 | LocID: X0890594 | |
| Eyes: BRN | Hair: BL | Height: 6'01" | Weight: 190 lb. | |
| Race: 1 | Sex: M | DOB: 12/01/1993 | DL #: | |

## DEFENDANT TRIAL SUMMARY

The Preliminary Hearing in the above case was POSTPONED today, 11/09/2020.
    REASON: FELONY CHG NOLLE PROS.

You will be notified of the next trial/hearing.

The Court's finding is as follows:

Charge # 001  ASSAULT-FIRST DEGREE   was NOLLE PROSEQUIED.

If you have been convicted or received probation before judgment for a crime, it may be unlawful for you to possess or purchase a firearm, including a rifle, shotgun, pistol, revolver, or ammunition, pursuant to state and/or federal law. If you have any questions about whether it is now illegal for you to possess or purchase a firearm, you should immediately consult an attorney. For additional information about these prohibitions or the surrender of firearms (even if you are currently incarcerated), please consult http://www.marylandattorneygeneral.gov/Forms/Form_77R_gun_questions.pdf or contact Maryland State Police at: 1-410-653-4500.

You may be entitled to expunge this record and any DNA Sample and DNA Record relating to the charge or charges against you if you meet certain conditions. Further information on expungement is contained in a brochure available at the Clerk's Office or on our website at http://www.courts.state.md.us/district.

**11/09/2020    Defendant**_____    **(DAVIS, DONNELL)**

**Tracking No. 201001501923**

**JA762**




# PRINCE GEORGE'S COUNTY GOVERNMENT
## Department of Corrections

Angela D. Alsobrooks
County Executive

October 28, 2020

TO:              **The Honorable Robert Wilson Heffron**

FROM:          **Tanya Law, Unit Chief, Monitoring Services**

DEFENDANT:     **Donnell Davis**

CASE/CHARGE:   **[1. CR3E00713044 1st Degree Assault]**

[ X ]   The above defendant has been evaluated for program placement;

[ ]   The above defendant is being reconsidered for pretrial release;

[ x ]   The above defendant is no longer eligible for pretrial release;

[ ]   The above defendant violated "Conditions of Release";

[ ]   The above defendant's whereabouts are currently unknown/absconded;

## STATUSES

1.   [ ]   **Victim Fears**

2.   [ ]   **Pending Case (s)/Detainer (s)**

3.   [ ]   **Criminal History**

4.   [ ]   **No Verifiable Address**

5.   [ ]   **Mental Health Issue / Evaluation Pending**

6.   [ ]   **Medical Health Issue(s)**

7.   [ ]   **Violated "Conditions of Release"**

8.   [ ]   **Federal Hold or State Hold**

9.   [ x ]   **Other-See Explanation**

**EXPLANATION:** Defendant was granted the option of Pre-trial Services Level 4 on October 9, 2020. Please contact Monitoring Services for additional information at 301-952-7111 or 301-952-7064.

13400 Dille Drive, Upper Marlboro, Maryland 20772
(301) 952-4800 • 711 Maryland Relay Service • www.princegeorgescountymd.gov

JA763

cc:    Lisa Hall Johnson, Administrative Judge
       PGCDOC-Corenne Labbe, Interim Director
       PGCDOC-Jeffrey Logan, Division Chief, Population Management

In The District Court Of Maryland
for Prince Georges County

State of Maryland

vs

Case # 3E00713044

Donnell Dajuan Davis

ID# 046723

RECORDED
DEC 1 8 2020

Motion To Request Reconsideration
of Bond Status

1. Comes now Defended, Donnell Dajuan Davis ID# 046723, Informers - paupers, respectfully requested this Honorable Clerk to reconsider Defended bond status.

2. In support thereof, Defended swears, under the penalty of perjury, that to the best of Defended knowledge Defended is without counsel to make this pleading on Defended behalf.

3. The Defended respectfully prays that this Honorable Court will reconsider Defended NO BOND status, instead place defended in a unsecure bond or personal bond status. In support thereof Defended states that Defended is a United States Citizen and has no criminal convictions.

Set for a
Bond review hearing
01/14/21 9:00
Judge Robert W. Heffron Jr.
12-17-2020

4. The Defended has been charged with First Degree Assault Which on it's face is a serious accusations. The Defended Swears to this Honerable Court that this is a false accusation made by his distraught ex-girlfriend, who in fact I believe is a convicted felon herself, and the instigator in the matter before this Honerable Court. The Defended promises that if Defended is released or a bond reconsideration, Defended will stay away from the plaintiff and have absolutely no contact nor dealings with the plaintiff what so ever.

Respectfully submitted,
   Donnell Dajuan Davis
Prince Georges County Detention Center
13400 Dille Drive, Upper Marlboro 20772

**JA766**



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00713044

## STATE OF MARYLAND VS. DAVIS, DONNELL
8125 48TH AVE #218B
COLLEGE PARK MD 207400000

| | | | | |
|---|---|---|---|---|
| CC #: | | State ID: 0004788247 | | LocID: X0890594 |
| Eyes: BRN | Hair: BLK | Height: 6'01" | | Weight: 190 lb. |
| Race: 1 | Sex: M | DOB: 12/01/1993 | DL #: | |

**Charge | Statute | AR/Citation**
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant
who is charged with the offense(s) listed above.

Bail review was held by Judge STACEY MARIA COBB SMITH and the Defendant is committed
Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
OR PR TO PTR OPTION ANY LEVEL
NO CONT W/VICTS/STATE'S WIT/ CO-DEFS

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 01/07/2021 at 1:45 p.m. in Court Room 3   at the District Court of Maryland For PRINCE GEORGE'S COUNTY
located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781

Date: 12/16/2020  Time: 11:17 a.m.

JUDGE/CLERK: _Stacey M. Cobb Smith_
Cobb-Smith

**Tracking No. 201001501923**

CC-DC-CR-028 (Rev. 07/2017)

JA767





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00713044

## STATE OF MARYLAND  VS.  DAVIS, DONNELL
8125 48TH AVE #218B
COLLEGE PARK MD 207400000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge STACEY MARIA COBB SMITH on 12/16/2020.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
    OR PR TO PTR OPTION ANY LEVEL
    NO CONT W/VICTS/STATE'S WIT/ CO-DEFS

YOU ARE SCHEDULED FOR TRIAL
    on 01/07/2021 at 01:45 p.m. in Room 3 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD  20781.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and
terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court
Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as
soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner
regarding the status of your Application.

12/16/2020  11:17 a.m.  Room: 5 _____   _____

Defendant Signature                    Date

Tracking No.  201001501923                         JA768

# Exhibit H
# Leslie Sharp
# Case Documents

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY

33 B/M                    PRETRIAL INTAKE FACT SHEET

**STATE OF MARYLAND**
VS.
Leslie Sharp

| | |
|---|---|
| ID NO.: | 049773 |
| CASE NO.: | 3E00701207 |
| CHARGE: | Assault 2nd Degree |
| TOTAL BOND: | $ 0.00 |

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: No violent contact with the victim.

2) AKA's: Leslie Sharpe, Carletto Wade,

3) Detainers:

4) Also In Jail On:

5) PreTrial Release:

6) P&P Information: (DC) Supervised Release - 2015 CF2 015442/2011 CF2 020039 - Unlawful Poss of Firearm/PWID Control Sub 05/01/19 - Active - Expiration: 01/30/24 - Agent: Holston, K. DC Prob Agent stated Defendant is non-compliant - 1005/06/14/2021/DRP

7) Residence: 653 East Capital St, Apt B3,SE, Washington, DC, 20003
   Length: 15 years
   Tel. #: (   ) (202) 744-6965        6/14/21
   Lives With: Leslie Sharp Sr (Father)    c(ll6 )
   Verified By: Leslie Sharp Sr          c(k5)

   Employment: Old Ebbitt Grill
   Washington, DC
   Length: Just Started
   Position: Dishwahser
   Can S/he Return:
   Verified By: Unable/ No Number

8) COMMENTS: Pre-trial was unable to contact victim

TOTAL FTA's: CR 0  /MV 0    TOTAL CONTEMPTS: 0        DRUG TEST:

Pending:

Prior:

NCIC: (Mont Co) Robbery 12/30/05 (G)
1yr 6 mos V-Ernest Doku & Antonio Winters
(DC) Robbery Hold Up Gun 05/16/05 (G)
10 mos; 2 yrs prob
(DC) FTA-Armed Robbery 03/18/05 (G)
2 yrs prob

LEVEL: 1 2 3 4  DM/CM 0        None
CONDITIONS:

Investigator: D. Thompson        Date: 06/14/21

Distribution:  White: Judge   Green: Computer Work   Yellow: State's Attorney   Pink: File Copy   Green: Public Defender

PGC Form 3088 (Rev. 9/13)

**JA770**

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND
    VS.

Leslie Sharp

CASE NO.: 3E00701207

## PRETRIAL INTAKE FACT SHEET (continued)

PRIOR: _____

NCIC: _____

(DC) UUV 12/08/08 (G) 18 mos, 3 yrs Sup Rel

(DC) Dest of Prop 02/08/11 (G) 1 yr prob

(DC) Parole Violation 12/07/10 (ND)

(DC) Narc PWID 05/07/12 (G) 4 mos, 60 mos Sup Rel

(DC) Bail Jumping 12/13/11 (ND)

(DC) Parole Violation 12/16/11 (ND)

(DC) Carrying Pistol W/O License 06/03/16 (G)

18 mos, 3 yrs Sup Rel

(DC) Parole Violation 03/31/16 (ND)

(DCUSM) Parole Violation 02/11/20 (ND)

(DC) Assault on PO 05/06/21 (ND)

COMMENTS: _____

P.G.C. FORM #3088A

*473 -7-22-21*
*8:45*

# IN THE DISTRICT COURT OF MARYLAND
## FOR PRINCE GEORGE'S COUNTY

| | | |
|---|---|---|
| **STATE OF MARYLAND** | : | |
| | : | |
| **V.** | : | **3E00701207** |
| | : | |
| **LESLIE SHARP** | : | |

## MOTION FOR BOND REVIEW HEARING

COMES NOW defendant Leslie Sharp, by and through counsel, and moves this Honorable Court to set a bond review hearing in the above-captioned case. In support thereof, Mr. Sharp states as follows:

1. Mr. Sharp is charged in the above captioned criminal matter with second-degree assault. His trial has been scheduled for July 22, 2021 at 8:45 a.m. in Hyattsville Courtroom 3.

2. At his initial bail review hearing on June 14, 2021, the Honorable Brian C. Denton ordered that Mr. Sharp be held without bond.

3. Marquita Tibbs, the alleged victim in this case, has contacted undersigned counsel to inform him that she does not want Mr. Sharp in jail. She does not fear him and does not believe he is a danger to the community.

4. Ms. Tibbs also told undersigned counsel that she does not intend to press charges in this case.

WHEREFORE, Mr. Sharp asks the Court to set a bond review hearing at the earliest available date in the above-captioned case.

Respectfully Submitted,

Peter Im, Esq.,
Assistant Public Defender
4990 Rhode Island Avenue, Room 345
Hyattsville, MD 20781
(301) 291-7537
peter.im@maryland.gov
CPF# 2105130005

ENTERED
JUN 16 2021
SE

**JA772**

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 16th day of June, a copy of the foregoing motion was

hand-delivered, via the Court Clerk's Office, to the following:


Office of the State's Attorney
Prince George's County, Maryland


                                  Peter Im, Esq.
                                  Assistant Public Defender

2



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 3E00701207

## STATE OF MARYLAND  VS.  SHARP, LESLIE
3590 POWDER MILL RD #102
BELTSVILLE MD 207050000

| | | |
|---|---|---|
| CC #:21-0026214 | State ID:0002907177 | LocID: |
| Eyes: BRN     Hair: BLK | Height: 6'01" | Weight: 190 lb. |
| Race: 1     Sex: M     DOB:06/18/1987     DL #: | | |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

**Charge | Statute | AR/Citation**

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge SCOTT MICHAEL CARRINGTON and the Defendant is committed Without Bail.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
COURT ORDERED PRE TRIAL RELEASE LEVEL 4
NO CONTACT W/MARQUITA TIBBS HER RESIDENCE
PLACE OF EMPLOYMENT & HER FAMILY/STAY AWAY
FROM 3590 POWDER MILL RD BELTSVILLE, MD
NO WEAPONS/FIREARMS/AMMO/ALCOHOL/CDS

### YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing
on 07/22/2021 at 8:45 a.m. in Court Room 3  at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781

Date: 06/24/2021   Time: 9:06 a.m.

**Tracking No. 180001536466**

CC-DC-CR-028 (Rev. 07/2017)

JUDGE/~~CLERK~~: _____

JA774   Judge Scott Carrington



**DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY**
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00701207

## STATE OF MARYLAND VS. SHARP, LESLIE
3590 POWDER MILL RD #102
BELTSVILLE MD 207050000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge SCOTT MICHAEL CARRINGTON on 06/24/2021.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
    COURT ORDERED PRE TRIAL RELEASE LEVEL 4
    NO CONTACT W/MARQUITA TIBBS HER RESIDENCE
    PLACE OF EMPLOYMENT & HER FAMILY/STAY AWAY
    FROM 3590 POWDER MILL RD BELTSVILLE, MD
    NO WEAPONS/FIREARMS/AMMO/ALCOHOL/CDS

YOU ARE SCHEDULED FOR TRIAL
    on 07/22/2021 at 08:45 a.m. in Room 3 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner regarding the status of your Application.

06/24/2021  9:06 a.m.  Room: 5

_____     _____
Defendant Signature                Date

**Tracking No.  180001536466**              **JA775**



# PRINCE GEORGE'S COUNTY GOVERNMENT
## Department of Corrections

Angela D. Alsobrooks
County Executive

7-22-21  g⁴ˢ  H₄³

**June 30, 2021**

**TO:**          The Honorable April T. Ademiluyi

**FROM:**      Jermaine MIlls, Case Manager, Monitoring Services

**DEFENDANT:**  Leslie Sharp

**CASE/CHARGE:**  [1. CR3E00701207 2ND Degree Assault]

[ X ]    The above defendant has been evaluated for program placement;

[ ]     The above defendant is being reconsidered for pretrial release;

[ x ]    The above defendant is no longer eligible for pretrial release;

[ ]     The above defendant violated "Conditions of Release";

[ ]     The above defendant's whereabouts are currently unknown/absconded;

## STATUS

1.    [ ]    **Victim Fears**

2.    [ x ]   **Detainer(s) District of Columbia Probation Agent K. Holston requested
      a warrant for Violation of Probation. Defendant is on probation for
      PWID/Possession of Firearm. Case #2015CF2015442 & case#2011CF2020039.
      Agent states defendant has been arrested twice in 30 days.**

3.    [ ]    **Criminal History**

4.    [ ]    **No Verifiable Address**

5.    [ ]    **Mental Health Issue / Evaluation Pending**

6.    [ ]    **Medical Health Issue(s)**

7.    [ ]    **Violated "Conditions of Release"**

8.    [ ]    **Federal Hold or State Hold**

9.    [ ]    **Other-See Explanation**

**EXPLANATION:**

cc:     Lisa Hall Johnson, Administrative Judge
        PGCDOC-Corenne Labbe, Director
        PGCDOC-Guy Merritt,  Acting Deputy Director, Bureau of Administration
        PGCDOC-Jeffrey Logan, Division Chief, Population Management

*HYB 7-22-21 8:45*

# IN THE DISTRICT COURT OF MARYLAND
## FOR PRINCE GEORGE'S COUNTY

| STATE OF MARYLAND | : |  |
|---|---|---|
|  | : |  |
| **V.** | : | 3E00701207 |
|  | : |  |
| **LESLIE SHARP** | : |  |

## MOTION FOR BOND REVIEW HEARING

COMES NOW defendant Leslie Sharp, by and through counsel, and moves this Honorable Court to set a bond review hearing in the above-captioned case. In support thereof, Mr. Sharp states as follows:

1. Mr. Sharp is charged in the above captioned criminal matter with second-degree assault. His trial has been scheduled for July 22, 2021 at 8:45 a.m. in Hyattsville Courtroom 3.

2. At his initial bail review hearing on June 14, 2021, he was held without bond. At his second bail review hearing on June 24, 2021, the Honorable Scott M. Carrington **ORDERED** that he be released to pretrial at Level 4.

3. On July 2, 2021, pretrial services informed the Court that Mr. Sharp is no longer eligible for pretrial release. He is still detained.

4. Pretrial services has informed undersigned counsel that Mr. Sharp is ineligible for pretrial release because he is on supervised release in the District of Columbia. His pretrial intake sheet, which the Court considered at both bond hearings, states that he is on supervised release in the District of Columbia. The Court considered this information before it ordered Mr. Sharp to be released.

5. Marquita Tibbs, the alleged victim in this case, has contacted undersigned counsel to inform him that she does not want Mr. Sharp in jail. She does not fear him and does not believe he is a danger to the community. Ms. Tibbs also told undersigned counsel that she does not intend to press charges in this case.

6. Mr. Sharp requests that he be released on his personal recognizance or on an unsecured bond.

WHEREFORE, Mr. Sharp asks the Court to set a bond review hearing at the earliest available date in the above-captioned case.



ENTERED

JUL 0 7 2021

SE

**JA778**

Respectfully Submitted,

Peter Im, Esq.,
Assistant Public Defender
4990 Rhode Island Avenue, Room 345
Hyattsville, MD 20781
(301) 291-7537
peter.im@maryland.gov
CPF# 2105130005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June, a copy of the foregoing motion was

hand-delivered, via the Court Clerk's Office, to the following:

Office of the State's Attorney
Prince George's County, Maryland

Peter Im, Esq.
Assistant Public Defender

2

**JA779**



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00701207

## STATE OF MARYLAND VS. SHARP, LESLIE
3590 POWDER MILL RD #102
BELTSVILLE MD 207050000

| CC #:21-0026214 | State ID:0002907177 | LocID: |
| Eyes: BRN   Hair: BLK | Height: 6'01" | Weight: 190 lb. |
| Race: I   Sex: M   DOB:06/18/1987 | DL #: | |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

**Charge | Statute | AR/Citation**

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge DONNAKA VARNER LEWIS and the Defendant is committed Without Bail.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
OR PR TO PTR LEVEL #4 OPTION
NO CONTACT W/MARQUITA TIBBS HER RESIDENCE
PLACE OF EMPLOYMENT & HER FAMILY/STAY AWAY
FROM 3590 POWDER MILL RD BELTSVILLE, MD
NO WEAPONS/FIREARMS/AMMO/ALCOHOL/CDS

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 07/22/2021 at 8:45 a.m. in Court Room 3  at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781

Date: 07/14/2021   Time: 10:55 a.m.

JUDGE/~~CLERK~~: _Donnaka Varner Lewis_
Judge Donnaka Varner Lewi

**Tracking No. 180001536466**

JA780

CC-DC-CR-028 (Rev. 07/2017)



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00701207

## STATE OF MARYLAND VS. SHARP, LESLIE
3590 POWDER MILL RD #102
BELTSVILLE MD 207050000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge DONNAKA VARNER LEWIS on 07/14/2021.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
OR PR TO PTR LEVEL #4 OPTION
NO CONTACT W/MARQUITA TIBBS HER RESIDENCE
PLACE OF EMPLOYMENT & HER FAMILY/STAY AWAY
FROM 3590 POWDER MILL RD BELTSVILLE, MD
NO WEAPONS/FIREARMS/AMMO/ALCOHOL/CDS

YOU ARE SCHEDULED FOR TRIAL/HEARING
on 07/22/2021 at 08:45 a.m. in Room 3 at the District Court of Maryland for PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner regarding the status of your Application.

07/14/2021  10:55 a.m.  Room: 5

_____
Defendant Signature

_____
Date

Tracking No.  180001536466

JA781

# Exhibit I
# Adrienne Worthington
# Case Documents



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 5E00705808

## STATE OF MARYLAND VS. WORTHINGTON, ADRIENNE MICHELLE
664 PALMERTON TER
HYATTSVILLE MD 207850000

CC #:21-0059714         State ID: 0002709985         LocID:X0893683
Eyes: BRN      Hair: BLK         Height: 5'08"         Weight: 225 lb.
Race: 1       Sex:M      DOB:09/05/1967      DL #:

**Charge | Statute | AR/Citation**
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
     13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge WENNESA BELL SNODDY and the Defendant is committed Without Bail.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
NOT ENGAGE IN CRIMINAL ACTIVITY.APPEAR IN
COURT.NOT INTIMIDATE KEON MATHIASNO VIOLEN
T CONTACT WITH KEON MATHIAS.
PER JD BELL-SNODDY CASE CONT TO 12/28/21
RM 261B @ 01:15PM

### YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing
on 01/24/2022 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

No P I R
paperwork

Date: 12/27/2021   Time: 1:39 p.m.        JUDGE/CLERK: *Wennesa Bell Snoddy*

**Tracking No. 180001550304**                          Judge Wennesa Bell Snoddy
CC-DC-CR-028 (Rev. 07/2017)              JA783



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 5E00705808

## STATE OF MARYLAND VS. WORTHINGTON, ADRIENNE MICHELLE
664 PALMERTON TER
HYATTSVILLE MD 207850000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge WENNESA BELL SNODDY on 12/27/2021.

THE COURT, ON THE DATE SHOWN ABOVE,

    Made certain you received copy of Charging Document;

    Informed you of right to counsel and importance of assistance of counsel;

    Advised you of the nature of the charges and allowable and mandatory penalties;

    Advised you of making next appearance without counsel could be a "waiver";

    Reminded you that representation by the OPD at Bail Review ends with the Bail Review;

    Advised you of your right to Preliminary Hearing;

    You deferred your right to a Preliminary Hearing;

    Advised you of your right to jury trial;

    Rights given by video;

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
NOT ENGAGE IN CRIMINAL ACTIVITY.APPEAR IN
COURT.NOT INTIMIDATE KEON MATHIASNO VIOLEN
T CONTACT WITH KEON MATHIAS.
PER JD BELL-SNODDY CASE CONT TO 12/28/21
RM 261B @ 01:15PM

YOU ARE SCHEDULED FOR PRELIMINARY HEARING
on 01/24/2022 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and
terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court
Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as
soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner
regarding the status of your Application.

12/27/2021   1:39 p.m.   Room: 5

_____   _____
Defendant Signature   Date

**Tracking No.  180001550304**

**JA784**



# DISTRICT COURT OF MARYLAND FOR Prince George's County

## WORTHINGTON, ADRIENNE MICHELLE

Case No. 5E00705808

664 PALMERTON TER
HYATTSVILLE, MD 20785-0000

Sex: M   Ht: 5' 08"   Wt: 225   Race: 1   Eyes: BRN   Hair: BLK
DOB: 09/05/1967   Home phone: 202-556-5251   Cellphone:
CC#: 21-0059714   LID: X0893683   SID: 0002709985
DL#:                    ☐ DEFENDANT IS A MINOR

Cont 12/28/2 @ 1:15pm

CHARGE 001 OF 2   1 1420   CR3202   --Felony25   Y   ASSAULT-FIRST DEGREE

**More charges on continuation page.**

**THE COURT ON THE DATE SHOWN BELOW ----**                    ☐ RIGHTS GIVEN BY VIDEO

*Waived*

☒ MADE CERTAIN DEFENDANT RECEIVED COPY OF CHARGING DOCUMENT
☒ INFORMED DEFENDANT OF RIGHT TO COUNSEL AND IMPORTANCE OF ASSISTANCE OF COUNSEL          ☐ BAIL REVIEW POSTPONED
   ☐ DEFENDANT WAIVED ATTORNEY FOR BAIL REVIEW
   ☐ THE PUBLIC DEFENDER PROVIDED PROVISIONAL REPRESENTATION AT THE BAIL REVIEW
   ☒ REPRESENTED BY: _P.D._
☒ DEFENDANT ADVISED OF RIGHT AT   ☐ INITIAL APPEARANCE          ☐ PRELIMINARY INQUIRY
☒ REQUIRED DEFENDANT TO READ OR ☐ READ TO DEFENDANT THE NOTICE OF RIGHTS TO COUNSEL.
☒ ADVISED DEFENDANT OF THE NATURE OF THE CHARGES AND ALLOWABLE AND ANY MANDATORY OR ENHANCED PENALTIES
☒ ADVISED DEFENDANT THAT MAKING NEXT APPEARANCE WITHOUT COUNSEL COULD BE A WAIVER
   ☐ REMINDED THE DEFENDANT THAT REPRESENTATION BY THE OPD AT BAIL REVIEW ENDS WITH THE BAIL REVIEW
☒ ADVISED FELONY DEFENDANT OF RIGHT TO PRELIMINARY HEARING
   ☐ DEFENDANT REQUESTED PRELIMINARY HEARING AT THIS TIME
☒ ADVISED DEFENDANT OF RIGHT TO JURY TRIAL
☐ RELEASED DEFENDANT ON OWN RECOGNIZANCE
☒ HOLD WITHOUT BOND
☐ ORDERED BAIL TO REMAIN SAME          ☒ CONDITION(S)/RESTRICTION(S) TO REMAIN THE SAME
☐ REVISED BAIL $ _____.00   ☐ CASH (MAY BE POSTED BY THIRD PARTY)   ☐ FAILURE TO PAY SUPPORT, TO BE CASH,
   POSTED BY DEFENDANT ONLY          ☐ PCT ____%          ☐ UNSECURED PERSONAL BOND $ _____.00
☐ REINSTATED BAIL $ _____.00   POSTED ON ___/___/_____
☐ COMMITTED IN DEFAULT OF BOND
☐ DEFENDANT IS A MINOR AND
   ☐ SHALL BE HELD IN A SECURE JUVENILE FACILITY PROVIDED DEPARTMENT OF JUVENILE SERVICES DETERMINES THERE IS AVAILABLE CAPACITY TO HOLD DEFENDANT.
   ☐ SHALL NOT BE HELD IN A SECURE JUVENILE FACILITY. COURT FINDS THAT DETENTION IN A SECURE JUVENILE FACILITY WILL POSE A RISK OF HARM TO THE MINOR DEFENDANT
   OR OTHERS FOR THE FOLLOWING REASONS: _____

**IMPOSED THE FOLLOWING CONDITION(S)/RESTRICTION(S) ON THE DEFENDANT:**
☒ REQUIRED CONDITIONS OF RELEASE: 1) DEFENDANT WILL NOT ENGAGE IN ANY CRIMINAL CONDUCT DURING THE PERIOD OF PRETRIAL
   RELEASE AND 2) THE DEFENDANT WILL APPEAR IN COURT WHEN REQUIRED TO DO SO.
☐ BOND TO BE CO-SIGNED BY:_____
☐ COMPLETE PTSU INTERVIEW
☐ PROOF OF ADDRESS TO          ☐ PTSU          ☐ COMMISSIONER BEFORE RELEASE
☐ PTSU TO VERIFY ADDRESS BEFORE RELEASE
☐ LIVE AT ADDRESS THAT PTSU HAS VERIFIED
☐ PROOF OF IDENTITY TO          ☐ PTSU          ☐ COMMISSIONER BEFORE RELEASE
☐ SURRENDER CURRENT PASSPORT/ALL TRAVEL DOCUMENTS TO THE COURT BEFORE RELEASE
☐ SUBSTANCE ABUSE TREATMENT IF _____ DEEMS NECESSARY
☐ MENTAL HEALTH TREATMENT IF PTSU DEEMS NECESSARY
☐ NO CONTACT WITH VICTIMS/STATE'S WITNESSES/CO-DEFENDANTS
☐ STAY AWAY FROM _____
   ☐ USE ELECTRONIC MONITORING TO CONFIRM AREA OF RESTRICTION
☐ CURFEW: AS SET BY PTSU OR _____
☐ REPORT TO PROBATION OFFICER NEXT BUSINESS DAY AFTER RELEASE
☐ TRANSFER DIRECTLY TO _____ BY _____ WHEN BED AVAILABLE
☐ RELEASE TO THE FOLLOWING RESIDENTIAL TREATMENT PROGRAM_____
   ☐ REFERRED DEFENDANT FOR COMPETENCY EVALUATION          ☐ OUT-PATIENT
TRIAL SCHEDULED:   DATE:_____   TIME:_____   LOC:_____   ROOM:_____
   ☐ BAIL REVIEW   ☐ PREL. INQUIRY   ☐ PREL. HEARING   ☐ TRIAL   ☐ VOP   ☐ SENTENCING
☐ PLACED IN CUSTODY OF_____
☐ PRE-TRIAL SUPERVISION BY_____
☐ ALCOHOL SCREENING          ☐ DRUG SCREENING
☐ ALCOHOL PROGRAM          ☐ DRUG PROGRAM
   **Prince George's County Only:**
   ☐ GPS TRACKING:   ☐ $_____ FEE ASSESSED          ☐ FEE WAIVED
☐ OTHER:_____

Date 12/27/21                    Judge                    ID Number

**Tracking No.** 180001550304                    **JA785**
DC-BR-DOC-001 BAIL REVIEW DOCKET (Rev. 11/2017)

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY
PRETRIAL INTAKE FACT SHEET

STATE OF MARYLAND
VS.
Adrienne Michelle Worthington

ID NO.: 211121
CASE NO.: 5E00705808
CHARGE: Assault First Degree
TOTAL BOND: $ 0.00

THE FOLLOWING INFORMATION HAS BEEN VERIFIED BY THE PRETRIAL INTAKE STAFF:

1) Additional Bond Hearing Case No's.: _____

2) AKA's:   Adreinne Romo; April Habin; Adrienne Washington; 9 more

3) Detainers: 1) NC 12-11784, Stolen Vehicle, 4/17/12, Instate pickup only
   2) OH 30-P21030600000091, Poss Cocaine, 7/1/21, Instate pickup only

4) Also In Jail On: _____

5) PreTrial Release: _____

6) P&P Information: Probation, CT70523X, Unauth Use/Prostitution, 3/13/08, Closed, 1/8/15,
   Expiration of Sentence, A. Carraquillo, Upper Marlboro

7) Residence: Unable to Interview          Employment: Unable to Interview

   Length: _____              Length: _____
   Tel. #: (   ) _____         Position: _____
   Lives With: _____           Can S/he Return: _____
   Verified By: _____          Verified By: _____

8) COMMENTS: _____
   _____
   _____

TOTAL FTA's: CR 5 /MV 3       TOTAL CONTEMPTS: 0       DRUG TEST: _____
Pending: 6E00696912, Fail Return         NCIC: _____
Veh, no date                             (CA) Import CDS 12/3/00 (G) 5 mo
                                         (CA) Parole Viol 6/24/02 (G) 14 mo
Prior: _____                   (CA) SRV 8/29/02 (G) 14 mo
   CR Assault 2nd (NP) 3/20/19 NVI        (DC) Bail Reform 4/3/06 (G) 5 days
   CR Prostitution (NP) 9/4/19           (DC) Sexual Solicitation 9/30/09 (G)
   CR Alcohol Bev (NP) 12/13/07                                    no sent info
   CR False Statement (G) 1/28/08        LEVEL: 1 2 3 4  DM/CM 0      None
   CR Trespass (G) 2/18/09               CONDITIONS: _____
   CR Alcohol Bev (NP) 1/27/09           _____
Investigator: D. Pinder/S. Sweet         Date: 12/27/21

Distribution:  White: Judge  Green: Computer Work   Yellow: State's Attorney   Pink: File Copy   Green: Public Defender

PGC Form 3088 (Rev. 9/13)

**JA786**

IN THE CIRCUIT/DISTRICT COURT FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND
   VS.

CASE NO.: 5E00705808

Adrienne Michelle Worthington

## PRETRIAL INTAKE FACT SHEET (continued)

PRIOR: CR CDS Poss Para (NP) 1/27/09

CR Theft (NP) 12/5/08

CR Theft (NP) 1/14/13

6E00244978/CA051326J MV Theft (G) 4/8/05

3E00235672/CA051326J MV Theft (G) 4/8/05

0E00363874/CJ083004 Poss Forged Curr (G) 10/23/08

3E00325181/CT070523X UUV (G) 3/13/08

0E00335223/CJ083004 Poss Forged Curr (G) 10/23/08

NCIC:

(CA) Offensive Words in Public 5/28/02 (G) $300 fine

(NV) Loiter/Prostitution 1/17/95 (G) no sent info

(NV) Shoplifting 12/27/94 (G) No sent info

(NV) Receive Stolen Goods 5/3/96 (G) no sent info

(NV) Obstruction 8/8/00 (G) no sent info

COMMENTS:

P.G.C. FORM #3088A





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 5E00705808

## STATE OF MARYLAND  VS.  WORTHINGTON, ADRIENNE MICHELLE
664 PALMERTON TER
HYATTSVILLE MD 207850000

CC #:21-0059714
Eyes: BRN       Hair: BLK
Race: I          Sex:M       DOB:09/05/1967   DL #:

State ID:0002709985      LocID:X0893683
Height: 5'08"            Weight: 225 lb.

**Charge | Statute | AR/Citation**
ASSAULT-FIRST DEGREE | 1 1420 CR3202 |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
   13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge JOHN ANTHONY BIELEC and the Defendant is committed Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
   OR PR TO PTR OPTION
   NO CONTACT WITH VICTIMS/STATE'S WITNESSES/
   CO-DEFENDANTS/KEON MATHIAS.
   STAY AWAY FROM LOCATION OF INCIDENT
   NO GUNS, NO AMMO, NO CDS

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
   on 01/24/2022 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 12/28/2021  Time: 1:46 p.m.

**Tracking No. 180001550304**
CC-DC-CR-028 (Rev. 07/2017)

JUDGE:

Judge John Bielec

JA788



**DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY**
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 5E00705808

## STATE OF MARYLAND VS. WORTHINGTON, ADRIENNE MICHELLE
664 PALMERTON TER
HYATTSVILLE MD 207850000

## BAIL REVIEW SUMMARY

Your bail review was held by Judge JOHN ANTHONY BIELEC on 12/28/2021.

THE COURT, ON THE DATE SHOWN ABOVE,

HELD YOU WITHOUT BAIL;

AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
   OR PR TO PTR OPTION
   NO CONTACT WITH VICTIMS/STATE'S WITNESSES/
   CO-DEFENDANTS/KEON MATHIAS.
   STAY AWAY FROM LOCATION OF INCIDENT
   NO GUNS, NO AMMO, NO CDS

YOU ARE SCHEDULED FOR PRELIMINARY HEARING
   on 01/24/2022 at 08:45 a.m. in Room 261 at the District Court of Maryland for PRINCE GEORGE'S COUNTY
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772.

NOTICE: Unless a final determination of indigency has been made, representation at the Bail Review is provisional and terminates at the end of the Bail Review. If you have already applied for the Public Defender through the District Court Commissioner, there is no need to apply again. You will be notified in writing of your eligibility for representation at trial as soon as a final determination is made. Please allow at least one week before contacting the District Court Commissioner regarding the status of your Application.

12/28/2021   1:46 p.m.   Room: 5

_____        _____
Defendant Signature                    Date

Tracking No.   180001550304              JA789




# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST.; UPPER MARLBORO, MD 20772

Case No. 5E00705808
Tracking No. 180001550304

## BAIL REVIEW DOCKET
## STATE OF MARYLAND VS. WORTHINGTON, ADRIENNE MICHELLE

**WORTHINGTON, ADRIENNE MICHELLE** 21-0059714       State ID: 0002709985          LocID:X0893683
664 PALMERTON TER               Eyes: BRN    Hair: BLK    Height: 5'08"    Weight: 225 lb.
HYATTSVILLE MD 207850000        Race: I      Sex:M        DOB:09/05/1967   DL #:
☐ DEFENDANT IS A MINOR

CHARGE: 1 OF 2   I 1420 CR3202 --Felony   25 Y  $0.00   ASSAULT-FIRST DEGREE
CHARGE: 2 OF 2   I 1415 CR3203   10 Y  $2500.00   ASSAULT-SEC DEGREE

**Charges on continuation page.**

## THE COURT ON THE DATE SHOWN BELOW ---
☐ MADE CERTAIN THE DEFENDANT RECEIVED COPY OF CHARGING DOCUMENT
☐ INFORMED DEFENDANT OF RIGHT TO COUNSEL AND IMPORTANCE OF ASSISTANCE OF COUNSEL          ☐ RIGHTS GIVEN BY VIDEO
  ☐ DEFENDANT WAIVED ATTORNEY FOR BAIL REVIEW                                              ☐ BAIL REVIEW POSTPONED
  ☐ THE PUBLIC DEFENDER PROVIDED PROVISIONAL REPRESENTATION AT THE BAIL REVIEW
☑ REPRESENTED BY: _PD_                                                     _Enter / Waiver_
☐ DEFENDANT ADVISED OF RIGHTS AT ☐ INITIAL APPEARANCE ☐ PRELIMINARY INQUIRY
  ☐ REQUIRED DEFENDANT TO READ OR ☐ READ TO DEFENDANT THE NOTICE OF ADVICE OF RIGHTS TO COUNSEL.
☐ ADVISED DEFENDANT OF THE NATURE OF THE CHARGES AND ALLOWABLE AND ANY MANDATORY OR ENHANCED PENALTIES
☐ ADVISED DEFENDANT THAT MAKING NEXT APPEARANCE WITHOUT COUNSEL COULD BE A WAIVER
  ☐ REMINDED THE DEFENDANT THAT REPRESENTATION BY THE OPD AT BAIL REVIEW ENDS WITH THE BAIL REVIEW
☐ ADVISED FELONY DEFENDANT OF RIGHT TO PRELIMINARY HEARING
  ☐ DEFENDANT REQUESTED PRELIMINARY HEARING AT THIS TIME
☐ ADVISED DEFENDANT OF RIGHT TO JURY TRIAL                                    _PTR option_
☐ RELEASED BAIL TO REMAIN ON OWN RECOGNIZANCE
☑ HOLD WITHOUT BOND
☐ ORDERED BAIL TO REMAIN THE SAME          ☐ CONDITION(S)/RESTRICTION(S) TO REMAIN THE SAME
☐ REVISED BAIL $_____.00    ☐ CASH (MAY BE POSTED BY THIRD PARTY)     ☐ FAILURE TO PAY SUPPORT, TO BE CASH,
  POSTED BY DEFEDANT ONLY                  ☐ PCT____%                                ☐ UNSECURED PERSONAL BOND $_____.00
☐ REINSTATED BAIL $_____.00          POSTED ON ___/___/_____
☐ COMMITTED IN DEFAULT OF BOND
☐ DEFENDANT IS A MINOR, AND
  ☐ SHALL BE HELD IN A SECURE FACILITY PROVIDED DEP. OF JUVENILE SERVICES DETERMINES THERE IS AVAILABLE CAPACITY TO HOLD DEFENDANT.
  ☐ SHALL NOT BE HELD IN A SECURE JUVENILE FACILITY. COURT FINDS THAT DETENTION IN A SECURE JUVENILE FACILITY WILL POSE A RISK OF HARM
    TO THE MINOR DEFENDANT OR OTHERS FOR THE FOLLOWING REASONS:_____

## IMPOSED THE FOLLOWING CONDITION(S)/RESTRICTION(S) ON THE DEFENDANT:
☒ REQUIRED CONDITIONS OF RELEASE: 1) DEFENDANT WILL NOT ENGAGE IN ANY CRIMINAL CONDUCT DURING THE PERIOD OF PRETRIAL
  RELEASE AND 2) THE DEFENDANT WILL APPEAR IN COURT WHEN REQUIRED TO DO SO.
☐ BOND TO BE CO-SIGNED BY:_____
☐ COMPLETE PTSU INTERVIEW
☐ PROOF OF ADDRESS TO          ☐ PTSU          ☐ COMMISSIONER BEFORE RELEASE
☐ PTSU TO VERIFY ADDRESS BEFORE RELEASE
☐ LIVE AT ADDRESS THAT PTSU HAS VERIFIED
☐ PROOF OF IDENTITY TO          ☐ PTSU          ☐ COMMISSIONER BEFORE RELEASE
☐ SURRENDER CURRENT PASSPORT/ALL TRAVEL DOCUMENTS TO THE COURT BEFORE RELEASE
☐ SUBSTANCE ABUSE TREATMENT IF _____ DEEMS NECESSARY
☐ MENTAL HEALTH TREATMENT IF PTSU DEEMS NECESSARY
☑ NO CONTACT WITH VICTIMS/STATE'S WITNESSES/CO-DEFENDANTS ➤ _Keon Mathias_
☑ STAY AWAY FROM _COI_
  ☐ USE ELECTRONIC MONITORING TO CONFIRM AREA OF RESTRICTION
☐ CURFEW: AS SET BY PTSU OR _____
☐ REPORT TO PROBATION OFFICER NEXT BUSINESS DAY AFTER RELEASE
☐ TRANSFER DIRECTLY TO_____ BY _____ WHEN BED AVAILABLE
☐ RELEASE TO THE FOLLOWING RESIDENTIAL TREATMENT PROGRAM_____
  ☐ REFERRED DEFENDANT FOR COMPETENCY EVALUATION          ☐ OUT-PATIENT
☐ TRIAL SCHEDULED:  DATE:_____ TIME:_____ LOC:_____ ROOM:_____
  ☐ BAIL REVIEW   ☐ PREL. INQUIRY   ☐ PREL. HEARING   ☐ TRIAL   ☐ VOP   ☐ SENTENCING
☐ PLACED IN CUSTODY OF_____
☐ PRE-TRIAL SUPERVISION BY_____
☐ ALCOHOL SCREENING          ☐ DRUG SCREENING
☐ ALCOHOL PROGRAM            ☐ DRUG PROGRAM

### Prince George's/Washington County Only:
☐ GPS TRACKING   ☐ $_____ FEE ASSESSED   ☐ FEE WAIVED
☑ OTHER: _No guns, No ammo, No coj_

_12/28/21_

Date                               Judge                               ID Number

Tracking No. 180001550304          DC-BR/DCCR 10    3A790    BAIL REVIEW DOCKET (Rev. 11/2017)

1/24/22
261
845

# IN THE DISTRICT COURT OF MARYLAND
## FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND     2021 DEC 29  A 10: 28

      :

**V.**       :       5E00705808

      :

**ADRIENNE WORTHINGTON**     :

## MOTION FOR BOND REVIEW HEARING

     COMES NOW defendant Adrienne Worthington, by and through counsel, and moves this Honorable Court to set a bond review hearing in the above-captioned case. In support thereof, Ms. Worthington states as follows:

1. Ms. Worthington is charged with one count of first-degree assault and one count of second-degree assault.

2. Ms. Worthington's initial bond hearing was held on December 28, 2021, the Honorable John A. Bielec presiding. The Court ordered that Ms. Worthington be held without bond with the option of pretrial release at any level.

3. The alleged victim for both charges is Keon Mathias. Since the initial bond review hearing, undersigned counsel has spoken to Mr. Mathias, who informed him that he does not intend to press charges, Ms. Worthington does not pose a danger to him, and he does not feel threatened by or in fear of Ms. Worthington.

4. Ms. Worthington has no prior violent convictions, and no convictions from the last ten years. The Court's holding her without bond was primarily based on the statement of charges and the risk of danger to the Mr. Mathias.

5. The representations by the alleged victim in this case are highly material and represent a change in circumstances that merits a new bond hearing.

     Accordingly, Ms. Worthington asks the Court to set a bond review hearing in the above-captioned case on the earliest available date.

                Respectfully Submitted,

Granted
[signature]
1/3/22

             Peter Im, Esq., Assistant Public Defender
             4990 Rhode Island Avenue, Room 345
             Hyattsville, MD 20781
             (301) 291-7537
             peter.im@maryland.gov
             CPF# 2105130005

**JA791**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of December, 2021, a copy of the foregoing

motion was hand-delivered, via the Court Clerk's Office, to the following:

Office of the State's Attorney
Prince George's County, Maryland

 

 

_____
Peter Im, Esq.
Assistant Public Defender

2

## IN THE DISTRICT COURT OF MARYLAND
## FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND                    :
                                     :
            V.                       :            5E00705808
                                     :
ADRIENNE WORTHINGTON                 :
_____

### O R D E R

UPON CONSIDERATION of the foregoing Motion for Bond Review Hearing, it is this ____5th____ day of ____January____, 202~~2~~, hereby

ORDERED that a hearing on the motion is scheduled in Courtroom 261 ~~on~~

_____, ~~2022~~.

_____
J U D G E

Copies to:

Peter Im, Assistant Public Defender
State's Attorney's Office

1/11/22   BPA cancel appeare
Def w/d's motion
Def has been released
on PTR

[signature]

3
JA793



Case No. 5E00705808



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

## STATE OF MARYLAND  VS.  WORTHINGTON, ADRIENNE MICHELLE
664 PALMERTON TER
HYATTSVILLE MD 207850000

| | | |
|---|---|---|
| CC #:21-0059714 | State ID:0002709985 | LocID: X0893683 |
| Eyes: BRN   Hair: BL | Height:  5'08" | Weight:  225 lb. |
| Race: 1   Sex: M | DOB:09/05/1967 | DL #: |

## DEFENDANT TRIAL SUMMARY

The Preliminary Hearing in the above case was POSTPONED today, 01/24/2022.
   REASON: FELONY CHG NOLLE PROS .
You will be notified of the next trial/hearing.

The Court's finding is as follows:

Charge # 001  ASSAULT-FIRST DEGREE   was NOLLE PROSEQUIED.
NO CDS, WEAPONS, FIREARMS, AMMO

If you have been convicted of, pled guilty to, or received probation before judgment for a crime, it may be unlawful for you to possess or purchase a firearm, including a rifle, shotgun, pistol, revolver, or ammunition, pursuant to state and/or federal law. If you have any questions about whether it is now illegal for you to possess or purchase a firearm, you should immediately consult an attorney. For additional information about these prohibitions or the surrender of firearms (even if you are currently incarcerated), please consult http://www.marylandattorneygeneral.gov/Forms/Form_77R_gun_questions.pdf or contact Maryland State Police at: 1-410-653-4500.

You may be entitled to expunge this record and any DNA sample and DNA record relating to the charge or charges against you.  Effective October 1, 2021, certain cases shall be automatically expunged after three years if all charges resulted in any combination of acquittal, dismissal, not guilty or nolle prosequi, or you may file for expungement of those charges within three years upon completion of the attached Petition for Expungement of Records and General Waiver and Release. To learn more about which cases may be eligible for expungement, see the Expungement Brochure available in the Clerk's office or visit the Maryland Courts website: www.mdcourts.gov/legalhelp/expungement

01/24/2022        Defendant_____        (WORTHINGTON, ADRIENNE MICHELLE)

**Tracking No. 180001550304**

**JA794**




# DISTRICT COURT OF MARYLAND FOR Prince George's County
## WORTHINGTON, ADRIENNE MICHELLE

Case No. 5E00705808

664 PALMERTON TER
HYATTSVILLE, MD 20785-0000

Sex: M   Ht: 5' 08"   Wt: 225   Race: I   Eyes: BRN   Hair: BLK
DOB: 09/05/1967   Home phone: 202-556-5251   Cellphone:
CC#: 21-0059714   LID: X0893683   SID: 0002709985
DL#:

☐ DEFENDANT IS A MINOR

CHARGE 001 OF 2   1 1420   CR3202   --Felony25  Y   ASSAULT-FIRST DEGREE
CHARGE 002 OF 2   1 1415   CR3203   10  Y &/or $2,500.00   ASSAULT-SEC DEGREE

☐ PRELIMINARY HEARING WAIVED

**THE COURT ON THE DATE SHOWN BELOW ---**
☑ DETERMINED DEFENSE REPRESENTATION: _____ *Cindy Najhran, OPD.*
☐ FOUND PROBABLE CAUSE      ☐ CONTINUED THE CASE
☐ DISMISSED THE FELONY CHARGE   ☐ DISMISSED ALL CHARGES
☐ ORDERED MISDEMEANOR CHARGES SCHEDULED FOR TRIAL
☐ CONTINUED RECOGNIZANCE      ☐ CONTINUED BAIL      ☐ FORWARDED TO CIRCUIT COURT
☐ REVISED BAIL: $ _____
☐ DEFENDANT IS A MINOR, AND
　　☐ SHALL BE HELD IN A SECURE FACILITY PROVIDED DEPARTMENT OF JUVENILE SERVICES DETERMINES THERE IS AVAILABLE
　　　CAPACITY TO HOLD DEFENDANT.
　　☐ SHALL NOT BE HELD IN A SECURE JUVENILE FACILITY. COURT FINDS THAT DETENTION IN A SECURE JUVENILE FACILITY WILL
　　　POSE A RISK OF HARM TO THE MINOR DEFENDANT OR OTHERS FOR THE FOLLOWING REASONS: _____
　　_____

IMPOSED THE FOLLOWING RESTRICTION ON THE DEFENDANT:
☐ NO CONTACT WITH VICTIM/COMPLAINANT
☐ NO RETURN TO MARITAL HOME
☐ PRE-TRIAL SUPERVISION
☐ ALCOHOL SCREENING
☐ ALCOHOL PROGRAM
☑ OTHER: _____ *No CDS, weapons, firearms, ammunition* _____
_____
_____

☐ COMMITTED IN DEFAULT OF BOND

_____1/24/22_____　　　　　　_____X_____　　　　　_____OPS_____
Date　　　　　　　　　　　　　　Judge　　　　　　　　　　ID Number

**THE STATE'S ATTORNEY ---**
☐ FILED AN INDICTMENT      ☐ FILED AN INFORMATION
☑ ENTERED A NOLLE PROSEQUI *et|*
☐ AMENDED THE ORIGINAL FELONY CHARGE(S) TO MISDEMEANOR(S)
　　CHARGE SEQUENCE NUMBER(S): _____
☐ AND FILED NEW CHARGING DOCUMENT IN DISTRICT COURT
　　MDCCS CODES REFLECTING NEW CHARGES

_____1/24/22_____　　　　　　_____X_____　　　　　_____OPS_____
Date　　　　　　　　　　　　　　Judge　　　　　　　　　　ID Number

**Tracking No. 180001550304**

DC-CR-DOC-003 FELONY DOCKET (Rev. 07/2016)　　　　**FELONY DOCKET**

☐ CIRCUIT COURT ☒ DISTRICT COURT OF MARYLAND FOR Prince George's County
City/County

Located at 4900 Rhode Island Ave. Hyattsville, MD      Case No. 5E00705808
Court Address

Tracking No.: 180001550304      Associated Case No.: _____

STATE OF MARYLAND                    vs.    Worthington, Adrienne Michelle
                                            Defendant
AMEND                                       664 Palmerton Terr
                                            Address
                                            Hyattsville, MD 20785        202-556-5251
                                            City, State, Zip                 Telephone

DOB: 09/05/1967    INMATE ID #: _____    FBI #: _____    SID #: 0002709985

## COMMITMENT PENDING HEARING
☐ CIVIL ☒ CRIMINAL ☐ TRAFFIC ☐ DOMESTIC VIOLENCE

TO: _____, Prince George's County Detention Center
          Title                                    Facility

**YOU ARE HEREBY COMMANDED** to receive from any officer the body of _____.
                                                                              Name
Charges are listed below.

| Charge | CJIS | Disposition | Charge | CJIS | Disposition |
|--------|------|-------------|--------|------|-------------|
| ASSAULT-SEC DEGREE | | | | | |

☐ Bond is set at $ _____ (_____ % acceptable). (☐ Secured ☐ Unsecured)
☐ Bail review was held and the bond is set at $ _____ (_____ % acceptable).
  (☐ Secured ☐ Unsecured)
☐ In default of $ _____ bail (_____ % acceptable).
☐ Bail review was held by Judge _____ and above named individual is
  committed in default of $ _____ bail (_____ % acceptable).
☐ Having been surrendered by bondsman, bond of $ _____ to continue.
☒ Hold without bond.
☒ Special Conditions: PR to PTR option, No Contact w/ Victims/ State's Witnesses/ Co-Defendants;
  Keon Mathias; No CDS, Weapons, Firearms, Ammo.
  _____ .

☐ Other: _____ .

**YOU ARE FURTHER COMMANDED** to:
☐ Transfer above named individual to the jail or detention center in _____
  County/City. If the above named individual has not been transferred prior to the next session of court, and
  has not had a bail review, he is to be brought before the court in your county for bail review.

☐ Produce the above named individual for further review before a judicial officer at the Court and address below:
  _____
  within ☐ 30 days from date of arrest ☐ 60 days from second commitment if before that time the above named
  individual has not posted the bail or been arrested on a warrant of the Governor or Maryland on a requisition of
  the executive authority of the State of _____. Pending hearing date: _____.

☒ Produce the above named individual for court appearance at the Court and address below:
  District Court/ 4900 Rhode Island Ave, Hyattsville, MD 20781
  whenever notified for: TRIAL/ 4-5-2022 HY3
  _____. Pending court appearance is
  set for: 4/5/2022      at 8:45am      .
          Date              Time

_____ 02/01/2022 _____        _____
                   Date              Clerk/Judge/Commissioner              ID Number

CC-DC-CR-012 (Rev. 07/2017)

**JA796**

IN THE DISTRICT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND

                    :

VS.

                    :                          5E00705808

ADRIENNE WORTHINGTON

                    :


## MOTION TO REVIEW BOND


    Comes now the Defendant, ADRIENNE WORTHINGTON, by and through attorney, Cindy G. Najhram, and moves this Honorable Court to set this matter in for a bond hearing in the above-captioned matter and states reasons as follows:

1. That Ms. Worthington is currently on pretrial level four (4) release;

2. That Ms. Worthington was charged with first-degree assault and second-degree assault;

3. That Ms. Worthington's first-degree assault was entered entered Nolle prosequi on January 24, 2022;

4. That Ms. Worthington has been accepted into a housing program that would require her to change her address with pretrial;

5. That Ms. Worthington received an acceptance letter for the housing program (please see attached information sheet);

6. Based on the above, the Defendant is requesting the Court set this matter in for a bond hearing.

WHEREFORE, the Defendant requests:
    1. That this motion be set for a hearing.
    2. That the Defendant's address is amended for pretrial services.

**JA797**

Cindy G. Najhram, Esq.
CPF # 0912160290
Assistant Public Defender
Felony Division
Office of the Public Defender
14735 Main Street, Suite 272B
Upper Marlboro, MD 20772
Phone: (301) 965 0163 (g)
cindy.najhram@maryland.gov

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this _Feb. 2, 2022_, a copy of the foregoing Motion to Set Bond was sent to the State's Attorney's Office, Courthouse, Upper Marlboro, Maryland.

Cindy G. Najhram, Esq.

**JA798**

IN THE DISTRICT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND                          :

VS.                                        :                    5E00705808

ADRIENNE WORTHINGTON                       :

<u>ORDER</u>

Upon consideration of the foregoing Motion to Set bond, it is ordered on this _7<u>th</u>_

day of ___February___ , 2022that a bond hearing be scheduled for

_____, 2022.


JUDGE _____

**JA799**



**DISTRICT COURT OF MARYLAND FOR Prince George's County**
Located at 4990 Rhode Island Ave., Hyattsville, Maryland 20781

Case No. 5E00705808

**STATE OF MARYLAND**      **VS.**      **WORTHINGTON, ADRIENNE MICHELLE**
664 PALMERTON TER
HYATTSVILLE, MD 20785-0000

CC#: 21-0059714          SID: 0002709985
LID: X0893683            DL#:
Race: 1   Sex: M   Ht: 5' 08"   Wt: 225   Hair: BLK   Eyes: BRN
DOB: 09/05/1967   Home phone: 202-556-5251   Cellphone:

Charge | Statute | AR/Citation | CJISCode                    Charge | Statute | AR/Citation | CJISCode
ASSAULT-SEC DEGREE | CR 3 203 |  | 1 1415

*Def to come in + sign UPB + Supervisor needs to do release + fax both to Jail Records 301-952-7159 Thanks, Lori*

**RELEASE FROM COMMITMENT**

TO:  PRINCE GEORGES COUNTY CORRECTIONAL CENTER
     13400 DILLE DRIVE      UPPER MARLBORO   20772

YOU ARE HEREBY COMMANDED to release the above-named Defendant
subject to the following condition(s)/restriction(s):

NO CONTACT W/ KEON MATHIAS
STAY AWAY FRM MR.MATHIAS'S RESIDEN/PLACE
OF EMPLYMNT/DEF REQUIRED TO LIVE AT
RISTORE COMMUNITY DEVELOPMENT CORP. 4818
ST.BARNABAS RD, TEMPLE HILLS,MD

Unsecured Personal Bond in the amount of  $15,000.00 was posted by: _____

☐ Fine of $_____ , the payment of which was in default, has now been paid.

**NOTE: This release applies only to the case listed above.  Before release check for detainers.**
**If Defendant is committed for any other reason, hold Defendant pursuant to that commitment.**

Date: 02/09/2022  Time:  1:24 PM          Judge/Clerk: *Robert Prender*

**NOTICE TO DEFENDANT**
**You are scheduled for a Trial/Hearing on 04/05/2022 at 8:45AM in Court Room 3**

Tracking No:  180001550304          CC-DC-CR-013(Rev. 06/15)

Rev. 2/09                              **JA800**



# DISTRICT COURT OF MARYLAND FOR Prince George's County
Located at 4990 Rhode Island Ave., Hyattsville, Maryland 20781

Case No. 5E00705808

| | | |
|---|---|---|
| **STATE OF MARYLAND** | **VS.** | **WORTHINGTON, ADRIENNE MICHELLE** |

664 PALMERTON TER
HYATTSVILLE, MD 20785-0000

**Hearing or Trial Date: 04/05/2022
at 08:45 AM in Courtroom 3**

CC#: 21-0059714          SID: 0002709985
LID: X0893683             DL#:
Race: I  Sex: M    Ht: 5' 08"   Wt: 225   Hair: BLK  Eyes: BRN
DOB: 09/05/1967   Home phone: 202-556-5251   Cellphone:

| **Charge \| Statute \| AR/Citation \| CJISCode** | **Charge \| Statute \| AR/Citation \| CJISCode** |
|---|---|
| ASSAULT-SEC DEGREE \| CR 3 203 \| \| 1 1415 | |

## BAIL BOND

KNOW ALL PERSONS BY THESE PRESENTS:

That I/we, the undersigned, jointly and severally acknowledge that I/we, our personal representatives, successors, and assigns are held and firmly bound unto the State of Maryland in the penalty sum of $15,000.00 (Fifteen Thousand Dollars)
without collateral security.

THE CONDITION OF THIS BOND IS that the Defendant personally appear, as required, in any court in which the charges are pending, or in which a charging document may be filed based on the same acts or transactions, or to which action may be transferred, removed, or, if from the District Court, appealed.

If, however, the Defendant fails to perform the foregoing condition, this bond shall be forfeited forthwith for payment of the above penalty sum in accordance with law.

IT IS AGREED AND UNDERSTOOD that this bond shall continue in full force and effect until discharged pursuant of Rule 4-217.

RELEASE CONDITIONS:
The Defendant above is subject to the following condition(s)/ restriction(s):
NO CONTACT W/ KEON MATHIAS
STAY AWAY FRM MR.MATHIAS'S RESIDEN/PLACE
OF EMPLYMNT/DEF REQUIRED TO LIVE AT
RISTORE COMMUNITY DEVELOPMENT CORP. 4818
ST.BARNABAS RD, TEMPLE HILLS,MD

IN WITNESS WHEREOF, these presents have been executed under seal this 09th day of February, 2022.

Defendant: _Adrienne Worthington_ (SEAL)   Address: _664 Palmerton Ter_ (SEAL)
                                                                              Hyattsville MD 20785
                                                                              Defendant

Pers.Surety/Individual:_____(SEAL)   Address:_____
                                                                                         Surety

Surety/Ins:_____(SEAL)   Address:_____
                                                                        Surety-Insurer

By Bondsman:_____(SEAL)   Address:_____
                                                                           Power of Attorney No.

SIGNED, sealed, and acknowledged before me:
Date: 02/09/2022                              Clerk: _Robert Prenden_
                                                         For Prince George's County

**Tracking No. 180001550304**

CC-DC-CR-008 (Rev. 07/2017)                    **JA801**



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 5E00705808

## STATE OF MARYLAND  VS.  WORTHINGTON, ADRIENNE MICHELLE
664 PALMERTON TER
HYATTSVILLE MD 207850000

| CC #:21-0059714 | State ID:0002709985 | LocID:X0893683 |
|---|---|---|
| Eyes: BRN        Hair: BLK        Height: 5'08" | | Weight: 225 lb. |
| Race: I        Sex:M        DOB:09/05/1967        DL #: | | |

**Charge | Statute | AR/Citation**
ASSAULT-SEC DEGREE | 1 1415 CR3203 |

**Charge | Statute | AR/Citation**

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
  13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant
who is charged with the offense(s) listed above.

Trial/Hearing was held by Judge ROBERT WILSON HEFFRON and the Defendant is committed
In default of  $15,000.00 bail, unsecured personal bond required.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
NO CONTACT W/ KEON MATHIAS
STAY AWAY FRM MR.MATHIAS'S RESIDEN/PLACE
OF EMPLYMNT/DEF REQUIRED TO LIVE AT
RISTORE COMMUNITY DEVELOPMENT CORP. 4818
ST.BARNABAS RD, TEMPLE HILLS,MD

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 04/05/2022 at 8:45 a.m. in Court Room 3   at the District Court of Maryland For PRINCE GEORGE'S COUNTY
located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781

Date: 02/09/2022   Time: 10:35 a.m.       JUDGE/CLERK: _____

**Tracking No. 180001550304**

CC-DC-CR-028 (Rev. 07/2017)                    **JA802**                    Robert W. Heffron

Date: 02/09/2022
Room: 5          Time: 10:35 AM

Case No. 5E00705808





# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

## STATE OF MARYLAND VS. WORTHINGTON, ADRIENNE MICHELLE

664 PALMERTON TER
HYATTSVILLE MD 207850000

| | | |
|---|---|---|
| CC #:21-0059714 | State ID:0002709985 | LocID:X0893683 |
| Eyes: BRN  Hair: BL | Height: 5'08" | Weight: 225 lb. |
| Race: 1   Sex: M | DOB:09/05/1967 | DL #: |

## DEFENDANT TRIAL SUMMARY

The above case was POSTPONED today, 02/09/2022.

REASON: BOND HEARING HELD .

YOUR NEXT COURT APPEARANCE IS SCHEDULED FOR TRIAL on 04/05/2022 at 08:45 a.m. in Room 3 at the District Court of Maryland for PRINCE GEORGE'S COUNTY located at 4990 RHODE ISLAND AVE, HYATTSVILLE, MD 20781.

THE COURT HAS REVISED YOUR BAIL:
Ordered that you be held in default of $15,000.00 bond,, to be posted without collateral security (unsecured personal bond).
AND THE FOLLOWING CONDITIONS/RESTRICTIONS WERE IMPOSED:
NO CONTACT W/ KEON MATHIAS
STAY AWAY FRM MR.MATHIAS'S RESIDEN/PLACE
OF EMPLYMNT/DEF REQUIRED TO LIVE AT
RISTORE COMMUNITY DEVELOPMENT CORP. 4818
ST.BARNABAS RD, TEMPLE HILLS,MD

If you have been convicted of, pled guilty to, or received probation before judgment for a crime, it may be unlawful for you to possess or purchase a firearm, including a rifle, shotgun, pistol, revolver, or ammunition, pursuant to state and/or federal law. If you have any questions about whether it is now illegal for you to possess or purchase a firearm, you should immediately consult an attorney. For additional information about these prohibitions or the surrender of firearms (even if you are currently incarcerated), please consult http://www.marylandattorneygeneral.gov/Forms/ Form_77R_gun_questions.pdf or contact Maryland State Police at: 1-410-653-4500.

You may be entitled to expunge this record and any DNA sample and DNA record relating to the charge or charges against you. Effective October 1, 2021, certain cases shall be automatically expunged after three years if all charges resulted in any combination of acquittal, dismissal, not guilty or nolle prosequi, or you may file for expungement of those charges within three years upon completion of the attached Petition for Expungement of Records and General Waiver and Release. To learn more about which cases may be eligible for expungement, see the Expungement Brochure available in the Clerk's office or visit the Maryland Courts website: www.mdcourts.gov/legalhelp/expungement

02/09/2022     Defendant_____          (WORTHINGTON, ADRIENNE MICHELLE)

Tracking No. 180001550304

**JA803**



**DISTRICT COURT OF MARYLAND FOR Prince George's County**

**WORTHINGTON, ADRIENNE MICHELLE**

Case No. 5E00705808

664 PALMERTON TER
HYATTSVILLE, MD 20785-0000

Sex: M   Ht: 5' 08"   Wt: 225   Race: 1   Eyes: BRN   Hair: BLK
DOB: 09/05/1967   Home phone: 202-556-5251   Cellphone:
CC#: 21-0059714   LID: X0893683   SID: 0002709985
DL#:                    ☐ DEFENDANT IS A MINOR

CHARGE 002 OF 1   1 1415   CR3203   10 Y &/or $2,500.00   ASSAULT-SEC DEGREE

## THE COURT ON THE DATE SHOWN BELOW ---
☐ RIGHTS GIVEN BY VIDEO

☐ MADE CERTAIN THE DEFENDANT RECEIVED COPY OF CHARGING DOCUMENT
☐ INFORMED DEFENDANT OF RIGHT TO COUNSEL AND IMPORTANCE OF ASSISTANCE OF COUNSEL      ☐ BAIL REVIEW POSTPONED
   ☐ DEFENDANT WAIVED ATTORNEY FOR BAIL REVIEW
   ☐ THE PUBLIC DEFENDER PROVIDED PROVISIONAL REPRESENTATION AT THE BAIL REVIEW
   ☐ REPRESENTED BY:_____
☐ DEFENDANT ADVISED OF RIGHT AT        ☐ INITIAL APPEARANCE        ☐ PRELIMINARY INQUIRY
☐ REQUIRED DEFENDANT TO READ OR ☐ READ TO DEFENDANT THE NOTICE OF RIGHTS TO COUNSEL.
☐ ADVISED DEFENDANT OF THE NATURE OF THE CHARGES AND ALLOWABLE AND ANY MANDATORY OR ENHANCED PENALTIES
☐ ADVISED DEFENDANT THAT MAKING NEXT APPEARANCE WITHOUT COUNSEL COULD BE A WAIVER
   ☐ REMINDED THE DEFENDANT THAT REPRESENTATION BY THE OPD AT BAIL REVIEW ENDS WITH THE BAIL REVIEW
☐ ADVISED FELONY DEFENDANT OF RIGHT TO PRELIMINARY HEARING
   ☐ DEFENDANT REQUESTED PRELIMINARY HEARING AT THIS TIME
☐ ADVISED DEFENDANT OF RIGHT TO JURY TRIAL
☐ RELEASED DEFENDANT ON OWN RECOGNIZANCE
☐ HOLD WITHOUT BOND
☐ ORDERED BAIL TO REMAIN SAME        ☐ CONDITION(S)/RESTRICTION(S) TO REMAIN THE SAME
☐ REVISED BAIL $_____ .00    ☐ CASH (MAY BE POSTED BY THIRD PARTY)    ☐ FAILURE TO PAY SUPPORT, TO BE CASH,
   POSTED BY DEFENDANT ONLY        ☐ PCT____%        ☒ UNSECURED PERSONAL BOND $ 15,000 .00
☐ REINSTATED BAIL $_____ .00    POSTED ON ___/___/_____
☐ COMMITTED IN DEFAULT OF BOND
☐ DEFENDANT IS A MINOR AND
   ☐ SHALL BE HELD IN A SECURE JUVENILE FACILITY PROVIDED DEPARTMENT OF JUVENILE SERVICES DETERMINES THERE IS AVAILABLE CAPACITY TO HOLD DEFENDANT.
   ☐ SHALL NOT BE HELD IN A SECURE JUVENILE FACILITY. COURT FINDS THAT DETENTION IN A SECURE JUVENILE FACILITY WILL POSE A RISK OF HARM TO THE MINOR DEFENDANT
   OR OTHERS FOR THE FOLLOWING REASONS: _____

*(handwritten in right margin:)* PD Cindy Nighman appeared

## IMPOSED THE FOLLOWING CONDITION(S)/RESTRICTION(S) ON THE DEFENDANT:
☒ REQUIRED CONDITIONS OF RELEASE: 1) DEFENDANT WILL NOT ENGAGE IN ANY CRIMINAL CONDUCT DURING THE PERIOD OF PRETRIAL
   RELEASE AND 2) THE DEFENDANT WILL APPEAR IN COURT WHEN REQUIRED TO DO SO.
☐ BOND TO BE CO-SIGNED BY:_____
☐ COMPLETE PTSU INTERVIEW
☐ PROOF OF ADDRESS TO        ☐ PTSU        ☐ COMMISSIONER BEFORE RELEASE
☐ PTSU TO VERIFY ADDRESS BEFORE RELEASE
☐ LIVE AT ADDRESS THAT PTSU HAS VERIFIED
☐ PROOF OF IDENTITY TO        ☐ PTSU        ☐ COMMISSIONER BEFORE RELEASE
☐ SURRENDER CURRENT PASSPORT/ALL TRAVEL DOCUMENTS TO THE COURT BEFORE RELEASE
☐ SUBSTANCE ABUSE TREATMENT IF_____ DEEMS NECESSARY
☐ MENTAL HEALTH TREATMENT IF PTSU DEEMS NECESSARY    *Keon Mathias*
☒ NO CONTACT WITH VICTIMS/STATE'S WITNESSES/CO-DEFENDANTS
☒ STAY AWAY FROM _Mr Mathias residence & place of employment_
   ☐ USE ELECTRONIC MONITORING TO CONFIRM AREA OF RESTRICTION
☐ CURFEW: AS SET BY PTSU OR_____
☐ REPORT TO PROBATION OFFICER NEXT BUSINESS DAY AFTER RELEASE
☐ TRANSFER DIRECTLY TO_____ BY_____ WHEN BED AVAILABLE
☐ RELEASE TO THE FOLLOWING RESIDENTIAL TREATMENT PROGRAM_____
   ☐ REFERRED DEFENDANT FOR COMPETENCY EVALUATION        ☐ OUT-PATIENT
TRIAL SCHEDULED:  DATE:_____  TIME:_____  LOC:_____  ROOM:_____
   ☐ BAIL REVIEW    ☐ PREL. INQUIRY    ☐ PREL.HEARING    ☐ TRIAL    ☐ VOP    ☐ SENTENCING
☐ PLACED IN CUSTODY OF_____
☐ PRE-TRIAL SUPERVISION BY_____
☐ ALCOHOL SCREENING        ☐ DRUG SCREENING
☐ ALCOHOL PROGRAM        ☐ DRUG PROGRAM
**Prince George's County Only:**
☐ GPS TRACKING: $_____    $_____ EFF ASSESSED        ☐ FEE WAIVED
☒ OTHER: _Def. required to live @ Restore Community Development Corp. Temple Hills MD_   *4818 St Barnabas Rd. Temple Hills MD*

_2-9-2022_                        *(signature)*                        _909_
Date                                Judge                                ID Number

**JA804**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

### PLAINTIFFS' SUPPLEMENTAL NOTICE OF FILING COURT RECORDS

Pursuant to the Court's Order, Doc. 80, Plaintiffs submit the attached records regarding the named plaintiffs' state criminal court proceedings as a supplement to their prior submission, Doc. 83. Plaintiffs received the attached records (and, where needed, transcribed them) subsequent to their prior submission. With one exception,[1] this production completes Plaintiffs' submission of documents pursuant to the Court's Order.

For the Court's convenience, Plaintiffs have updated the index provided with their previous filing on the following pages of this Notice.

---

[1] Plaintiffs have not yet received recordings of Plaintiff Robert Frazier's District Court hearings. Plaintiffs anticipate receiving the three relevant recordings in January 2023, at which point they will promptly transcribe them and produce the transcripts to the Court.

1

**JA805**

<table>
<tr><td colspan="4" align="center"><strong>Plaintiff: Robert Frazier</strong><br>Status: Released on August 26, 2022<br>District Court Case No. 3E00714640 (Closed, Case Indicted)<br>Circuit Court Case No. CT220860X (Open, Awaiting Trial)</td></tr>
</table>

| Date | Record Type | Judge | Page Nos. |
|---|---|---|---|
| 05/31/22 | Pretrial Intake Sheet | -- | Doc. 83-1 at 2-3. |
| 05/31/22 | Initial Bail Review Transcript | District Judge Bryon Bereano (Defendant) | *See* n.1. |
| 05/31/22 | Initial Bail Order | Judge Bereano | Ex. A at 2. |
| 06/06/22 | Motion for Bail Review | Notes by District Judge Robert Heffron (Defendant) | Doc. 83-1 at 4. |
| 06/15/22 | Motion for Bail Review | -- | Doc. 83-1 at 5-7. |
| 06/21/22 | Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | *See* n.1. |
| 06/21/22 | Bail Order | Judge Clark-Edwards | Ex. A at 3. |
| 06/28/22 | Preliminary Hearing | District Judge Brian Denton (Defendant) | *See* n.1. |
| 06/28/22 | Bail Order | Judge Denton | Ex. A at 4. |
| 07/08/22 | Motion for Bail Review | -- | Doc. 83-1 at 8-11. |

**JA806**

| 07/14/22 | Order Setting Bail Review | Hearing never occurred | Ex. A at 5. |
| 07/18/22 | Motion for Bail Review (refiled in Circuit Court) | -- | Doc. 83-1 at 12-15. |
| 08/01/22 | Order | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-1 at 16. |
| 08/16/22 | Bail Review Transcript | Circuit Judge Lawrence Hill (non-Defendant) | Doc. 83-1 at 17-57. |
| 08/16/22 | Bail Order | Judge Hill | Doc. 83-1 at 58. |
| 08/25/22 | Bail Review Transcript | Judge Hill | Doc. 83-1 at 59-70. |
| 08/25/22 | Bail Order | Judge Hill | Doc. 83-1 at 71-72. |

| **Plaintiff: Anibal Hernandez**<br>Status: Released on July 25, 2022<br>District Court Case No. 5E00715391 (Closed, Information Filed)<br>Circuit Court Case No. CT221365X (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/24/22 | Pretrial Intake Sheet | -- | Doc. 83-2 at 2. |
| 06/24/22 | Initial Bail Review Transcript | District Judge LaKeecia Allen (Defendant) | Ex. B at 2-14. |
| 06/24/22 | Initial Bail Order | Judge Allen | Doc. 83-2 at 3. |

**JA807**

| 07/12/22 | Motion to Show Cause | -- | Doc. 83-2 at 4-12. |
| 07/13/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-2 at 13-14. |
| 07/25/22 | Bail Review Transcript | District Judge Katina Steuart (non-Defendant) | Ex. B at 15-71. |
| 07/25/22 | Bail Order | Judge Steuart | Doc. 83-2 at 15-16. |

| **Plaintiff D.P.**<br>Status: Released on August 30, 2022<br>District Court Case No. 3E00715403 (Closed, Indicted)<br>Circuit Court Case No. CT221051X (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/21/22 | Pretrial Intake Sheet | -- | Doc. 83-3 at 2. |
| 06/21/22 | Initial Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | The District Court Clerk would not permit Plaintiffs' counsel to request this recording as juvenile proceedings are sealed. |
| 06/21/22 | Initial Bail Order | Judge Clark-Edwards | Doc. 83-3 at 3-4. |
| 06/28/22 | Bail Review Transcript | District Judge Brian Denton (Defendant) | The District Court Clerk would not permit Plaintiffs' counsel to request this recording as juvenile proceedings are sealed. |
| 06/28/22 | Bail Order | Judge Denton | Doc. 83-3 at 5. |

4

**JA808**

| 07/28/22 | Motion for Bail Review | -- | Doc. 83-3 at 6-9. |
|---|---|---|---|
| 08/01/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-3 at 10-11. |
| 08/17/22 | Bail Review Transcript | -- | The clerk would not permit Plaintiffs' counsel to request this recording as juvenile proceedings are sealed. |
| 08/24/22 | Bail Review Transcript | Circuit Judge Wytonja Curry (non-Defendant) | The clerk would not permit Plaintiffs' counsel to request this recording as juvenile proceedings are sealed. |
| 08/24/22 | Bail Order | Judge Curry | The clerk stated they were unable to locate D.P.'s case file. |

| **Plaintiff Christopher Butler**<br>Status: Detained since October 27, 2021<br>District Court Case No. 5E00704415 (Closed, Indicted)<br>Circuit Court Case No. CT211239X (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 10/28/21 | Pretrial Intake Sheet | -- | Doc. 83-4 at 2. |
| 10/28/21 | Initial Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | District Court Clerk would not accept Plaintiffs' request for this recording. |
| 10/28/21 | Initial Bail Order | Judge Clark-Edwards | Doc. 83-4 at 3-5. |

5

**JA809**

| 10/29/21 | Bail Review Transcript | District Judge Clayton Aarons (non-Defendant). | District Court Clerk would not accept Plaintiffs' request for this recording. |
|----------|------------------------|------------------------------------------------|------------------------------------------------------------------------------|
| 10/29/21 | Bail Order | Judge Aarons | Doc. 83-4 at 6-8. |
| 01/06/22 | Motion for Bail Review | -- | Doc. 83-4 at 9-10. |
| 01/18/22 | Order | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-4 at 11. |
| 02/18/22 | Bail Review Transcript | Circuit Judge Cathy Serrette (Defendant) | Doc. 83-4 at 12-46. |
| 02/18/22 | Bail Order | Judge Serrette | Doc. 83-4 at 47. |
| 06/29/22 | Status Hearing Transcript | Judge Serrette | Doc. 83-4 at 48-62. |
| 07/25/22 | Bail Review Transcript | Circuit Judge Krystal Alves (non-Defendant) | Doc. 83-4 at 63-67. |
| 07/26/22 | Bail Review Transcript | Judge Alves | Doc. 83-4 at 68-87. |
| 07/28/22 | Bail Review Transcript | Judge Alves | Doc. 83-4 at 88-105. |

**JA810**

| | **Plaintiff Miramba Williams**<br>Status: Detained since July 1, 2022<br>District Court Case No. 2E00715535 (Closed, Indicted)<br>Circuit Court Case No. C-16-CR-22-000236 (Open, Awaiting Trial) | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 07/05/22 | Pretrial Intake Sheet | -- | Doc. 83-5 at 2. |
| 07/05/22 | Initial Bail Review Transcript | District Judge Gregory Powell (Defendant) | Ex. C at 2-9. |
| 07/05/22 | Bail Order | Judge Powell | Doc. 83-5 at 3-4. |
| 07/15/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-5 at 5-6. |
| 08/12/22 | Bail Review Transcript | District Judge Patrice Lewis (non-Defendant) | Ex. C at 10-33. |
| 08/12/22 | Bail Order | Judge Lewis | Doc. 83-5 at 7. |

| | **Plaintiff Elmer Laguan-Salinas**<br>Status: Released on December 6, 2022<br>District Court Case No. 1E00721379 (Closed, Indicted)<br>Circuit Court Case No. CT221040X (Open, Awaiting Trial) | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 03/17/22 | Pretrial Intake Sheet | -- | Doc. 83-6 at 2-3. |

**JA811**

| 03/17/22 | Initial Bail Review Transcript | District Judge Stacey Cobb Smith (Defendant) | Ex. D at 2-15. |
|---|---|---|---|
| 03/17/22 | Initial Bail Order | Judge Cobb Smith | Doc. 83-6 at 4-5. |
| 04/15/22 | Bail Order[2] | District Judge Scott Carrington (Defendant) | Doc. 83-6 at 6-7. |
| 05/12/22 | Bail Review Transcript | District Judge John Bielec (Defendant) | Ex. D at 16-35. |
| 05/12/22 | Bail Order | Judge Bielec | Doc. 83-6 at 8-9. |
| 06/14/22 | Motion for Bail Review | -- | Doc. 83-6 at 10-11. |
| 06/17/22 | Bail Review Transcript | District Judge Patrice Lewis (non-Defendant) | Ex. D at 36-58. |
| 06/17/22 | Bail Order | Judge Lewis | Doc. 83-6 at 12-15. |
| 08/16/22 | Indictment | -- | Doc. 83-6 at 16-19. |
| 10/06/22 | Motion for Bail Review | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-6 at 20-21. |
| 11/10/22 | Bail Review Transcript | Judge Rattal | Doc. 83-6 at 22-26. |

---

[2] Plaintiffs have not provided a transcript of Mr. Laguan-Salinas's April 15, 2022 hearing as it was a Preliminary Hearing at which bail was not discussed on the record.

<table>
<tr><td colspan="4" align="center"><b>Plaintiff Donnell Davis</b><br>Status: Case Closed<br>District Court Case No. 3E00713044 (Not Guilty)</td></tr>
<tr><th>Date</th><th>Record Type</th><th>Judge</th><th>Page Nos.</th></tr>
<tr><td>10/09/20</td><td>Pretrial Intake Sheet</td><td>--</td><td>Doc. 83-7 at 2-3.</td></tr>
<tr><td>10/09/20</td><td>Initial Bail Review Transcript</td><td>District Judge Robert Heffron (Defendant)</td><td>Ex. E at 2-12.</td></tr>
<tr><td>10/09/20</td><td>Initial Bail Order</td><td>Judge Heffron</td><td>Doc. 83-7 at 4-5.</td></tr>
<tr><td>10/28/20</td><td>Notice of Pretrial Ineligibility</td><td>--</td><td>Doc. 83-7 at 6-7.</td></tr>
<tr><td>11/09/20</td><td>Preliminary Hearing Transcript</td><td>Judge Heffron</td><td>Ex. E at 13-19.</td></tr>
<tr><td>11/09/20</td><td>Bail Order</td><td>Judge Heffron</td><td>Doc. 83-7 at 8-9.</td></tr>
<tr><td>12/03/20</td><td>Notice of Pretrial Ineligibility</td><td>--</td><td>Doc. 83-7 at 10-11.</td></tr>
<tr><td>12/10/20</td><td>Motion for Bail Review</td><td>--</td><td>Doc. 83-7 at 12-13.</td></tr>
<tr><td>12/16/20</td><td>Bail Review Transcript</td><td>District Judge Stacey Cobb Smith (Defendant)</td><td>Ex. E at 20-32.</td></tr>
<tr><td>12/16/20</td><td>Bail Order</td><td>Judge Cobb Smith</td><td>Doc. 83-7 at 14-15.</td></tr>
</table>

| | **Plaintiff Leslie Sharp**<br>Status: Case Closed<br>District Court Case No. 3E00701207 (State Dropped All Charges) | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/14/21 | Pretrial Intake Sheet | -- | Doc. 83-8 at 2-3. |
| 06/14/21 | Initial Bail Review Transcript | District Judge Brian Denton (Defendant) | The District Court Clerk would not accept Plaintiffs' request. |
| 06/14/21 | Initial Bail Order | Judge Denton | The District Court Clerk stated they were unable to locate Mr. Sharp's file. |
| 06/16/21 | Motion for Bail Review | -- | Doc. 83-8 at 4-5. |
| 06/24/21 | Bail Review Transcript | District Judge Scott Carrington (Defendant) | Ex. F at 2-14. |
| 06/24/21 | Bail Order | Judge Carrington | Doc. 83-8 at 6-7. |
| 06/30/21 | Notice of Pretrial Ineligibility | -- | Doc. 83-8 at 8-9. |
| 07/07/21 | Motion for Bail Review | -- | Doc. 83-8 at 10-11. |
| 07/14/21 | Bail Review Transcript | District Judge Donnaka Varner Lewis (Defendant) | Ex. F at 15-25. |
| 07/14/21 | Bail Order | Judge Varner Lewis | Doc. 83-8 at 12-13. |

**JA814**

| **Plaintiff Adrienne Worthington**<br>Status: Case Closed<br>District Court Case No. 5E00705808 (State Dropped All Charges) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 12/27/21 | Initial Bail Review Transcript | District Judge Wennesa Bell Snoddy (non-Defendant) | Ex. G at 2-11. |
| 12/27/21 | Initial Bail Order | Judge Bell Snoddy | Doc. 83-9 at 2-4. |
| 12/28/21 | Pretrial Intake Sheet | -- | Doc. 83-9 at 5-6. |
| 12/28/21 | Bail Review Transcript | District Judge John Bielec (Defendant) | Ex. G at 12-24. |
| 12/28/21 | Bail Order | Judge Bielec | Doc. 83-9 at 7-9. |
| 12/29/21 | Motion for Bail Review | -- | Doc. 83-9 at 10-12. |
| 01/24/22[3] | Trial Summary | -- | Doc. 83-9 at 13-14. |
| 02/01/22 | Bail Order | -- | Doc. 83-9 at 15. |
| 02/02/22 | Motion for Bail Review | -- | Doc. 83-9 at 16-18. |
| 02/09/22 | Bail Review Transcript | District Judge Robert Heffron (Defendant) | Ex. G at 25-40. |

---

[3] Plaintiffs have not provided a transcript of Ms. Worthington's January 24, 2022 hearing as it was a Preliminary Hearing at which bail was not discussed on the record.

**JA815**

| 02/09/22 | Bail Order | Judge Heffron | Doc. 83-9 at 19-23. |

**JA816**

Respectfully submitted this 16th day of December, 2022.

/s/ Ellora Thadaney Israni
Ellora Thadaney Israni*
Ryan Downer*
Jeremy D. Cutting*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org


/s/ Seth Wayne
Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu




* admitted *pro hac vice*

*Counsel for Plaintiffs*

Edward Williams (D. Md. Bar 20944)
Matthew Martens*
Thomas Bredar (D. Md. Bar 21635)
Ellen Connell*
Donna Farag*
Ayana Williams*
Sonika Data*
Yoseph Desta*
Britany Riley-Swanbeck (D. Md. Bar 21843)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6487
ed.williams@wilmerhale.com
matthew.martens@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com

13

**JA817**

# Exhibit A
# Robert Frazier
# Supplemental Case Docs.



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD  20772

Case No. 3E00714640

## STATE OF MARYLAND  VS.   FRAZIER, ROBERT SYLVESTER

11 61ST NE #102
WASHINGTON DC 200190000

| | | | |
|---|---|---|---|
| CC #:22-0025821 | | State ID: | LocID: |
| Eyes: BRN | Hair: OTH | Height: 5'09" | Weight: 140 lb. |
| Race: I | Sex:M | DOB:03/09/1982 | DL #:4810774 DC |

**Charge | Statute | AR/Citation**
HANDGUN IN VEHICLE | 1 0175 CR4203 |
LOADED HANDGUN IN VEHICLE | 1 1454 CR4203(a)(1)(v) |
FIREARM POSS W/FEL CONVICT | 1 1609 PS5133c |
KNOWINGLY DRIVING UNINSURED VEHICLE | TA17107  | 030F0JJ6
DRIVING/ATTEMPTING DRIVE MOTOR VEH. ON HWY W/O REQ. LICENSE AND AUTHORIZATION | TA16101   A  | 030H0JJ6

**Charge | Statute | AR/Citation**
KNOW ALTER FIREARM ID NUMBER | 1 1612 PS5144a(2) |
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
　　　13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Bail review was held by Judge BRYON SETH BEREANO and the Defendant is committed
Without Bail.

**SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):**
　　　OR PTR LEVEL 4 OPTION; NO CONTACT W/VIC/
　　　STATES WITS/CO-DEF'S(N/A);STAY AWAY FROM
　　　LOCATION OF INCIDENT; NOT TO OWN/POSSESS
　　　OR BE NEAR ANY FIREARMS

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
　　　on 06/28/2022 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNT
　　　located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Date: 05/31/2022   Time: 3:01 p.m.

**Tracking No. 190001224711**

CC-DC-CR-028 (Rev. 07/2017)

JUDGE/CLERK:_____

Bryon S. Bereano

JA819



# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E00714640

## STATE OF MARYLAND  VS.  FRAZIER, ROBERT SYLVESTER
11 61ST NE #102
WASHINGTON DC 200190000

| CC #:22-0025821 | State ID: | LocID: |
|---|---|---|
| Eyes: BRN | Hair: OTH | Height: 5'09" | Weight: 140 lb. |
| Race: 1 | Sex:M   DOB:03/09/1982 | DL #:4810774 DC |

**Charge | Statute | AR/Citation**
HANDGUN IN VEHICLE | 1 0175 CR4203 |
LOADED HANDGUN IN VEHICLE | 1 1454 CR4203(a)(1)(v) |
FIREARM POSS W/FEL CONVICT | 1 1609 PS5133c |
KNOWINGLY DRIVING UNINSURED VEHICLE | TA17107 | 030F0JJ6
DRIVING/ATTEMPTING DRIVE MOTOR VEH. ON HWY W/O REQ. LICENSE AND AUTHORIZATION | TA16101   A | 030H0JJ6

**Charge | Statute | AR/Citation**
KNOW ALTER FIREARM ID NUMBER | 1 1612 PS5144(a)(2) |
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |

**More charges on continuation page.**

## COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
    13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Trial/Hearing was held by Judge ADA ELIZABETH CLARK-EDWARDS and the Defendant is committed Without Bail.

### SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):
COURT ORDERED PTR LEVEL #4
NO CONTACT W/VIC/STATES WITS/CO-DEF'S(N/A)
STAY AWAY FRMLOCATION OF INCIDENT
OR BE NEAR ANY FIREARMS
DEF IS NOT TO OWN/POSS ANY FIREARM/AMMO

### YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing
on 06/28/2022 at 8:45 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUNTY located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Charge | Statue | AR/Citation                    Charge | Statue | AR/Citation

Date: 06/21/2022   Time: 1:13 p.m.        JUDGE/~~CLERK~~: _____

**Tracking No. 190001224711**

CC-DC-CR-028 (Rev. 07/2017)              **JA820**        Judge Ada Clark Edwards




# DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY
Located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Case No. 3E0071464C

## STATE OF MARYLAND VS. FRAZIER, ROBERT SYLVESTER

11 61ST NE #102
WASHINGTON DC 200190000

| | | |
|---|---|---|
| CC #:22-0025821 | State ID: | LocID: |
| Eyes: BRN | Hair: OTH | Height: 5'09" | Weight: 140 lb. |
| Race: 1 | Sex: M | DOB: 03/09/1982 | DL #: 4810774 DC |

**Charge | Statute | AR/Citation**

HANDGUN IN VEHICLE | 1 0175 CR4203 |
LOADED HANDGUN IN VEHICLE | 1 1454 CR4203(a)(1)(v) |
FIREARM POSS W/FEL CONVICT | 1 1609 PS5133c |
KNOWINGLY DRIVING UNINSURED VEHICLE | TA17107 | 030F0JJ6
DRIVING/ATTEMPTING DRIVE MOTOR VEH. ON HWY W/O REQ. LICENSE AND AUTHORIZATION | TA16101   A | 030H0JJ6

**Charge | Statute | AR/Citation**

KNOW ALTER FIREARM ID NUMBER | 1 1612 PS5144(a)(2) |
REG FIREARM:ILLEGAL POSSESSION | 1 1106 PS5133(b) |

**More charges on continuation page.**

# COMMITMENT PENDING HEARING

TO:  PRINCE GEORGES COUNTY DETENTION CENTER
   13400 DILLE RD., RECORDS DEPT, UPPER MARLBORO, 20772

YOU ARE HEREBY COMMANDED to receive from any officer the body of the above-named Defendant who is charged with the offense(s) listed above.

Trial/Hearing was held by Judge BRIAN CHARLES DENTON and the Defendant is committed Without Bail.

## SUBJECT TO THE FOLLOWING CONDITION(S)/RESTRICTION(S):

COURT ORDERED PTR LEVEL #4
NO CONTACT W/VIC/STATES WITS/CO-DEF'S(N/A)
STAY AWAY FRM LOCATION OF INCIDENT
OR BE NEAR ANY FIREARMS
DEF IS NOT TO OWN/POSS ANY FIREARM/AMMO

**YOU ARE FURTHER COMMANDED to produce the Defendant for Trial/Hearing**
on 07/28/2022 at 10:15 a.m. in Court Room 261 at the District Court of Maryland For PRINCE GEORGE'S COUN'
located at COURTHOUSE, 14735 MAIN ST., UPPER MARLBORO, MD 20772

Charge | Statue | AR/Citation                                    Charge | Statue | AR/Citation

Date: 06/28/2022  Time: 10:21 a.m.          JUDGE/CLERK: _____

**Tracking No. 190001224711**

CC-DC-CR-028 (Rev. 07/2017)          **JA821**          Judge Brian C. Denton

# IN THE DISTRICT COURT OF MARYLAND FOR PRINCE GEORGE'S COUNTY

STATE OF MARYLAND       :

                            :

      **v.**                    :       3E00714640

                            :

ROBERT FRAZIER           :

---

## O R D E R

UPON CONSIDERATION of the foregoing Motion for Modification of Pretrial Release

Conditions, it is this __ 14 __ day of ___July___ _____, 2022, hereby

~~ORDERED that the Defendant be released on an unsecured bond of _____; special~~

~~condition to report for electronic monitoring within twenty-four hours of release from Virginia.~~

SET FOR FURTHER HEARING ASAP

_____
             J U D G E

**Copies to:**

Jeff Campbell, Assistant Public Defender
Office of the State's Attorney

4

**JA822**

# Exhibit B
# Anibal Hernandez
# Supplemental Case Docs.



# Transcript of Hearing In Re: Anibal Hernandez

**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6

7

8

9

10                      Recorded Hearing

11                 In Re: Anibal Hernandez

12

13

14

15

16

17

18

19

20   Job No.:  472109

21   Pages 1 - 8

22   Transcribed by:  Jackie Scheer

**JA825**

```
 1              P R O C E E D I N G S
 2              THE CLERK:  Anibal Hernandez, 58715391.
 3              MR. RUBIN:  (Incomprehensible) Rubin
 4    (phonetic) on behalf of Mr. Hernandez.
 5              THE COURT:  All right.  Good afternoon.
 6    Mr. Hernandez, if that's you, give us a thumbs up.
 7    All right.  You're currently being held on a no bond
 8    status.  You have a final qualification with the
 9    public defender.  Your next hearing is July 25th at
10    8:45 in courtroom 261.
11              Mr. Rubin, are you entering and waiving?
12              MR. RUBIN:  Yeah, yes, Judge, we are.
13              THE COURT:  All right.  Give me one
14    second.
15              All right.  I'll hear from you, Counsel.
16              MR. RUBIN:  Okay.  Judge, Mr. Hernandez
17    is 29 years old and he lives -- well, with -- with
18    his partner who's on the line, Ms. Crystal Marquez.
19    And --
20              THE COURT:  -- (sneeze) excuse me.
21              MR. RUBIN:  -- (incomprehensible) and the
22    financial support for the family is -- is
```

1    Mr. Hernandez, who works on -- as an installer of

2    office furniture.  Looking at his pre-trial sheet,

3    we see that he has no failures to appear and he has

4    just one prior conviction and that's for a drunken

5    driving conviction.  In other words, by all

6    accounts, Mr. Hernandez is a law-abiding father,

7    employee, and -- and partner.

8              Looking at the state of the charges,

9    Mr. Hernandez is not charged with harming anyone and

10   it's a long and detailed statement of charges.

11   Obviously if we're (incomprehensible) where

12   Mr. Hernandez was or for the package that they were

13   looking at was not addressed to him.  And the

14   statement of charges acknowledges that at least five

15   people lived there.  It was a home with -- with

16   multiple rooms.  Statement of charges alleges that

17   in the room that Mr. Hernandez was staying in where

18   there was also another person, they found a handgun.

19   Serial number -- doesn't say that it was stolen,

20   doesn't say that it was ever (incomprehensible),

21   doesn't say that there it was (incomprehensible).

22   Says there was motive but it doesn't say that

1    anything was (incomprehensible).  And then it says

2    that there was also found some marijuana and some

3    cocaine.  Certainly not in the amount that was -- in

4    the alleged package that was sent to another

5    individual.

6              And on -- on this basis, I'm asking the

7    court to set a -- to -- to set an unsecured bond for

8    Mr. Hernandez or we could (incomprehensible)

9    financial condition (incomprehensible) necessary

10   within (incomprehensible) 4 to 500 about.  So we --

11   we -- I understand that allegation of a gun

12   possession may give the court some trouble.  As I

13   said, the SOC doesn't specifically connect it to him

14   and he has no history as (incomprehensible).  You

15   know, more to the point, I think, you know,

16   yesterday certainly the United States Supreme Court

17   made clear states can and they have heightened

18   standard for concealed carry (incomprehensible) any

19   longer, and I don't think a single gun ownership in

20   this country is -- is futile under the law as an

21   issue of dangerousness.  It might be a licensing

22   violation.  That -- that may be the case.

1      What I -- I think that we look at
2 objectively here, we just don't see anything in the
3 pre-trial sheet or in the statement of charges that
4 indicate Mr. Hernandez is a -- is a dangerous
5 person.  I think, you know, simply associating in
6 the presence of a firearm with Mr. Hernandez and --
7 and jumping to the conclusion a danger is -- is
8 not -- is not a -- a well founded conclusion given
9 what his (incomprehensible).  And on those bases, we
10 would ask the court to allow him to be able to work
11 and to be able to raise his one-year-old and to be
12 able to support his partner while he defends
13 charges.  Thank you.
14      THE COURT:  Thank you.  Mr. State.
15      STATE'S ATTORNEY:  Thank you, Your Honor.
16 Your Honor, in this particular case, the -- looking
17 at the pretrial intake sheet, the defendant does not
18 have any prior failures to appear criminally, motor
19 vehicle, zero contempts.  There is a -- a firearm
20 count in the (incomprehensible) as well as five bags
21 of cocaine, digital scales, but in addition, this
22 was a controlled delivery of a package containing

1    260 (incomprehensible) of cocaine powder.  Now, I

2    will indicate that the package was addressed to an

3    Oscar Newton.  Very rarely in my years of

4    prosecuting (incomprehensible) are any narcotics in

5    a controlled delivery in a (incomprehensible) case

6    is a package ever sent to you.

7           However, as defense counsel was talking

8    about the gun, really I think the point that really

9    should at least make it on the defense side, and --

10   and, frankly, the state will adopt, is that the

11   defendant is not prohibited.  That certainly would

12   be one thing that I would be looking for, he is not

13   prohibited from having a -- a handgun.  The package

14   was delivered, however, it was not taken into his

15   bedroom.  Apparently it sat there for a while and

16   did not go.  So I can't really say to if it was

17   meant for Mr. Hernandez.  I can certainly speculate

18   that the cocaine was found in his room and that was

19   the intended recipient.  Or at the bond hearing

20   today (incomprehensible) not be prohibited, the

21   state does not object to defense counsel's

22   (incomprehensible).  Thank you.

1          THE COURT:  All right.  Thank you.

2    Having heard the comments and arguments of counsel,

3    considering the pretrial information sheet, the

4    statement of charges, and the Maryland rule 4-216,

5    4-216.1, the court is going to order pretrial at any

6    level.  If -- once pretrial makes this assessment

7    and releases the defendant, prior to that he has to

8    prove his address.  It's a pretrial, limit the

9    address that is verified.  Once it has been verified

10   by pretrial, he is to not own or possess any weapon,

11   ammunition, CDS of any kind.  All right.  Thank you.

12          (The recording was concluded.)

13

14

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER
2          I, Jackie A. Scheer, do hereby certify
3    that the foregoing transcript is a true and correct
4    record of the recorded proceedings; that said
5    proceedings were transcribed to the best of my
6    ability from the audio recording and supporting
7    information; and that I am neither counsel for,
8    related to, nor employed by any of the parties to
9    this case and have no interest, financial or
10   otherwise in its outcome.
11
12
13
14
15   _____
16        JACKIE A. SCHEER
17        NOVEMBER 22, 2022
18
19
20
21
22
```

| A |
|---|

**ability**
8:6
**able**
5:10, 5:11,
5:12
**about**
4:10, 6:8
**accounts**
3:6
**acknowledges**
3:14
**addition**
5:21
**address**
7:8, 7:9
**addressed**
3:13, 6:2
**adopt**
6:10
**afternoon**
2:5
**all**
2:5, 2:7, 2:13,
2:15, 3:5, 7:1,
7:11
**allegation**
4:11
**alleged**
4:4
**alleges**
3:16
**allow**
5:10
**also**
3:18, 4:2
**ammunition**
7:11
**amount**
4:3
**anibal**
1:11, 2:2
**another**
3:18, 4:4
**any**
4:18, 5:18,
6:4, 7:5, 7:10,

7:11, 8:8
**anyone**
3:9
**anything**
4:1, 5:2
**apparently**
6:15
**appear**
3:3, 5:18
**arguments**
7:2
**asking**
4:6
**assessment**
7:6
**associating**
5:5
**attorney**
5:15
**audio**
8:6

| B |
|---|

**bags**
5:20
**bases**
5:9
**basis**
4:6
**bedroom**
6:15
**been**
7:9
**behalf**
2:4
**being**
2:7
**best**
8:5
**bond**
2:7, 4:7, 6:19

| C |
|---|

**can't**
6:16
**carry**
4:18
**case**
4:22, 5:16,

6:5, 8:9
**cds**
7:11
**certainly**
4:3, 4:16,
6:11, 6:17
**certificate**
8:1
**certify**
8:2
**charged**
3:9
**charges**
3:8, 3:10,
3:14, 3:16, 5:3,
5:13, 7:4
**clear**
4:17
**clerk**
2:2
**cocaine**
4:3, 5:21, 6:1,
6:18
**comments**
7:2
**concealed**
4:18
**concluded**
7:12
**conclusion**
5:7, 5:8
**condition**
4:9
**connect**
4:13
**considering**
7:3
**containing**
5:22
**contempts**
5:19
**controlled**
5:22, 6:5
**conviction**
3:4, 3:5
**correct**
8:3
**could**
4:8

**counsel**
2:15, 6:7, 7:2,
8:7
**counsel's**
6:21
**count**
5:20
**country**
4:20
**court**
2:5, 2:13,
2:20, 4:7, 4:12,
4:16, 5:10,
5:14, 7:1, 7:5
**courtroom**
2:10
**criminally**
5:18
**crystal**
2:18
**currently**
2:7

| D |
|---|

**danger**
5:7
**dangerous**
5:4
**dangerousness**
4:21
**defendant**
5:17, 6:11, 7:7
**defender**
2:9
**defends**
5:12
**defense**
6:7, 6:9, 6:21
**delivered**
6:14
**delivery**
5:22, 6:5
**detailed**
3:10
**digital**
5:21
**driving**
3:5

drunken
3:4

**E**

employed
8:8
employee
3:7
entering
2:11
ever
3:20, 6:6
excuse
2:20

**F**

failures
3:3, 5:18
family
2:22
father
3:6
final
2:8
financial
2:22, 4:9, 8:9
firearm
5:6, 5:19
five
3:14, 5:20
foregoing
8:3
found
3:18, 4:2, 6:18
founded
5:8
frankly
6:10
furniture
3:2
futile
4:20

**G**

give
2:6, 2:13, 4:12
given
5:8

go
6:16
going
7:5
good
2:5
gun
4:11, 4:19, 6:8

**H**

handgun
3:18, 6:13
harming
3:9
hear
2:15
heard
7:2
hearing
1:10, 2:9, 6:19
heightened
4:17
held
2:7
here
5:2
hereby
8:2
hernandez
1:11, 2:2, 2:4,
2:6, 2:16, 3:1,
3:6, 3:9, 3:12,
3:17, 4:8, 5:4,
5:6, 6:17
history
4:14
home
3:15
honor
5:15, 5:16
however
6:7, 6:14

**I**

incomprehensible
2:3, 2:21,
3:11, 3:20,
3:21, 4:1, 4:8,

4:9, 4:10, 4:14,
4:18, 5:9, 5:20,
6:1, 6:4, 6:5,
6:20, 6:22
indicate
5:4, 6:2
individual
4:5
information
7:3, 8:7
installer
3:1
intake
5:17
intended
6:19
interest
8:9
issue
4:21

**J**

jackie
1:22, 8:2, 8:16
job
1:20
judge
2:12, 2:16
july
2:9
jumping
5:7

**K**

kind
7:11
know
4:15, 5:5

**L**

law
4:20
law-abiding
3:6
least
3:14, 6:9
level
7:6

licensing
4:21
limit
7:8
line
2:18
lived
3:15
lives
2:17
long
3:10
longer
4:19
look
5:1
looking
3:2, 3:8, 3:13,
5:16, 6:12

**M**

made
4:17
make
6:9
makes
7:6
marijuana
4:2
marquez
2:18
maryland
7:4
meant
6:17
might
4:21
more
4:15
motive
3:22
motor
5:18
multiple
3:16

**N**

narcotics
6:4

necessary
4:9
neither
8:7
newton
6:3
next
2:9
november
8:17
number
3:19

**O**

object
6:21
objectively
5:2
obviously
3:11
office
3:2
okay
2:16
old
2:17
once
7:6, 7:9
one
2:13, 3:4, 6:12
one-year-old
5:11
order
7:5
oscar
6:3
other
3:5
otherwise
8:10
outcome
8:10
own
7:10
ownership
4:19

**P**

package
3:12, 4:4,

5:22, 6:2, 6:6,
6:13
pages
1:21
particular
5:16
parties
8:8
partner
2:18, 3:7, 5:12
people
3:15
person
3:18, 5:5
phonetic
2:4
point
4:15, 6:8
possess
7:10
possession
4:12
powder
6:1
pre-trial
3:2, 5:3
presence
5:6
pretrial
5:17, 7:3, 7:5,
7:6, 7:8, 7:10
prior
3:4, 5:18, 7:7
proceedings
8:4, 8:5
prohibited
6:11, 6:13,
6:20
prosecuting
6:4
prove
7:8
public
2:9

**Q**

qualification
2:8

**R**

raise
5:11
rarely
6:3
really
6:8, 6:16
recipient
6:19
record
8:4
recorded
1:10, 8:4
recording
7:12, 8:6
related
8:8
releases
7:7
right
2:5, 2:7, 2:13,
2:15, 7:1, 7:11
room
3:17, 6:18
rooms
3:16
rubin
2:3, 2:11,
2:12, 2:16, 2:21
rule
7:4

**S**

said
4:13, 8:4
sat
6:15
say
3:19, 3:20,
3:21, 3:22, 6:16
says
3:22, 4:1
scales
5:21
scheer
1:22, 8:2, 8:16
second
2:14

see
3:3, 5:2
sent
4:4, 6:6
serial
3:19
set
4:7
sheet
3:2, 5:3, 5:17,
7:3
should
6:9
side
6:9
signature-5tm1q
8:14
simply
5:5
single
4:19
sneeze
2:20
soc
4:13
some
4:2, 4:12
specifically
4:13
speculate
6:17
standard
4:18
state
3:8, 5:14,
6:10, 6:21
state's
5:15
statement
3:10, 3:14,
3:16, 5:3, 7:4
states
4:16, 4:17
status
2:8
staying
3:17
stolen
3:19

**support**
2:22, 5:12
**supporting**
8:6
**supreme**
4:16

**T**

**taken**
6:14
**talking**
6:7
**th**
2:9
**thank**
5:13, 5:14,
5:15, 6:22, 7:1,
7:11
**thing**
6:12
**think**
4:15, 4:19,
5:1, 5:5, 6:8
**thumbs**
2:6
**today**
6:20
**transcribed**
1:22, 8:5
**transcriber**
8:1
**transcript**
8:3
**trouble**
4:12
**true**
8:3

**U**

**under**
4:20
**understand**
4:11
**united**
4:16
**unsecured**
4:7

**V**

**vehicle**
5:19

**verified**
7:9
**violation**
4:22

**W**

**waiving**
2:11
**we're**
3:11
**weapon**
7:10
**within**
4:10
**words**
3:5
**work**
5:10
**works**
3:1

**Y**

**yeah**
2:12
**years**
2:17, 6:3
**yesterday**
4:16

**Z**

**zero**
5:19

**2**

**20**
8:17
**2022**
8:17
**216**
7:4
**216.1**
7:5
**22**
8:17
**25**
2:9
**260**
6:1

**261**
2:10
**29**
2:17

**4**

**4**
7:4, 7:5
**45**
2:10
**472109**
1:20

**5**

**500**
4:10
**58715391**
2:2

**8**

**8**
2:10



# Transcript of Hearing In Re Anibal Hernandez

**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6

7

8

9

10                         Recorded Hearing

11                     In Re: Anibal Hernandez

12

13

14

15

16

17

18

19

20    Job No.:  472109

21    Pages: 1 - 42

22    Transcribed by:  Jackie Scheer

**JA838**

1                    C O N T E N T S

2    EXAMINATION OF DETECTIVE CEDRIC MITCHELL          PAGE

3        By The State's Attorney                        11

4        By Mr. Rubin                                   25

5

6    CLOSING ARGUMENT

7        By Mr. Rubin                                   27

8

9    RULING                                             29

10

11

12

13

14

15

16

17

18

19

20

21

22

```
1                    P R O C E E D I N G S

2              MR. RUBIN:  Yes, good morning, Judge

3    Stewart.

4              THE COURT:  Good morning.  Okay.

5              MR. RUBIN:  (Incomprehensible) speaking.

6              THE COURT:  Okay.

7              MR. RUBIN:  (Incomprehensible.)

8              THE COURT:  That's all right.  I can hear

9    you.

10             MR. RUBIN:  Sorry, Judge.  I -- I think

11   you're on mute so we're not able to hear you.

12             THE COURT:  Can you hear us?  Can you

13   hear me now?

14             MR. RUBIN:  Yeah.

15             THE COURT:  Okay.

16             MR. RUBIN:  I don't know why my camera is

17   not working.

18             THE COURT:  That's okay.  I can hear you.

19   The most important part is I can hear you.  I saw

20   you momentarily, it's fine.

21             MR. RUBIN:  Okay.  All right.

22             THE COURT:  Whose motion are we here on?
```

```
1              STATE'S ATTORNEY:  Well, it's
2    Mr. Hernandez's case.
3              THE COURT:  Okay.
4              STATE'S ATTORNEY:  We asked for a
5    preliminary hearing.  I'm showing Rob Earnest as the
6    attorney of record.
7              MR. RUBIN:  Sorry, (incomprehensible).
8              THE COURT:  So is this a preliminary
9    hearing?
10             STATE'S ATTORNEY:  To the best of my
11   knowledge, yes.
12             MR. RUBIN:  Well, yeah, I think it's --
13   it's a preliminary hearing that I believe is two
14   days not timely but in addition, it was -- it was
15   sent back to Judge Allen.  And I think that -- is
16   that why you're here, Judge Stewart, because there
17   was some type of -- of refusal?  Basically she
18   ordered pretrial release on June 24th and
19   Mr. Hernandez is obviously still not released.  And
20   so I filed the motion (incomprehensible) show cause
21   and motion for contempt.  And not only
22   (incomprehensible) it was referred back to Judge
```

1    Allen by Judge Hefron.  So potentially she may not

2    have wanted to hear it again.  So I was hoping that,

3    you know, we would have (incomprehensible) with the

4    court's (incomprehensible) to and then be heard on

5    that referral from Judge Hefron.

6              THE COURT:  All right.  So let me do

7    this, because I was asked to come into this

8    courtroom.  I'm not actually even finished in the

9    courtroom that I'm scheduled to be in.  Is

10   Mr. Hernandez -- do we have him over at the -- is he

11   over at the -- he's obviously over at the jail.  I

12   don't see anybody on the screen.

13             FEMALE VOICE:  Yeah, I called over there,

14   they're supposed to be getting him on the -- I don't

15   know that they have him.  They're supposed to be

16   getting him, they were (incomprehensible).

17             THE COURT:  So we don't have a defendant.

18   Do we have the officer on the line?

19             STATE'S ATTORNEY:  The officer has walked

20   in --

21             THE COURT:  -- looks like he's in court.

22             DETECTIVE MITCHELL:  Yes, Detective

1  Mitchell.

2         THE COURT:  Looks like he's in the --

3  looks like he's in the courtroom.

4         MR. RUBIN:  Yes.  And -- I mean, I

5  would -- yeah, I don't know how you want to proceed,

6  Judge.  I would ask up front (incomprehensible) to

7  be dismissed as the preliminary hearing date has

8  already past.

9         THE COURT:  Well, has the preliminary

10  hearing date already passed?  Are we beyond the --

11         MR. RUBIN:  -- yeah, (incomprehensible)

12  --

13         THE COURT:  -- I'll give the state the

14  opportunity to respond.  Do you want me to hear

15  arguments about this without your client being

16  present?  Because he's not on the screen.

17         MR. RUBIN:  Well, I know the jail did

18  have the ability to have him here and they're now

19  expressing a preference to not do the hearing today.

20  So ideally, yeah, I would love him to be present so

21  he could, you know, hear what's going on.  But, I

22  mean, at least for this initial argument about the

1    preliminary period of time passing, you know, I -- I

2    think we could have that.

3            THE COURT:  Okay.  Well, let's hear

4    arguments on that.

5            So show cause issued on June 23rd, 2022.

6    Defendant committed at that time.  Bail review held

7    on June 24th, 2022, at which time the defendant

8    remained committed.  And so we are here now on

9    July 25th.  Is the argument that today's date,

10   July 25th, is beyond the time period for the holding

11   of the preliminary hearing?

12           MR. RUBIN:  Yes.

13           THE COURT:  Okay.

14           MR. RUBIN:  It was not within the 30

15   days.

16           STATE'S ATTORNEY:  And if -- there's a

17   really straightforward response to that.  None of us

18   were working on Sunday.  So the court went to the

19   next available working days.  And theoretically, if

20   we start counting from the 25th of June, today would

21   be the appropriate date.

22           THE COURT:  So, Mr. Rubin, if we count 30

1   days from June 25th or we start -- if we start --

2   the bond was determined on June 24th, the 30 days

3   would have started that next day.  June -- 30 days

4   from June 24th would be July 24th.  So we couldn't

5   have held the hearing until July 25th, which is

6   today anyway.

7           MR. RUBIN:  Okay.

8           THE COURT:  Okay.  So the preliminary

9   hearing is still within the statutory time frame to

10  be held, so we can go ahead and do that.

11          MR. RUBIN:  Okay.

12          THE COURT:  I do see -- good morning, are

13  you Mr. Hernandez?

14          MR. HERNANDEZ:  Yes, I am.

15          THE COURT:  Okay.  You can hear us okay?

16          MR. HERNANDEZ:  Yeah, I can hear you,

17  yes.

18          THE COURT:  Okay.  Very good.

19          And then you have a motion with respect

20  to the pretrial orders that were previously entered

21  by Judge Allen, correct?

22          MR. RUBIN:  Yeah.  I mean, I -- I guess I

1  would first want to note as a marker, we're going to

2  proceed with the preliminary hearing on that, I

3  guess we could do that first if she -- if she is or

4  if she's not.

5            STATE'S ATTORNEY:  I am proceeding with

6  the preliminary hearing.

7            MR. RUBIN:  Okay.

8            THE COURT:  Okay.  Give me one moment,

9  everybody.  Can you mute?

10            (The recording was concluded.)

11                        ---

12            THE COURT:  -- for this so we could hold

13  the preliminary hearing.  All right.  Can everyone

14  hear me?  Can everyone hear me?

15            MR. HERNANDEZ:  Yes.

16            THE COURT:  Mr. Rubin, can you hear me?

17            I think we lost Mr. Rubin.

18            FEMALE VOICE:  He's -- he's coming back

19  on.

20            THE COURT:  All right.  Mr. Rubin, do we

21  have you back?

22            MR. RUBIN:  Yes.  Sorry about that.

1          THE COURT:  Okay.  No worries.  All
2  right.  Madame State, call your first witness,
3  please.
4          STATE'S ATTORNEY:  That would be
5  Detective Mitchell.
6          THE COURT:  All right.  Detective
7  Mitchell, please come to the center seat, remain
8  standing, raise your right hand.
9          THE CLERK:  Do you solemnly swear or
10  affirm under the penalties of perjury that the
11  responses given and the statements made will be the
12  whole truth and nothing but the truth?
13          DETECTIVE MITCHELL:  Yes, ma'am.
14          THE COURT:  Is everyone able to see?
15          STATE'S ATTORNEY:  I can see him.
16          MR. RUBIN:  Yes.
17          THE COURT:  All right.  Please state your
18  name and duty assignment.
19          DETECTIVE MITCHELL:  Yes.  It's going to
20  be Detective Cedric Mitchell.  ID 2723.  I am
21  assigned to the -- I mean, Prince George's County
22  Police Department, Narcotic Enforcement Division,

```
1   assigned to the Metropolitan Area Drug Task Force.
2              THE COURT:  All right.  Madame State,
3   your witness.
4              STATE'S ATTORNEY:  Okay.  Detective
5   Mitchell, good morning.
6              DETECTIVE MITCHELL:  Good morning ma'am.
7   BY STATE'S ATTORNEY:
8        Q    We just made it.  I'd like to direct your
9   attention to June (cut out) 2022.  The location
10  being 6815 Decatur Street, Hyattsville, Prince
11  George's County, Maryland.  Did you have occasion to
12  be involved in an -- an -- in an investigation which
13  occur -- which occurred at that location on that
14  date?
15       A    Yes, I did.
16       Q    Would you briefly tell the court the
17  facts and circumstances of what occurred on that
18  date at that location?
19       A    Sure.  Myself, members of the
20  Metropolitan Area Drug Task Force, along with postal
21  inspectors from the United States Postal Inspectors
22  Office in Washington, D.C., we were conducting an --
```

1   an investigation of a controlled delivery of

2   controlled dangerous substance.  It was actually

3   within a United States postal parcel that was being

4   delivered to the -- that was actually set to be

5   delivered, excuse me, to the address of 6815 Decatur

6   Street, Hyattsville, Prince George's County,

7   Maryland.  And within the parcel itself it was a

8   quantity of cocaine hydrochloride.

9        Q    Okay.  And as a result of that, what

10  investigative steps did you or other individuals

11  take?

12       A    Yes.  So if I could refer to my notes if

13  that's fine?

14       Q    All right.  You -- if you require them to

15  refresh your recollection --

16       A    -- great.

17       Q    -- please do.

18       A    Thank you, ma'am.

19            So on -- on June 15th, starting on

20  June 15th, we were actually notified by the United

21  States Postal Inspectors Office, it's going to be

22  Postal Inspector Ussery (phonetic), and there was a

1    --

2              THE COURT:  Mr. Rubin, we can hear you.

3              MR. RUBIN:  I'm sorry.

4         A    There was a parcel that was intercepted

5    by the United States Postal Inspectors Office that

6    was within the mail stream.  They actually had that

7    parcel scanned by a K-9 and from that point, once

8    when it was a positive alert from the K-9, the

9    Postal Inspectors Office reached out to my office

10   over at the Metropolitan Area Drug Task Force and

11   they advised us about this particular parcel pending

12   them getting a federal search warrant for it.  So

13   the parcel was actually seized at that time.  They

14   went ahead and got a federal search warrant for it,

15   which was actually signed by the magistrate I

16   believe it was -- excuse me, I'm sorry, on June the

17   17th.  From that point, they went ahead and they

18   kept it in their custody and once -- when it was

19   signed, it was determined that it had 265 grams of

20   cocaine hydrochloride concealed within the parcel.

21   At this point postal inspector Ussery went ahead and

22   seized the parcel containing the cocaine as

1   evidence.

2               At that point they went ahead and

3   advised me and we actually set a delivery date that

4   was going to be on June the 25th, 2022.  At that

5   point Detective Ussery -- well, Postal Inspector

6   Ussery met up with myself and members of the

7   Metropolitan Area Drug Task Force, along with an

8   undercover who was also part of the United States

9   Postal Inspectors Office, which is Postal Inspector

10  Johnson.  He was tasked with actually delivering the

11  said parcel containing cocaine.  Prior to this

12  delivery, the parcel was actually repackaged.  So

13  once when they actually had the 250 grams, it was

14  actually replaced with 60 grams of cocaine

15  hydrochloride.  The remaining 205 grams was actually

16  held back at their office as evidence.  Once when --

17  you know, prior to the delivery taking place.

18               At 9:37, just to fast forward, 937

19  hours, myself and members of the Metropolitan Area

20  Drug Task Force went to the area of 6815 Decatur

21  Street to perform the controlled delivery.  At --

22  moments later -- I keep on saying detective, excuse

1    me -- Postal Inspector Johnson was seen delivering
2    the parcel, the said parcel to 6815 Decatur Street.
3    At this point it was a Hispanic female wearing a
4    tie-dye shirt and she answered the door.  During
5    this time, Postal Inspector Johnson asked her if the
6    persons whose name that was on the parcel, if they
7    actually lived at the address.  At the point the
8    Hispanic female stated that yes, that person does
9    live here and she would accept the parcel.  All
10   right.  At 9:55, myself, I went ahead and I applied
11   for a search and seizure warrant of the residence
12   6815 Decatur Street, Hyattsville, to which it was
13   signed for legal sufficiency by Judge Nice.  At that
14   point, we went ahead and Prince George's County
15   Police Department, Special Operations Division, EST,
16   executed the search and seizure warrant on the said
17   address, 6815 Decatur Street.
18            At this point, the individual or the
19   defendant Anibal Hernandez, I believe it's his wife,
20   his -- his -- his child, and there was of course his
21   mother, the one who accepted the parcel, and I
22   believe it was his sister-in-law, they were all

1   inside of the residence.  At that point we went

2   ahead and we decided to go ahead and search the

3   residence due to our signed search warrant.  And we

4   noticed that the parcel was, which was delivered,

5   was right next to the front door.  We also searched

6   the residence and we located several items from the

7   defendant's bedroom, which -- do you want me to go

8   ahead and state the items which were recovered,

9   Madame State?

10        Q    Yes.  What items were recovered from the

11  defendant's bedroom?

12        A    Okay, yes, ma'am.  It's going to be --

13  there was a black semi audiocassette Vulcan 9

14  millimeter handgun, serial number 6 -- I mean G5969,

15  with extended capacity magazine.  It was located in

16  the bedroom belonging to the defendant on the shelf

17  next to the bed.  There was also a black safe which

18  of course contained -- sorry, I do have a lot of --

19  of -- of evidence here, I apologize.  The black

20  safe, I'll just go -- I'll -- I'll just go down the

21  list here.  My apologies.  So there was a ziplock

22  bag containing cocaine hydrochloride weighing

1    approximately 70 grams.  That was located in the

2    bedroom belonging to the defendant inside of a black

3    safe on the floor.  I stated the handgun.  There was

4    also a ziplock plastic bag containing marijuana

5    weighing approximately 350 grams located in the

6    bedroom on the night stand next to the bed of the

7    defendant's bedroom.  There was also five ziplock

8    bags containing cocaine hydrochloride weighing 20

9    grams -- approximately 20 grams located in the

10   bedroom belonging to the defendant inside of another

11   black fingerprint safe, which was on the floor

12   during the search of the defendant's bedroom.

13            There were also two black digital

14   scales containing cocaine hydrochloride residue

15   located in the bedroom inside of a plastic bin on

16   the shelf next to the bed of the defendant's

17   bedroom.  There was also four 9 millimeter

18   ammunition shells along with seven 38 special

19   caliber ammunition located in the bedroom inside of

20   a plastic bin on the shelf next to the bed of the

21   defendant's bedroom.  There was also United States

22   currency totaling $382 located inside the

1    defendant's bedroom on the bookcase next to the

2    Vulcan handgun.  There was two black smart phones,

3    one was an Apple, one was a Motorola that was also

4    on the night stand of the defendant's bedroom.  And

5    there were two heat-sealed plastic bags containing

6    marijuana weighing 720 grams that was located in the

7    laundry room next to the defendant's bedroom behind

8    the dryer.  And that is it in reference to the items

9    that were seized from the defendant's bedroom or

10   right outside of it.  There were other items that

11   were recovered from another part of the home in

12   another bedroom.

13        Q     Sticking with the defendant's bedroom,

14   the quantities of controlled dangerous substances,

15   how -- what was the quantity of the cocaine

16   hydrochloride?

17        A     The -- in reference to all of the cocaine

18   hydrochloride, ma'am?

19        Q     Yes.

20        A     That was recovered during -- it was --

21   it's actually -- it was going to be -- so the 70 --

22   the -- it's going to be the 70 grams and then the --

1  the 20 grams.  And so that's going to be 90 right

2  there.  And then you have the 720 grams of marijuana

3  and another 350 grams of marijuana.

4          THE COURT:  Okay.  So, ladies and

5  gentlemen, we're at our afternoon mark.  Court will

6  resume this hearing at 3 p.m.  You all will be back

7  on the Zoom link.  Officer, you can call in using

8  the Zoom link if you'd like, okay?

9          DETECTIVE MITCHELL:  Yes, ma'am.

10          THE COURT:  To finish your testimony,

11  still under oath.  All right.

12          DETECTIVE MITCHELL:  Yes, ma'am.

13          THE COURT:  We'll resume at 3 o'clock.

14          (The recording was concluded.)

15                          ---

16          THE COURT:  This is Anibal Eric

17  Hernandez, Jr.  5E715391.

18          All right.  Mr. Hernandez, can you give

19  us a thumbs up if you can hear us?  Okay.  Very

20  good.

21          All right.  So we were in the middle of

22  the testimony, the detective's direct testimony.

1   Detective Mitchell, you are still under oath and,

2   Madame State, your witness.

3            STATE'S ATTORNEY:  All right.  I believe

4   where I left off was what was the quantity of

5   controlled dangerous substances that were -- that

6   was recovered from the bedroom of Mr. Hernandez.

7            DETECTIVE MITCHELL:  Yes, ma'am.  It was

8   going to be a quantity of 90 grams of cocaine

9   hydrochloride and 10,007 -- I'm sorry.  That's going

10  to be 1,070 grams of marijuana.

11  BY STATE'S ATTORNEY:

12       Q   All right.  And in addition to the

13  controlled dangerous substances, what, if any,

14  paraphernalia was recovered at the same location?

15       A   Yes, ma'am.  There were two digital

16  scales that also had cocaine hydrochloride residue

17  on them.

18            MR. RUBIN:  Objection.

19  (incomprehensible) detective has laid sufficient

20  testimony to make that conclusion of anything that

21  was on the scales.

22            THE COURT:  Overruled.

1          Q     Okay.  And, Detective Mitchell, have you

2   been trained in the identification and interdiction

3   of controlled dangerous substances?

4          A     Yes, ma'am.

5          Q     All right.  And have you had occasion to

6   make arrest in connection with the interdiction of

7   controlled dangerous substances?

8          A     Yes, ma'am.

9          Q     Approximately how many?

10         A     Oh, I would say -- I -- I would say well

11  over 50, ma'am.

12         Q     All right.  And you're currently assigned

13  to the Narcotics Enforcement Division of the Prince

14  George's County Police Department?

15         A     Yes, ma'am I am.

16         Q     All right.  Now, based upon your training

17  and experience, the quantity of the controlled

18  dangerous substance, the presence of scales, what,

19  if anything, is this indicative of?

20         A     The presence of scales and it's -- along

21  with the presence of the controlled dangerous

22  substances that was there leads me to believe that

1    it was -- that the controlled dangerous substances

2    that were located on scene were possession with

3    intent to distribute.

4           Q    Okay.

5           A    Yes, it was actually -- I -- I would say

6    that the way that they were packaged, it was going

7    to be broken down for further sales.

8           Q    All right.  And what, if anything, else

9    was recovered from that location on that date?

10          A    Yes, ma'am.  There was a Vulcan firearm.

11   It's more like a MAC-10 style weapon.  It's -- it's

12   a handgun.  That was also recovered.  You also had

13   the ziplock plastic bag containing the cocaine

14   hydrochloride.  You also had five other ziplock bags

15   containing cocaine hydrochloride.  Two black digital

16   scales, what we mentioned before.  And then you also

17   had 9 millimeter ammunition along with a 38 special

18   caliber ammunition that was found.  And then you

19   also had United States currency that was totaling

20   $382.

21          Q    All right.

22          A    All -- all this -- right, and then you

1  also had -- excuse me, I'm sorry.  You also had

2  assorted rounds of ammunition that was also

3  recovered from the bedroom of the defendant.

4      Q    Okay.  Now, can you see the individual

5  located at the detention center?

6      A    Yes.

7      Q    All right.  I want to make sure I can see

8  him.  Okay.

9           Mr. Rubin, masked or unmasked?

10          MR. RUBIN:  (Incomprehensible) Mr. -- you

11  can -- you can ask him to bring his mask down.

12     Q    All right.  Mr. Hernandez, would you

13  please lower your mask briefly?

14          All right.  Detective Mitchell, can

15  you see that individual?

16     A    Hold on.  Let me go ahead and --

17     Q    Scroll down your Brady Bunch box.

18     A    Yes, ma'am.  Yes, I can see him.

19     Q    All right.  Put your mask back on for

20  safety, sir.

21          Do you recognize that individual?

22     A    Yes, I do.

1      Q    Who do you recognize him to be?

2      A    I recognize the individual to be

3 Mr. Anibal Eric Hernandez.

4      Q    And is that the same individual that was

5 involved in the incident that you've just described?

6      A    Yes.

7      Q    And did that incident occur on June 22nd,

8 2022 at 6815 Decatur Street, Hyattsville, Prince

9 George's County, Maryland?

10     A    Yes, ma'am.  It did.

11     STATE'S ATTORNEY:  All right.  Your

12 Honor, may the record reflect the identification of

13 the defendant?

14     THE COURT:  Record will so reflect.

15     STATE'S ATTORNEY:  And with that, I have

16 nothing further.

17     THE COURT:  Okay.  Mr. Rubin,

18 cross-examination please.

19     MR. RUBIN:  Thank you.  Good afternoon,

20 Detective.

21     DETECTIVE MITCHELL:  Good afternoon, sir.

22

1    BY MR. RUBIN:

2         Q    At some point when you went to their

3    home, you went upstairs, correct?

4         A    Yes.  We did go upstairs.

5         Q    And up there you saw Catherine Aguilar,

6    correct?

7         A    By the time I actually got to the

8    residence, sir, Catherine -- Catherine Aguilar, you

9    said?

10        Q    Uh-huh.

11        A    Catherine Aguilar, Catherine Aguilar.

12   The individual with who I have is a -- yes, I do

13   have Catherine Aguilar, correct.

14        Q    Okay.  And she was one of the five people

15   who were in the home when you went there, right?

16        A    Correct.

17        Q    And when you went upstairs to her

18   bedroom, there you state that you recovered a Cigna

19   PX-9 semi-automatic handgun, assorted ammunition,

20   four magazines, and marijuana, which she said had

21   all belonged to her husband, right?

22        A    Yes.  That is correct.

1      Q   And the package that you initially

2  mentioned that was the basis for the search warrant,

3  you said that that was addressed to Oscar Nunez,

4  right?

5      A   The name on the actual label, yes, was

6  for Oscar Nunez.

7      Q   And the woman who answered the -- the

8  door and received the package for Oscar Nunez said

9  that he lived there, right?

10     A   Yes.

11     Q   And at no point in time did you ever

12  recover any firearms or any contraband to the person

13  of Mr. Hernandez, right?

14     A   I'm sorry, did you say did we recover any

15  firearms from him?

16     Q   At no -- at no point in time did you ever

17  recover any firearms or any contraband from the

18  person of Mr. Hernandez?

19     A   No.  It was not actually on his person,

20  no, sir.

21     MR. RUBIN:  Okay.  Your Honor, I don't

22  have any further questions.  I'm prepared to proceed

1   to argument.

2               THE COURT:  Okay.  All right.  Anything

3   else from the state?

4               STATE'S ATTORNEY:  No, Your Honor, I'll

5   submit on the testimony.

6               THE COURT:  All right.  I'll hear

7   arguments.

8               MR. RUBIN:  Thank you, Judge.  Your

9   Honor, looking at the (incomprehensible) count five,

10  I don't believe the state has proven that

11  Mr. Hernandez did commit in relation to the

12  (incomprehensible) crime possess a firearm.  There's

13  a bit of uncertainty (incomprehensible), but, Your

14  Honor, the testimony is that the detective received

15  a search warrant based on a package that was

16  addressed to Oscar Nunez.  That package was received

17  by a woman who lived at his home in which there were

18  five other individuals, and in fact apparently a

19  sixth person who lived there, the husband of the --

20  the woman that (incomprehensible) upstairs who she

21  said was a possessor of a firearm and contraband.

22              The detective said that he recovered a

1    firearm from Mr. Hernandez's bedroom, but there was

2    no testimony given about how the detective knew that

3    that was Mr. Hernandez's bedroom or -- and certainly

4    there was no testimony given about how the detective

5    had any basis of knowledge that the firearm

6    recovered from the basement bedroom, which was

7    allegedly Mr. Hernandez's bedroom, was

8    Mr. Hernandez's.  There were five other people in

9    the home.  That was one in the home, apparently many

10   firearms in the home.  And there was no testimony

11   whatsoever to -- to connect that firearm to

12   Mr. Hernandez.  It could have been anyone who lived

13   there.  And in fact, one of the (incomprehensible)

14   that her husband was the owner of contraband and

15   firearm in the home, indicating that potentially it

16   was -- it was his.

17             So and in the detective's statement,

18   nothing was recovered from Mr. Hernandez's person,

19   and there was certainly no admission from

20   Mr. Hernandez that that was his.  And so we would

21   ask that the court, you know, do not find probable

22   cause for count five, because there's no evidence

1    that the fire -- that the Vulcan 9 millimeter

2    belonged to Mr. Hernandez.

3              THE COURT:  All right.  Anything else?

4              MR. RUBIN:  No.

5              THE COURT:  Okay.  The court, having had

6    an opportunity to consider the testimony of the

7    detective in this case, the court finds probable

8    cause to support the first -- the court finds

9    probable cause to support each of the five charges

10   which are currently pending against Mr. Hernandez.

11             Okay.  He's got a to be dismissed date of

12   August 24th.  That's going to be at 10:30 here in

13   courtroom 261.  He's not to be in possession of any

14   controlled dangerous substances, weapons, firearms,

15   or ammunition.

16             Now, we also have pending a motion which

17   I've had the opportunity to review, a request for

18   show cause or for contempt.  Request of this

19   honorable court require Mary Lou McDunna (phonetic)

20   to appear in court.  Is this your motion, Mr. Rubin?

21             MR. RUBIN:  Yes.  And -- and Judge Hefron

22   denied it but then referred it to Judge Allen.

1      THE COURT:  Right.  So there's a couple

2  of issues.  Let's start with the first issue.  Mary

3  Lou McDunna is no longer employed by the Department

4  of Corrections.  So who are you seeking to have the

5  court find in contempt?

6      MR. RUBIN:  Well, then I think it might

7  have been more accurate (incomprehensible) for me

8  and essentially because on June 24th, Judge Allen

9  ordered Mr. Hernandez's release and out of the

10  motions phase, and I -- and I have supporting

11  documentation.  I e-mailed pretrial six times and

12  heard nothing.  And then on --

13      THE COURT:  -- well, let's not get into

14  the substance of the motion quite yet.  Because if

15  who you -- if who you in fact intend to have this

16  court potentially find in contempt is Corinne Lapp

17  (phonetic), has she had any notice of today's

18  hearing?  Because you named Mary Lou McDunna.  So do

19  we have any indication --

20      MR. RUBIN:  -- no, yes, I do.

21      THE COURT:  Do we have any indication

22  that Ms. Lapp is either -- that Ms. Lapp has any

1    notice of today's hearing?

2              MR. RUBIN:  Yes.  I faxed it to the jail

3    and then when -- after the day after I filed it I

4    got a response from pretrial (incomprehensible) --

5              THE COURT:  -- okay.  Now, the response

6    that you received from -- from pretrial, is that

7    response dated July 13th, 2022?

8              MR. RUBIN:  Yes.

9              THE COURT:  And that response indicates

10   that the defendant has no verifiable address.

11             MR. RUBIN:  Well, that was the response

12   indicated but he does and his family's on the line.

13             THE COURT:  Okay.  Have you communicated

14   that information to pretrial?

15             MR. RUBIN:  I -- the day that he was

16   ordered I communicated --

17             THE COURT:  -- okay.

18             MR. RUBIN:  -- to pretrial the family

19   number, where he would live.

20             THE COURT:  Okay.

21             MR. RUBIN:  So I mean, I don't -- I'm

22   just trying to seek to effectuate Judge

1    Allen's order --

2                THE COURT:  -- sure, sure.  But in order

3    to do that, we need to make sure that pretrial has

4    the information that would allow them to effect

5    Judge Allen's order.  Because Judge Allen appears to

6    have ordered pretrial level four, but that would

7    require a verifiable address.  So if there's

8    correspondence from the jail indicating that there

9    was no verifiable address, since that July 13th

10   memo, have you been able to reach someone at

11   pretrial to offer -- offer an address that can be

12   verified so that Mr. Hernandez can in fact be

13   released in accordance with Judge Allen's order?

14               MR. RUBIN:  I mean, I -- I -- I've

15   provided -- I followed up the day Judge Allen made

16   the order with pretrial.  I mean, I followed up six,

17   seven times.  So at this point, you know, I

18   didn't -- haven't kept doing that.

19               THE COURT:  Okay.

20               MR. RUBIN:  Because it didn't seem to me

21   that that would be (incomprehensible) and --

22               THE COURT:  -- at any point --

1           MR. RUBIN:  -- I find it hard to --

2           THE COURT:  -- yeah.  At any point in

3    time with whoever you followed up with, did -- did

4    anyone indicate that there was not an address on

5    file for Mr. Hernandez?

6           MR. RUBIN:  I -- no, I -- I received that

7    notice on the day after I filed that order for show

8    cause.

9           THE COURT:  Okay.  Okay.  Because if it

10   seemed to me if we do have a verifiable address and

11   pretrial now has that, then the court could

12   potentially look at what, if any, remedy is

13   necessary to effectuate Judge Allen's order.  But

14   again, what I'm seeking to -- to find out is does

15   pretrial now have the information necessary to

16   effect Judge Allen's order?

17          MR. RUBIN:  I mean, I think they would --

18   I think they do.  They would probably be

19   (incomprehensible) that they would have to ask, I

20   could follow-up with them again.  I mean, I gave --

21   I don't know if they made -- I spoke with his family

22   as recently as today and I gave them all the

1    information.  Pretrial sheet, statement of charges,

2    address, family (incomprehensible).

3              THE COURT:  All right.  Let's --

4              MR. RUBIN:  -- (incomprehensible) they

5    never even -- they never called them.  Look, I'm not

6    going to do your (incomprehensible) --

7              THE COURT:  -- well, I just want to make

8    sure if we have the right individual.  So is

9    Mr. Logan available?  Was he -- was he available

10   during the bond hearings?

11             THE CLERK:  He was on there earlier.

12             THE COURT:  Okay.  Because it would be

13   helpful to speak with him directly to say here's the

14   information --

15             MR. RUBIN:  -- yeah, (incomprehensible).

16   I'm sorry, Judge.

17             THE COURT:  No, that's all right.  But I

18   just -- I mean, the best course of action right now

19   is to -- to reach out to Mr. Logan if the address is

20   in fact one that is usable for the purposes of the

21   pretrial of the court, let's get that address

22   information --

1          MR. RUBIN:  -- well, no, actually what

2    was interesting is that it was pretrial at any

3    level.  It wasn't even level four.

4          THE COURT:  Pretrial at any level.  Okay.

5          STATE'S ATTORNEY:  Would the court like

6    me to send an e-mail to Mr. Low began?

7          THE COURT:  Yeah, that'd be great.  Yeah.

8          MR. RUBIN:  Or at this point, I mean, if

9    the court would entertain to -- to set a bond for

10   the family so they could -- they could afford $500.

11   I mean, you know, Judge Allen found, in my view,

12   that this person could be released.  Not a danger.

13   He had no conviction, there's no STA.  You know,

14   that -- that sort of problem here, that when she

15   made that finding, it's not, like, oh, well, but if

16   for whatever reason pretrial doesn't get you

17   released, wrong.  You know, that -- that's the issue

18   (incomprehensible) it's okay, it's okay for him to

19   do this, so, you know.  (Incomprehensible) and

20   again, I'm not pointing fingers.  They're

21   overburdened, I know (incomprehensible) very hard

22   because he e-mailed me back at trial but, you know,

1    meanwhile Mr. Hernandez is sitting there for a

2    month.

3                THE COURT:  Mr. Logan's going to sign

4    back in --

5                STATE'S ATTORNEY:  -- could I then send

6    Mr. Logan an e-mail?

7                THE COURT:  He's going to sign back in.

8    We were able to reach him.

9                STATE'S ATTORNEY:  Oh.

10               MR. RUBIN:  Thank you so much, Judge.

11               (Speaking out of hearing.)

12               THE COURT:  Sorry?

13               THE CLERK:  He should be back on.

14               THE COURT:  Okay.  How are you,

15   Mr. Logan?  You're on mute.

16               MR. LOGAN:  My apologies, how you doing,

17   Your Honor?

18               THE COURT:  That's okay.  Great.  Good to

19   see you.  Okay.  Mr. -- Mr. Hernandez has an address

20   where he's able to stay; is that correct?

21               MR. RUBIN:  Yes.

22               THE COURT:  Can you proffer to Mr. Logan

1    what that address is?

2              MR. RUBIN:  Yeah.  6815 Decatur Street,

3    Hyattsville, Maryland 20784.

4              THE COURT:  So the issue in this case,

5    Mr. Logan, is that Judge Allen ordered pretrial

6    release at any level.  I do have a memo in the file

7    from pretrial indicating that the defendant is not

8    eligible for pretrial release because he has no

9    verifiable address.  The 6815 Decatur Street,

10   Hyattsville, Maryland address, what further steps

11   are necessary to associate that address with the

12   defendant for the purpose of pretrial release?

13             MR. LOGAN:  For whoever it is the

14   leaseholder or the owner of that house to verify

15   that he is going to stay there.

16             THE COURT:  Okay.  Is that person on the

17   line?

18             MR. RUBIN:  She's on the line.

19             THE COURT:  She's on the line?

20             MR. RUBIN:  Yeah, I'm sorry, I -- she's

21   been waiting through the morning.  I hope she's

22   still there.  I'm sorry, court's brief indulgence.

1          THE COURT:  Sure.

2          FEMALE VOICE:  Hello?  I'm here but it

3   doesn't let me open the camera.  It says unable to

4   access camera.

5          MR. RUBIN:  Okay.  Who -- what is your

6   name?  Hello?

7          THE COURT:  Her device is on mute.

8          MR. RUBIN:  Your device is on mute.

9          THE COURT:  Would this be the way,

10  Mr. Logan, that you all would verify the address or

11  would you need to contact this person directly to

12  verify their identity and their connection to the

13  location that's being sought to be used as a

14  verifiable address?

15         MR. LOGAN:  The -- the latter, Madame

16  Foreman, that's correct.

17         THE COURT:  Okay.

18         MR. LOGAN:  We would need -- we would

19  need to talk to her directly.  We would -- we

20  would -- we would want some -- some form of proof of

21  that she is the lease, the main leaseholder or owner

22  of that -- of that house.  We need to send us

1   something to verify.

2          STATE'S ATTORNEY:  Now, I have a question

3   here.  Is the address we're verifying 6815 Decatur

4   Street, Hyattsville, Prince George's County,

5   Maryland?

6          MR. RUBIN:  That's correct.

7          STATE'S ATTORNEY:  That's the location of

8   the incident.

9          MR. RUBIN:  That's correct.  That's his

10  home.  That's where he lives with his family.

11  And -- and his mother, the leaseholder.

12         THE COURT:  Well, let me ask you --

13         (Cross talk.)

14         THE COURT:  It's a narcotics case.  It's

15  not domestically related or an assault case.

16         MR. LOGAN:  Understood, Your Honor.

17         THE COURT:  So, Mr. Rubin, you've

18  proffered that the family has indicated that they

19  can afford a bond of $500?

20         MR. RUBIN:  Yes, Judge.  They have said

21  she's --

22         THE COURT:  -- all right.  Well, we're --

1  we're in a little bit of a different posture now

2  because I've heard the preliminary hearing. I've

3  heard the preliminary hearing. So it's my

4  opportunity to decide bond at this -- at this

5  particular juncture. So this court will set bond in

6  this matter in the amount of $5,000 with the

7  10 percent option to the court. The defendant's not

8  to be in possession of any controlled dangerous

9  substances, weapons, firearms, or ammunition.

10          MR. RUBIN: (Incomprehensible), Judge.

11          THE COURT: Uh-huh. All right. So I'm

12  not granting the motion to hold anybody in contempt.

13  I'm actually denying it. Mr. Rubin, you're on mute.

14          MR. RUBIN: Yes.

15          THE COURT: Okay.

16          MR. RUBIN: Thank you. I -- I -- and

17  again, I just want to emphasize to the court

18  (incomprehensible) briefly that, you know, this

19  hearing is not -- I -- I appreciate all the

20  (incomprehensible). You know, things just fell

21  through the crack when Mr. Hernandez has been in

22  there for a month. You know, that's the -- the

1   basis of the motion.  It has nothing to do with --

2   with Mr. Logan or the court or -- or anything like

3   that.  Mr. Logan responded to me (incomprehensible).

4   So I just wanted that to be known.

5           FEMALE VOICE:  Hello?

6           MR. RUBIN:  Yeah, Mr. (incomprehensible),

7   the court has set a $500 bond at this time.  I'm

8   going to follow-up with you separately, okay?  So

9   the hearing has ended, I will tell you about what

10   occurred, all right?

11           Okay.  Thank you.  Thank you,

12   (incomprehensible).

13           THE COURT:  Good afternoon, everyone.

14   We've completed -- completed our docket.

15           STATE'S ATTORNEY:  Have a great day, Your

16   Honor.

17           THE COURT:  You, too.  Thank you very

18   much, everyone.  We are conclude -- we concluded the

19   docket, you're free to leave.  Good day.

20           (The recording was concluded.)

21

22

```
 1                 CERTIFICATE OF TRANSCRIBER
 2            I, Jackie A. Scheer, do hereby certify
 3    that the foregoing transcript is a true and correct
 4    record of the recorded proceedings; that said
 5    proceedings were transcribed to the best of my
 6    ability from the audio recording and supporting
 7    information; and that I am neither counsel for,
 8    related to, nor employed by any of the parties to
 9    this case and have no interest, financial or
10    otherwise in its outcome.
11
12
13
14
15    _____
16            JACKIE A. SCHEER
17            DECEMBER 1, 2022
18
19
20
21
22
```

| A |
| --- |

**ability**
6:18, 42:6
**able**
3:11, 10:14,
32:10, 36:8,
36:20
**about**
6:15, 6:22,
9:22, 13:11,
28:2, 28:4, 41:9
**accept**
15:9
**accepted**
15:21
**access**
38:4
**accordance**
32:13
**accurate**
30:7
**action**
34:18
**actual**
26:5
**actually**
5:8, 12:2,
12:4, 12:20,
13:6, 13:13,
13:15, 14:3,
14:10, 14:12,
14:13, 14:14,
14:15, 15:7,
18:21, 22:5,
25:7, 26:19,
35:1, 40:13
**addition**
4:14, 20:12
**address**
12:5, 15:7,
15:17, 31:10,
32:7, 32:9,
32:11, 33:4,
33:10, 34:2,
34:19, 34:21,
36:19, 37:1,
37:9, 37:10,

37:11, 38:10,
38:14, 39:3
**addressed**
26:3, 27:16
**admission**
28:19
**advised**
13:11, 14:3
**affirm**
10:10
**afford**
35:10, 39:19
**after**
31:3, 33:7
**afternoon**
19:5, 24:19,
24:21, 41:13
**again**
5:2, 33:14,
33:20, 35:20,
40:17
**against**
29:10
**aguilar**
25:5, 25:8,
25:11, 25:13
**ahead**
8:10, 13:14,
13:17, 13:21,
14:2, 15:10,
15:14, 16:2,
16:8, 23:16
**alert**
13:8
**all**
3:8, 3:21, 5:6,
9:13, 9:20,
10:1, 10:6,
10:17, 11:2,
12:14, 15:9,
15:22, 18:17,
19:6, 19:11,
19:18, 19:21,
20:3, 20:12,
21:5, 21:12,
21:16, 22:8,
22:21, 22:22,
23:7, 23:12,

23:14, 23:19,
24:11, 25:21,
27:2, 27:6,
29:3, 33:22,
34:3, 34:17,
38:10, 39:22,
40:11, 40:19,
41:10
**allegedly**
28:7
**allen**
4:15, 5:1,
8:21, 29:22,
30:8, 32:5,
32:15, 35:11,
37:5
**allen's**
32:1, 32:5,
32:13, 33:13,
33:16
**allow**
32:4
**along**
11:20, 14:7,
17:18, 21:20,
22:17
**already**
6:8, 6:10
**also**
14:8, 16:5,
16:17, 17:4,
17:7, 17:13,
17:17, 17:21,
18:3, 20:16,
22:12, 22:14,
22:16, 22:19,
23:1, 23:2,
29:16
**ammunition**
17:18, 17:19,
22:17, 22:18,
23:2, 25:19,
29:15, 40:9
**amount**
40:6
**anibal**
1:11, 15:19,
19:16, 24:3

**another**
17:10, 18:11,
18:12, 19:3
**answered**
15:4, 26:7
**any**
20:13, 26:12,
26:14, 26:17,
26:22, 28:5,
29:13, 30:17,
30:19, 30:21,
30:22, 32:22,
33:2, 33:12,
35:2, 35:4,
37:6, 40:8, 42:8
**anybody**
5:12, 40:12
**anyone**
28:12, 33:4
**anything**
20:20, 21:19,
22:8, 27:2,
29:3, 41:2
**anyway**
8:6
**apologies**
16:21, 36:16
**apologize**
16:19
**apparently**
27:18, 28:9
**appear**
29:20
**appears**
32:5
**apple**
18:3
**applied**
15:10
**appreciate**
40:19
**appropriate**
7:21
**approximately**
17:1, 17:5,
17:9, 21:9
**area**
11:1, 11:20,

13:10, 14:7,
14:19, 14:20
**argument**
2:6, 6:22, 7:9,
27:1
**arguments**
6:15, 7:4, 27:7
**arrest**
21:6
**asked**
4:4, 5:7, 15:5
**assault**
39:15
**assigned**
10:21, 11:1,
21:12
**assignment**
10:18
**associate**
37:11
**assorted**
23:2, 25:19
**attention**
11:9
**attorney**
2:3, 4:1, 4:4,
4:6, 4:10, 5:19,
7:16, 9:5, 10:4,
10:15, 11:4,
11:7, 20:3,
20:11, 24:11,
24:15, 27:4,
35:5, 36:5,
36:9, 39:2,
39:7, 41:15
**audio**
42:6
**audiocassette**
16:13
**august**
29:12
**available**
7:19, 34:9

**B**

**back**
4:15, 4:22,
9:18, 9:21,

14:16, 19:6,
23:19, 35:22,
36:4, 36:7,
36:13
**bag**
16:22, 17:4,
22:13
**bags**
17:8, 18:5,
22:14
**bail**
7:6
**based**
21:16, 27:15
**basement**
28:6
**basically**
4:17
**basis**
26:2, 28:5,
41:1
**because**
4:16, 5:7,
6:16, 28:22,
30:8, 30:14,
30:18, 32:5,
32:20, 33:9,
34:12, 35:22,
37:8, 40:2
**bed**
16:17, 17:6,
17:16, 17:20
**bedroom**
16:7, 16:11,
16:16, 17:2,
17:6, 17:7,
17:10, 17:12,
17:15, 17:17,
17:19, 17:21,
18:1, 18:4,
18:7, 18:9,
18:12, 18:13,
20:6, 23:3,
25:18, 28:1,
28:3, 28:6, 28:7
**been**
21:2, 28:12,
30:7, 32:10,

37:21, 40:21
**before**
22:16
**began**
35:6
**behind**
18:7
**being**
6:15, 11:10,
12:3, 38:13
**believe**
4:13, 13:16,
15:19, 15:22,
20:3, 21:22,
27:10
**belonged**
25:21, 29:2
**belonging**
16:16, 17:2,
17:10
**best**
4:10, 34:18,
42:5
**beyond**
6:10, 7:10
**bin**
17:15, 17:20
**bit**
27:13, 40:1
**black**
16:13, 16:17,
16:19, 17:2,
17:11, 17:13,
18:2, 22:15
**bond**
8:2, 34:10,
35:9, 39:19,
40:4, 40:5, 41:7
**bookcase**
18:1
**box**
23:17
**brady**
23:17
**brief**
37:22
**briefly**
11:16, 23:13,

40:18
**bring**
23:11
**broken**
22:7
**bunch**
23:17

**C**

**caliber**
17:19, 22:18
**call**
10:2, 19:7
**called**
5:13, 34:5
**camera**
3:16, 38:3,
38:4
**capacity**
16:15
**case**
4:2, 29:7,
37:4, 39:14,
39:15, 42:9
**catherine**
25:5, 25:8,
25:11, 25:13
**cause**
4:20, 7:5,
28:22, 29:8,
29:9, 29:18,
33:8
**cedric**
2:2, 10:20
**center**
10:7, 23:5
**certainly**
28:3, 28:19
**certificate**
42:1
**certify**
42:2
**charges**
29:9, 34:1
**child**
15:20
**cigna**
25:18

circumstances
11:17
clerk
10:9, 34:11,
36:13
client
6:15
closing
2:6
cocaine
12:8, 13:20,
13:22, 14:11,
14:14, 16:22,
17:8, 17:14,
18:15, 18:17,
20:8, 20:16,
22:13, 22:15
come
5:7, 10:7
coming
9:18
commit
27:11
committed
7:6, 7:8
communicated
31:13, 31:16
completed
41:14
concealed
13:20
conclude
41:18
concluded
9:10, 19:14,
41:18, 41:20
conclusion
20:20
conducting
11:22
connect
28:11
connection
21:6, 38:12
consider
29:6
contact
38:11

contained
16:18
containing
13:22, 14:11,
16:22, 17:4,
17:8, 17:14,
18:5, 22:13,
22:15
contempt
4:21, 29:18,
30:5, 30:16,
40:12
contraband
26:12, 26:17,
27:21, 28:14
controlled
12:1, 12:2,
14:21, 18:14,
20:5, 20:13,
21:3, 21:7,
21:17, 21:21,
22:1, 29:14,
40:8
conviction
35:13
corinne
30:16
correct
8:21, 25:3,
25:6, 25:13,
25:16, 25:22,
36:20, 38:16,
39:6, 39:9, 42:3
corrections
30:4
correspondence
32:8
could
6:21, 7:2, 9:3,
9:12, 12:12,
28:12, 33:11,
33:20, 35:10,
35:12, 36:5
couldn't
8:4
counsel
42:7
count
7:22, 27:9,

28:22
counting
7:20
county
10:21, 11:11,
12:6, 15:14,
21:14, 24:9,
39:4
couple
30:1
course
15:20, 16:18,
34:18
court's
5:4, 37:22
courtroom
5:8, 5:9, 6:3,
29:13
crack
40:21
crime
27:12
cross
39:13
cross-examination
24:18
currency
17:22, 22:19
currently
21:12, 29:10
custody
13:18
cut
11:9

**D**

danger
35:12
dangerous
12:2, 18:14,
20:5, 20:13,
21:3, 21:7,
21:18, 21:21,
22:1, 29:14,
40:8
date
6:7, 6:10, 7:9,
7:21, 11:14,

11:18, 14:3,
22:9, 29:11
dated
31:7
day
8:3, 31:3,
31:15, 32:15,
33:7, 41:15,
41:19
days
4:14, 7:15,
7:19, 8:1, 8:2,
8:3
decatur
11:10, 12:5,
14:20, 15:2,
15:12, 15:17,
24:8, 37:2,
37:9, 39:3
december
42:17
decide
40:4
decided
16:2
defendant
5:17, 7:6, 7:7,
15:19, 16:16,
17:2, 17:10,
23:3, 24:13,
31:10, 37:7,
37:12
defendant's
16:7, 16:11,
17:7, 17:12,
17:16, 17:21,
18:1, 18:4,
18:7, 18:9,
18:13, 40:7
delivered
12:4, 12:5,
16:4
delivering
14:10, 15:1
delivery
12:1, 14:3,
14:12, 14:17,
14:21

| | | | |
|---|---|---|---|
| **denied** | **documentation** | **emphasize** | 30:15, 32:12, |
| 29:22 | 30:11 | 40:17 | 34:20 |
| **denying** | **doing** | **employed** | **facts** |
| 40:13 | 32:18, 36:16 | 30:3, 42:8 | 11:17 |
| **department** | **domestically** | **ended** | **family** |
| 10:22, 15:15, | 39:15 | 41:9 | 31:18, 33:21, |
| 21:14, 30:3 | **door** | **enforcement** | 34:2, 35:10, |
| **described** | 15:4, 16:5, | 10:22, 21:13 | 39:10, 39:18 |
| 24:5 | 26:8 | **entered** | **family's** |
| **detective** | **down** | 8:20 | 31:12 |
| 2:2, 5:22, | 16:20, 22:7, | **entertain** | **fast** |
| 10:5, 10:6, | 23:11, 23:17 | 35:9 | 14:18 |
| 10:13, 10:19, | **drug** | **eric** | **faxed** |
| 10:20, 11:4, | 11:1, 11:20, | 19:16, 24:3 | 31:2 |
| 11:6, 14:5, | 13:10, 14:7, | **essentially** | **federal** |
| 14:22, 19:9, | 14:20 | 30:8 | 13:12, 13:14 |
| 19:12, 20:1, | **dryer** | **est** | **fell** |
| 20:7, 20:19, | 18:8 | 15:15 | 40:20 |
| 21:1, 23:14, | **due** | **even** | **female** |
| 24:20, 24:21, | 16:3 | 5:8, 34:5, 35:3 | 5:13, 9:18, |
| 27:14, 27:22, | **during** | **ever** | 15:3, 15:8, |
| 28:2, 28:4, 29:7 | 15:4, 17:12, | 26:11, 26:16 | 38:2, 41:5 |
| **detective's** | 18:20, 34:10 | **everybody** | **file** |
| 19:22, 28:17 | **duty** | 9:9 | 33:5, 37:6 |
| **detention** | 10:18 | **everyone** | **filed** |
| 23:5 | | 9:13, 9:14, | 4:20, 31:3, |
| **determined** | **E** | 10:14, 41:13, | 33:7 |
| 8:2, 13:19 | **e-mail** | 41:18 | **financial** |
| **device** | 35:6, 36:6 | **evidence** | 42:9 |
| 38:7, 38:8 | **e-mailed** | 14:1, 14:16, | **find** |
| **different** | 30:11, 35:22 | 16:19, 28:22 | 28:21, 30:5, |
| 40:1 | **each** | **examination** | 30:16, 33:1, |
| **digital** | 29:9 | 2:2 | 33:14 |
| 17:13, 20:15, | **earlier** | **excuse** | **finding** |
| 22:15 | 34:11 | 12:5, 13:16, | 35:15 |
| **direct** | **earnest** | 14:22, 23:1 | **finds** |
| 11:8, 19:22 | 4:5 | **executed** | 29:7, 29:8 |
| **directly** | **effect** | 15:16 | **fine** |
| 34:13, 38:11, | 32:4, 33:16 | **experience** | 3:20, 12:13 |
| 38:19 | **effectuate** | 21:17 | **fingerprint** |
| **dismissed** | 31:22, 33:13 | **expressing** | 17:11 |
| 6:7, 29:11 | **either** | 6:19 | **fingers** |
| **distribute** | 30:22 | **extended** | 35:20 |
| 22:3 | **eligible** | 16:15 | **finish** |
| **division** | 37:8 | **F** | 19:10 |
| 10:22, 15:15, | **else** | **fact** | **finished** |
| 21:13 | 22:8, 27:3, | 27:18, 28:13, | 5:8 |
| **docket** | 29:3 | | **fire** |
| 41:14, 41:19 | | | 29:1 |

firearm
22:10, 27:12,
27:21, 28:1,
28:5, 28:11,
28:15
firearms
26:12, 26:15,
26:17, 28:10,
29:14, 40:9
first
9:1, 9:3, 10:2,
29:8, 30:2
five
17:7, 22:14,
25:14, 27:9,
27:18, 28:8,
28:22, 29:9
floor
17:3, 17:11
follow-up
33:20, 41:8
followed
32:15, 32:16,
33:3
force
11:1, 11:20,
13:10, 14:7,
14:20
foregoing
42:3
foreman
38:16
form
38:20
forward
14:18
found
22:18, 35:11
four
17:17, 25:20,
32:6, 35:3
frame
8:9
free
41:19
front
6:6, 16:5
further
22:7, 24:16,

26:22, 37:10

### G

gave
33:20, 33:22
gentlemen
19:5
george's
10:21, 11:11,
12:6, 15:14,
21:14, 24:9,
39:4
getting
5:14, 5:16,
13:12
give
6:13, 9:8,
19:18
given
10:11, 28:2,
28:4
go
8:10, 16:2,
16:7, 16:20,
23:16, 25:4
going
6:21, 9:1,
10:19, 12:21,
14:4, 16:12,
18:21, 18:22,
19:1, 20:8,
20:9, 22:6,
29:12, 34:6,
36:3, 36:7,
37:15, 41:8
good
3:2, 3:4, 8:12,
8:18, 11:5,
11:6, 19:20,
24:19, 24:21,
36:18, 41:13,
41:19
grams
13:19, 14:13,
14:14, 14:15,
17:1, 17:5,
17:9, 18:6,
18:22, 19:1,

19:2, 19:3,
20:8, 20:10
granting
40:12
great
12:16, 35:7,
36:18, 41:15
guess
8:22, 9:3

### H

hand
10:8
handgun
16:14, 17:3,
18:2, 22:12,
25:19
hard
33:1, 35:21
hear
3:8, 3:11,
3:12, 3:13,
3:18, 3:19, 5:2,
6:14, 6:21, 7:3,
8:15, 8:16,
9:14, 9:16,
13:2, 19:19,
27:6
heard
5:4, 30:12,
40:2, 40:3
hearing
1:10, 4:5, 4:9,
4:13, 6:7, 6:10,
6:19, 7:11, 8:5,
8:9, 9:2, 9:6,
9:13, 19:6,
30:18, 31:1,
36:11, 40:2,
40:3, 40:19,
41:9
hearings
34:10
heat-sealed
18:5
hefron
5:1, 5:5, 29:21
held
7:6, 8:5, 8:10,

14:16
hello
38:2, 38:6,
41:5
helpful
34:13
here
3:22, 4:16,
6:18, 7:8, 15:9,
16:19, 16:21,
29:12, 35:14,
38:2, 39:3
here's
34:13
hereby
42:2
hernandez
1:11, 4:19,
5:10, 8:13,
8:14, 8:16,
9:15, 15:19,
19:17, 19:18,
20:6, 23:12,
24:3, 26:13,
26:18, 27:11,
28:12, 28:20,
29:2, 29:10,
32:12, 33:5,
36:1, 36:19,
40:21
hernandez's
4:2, 28:1,
28:3, 28:7,
28:8, 28:18,
30:9
hispanic
15:3, 15:8
hold
9:12, 23:16,
40:12
holding
7:10
home
18:11, 25:3,
25:15, 27:17,
28:9, 28:10,
28:15, 39:10
honor
24:12, 26:21,

27:4, 27:9,
27:14, 36:17,
39:16, 41:16
**honorable**
29:19
**hope**
37:21
**hoping**
5:2
**hours**
14:19
**house**
37:14, 38:22
**husband**
25:21, 27:19,
28:14
**hyattsville**
11:10, 12:6,
15:12, 24:8,
37:3, 37:10,
39:4
**hydrochloride**
12:8, 13:20,
14:15, 16:22,
17:8, 17:14,
18:16, 18:18,
20:9, 20:16,
22:14, 22:15

### I

**id**
10:20
**ideally**
6:20
**identification**
21:2, 24:12
**identity**
38:12
**important**
3:19
**incident**
24:5, 24:7,
39:8
**incomprehensible**
3:5, 3:7, 4:7,
4:20, 4:22, 5:3,
5:4, 5:16, 6:6,
6:11, 20:19,

23:10, 27:9,
27:12, 27:13,
27:20, 28:13,
30:7, 31:4,
32:21, 33:19,
34:2, 34:4,
34:6, 34:15,
35:18, 35:19,
35:21, 40:10,
40:18, 40:20,
41:3, 41:6,
41:12
**indicate**
33:4
**indicated**
31:12, 39:18
**indicates**
31:9
**indicating**
28:15, 32:8,
37:7
**indication**
30:19, 30:21
**indicative**
21:19
**individual**
15:18, 23:4,
23:15, 23:21,
24:2, 24:4,
25:12, 34:8
**individuals**
12:10, 27:18
**indulgence**
37:22
**information**
31:14, 32:4,
33:15, 34:1,
34:14, 34:22,
42:7
**initial**
6:22
**initially**
26:1
**inside**
16:1, 17:2,
17:10, 17:15,
17:19, 17:22
**inspector**
12:22, 13:21,

14:5, 14:9,
15:1, 15:5
**inspectors**
11:21, 12:21,
13:5, 13:9, 14:9
**intend**
30:15
**intent**
22:3
**intercepted**
13:4
**interdiction**
21:2, 21:6
**interest**
42:9
**interesting**
35:2
**investigation**
11:12, 12:1
**investigative**
12:10
**involved**
11:12, 24:5
**issue**
30:2, 35:17,
37:4
**issued**
7:5
**issues**
30:2
**items**
16:6, 16:8,
16:10, 18:8,
18:10
**itself**
12:7

### J

**jackie**
1:22, 42:2,
42:16
**jail**
5:11, 6:17,
31:2, 32:8
**job**
1:20
**johnson**
14:10, 15:1,

15:5
**jr**
19:17
**judge**
3:2, 3:10,
4:15, 4:16,
4:22, 5:1, 5:5,
6:6, 8:21,
15:13, 27:8,
29:21, 29:22,
30:8, 31:22,
32:5, 32:13,
32:15, 33:13,
33:16, 34:16,
35:11, 36:10,
37:5, 39:20,
40:10
**july**
7:9, 7:10, 8:4,
8:5, 31:7, 32:9
**juncture**
40:5
**june**
4:18, 7:5, 7:7,
7:20, 8:1, 8:2,
8:3, 8:4, 11:9,
12:19, 12:20,
13:16, 14:4,
24:7, 30:8

### K

**k-9**
13:7, 13:8
**keep**
14:22
**kept**
13:18, 32:18
**knew**
28:2
**know**
3:16, 5:3,
5:15, 6:5, 6:17,
6:21, 7:1,
14:17, 28:21,
32:17, 33:21,
35:11, 35:13,
35:17, 35:19,
35:21, 35:22,

40:18, 40:20,
40:22
**knowledge**
4:11, 28:5
**known**
41:4

**L**

**label**
26:5
**ladies**
19:4
**laid**
20:19
**lapp**
30:16, 30:22
**later**
14:22
**latter**
38:15
**laundry**
18:7
**leads**
21:22
**lease**
38:21
**leaseholder**
37:14, 38:21,
39:11
**least**
6:22
**leave**
41:19
**left**
20:4
**legal**
15:13
**let's**
7:3, 30:2,
30:13, 34:3,
34:21
**level**
32:6, 35:3,
35:4, 37:6
**line**
5:18, 31:12,
37:17, 37:18,
37:19

**link**
19:7, 19:8
**list**
16:21
**little**
40:1
**live**
15:9, 31:19
**lived**
15:7, 26:9,
27:17, 27:19,
28:12
**lives**
39:10
**located**
16:6, 16:15,
17:1, 17:5,
17:9, 17:15,
17:19, 17:22,
18:6, 22:2, 23:5
**location**
11:9, 11:13,
11:18, 20:14,
22:9, 38:13,
39:7
**logan**
34:9, 34:19,
36:6, 36:15,
36:16, 36:22,
37:5, 37:13,
38:10, 38:15,
38:18, 39:16,
41:2, 41:3
**logan's**
36:3
**longer**
30:3
**look**
33:12, 34:5
**looking**
27:9
**looks**
5:21, 6:2, 6:3
**lost**
9:17
**lot**
16:18
**lou**
29:19, 30:3,

30:18
**love**
6:20
**low**
35:6
**lower**
23:13

**M**

**ma'am**
10:13, 11:6,
12:18, 16:12,
18:18, 19:9,
19:12, 20:7,
20:15, 21:4,
21:8, 21:11,
21:15, 22:10,
23:18, 24:10
**mac**
22:11
**madame**
10:2, 11:2,
16:9, 20:2,
38:15
**made**
10:11, 11:8,
32:15, 33:21,
35:15
**magazine**
16:15
**magazines**
25:20
**magistrate**
13:15
**mail**
13:6
**main**
38:21
**make**
20:20, 21:6,
23:7, 32:3, 34:7
**many**
21:9, 28:9
**marijuana**
17:4, 18:6,
19:2, 19:3,
20:10, 25:20
**mark**
19:5

**marker**
9:1
**mary**
29:19, 30:2,
30:18
**maryland**
11:11, 12:7,
24:9, 37:3,
37:10, 39:5
**mask**
23:11, 23:13,
23:19
**masked**
23:9
**matter**
40:6
**mcdunna**
29:19, 30:3,
30:18
**mean**
6:4, 6:22,
8:22, 10:21,
16:14, 31:21,
32:14, 32:16,
33:17, 33:20,
34:18, 35:8,
35:11
**meanwhile**
36:1
**members**
11:19, 14:6,
14:19
**memo**
32:10, 37:6
**mentioned**
22:16, 26:2
**met**
14:6
**metropolitan**
11:1, 11:20,
13:10, 14:7,
14:19
**middle**
19:21
**might**
30:6
**millimeter**
16:14, 17:17,

22:17, 29:1
**mitchell**
2:2, 5:22, 6:1,
10:5, 10:7,
10:13, 10:19,
10:20, 11:5,
11:6, 19:9,
19:12, 20:1,
20:7, 21:1,
23:14, 24:21
**moment**
9:8
**momentarily**
3:20
**moments**
14:22
**month**
36:2, 40:22
**more**
22:11, 30:7
**morning**
3:2, 3:4, 8:12,
11:5, 11:6,
37:21
**most**
3:19
**mother**
15:21, 39:11
**motion**
3:22, 4:20,
4:21, 8:19,
29:16, 29:20,
30:14, 40:12,
41:1
**motions**
30:10
**motorola**
18:3
**much**
36:10, 41:18
**mute**
3:11, 9:9,
36:15, 38:7,
38:8, 40:13
**myself**
11:19, 14:6,
14:19, 15:10

**N**

**name**
10:18, 15:6,

26:5, 38:6
**named**
30:18
**narcotic**
10:22
**narcotics**
21:13, 39:14
**nd**
24:7
**necessary**
33:13, 33:15,
37:11
**need**
32:3, 38:11,
38:18, 38:19,
38:22
**neither**
42:7
**never**
34:5
**next**
7:19, 8:3,
16:5, 16:17,
17:6, 17:16,
17:20, 18:1,
18:7
**nice**
15:13
**night**
17:6, 18:4
**none**
7:17
**note**
9:1
**notes**
12:12
**nothing**
10:12, 24:16,
28:18, 30:12,
41:1
**notice**
30:17, 31:1,
33:7
**noticed**
16:4
**notified**
12:20
**number**
16:14, 31:19

**nunez**
26:3, 26:6,
26:8, 27:16

**O**

**o'clock**
19:13
**oath**
19:11, 20:1
**objection**
20:18
**obviously**
4:19, 5:11
**occasion**
11:11, 21:5
**occur**
11:13, 24:7
**occurred**
11:13, 11:17,
41:10
**offer**
32:11
**office**
11:22, 12:21,
13:5, 13:9,
14:9, 14:16
**officer**
5:18, 5:19,
19:7
**oh**
21:10, 35:15,
36:9
**okay**
3:4, 3:6, 3:15,
3:18, 3:21, 4:3,
7:3, 7:13, 8:7,
8:8, 8:11, 8:15,
8:18, 9:7, 9:8,
10:1, 11:4,
12:9, 16:12,
19:4, 19:8,
19:19, 21:1,
22:4, 23:4,
23:8, 24:17,
25:14, 26:21,
27:2, 29:5,
29:11, 31:5,
31:13, 31:17,

31:20, 32:19,
33:9, 34:12,
35:4, 35:18,
36:14, 36:18,
36:19, 37:16,
38:5, 38:17,
40:15, 41:8,
41:11
**once**
13:7, 13:18,
14:13, 14:16
**one**
9:8, 15:21,
18:3, 25:14,
28:9, 28:13,
34:20
**only**
4:21
**open**
38:3
**operations**
15:15
**opportunity**
6:14, 29:6,
29:17, 40:4
**option**
40:7
**order**
32:1, 32:2,
32:5, 32:13,
32:16, 33:7,
33:13, 33:16
**ordered**
4:18, 30:9,
31:16, 32:6,
37:5
**orders**
8:20
**oscar**
26:3, 26:6,
26:8, 27:16
**other**
12:10, 18:10,
22:14, 27:18,
28:8
**otherwise**
42:10
**out**
11:9, 13:9,

30:9, 33:14,
34:19, 36:11
**outcome**
42:10
**outside**
18:10
**over**
5:10, 5:11,
5:13, 13:10,
21:11
**overburdened**
35:21
**overruled**
20:22
**owner**
28:14, 37:14,
38:21

**P**

**package**
26:1, 26:8,
27:15, 27:16
**packaged**
22:6
**page**
2:2
**pages**
1:21
**paraphernalia**
20:14
**parcel**
12:3, 12:7,
13:4, 13:7,
13:11, 13:13,
13:20, 13:22,
14:11, 14:12,
15:2, 15:6,
15:9, 15:21,
16:4
**part**
3:19, 14:8,
18:11
**particular**
13:11, 40:5
**parties**
42:8
**passed**
6:10

**passing**
7:1
**past**
6:8
**penalties**
10:10
**pending**
13:11, 29:10,
29:16
**people**
25:14, 28:8
**percent**
40:7
**perform**
14:21
**period**
7:1, 7:10
**perjury**
10:10
**person**
15:8, 26:12,
26:18, 26:19,
27:19, 28:18,
35:12, 37:16,
38:11
**persons**
15:6
**phase**
30:10
**phones**
18:2
**phonetic**
12:22, 29:19,
30:17
**place**
14:17
**plastic**
17:4, 17:15,
17:20, 18:5,
22:13
**please**
10:3, 10:7,
10:17, 12:17,
23:13, 24:18
**point**
13:7, 13:17,
13:21, 14:2,
14:5, 15:3,

15:7, 15:14,
15:18, 16:1,
25:2, 26:11,
26:16, 32:17,
32:22, 33:2,
35:8
**pointing**
35:20
**police**
10:22, 15:15,
21:14
**positive**
13:8
**possess**
27:12
**possession**
22:2, 29:13,
40:8
**possessor**
27:21
**postal**
11:20, 11:21,
12:3, 12:21,
12:22, 13:5,
13:9, 13:21,
14:5, 14:9,
15:1, 15:5
**posture**
40:1
**potentially**
5:1, 28:15,
30:16, 33:12
**preference**
6:19
**preliminary**
4:5, 4:8, 4:13,
6:7, 6:9, 7:1,
7:11, 8:8, 9:2,
9:6, 9:13, 40:2,
40:3
**prepared**
26:22
**presence**
21:18, 21:20,
21:21
**present**
6:16, 6:20
**pretrial**
4:18, 8:20,

30:11, 31:4,
31:6, 31:14,
31:18, 32:3,
32:6, 32:11,
32:16, 33:11,
33:15, 34:1,
34:21, 35:2,
35:4, 35:16,
37:5, 37:7,
37:8, 37:12
**previously**
8:20
**prince**
10:21, 11:10,
12:6, 15:14,
21:13, 24:8,
39:4
**prior**
14:11, 14:17
**probable**
28:21, 29:7,
29:9
**probably**
33:18
**problem**
35:14
**proceed**
6:5, 9:2, 26:22
**proceeding**
9:5
**proceedings**
42:4, 42:5
**proffer**
36:22
**proffered**
39:18
**proof**
38:20
**proven**
27:10
**provided**
32:15
**purpose**
37:12
**purposes**
34:20
**put**
23:19

px-9
25:19

**Q**

quantities
18:14
quantity
12:8, 18:15,
20:4, 20:8,
21:17
question
39:2
questions
26:22
quite
30:14

**R**

raise
10:8
rd
7:5
reach
32:10, 34:19,
36:8
reached
13:9
really
7:17
reason
35:16
received
26:8, 27:14,
27:16, 31:6,
33:6
recently
33:22
recognize
23:21, 24:1,
24:2
recollection
12:15
record
4:6, 24:12,
24:14, 42:4
recorded
1:10, 42:4
recording
9:10, 19:14,

41:20, 42:6
recover
26:12, 26:14,
26:17
recovered
16:8, 16:10,
18:11, 18:20,
20:6, 20:14,
22:9, 22:12,
23:3, 25:18,
27:22, 28:6,
28:18
refer
12:12
reference
18:8, 18:17
referral
5:5
referred
4:22, 29:22
reflect
24:12, 24:14
refresh
12:15
refusal
4:17
related
39:15, 42:8
relation
27:11
release
4:18, 30:9,
37:6, 37:8,
37:12
released
4:19, 32:13,
35:12, 35:17
remain
10:7
remained
7:8
remaining
14:15
remedy
33:12
repackaged
14:12
replaced
14:14

request
29:17, 29:18
require
12:14, 29:19,
32:7
residence
15:11, 16:1,
16:3, 16:6, 25:8
residue
17:14, 20:16
respect
8:19
respond
6:14
responded
41:3
response
7:17, 31:4,
31:5, 31:7,
31:9, 31:11
responses
10:11
result
12:9
resume
19:6, 19:13
review
7:6, 29:17
right
3:8, 3:21, 5:6,
9:13, 9:20,
10:2, 10:6,
10:8, 10:17,
11:2, 12:14,
15:10, 16:5,
18:10, 19:1,
19:11, 19:18,
19:21, 20:3,
20:12, 21:5,
21:12, 21:16,
22:8, 22:21,
22:22, 23:7,
23:12, 23:14,
23:19, 24:11,
25:15, 25:21,
26:4, 26:9,
26:13, 27:2,
27:6, 29:3,

30:1, 34:3,
34:8, 34:17,
34:18, 39:22,
40:11, 41:10
rob
4:5
room
18:7
rounds
23:2
rubin
2:4, 2:7, 3:2,
3:5, 3:7, 3:10,
3:14, 3:16,
3:21, 4:7, 4:12,
6:4, 6:11, 6:17,
7:12, 7:14,
7:22, 8:7, 8:11,
8:22, 9:7, 9:16,
9:17, 9:20,
9:22, 10:16,
13:2, 13:3,
20:18, 23:9,
23:10, 24:17,
24:19, 25:1,
26:21, 27:8,
29:4, 29:20,
29:21, 30:6,
30:20, 31:2,
31:8, 31:11,
31:15, 31:18,
31:21, 32:14,
32:20, 33:1,
33:6, 33:17,
34:4, 34:15,
35:1, 35:8,
36:10, 36:21,
37:2, 37:18,
37:20, 38:5,
38:8, 39:6,
39:9, 39:17,
39:20, 40:10,
40:13, 40:14,
40:16, 41:6
ruling
2:9

**S**

safe
16:17, 16:20,

17:3, 17:11
**safety**
23:20
**said**
14:11, 15:2,
15:16, 25:9,
25:20, 26:3,
26:8, 27:21,
27:22, 39:20,
42:4
**sales**
22:7
**same**
20:14, 24:4
**saw**
3:19, 25:5
**say**
21:10, 22:5,
26:14, 34:13
**saying**
14:22
**says**
38:3
**scales**
17:14, 20:16,
20:21, 21:18,
21:20, 22:16
**scanned**
13:7
**scene**
22:2
**scheduled**
5:9
**scheer**
1:22, 42:2,
42:16
**screen**
5:12, 6:16
**scroll**
23:17
**search**
13:12, 13:14,
15:11, 15:16,
16:2, 16:3,
17:12, 26:2,
27:15
**searched**
16:5

**seat**
10:7
**see**
5:12, 8:12,
10:14, 10:15,
23:4, 23:7,
23:15, 23:18,
36:19
**seek**
31:22
**seeking**
30:4, 33:14
**seem**
32:20
**seemed**
33:10
**seen**
15:1
**seized**
13:13, 13:22,
18:9
**seizure**
15:11, 15:16
**semi**
16:13
**semi-automatic**
25:19
**send**
35:6, 36:5,
38:22
**sent**
4:15
**separately**
41:8
**serial**
16:14
**set**
12:4, 14:3,
35:9, 40:5, 41:7
**seven**
17:18, 32:17
**several**
16:6
**sheet**
34:1
**shelf**
16:16, 17:16,
17:20

**shells**
17:18
**shirt**
15:4
**should**
36:13
**show**
4:20, 7:5,
29:18, 33:7
**showing**
4:5
**sign**
36:3, 36:7
**signature-mig2k**
42:14
**signed**
13:15, 13:19,
15:13, 16:3
**since**
32:9
**sir**
23:20, 24:21,
25:8, 26:20
**sister-in-law**
15:22
**sitting**
36:1
**six**
30:11, 32:16
**sixth**
27:19
**smart**
18:2
**solemnly**
10:9
**some**
4:17, 25:2,
38:20
**someone**
32:10
**something**
39:1
**sorry**
3:10, 4:7,
9:22, 13:3,
13:16, 16:18,
20:9, 23:1,
26:14, 34:16,

36:12, 37:20,
37:22
**sort**
35:14
**sought**
38:13
**speak**
34:13
**speaking**
3:5, 36:11
**special**
15:15, 17:18,
22:17
**spoke**
33:21
**sta**
35:13
**stand**
17:6, 18:4
**standing**
10:8
**start**
7:20, 8:1, 30:2
**started**
8:3
**starting**
12:19
**state**
6:13, 10:2,
10:17, 11:2,
16:8, 16:9,
20:2, 25:18,
27:3, 27:10
**state's**
2:3, 4:1, 4:4,
4:10, 5:19,
7:16, 9:5, 10:4,
10:15, 11:4,
11:7, 20:3,
20:11, 24:11,
24:15, 27:4,
35:5, 36:5,
36:9, 39:2,
39:7, 41:15
**stated**
15:8, 17:3
**statement**
28:17, 34:1

| | | | |
|---|---|---|---|
| **statements** | **sunday** | 41:17 | **true** |
| 10:11 | 7:18 | **that'd** | 42:3 |
| **states** | **support** | 35:7 | **truth** |
| 11:21, 12:3, | 29:8, 29:9 | **theoretically** | 10:12 |
| 12:21, 13:5, | **supporting** | 7:19 | **trying** |
| 14:8, 17:21, | 30:10, 42:6 | **things** | 31:22 |
| 22:19 | **supposed** | 40:20 | **two** |
| **statutory** | 5:14, 5:15 | **think** | 4:13, 17:13, |
| 8:9 | **sure** | 3:10, 4:12, | 18:2, 18:5, |
| **stay** | 11:19, 23:7, | 4:15, 7:2, 9:17, | 20:15, 22:15 |
| 36:20, 37:15 | 32:2, 32:3, | 30:6, 33:17, | **type** |
| **steps** | 34:8, 38:1 | 33:18 | 4:17 |
| 12:10, 37:10 | **swear** | **through** | |
| **stewart** | 10:9 | 37:21, 40:21 | **U** |
| 3:3, 4:16 | | **thumbs** | **uh-huh** |
| **sticking** | **T** | 19:19 | 25:10, 40:11 |
| 18:13 | **take** | **tie-dye** | **unable** |
| **still** | 12:11 | 15:4 | 38:3 |
| 4:19, 8:9, | **taking** | **time** | **uncertainty** |
| 19:11, 20:1, | 14:17 | 7:1, 7:6, 7:7, | 27:13 |
| 37:22 | **talk** | 7:10, 8:9, | **under** |
| **straightforward** | 38:19, 39:13 | 13:13, 15:5, | 10:10, 19:11, |
| 7:17 | **task** | 25:7, 26:11, | 20:1 |
| **stream** | 11:1, 11:20, | 26:16, 33:3, | **undercover** |
| 13:6 | 13:10, 14:7, | 41:7 | 14:8 |
| **street** | 14:20 | **timely** | **understood** |
| 11:10, 12:6, | **tasked** | 4:14 | 39:16 |
| 14:21, 15:2, | 14:10 | **times** | **united** |
| 15:12, 15:17, | **tell** | 30:11, 32:17 | 11:21, 12:3, |
| 24:8, 37:2, | 11:16, 41:9 | **today** | 12:20, 13:5, |
| 37:9, 39:4 | **testimony** | 6:19, 7:20, | 14:8, 17:21, |
| **style** | 19:10, 19:22, | 8:6, 33:22 | 22:19 |
| 22:11 | 20:20, 27:5, | **today's** | **unmasked** |
| **submit** | 27:14, 28:2, | 7:9, 30:17, | 23:9 |
| 27:5 | 28:4, 28:10, | 31:1 | **until** |
| **substance** | 29:6 | **totaling** | 8:5 |
| 12:2, 21:18, | **th** | 17:22, 22:19 | **upstairs** |
| 30:14 | 4:18, 7:7, 7:9, | **trained** | 25:3, 25:4, |
| **substances** | 7:10, 7:20, 8:1, | 21:2 | 25:17, 27:20 |
| 18:14, 20:5, | 8:2, 8:4, 8:5, | **training** | **usable** |
| 20:13, 21:3, | 12:19, 12:20, | 21:16 | 34:20 |
| 21:7, 21:22, | 13:17, 14:4, | **transcribed** | **using** |
| 22:1, 29:14, | 29:12, 30:8, | 1:22, 42:5 | 19:7 |
| 40:9 | 31:7, 32:9 | **transcriber** | **ussery** |
| **sufficiency** | **thank** | 42:1 | 12:22, 13:21, |
| 15:13 | 12:18, 24:19, | **transcript** | 14:5, 14:6 |
| **sufficient** | 27:8, 36:10, | 42:3 | |
| 20:19 | 40:16, 41:11, | **trial** | **V** |
| | | 35:22 | **verifiable** |
| | | | 31:10, 32:7, |

32:9, 33:10,
37:9, 38:14
**verified**
32:12
**verify**
37:14, 38:10,
38:12, 39:1
**verifying**
39:3
**view**
35:11
**voice**
5:13, 9:18,
38:2, 41:5
**vulcan**
16:13, 18:2,
22:10, 29:1

**W**

**waiting**
37:21
**walked**
5:19
**want**
6:5, 6:14, 9:1,
16:7, 23:7,
34:7, 38:20,
40:17
**wanted**
5:2, 41:4
**warrant**
13:12, 13:14,
15:11, 15:16,
16:3, 26:2,
27:15
**washington**
11:22
**way**
22:6, 38:9
**we'll**
19:13
**we're**
3:11, 9:1,
19:5, 39:3,
39:22, 40:1
**we've**
41:14
**weapon**
22:11

**weapons**
29:14, 40:9
**wearing**
15:3
**weighing**
16:22, 17:5,
17:8, 18:6
**went**
7:18, 13:14,
13:17, 13:21,
14:2, 14:20,
15:10, 15:14,
16:1, 25:2,
25:3, 25:15,
25:17
**whatever**
35:16
**whatsoever**
28:11
**whoever**
33:3, 37:13
**whole**
10:12
**wife**
15:19
**within**
7:14, 8:9,
12:3, 12:7,
13:6, 13:20
**without**
6:15
**witness**
10:2, 11:3,
20:2
**woman**
26:7, 27:17,
27:20
**working**
3:17, 7:18,
7:19
**worries**
10:1
**wrong**
35:17

**Y**

**yeah**
3:14, 4:12,

5:13, 6:5, 6:11,
6:20, 8:16,
8:22, 33:2,
34:15, 35:7,
37:2, 37:20,
41:6

**Z**

**ziplock**
16:21, 17:4,
17:7, 22:13,
22:14
**zoom**
19:7, 19:8

**$**

**$382**
17:22, 22:20
**$5,000**
40:6
**$500**
35:10, 39:19,
41:7

**1**

**1,070**
20:10
**10**
22:11, 29:12,
40:7
**10,007**
20:9
**11**
2:3
**13**
31:7, 32:9
**15**
12:19, 12:20
**17**
13:17

**2**

**20**
17:8, 17:9,
19:1
**2022**
7:5, 7:7, 11:9,
14:4, 24:8,

31:7, 42:17
**205**
14:15
**20784**
37:3
**22**
24:7
**23**
7:5
**24**
4:18, 7:7, 8:2,
8:4, 29:12, 30:8
**25**
2:4, 7:9, 7:10,
7:20, 8:1, 8:5,
14:4
**250**
14:13
**261**
29:13
**265**
13:19
**27**
2:7
**2723**
10:20
**29**
2:9

**3**

**30**
7:14, 7:22,
8:2, 8:3, 29:12
**350**
17:5, 19:3
**37**
14:18
**38**
17:18, 22:17

**4**

**42**
1:21
**472109**
1:20

**5**

**50**
21:11

**55**
15:10
**5969**
16:14
**5e**
19:17

**6**

**60**
14:14
**6815**
11:10, 12:5,
14:20, 15:2,
15:12, 15:17,
24:8, 37:2,
37:9, 39:3

**7**

**70**
17:1, 18:21,
18:22
**715391**
19:17
**720**
18:6, 19:2

**9**

**9**
14:18, 15:10
**90**
19:1, 20:8
**937**
14:18

# Exhibit C
# Miramba Williams
# Supplemental Case Docs.



# Transcript of Miramba Williams

**Date:** May 7, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

1

2

3

4    IN RE:   MIRAMBA WILLIAMS

5    CASE NO. 2E715535

6

7    May 7, 2022

8    Job No. 472731

9    Pages: 1-5

10   Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

1              SPEAKER:  Miramba Williams

2    2E715535.

3              SPEAKER:  Here on behalf of Mr.

4    William.  I was not able to speak to him, your

5    Honor, so may I address him briefly?

6              THE COURT:  Absolutely.

7              MS. LEE:  May I go proceed?

8    Sorry.

9              THE COURT:  Yes.  Let me just

10   tell you, he's got a preliminary hearing

11   August 2nd.  This courtroom 845.  Discharged

12   with handgun related offenses.  Presently

13   being held without bond.  Go right ahead, Ms.

14   Lee.

15             MS. LEE:  Thank you, your Honor.

16   Mr. Williams, my name is Carry Lee.  I'm an

17   attorney with the Public Defender's office.  I

18   have been appointed to represent you today.

19   However, we did not have the chance to talk

20   before your hearing.  If -- there's two

21   options that you have today.  We can either

22   ask to have this case passed to tomorrow so

1    that you can have the opportunity to speak

2    more in depth with an attorney or if you'd

3    like, I can proceed today with the limited

4    information that I do have on your case.

5    Would you like to proceed today?  If yes, nod.

6    Yes.  So you want to go today.  Not pass to

7    tomorrow?  Today?

8                    THE COURT:  I think he means

9    right now.

10                   MS. LEE:  Okay.  Your Honor, we

11   would be asking that Mr. Williams be released

12   at some part of pretrial release on any level.

13   It does look like he doesn't -- well, he does

14   have -- it looks like he was on probation.

15   However, it appears to have expired back in

16   April, if I'm reading this correctly.  He does

17   not have any failures to appear.  He does live

18   with his father at 2516 Darryl Drive,

19   Apartment 102 in Maryland.  And so because of

20   the lack of a very significant criminal

21   record, because he does live with his father,

22   we are asking Your Honor to consider some form

1   of pretrial release at this time.

2                   THE COURT:  All right.  Ms.

3   Martin.

4                   MS. MARTIN:  I would strongly

5   suspect that he falls under 5202.  He has a

6   prior conviction for possession of a regulated

7   firearm and now he is once again charged with

8   a firearm, so we say no bond.

9                   THE COURT:  Yeah, I don't

10  understand the fascination with guns, but all

11  right.  If he's released, he's not to possess

12  any weapons, firearms or ammunition.  He'll be

13  held without bond or I will authorize pretrial

14  release at option any level.

15                  MS. MARTIN:  Thank you, Your

16  Honor.

17

18

19

20

21

22

```
1            CERTIFICATE OF TRANSCRIBER

2    I, Cynthia Bauerle, do hereby certify

3    that the foregoing transcript is a true and

4    correct record of the recorded proceedings;

5    that said proceedings were transcribed to the

6    best of my ability from the audio recording

7    and supporting information; and that I am

8    neither counsel for, related to, nor employed

9    by any of the parties to this case and have no

10   interest, financial or otherwise, in its

11   outcome.

12

13

14    Cindy Bauerle

15   _____

16   Cynthia Bauerle

17   Date: 12/1/22

18

19

20

21

22
```

**A**

ability
5:6
able
2:4
absolutely
2:6
address
2:5
again
4:7
ahead
2:13
all
4:2, 4:10
ammunition
4:12
any
3:12, 3:17,
4:12, 4:14, 5:9
apartment
3:19
appear
3:17
appears
3:15
appointed
2:18
april
3:16
asking
3:11, 3:22
attorney
2:17, 3:2
audio
5:6
august
2:11
authorize
4:13

**B**

back
3:15
bauerle
1:10, 5:2, 5:16
because
3:19, 3:21

been
2:18
before
2:20
behalf
2:3
being
2:13
best
5:6
bond
2:13, 4:8, 4:13
briefly
2:5

**C**

carry
2:16
case
1:5, 2:22, 3:4,
5:9
certificate
5:1
certify
5:2
chance
2:19
charged
4:7
consider
3:22
conviction
4:6
correct
5:4
correctly
3:16
counsel
5:8
court
2:6, 2:9, 3:8,
4:2, 4:9
courtroom
2:11
criminal
3:20
cynthia
1:10, 5:2, 5:16

**D**

darryl
3:18
date
5:17
defender's
2:17
depth
3:2
discharged
2:11
drive
3:18

**E**

either
2:21
employed
5:8
expired
3:15

**F**

failures
3:17
falls
4:5
fascination
4:10
father
3:18, 3:21
financial
5:10
firearm
4:7, 4:8
firearms
4:12
foregoing
5:3
form
3:22

**G**

go
2:7, 2:13, 3:6
guns
4:10

**H**

handgun
2:12
he'll
4:12
hearing
2:10, 2:20
held
2:13, 4:13
here
2:3
hereby
5:2
honor
2:5, 2:15,
3:10, 3:22, 4:16
however
2:19, 3:15

**I**

information
3:4, 5:7
interest
5:10

**J**

job
1:8

**L**

lack
3:20
lee
2:7, 2:14,
2:15, 2:16, 3:10
level
3:12, 4:14
limited
3:3
live
3:17, 3:21
look
3:13
looks
3:14

**M**

martin
4:3, 4:4, 4:15

maryland
3:19
means
3:8
miramba
1:4, 2:1
more
3:2

**N**

name
2:16
neither
5:8
nod
3:5

**O**

offenses
2:12
office
2:17
okay
3:10
once
4:7
opportunity
3:1
option
4:14
options
2:21
otherwise
5:10
outcome
5:11

**P**

pages
1:9
part
3:12
parties
5:9
pass
3:6
passed
2:22

possess
4:11
possession
4:6
preliminary
2:10
presently
2:12
pretrial
3:12, 4:1, 4:13
prior
4:6
probation
3:14
proceed
2:7, 3:3, 3:5
proceedings
5:4, 5:5
public
2:17

**R**

reading
3:16
record
3:21, 5:4
recorded
5:4
recording
5:6
regulated
4:6
related
2:12, 5:8
release
3:12, 4:1, 4:14
released
3:11, 4:11
represent
2:18
right
2:13, 3:9, 4:2, 4:11

**S**

said
5:5
say
4:8

signature-sc3
5:14
significant
3:20
some
3:12, 3:22
sorry
2:8
speak
2:4, 3:1
speaker
2:1, 2:3
strongly
4:4
supporting
5:7
suspect
4:5

**T**

talk
2:19
tell
2:10
thank
2:15, 4:15
think
3:8
time
4:1
today
2:18, 2:21,
3:3, 3:5, 3:6,
3:7
tomorrow
2:22, 3:7
transcribed
1:10, 5:5
transcriber
5:1
transcript
5:3
true
5:3
two
2:20

**U**

under
4:5

understand
4:10

**W**

want
3:6
weapons
4:12
william
2:4
williams
1:4, 2:1, 2:16,
3:11
without
2:13, 4:13

**Y**

yeah
4:9

**1**

1-5
1:9
102
3:19

**2**

2/1/22
5:17
2022
1:7
2516
3:18
2e
1:5, 2:2
2nd
2:11

**4**

472731
1:8

**5**

5202
4:5

**7**

715535
1:5, 2:2



# Transcript of Miramba Williams

**Date:** December 8, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4    IN RE:   MIRAMBA WILLIAMS

5    CASE NO. 2E715535

6

7    December 8, 2022

8    Job No. 472731

9    Pages: 1-15

10   Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

**JA904**

1              SPEAKER:  Miramba Williams.

2    2E715535.

3              MS. LEE:  Carry Lee, assistant

4    Public Defender on behalf of Mr. Williams when

5    he comes out.

6              THE COURT:  Good morning.  Are

7    you Miramba Williams?

8              MR. WILLIAMS:  Yes.

9              THE COURT:  Good morning to you,

10   sir.  We are here on a motion.

11             MS. LEE:  Yes, your Honor.  A

12   motion for a bond review.

13             THE COURT:  By your attorney.

14             MS. LEE:  Me.  Yes.

15             THE COURT:  And you indicate

16   that he is charged with a six month -- a five

17   year (inaudible.)

18             MS. LEE:  Correct.

19             THE COURT:  What's the -- has he

20   had -- was that possession with intent to

21   distribute addressed in somebody (inaudible)

22   and not (inaudible.)

1                  SPEAKER:  Not that I'm aware.

2                  THE COURT:  Okay.  So Count 2,

3      surprised.  Possession with intent to

4      distribute, which is a felony, which the

5      district court has lost jurisdiction on.

6                  SPEAKER:  Okay.  This is a

7      secondary bond review.  Has it reached its

8      preliminary hearing date yet?

9                  THE COURT:  It was scheduled.

10     I'm trying to -- do not -- he was before the

11     Court on July the 5th and then it was

12     scheduled in here on August the 2nd.  I don't

13     know what happened on August the 2nd, but it

14     was supposed to be in the here.  When he was

15     in front of Judge Kal, he was scheduled to be

16     on August the 2nd in courtroom 261 at 8:45.

17     For reasons I have absolutely no idea,

18     somebody struck the August 2nd date and maybe

19     it's because somebody filed the bail review

20     and set it in here.

21                  SPEAKER:  So we never got the

22     preliminary hearing?

1                THE COURT:  I don't know what

2       you do with this preliminary hearing date, but

3       I know that I've lost jurisdiction, right,

4       because the time ran and he was charged with

5       possession with intent to distribute,

6       distribution with a firearm, use of a firearm

7       while trafficking drugs.  So the best would be

8       -- and all those things were marked no

9       probable cause.  So I don't know if that

10      caused somebody to just say that because of

11      the no probable cause, they didn't do it.  I

12      don't know, but it was supposed to be in

13      court, and then he has no probable cause on

14      lots of his charges, Ms. Martin?

15                MS. LEE:  That's correct.

16                THE COURT:  Do you want to look

17      at this file, Ms. Martin, and see what you're

18      doing with this?

19                MS. MARTIN:  I would like to

20      take a look at that, if you don't mind.

21                THE COURT:  That's a better

22      idea.  It's pretty big.  Okay.  Can I get one

1    of my bailiffs to give this to Ms. Lee?  Thank

2    you, Deputy.

3                    MS. LEE:  Thank you, sir.

4                    THE COURT:  Yes, she did.  Well.

5    I guess they -- well, assuming you buried

6    their lead, sometimes they get confused,

7    right?

8                    SPEAKER:  They gave a trial

9    date, which is (inaudible.)

10                   THE COURT:  They gave him a

11   district court trial date.

12                   SPEAKER:  Yeah.

13                   THE COURT:  So that's why I need

14   you to do something if you want to keep it.

15                   SPEAKER; yes.

16                   THE COURT:  And process those

17   things.

18                   SPEAKER:  Yes, I know.

19                   THE COURT:  Ladies and

20   gentlemen, thank you for your patients.  Just

21   have to take my time, right?  It's a slow

22   (inaudible.)

1              SPEAKER:  I'll go from the back

2    and go forward.

3              THE COURT:  Give a minute.  We

4    just have the two fugitives?

5              SPEAKER:  Two fugitives, Your

6    Honor, and the one more bail for the 10:30 and

7    (inaudible.)

8              THE COURT:  Great.  You're going

9    to want to have a copy of that release in that

10   contract, just in your bag of tricks and if

11   you're ever in courtroom 263, they're usually

12   in their drawer.

13             SPEAKER:  Got it.  Thank you.

14             THE COURT:  Because that's

15   mental health ward.  They try to keep that

16   stash where you can go back and just speak to

17   one of the caseworkers any day and get a copy.

18             SPEAKER:  Thank you, Your Honor.

19             THE COURT:  All right.  Things

20   are working well, Mr. Williams.  I know it

21   doesn't seem like it.  Madam State has now

22   entered Count 2.

1                    SPEAKER:  Two, four, five and

2       nine.

3                    THE COURT:  Two, four, five and

4       nine.

5                    MS. MARTIN:  That's possession

6       with intent to distribute -- distribution, CDS

7       distribution with a firearm.  Firearm

8       (inaudible) and a felony or violent crime.

9       All (inaudible.)

10                   MS. LEE:  Just note our

11      (inaudible) demand, your Honor, for the

12      record.

13                   THE COURT:  It's noted.

14                   MS. LEE:  And then we would --

15      we are already here for a bond review.

16                   THE COURT:  Yes, now we have

17      less to review.  So there's some paperwork

18      here, two, four, five, and nine.  And now he

19      has a trial date of November the 7th in

20      courtroom 262 right next door at 8:45.

21                   MS. LEE:  Thank you, Your Honor.

22                   THE COURT:  All right.  And

1    State, when you looked at this, what's the

2    quantity of the drugs that are involved?

3              MS. MARTIN:  I don't know.

4              THE COURT:  Okay, but there is

5    the allegation of handgun; is that correct?

6              MS. MARTIN:  Yes, and he's still

7    charged with handguns.

8              THE COURT:  Right.  Handguns and

9    drugs.  All right.  And he is currently in a

10   no bond, but pretrial had the option.  So what

11   are you asking me to do?

12             MS. LEE:  Your Honor, at the

13   time of the hearing, Judge Pal indicated that

14   if pretrial was no longer an option to file

15   the motion.  Pretrial is no longer an option.

16             THE COURT:  Because?

17             MS. LEE:  Of a detainer.  So we

18   are -- in Montgomery County, your Honor, and I

19   do have --

20             THE COURT:  But the ideal is to

21   get that matter resolved, all right, because

22   only one Court can go first.  And the question

1    is, do we go first or do they go first?  Since

2    they haven't even scheduled the date, and now

3    -- that's what is scheduled as a detainer in

4    Montgomery County because it's not listed.

5                    MS. LEE:  It's probation.  It's

6    a warrant for probation.  It was -- the

7    violation came after this, after his bond

8    review.

9                    THE COURT:  Okay.  So they're

10   not going to do anything on it till this

11   matter is resolved anyway.

12                   MS. LEE:  Correct.  We are

13   asking for an unsecured bond so that he can be

14   transported there and get that taken care of.

15                   THE COURT:  Okay, but in the dog

16   chasing its tail, it can't be taken care of

17   because this is part of the violation of

18   probation.

19                   MS. LEE:  I understand.

20                   THE COURT:  So I'm saying that's

21   the EI, EIO.  If, you know, I don't know what

22   his backup time is there.  I don't know how

1    strongly they feel about it, but, you know,

2    we've got a pretty significant matter here.

3    So Madam State, where are you on this?

4                    MS. MARTIN:  Yeah.  If we

5    release him, he goes into never never land in

6    Montgomery County.  I can't imagine --

7                    THE COURT:  Because he'll miss

8    it.  You know, is he going to sit there and

9    wait for this and then go back.

10                    MS. MARTIN:  And I don't know

11   how that's actually going to work because

12   the --

13                    THE COURT:  The two

14   jurisdictions have to have a conversation and

15   decide who is to go first.  So somebody has to

16   talk to the State's attorney in Montgomery

17   County because the answer is, you know, they

18   can change that.  If they, you know --

19                    MS. MARTIN:  They can convert

20   that to something else.

21                    THE COURT:  The summons.  I

22   mean, he's already been in jail a period of

1    time.  I don't know how much backup time he

2    has.

3                    MS. LEE:  Forty-three days in

4    this case, Your Honor.

5                    THE COURT:  There you go.  So I

6    don't know how much backup time.  It looks

7    like he has a PBJ.  I mean, is that the one?

8                    MS. LEE:  Yes.  That's my

9    understanding.

10                   THE COURT:  That's an old case.

11                   MS. LEE:  It is, Your Honor.

12                   THE COURT:  That says that was

13   closed on May 1st of 2016.

14                   MS. LEE:  Is that criminal case

15   135109, your Honor?  That's the one that the

16   warrant --

17                   THE COURT:  Well, that's a

18   different problem because it's for possession

19   of a firearm.  This is the one where he's on

20   active probation and I'm sure they're not

21   going to do anything until they figure out

22   what happens with this one.  His probation in

1    that case is not scheduled to expire until

2    October the 28th of '22.

3              MS. MARTIN:  And it's now being

4    told if a violation of probation has been

5    filed and with a gun --

6              THE COURT:  And he's indicated--

7              MS. MARTIN:  Out with another

8    gun allegedly.

9              THE COURT:  Montgomery County

10   registered firearm.  Okay.  So he was required

11   to register and he was in illegal possession

12   of a firearm.  Found guilty on April the 17th

13   of 2019.  Given 18 months and put on three

14   years probation.  So if that's the case, I

15   don't have numbers to match that up, but that

16   looks like the -- that's the 2019 probable

17   case.  He's got significant backup time and

18   he's somebody that's not supposed to have a

19   firearm.  So I appreciate it, but now that

20   there's a detainer, what's the State's

21   position?

22              MS. MARTIN:  I think he should

1    continue to be held on no bond.

2                THE COURT:  What else can you

3    tell me, Ms. Lee?

4                MR. LEE:  Your Honor, his

5    address has been confirmed through his father

6    who was very active in his life.  It's the

7    address indicated on the pretrial intake

8    sheet, which for some reason I can't find at

9    this moment.

10               THE COURT:  That's fine.

11               MS. LEE:  Additionally, he was

12   unemployed prior to being incarcerated, but he

13   does live with his father and he does have a

14   supportive family.  He doesn't have any

15   failures to appear as well is my

16   understanding.  So he does have contacts in

17   the community and is not a flight risk.

18               THE COURT:  Now, there is the

19   State wants me to calculate is why somebody

20   who's been told he can't have a gun keep

21   picking up a gun, as alleged.  And so the

22   State's asking me to leave him in a no bond?

1                    MS. MARTIN:  That's correct,

2        your Honor.

3                    THE COURT:  Mr. Williams, here's

4        what I want you to know.  It might not feel

5        like progress to you, but you've made great

6        progress.  You now have a trial date in

7        November.  The felony charges have been

8        dropped.  I think your attorney needs time to

9        talk with the attorney that's going to be

10       representing you in Montgomery County on the

11       handgun matter.  See if they can work out

12       something.  Maybe it's a package deal.  I have

13       no idea.  I don't know.  It doesn't tell me

14       how much of that 18 months is suspended,

15       whether he can get credit, whether it can be

16       terminated onset because this is going to be

17       taken care.  There's a lot of permeations

18       here, but the one that you need to be focused

19       on is that you're not allowed to own or

20       possess a firearm.  Understood?

21                    MR. WILLIAMS:  Uh-huh.

22                    THE COURT:  Now, your lawyer is

1    saying, Judge, his father really wants him out

2    and I get that and he should, but your conduct

3    when you're out needs to be reflective that

4    you want that.  So what I'm going to ask you

5    to do is work with your lawyer and Ms. Lee can

6    come back to me after she talks with

7    Montgomery County.  She can file a

8    reconsideration.  You can bring it to my

9    attention or anybody, but we just -- the State

10   has to know and the State has to figure out

11   what they're doing with this matter in that

12   regard.  Does that make sense to you, Mr.

13   Williams?

14              MR. WILLIAMS:  Yes.

15              THE COURT:  I know it's not any

16   other words that you had hoped to hear, but

17   there's other things that need to be resolved

18   first.  So at this time, I find that there are

19   no conditions of bond that I could put in

20   place that would provide for the public safety

21   by clear and convincing evidence and/or the

22   witness in this case in particular.  And,

1  therefore, I'm going to leave you in a no

2  bond, but I've given you a trial date of

3  November the 17th.

4          MS. LEE:  Yes.  Thank you, your

5  Honor.

6          THE COURT:  Thank you so much.

7  Good day to you.

8          MS. LEE:  Thank you, your Honor.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER

2     I, Cynthia Bauerle, do hereby certify

3     that the foregoing transcript is a true and

4     correct record of the recorded proceedings;

5     that said proceedings were transcribed to the

6     best of my ability from the audio recording

7     and supporting information; and that I am

8     neither counsel for, related to, nor employed

9     by any of the parties to this case and have no

10    interest, financial or otherwise, in its

11    outcome.

12

13      Cindy Bauerle

14    _____

15    Cynthia Bauerle

16    Date: 12/1/22

17

18

19

20

21

22
```

## A

ability
17:6
about
10:1
absolutely
3:17
active
11:20, 13:6
actually
10:11
additionally
13:11
address
13:5, 13:7
addressed
2:21
after
9:7, 15:6
all
4:8, 6:19, 7:9,
7:22, 8:9, 8:21
allegation
8:5
alleged
13:21
allegedly
12:8
allowed
14:19
already
7:15, 10:22
another
12:7
answer
10:17
any
6:17, 13:14,
15:15, 17:9
anybody
15:9
anything
9:10, 11:21
anyway
9:11
appear
13:15

appreciate
12:19
april
12:12
asking
8:11, 9:13,
13:22
assistant
2:3
assuming
5:5
attention
15:9
attorney
2:13, 10:16,
14:8, 14:9
audio
17:6
august
3:12, 3:13,
3:16, 3:18
aware
3:1

## B

back
6:1, 6:16,
10:9, 15:6
backup
9:22, 11:1,
11:6, 12:17
bag
6:10
bail
3:19, 6:6
bailiffs
5:1
bauerle
1:10, 17:2,
17:15
because
3:19, 4:4,
4:10, 6:14,
8:16, 8:21, 9:4,
9:17, 10:7,
10:11, 10:17,
11:18, 14:16
been
10:22, 12:4,

13:5, 13:20,
14:7
before
3:10
behalf
2:4
being
12:3, 13:12
best
4:7, 17:6
better
4:21
big
4:22
bond
2:12, 3:7,
7:15, 8:10, 9:7,
9:13, 13:1,
13:22, 15:19,
16:2
bring
15:8
buried
5:5

## C

calculate
13:19
came
9:7
can't
9:16, 10:6,
13:8, 13:20
care
9:14, 9:16,
14:17
carry
2:3
case
1:5, 11:4,
11:10, 11:14,
12:1, 12:14,
12:17, 15:22,
17:9
caseworkers
6:17
cause
4:9, 4:11, 4:13

caused
4:10
cds
7:6
certificate
17:1
certify
17:2
change
10:18
charged
2:16, 4:4, 8:7
charges
4:14, 14:7
chasing
9:16
clear
15:21
closed
11:13
come
15:6
comes
2:5
community
13:17
conditions
15:19
conduct
15:2
confirmed
13:5
confused
5:6
contacts
13:16
continue
13:1
contract
6:10
conversation
10:14
convert
10:19
convincing
15:21
copy
6:9, 6:17

| | | | |
|---|---|---|---|
| **correct** | **cynthia** | **drugs** | **firearm** |
| 2:18, 4:15, | 1:10, 17:2, | 4:7, 8:2, 8:9 | 4:6, 7:7, |
| 8:5, 9:12, 14:1, | 17:15 | **E** | 11:19, 12:10, |
| 17:4 | **D** | **ei** | 12:12, 12:19, |
| **could** | **date** | 9:21 | 14:20 |
| 15:19 | 3:8, 3:18, 4:2, | **eio** | **first** |
| **counsel** | 5:9, 5:11, 7:19, | 9:21 | 8:22, 9:1, |
| 17:8 | 9:2, 14:6, 16:2, | **else** | 10:15, 15:18 |
| **count** | 17:16 | 10:20, 13:2 | **five** |
| 3:2, 6:22 | **day** | **employed** | 2:16, 7:1, 7:3, |
| **county** | 6:17, 16:7 | 17:8 | 7:18 |
| 8:18, 9:4, | **days** | **entered** | **flight** |
| 10:6, 10:17, | 11:3 | 6:22 | 13:17 |
| 12:9, 14:10, | **deal** | **even** | **focused** |
| 15:7 | 14:12 | 9:2 | 14:18 |
| **court** | **december** | **ever** | **foregoing** |
| 2:6, 2:9, 2:13, | 1:7 | 6:11 | 17:3 |
| 2:15, 2:19, 3:2, | **decide** | **evidence** | **forty-three** |
| 3:5, 3:9, 3:11, | 10:15 | 15:21 | 11:3 |
| 4:1, 4:13, 4:16, | **defender** | **expire** | **forward** |
| 4:21, 5:4, 5:10, | 2:4 | 12:1 | 6:2 |
| 5:11, 5:13, | **demand** | **F** | **found** |
| 5:16, 5:19, 6:3, | 7:11 | **failures** | 12:12 |
| 6:8, 6:14, 6:19, | **deputy** | 13:15 | **four** |
| 7:3, 7:13, 7:16, | 5:2 | **family** | 7:1, 7:3, 7:18 |
| 7:22, 8:4, 8:8, | **detainer** | 13:14 | **front** |
| 8:16, 8:20, | 8:17, 9:3, | **father** | 3:15 |
| 8:22, 9:9, 9:15, | 12:20 | 13:5, 13:13, | **fugitives** |
| 9:20, 10:7, | **different** | 15:1 | 6:4, 6:5 |
| 10:13, 10:21, | 11:18 | **feel** | **G** |
| 11:5, 11:10, | **distribute** | 10:1, 14:4 | **gave** |
| 11:12, 11:17, | 2:21, 3:4, 4:5, | **felony** | 5:8, 5:10 |
| 12:6, 12:9, | 7:6 | 3:4, 7:8, 14:7 | **gentlemen** |
| 13:2, 13:10, | **distribution** | **figure** | 5:20 |
| 13:18, 14:3, | 4:6, 7:6, 7:7 | 11:21, 15:10 | **give** |
| 14:22, 15:15, | **district** | **file** | 5:1, 6:3 |
| 16:6 | 3:5, 5:11 | 4:17, 8:14, | **given** |
| **courtroom** | **dog** | 15:7 | 12:13, 16:2 |
| 3:16, 6:11, | 9:15 | **filed** | **go** |
| 7:20 | **doing** | 3:19, 12:5 | 6:1, 6:2, 6:16, |
| **credit** | 4:18, 15:11 | **financial** | 8:22, 9:1, 10:9, |
| 14:15 | **door** | 17:10 | 10:15, 11:5 |
| **crime** | 7:20 | **find** | **goes** |
| 7:8 | **drawer** | 13:8, 15:18 | 10:5 |
| **criminal** | 6:12 | **fine** | **going** |
| 11:14 | **dropped** | 13:10 | 6:8, 9:10, |
| **currently** | 14:8 | | 10:8, 10:11, |
| 8:9 | | | |

11:21, 14:9,
14:16, 15:4,
16:1
**good**
2:6, 2:9, 16:7
**great**
6:8, 14:5
**guess**
5:5
**guilty**
12:12
**gun**
12:5, 12:8,
13:20, 13:21

**H**

**handgun**
8:5, 14:11
**handguns**
8:7, 8:8
**happened**
3:13
**happens**
11:22
**he'll**
10:7
**health**
6:15
**hear**
15:16
**hearing**
3:8, 3:22, 4:2,
8:13
**held**
13:1
**here**
2:10, 3:12,
3:14, 3:20,
7:15, 7:18,
10:2, 14:18
**here's**
14:3
**hereby**
17:2
**honor**
2:11, 6:6,
6:18, 7:11,
7:21, 8:12,

8:18, 11:4,
11:11, 11:15,
13:4, 14:2,
16:5, 16:8
**hoped**
15:16

**I**

**idea**
3:17, 4:22,
14:13
**ideal**
8:20
**illegal**
12:11
**imagine**
10:6
**incarcerated**
13:12
**indicate**
2:15
**indicated**
8:13, 13:7
**indicated-**
12:6
**information**
17:7
**intake**
13:7
**intent**
2:20, 3:3, 4:5,
7:6
**interest**
17:10
**involved**
8:2

**J**

**jail**
10:22
**job**
1:8
**judge**
3:15, 8:13,
15:1
**july**
3:11
**jurisdiction**
3:5, 4:3

**jurisdictions**
10:14

**K**

**kal**
3:15
**keep**
5:14, 6:15,
13:20
**know**
3:13, 4:1, 4:3,
4:9, 4:12, 5:18,
6:20, 8:3, 9:21,
9:22, 10:1,
10:8, 10:10,
10:17, 10:18,
11:1, 11:6,
14:4, 14:13,
15:10, 15:15

**L**

**ladies**
5:19
**land**
10:5
**lawyer**
14:22, 15:5
**lead**
5:6
**leave**
13:22, 16:1
**lee**
2:3, 2:11,
2:14, 2:18,
4:15, 5:1, 5:3,
7:10, 7:14,
7:21, 8:12,
8:17, 9:5, 9:12,
9:19, 11:3,
11:8, 11:11,
11:14, 13:3,
13:4, 13:11,
15:5, 16:4, 16:8
**less**
7:17
**life**
13:6
**listed**
9:4

**live**
13:13
**longer**
8:14, 8:15
**look**
4:16, 4:20
**looked**
8:1
**looks**
11:6, 12:16
**lost**
3:5, 4:3
**lot**
14:17
**lots**
4:14

**M**

**madam**
6:21, 10:3
**made**
14:5
**make**
15:12
**marked**
4:8
**martin**
4:14, 4:17,
4:19, 7:5, 8:3,
8:6, 10:4,
10:10, 10:19,
12:3, 12:7,
12:22, 14:1
**match**
12:15
**matter**
8:21, 9:11,
10:2, 14:11,
15:11
**maybe**
3:18, 14:12
**mean**
10:22, 11:7
**mental**
6:15
**might**
14:4
**mind**
4:20

minute
6:3
miramba
1:4, 2:1, 2:7
miss
10:7
moment
13:9
montgomery
8:18, 9:4,
10:6, 10:16,
12:9, 14:10,
15:7
month
2:16
months
12:13, 14:14
more
6:6
morning
2:6, 2:9
motion
2:10, 2:12,
8:15
much
11:1, 11:6,
14:14, 16:6

**N**

need
5:13, 14:18,
15:17
needs
14:8, 15:3
neither
17:8
never
3:21, 10:5
next
7:20
nine
7:2, 7:4, 7:18
note
7:10
noted
7:13
november
7:19, 14:7,

16:3
numbers
12:15

**O**

october
12:2
okay
3:2, 3:6, 4:22,
8:4, 9:9, 9:15,
12:10
old
11:10
one
4:22, 6:6,
6:17, 8:22,
11:7, 11:15,
11:19, 11:22,
14:18
only
8:22
onset
14:16
option
8:10, 8:14,
8:15
other
15:16, 15:17
otherwise
17:10
out
2:5, 11:21,
12:7, 14:11,
15:1, 15:3,
15:10
outcome
17:11
own
14:19

**P**

package
14:12
pages
1:9
pal
8:13
paperwork
7:17

part
9:17
particular
15:22
parties
17:9
patients
5:20
pbj
11:7
period
10:22
permeations
14:17
picking
13:21
place
15:20
position
12:21
possess
14:20
possession
2:20, 3:3, 4:5,
7:5, 11:18,
12:11
preliminary
3:8, 3:22, 4:2
pretrial
8:10, 8:14,
8:15, 13:7
pretty
4:22, 10:2
prior
13:12
probable
4:9, 4:11,
4:13, 12:16
probation
9:5, 9:6, 9:18,
11:20, 11:22,
12:4, 12:14
problem
11:18
proceedings
17:4, 17:5
process
5:16

progress
14:5, 14:6
provide
15:20
public
2:4, 15:20
put
12:13, 15:19

**Q**

quantity
8:2
question
8:22

**R**

ran
4:4
reached
3:7
really
15:1
reason
13:8
reasons
3:17
reconsideration
15:8
record
7:12, 17:4
recorded
17:4
recording
17:6
reflective
15:3
regard
15:12
register
12:11
registered
12:10
related
17:8
release
6:9, 10:5
representing
14:10

required
12:10
resolved
8:21, 9:11,
15:17
review
2:12, 3:7,
3:19, 7:15,
7:17, 9:8
right
4:3, 5:7, 5:21,
6:19, 7:20,
7:22, 8:8, 8:9,
8:21
risk
13:17

**S**

safety
15:20
said
17:5
say
4:10
saying
9:20, 15:1
says
11:12
scheduled
3:9, 3:12,
3:15, 9:2, 9:3,
12:1
secondary
3:7
see
4:17, 14:11
seem
6:21
sense
15:12
set
3:20
sheet
13:8
should
12:22, 15:2
signature-d2yvl
17:13

significant
10:2, 12:17
since
9:1
sir
2:10, 5:3
sit
10:8
six
2:16
slow
5:21
some
7:17, 13:8
somebody
2:21, 3:18,
3:19, 4:10,
10:15, 12:18,
13:19
something
5:14, 10:20,
14:12
sometimes
5:6
speak
6:16
speaker
2:1, 3:1, 3:6,
3:21, 5:8, 5:12,
5:15, 5:18, 6:1,
6:5, 6:13, 6:18,
7:1
stash
6:16
state
6:21, 8:1,
10:3, 13:19,
15:9, 15:10
state's
10:16, 12:20,
13:22
still
8:6
strongly
10:1
struck
3:18
summons
10:21

supporting
17:7
supportive
13:14
supposed
3:14, 4:12,
12:18
sure
11:20
surprised
3:3
suspended
14:14

**T**

tail
9:16
take
4:20, 5:21
taken
9:14, 9:16,
14:17
talk
10:16, 14:9
talks
15:6
tell
13:3, 14:13
terminated
14:16
th
12:2, 12:12,
16:3
thank
5:1, 5:3, 5:20,
6:13, 6:18,
7:21, 16:4,
16:6, 16:8
therefore
16:1
things
4:8, 5:17,
6:19, 15:17
think
12:22, 14:8
three
12:13
through
13:5

till
9:10
time
4:4, 5:21,
8:13, 9:22,
11:1, 11:6,
12:17, 14:8,
15:18
told
12:4, 13:20
trafficking
4:7
transcribed
1:10, 17:5
transcriber
17:1
transcript
17:3
transported
9:14
trial
5:8, 5:11,
7:19, 14:6, 16:2
tricks
6:10
true
17:3
try
6:15
trying
3:10
two
6:4, 6:5, 7:1,
7:3, 7:18, 10:13

**U**

uh-huh
14:21
understand
9:19
understanding
11:9, 13:16
understood
14:20
unemployed
13:12
unsecured
9:13

| | | |
|---|---|---|
| **until** | **years** | **472731** |
| 11:21, 12:1 | 12:14 | 1:8 |
| **use** | **1** | **5** |
| 4:6 | **1** | **5th** |
| **usually** | 1:9 | 3:11 |
| 6:11 | **10** | **7** |
| **V** | 6:6 | **715535** |
| **violation** | **135109** | 1:5, 2:2 |
| 9:7, 9:17, 12:4 | 11:15 | **7th** |
| **violent** | **15** | 7:19 |
| 7:8 | 1:9 | **8** |
| **W** | **17** | **8** |
| **wait** | 12:12, 16:3 | 3:16, 7:20 |
| 10:9 | **18** | |
| **want** | 12:13, 14:14 | |
| 4:16, 5:14, | **1st** | |
| 6:9, 14:4, 15:4 | 11:13 | |
| **wants** | **2** | |
| 13:19, 15:1 | **2/1/22** | |
| **ward** | 17:16 | |
| 6:15 | **2016** | |
| **warrant** | 11:13 | |
| 9:6, 11:16 | **2019** | |
| **we've** | 12:13, 12:16 | |
| 10:2 | **2022** | |
| **whether** | 1:7 | |
| 14:15 | **22** | |
| **williams** | 12:2 | |
| 1:4, 2:1, 2:4, | **261** | |
| 2:7, 2:8, 6:20, | 3:16 | |
| 14:3, 14:21, | **262** | |
| 15:13, 15:14 | 7:20 | |
| **witness** | **263** | |
| 15:22 | 6:11 | |
| **words** | **28** | |
| 15:16 | 12:2 | |
| **work** | **2e** | |
| 10:11, 14:11, | 1:5, 2:2 | |
| 15:5 | **2nd** | |
| **working** | 3:12, 3:13, | |
| 6:20 | 3:16, 3:18 | |
| **Y** | **3** | |
| **yeah** | **30** | |
| 5:12, 10:4 | 6:6 | |
| **year** | **4** | |
| 2:17 | **45** | |
| | 3:16, 7:20 | |

# Exhibit D
# Elmer Laguan-Salinas
# Supplemental Case Docs.



# Transcript of Elmer Laguan Salinas

**Date:** March 17, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

JA928

1

2

3

4   IN RE: ELMER LAGUAN SALINAS

5   CASE NO. 3E732028 and 1E721379

6

7   March 17, 2022

8   Job No. 472731

9   Pages: 1-9

10  Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

1              THE COURT:  Elmer Laguan

2     Salinas.  3E732028 and 1E721379.

3              PUBLIC DEFENDER:  Good

4     afternoon, Your Honor.  Peter (inaudible)

5     Public Defender on behalf of Mr. Laguan

6     Salinas.  The Public Defendant's office is

7     entering and waiving.  He will need an

8     interpreter.  I'll just wait a minute to see

9     that he's on.

10              THE JUDGE:  Okay.  We'll just

11     wait for the interpreter to join us.  Thank

12     you, Mr. (Inaudible.)

13     (Short recess.)

14              THE COURT:  Now call in the case

15     of Elmer Laguan Salinas.  1E721379 and

16     3E732028.

17              PUBLIC DEFENDER:  For the

18     record, Your Honor, (inaudible) on behalf of

19     Mr. Laguan Salinas.  The Public Defender's

20     office is entering and waiving in both matters

21     and Mr. Laguan Salinas does need the

22     assistance of an interpreter.

1          THE INTERPRETER:  Jenny Garcia.

2   Can everyone hear me?  I'm not sure.

3          THE COURT:  Yes, we can.

4          INTERPRETER:  Okay.  Jenny

5   Garcia.  Spanish interpreter.  Good afternoon.

6          THE COURT:  Good afternoon.  In

7   the 3E case, he has a trial date set for May

8   25th and 262 at 10 a.m.  In the 1E case he has

9   a preliminary hearing date April 15th at 8:45

10  in 261.  I will hear from you, Mr. Aim.

11          PUBLIC DEFENDER:  Thank you,

12  your Honor.  Your Honor, I want to start with

13  the 1E case in which Mr. Laguan is currently

14  held without bond.  Your Honor, I want to

15  start with statement of charges.  Your Honor,

16  basically, the events in this case allegedly

17  occurred on the 30th of September 2020.  So a

18  year and a half ago.  Your Honor, the case

19  wasn't reported until five days later on the

20  4th of October 2020.  And, your Honor, for

21  whatever reason, the case wasn't even charged

22  until the 8th of July of the following year

1   2021 and your Honor, Mr. Laguan did not know

2   about these charges.  It's not that he was

3   trying to evade charges services.  He just

4   simply didn't know that there was a warrant

5   out.  As for the allegations themselves, no

6   gun was ever recovered in this case.  And so

7   I don't believe the State will be able to make

8   those charges that involve (inaudible) not to

9   consider that (inaudible) bond.  Your Honor,

10  I'm not even sure whether the State is aware

11  of whether this is a viable case anymore.  And

12  ultimately and most importantly, your Honor,

13  for bond, for purposes of bond, there's been

14  an arrest warrant pending since July of last

15  year, but there's no allegation that Mr.

16  Laguan picked up any new charges during that

17  time.  He doesn't (inaudible) to the

18  community.  Your Honor, according to the

19  pretrial sheet, he does have some prior

20  context, but he's not currently on parole or

21  probation.  Your Honor, Mr. Laguan has been

22  working in construction for 10 years.  He

1   currently works for the Arrow Group and he's

2   the primary bread winner for his three

3   children, 14, nine and six years old.  He

4   believes his family can post $500, but

5   unfortunately, they don't even know that he's

6   in jail right now.  He hasn't been able to

7   contact them.  So, your Honor, if your Honor

8   is inclined to do a monetary bond, we'd ask

9   for $500.  Otherwise, we'd ask for an

10  unsecured bond.  And finally, Your Honor, I'm

11  not sure if I mentioned this.  He has

12  absolutely no ITA's.  He will be back in court

13  for this case.

14              THE COURT:  And as to the 3E

15  case?

16              PUBLIC DEFENDER:  Your Honor, as

17  to the 3E case, I think -- ultimately, I was

18  hoping that your Honor would issue a ruling on

19  the 1E case first to see if there is, you

20  know, (inaudible) necessary for 3E case.  I

21  was going to ask for that.

22              THE COURT:  Thank you.  Ms.

1   Martin, your position?

2               MS. MARTIN:  (Inaudible) Mr. Aim

3   has said just for (inaudible) pretrial release

4   because the charging document indicates that

5   the victim found a loaded magazine behind her

6   TV set after she tossed the (inaudible,) which

7   would lead to believe that a gun was actually

8   present.

9               THE COURT:  Thank you.  So I did

10  review the allegations in this case where

11  allegedly a gun was pointed at the witness

12  after racking the side of the gun?

13              INTERPRETER:  Just a moment,

14  please.  The interpreter needs to look up the

15  correct word for this.

16              THE COURT:  And said that he was

17  going to get the daughter one way or another

18  and he is a prohibited person, according to

19  his pretrial intake sheet, from possessing a

20  firearm.  So the Court does find pursuant to

21  Willer V. State by clear and convincing

22  evidence that he is a dangerous to the

1   witness, as well as the community.  He will be

2   held without bond.  I will give pretrial

3   release the option at level four.  He would

4   have to verify his address and live at that

5   address.  He has to have no contact with any

6   witness in this case.  Stay away from the

7   complaining witness' residence and not own or

8   possess any weapons, firearms, ammunition or

9   controlled dangerous substance of any kind.

10                  PUBLIC DEFENDER:  And your

11  Honor, for the record, would Your Honor

12  consider ordering pretrial release because the

13  option has been taking well over the two weeks

14  hearing, three or four weeks for (inaudible.)

15                  THE COURT:  I do understand, Mr.

16  Aim, but in this case the Court has considered

17  it and will deny that request.

18                  PUBLIC DEFENDER:  Understood,

19  and your Honor, in the other case, the 3E

20  case, we would not order a nominal bond.  He

21  is currently being held on $2,500 bond that

22  he's not been able to post and that

1    (inaudible.)   And, Your Honor, given that the

2    next file date in this case is actually later

3    than the preliminary hearing date in the 1E

4    case, we would ask that you lower the bond in

5    the 3E case perhaps by imposing the 10 percent

6    option in the 3E case.

7                  THE COURT:  Any objection, Ms.

8    Martin?

9                  MS. MARTIN:  No, your Honor.

10                 THE COURT:  The Court will grant

11   that request.  The bond will be $2,500 with

12   the 10 percent option and the same conditions

13   from the other case are in place in this one

14   as well.  Thank you, Mr. Aim.  thank you,

15   Madam Interpreter.

16                 THE INTERPRETER:  Is that the

17   only case?

18                 THE COURT:  Yes, ma'am.  Thank

19   you.

20                 THE INTERPRETER:  Thank you.

21   You have a good afternoon.

22                 THE COURT:  You do the same.

```
 1            CERTIFICATE OF TRANSCRIBER

 2    I, Cynthia Bauerle, do hereby certify

 3    that the foregoing transcript is a true and

 4    correct record of the recorded proceedings;

 5    that said proceedings were transcribed to the

 6    best of my ability from the audio recording

 7    and supporting information; and that I am

 8    neither counsel for, related to, nor employed

 9    by any of the parties to this case and have no

10    interest, financial or otherwise, in its

11    outcome.

12

13        Cindy Bauerle

14    _____

15    Cynthia Bauerle

16    Date: 12/1/22

17

18

19

20

21

22
```

## A

**ability**
9:6
**able**
4:7, 5:6, 7:22
**about**
4:2
**absolutely**
5:12
**according**
4:18, 6:18
**actually**
6:7, 8:2
**address**
7:4, 7:5
**after**
6:6, 6:12
**afternoon**
2:4, 3:5, 3:6,
8:21
**ago**
3:18
**aim**
3:10, 6:2,
7:16, 8:14
**allegation**
4:15
**allegations**
4:5, 6:10
**allegedly**
3:16, 6:11
**ammunition**
7:8
**another**
6:17
**any**
4:16, 7:5, 7:8,
7:9, 8:7, 9:9
**anymore**
4:11
**april**
3:9
**arrest**
4:14
**arrow**
5:1
**assistance**
2:22

**audio**
9:6
**aware**
4:10
**away**
7:6

## B

**back**
5:12
**basically**
3:16
**bauerle**
1:10, 9:2, 9:15
**because**
6:4, 7:12
**been**
4:13, 4:21,
5:6, 7:13, 7:22
**behalf**
2:5, 2:18
**behind**
6:5
**being**
7:21
**believe**
4:7, 6:7
**believes**
5:4
**best**
9:6
**bond**
3:14, 4:9,
4:13, 5:8, 5:10,
7:2, 7:20, 7:21,
8:4, 8:11
**both**
2:20
**bread**
5:2

## C

**call**
2:14
**case**
1:5, 2:14, 3:7,
3:8, 3:13, 3:16,
3:18, 3:21, 4:6,

4:11, 5:13,
5:15, 5:17,
5:19, 5:20,
6:10, 7:6, 7:16,
7:19, 7:20, 8:2,
8:4, 8:5, 8:6,
8:13, 8:17, 9:9
**certificate**
9:1
**certify**
9:2
**charged**
3:21
**charges**
3:15, 4:2, 4:3,
4:8, 4:16
**charging**
6:4
**children**
5:3
**clear**
6:21
**community**
4:18, 7:1
**complaining**
7:7
**conditions**
8:12
**consider**
4:9, 7:12
**considered**
7:16
**construction**
4:22
**contact**
5:7, 7:5
**context**
4:20
**controlled**
7:9
**convincing**
6:21
**correct**
6:15, 9:4
**counsel**
9:8
**court**
2:1, 2:14, 3:3,

3:6, 5:12, 5:14,
5:22, 6:9, 6:16,
6:20, 7:15,
7:16, 8:7, 8:10,
8:18, 8:22
**currently**
3:13, 4:20,
5:1, 7:21
**cynthia**
1:10, 9:2, 9:15

## D

**dangerous**
6:22, 7:9
**date**
3:7, 3:9, 8:2,
8:3, 9:16
**daughter**
6:17
**days**
3:19
**defendant's**
2:6
**defender**
2:3, 2:5, 2:17,
3:11, 5:16,
7:10, 7:18
**defender's**
2:19
**deny**
7:17
**document**
6:4
**during**
4:16

## E

**elmer**
1:4, 2:1, 2:15
**employed**
9:8
**entering**
2:7, 2:20
**evade**
4:3
**even**
3:21, 4:10, 5:5
**events**
3:16

ever
4:6
everyone
3:2
evidence
6:22

**F**

family
5:4
file
8:2
finally
5:10
financial
9:10
find
6:20
firearm
6:20
firearms
7:8
first
5:19
five
3:19
following
3:22
foregoing
9:3
found
6:5
four
7:3, 7:14

**G**

garcia
3:1, 3:5
give
7:2
given
8:1
going
5:21, 6:17
good
2:3, 3:5, 3:6,
8:21
grant
8:10

group
5:1
gun
4:6, 6:7, 6:11,
6:12

**H**

half
3:18
hear
3:2, 3:10
hearing
3:9, 7:14, 8:3
held
3:14, 7:2, 7:21
hereby
9:2
honor
2:4, 2:18,
3:12, 3:14,
3:15, 3:18,
3:20, 4:1, 4:9,
4:12, 4:18,
4:21, 5:7, 5:10,
5:16, 5:18,
7:11, 7:19, 8:1,
8:9
hoping
5:18

**I**

importantly
4:12
imposing
8:5
inclined
5:8
indicates
6:4
information
9:7
intake
6:19
interest
9:10
interpreter
2:8, 2:11,
2:22, 3:1, 3:4,

3:5, 6:13, 6:14,
8:15, 8:16, 8:20
involve
4:8
issue
5:18
ita's
5:12

**J**

jail
5:6
jenny
3:1, 3:4
job
1:8
join
2:11
judge
2:10
july
3:22, 4:14

**K**

kind
7:9
know
4:1, 4:4, 5:5,
5:20

**L**

laguan
1:4, 2:1, 2:5,
2:15, 2:19,
2:21, 3:13, 4:1,
4:16, 4:21
last
4:14
later
3:19, 8:2
lead
6:7
level
7:3
live
7:4
loaded
6:5

look
6:14
lower
8:4

**M**

ma'am
8:18
madam
8:15
magazine
6:5
make
4:7
march
1:7
martin
6:1, 6:2, 8:8,
8:9
matters
2:20
mentioned
5:11
minute
2:8
moment
6:13
monetary
5:8
most
4:12

**N**

necessary
5:20
need
2:7, 2:21
needs
6:14
neither
9:8
new
4:16
next
8:2
nine
5:3
nominal
7:20

**O**

objection
8:7
occurred
3:17
october
3:20
office
2:6, 2:20
okay
2:10, 3:4
old
5:3
one
6:17, 8:13
only
8:17
option
7:3, 7:13, 8:6,
8:12
order
7:20
ordering
7:12
other
7:19, 8:13
otherwise
5:9, 9:10
out
4:5
outcome
9:11
over
7:13
own
7:7

**P**

pages
1:9
parole
4:20
parties
9:9
pending
4:14
percent
8:5, 8:12

perhaps
8:5
person
6:18
peter
2:4
picked
4:16
place
8:13
please
6:14
pointed
6:11
position
6:1
possess
7:8
possessing
6:19
post
5:4, 7:22
preliminary
3:9, 8:3
present
6:8
pretrial
4:19, 6:3,
6:19, 7:2, 7:12
primary
5:2
prior
4:19
probation
4:21
proceedings
9:4, 9:5
prohibited
6:18
public
2:3, 2:5, 2:6,
2:17, 2:19,
3:11, 5:16,
7:10, 7:18
purposes
4:13
pursuant
6:20

**R**

racking
6:12
reason
3:21
recess
2:13
record
2:18, 7:11, 9:4
recorded
9:4
recording
9:6
recovered
4:6
related
9:8
release
6:3, 7:3, 7:12
reported
3:19
request
7:17, 8:11
residence
7:7
review
6:10
right
5:6
ruling
5:18

**S**

said
6:3, 6:16, 9:5
salinas
1:4, 2:2, 2:6,
2:15, 2:19, 2:21
same
8:12, 8:22
see
2:8, 5:19
september
3:17
services
4:3
set
3:7, 6:6

sheet
4:19, 6:19
short
2:13
side
6:12
signature-5tm1q
9:13
simply
4:4
since
4:14
six
5:3
some
4:19
spanish
3:5
start
3:12, 3:15
state
4:7, 4:10, 6:21
statement
3:15
stay
7:6
substance
7:9
supporting
9:7
sure
3:2, 4:10, 5:11

**T**

taking
7:13
th
3:8, 3:9, 3:17
thank
2:11, 3:11,
5:22, 6:9, 8:14,
8:18, 8:20
themselves
4:5
think
5:17
three
5:2, 7:14

| | | | |
|---|---|---|---|
| **time** | **want** | **10** | **732028** |
| 4:17 | 3:12, 3:14 | 3:8, 4:22, 8:5, | 1:5, 2:2, 2:16 |
| **tossed** | **warrant** | 8:12 | |
| 6:6 | 4:4, 4:14 | **14** | **8** |
| **transcribed** | **way** | 5:3 | **8** |
| 1:10, 9:5 | 6:17 | **15** | 3:9 |
| **transcriber** | **we'll** | 3:9 | **8th** |
| 9:1 | 2:10 | **17** | 3:22 |
| **transcript** | **weapons** | 1:7 | |
| 9:3 | 7:8 | **1e** | |
| **trial** | **weeks** | 1:5, 2:2, 2:15, | |
| 3:7 | 7:13, 7:14 | 3:8, 3:13, 5:19, | |
| **true** | **whatever** | 8:3 | |
| 9:3 | 3:21 | **2** | |
| **trying** | **whether** | **2/1/22** | |
| 4:3 | 4:10, 4:11 | 9:16 | |
| **tv** | **willer** | **2020** | |
| 6:6 | 6:21 | 3:17, 3:20 | |
| **two** | **winner** | **2021** | |
| 7:13 | 5:2 | 4:1 | |
| **U** | **without** | **2022** | |
| **ultimately** | 3:14, 7:2 | 1:7 | |
| 4:12, 5:17 | **witness** | **25** | |
| **understand** | 6:11, 7:1, 7:6, | 3:8 | |
| 7:15 | 7:7 | **261** | |
| **understood** | **word** | 3:10 | |
| 7:18 | 6:15 | **262** | |
| **unfortunately** | **working** | 3:8 | |
| 5:5 | 4:22 | **3** | |
| **unsecured** | **works** | **30** | |
| 5:10 | 5:1 | 3:17 | |
| **until** | **Y** | **3e** | |
| 3:19, 3:22 | **year** | 1:5, 2:2, 2:16, | |
| **V** | 3:18, 3:22, | 3:7, 5:14, 5:17, | |
| **verify** | 4:15 | 5:20, 7:19, 8:5, | |
| 7:4 | **years** | 8:6 | |
| **viable** | 4:22, 5:3 | **4** | |
| 4:11 | **$** | **45** | |
| **victim** | **$2,500** | 3:9 | |
| 6:5 | 7:21, 8:11 | **472731** | |
| **W** | **$500** | 1:8 | |
| **wait** | 5:4, 5:9 | **4th** | |
| 2:8, 2:11 | **1** | 3:20 | |
| **waiving** | **1-9** | **7** | |
| 2:7, 2:20 | 1:9 | **721379** | |
| | | 1:5, 2:2, 2:15 | |



# Transcript of Elmer Laguan Salinas

**Date:** December 5, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4  IN RE: ELMER LAGUAN SALINAS

5  CASE NO. 1E00721379

6

7  December 5, 2022

8  Job No. 472731

9  Pages: 1-13

10  Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

1          SPEAKER:  Elmer Laguan Salinas

2    1E721379.

3          THE COURT:  Okay.  Hi.  How are

4    you?

5          MALE ATTORNEY:  Your Honor, how

6    are you, sir?

7          THE COURT:  Good.  Good.  Okay.

8    And is that Mr. Laguan Salinas?

9          MALE ATTORNEY:  He's nodding,

10   Your Honor.

11         THE COURT:  Okay.  Thumbs up.

12   So what are we here for?  Is this for bond

13   review?  What are we here for?

14         MS. MARTIN:  Your Honor, it

15   should only be a bond review.  It was put on

16   the 1015 docket and I'll stop, Mr. Esla.  It

17   was my understanding that at the preliminary

18   hearing, Judge Danton did not find probable

19   cause for count two, which was assault in the

20   first degree.  That would have been the only

21   felony.  At that time, a trial date should

22   have been set, but for whatever reason, it

1    wasn't.

2                    MALE ATTORNEY:  Your Honor, I

3    was not present at the hearing and I just got

4    a message from Mr. Ernst that says he

5    represents Mr. Laguan Salinas.  So we need to

6    figure out this internal matter before we

7    proceed.

8                    THE COURT:  Sure.  That's fine.

9    While you work it out, I'm going to take a

10   five minute break then.

11                   SPEAKER:  Ron, can I call you?

12                   SPEAKER:  Yes.

13   (Short recess.)

14                   THE COURT:  Okay.  We're back on

15   the record.  This is the matter of Elmer

16   Laguan Salinas.  Case number 1E00721379.  All

17   right.  Do we know who is representing?

18                   MALE ATTORNEY:  Christopher

19   (inaudible) on behalf of Mr. Salinas, Your

20   Honor.

21                   THE COURT:  And does he need an

22   interpreter?

1              MALE ATTORNEY:  His probation

2     says he does.  I was just assigned this

3     recently.

4              THE COURT:  Okay.  All right.

5     So it's my understanding that today is the to

6     be dismissed date.  So what is the status of

7     this matter?

8              MALE ATTORNEY:  So Ms. Martin

9     was just saying that -- so I was not assign at

10    that time, but Ms. Martin was just saying that

11    after hearing and I think she was going on to

12    say that that was the only felony.  However,

13    it appears to be that Count 1, which is

14    attempted (inaudible) and Count 4, which is

15    (inaudible) 33c, which is felony and

16    possession of a regulated firearm (inaudible)

17    felony as well.

18              MS. MARTIN:  I would agree on

19    Count 4.  Count 1 is charged as common law, so

20    I believe the Court has jurisdiction over

21    that.

22              THE COURT:  All right.  Well,

1    let me ask you, so what's the common law

2    attempted home invasion, so Ms. Martin, you're

3    saying it's not a felony?

4                    MS. MARTIN:  I'm saying it's

5    county private in the district court.

6                    THE COURT:  Okay.  All right.

7    And so the 2B dismissed was really going

8    towards the felony.

9                    MALE ATTORNEY:  Your Honor, I'm

10   looking at the statement of charges and Count

11   1 is charged.  It is under criminal Article

12   6-202.  The modified home invasion.

13                   THE COURT:  The statement of

14   charges -- let me see.  I have is -- I have it

15   as first charge and it's statute CL common

16   law.  That's all I have.

17                   MALE ATTORNEY:  This may be a

18   highly technical point, but I mean, the crime

19   of motivation is (inaudible.)  It's assumed

20   common law or can be a common law and I'm

21   looking at the statement of charges.  This is

22   case 1E00721379.  It's the case involving the

1    alleged incident with Miss Perez Morales, the

2    mother of Mr. Laguan Salinas' girlfriend.  It

3    says that it's charged as -- signed by an

4    additional officer and it says it's charged

5    under 6-202.  I think I see the confusion.  On

6    the left hand side it's coded as statue CL.  I

7    do see that, but in the actual description of

8    the charge, it says in violation of the CR

9    6-202.

10                    THE COURT:  I see that, too,

11   now.  Yes.

12                    MS. MARTIN:  I think because

13   they charged it as an attempt, it falls into

14   common law.

15                    MALE ATTORNEY:  It's an attempt

16   to just (inaudible.)  I mean, I don't know if

17   the State's position is that an attempt for

18   murder to be tried in district court.

19                    MS. MARTIN:  Attempted murder is

20   codified as an actual charge, as well as

21   attempting robbery is codified as an actual

22   charge.  I don't think this one has quite

1   graduated to an actual charge as of yet.

2                   MALE ATTORNEY:  My position

3   would be that it is, in fact, charged

4   (inaudible) actual witness.  Stated charge.

5   Not just people exposed and second that

6   (inaudible) my position that even if it's

7   attempted motivation charged by aiding is a

8   felony (inaudible.)

9                   MS. MARTIN:  Well, at this

10  juncture, Your Honor, the State is moving to

11  enter Count 4, firearm possession, post felony

12  conviction, (inaudible.)

13                  THE COURT:  All right.  That's

14  --  speed trial demand is noted.  I've

15  indicated that one felony count has been no

16  pros -- let me just write that down here.  So

17  the trial date is August 18, 2022 in

18  Hidesville Courtroom three at 8:45 a.m. and

19  with respect to -- yeah.  I'm just thinking

20  with respect to the attempted home invasion,

21  the parties can make their arguments to the

22  Court as to whether they have jurisdiction or

1   not.  It's either been charged as a felony and

2   the to be dismissed date has come and gone or

3   it's not a felony and the trial on that count

4   will be held on that same day.

5            MALE ATTORNEY:  Understood, Your

6   Honor.  Given the circumstances here, I would

7   also request that (inaudible.)  For field.

8            THE COURT:  All right.

9            MALE ATTORNEY:  Mr. Laguan

10  Salinas is 30 years old.  He has lived here in

11  Maryland for about ten years.  He has three

12  children that he supports working a

13  construction job for a company called Air

14  Walled Group and one of the reasons, Your

15  Honor, I'm asking about getting him released

16  is that his children need him to get back to

17  working, so that he can once again financially

18  support them.  Your Honor, the charges in this

19  case are serious.  They weren't more serious,

20  but I believe a close reading of the state of

21  attorneys reveals that this is not a common

22  piece of violence.  It's an odd case of what's

1   essentially a family dispute.  It seems -- I

2   mean, it seems clear to me that the alleged

3   victim was never really under any violent

4   threat.  I don't think it's very clear what

5   happened with the gun that's alleged to have

6   been used in this case, but what is clear is

7   that it wasn't ever pointed at the alleged

8   victim.  There weren't any pertinent words

9   spoken.  Mr. Laguan Salinas just wanted to

10  enter the home that he had been in multiple

11  times before.  In other words, I do believe

12  there are issues that could be imposed as the

13  (inaudible) the first (inaudible) contacted

14  this location or the alleged victim.  So Mr.

15  Laguan Salinas does have a home to return to.

16  It is not, of course, (inaudible) and so I

17  would request that the Court -- sorry, your

18  Honor.  Just getting through my notes here.  I

19  would request the Court authorize pre

20  (inaudible) at any level.  I also believe this

21  is the kind of case where a monetary bond may

22  be appropriate and I think a four figure bond

1   would be a significant financial position on

2   Mr. Laguan Salinas (inaudible) report and the

3   no contact order would suffice and protect the

4   community.  So that is our request.

5                    THE COURT:  All right.  Ms.

6   Martin.

7                    MS. MARTIN:  I'm struck by a few

8   things.  Let me start at the outset by saying

9   I'm not going to oppose pretrial release.

10  Hopefully he's now supporting the child that

11  this young lady had and I hope that violence

12  does not become common within the community.

13  That when Mr. Laguan Salinas was refused

14  admittance to the home, he was alleged to have

15  pulled out black handgun and racked the slide

16  pointing it at the alleged victim.  This

17  apparently caused him to be disarmed because

18  the victim, I guess, hit the door or did

19  something that caused the gun to leave his

20  hand.  That being said, I don't oppose

21  pretrial release.

22                    THE COURT:  All right.  Very

1    good.  Well, I have had the opportunity to

2    review the statement of charges.  I've also

3    had the opportunity to review the pretrial

4    intake sheet, as well as consider the position

5    and argument of counsel, and having done so, I

6    find by clear convincing evidence that no

7    condition of release will reasonably ensure

8    the safety of the complaining witness and the

9    community, and specifically the statement of

10   charges would indicate that he did point a gun

11   and it was contrary to what the -- I think the

12   brother indicated it was, in fact, a real gun,

13   or at least that's what's indicated in the

14   statement of charges.  In addition, the

15   pretrial intake sheet would indicate that he

16   was found guilty of violation of protective

17   order in Montgomery County, October 2018,

18   assault in February 2017, and another

19   violation of a protective order in 2017.

20         So given all of that, the statement of

21   charges, the serious nature, combined with the

22   pretrial intake fact sheet once again, I do

1    find no condition release or (inaudible)

2    safety of the complaining witness, so I'm

3    going to order that the defendant be held

4    without bond.  No contact with the victims,

5    state witnesses, co-defendants, stay away from

6    the location of incident, no guns, no ammo.  I

7    have considered pretrial release, but at this

8    point in time, I'm not providing for the

9    action.  All right.  Let's call the next.

10   Thank you.

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2    I, Cynthia Bauerle, do hereby certify

 3    that the foregoing transcript is a true and

 4    correct record of the recorded proceedings;

 5    that said proceedings were transcribed to the

 6    best of my ability from the audio recording

 7    and supporting information; and that I am

 8    neither counsel for, related to, nor employed

 9    by any of the parties to this case and have no

10    interest, financial or otherwise, in its

11    outcome.

12

13    Cindy Bauerle

14    _____

15    Cynthia Bauerle

16    Date: 12/1/22

17

18

19

20

21

22
```

**A**

ability
13:6
about
8:11, 8:15
action
12:9
actual
6:7, 6:20,
6:21, 7:1, 7:4
addition
11:14
additional
6:4
admittance
10:14
after
4:11
again
8:17, 11:22
agree
4:18
aiding
7:7
air
8:13
all
3:16, 4:4,
4:22, 5:6, 5:16,
7:13, 8:8, 10:5,
10:22, 11:20,
12:9
alleged
6:1, 9:2, 9:5,
9:7, 9:14,
10:14, 10:16
also
8:7, 9:20, 11:2
ammo
12:6
another
11:18
any
9:3, 9:8, 9:20,
13:9
apparently
10:17

appears
4:13
appropriate
9:22
argument
11:5
arguments
7:21
article
5:11
asking
8:15
assault
2:19, 11:18
assign
4:9
assigned
4:2
assumed
5:19
attempt
6:13, 6:15,
6:17
attempted
4:14, 5:2,
6:19, 7:7, 7:20
attempting
6:21
attorney
2:5, 2:9, 3:2,
3:18, 4:1, 4:8,
5:9, 5:17, 6:15,
7:2, 8:5, 8:9
attorneys
8:21
audio
13:6
august
7:17
authorize
9:19
away
12:5

**B**

back
3:14, 8:16
bauerle
1:10, 13:2,

13:15
because
6:12, 10:17
become
10:12
been
2:20, 2:22,
7:15, 8:1, 9:6,
9:10
before
3:6, 9:11
behalf
3:19
being
10:20
believe
4:20, 8:20,
9:11, 9:20
best
13:6
black
10:15
bond
2:12, 2:15,
9:21, 9:22, 12:4
break
3:10
brother
11:12

**C**

call
3:11, 12:9
called
8:13
case
1:5, 3:16,
5:22, 8:19,
8:22, 9:6, 9:21,
13:9
cause
2:19
caused
10:17, 10:19
certificate
13:1
certify
13:2

charge
5:15, 6:8,
6:20, 6:22, 7:1,
7:4
charged
4:19, 5:11,
6:3, 6:4, 6:13,
7:3, 7:7, 8:1
charges
5:10, 5:14,
5:21, 8:18,
11:2, 11:10,
11:14, 11:21
child
10:10
children
8:12, 8:16
christopher
3:18
circumstances
8:6
cl
5:15, 6:6
clear
9:2, 9:4, 9:6,
11:6
close
8:20
co-defendants
12:5
coded
6:6
codified
6:20, 6:21
combined
11:21
come
8:2
common
4:19, 5:1,
5:15, 5:20,
6:14, 8:21,
10:12
community
10:4, 10:12,
11:9
company
8:13

| | | | |
|---|---|---|---|
| **complaining** | **cr** | **elmer** | **find** |
| 11:8, 12:2 | 6:8 | 1:4, 2:1, 3:15 | 2:18, 11:6, |
| **condition** | **crime** | **employed** | 12:1 |
| 11:7, 12:1 | 5:18 | 13:8 | **fine** |
| **confusion** | **criminal** | **ensure** | 3:8 |
| 6:5 | 5:11 | 11:7 | **firearm** |
| **consider** | **cynthia** | **enter** | 4:16, 7:11 |
| 11:4 | 1:10, 13:2, | 7:11, 9:10 | **first** |
| **considered** | 13:15 | **ernst** | 2:20, 5:15, |
| 12:7 | **D** | 3:4 | 9:13 |
| **construction** | **danton** | **esla** | **five** |
| 8:13 | 2:18 | 2:16 | 3:10 |
| **contact** | **date** | **essentially** | **foregoing** |
| 10:3, 12:4 | 2:21, 4:6, | 9:1 | 13:3 |
| **contacted** | 7:17, 8:2, 13:16 | **even** | **found** |
| 9:13 | **day** | 7:6 | 11:16 |
| **contrary** | 8:4 | **ever** | **four** |
| 11:11 | **december** | 9:7 | 9:22 |
| **conviction** | 1:7 | **evidence** | **G** |
| 7:12 | **defendant** | 11:6 | **getting** |
| **convincing** | 12:3 | **exposed** | 8:15, 9:18 |
| 11:6 | **degree** | 7:5 | **girlfriend** |
| **correct** | 2:20 | **F** | 6:2 |
| 13:4 | **demand** | **fact** | **given** |
| **could** | 7:14 | 7:3, 11:12, | 8:6, 11:20 |
| 9:12 | **description** | 11:22 | **going** |
| **counsel** | 6:7 | **falls** | 3:9, 4:11, 5:7, |
| 11:5, 13:8 | **disarmed** | 6:13 | 10:9, 12:3 |
| **count** | 10:17 | **family** | **gone** |
| 2:19, 4:13, | **dismissed** | 9:1 | 8:2 |
| 4:14, 4:19, | 4:6, 5:7, 8:2 | **february** | **good** |
| 5:10, 7:11, | **dispute** | 11:18 | 2:7, 11:1 |
| 7:15, 8:3 | 9:1 | **felony** | **graduated** |
| **county** | **district** | 2:21, 4:12, | 7:1 |
| 5:5, 11:17 | 5:5, 6:18 | 4:15, 4:17, 5:3, | **group** |
| **course** | **docket** | 5:8, 7:8, 7:11, | 8:14 |
| 9:16 | 2:16 | 7:15, 8:1, 8:3 | **guess** |
| **court** | **done** | **few** | 10:18 |
| 2:3, 2:7, 2:11, | 11:5 | 10:7 | **guilty** |
| 3:8, 3:14, 3:21, | **door** | **field** | 11:16 |
| 4:4, 4:20, 4:22, | 10:18 | 8:7 | **gun** |
| 5:5, 5:6, 5:13, | **down** | **figure** | 9:5, 10:19, |
| 6:10, 6:18, | 7:16 | 3:6, 9:22 | 11:10, 11:12 |
| 7:13, 7:22, 8:8, | **E** | **financial** | **guns** |
| 9:17, 9:19, | **either** | 10:1, 13:10 | 12:6 |
| 10:5, 10:22 | 8:1 | **financially** | **H** |
| **courtroom** | | 8:17 | **hand** |
| 7:18 | | | 6:6, 10:20 |

| | | | |
|---|---|---|---|
| handgun<br>10:15 | information<br>13:7 | left<br>6:6 | mother<br>6:2 |
| happened<br>9:5 | intake<br>11:4, 11:15,<br>11:22 | let's<br>12:9 | motivation<br>5:19, 7:7 |
| hearing<br>2:18, 3:3, 4:11 | interest<br>13:10 | level<br>9:20 | moving<br>7:10 |
| held<br>8:4, 12:3 | internal<br>3:6 | lived<br>8:10 | multiple<br>9:10 |
| here<br>2:12, 2:13,<br>7:16, 8:6, 8:10,<br>9:18 | interpreter<br>3:22 | location<br>9:14, 12:6 | murder<br>6:18, 6:19 |
| hereby<br>13:2 | invasion<br>5:2, 5:12, 7:20 | looking<br>5:10, 5:21 | **N** |
| hi<br>2:3 | involving<br>5:22 | **M** | nature<br>11:21 |
| hidesville<br>7:18 | issues<br>9:12 | make<br>7:21 | need<br>3:5, 3:21, 8:16 |
| highly<br>5:18 | **J** | male<br>2:5, 2:9, 3:2, | neither<br>13:8 |
| hit<br>10:18 | job<br>1:8, 8:13 | 3:18, 4:1, 4:8,<br>5:9, 5:17, 6:15,<br>7:2, 8:5, 8:9 | never<br>9:3 |
| home<br>5:2, 5:12,<br>7:20, 9:10,<br>9:15, 10:14 | judge<br>2:18 | martin<br>2:14, 4:8,<br>4:10, 4:18, 5:2,<br>5:4, 6:12, 6:19,<br>7:9, 10:6, 10:7 | next<br>12:9 |
| honor<br>2:5, 2:10,<br>2:14, 3:2, 3:20,<br>5:9, 7:10, 8:6,<br>8:15, 8:18, 9:18 | juncture<br>7:10 | maryland<br>8:11 | nodding<br>2:9 |
| hope<br>10:11 | jurisdiction<br>4:20, 7:22 | matter<br>3:6, 3:15, 4:7 | noted<br>7:14 |
| hopefully<br>10:10 | **K** | mean<br>5:18, 6:16, 9:2 | notes<br>9:18 |
| however<br>4:12 | kind<br>9:21 | message<br>3:4 | number<br>3:16 |
| **I** | know<br>3:17, 6:16 | minute<br>3:10 | **O** |
| imposed<br>9:12 | **L** | miss<br>6:1 | october<br>11:17 |
| incident<br>6:1, 12:6 | lady<br>10:11 | modified<br>5:12 | odd<br>8:22 |
| indicate<br>11:10, 11:15 | laguan<br>1:4, 2:1, 2:8,<br>3:5, 3:16, 6:2,<br>8:9, 9:9, 9:15,<br>10:2, 10:13 | monetary<br>9:21 | officer<br>6:4 |
| indicated<br>7:15, 11:12,<br>11:13 | law<br>4:19, 5:1,<br>5:16, 5:20, 6:14 | montgomery<br>11:17 | okay<br>2:3, 2:7, 2:11,<br>3:14, 4:4, 5:6 |
| | least<br>11:13 | morales<br>6:1 | old<br>8:10 |
| | leave<br>10:19 | more<br>8:19 | once<br>8:17, 11:22 |
| | | | one<br>6:22, 7:15,<br>8:14 |

| | | | |
|---|---|---|---|
| **only** | **post** | **reason** | 8:8, 10:5, |
| 2:15, 2:20, | 7:11 | 2:22 | 10:22, 12:9 |
| 4:12 | **pre** | **reasonably** | **robbery** |
| **opportunity** | 9:19 | 11:7 | 6:21 |
| 11:1, 11:3 | **preliminary** | **reasons** | **ron** |
| **oppose** | 2:17 | 8:14 | 3:11 |
| 10:9, 10:20 | **present** | **recently** | |
| **order** | 3:3 | 4:3 | **S** |
| 10:3, 11:17, | **pretrial** | **recess** | **safety** |
| 11:19, 12:3 | 10:9, 10:21, | 3:13 | 11:8, 12:2 |
| **other** | 11:3, 11:15, | **record** | **said** |
| 9:11 | 11:22, 12:7 | 3:15, 13:4 | 10:20, 13:5 |
| **otherwise** | **private** | **recorded** | **salinas** |
| 13:10 | 5:5 | 13:4 | 1:4, 2:1, 2:8, |
| **out** | **probable** | **recording** | 3:5, 3:16, 3:19, |
| 3:6, 3:9, 10:15 | 2:18 | 13:6 | 6:2, 8:10, 9:9, |
| **outcome** | **probation** | **refused** | 9:15, 10:2, |
| 13:11 | 4:1 | 10:13 | 10:13 |
| **outset** | **proceed** | **regulated** | **same** |
| 10:8 | 3:7 | 4:16 | 8:4 |
| **over** | **proceedings** | **related** | **say** |
| 4:20 | 13:4, 13:5 | 13:8 | 4:12 |
| **P** | **pros** | **release** | **saying** |
| **pages** | 7:16 | 10:9, 10:21, | 4:9, 4:10, 5:3, |
| 1:9 | **protect** | 11:7, 12:1, 12:7 | 5:4, 10:8 |
| **parties** | 10:3 | **released** | **says** |
| 7:21, 13:9 | **protective** | 8:15 | 3:4, 4:2, 6:3, |
| **people** | 11:16, 11:19 | **report** | 6:4, 6:8 |
| 7:5 | **providing** | 10:2 | **second** |
| **perez** | 12:8 | **representing** | 7:5 |
| 6:1 | **pulled** | 3:17 | **see** |
| **pertinent** | 10:15 | **represents** | 5:14, 6:5, 6:7, |
| 9:8 | **put** | 3:5 | 6:10 |
| **piece** | 2:15 | **request** | **seems** |
| 8:22 | **Q** | 8:7, 9:17, | 9:1, 9:2 |
| **point** | **quite** | 9:19, 10:4 | **serious** |
| 5:18, 11:10, | 6:22 | **respect** | 8:19, 11:21 |
| 12:8 | **R** | 7:19, 7:20 | **set** |
| **pointed** | **racked** | **return** | 2:22 |
| 9:7 | 10:15 | 9:15 | **sheet** |
| **pointing** | **reading** | **reveals** | 11:4, 11:15, |
| 10:16 | 8:20 | 8:21 | 11:22 |
| **position** | **real** | **review** | **short** |
| 6:17, 7:2, 7:6, | 11:12 | 2:13, 2:15, | 3:13 |
| 10:1, 11:4 | **really** | 11:2, 11:3 | **should** |
| **possession** | 5:7, 9:3 | **right** | 2:15, 2:21 |
| 4:16, 7:11 | | 3:17, 4:4, | **side** |
| | | 4:22, 5:6, 7:13, | 6:6 |

signature-onxrw
13:13
signed
6:3
significant
10:1
sir
2:6
slide
10:15
something
10:19
sorry
9:17
speaker
2:1, 3:11, 3:12
specifically
11:9
speed
7:14
spoken
9:9
start
10:8
state
7:10, 8:20,
12:5
state's
6:17
stated
7:4
statement
5:10, 5:13,
5:21, 11:2,
11:9, 11:14,
11:20
statue
6:6
status
4:6
statute
5:15
stay
12:5
stop
2:16
struck
10:7

suffice
10:3
support
8:18
supporting
10:10, 13:7
supports
8:12
sure
3:8

**T**

take
3:9
technical
5:18
ten
8:11
thank
12:10
things
10:8
think
4:11, 6:5,
6:12, 6:22, 9:4,
9:22, 11:11
thinking
7:19
threat
9:4
three
7:18, 8:11
through
9:18
thumbs
2:11
time
2:21, 4:10,
12:8
times
9:11
today
4:5
towards
5:8
transcribed
1:10, 13:5
transcriber
13:1

transcript
13:3
trial
2:21, 7:14,
7:17, 8:3
tried
6:18
true
13:3
two
2:19

**U**

under
5:11, 6:5, 9:3
understanding
2:17, 4:5
understood
8:5

**V**

victim
9:3, 9:8, 9:14,
10:16, 10:18
victims
12:4
violation
6:8, 11:16,
11:19
violence
8:22, 10:11
violent
9:3

**W**

walled
8:14
wanted
9:9
we're
3:14
weren't
8:19, 9:8
whatever
2:22
whether
7:22
within
10:12

without
12:4
witness
7:4, 11:8, 12:2
witnesses
12:5
words
9:8, 9:11
work
3:9
working
8:12, 8:17
write
7:16

**Y**

yeah
7:19
years
8:10, 8:11
young
10:11

**0**

00721379
1:5, 3:16, 5:22

**1**

1
1:9
1015
2:16
13
1:9
18
7:17
1e
1:5, 2:2, 3:16,
5:22

**2**

2/1/22
13:16
2017
11:18, 11:19
2018
11:17
202
5:12, 6:5, 6:9

**2022**
1:7, 7:17
**2b**
5:7
_____**3**_____
**30**
8:10
**33**
4:15
_____**4**_____
**45**
7:18
**472731**
1:8
_____**6**_____
**6**
5:12, 6:5, 6:9
_____**7**_____
**721379**
2:2
_____**8**_____
**8**
7:18



# Transcript of Elmer Laguan Salinas

**Date:** June 17, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4      IN RE:   ELMER LAGUAN SALINAS

5      CASE NO. 1E721379

6

7      June 17, 2022

8      Job No. 472731

9      Pages: 1-16

10     Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

1           THE COURT:  Elmer Laguan

2    Salinas.  1E721379.

3           MR. CARMELLA:  Good morning,

4    Your Honor.  (Inaudible) Carmella for the

5    State.

6           THE COURT:  Thank you, Mr.

7    Carmella.

8           MR. AIM:  And good morning, your

9    Honor.  Peter Davis has invoked defendant on

10   behalf of Mr. Laguan Salinas.  I believe we

11   are here on my bond motion.

12          THE COURT:  Counsel, before we

13   proceed, I need to know is Elmer Laguan

14   Salinas on the line.  That's who I need.

15   Second question.  Does he need the

16   interpreter?  All right.  So the answer to

17   both questions is yes.  And Mr. Esla is on the

18   line.  So before we go further, Counsel, as I

19   look in the file, there was a bond hearing on

20   March 17th.  There was a hearing on May 12th.

21   There was a determination of bond on April the

22   15th.  So we've already had three and the

1  defendant has a scheduled trial date of August

2  the 18th.  Hidesville (inaudible.)  And he's

3  charged with attempted home invasion and the

4  use of a firearm in the commission of a crime

5  of violence.  Reckless endangerment, illegal

6  firearm possession and having them on his

7  person.  So, Counsel, three judges have left

8  him in a no bond.  I don't think that's

9  unclear.  What are the change in circumstances

10 because on both April and may they knew the

11 status of the felony charges.

12             MR. AIM:  Your Honor, I have two

13 reasons that I have asked for a bond hearing.

14 Two changes in circumstances.

15             THE COURT:  Okay.

16             MR. AIM:  The first is that the

17 felony charges were dropped in May and so that

18 constituted the change in circumstances.  I

19 don't believe that Mr. Laguan Salinas was

20 actually heard or on bond at the hearing when

21 his felony charges were brought.

22             THE COURT:  Well, here's what I

1    know.  It was before the Judge.  The Judge

2    left the bond the same.  I accepted that was

3    what happened.  So please tell me the change

4    in circumstance since May the 12th after the

5    bond.

6                    MR. AIM:  Your Honor, just a

7    brief note on that.  First of all, sometimes

8    we ask to be heard on bond with other

9    (inaudible) after charges are dismissed and

10   they say we need to file a motion first.

11                   THE COURT:  Counsel, I'm not

12   asking what could have happened.  I'm stating

13   clearly, Counsel should make sure there's a

14   note to the file, bond not reviewed.  Do

15   whatever -- that's the responsibility of

16   everyone appearing.  I will certainly continue

17   to have my conversation, but the presumption

18   is the Judge did it properly, so we're going

19   to move forward, Mr. Aim.

20                   MR. AIM:  The second change in

21   circumstances is that I've repeatedly called

22   pretrial in this case and it's not been able

1    to determined ineligible.  They actually

2    haven't reviewed this case at all in over a

3    month.

4                    THE COURT:  Is pretrial on the

5    line?  Is pretrial supposed to be on the line

6    of bond or not?  Because they are supposed to

7    file reports.  You are right.  I don't see a

8    report.  They're supposed to file a report if

9    they're not taking the defendant out because

10   there's a problem.  The fact that your client

11   is waiting in turn in line is a different

12   matter.  So I would remind the State when

13   they're appearing on bail review, it is their

14   responsibility if they need to call pretrial

15   to explain something, that would be their

16   witness.  I appreciate it, Mr. Aim, it's been

17   a month since May the 12th.  Other than that,

18   anything further?

19                    MR. AIM:  Your Honor, those are

20   the two changes in circumstances.  I would

21   like to be heard briefly about Mr. Laguan

22   Salinas and be able to elaborate.

1          THE COURT:  Please put it in

2    your motion in the future.  Go ahead, Counsel.

3          MR. AIM:  Your Honor, since

4    (inaudible) motion, I called pretrial

5    yesterday specifically asking about Mr. Laguan

6    Salinas.  (Inaudible) was in mind.  Miss

7    (inaudible) actually told me yesterday that

8    she wasn't sure what the Court file was and we

9    may have to start the process all over again

10   for him.  Your Honor, as for Mr. Laguan

11   Salinas on himself, I highlighted in my motion

12   that there's no handgun recovered in this

13   case.  He has no (inaudible.)  He'll be back

14   in court.

15          THE COURT:  I've read your

16   motion, Counsel.

17          MR. AIM:  And your Honor, one

18   thing that I'm realizing that I didn't put in

19   my motion was that I have confirmed an address

20   for Mr. Laguan Salinas that I sent to

21   (inaudible.)  What's the address?  My email

22   just logged out.

1          THE COURT:  They're supposed to

2    be on the line for the bail reviews.  You're

3    telling me that and we're in the middle of

4    this one.  Let him know I need that

5    information.

6               MR. AIM:  6831 Third Street in

7    (inaudible) Maryland 20706.  So I did actually

8    visit where Mr. Laguan Salinas was supposed to

9    be living previously and I did confirm he did

10   have community ties and several people who

11   were in contact with him in the community.

12              THE COURT:  Anything further?

13              MR. AIM:  No, Your Honor.

14              THE COURT:  I'll hear from the

15   State.

16              MR. CARMELLA:  Thank you, your

17   Honor.  Although (inaudible) this motion

18   covered.

19              THE COURT:  I'm sorry.  I

20   couldn't hear you.  You were breaking up.

21   What?

22              MR. CARMELLA:  All those

1   corrected and no handgun was recovered.

2   That's because the statement of charges

3   reflects it was returned to him, the

4   defendant, at the time of the incident.

5           THE COURT:  The handgun,

6   according to the fact pattern, was returned to

7   the defendant at the incident.

8           MR. CARMELLA:  Further

9   supporting the allegation is the loaded

10  magazine that was recovered and is in the

11  custody of the (inaudible) police.  The

12  State's position is that under the

13  circumstances of this case and the background

14  alleged of these events, there are no

15  sufficient conditions that he would be safe in

16  the community.

17          THE COURT:  Did pretrial get on

18  the line?

19          MR. CARMELLA:  I have not

20  (inaudible.)

21          THE COURT:  Pretrial was given

22  the information.  I would remind both Counsel,

1    when you're the advocate of a position, that's

2    on you.  Make sure they have that information.

3    Have you indicated any bonds that your client

4    can make?

5                    MR. AIM:  Your Honor, I have

6    spoken to his family.  I believe they can

7    afford a minimum of bond, but given the

8    circumstances, we are asking for a personal

9    recognizant or unsecured bond.

10                   THE COURT:  And I'm sorry.  What

11   was the number, Mr. Aim?

12                   MR. AIM:  Your Honor, I was told

13   one or $200.

14                   THE COURT:  Just trying to

15   understand.  All right.  Great.  Thank you.  I

16   will set the bond at 25,000 unsecured.  He has

17   to have no contact with any of the State's

18   witnesses and specifically Ednina Ulises Perez

19   Morales and/or her entire family.  He is to

20   stay away from 3536 Madison Street in

21   Hyattsvile, Maryland.  He is not to own or

22   possess any firearms or ammunition and,

1   Counsel, be clear to your client, his trial

2   date it says is August the 12th in Hyattsville

3   38845.  Is pretrial on the line?

4                   SPEAKER:  Yes, your Honor.

5                   THE COURT:  Mr. (Inaudible,) I

6   would remind you bail reviews start at nine

7   o'clock.

8                   SPEAKER:  Your Honor, I wasn't

9   aware of the earlier one.

10                  THE COURT:  Thank you so much

11  because we need your information on every bail

12  review that's on the morning calendar.

13  Specifically Mr. Aim is complaining about

14  Elmer Laguan Salinas.  He's made serious

15  allegations of pretrial failing to communicate

16  any information as to his pretrial status for

17  a month.  I want pretrial to communicate on

18  the record what's the status of Mr. Laguan

19  Salinas' pretrial.  Make sure the entire

20  document is sent, okay?

21                  SPEAKER: (Inaudible.)

22                  THE COURT:  Pardon me?

1          SPEAKER:  Elmer is the first

2    name?

3          THE COURT:  Yes, ma'am.  Case

4    number 1E721379.  If pretrial is not

5    exercising an option, a report is supposed to

6    be filed with the Court and no such report has

7    been filed.  There's nothing in here that says

8    it's level four.

9          SPEAKER:  I'm looking in my

10   system, Your Honor, and I think in the

11   beginning he had (inaudible.)

12          THE COURT:  Counsel, that's what

13   I'm trying to tell you.  He had a bail review

14   on May the 12th.  It was changed and I'm

15   trying to find out since May the 12th what

16   happened.  Everybody wants to know, and the

17   answer is, it's been a month -- over a month.

18   The charges were amended down on April?

19          SPEAKER:  So I have to reach out

20   to case management because they are the ones

21   that reviewed the case (inaudible.)

22          THE COURT:  (Inaudible) you and

1    I are clear about this.  There was a review in

2    April.  There was a review in May.

3    Everybody's on this line because according to

4    Mr. Aim, he can't get a response.  Pretrial is

5    supposed to be on this call and accountable

6    for what they're doing and they're not doing

7    and telling me, you know, we're getting around

8    to it when somebody's in the jail since April,

9    it's a hard thing to accept.

10              SPEAKER:  Yes, I understand.

11              THE COURT:  Thank you.  So I'm

12    clearly communicating with you that when

13    Judges come out on bond reviews and I expect

14    you or someone to stay on the line, the bail

15    review is sent to pretrial.  They've been told

16    to file reports.  If there's no report,

17    there's no explanation why the defendant's not

18    out.  Level four was on in April, but level

19    four is not reflected in the May review.  So

20    there was a change in circumstance and yet no

21    evidence of a review.  So can we tighten that

22    up?

1          SPEAKER:  Yes, ma'am, I will

2    notify case management so they can jump on it.

3          THE COURT:  Well, make sure you

4    have them on the line with you because I'm

5    instructing you to stay on the line because I

6    suspect Mr. Aim is not (inaudible) filing a

7    bail review for today, but we'll try to get

8    through them promptly, but there needs to be

9    an accounting of what's happening and what's

10   not happening.  I don't know, but I only know

11   when I'm given in information.  Can you assist

12   me on that, Ms. (Inaudible)?

13          SPEAKER:  I can, your Honor.

14          THE COURT:  I know that you can.

15   I have trust and confidence in you and I have

16   further trust and confidence that you will

17   communicate this.

18          SPEAKER:  Yes, ma'am.

19          THE COURT:  All right.  So

20   you're the person I'm dealing with.  I'm

21   changing his bond status yet again to 25,000

22   unsecured, but I will give pretrial or Mr.

1  State, you want me to leave it the same, but

2  just give -- see, the question is, if I give

3  pretrial the option he's now been detained and

4  there's absolutely no explanation from April

5  until June. You understand that, right, Mr.

6  Carmella?

7           MR. CARMELLA: Absolutely, your

8  Honor.

9           THE COURT: Okay. So while I'm

10 going to give pretrial release the option, I'm

11 going to give him a 25,000 unsecured, but, Mr.

12 Aim, you make it clear to your client, if I

13 hear he even attempts indirectly to have

14 contact with Ednina Perez Morales, I will

15 issue a forthwith warrant for his arrest.

16 Enter the defendant. Are you clear? All

17 right, Mr. Aims, that's how we're going to do

18 it. I'm going to instruct pretrial to be on

19 the line. I'm going to instruct the attorneys

20 to make sure they're on the line, and that's

21 fundamental fairness from both sides, both the

22 State and the defense, right? Mr. Carmella,

1    do you have other matters on the line?

2                    MR. CARMELLA:  I do not, Your

3    Honor.  Thank you.

4                    THE COURT:  Good day to you.

5    Happy Friday.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2    I, Cynthia Bauerle, do hereby certify

 3    that the foregoing transcript is a true and

 4    correct record of the recorded proceedings;

 5    that said proceedings were transcribed to the

 6    best of my ability from the audio recording

 7    and supporting information; and that I am

 8    neither counsel for, related to, nor employed

 9    by any of the parties to this case and have no

10    interest, financial or otherwise, in its

11    outcome.

12

13        Cindy Bauerle

14    _____

15    Cynthia Bauerle

16    Date: 12/1/22

17

18

19

20

21

22
```

**A**

ability
16:6
able
4:22, 5:22
about
5:21, 6:5,
10:13, 12:1
absolutely
14:4, 14:7
accept
12:9
accepted
4:2
according
8:6, 12:3
accountable
12:5
accounting
13:9
actually
3:20, 5:1, 6:7,
7:7
address
6:19, 6:21
advocate
9:1
afford
9:7
after
4:4, 4:9
again
6:9, 13:21
ahead
6:2
aim
2:8, 3:12,
3:16, 4:6, 4:19,
4:20, 5:16,
5:19, 6:3, 6:17,
7:6, 7:13, 9:5,
9:11, 9:12,
10:13, 12:4,
13:6, 14:12
aims
14:17
all
2:16, 4:7, 5:2,

6:9, 7:22, 9:15,
13:19, 14:16
allegation
8:9
allegations
10:15
alleged
8:14
already
2:22
although
7:17
amended
11:18
ammunition
9:22
answer
2:16, 11:17
any
9:3, 9:17,
9:22, 10:16,
16:9
anything
5:18, 7:12
appearing
4:16, 5:13
appreciate
5:16
april
2:21, 3:10,
11:18, 12:2,
12:8, 12:18,
14:4
around
12:7
arrest
14:15
asked
3:13
asking
4:12, 6:5, 9:8
assist
13:11
attempted
3:3
attempts
14:13
attorneys
14:19

audio
16:6
august
3:1, 10:2
aware
10:9
away
9:20

**B**

back
6:13
background
8:13
bail
5:13, 7:2,
10:6, 10:11,
11:13, 12:14,
13:7
bauerle
1:10, 16:2,
16:15
because
3:10, 5:6, 5:9,
8:2, 10:11,
11:20, 12:3,
13:4, 13:5
been
4:22, 5:16,
11:7, 11:17,
12:15, 14:3
before
2:12, 2:18, 4:1
beginning
11:11
behalf
2:10
believe
2:10, 3:19, 9:6
best
16:6
bond
2:11, 2:19,
2:21, 3:8, 3:13,
3:20, 4:2, 4:5,
4:8, 4:14, 5:6,
9:7, 9:9, 9:16,
12:13, 13:21

bonds
9:3
both
2:17, 3:10,
8:22, 14:21
breaking
7:20
brief
4:7
briefly
5:21
brought
3:21

**C**

calendar
10:12
call
5:14, 12:5
called
4:21, 6:4
can't
12:4
carmella
2:3, 2:4, 2:7,
7:16, 7:22, 8:8,
8:19, 14:6,
14:7, 14:22,
15:2
case
1:5, 4:22, 5:2,
6:13, 8:13,
11:3, 11:20,
11:21, 13:2,
16:9
certainly
4:16
certificate
16:1
certify
16:2
change
3:9, 3:18, 4:3,
4:20, 12:20
changed
11:14
changes
3:14, 5:20

changing
13:21
charged
3:3
charges
3:11, 3:17,
3:21, 4:9, 8:2,
11:18
circumstance
4:4, 12:20
circumstances
3:9, 3:14,
3:18, 4:21,
5:20, 8:13, 9:8
clear
10:1, 12:1,
14:12, 14:16
clearly
4:13, 12:12
client
5:10, 9:3,
10:1, 14:12
come
12:13
commission
3:4
communicate
10:15, 10:17,
13:17
communicating
12:12
community
7:10, 7:11,
8:16
complaining
10:13
conditions
8:15
confidence
13:15, 13:16
confirm
7:9
confirmed
6:19
constituted
3:18
contact
7:11, 9:17,

14:14
continue
4:16
conversation
4:17
correct
16:4
corrected
8:1
could
4:12
couldn't
7:20
counsel
2:12, 2:18,
3:7, 4:11, 4:13,
6:2, 6:16, 8:22,
10:1, 11:12,
16:8
court
2:1, 2:6, 2:12,
3:15, 3:22,
4:11, 5:4, 6:1,
6:8, 6:14, 6:15,
7:1, 7:12, 7:14,
7:19, 8:5, 8:17,
8:21, 9:10,
9:14, 10:5,
10:10, 10:22,
11:3, 11:6,
11:12, 11:22,
12:11, 13:3,
13:14, 13:19,
14:9, 15:4
covered
7:18
crime
3:4
custody
8:11
cynthia
1:10, 16:2,
16:15

**D**

date
3:1, 10:2,
16:16

davis
2:9
day
15:4
dealing
13:20
defendant
2:9, 3:1, 5:9,
8:4, 8:7, 14:16
defendant's
12:17
defense
14:22
detained
14:3
determination
2:21
determined
5:1
different
5:11
dismissed
4:9
document
10:20
doing
12:6
down
11:18
dropped
3:17

**E**

earlier
10:9
ednina
9:18, 14:14
elaborate
5:22
elmer
1:4, 2:1, 2:13,
10:14, 11:1
email
6:21
employed
16:8
endangerment
3:5

enter
14:16
entire
9:19, 10:19
esla
2:17
even
14:13
events
8:14
every
10:11
everybody
11:16
everybody's
12:3
everyone
4:16
evidence
12:21
exercising
11:5
expect
12:13
explain
5:15
explanation
12:17, 14:4

**F**

fact
5:10, 8:6
failing
10:15
fairness
14:21
family
9:6, 9:19
felony
3:11, 3:17,
3:21
file
2:19, 4:10,
4:14, 5:7, 5:8,
6:8, 12:16
filed
11:6, 11:7
filing
13:6

| | | | |
|---|---|---|---|
| financial | **H** | hyattsville | know |
| 16:10 | | 10:2 | 2:13, 4:1, 7:4, |
| **find** | handgun | **I** | 11:16, 12:7, |
| 11:15 | 6:12, 8:1, 8:5 | illegal | 13:10, 13:14 |
| **firearm** | happened | 3:5 | **L** |
| 3:4, 3:6 | 4:3, 4:12, | incident | laguan |
| **firearms** | 11:16 | 8:4, 8:7 | 1:4, 2:1, 2:10, |
| 9:22 | happening | indicated | 2:13, 3:19, |
| **first** | 13:9, 13:10 | 9:3 | 5:21, 6:5, 6:10, |
| 3:16, 4:7, | happy | indirectly | 6:20, 7:8, |
| 4:10, 11:1 | 15:5 | 14:13 | 10:14, 10:18 |
| **foregoing** | hard | ineligible | leave |
| 16:3 | 12:9 | 5:1 | 14:1 |
| **forthwith** | he'll | information | left |
| 14:15 | 6:13 | 7:5, 8:22, 9:2, | 3:7, 4:2 |
| **forward** | hear | 10:11, 10:16, | level |
| 4:19 | 7:14, 7:20, | 13:11, 16:7 | 11:8, 12:18 |
| **four** | 14:13 | instruct | line |
| 11:8, 12:18, | heard | 14:18, 14:19 | 2:14, 2:18, |
| 12:19 | 3:20, 4:8, 5:21 | instructing | 5:5, 5:11, 7:2, |
| **friday** | hearing | 13:5 | 8:18, 10:3, |
| 15:5 | 2:19, 2:20, | interest | 12:3, 12:14, |
| **fundamental** | 3:13, 3:20 | 16:10 | 13:4, 13:5, |
| 14:21 | here | interpreter | 14:19, 14:20, |
| **further** | 2:11, 11:7 | 2:16 | 15:1 |
| 2:18, 5:18, | here's | invasion | living |
| 7:12, 8:8, 13:16 | 3:22 | 3:3 | 7:9 |
| **future** | hereby | invoked | loaded |
| 6:2 | 16:2 | 2:9 | 8:9 |
| **G** | hidesville | issue | logged |
| getting | 3:2 | 14:15 | 6:22 |
| 12:7 | highlighted | **J** | look |
| **give** | 6:11 | jail | 2:19 |
| 13:22, 14:2, | himself | 12:8 | looking |
| 14:10, 14:11 | 6:11 | job | 11:9 |
| **given** | home | 1:8 | **M** |
| 8:21, 9:7, | 3:3 | judge | ma'am |
| 13:11 | honor | 4:1, 4:18 | 11:3, 13:1, |
| **go** | 2:4, 2:9, 3:12, | judges | 13:18 |
| 2:18, 6:2 | 4:6, 5:19, 6:3, | 3:7, 12:13 | made |
| **going** | 6:10, 6:17, | jump | 10:14 |
| 4:18, 14:10, | 7:13, 7:17, 9:5, | 13:2 | madison |
| 14:11, 14:17, | 9:12, 10:4, | june | 9:20 |
| 14:18, 14:19 | 10:8, 11:10, | 1:7, 14:5 | magazine |
| **good** | 13:13, 14:8, | **K** | 8:10 |
| 2:3, 2:8, 15:4 | 15:3 | knew | make |
| **great** | hyattsvile | 3:10 | 4:13, 9:2, 9:4, |
| 9:15 | 9:21 | | |

10:19, 13:3,
14:12, 14:20
**management**
11:20, 13:2
**march**
2:20
**maryland**
7:7, 9:21
**matter**
5:12
**matters**
15:1
**middle**
7:3
**mind**
6:6
**minimum**
9:7
**miss**
6:6
**month**
5:3, 5:17,
10:17, 11:17
**morales**
9:19, 14:14
**morning**
2:3, 2:8, 10:12
**motion**
2:11, 4:10,
6:2, 6:4, 6:11,
6:16, 6:19, 7:17
**move**
4:19
**much**
10:10

**N**

**name**
11:2
**need**
2:13, 2:14,
2:15, 4:10,
5:14, 7:4, 10:11
**needs**
13:8
**neither**
16:8
**nine**
10:6

**note**
4:7, 4:14
**nothing**
11:7
**notify**
13:2
**number**
9:11, 11:4

**O**

**o'clock**
10:7
**okay**
3:15, 10:20,
14:9
**one**
6:17, 7:4,
9:13, 10:9
**ones**
11:20
**only**
13:10
**option**
11:5, 14:3,
14:10
**other**
4:8, 5:17, 15:1
**otherwise**
16:10
**out**
5:9, 6:22,
11:15, 11:19,
12:13, 12:18
**outcome**
16:11
**over**
5:2, 6:9, 11:17
**own**
9:21

**P**

**pages**
1:9
**pardon**
10:22
**parties**
16:9
**pattern**
8:6

**people**
7:10
**perez**
9:18, 14:14
**person**
3:7, 13:20
**personal**
9:8
**peter**
2:9
**please**
4:3, 6:1
**police**
8:11
**position**
8:12, 9:1
**possess**
9:22
**possession**
3:6
**presumption**
4:17
**pretrial**
4:22, 5:4, 5:5,
5:14, 6:4, 8:17,
8:21, 10:3,
10:15, 10:16,
10:17, 10:19,
11:4, 12:4,
12:15, 13:22,
14:3, 14:10,
14:18
**previously**
7:9
**problem**
5:10
**proceed**
2:13
**proceedings**
16:4, 16:5
**process**
6:9
**promptly**
13:8
**properly**
4:18
**put**
6:1, 6:18

**Q**

**question**
2:15, 14:2
**questions**
2:17

**R**

**reach**
11:19
**read**
6:15
**realizing**
6:18
**reasons**
3:13
**reckless**
3:5
**recognizant**
9:9
**record**
10:18, 16:4
**recorded**
16:4
**recording**
16:6
**recovered**
6:12, 8:1, 8:10
**reflected**
12:19
**reflects**
8:3
**related**
16:8
**release**
14:10
**remind**
5:12, 8:22,
10:6
**repeatedly**
4:21
**report**
5:8, 11:5,
11:6, 12:16
**reports**
5:7, 12:16
**response**
12:4

| | | | |
|---|---|---|---|
| **responsibility** 4:15, 5:14 | **serious** 10:14 | **status** 3:11, 10:16, 10:18, 13:21 | **through** 13:8 |
| **returned** 8:3, 8:6 | **set** 9:16 | **stay** 9:20, 12:14, 13:5 | **ties** 7:10 |
| **review** 5:13, 10:12, 11:13, 12:1, 12:2, 12:15, 12:19, 12:21, 13:7 | **several** 7:10 | **street** 7:6, 9:20 | **tighten** 12:21 |
| **reviewed** 4:14, 5:2, 11:21 | **should** 4:13 | **sufficient** 8:15 | **time** 8:4 |
| **reviews** 7:2, 10:6, 12:13 | **sides** 14:21 | **supporting** 8:9, 16:7 | **today** 13:7 |
| **right** 2:16, 5:7, 9:15, 13:19, 14:5, 14:17, 14:22 | **signature-1apgj** 16:13 | **supposed** 5:5, 5:6, 5:8, 7:1, 7:8, 11:5, 12:5 | **told** 6:7, 9:12, 12:15 |
| **S** | **since** 4:4, 5:17, 6:3, 11:15, 12:8 | **sure** 4:13, 6:8, 9:2, 10:19, 13:3, 14:20 | **transcribed** 1:10, 16:16 |
| **safe** 8:15 | **somebody's** 12:8 | **suspect** 13:6 | **transcriber** 16:1 |
| **said** 16:5 | **someone** 12:14 | **system** 11:10 | **transcript** 16:3 |
| **salinas** 1:4, 2:2, 2:10, 2:14, 3:19, 5:22, 6:6, 6:11, 6:20, 7:8, 10:14, 10:19 | **something** 5:15 | **T** | **trial** 3:1, 10:1 |
| **same** 4:2, 14:1 | **sometimes** 4:7 | **taking** 5:9 | **true** 16:3 |
| **say** 4:10 | **sorry** 7:19, 9:10 | **tell** 4:3, 11:13 | **trust** 13:15, 13:16 |
| **says** 10:2, 11:7 | **speaker** 10:4, 10:8, 10:21, 11:1, 11:9, 11:19, 12:10, 13:1, 13:13, 13:18 | **telling** 7:3, 12:7 | **try** 13:7 |
| **scheduled** 3:1 | **specifically** 6:5, 9:18, 10:13 | **th** 2:20, 2:22, 3:2, 4:4, 5:17, 10:2, 11:14, 11:15 | **trying** 9:14, 11:13, 11:15 |
| **second** 2:15, 4:20 | **spoken** 9:6 | **thank** 2:6, 7:16, 9:15, 10:10, 12:11, 15:3 | **turn** 5:11 |
| **see** 5:7, 14:2 | **start** 6:9, 10:6 | **thing** 6:18, 12:9 | **two** 3:12, 3:14, 5:20 |
| **sent** 6:20, 10:20, 12:15 | **state** 2:5, 5:12, 7:15, 14:1, 14:22 | **think** 3:8, 11:10 | **U** |
| | **state's** 8:12, 9:17 | **third** 7:6 | **ulises** 9:18 |
| | **statement** 8:2 | **three** 2:22, 3:7 | **unclear** 3:9 |
| | **stating** 4:12 | | **under** 8:12 |
| | | | **understand** 9:15, 12:10, 14:5 |
| | | | **unsecured** 9:9, 9:16, |

13:22, 14:11
**until**
14:5
**use**
3:4

**V**

**violence**
3:5
**visit**
7:8

**W**

**waiting**
5:11
**want**
10:17, 14:1
**wants**
11:16
**warrant**
14:15
**we'll**
13:7
**we're**
4:18, 7:3,
12:7, 14:17
**we've**
2:22
**whatever**
4:15
**witness**
5:16
**witnesses**
9:18

**Y**

**yesterday**
6:5, 6:7

**$**

**$200**
9:13

**1**

**1**
1:9
**12**
2:20, 4:4,

5:17, 10:2,
11:14, 11:15
**15**
2:22
**16**
1:9
**17**
1:7, 2:20
**18**
3:2
**1e**
1:5, 2:2, 11:4

**2**

**2/1/22**
16:16
**2022**
1:7
**20706**
7:7
**25,000**
9:16, 13:21,
14:11

**3**

**3536**
9:20
**38845**
10:3

**4**

**472731**
1:8

**6**

**6831**
7:6

**7**

**721379**
1:5, 2:2, 11:4

# Exhibit E
# Donnell Davis
# Supplemental Case Docs.



# Transcript of Donnell Davis

**Date:** September 10, 2020
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4    IN RE:    DONNELL DAVIS

5    CASE NO. 3E713044

6

7    September 10, 2020

8    Job No. 472731

9    Pages: 1-7

10   Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

1                THE JUDGE:  Donnell Davis.

2      3E713044.

3                MR. DAVIS:  How you doing, your

4      Honor?

5                THE JUDGE:  I'm doing well, Mr.

6      Davis.  All right.  So Mr. Davis has a

7      preliminary hearing date of November 9th,

8      845261B, and he is currently in a no bond

9      status.  He's been ordered to have no contact

10     with Asia McNight.  He's not to enter or be

11     found near 5805 Cherrywood Terrace in

12     Greenbelt, Maryland.  Counsel, you wish to be

13     heard?

14               FEMALE ATTORNEY:  Yes.  Thank

15     you, your Honor.  We are asking that Mr. Davis

16     be given a money bond that he can pay up to

17     $200.  Also that he be given a pretrial

18     release option at any level.  He is currently

19     being held without bond with charges of first

20     and second degree assault.  Mr. Davis I don't

21     believe has any criminal record.  He does not

22     have any prior convictions of any sort.

1    (Inaudible) he has any failures to appear

2    either.  He has been working.  He worked at

3    Amazon as a warehouse worker.  I seen him a

4    few minutes ago.  He's working in Baltimore

5    and he does have -- he has an interview

6    currently scheduled to do warehouse work again

7    for tomorrow.  He lives in Washington, DC with

8    his aunt and his grandfather.  I have a

9    address in northwest.  He does not live with

10   the plaintiff in this case.  I do understand

11   the nature of the charges (inaudible) and the

12   dangerousness, but he does understand the

13   seriousness of these matters.  And so, you

14   know, plans to proceed and should have

15   evidence of his innocence at trial, and he is

16   not (inaudible) I do understand he has a

17   pending case (inaudible.)  Does not have prior

18   convictions for second degree (inaudible.)  So

19   we are asking that he be given (inaudible) or

20   not be remain in jail during trial, and he

21   does have an aunt to live with, so he does not

22   reside with her.  They don't have any children

1    in common and so he is able to stay away from

2    her and understands he needs to stay away her

3    pending this matter.  His financial resources

4    are limited at this time.  He did lose his job

5    a few months ago and he has been on

6    unemployment.  So we would ask that any money

7    bond remain at $200 or lower and that he be

8    given pretrial (inaudible) options as well.

9                THE JUDGE:  All right.  State,

10   what's your position?

11               STATE ATTORNEY:  Reviewing this,

12   this does appear to be domestic related.  The

13   nature of the allegation being first, second

14   degree assault, but what is more troubling is

15   in the body of the statement, probable cause

16   it does allude to a previous assault where her

17   tooth was knocked out by the defendant.  The

18   State does believe that the defendant is a

19   danger to the victim and should remain in a no

20   bond status.  Thank you, your Honor.

21               THE JUDGE:  All right.  And

22   what's the State's position on pretrial?

1              THE STATE:  The State -- I'm

2    sorry.  The State would not object to pretrial

3    release level four.

4              THE JUDGE:  All right.  So I've

5    reviewed the pretrial intake fact sheet, the

6    nature of the allegations contained in the

7    charging documents, listened to respect to

8    arguments of counsel, applied the Chief Judge

9    Covid order, as well as the factors in the

10   Maryland criminal roles.  I am going to find

11   by clear and convincing evidence that Mr.

12   Davis still presents a danger to Miss McNight,

13   such that there's only one conditional satisfy

14   this member of the match.  I'm going to order

15   be held without bond, but I will authorize

16   pretrial release level four.  Home detention.

17   He does have to complete his pretrial

18   interview, provide proof of where he's going

19   to live to pretrial services.  They need to

20   verify that address before he's released.

21   He's to live at the address.  They verify he's

22   to have no contact whatsoever with the

1    complaining witness, Ms. Asia McNight.  He's

2    to stay away from 5805 Cherrywood Terrace in

3    Greenbelt, Maryland.  Thank you, all.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER

2    I, Cynthia Bauerle, do hereby certify

3    that the foregoing transcript is a true and

4    correct record of the recorded proceedings;

5    that said proceedings were transcribed to the

6    best of my ability from the audio recording

7    and supporting information; and that I am

8    neither counsel for, related to, nor employed

9    by any of the parties to this case and have no

10   interest, financial or otherwise, in its

11   outcome.

12

13        Cindy Bauerle

14   _____

15   Cynthia Bauerle

16   Date: 12/1/22

17

18

19

20

21

22
```

**A**

ability
7:6
able
4:1
address
3:9, 5:20, 5:21
again
3:6
ago
3:4, 4:5
all
2:6, 4:9, 4:21,
5:4, 6:3
allegation
4:13
allegations
5:6
allude
4:16
also
2:17
amazon
3:3
any
2:18, 2:21,
2:22, 3:1, 3:22,
4:6, 7:9
appear
3:1, 4:12
applied
5:8
arguments
5:8
asia
2:10, 6:1
asking
2:15, 3:19
assault
2:20, 4:14,
4:16
attorney
2:14, 4:11
audio
7:6
aunt
3:8, 3:21

authorize
5:15
away
4:1, 4:2, 6:2

**B**

baltimore
3:4
bauerle
1:10, 7:2, 7:15
been
2:9, 3:2, 4:5
before
5:20
being
2:19, 4:13
believe
2:21, 4:18
best
7:6
body
4:15
bond
2:8, 2:16,
2:19, 4:7, 4:20,
5:15

**C**

case
1:5, 3:10,
3:17, 7:9
cause
4:15
certificate
7:1
certify
7:2
charges
2:19, 3:11
charging
5:7
cherrywood
2:11, 6:2
chief
5:8
children
3:22
clear
5:11

common
4:1
complaining
6:1
complete
5:17
conditional
5:13
contact
2:9, 5:22
contained
5:6
convictions
2:22, 3:18
convincing
5:11
correct
7:4
counsel
2:12, 5:8, 7:8
covid
5:9
criminal
2:21, 5:10
currently
2:8, 2:18, 3:6
cynthia
1:10, 7:2, 7:15

**D**

danger
4:19, 5:12
dangerousness
3:12
date
2:7, 7:16
davis
1:4, 2:1, 2:3,
2:6, 2:15, 2:20,
5:12
dc
3:7
defendant
4:17, 4:18
degree
2:20, 3:18,
4:14
detention
5:16

documents
5:7
doing
2:3, 2:5
domestic
4:12
donnell
1:4, 2:1
during
3:20

**E**

either
3:2
employed
7:8
enter
2:10
evidence
3:15, 5:11

**F**

fact
5:5
factors
5:9
failures
3:1
female
2:14
few
3:4, 4:5
financial
4:3, 7:10
find
5:10
first
2:19, 4:13
foregoing
7:3
found
2:11
four
5:3, 5:16

**G**

given
2:16, 2:17,

3:19, 4:8
**going**
5:10, 5:14,
5:18
**grandfather**
3:8
**greenbelt**
2:12, 6:3

**H**

**heard**
2:13
**hearing**
2:7
**held**
2:19, 5:15
**hereby**
7:2
**home**
5:16
**honor**
2:4, 2:15, 4:20

**I**

**information**
7:7
**innocence**
3:15
**intake**
5:5
**interest**
7:10
**interview**
3:5, 5:18

**J**

**jail**
3:20
**job**
1:8, 4:4
**judge**
2:1, 2:5, 4:9,
4:21, 5:4, 5:8

**K**

**knocked**
4:17
**know**
3:14

**L**

**level**
2:18, 5:3, 5:16
**limited**
4:4
**listened**
5:7
**live**
3:9, 3:21,
5:19, 5:21
**lives**
3:7
**lose**
4:4
**lower**
4:7

**M**

**maryland**
2:12, 5:10, 6:3
**match**
5:14
**matter**
4:3
**matters**
3:13
**mcnight**
2:10, 5:12, 6:1
**member**
5:14
**minutes**
3:4
**miss**
5:12
**money**
2:16, 4:6
**months**
4:5
**more**
4:14

**N**

**nature**
3:11, 4:13, 5:6
**near**
2:11
**need**
5:19

**needs**
4:2
**neither**
7:8
**northwest**
3:9
**november**
2:7

**O**

**object**
5:2
**one**
5:13
**only**
5:13
**option**
2:18
**options**
4:8
**order**
5:9, 5:14
**ordered**
2:9
**otherwise**
7:10
**out**
4:17
**outcome**
7:11

**P**

**pages**
1:9
**parties**
7:9
**pay**
2:16
**pending**
3:17, 4:3
**plaintiff**
3:10
**plans**
3:14
**position**
4:10, 4:22
**preliminary**
2:7

**presents**
5:12
**pretrial**
2:17, 4:8,
4:22, 5:2, 5:5,
5:16, 5:17, 5:19
**previous**
4:16
**prior**
2:22, 3:17
**probable**
4:15
**proceed**
3:14
**proceedings**
7:4, 7:5
**proof**
5:18
**provide**
5:18

**R**

**record**
2:21, 7:4
**recorded**
7:4
**recording**
7:6
**related**
4:12, 7:8
**release**
2:18, 5:3, 5:16
**released**
5:20
**remain**
3:20, 4:7, 4:19
**reside**
3:22
**resources**
4:3
**respect**
5:7
**reviewed**
5:5
**reviewing**
4:11
**right**
2:6, 4:9, 4:21,

5:4
**roles**
5:10

**S**

**said**
7:5
**satisfy**
5:13
**scheduled**
3:6
**second**
2:20, 3:18,
4:13
**seen**
3:3
**september**
1:7
**seriousness**
3:13
**services**
5:19
**sheet**
5:5
**should**
3:14, 4:19
**signature-k9lvk**
7:13
**sorry**
5:2
**sort**
2:22
**state**
4:9, 4:11,
4:18, 5:1, 5:2
**state's**
4:22
**statement**
4:15
**status**
2:9, 4:20
**stay**
4:1, 4:2, 6:2
**still**
5:12
**supporting**
7:7

**T**

**terrace**
2:11, 6:2

**thank**
2:14, 4:20, 6:3
**time**
4:4
**tomorrow**
3:7
**tooth**
4:17
**transcribed**
1:10, 7:5
**transcriber**
7:1
**transcript**
7:3
**trial**
3:15, 3:20
**troubling**
4:14
**true**
7:3

**U**

**understand**
3:10, 3:12,
3:16
**understands**
4:2
**unemployment**
4:6

**V**

**verify**
5:20, 5:21
**victim**
4:19

**W**

**warehouse**
3:3, 3:6
**washington**
3:7
**whatsoever**
5:22
**wish**
2:12
**without**
2:19, 5:15
**witness**
6:1

**work**
3:6
**worked**
3:2
**worker**
3:3
**working**
3:2, 3:4

**$**

**$200**
2:17, 4:7

**1**

**1-7**
1:9
**10**
1:7

**2**

**2/1/22**
7:16
**2020**
1:7

**3**

**3e**
1:5, 2:2

**4**

**472731**
1:8

**5**

**5805**
2:11, 6:2

**7**

**713044**
1:5, 2:2

**8**

**845261**
2:8

**9**

**9th**
2:7



# Transcript of Donnell Davis

**Date:** September 11, 2020
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4  IN RE:   DONNELL DAVIS

5  CASE NO. 3E713044

6

7  September 11, 2020

8  Job No. 472731

9  Pages: 1-4

10 Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

1           FEMALE SPEAKER:  Davis 3E713044.

2    Let's see if Mr. Davis is present.

3           MALE SPEAKER:  Excuse me, your

4    Honor.

5           THE JUDGE:  Yes, sir.

6           MALE SPEAKER:  (Inaudible)

7    corrections.  Did you call last name Davis?

8           THE JUDGE:  Correct.  Donnell

9    Davis.

10          MALE SPEAKER:  10-4.

11          MR. DAVID:  Good morning.

12          THE JUDGE:  Good morning.  All

13   right.

14          DEFENSE:  Mr. Davis was not

15   present here on video.

16          THE STATE:  You Honor, with

17   respect to Mr. Davis, the State is moving to

18   enter count one assault in the first degree.

19   (Inaudible.)

20          DEFENSE:  Please note our demand

21   for a speedy trial in all counts.  And our

22   objection is not receiving a trial date at

1    this point in time.  And, Mr. Davis, can you

2    hear me?

3                    MR. DAVIS:  Yes, sir.

4                    DEFENSE:  This is Drew from the

5    Public Defender's Office.  I'm your lawyer.

6    (Inaudible) will follow up with you about

7    filing for a new bail.  Okay?  We can't have

8    that hearing today, but I will also be in

9    touch.

10                    THE JUDGE:  All right.  Thank

11   you, all.

12

13

14

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER

2    I, Cynthia Bauerle, do hereby certify

3    that the foregoing transcript is a true and

4    correct record of the recorded proceedings;

5    that said proceedings were transcribed to the

6    best of my ability from the audio recording

7    and supporting information; and that I am

8    neither counsel for, related to, nor employed

9    by any of the parties to this case and have no

10   interest, financial or otherwise, in its

11   outcome.

12

13   Cindy Bauerle

14   _____

15   Cynthia Bauerle

16   Date: 12/1/22

17

18

19

20

21

22
```

## A

**ability**
4:6
**about**
3:6
**all**
2:12, 2:21,
3:10, 3:11
**also**
3:8
**any**
4:9
**assault**
2:18
**audio**
4:6

## B

**bail**
3:7
**bauerle**
1:10, 4:2, 4:15
**best**
4:6

## C

**call**
2:7
**can't**
3:7
**case**
1:5, 4:9
**certificate**
4:1
**certify**
4:2
**correct**
2:8, 4:4
**corrections**
2:7
**counsel**
4:8
**count**
2:18
**counts**
2:21
**cynthia**
1:10, 4:2, 4:15

## D

**date**
2:22, 4:16
**david**
2:11
**davis**
1:4, 2:1, 2:2,
2:7, 2:9, 2:14,
2:17, 3:1, 3:3
**defender's**
3:5
**defense**
2:14, 2:20, 3:4
**degree**
2:18
**demand**
2:20
**donnell**
1:4, 2:8
**drew**
3:4

## E

**employed**
4:8
**enter**
2:18
**excuse**
2:3

## F

**female**
2:1
**filing**
3:7
**financial**
4:10
**first**
2:18
**follow**
3:6
**foregoing**
4:3

## G

**good**
2:11, 2:12

## H

**hear**
3:2
**hearing**
3:8
**here**
2:15
**hereby**
4:2
**honor**
2:4, 2:16

## I

**information**
4:7
**interest**
4:10

## J

**job**
1:8
**judge**
2:5, 2:8, 2:12,
3:10

## L

**last**
2:7
**lawyer**
3:5
**let's**
2:2

## M

**male**
2:3, 2:6, 2:10
**morning**
2:11, 2:12
**moving**
2:17

## N

**name**
2:7
**neither**
4:8
**new**
3:7

**note**
2:20

## O

**objection**
2:22
**office**
3:5
**okay**
3:7
**one**
2:18
**otherwise**
4:10
**outcome**
4:11

## P

**pages**
1:9
**parties**
4:9
**please**
2:20
**point**
3:1
**present**
2:2, 2:15
**proceedings**
4:4, 4:5
**public**
3:5

## R

**receiving**
2:22
**record**
4:4
**recorded**
4:4
**recording**
4:6
**related**
4:8
**respect**
2:17
**right**
2:13, 3:10

**S**

said
4:5
see
2:2
september
1:7
signature-7dmpd
4:13
sir
2:5, 3:3
speaker
2:1, 2:3, 2:6,
2:10
speedy
2:21
state
2:16, 2:17
supporting
4:7

**T**

thank
3:10
time
3:1
today
3:8
touch
3:9
transcribed
1:10, 4:5
transcriber
4:1
transcript
4:3
trial
2:21, 2:22
true
4:3

**V**

video
2:15

**1**

1-4
1:9

**10**
2:10
**11**
1:7

**2**

2/1/22
4:16
2020
1:7

**3**

3e
1:5, 2:1

**4**

4
2:10
472731
1:8

**7**

713044
1:5, 2:1



# Transcript of Donnell Davis

**Date:** December 16, 2020
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4   IN RE: DONNELL DAVIS

5   CASE NO. 3E00713044

6

7   December 16, 2020

8   Job No. 472731

9   Pages: 1-8

10  Transcribed by: Cynthia Bauerle

11

12

13

14

15

16

17

18

19

20

21

22

1                    THE JUDGE:  Donnell Davis

2      3E00713044.  Good morning, sir.  Is the public

3      defender in on this case, Mr. Aim?

4                    MR. AIM:  Yes.

5                    THE JUDGE:  Okay.

6                    MS. MARTIN:  What's Mr. Davis'

7      first name?

8                    THE JUDGE:  Donnell.

9                    MS. MARTIN:  Okay.  Oh, he's in

10     for a bond release.

11                   THE JUDGE:  He is and I have a

12     handwritten letter from Mr. -- from Mr. Davis

13     requesting this today.  That's why I was

14     checking to make sure that the public defender

15     was in on this case.  And so you're

16     representing him for the bond review, Mr. Aim?

17                   MR. AIM:  That's correct.

18                   THE JUDGE:  Okay.  I'll hear

19     from you.

20                   MR. AIM:  So as your Honor

21     mentioned, we're here on a motion that was

22     filed by Mr. Davis asking for a bond review.

1    He's currently held without bond, but he was

2    given a pretrial release at level four with a

3    self option.

4                    THE JUDGE:  Where?

5                    MR. AIM:  He's a -- according to

6    the docket, according to Secure Case Search,

7    Mr. Davis is not eligible for a pretrial

8    option for whatever reason.  And so, your

9    Honor, we're asking for a unsecured bond for

10   Mr. Davis for a pretrial to be ordered.  Your

11   Honor, we're going to start with the fact that

12   Mr. Davis has absolutely no failures to

13   appear.  His court date has been set and I

14   believe that might be plaintiff.  I apologize,

15   your Honor.  So, your Honor, so I'm going to

16   start with Mr. Davis' pretrial.  He has

17   absolutely no failures to appear.  His court

18   date has been set in this matter and he will

19   be in court.  Your Honor, he has no prior

20   convictions and (inaudible) or it appears to

21   be must have had a motor vehicle operative or

22   some kind of property crime, and then, your

1   Honor, he has a number of pending cases.  And

2   those (inaudible) those are, your Honor, not

3   to be considered under -- and, your Honor, Mr.

4   Davis got his diploma at Cardow this year,

5   High School.  He's been working at Amazon as a

6   warehouse worker before he was incarcerated.

7   He's actually been incarcerated since October

8   8th, which totals 69 days even though he had

9   the pretrial option.

10          Your Honor, turning to the allegations

11  in the case of facts, although I would

12  acknowledge that there are some serious

13  allegations that are brought in this civilian

14  complaint, I would argue actually, your Honor,

15  that this just didn't happen.  If Mr. Davis

16  had done all these things that he's alleged to

17  have done and the state charges, he -- the

18  police are alleged to have been called and the

19  police take these kind of domestic violence

20  allegations seriously, they would have filed a

21  report, but, of course, there is no police

22  report in this matter.  There's only a

1    civilian complaint.  And, your Honor, the

2    complaining witness is Mr. Davis' ex.  He has

3    no interest in contacting her.  He will not

4    contact her when he's out and their

5    relationship is over.  He does not want

6    anything more to do with her.  So, your Honor,

7    he can be safely released in the community.

8    He is not some kind of violent person.  He's

9    not a dangerous person.  And, your Honor, he

10   will be here in court for his court date.

11        So for all those reasons, we are asking

12   that you either order pretrial at level three

13   or you release him on an unsecured bond.

14              THE JUDGE:  Thank you, Mr. Aim.

15   Ms. Martin.

16              MS. MARTIN:  Your Honor, I'm

17   just looking at Mr. Davis' case.  They are

18   very series allegations.  I'm going to hold

19   fast to where we are right now.

20              MR. AIM:  Although he was

21   initially charged with first and second degree

22   assault, the first degree assault charge has

1    been dropped (inaudible.)

2              THE JUDGE:  Thank you.  The

3    Court has had the opportunity to review the

4    charging documents in this case, the pretrial

5    intake sheet.  Maryland rules include 16 and

6    16.1.  I've listened to the arguments of

7    counsel.  Looking at the allegations outlined

8    in the statement of charges, the complaining

9    witness alleged that the defendant threw her

10   phone out of her hand, hit her, threw her down

11   some steps.  She was able to catch her fall

12   and then slammed her head and her body into

13   some bricks.  She indicated that she passed

14   out for several minutes in the presence of her

15   small children and that the plaintiff -- the

16   defendant did not seek any medical attention

17   for her.  He called a friend that he dragged

18   her body back inside the apartment.  She did

19   call the police and the ambulance came.  She

20   said she went to the hospital.  She has a

21   concussion and as a result, as well, two

22   broken toes.  She indicated this entire

1   altercation was caught on camera that she has

2   at her residence.

3        So based on the serious nature of the

4   allegations, the Court does find pursuant to

5   Willer V. State by clear and convincing

6   evidence that he does pose a danger to the

7   complaining witness, as well as the public,

8   he'll continue to be held without bond.  I

9   will give pretrial release the option and

10  it'll be at any level and he's going to have

11  no contact with the state witness.  And you're

12  already aware that his trial date is currently

13  set for January the 7th in Hidesbill three and

14  that's at 1:45 it says on the file.  Thank

15  you.

16

17

18

19

20

21

22

1          CERTIFICATE OF TRANSCRIBER

2    I, Cynthia Bauerle, do hereby certify

3    that the foregoing transcript is a true and

4    correct record of the recorded proceedings;

5    that said proceedings were transcribed to the

6    best of my ability from the audio recording

7    and supporting information; and that I am

8    neither counsel for, related to, nor employed

9    by any of the parties to this case and have no

10   interest, financial or otherwise, in its

11   outcome.

12

13   *Cindy Bauerle*

14   _____

15   Cynthia Bauerle

16   Date: 12/1/22

17

18

19

20

21

22

| A | | | |
|---|---|---|---|

**A**

**ability**
8:6
**able**
6:11
**absolutely**
3:12, 3:17
**according**
3:5, 3:6
**acknowledge**
4:12
**actually**
4:7, 4:14
**aim**
2:3, 2:4, 2:16,
2:17, 2:20, 3:5,
5:14, 5:20
**all**
4:16, 5:11
**allegations**
4:10, 4:13,
4:20, 5:18, 6:7,
7:4
**alleged**
4:16, 4:18, 6:9
**already**
7:12
**altercation**
7:1
**although**
4:11, 5:20
**amazon**
4:5
**ambulance**
6:19
**any**
6:16, 7:10, 8:9
**anything**
5:6
**apartment**
6:18
**apologize**
3:14
**appear**
3:13, 3:17
**appears**
3:20

**argue**
4:14
**arguments**
6:6
**asking**
2:22, 3:9, 5:11
**assault**
5:22
**attention**
6:16
**audio**
8:6
**aware**
7:12

**B**

**back**
6:18
**based**
7:3
**bauerle**
1:10, 8:2, 8:15
**been**
3:13, 3:18,
4:5, 4:7, 4:18,
6:1
**before**
4:6
**believe**
3:14
**best**
8:6
**body**
6:12, 6:18
**bond**
2:10, 2:16,
2:22, 3:1, 3:9,
5:13, 7:8
**bricks**
6:13
**broken**
6:22
**brought**
4:13

**C**

**call**
6:19

**called**
4:18, 6:17
**came**
6:19
**camera**
7:1
**cardow**
4:4
**case**
1:5, 2:3, 2:15,
3:6, 4:11, 5:17,
6:4, 8:9
**cases**
4:1
**catch**
6:11
**caught**
7:1
**certificate**
8:1
**certify**
8:2
**charge**
5:22
**charged**
5:21
**charges**
4:17, 6:8
**charging**
6:4
**checking**
2:14
**children**
6:15
**civilian**
4:13, 5:1
**clear**
7:5
**community**
5:7
**complaining**
5:2, 6:8, 7:7
**complaint**
4:14, 5:1
**concussion**
6:21
**considered**
4:3

**contact**
5:4, 7:11
**contacting**
5:3
**continue**
7:8
**convictions**
3:20
**convincing**
7:5
**correct**
2:17, 8:4
**counsel**
6:7, 8:8
**course**
4:21
**court**
3:13, 3:17,
3:19, 5:10, 6:3,
7:4
**crime**
3:22
**currently**
3:1, 7:12
**cynthia**
1:10, 8:2, 8:15

**D**

**danger**
7:6
**dangerous**
5:9
**date**
3:13, 3:18,
5:10, 7:12, 8:16
**davis**
1:4, 2:1, 2:6,
2:12, 2:22, 3:7,
3:10, 3:12,
3:16, 4:4, 4:15,
5:2, 5:17
**days**
4:8
**december**
1:7
**defendant**
6:9, 6:16
**defender**
2:3, 2:14

| degree | file | high | L |
|---|---|---|---|
| 5:21, 5:22 | 7:14 | 4:5 | |
| diploma | filed | hit | letter |
| 4:4 | 2:22, 4:20 | 6:10 | 2:12 |
| docket | financial | hold | level |
| 3:6 | 8:10 | 5:18 | 3:2, 5:12, 7:10 |
| documents | find | honor | listened |
| 6:4 | 7:4 | 2:20, 3:9, | 6:6 |
| domestic | first | 3:11, 3:15, | looking |
| 4:19 | 2:7, 5:21, 5:22 | 3:19, 4:1, 4:2, | 5:17, 6:7 |
| done | foregoing | 4:3, 4:10, 4:14, | M |
| 4:16, 4:17 | 8:3 | 5:1, 5:6, 5:9, | |
| donnell | four | 5:16 | make |
| 1:4, 2:1, 2:8 | 3:2 | hospital | 2:14 |
| down | friend | 6:20 | martin |
| 6:10 | 6:17 | I | 2:6, 2:9, 5:15, |
| dragged | G | | 5:16 |
| 6:17 | | incarcerated | maryland |
| dropped | give | 4:6, 4:7 | 6:5 |
| 6:1 | 7:9 | include | matter |
| E | given | 6:5 | 3:18, 4:22 |
| | 3:2 | indicated | medical |
| either | going | 6:13, 6:22 | 6:16 |
| 5:12 | 3:11, 3:15, | information | mentioned |
| eligible | 5:18, 7:10 | 8:7 | 2:21 |
| 3:7 | good | initially | might |
| employed | 2:2 | 5:21 | 3:14 |
| 8:8 | H | inside | minutes |
| entire | | 6:18 | 6:14 |
| 6:22 | hand | intake | more |
| even | 6:10 | 6:5 | 5:6 |
| 4:8 | handwritten | interest | morning |
| evidence | 2:12 | 5:3, 8:10 | 2:2 |
| 7:6 | happen | it'll | motion |
| ex | 4:15 | 7:10 | 2:21 |
| 5:2 | he'll | J | motor |
| F | 7:8 | | 3:21 |
| | head | january | must |
| fact | 6:12 | 7:13 | 3:21 |
| 3:11 | hear | job | N |
| facts | 2:18 | 1:8 | |
| 4:11 | held | judge | name |
| failures | 3:1, 7:8 | 2:1, 2:5, 2:8, | 2:7 |
| 3:12, 3:17 | here | 2:11, 2:18, 3:4, | nature |
| fall | 2:21, 5:10 | 5:14, 6:2 | 7:3 |
| 6:11 | hereby | K | neither |
| fast | 8:2 | | 8:8 |
| 5:19 | hidesbill | kind | number |
| | 7:13 | 3:22, 4:19, 5:8 | 4:1 |

## O

**october**
4:7
**oh**
2:9
**okay**
2:5, 2:9, 2:18
**only**
4:22
**operative**
3:21
**opportunity**
6:3
**option**
3:3, 3:8, 4:9,
7:9
**order**
5:12
**ordered**
3:10
**otherwise**
8:10
**out**
5:4, 6:10, 6:14
**outcome**
8:11
**outlined**
6:7
**over**
5:5

## P

**pages**
1:9
**parties**
8:9
**passed**
6:13
**pending**
4:1
**person**
5:8, 5:9
**phone**
6:10
**plaintiff**
3:14, 6:15
**police**
4:18, 4:19,

4:21, 6:19
**pose**
7:6
**presence**
6:14
**pretrial**
3:2, 3:7, 3:10,
3:16, 4:9, 5:12,
6:4, 7:9
**prior**
3:19
**proceedings**
8:4, 8:5
**property**
3:22
**public**
2:2, 2:14, 7:7
**pursuant**
7:4

## R

**reason**
3:8
**reasons**
5:11
**record**
8:4
**recorded**
8:4
**recording**
8:6
**related**
8:8
**relationship**
5:5
**release**
2:10, 3:2,
5:13, 7:9
**released**
5:7
**report**
4:21, 4:22
**representing**
2:16
**requesting**
2:13
**residence**
7:2

**result**
6:21
**review**
2:16, 2:22, 6:3
**right**
5:19
**rules**
6:5

## S

**safely**
5:7
**said**
6:20, 8:5
**says**
7:14
**school**
4:5
**search**
3:6
**second**
5:21
**secure**
3:6
**seek**
6:16
**self**
3:3
**series**
5:18
**serious**
4:12, 7:3
**seriously**
4:20
**set**
3:13, 3:18,
7:13
**several**
6:14
**sheet**
6:5
**signature-zrhbi**
8:13
**since**
4:7
**sir**
2:2
**slammed**
6:12

**small**
6:15
**some**
3:22, 4:12,
5:8, 6:11, 6:13
**start**
3:11, 3:16
**state**
4:17, 7:5, 7:11
**statement**
6:8
**steps**
6:11
**supporting**
8:7
**sure**
2:14

## T

**take**
4:19
**thank**
5:14, 6:2, 7:14
**things**
4:16
**three**
5:12, 7:13
**threw**
6:9, 6:10
**today**
2:13
**toes**
6:22
**totals**
4:8
**transcribed**
1:10, 8:5
**transcriber**
8:1
**transcript**
8:3
**trial**
7:12
**true**
8:3
**turning**
4:10
**two**
6:21

| U | |
|---|---|
| **under** | **1-8** |
| 4:3 | 1:9 |
| **unsecured** | **16** |
| 3:9, 5:13 | 1:7, 6:5 |
| | **16.1** |
| | 6:6 |

**V**

**2**

| | |
|---|---|
| **vehicle** | **2/1/22** |
| 3:21 | 8:16 |
| **violence** | **2020** |
| 4:19 | 1:7 |
| **violent** | |
| 5:8 | |

**3**

| W | |
|---|---|
| | **3e** |
| **want** | 1:5, 2:2 |
| 5:5 | |

**4**

| | |
|---|---|
| **warehouse** | **45** |
| 4:6 | 7:14 |
| **we're** | **472731** |
| 2:21, 3:9, 3:11 | 1:8 |

**6**

| | |
|---|---|
| **went** | **69** |
| 6:20 | 4:8 |
| **whatever** | |

**7**

| | |
|---|---|
| 3:8 | **7th** |
| **willer** | 7:13 |
| 7:5 | |

**8**

| | |
|---|---|
| **without** | **8th** |
| 3:1, 7:8 | 4:8 |
| **witness** | |
| 5:2, 6:9, 7:7, | |
| 7:11 | |
| **worker** | |
| 4:6 | |
| **working** | |
| 4:5 | |

**Y**

**year**
4:4

**0**

**00713044**
1:5, 2:2

**1**

**1**
7:14

# Exhibit F
# Leslie Sharp
# Supplemental Case Docs.



# Transcript of Hearing

**Date:** June 24, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

1

2

3

4

5

6

7

8

9

10                    Hearing in Re: Leslie Sharp

11                        June 24, 2021

12

13

14

15

16

17

18

19

20    Job No.:  473710

21    Pages 1 - 8

22    Transcribed by:  Jackie Scheer

```
 1              P R O C E E D I N G S
 2              MALE VOICE:  Leslie -- Leslie Sharp,
 3   3E00701207.
 4              MR. IM:  Good morning, Your Honor, Peter
 5   Im, assistant public defender, on behalf of
 6   Mr. Sharp.  My apologies for my tardiness.
 7              THE COURT:  That's all right.  We're here
 8   for a motion for bond review; is that correct?
 9              MR. IM:  That's correct, Your Honor.
10              THE COURT:  All right.  Your client's on
11   the screen.  I'll hear from you, Mr. Im.
12              MR. IM:  Thank you, Your Honor.  Your
13   Honor, Mr. Sharp is -- is 33 years of age.  Your
14   Honor, right before --
15              MR. CLARK:  -- here -- can I interject?
16   David Clark here, Judge.
17              THE COURT:  Yes.
18              MR. CLARK:  I was just in the courtroom
19   and (incomprehensible) had private counsel had
20   entered that case yesterday.  But she was concerned
21   maybe the line hadn't caught up.
22              THE COURT:  Yeah, there's nothing in the
```

1    court's file.  Do you know who the attorney was?

2              MR. CLARK:  I don't know.

3              MR. IM:  (Incomprehensible) moments, Your

4    Honor, I'm looking at Case Search.

5              THE COURT:  Yeah, can you search the

6    docket entries to see if a line's been filed by a

7    private attorney in that case?

8              FEMALE VOICE:  Sure.

9              MR. IM:  Your Honor, I -- I do not see a

10   docket entry on Case Search and I was not aware of a

11   private attorney entered in the case.

12             MR. CLARK:  All right.  She said it was

13   yesterday.

14             FEMALE VOICE:  Why don't we ask

15   Mr. Sharp.  Maybe he knows.

16             MR. IM:  There we go.

17             Mr. Sharp, this is Peter Im from the

18   Public Defender's Office.  We've spoken on the

19   phone.  Do you happen to know if there's a private

20   attorney who either you hired or your family hired

21   for your case?

22             MR. SHARP:  No.  I have no knowledge of

1  that.

2              THE COURT:  All right.  Well, continue,

3  Mr. Im.

4              MR. IM:  Thank you, Your Honor.  Your

5  Honor, shortly before Mr. Sharp was arrested in this

6  case, he got a job at the Old Ebbitt Grill actually

7  on Friday, so Friday a couple weeks ago was supposed

8  to be his first day.  He was supposed to be working

9  as a dishwasher working to support his 12-year-old

10  daughter.  The reason for the bond review motion,

11  Your Honor, in this case, was because after -- after

12  Mr. Sharp was held without bond at his initial bond

13  review hearing, the alleged victim in the case, who

14  is Marquita Tibbs (phonetic), contacted me to let me

15  know that she doesn't want Mr. Sharp in jail.  She

16  doesn't fear him and doesn't believe he's a danger

17  to the community.  She also told me that she does

18  not intend to press charges.  And so if the court

19  would allow me, could I ask Ms. Tibbs to speak?

20              THE COURT:  Well, no, I'm not going to

21  take her testimony.  I'll take your representations.

22  Give me one second.

1          I understand that she may not want to go

2    forward but it's not her choice, it's the state's

3    attorney's office's choice.  And to be quite frank,

4    Mr. Im, victims of domestic violence saying they

5    don't want to go forward is as common as the sun

6    rising every day.  And I agree that sometimes that

7    there is some validity to what they're saying but

8    also recognize that sometimes there's a cycle of

9    violence that is being perpetuated.

10         All right.  Ms. Martin, you have

11   anything?

12         MS. MARTIN:  Well, as she apparently had

13   obvious physical injuries, which is the concern of

14   the state, and was transported to the hospital.  The

15   defendant did deny having contact with her, I will

16   say that, but --

17         THE COURT:  -- well, I'll say this and

18   I'm not sure if either of you are aware, but he has

19   zero FTAs, he has a conviction for robbery in 2005.

20   I -- this may be the same -- well, that says

21   Montgomery County, then there's a robbery hold up,

22   gun, listed also in 2005.  And he has a -- it says

1  FTA armed robbery 2005, that's D.C.  And then

2  there's a conviction UUV, destruction of property.

3  Pled, carrying a pistol without a license.

4          MR. IM:  Your Honor, I would ask you to

5  consider the fact that he's 33 years old now.  Back

6  in 2005 he was 18 years old.  I'm seeing he only --

7  I'm seeing only one conviction since 2012 on here,

8  Your Honor.  And so given his clean record of

9  appearing in court, he will be here, Your Honor, and

10 so we would ask that he be released on an unsecured

11 bond or that pretrial be ordered.

12         THE COURT:  All right.  I'm sorry,

13 anything else, Ms. Martin?

14         MS. MARTIN:  I can't agree with an

15 unsecured bond.  Not with the obvious physical

16 injuries.

17         THE COURT:  Mr. Sharp, can you hear me,

18 sir?

19         MR. SHARP:  Yes, sir.

20         THE COURT:  All right, Mr. Sharp, I'm

21 going to order pretrial level four.  You're going to

22 be monitored is what that means.  You're going to

1    possess no weapons, firearms, illicit substances,

2    ammo.  You're not to consume alcohol, you're to have

3    no contact with the victim in this matter.  You're

4    to stay away from her house, her job, her place

5    of -- of employment, her family members.  You are

6    not to return to the location of the incident.  You

7    understand that, sir?

8              MR. SHARP:  Yes, sir.

9              THE COURT:  If you violate any of the

10   conditions I just mentioned, I'm going to have you

11   rearrested and you're going to sit in jail until the

12   disposition of this case.  Do you understand that?

13             MR. SHARP:  Yes, sir.

14             THE COURT:  All right.  Mr. Im, the trial

15   date as noted in the court's jacket is July 22nd in

16   Hyattsville 3 at 8:45 a.m.

17             MR. IM:  Thank you, Your Honor.

18             Mr. Sharp, please give me a call right

19   after the hearing.

20             MR. SHARP:  Okay.

21             (The recording was concluded.)

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2         I, Jackie A. Scheer, do hereby certify

 3   that the foregoing transcript is a true and correct

 4   record of the recorded proceedings; that said

 5   proceedings were transcribed to the best of my

 6   ability from the audio recording and supporting

 7   information; and that I am neither counsel for,

 8   related to, nor employed by any of the parties to

 9   this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14

15   _____

16        JACKIE A. SCHEER

17        DECEMBER 13, 2022

18

19

20

21

22
```

**A**

ability
8:6
actually
4:6
after
4:11, 7:19
age
2:13
ago
4:7
agree
5:6, 6:14
alcohol
7:2
all
2:7, 2:10,
3:12, 4:2, 5:10,
6:12, 6:20, 7:14
alleged
4:13
allow
4:19
also
4:17, 5:8, 5:22
ammo
7:2
any
7:9, 8:8
anything
5:11, 6:13
apologies
2:6
apparently
5:12
appearing
6:9
armed
6:1
arrested
4:5
assistant
2:5
attorney
3:1, 3:7, 3:11,
3:20
attorney's
5:3

audio
8:6
aware
3:10, 5:18
away
7:4

**B**

back
6:5
because
4:11
been
3:6
before
2:14, 4:5
behalf
2:5
being
5:9
believe
4:16
best
8:5
bond
2:8, 4:10,
4:12, 6:11, 6:15

**C**

call
7:18
can't
6:14
carrying
6:3
case
2:20, 3:4, 3:7,
3:10, 3:11,
3:21, 4:6, 4:11,
4:13, 7:12, 8:9
caught
2:21
certificate
8:1
certify
8:2
charges
4:18

choice
5:2, 5:3
clark
2:15, 2:16,
2:18, 3:2, 3:12
clean
6:8
client's
2:10
common
5:5
community
4:17
concern
5:13
concerned
2:20
concluded
7:21
conditions
7:10
consider
6:5
consume
7:2
contact
5:15, 7:3
contacted
4:14
continue
4:2
conviction
5:19, 6:2, 6:7
correct
2:8, 2:9, 8:3
could
4:19
counsel
2:19, 8:7
county
5:21
couple
4:7
court
2:7, 2:10,
2:17, 2:22, 3:5,
4:2, 4:18, 4:20,
5:17, 6:9, 6:12,

6:17, 6:20, 7:9,
7:14
court's
3:1, 7:15
courtroom
2:18
cycle
5:8

**D**

danger
4:16
date
7:15
daughter
4:10
david
2:16
day
4:8, 5:6
december
8:17
defendant
5:15
defender
2:5
defender's
3:18
deny
5:15
destruction
6:2
dishwasher
4:9
disposition
7:12
docket
3:6, 3:10
domestic
5:4

**E**

ebbitt
4:6
either
3:20, 5:18
else
6:13

| | | | |
|---|---|---|---|
| **employed** | **given** | **im** | **level** |
| 8:8 | 6:8 | 2:4, 2:5, 2:9, | 6:21 |
| **employment** | **go** | 2:11, 2:12, 3:3, | **license** |
| 7:5 | 3:16, 5:1, 5:5 | 3:9, 3:16, 3:17, | 6:3 |
| **entered** | **going** | 4:3, 4:4, 5:4, | **line** |
| 2:20, 3:11 | 4:20, 6:21, | 6:4, 7:14, 7:17 | 2:21 |
| **entries** | 6:22, 7:10, 7:11 | **incident** | **line's** |
| 3:6 | **good** | 7:6 | 3:6 |
| **entry** | 2:4 | **incomprehensible** | **listed** |
| 3:10 | **grill** | 2:19, 3:3 | 5:22 |
| **every** | 4:6 | **information** | **location** |
| 5:6 | **gun** | 8:7 | 7:6 |
| **F** | 5:22 | **initial** | **looking** |
| **fact** | **H** | 4:12 | 3:4 |
| 6:5 | **happen** | **injuries** | **M** |
| **family** | 3:19 | 5:13, 6:16 | **male** |
| 3:20, 7:5 | **hear** | **intend** | 2:2 |
| **fear** | 2:11, 6:17 | 4:18 | **marquita** |
| 4:16 | **hearing** | **interest** | 4:14 |
| **female** | 1:10, 4:13, | 8:9 | **martin** |
| 3:8, 3:14 | 7:19 | **interject** | 5:10, 5:12, |
| **file** | **held** | 2:15 | 6:13, 6:14 |
| 3:1 | 4:12 | **J** | **matter** |
| **filed** | **here** | **jacket** | 7:3 |
| 3:6 | 2:7, 2:15, | 7:15 | **maybe** |
| **financial** | 2:16, 6:7, 6:9 | **jackie** | 2:21, 3:15 |
| 8:9 | **hereby** | 1:22, 8:2, 8:16 | **means** |
| **firearms** | 8:2 | **jail** | 6:22 |
| 7:1 | **hired** | 4:15, 7:11 | **members** |
| **first** | 3:20 | **job** | 7:5 |
| 4:8 | **hold** | 1:20, 4:6, 7:4 | **mentioned** |
| **foregoing** | 5:21 | **judge** | 7:10 |
| 8:3 | **honor** | 2:16 | **moments** |
| **forward** | 2:4, 2:9, 2:12, | **july** | 3:3 |
| 5:2, 5:5 | 2:13, 2:14, 3:4, | 7:15 | **monitored** |
| **four** | 3:9, 4:4, 4:5, | **june** | 6:22 |
| 6:21 | 4:11, 6:4, 6:8, | 1:11 | **montgomery** |
| **frank** | 6:9, 7:17 | **K** | 5:21 |
| 5:3 | **hospital** | **know** | **morning** |
| **friday** | 5:14 | 3:1, 3:2, 3:19, | 2:4 |
| 4:7 | **house** | 4:15 | **motion** |
| **fta** | 7:4 | **knowledge** | 2:8, 4:10 |
| 6:1 | **hyattsville** | 3:22 | **N** |
| **ftas** | 7:16 | **knows** | **nd** |
| 5:19 | **I** | 3:15 | 7:15 |
| **G** | **illicit** | **L** | **neither** |
| **give** | 7:1 | **leslie** | 8:7 |
| 4:22, 7:18 | | 1:10, 2:2 | |

noted
7:15
nothing
2:22

**O**

obvious
5:13, 6:15
office
3:18
office's
5:3
okay
7:20
old
4:6, 6:5, 6:6
one
4:22, 6:7
only
6:6, 6:7
order
6:21
ordered
6:11
otherwise
8:10
outcome
8:10

**P**

pages
1:21
parties
8:8
perpetuated
5:9
peter
2:4, 3:17
phone
3:19
phonetic
4:14
physical
5:13, 6:15
pistol
6:3
place
7:4

please
7:18
pled
6:3
possess
7:1
press
4:18
pretrial
6:11, 6:21
private
2:19, 3:7,
3:11, 3:19
proceedings
8:4, 8:5
property
6:2
public
2:5, 3:18

**Q**

quite
5:3

**R**

rearrested
7:11
reason
4:10
recognize
5:8
record
6:8, 8:4
recorded
8:4
recording
7:21, 8:6
related
8:8
released
6:10
representations
4:21
return
7:6
review
2:8, 4:10, 4:13
right
2:7, 2:10,

2:14, 3:12, 4:2,
5:10, 6:12,
6:20, 7:14, 7:18
rising
5:6
robbery
5:19, 5:21, 6:1

**S**

said
3:12, 8:4
same
5:20
say
5:16, 5:17
saying
5:4, 5:7
says
5:20, 5:22
scheer
1:22, 8:2, 8:16
screen
2:11
search
3:4, 3:5, 3:10
second
4:22
see
3:6, 3:9
seeing
6:6, 6:7
sharp
1:10, 2:2, 2:6,
2:13, 3:15,
3:17, 3:22, 4:5,
4:12, 4:15,
6:17, 6:19,
6:20, 7:8, 7:13,
7:18, 7:20
shortly
4:5
signature-ininn
8:14
since
6:7
sir
6:18, 6:19,
7:7, 7:8, 7:13

sit
7:11
some
5:7
sometimes
5:6, 5:8
sorry
6:12
speak
4:19
spoken
3:18
state
5:14
state's
5:2
stay
7:4
substances
7:1
sun
5:5
support
4:9
supporting
8:6
supposed
4:7, 4:8
sure
3:8, 5:18

**T**

take
4:21
tardiness
2:6
testimony
4:21
thank
2:12, 4:4, 7:17
tibbs
4:14, 4:19
told
4:17
transcribed
1:22, 8:5
transcriber
8:1

| | | |
|---|---|---|
| **transcript**<br>8:3<br>**transported**<br>5:14<br>**trial**<br>7:14<br>**true**<br>8:3 | **Y**<br>**yeah**<br>2:22, 3:5<br>**year-old**<br>4:9<br>**years**<br>2:13, 6:5, 6:6<br>**yesterday**<br>2:20, 3:13 | **473710**<br>1:20<br>**8**<br>**8**<br>7:16 |
| **U**<br>**understand**<br>5:1, 7:7, 7:12<br>**unsecured**<br>6:10, 6:15<br>**until**<br>7:11<br>**uuv**<br>6:2 | **Z**<br>**zero**<br>5:19<br>**0**<br>**00701207**<br>2:3 | |
| **V**<br>**validity**<br>5:7<br>**victim**<br>4:13, 7:3<br>**victims**<br>5:4<br>**violate**<br>7:9<br>**violence**<br>5:4, 5:9<br>**voice**<br>2:2, 3:8, 3:14 | **1**<br>**12**<br>4:9<br>**13**<br>8:17<br>**18**<br>6:6<br>**2**<br>**2005**<br>5:19, 5:22,<br>6:1, 6:6<br>**2012**<br>6:7<br>**2021**<br>1:11<br>**2022**<br>8:17<br>**22**<br>7:15<br>**24**<br>1:11 | |
| **W**<br>**want**<br>4:15, 5:1, 5:5<br>**we're**<br>2:7<br>**we've**<br>3:18<br>**weapons**<br>7:1<br>**weeks**<br>4:7<br>**without**<br>4:12, 6:3<br>**working**<br>4:8, 4:9 | **3**<br>**33**<br>2:13, 6:5<br>**3e**<br>2:3<br>**4**<br>**45**<br>7:16 | |



# Transcript of Hearing

**Date:** July 14, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6

7

8

9

10               Hearing in Re: Leslie Sharp

11                  July 14, 2021

12

13

14

15

16

17

18

19

20  Job No.:  473710

21  Pages 1 - 7

22  Transcribed by:  Jackie Scheer

```
1              P R O C E E D I N G S

2              THE COURT:  Leslie Sharp.  3E701207.

3              MR. IM:  Good morning, Your Honor.  Peter

4    Im, assistant public defender in the case of

5    Mr. Sharp.

6              THE COURT:  Good morning, Mr. Im.  You're

7    waiving his presence?

8              MR. IM:  That's correct, Your Honor.

9              THE COURT:  Okay.  I'll hear you on your

10   motion, sir.

11             MR. IM:  Thank you, Your Honor.  We are

12   here on my bond motion.  We're asking that Mr. Sharp

13   be released on an unsecured bond.  Your Honor, his

14   current court date is -- in the district court is

15   scheduled for July 22nd and he is aware of it.  He

16   has no failure to appear on his pretrial sheet and

17   he will absolutely be in court on that date.  Your

18   Honor, I filed this motion because on June 24th,

19   Judge Carrington (phonetic) ordered that he be

20   released to pretrial, so he didn't give the option,

21   he had an order.  On July 2nd, pretrial informed the

22   court that -- that Mr. Sharp is not eligible for
```

1   pretrial release.  I -- I spoke to pretrial and they

2   said that he's not eligible because he's on

3   supervised release through D.C. and that's their

4   policy.  Now, the main thing about that is, Your

5   Honor, that the court already knew about that when

6   ordered pretrial level four --

7               THE COURT:  -- can you call Judge

8   Carrington --

9               MR. IM:  -- that's on his pretrial sheet

10  which the court consulted and --

11              THE COURT:  -- please.

12              MR. IM:  -- this was -- okay.

13              THE COURT:  Go ahead, Mr. Im.

14              MR. IM:  So -- yeah.  So ultimately, Your

15  Honor, I understand that it's pretrial's policy

16  to -- to not release people when they're on

17  supervised release through another jurisdiction, but

18  it's essentially not following the court's order in

19  this case.

20              Now, Your Honor, on top of that, the

21  complaining witness has told me that she doesn't

22  want Mr. Sharp in jail, that she's not in fear of

1    him, that he's not a danger, and she's not planning

2    to press charges where we wait and file.  And I --

3    I'd be curious to see whether the state had actually

4    screened the case by this point.

5              Finally, Mr. Sharp has a GED, he's from

6    D.C., born and raised.  The pretrial sheet does have

7    some prior convictions, but almost all of them are

8    at least nine years old and I only see under 2016.

9    He's 33 right now, so nine years ago he was much

10   younger.  Your Honor, just -- just before he -- he

11   was incarcerated in this case he got a job as a

12   dishwasher at the Old Ebbitt Grill and was supposed

13   to be starting.  He struggled with unemployment

14   throughout the pandemic and I'm certainly concerned

15   about whether he'll be able to keep his job.  And so

16   for all of these reasons, we're asking that he be

17   released on an unsecured bond.

18             THE COURT:  Okay.  Thank you.

19             FEMALE VOICE:  Good morning.

20             THE COURT:  Give me one second.

21             Hello.  I have a case for you.  You had

22   ordered for pretrial level four.  It's back in for a

1   follow-up, yeah.  You can take it --

2                  (The recording was concluded.)

3                              ---

4            THE COURT:  -- qualifying for pretrial

5   and it was not his intention that pretrial be forced

6   to or ordered to do to release him on pretrial if --

7   if that was going to prevent him from being

8   eligible.

9                  In addition, the court would note -- this

10  court would note that, again, that he was on

11  pretrial.  I'm sorry, he was on supervised release,

12  that the nature of these allegations are serious and

13  that it is alleged that the defendant punched the

14  victim, punched her in the face several times

15  causing swelling, bruising, and -- around the left

16  eye and upper lip that was visible to the officers

17  who ultimately charged him.  And so the court does

18  find that he presents a danger.  Whether the state

19  is -- is going to be able to proceed or will proceed

20  in the trial date next week is a separate

21  consideration, determination to obviously be made on

22  that day.  But at this time the court believes that

1   the bond as is set with the option of -- I'm sorry,

2   with pretrial having indicated that he is not

3   eligible in light of the supervised release, bond

4   will remain the same.  He'll -- he'll remain in his

5   current status until his trial date next week.

6              MR. IM:  Understood.

7              THE COURT:  All right.  Thank you.

8              (The recording was concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2          I, Jackie A. Scheer, do hereby certify

 3   that the foregoing transcript is a true and correct

 4   record of the recorded proceedings; that said

 5   proceedings were transcribed to the best of my

 6   ability from the audio recording and supporting

 7   information; and that I am neither counsel for,

 8   related to, nor employed by any of the parties to

 9   this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14

15   _____

16          JACKIE A. SCHEER

17          DECEMBER 13, 2022

18

19

20

21

22
```

## A

ability
7:6
able
4:15, 5:19
about
3:4, 3:5, 4:15
absolutely
2:17
actually
4:3
addition
5:9
again
5:10
ago
4:9
ahead
3:13
all
4:7, 4:16, 6:7
allegations
5:12
alleged
5:13
almost
4:7
already
3:5
another
3:17
any
7:8
appear
2:16
around
5:15
asking
2:12, 4:16
assistant
2:4
audio
7:6
aware
2:15

## B

back
4:22

because
2:18, 3:2
before
4:10
being
5:7
believes
5:22
best
7:5
bond
2:12, 2:13,
4:17, 6:1, 6:3
born
4:6
bruising
5:15

## C

call
3:7
carrington
2:19, 3:8
case
2:4, 3:19, 4:4,
4:11, 4:21, 7:9
causing
5:15
certainly
4:14
certificate
7:1
certify
7:2
charged
5:17
charges
4:2
complaining
3:21
concerned
4:14
concluded
5:2, 6:8
consideration
5:21
consulted
3:10

convictions
4:7
correct
2:8, 7:3
counsel
7:7
court
2:2, 2:6, 2:9,
2:14, 2:17,
2:22, 3:5, 3:7,
3:10, 3:11,
3:13, 4:18,
4:20, 5:4, 5:9,
5:10, 5:17,
5:22, 6:7
court's
3:18
curious
4:3
current
2:14, 6:5

## D

danger
4:1, 5:18
date
2:14, 2:17,
5:20, 6:5
day
5:22
december
7:17
defendant
5:13
defender
2:4
determination
5:21
dishwasher
4:12
district
2:14

## E

ebbitt
4:12
eligible
2:22, 3:2, 5:8,

6:3
employed
7:8
essentially
3:18
eye
5:16

## F

face
5:14
failure
2:16
fear
3:22
female
4:19
file
4:2
filed
2:18
finally
4:5
financial
7:9
find
5:18
follow-up
5:1
following
3:18
forced
5:5
foregoing
7:3
four
3:6, 4:22

## G

ged
4:5
give
2:20, 4:20
go
3:13
going
5:7, 5:19
good
2:3, 2:6, 4:19

| | | | |
|---|---|---|---|
| grill | judge | neither | please |
| 4:12 | 2:19, 3:7 | 7:7 | 3:11 |
| **H** | july | next | point |
| he'll | 1:11, 2:15, | 5:20, 6:5 | 4:4 |
| 4:15, 6:4 | 2:21 | nine | policy |
| hear | june | 4:8, 4:9 | 3:4, 3:15 |
| 2:9 | 2:18 | note | presence |
| hearing | jurisdiction | 5:9, 5:10 | 2:7 |
| 1:10 | 3:17 | **O** | presents |
| hello | **K** | obviously | 5:18 |
| 4:21 | keep | 5:21 | press |
| here | 4:15 | officers | 4:2 |
| 2:12 | knew | 5:16 | pretrial |
| hereby | 3:5 | okay | 2:16, 2:20, |
| 7:2 | **L** | 2:9, 3:12, 4:18 | 2:21, 3:1, 3:6, |
| honor | least | old | 3:9, 4:6, 4:22, |
| 2:3, 2:8, 2:11, | 4:8 | 4:8, 4:12 | 5:4, 5:5, 5:6, |
| 2:13, 2:18, 3:5, | left | one | 5:11, 6:2 |
| 3:15, 3:20, 4:10 | 5:15 | 4:20 | pretrial's |
| **I** | leslie | only | 3:15 |
| im | 1:10, 2:2 | 4:8 | prevent |
| 2:3, 2:4, 2:6, | level | option | 5:7 |
| 2:8, 2:11, 3:9, | 3:6, 4:22 | 2:20, 6:1 | prior |
| 3:12, 3:13, | light | order | 4:7 |
| 3:14, 6:6 | 6:3 | 2:21, 3:18 | proceed |
| incarcerated | lip | ordered | 5:19 |
| 4:11 | 5:16 | 2:19, 3:6, | proceedings |
| indicated | **M** | 4:22, 5:6 | 7:4, 7:5 |
| 6:2 | made | otherwise | public |
| information | 5:21 | 7:10 | 2:4 |
| 7:7 | main | outcome | punched |
| informed | 3:4 | 7:10 | 5:13, 5:14 |
| 2:21 | morning | **P** | **Q** |
| intention | 2:3, 2:6, 4:19 | pages | qualifying |
| 5:5 | motion | 1:21 | 5:4 |
| interest | 2:10, 2:12, | pandemic | **R** |
| 7:9 | 2:18 | 4:14 | raised |
| **J** | much | parties | 4:6 |
| jackie | 4:9 | 7:8 | reasons |
| 1:22, 7:2, 7:16 | **N** | people | 4:16 |
| jail | nature | 3:16 | record |
| 3:22 | 5:12 | peter | 7:4 |
| job | nd | 2:3 | recorded |
| 1:20, 4:11, | 2:15 | phonetic | 7:4 |
| 4:15 | | 2:19 | recording |
| | | planning | 5:2, 6:8, 7:6 |
| | | 4:1 | |

| | | | |
|---|---|---|---|
| **related**<br>7:8 | **sorry**<br>5:11, 6:1 | **trial**<br>5:20, 6:5 | **years**<br>4:8, 4:9 |
| **release**<br>3:1, 3:3, 3:16,<br>3:17, 5:6, 5:11,<br>6:3 | **spoke**<br>3:1<br>**starting**<br>4:13 | **true**<br>7:3 | **younger**<br>4:10 |

**U**

| | | | |
|---|---|---|---|
| **released**<br>2:13, 2:20,<br>4:17 | **state**<br>4:3, 5:18 | **ultimately**<br>3:14, 5:17 | **1** |

**13**
7:17

**remain**
6:4

**status**
6:5

**under**
4:8

**14**
1:11

**right**
4:9, 6:7

**struggled**
4:13

**understand**
3:15

**2**

**S**

**supervised**
3:3, 3:17,
5:11, 6:3

**understood**
6:6

**2016**
4:8

**said**
3:2, 7:4

**supporting**
7:6

**unemployment**
4:13

**2021**
1:11

**same**
6:4

**supposed**
4:12

**unsecured**
2:13, 4:17

**2022**
7:17

**scheduled**
2:15

**swelling**
5:15

**until**
6:5

**22**
2:15

**scheer**
1:22, 7:2, 7:16

**T**

**upper**
5:16

**24**
2:18

**screened**
4:4

**take**
5:1

**V**

**2nd**
2:21

**second**
4:20

**th**
2:18

**victim**
5:14

**3**

**see**
4:3, 4:8

**thank**
2:11, 4:18, 6:7

**visible**
5:16

**33**
4:9

**separate**
5:20

**thing**
3:4

**voice**
4:19

**3e**
2:2

**serious**
5:12

**through**
3:3, 3:17

**W**

**4**

**set**
6:1

**throughout**
4:14

**wait**
4:2

**473710**
1:20

**several**
5:14

**time**
5:22

**waiving**
2:7

**7**

**sharp**
1:10, 2:2, 2:5,
2:12, 2:22,
3:22, 4:5

**times**
5:14

**want**
3:22

**701207**
2:2

**sheet**
2:16, 3:9, 4:6

**told**
3:21

**we're**
2:12, 4:16

**signature-dyt7c**
7:14

**top**
3:20

**week**
5:20, 6:5

**sir**
2:10

**transcribed**
1:22, 7:5

**whether**
4:3, 4:15, 5:18

**some**
4:7

**transcriber**
7:1

**witness**
3:21

**transcript**
7:3

**Y**

**yeah**
3:14, 5:1

# Exhibit G
# Adrienne Worthington
# Supplemental Case Docs.



# Transcript of Hearing

**Date:** December 27, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6

7

8

9

10                Hearing in Re: Adrienne Worthington

11                    December 27, 2021

12

13

14

15

16

17

18

19

20   Job No.:  473710

21   Pages 1 - 6

22   Transcribed by:  Jackie Scheer
      Planet Depos | 888.433.3767 | www.planetdepos.com

```
1                    P R O C E E D I N G S

2              THE COURT:  Calling the matter of

3    Adrienne Michelle Worthington.  5E705808.

4              (Speaking out of hearing.)

5              THE COURT:  Do we have a pretrial sheet

6    for Ms. Worthington?

7              (Speaking out of hearing.)

8              THE COURT:  Oh, in here.

9              (Speaking out of hearing.)

10             THE COURT:  Oh, okay.

11             (Speaking out of hearing.)

12             THE COURT:  Uh-huh.

13             MR. IM:  Good afternoon, Your Honor.

14   Peter Im, assistant public defender on behalf of Ms.

15   Worthington.

16             Ms. Worthington, if that's you at the

17   jail, could you please give us a thumbs up?

18             THE COURT:  Okay.

19             MR. IM:  She's raising her hand, Your

20   Honor.  Thank you.

21             THE COURT:  Okay.

22             MR. IM:  Now, Your Honor, unfortunately
```

1    because of the phone issues at the jail, I was not

2    able to speak with Ms. Worthington and so first of

3    all I want to confirm that she does want a public

4    defender representing her, and then I'd like to ask

5    whether she'd like for the matter to be passed till

6    tomorrow or to be heard today.

7              THE COURT:  All right.  Ms. Worthington,

8    did you -- did you listen to what Mr. Im --

9              MS. WORTHINGTON:  -- yes.

10             THE COURT:  -- just stated?  Okay.  What

11   he --

12             MS. WORTHINGTON:  -- Your Honor, if he

13   feels that he can represent me today, yes.  If not,

14   let me know.

15             THE COURT:  Say the last part again?

16             MS. WORTHINGTON:  I guess if he needs

17   more time he needs more time but he can do it today,

18   he can do it today (incomprehensible).

19             MR. IM:  Your Honor, I think given the --

20   I think that from what I heard she said that I may

21   need more time to prepare, then I should ask for it

22   to be passed till tomorrow.  And, Your Honor, given

1    the nature of the charges I think it would be better

2    for me to have a chance to speak with Ms.

3    Worthington.  And so if I could give her my phone

4    number and ask for the case to be passed till

5    tomorrow.

6              THE COURT:  All right.  Is that -- Madame

7    Clerk, can we pass this to December -- okay.  Matter

8    is going to be passed to December 28th at 1:15.

9              MR. IM:  Thank you, Your Honor.

10             THE COURT:  All right.

11             MR. IM:  And ask Corporal Evans if you

12   can take down my number.  Ms. Worthington, if you

13   could take down my number, too.  Or -- or make sure

14   you give me a call when you get back to the unit.

15   My number is (301)291-7537.

16             CORPORAL EVANS:  Have you state your

17   name, sir.

18             MR. IM:  My first name is Peter,

19   P-e-t-e-r.  Last name is Im, two letters:  I then M,

20   as in mother.

21             CORPORAL EVANS:  Yes, sir.

22             MR. IM:  Thank you.

1              FEMALE VOICE:  So (incomprehensible) our

2     telephones are down in our unit (incomprehensible).

3              (The recording was concluded.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1                CERTIFICATE OF TRANSCRIBER

 2          I, Jackie A. Scheer, do hereby certify

 3     that the foregoing transcript is a true and correct

 4     record of the recorded proceedings; that said

 5     proceedings were transcribed to the best of my

 6     ability from the audio recording and supporting

 7     information; and that I am neither counsel for,

 8     related to, nor employed by any of the parties to

 9     this case and have no interest, financial or

10     otherwise in its outcome.

11

12

13

14

15     _____

16          JACKIE A. SCHEER

17          DECEMBER 12, 2022

18

19

20

21

22     Planet Depos | 888.433.3767 | www.planetdepos.com
```

## A

**ability**
6:6
**able**
3:2
**adrienne**
1:10, 2:3
**afternoon**
2:13
**again**
3:15
**all**
3:3, 3:7, 4:6,
4:10
**any**
6:8
**assistant**
2:14
**audio**
6:6

## B

**back**
4:14
**because**
3:1
**behalf**
2:14
**best**
6:5
**better**
4:1

## C

**call**
4:14
**calling**
2:2
**case**
4:4, 6:9
**certificate**
6:1
**certify**
6:2
**chance**
4:2
**charges**
4:1

**clerk**
4:7
**com**
1:23, 2:23,
3:23, 4:23,
5:23, 6:23
**concluded**
5:3
**confirm**
3:3
**corporal**
4:11, 4:16,
4:21
**correct**
6:3
**could**
2:17, 4:3, 4:13
**counsel**
6:7
**court**
2:2, 2:5, 2:8,
2:10, 2:12,
2:18, 2:21, 3:7,
3:10, 3:15, 4:6,
4:10

## D

**december**
1:11, 4:7, 4:8,
6:17
**defender**
2:14, 3:4
**depos**
1:23, 2:23,
3:23, 4:23,
5:23, 6:23
**down**
4:12, 4:13, 5:2

## E

**employed**
6:8
**evans**
4:11, 4:16,
4:21

## F

**feels**
3:13

**female**
5:1
**financial**
6:9
**first**
3:2, 4:18
**foregoing**
6:3

## G

**give**
2:17, 4:3, 4:14
**given**
3:19, 3:22
**going**
4:8
**good**
2:13
**guess**
3:16

## H

**hand**
2:19
**heard**
3:6, 3:20
**hearing**
1:10, 2:4, 2:7,
2:9, 2:11
**here**
2:8
**hereby**
6:2
**honor**
2:13, 2:20,
2:22, 3:12,
3:19, 3:22, 4:9

## I

**im**
2:13, 2:14,
2:19, 2:22, 3:8,
3:19, 4:9, 4:11,
4:18, 4:19, 4:22
**incomprehensible**
3:18, 5:1, 5:2
**information**
6:7

**interest**
6:9
**issues**
3:1

## J

**jackie**
1:22, 6:2, 6:16
**jail**
2:17, 3:1
**job**
1:20

## K

**know**
3:14

## L

**last**
3:15, 4:19
**letters**
4:19
**listen**
3:8

## M

**madame**
4:6
**make**
4:13
**matter**
2:2, 3:5, 4:7
**michelle**
2:3
**more**
3:17, 3:21
**mother**
4:20

## N

**name**
4:17, 4:18,
4:19
**nature**
4:1
**need**
3:21
**needs**
3:16, 3:17

| neither | prepare | 2:11 | unit |
|---|---|---|---|
| 6:7 | 3:21 | **state** | 4:14, 5:2 |
| **number** | **pretrial** | 4:16 | **V** |
| 4:4, 4:12, | 2:5 | **stated** | **voice** |
| 4:13, 4:15 | **proceedings** | 3:10 | 5:1 |
| **O** | 6:4, 6:5 | **supporting** | **W** |
| **oh** | **public** | 6:6 | **want** |
| 2:8, 2:10 | 2:14, 3:3 | **sure** | 3:3 |
| **okay** | **R** | 4:13 | **whether** |
| 2:10, 2:18, | **raising** | **T** | 3:5 |
| 2:21, 3:10, 4:7 | 2:19 | **take** | **worthington** |
| **otherwise** | **record** | 4:12, 4:13 | 1:10, 2:3, 2:6, |
| 6:10 | 6:4 | **telephones** | 2:15, 2:16, 3:2, |
| **out** | **recorded** | 5:2 | 3:7, 3:9, 3:12, |
| 2:4, 2:7, 2:9, | 6:4 | **th** | 3:16, 4:3, 4:12 |
| 2:11 | **recording** | 4:8 | **www** |
| **outcome** | 5:3, 6:6 | **thank** | 1:23, 2:23, |
| 6:10 | **related** | 2:20, 4:9, 4:22 | 3:23, 4:23, |
| **P** | 6:8 | **think** | 5:23, 6:23 |
| **p-e-t-e-r** | **represent** | 3:19, 3:20, 4:1 | **.** |
| 4:19 | 3:13 | **thumbs** | **.3767** |
| **pages** | **representing** | 2:17 | 1:23, 2:23, |
| 1:21 | 3:4 | **till** | 3:23, 4:23, |
| **part** | **right** | 3:5, 3:22, 4:4 | 5:23, 6:23 |
| 3:15 | 3:7, 4:6, 4:10 | **time** | **1** |
| **parties** | **S** | 3:17, 3:21 | **1** |
| 6:8 | **said** | **today** | 4:8 |
| **pass** | 3:20, 6:4 | 3:6, 3:13, | **12** |
| 4:7 | **say** | 3:17, 3:18 | 6:17 |
| **passed** | 3:15 | **tomorrow** | **15** |
| 3:5, 3:22, 4:4, | **scheer** | 3:6, 3:22, 4:5 | 4:8 |
| 4:8 | 1:22, 6:2, 6:16 | **transcribed** | **2** |
| **peter** | **she'd** | 1:22, 6:5 | **2021** |
| 2:14, 4:18 | 3:5 | **transcriber** | 1:11 |
| **phone** | **sheet** | 6:1 | **2022** |
| 3:1, 4:3 | 2:5 | **transcript** | 6:17 |
| **planet** | **should** | 6:3 | **27** |
| 1:23, 2:23, | 3:21 | **true** | 1:11 |
| 3:23, 4:23, | **signature-x0zdq** | 6:3 | **28** |
| 5:23, 6:23 | 6:14 | **two** | 4:8 |
| **planetdepos** | **sir** | 4:19 | **291** |
| 1:23, 2:23, | 4:17, 4:21 | **U** | 4:15 |
| 3:23, 4:23, | **speak** | **uh-huh** | **3** |
| 5:23, 6:23 | 3:2, 4:2 | 2:12 | **301** |
| **please** | **speaking** | **unfortunately** | 4:15 |
| 2:17 | 2:4, 2:7, 2:9, | 2:22 | |

| 4 |
|---|
| **473710** |
| 1:20 |

| 5 |
|---|
| **5e** |
| 2:3 |

| 7 |
|---|
| **705808** |
| 2:3 |
| **7537** |
| 4:15 |

| 8 |
|---|
| **888.433** |
| 1:23, 2:23, |
| 3:23, 4:23, |
| 5:23, 6:23 |



# Transcript of Hearing

**Date:** December 28, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

Hearing in Re: Adrienne Worthington

December 28, 2021

Job No.:  473710

Pages 1 - 8

Transcribed by:  Jackie Scheer

```
 1              P R O C E E D I N G S
 2              MALE VOICE:  Thank you.
 3              THE COURT:  Adrienne Worthington.
 4    5E705808.
 5              MR. IM:  Good afternoon, Your Honor.
 6    Peter Im, assistant public defender on behalf of Ms.
 7    Worthington.  The public defender's office is
 8    currently waiving formal reading of the charges.
 9              THE COURT:  Okay.  Very good.  And I see
10    the -- is that Defendant Worthington there?
11              MS. WORTHINGTON:  Yes --
12              MR. IM:  -- Ms. Worthington --
13              THE COURT:  -- okay.
14              MR. IM:  -- if that's you, could you
15    please give us a thumbs up?
16              THE COURT:  Okay.  Thumbs up.  Okay.
17    I'll hear from you, Counsel.
18              MR. IM:  Thank you, Your Honor.  In this
19    case we're asking that Ms. Worthington be released
20    on an unsecured bond.  Your Honor, I want to start
21    off by giving you a little bit of background about
22    Ms. Worthington.  She's been in the area for 20
```

1    years.  She has three adult children and over a

2    dozen grandchildren.  She's an upstanding member of

3    her community.  Your Honor, on our pretrial sheet

4    I'll acknowledge that there are some contacts but

5    the last conviction on there is over ten years old.

6    And she also has an -- failures to appear but my

7    understanding is that all of those are also over ten

8    years old.  I would ask you not to consider those

9    because back then, Your Honor, Ms. Worthington's

10   life was very different.  Now she's been clean --

11   she's been sober for eight years.  She gets

12   treatment, she has a sponsor and she goes to AA

13   meetings and has a huge support group through them.

14   She also takes medication and has consistently been

15   in therapy.  So I'd ask Your Honor to consider that

16   because she is not getting any of that support while

17   she's in jail right now.

18            Now, Your Honor, turning to the statement

19   of charges, to be completely frank, it's a little

20   hard to tell what's going on.  There is the alleged

21   victim, Keon Mathis (phonetic), jumps out of the car

22   and is -- somehow jumps back in the car and is in

1    the driver's seat, and it's a little puzzling.  And

2    actually this bond hearing was passed from yesterday

3    because the jail phones were down and I wasn't able

4    to speak with -- with Ms. Worthington to get a

5    little bit of clarity.  And that's actually what I

6    was trying to get to be able to present to Your

7    Honor today.

8              So, Your Honor, I've gotten a little bit

9    more clarity.  Keon is Ms. Worthington's abusive

10   boyfriend.  Proffer that investigation might show

11   that -- that he got out of the car and started

12   stabbing the tires of the car and jumped back in but

13   he had a knife.  And certainly Ms. Worthington was

14   acting in self-defense.  She has the absolute right

15   to do so.  And so, Your Honor, it's our position

16   that an unsecured bond would be sufficient, would

17   ensure Ms. Worthington's return to court.  She has

18   my phone number and she -- I've explained to her the

19   importance of being in court and, Your Honor, I --

20   this certainly is not the kind of case for which Ms.

21   Worthington should be held without bond before

22   trial.

```
1              THE COURT:  Okay.  State?

2              STATE'S ATTORNEY:  Your Honor, the

3   defendant has five prior criminal failures to

4   appear, three prior motor vehicle failure to appear.

5   The court's pretrial service has been unable to

6   verify.  Now, I understand if -- if they've been

7   unable to (incomprehensible), although it's been a

8   couple days, had an extra day to do so.  Verify any

9   employment for ties to the community, although by

10  her arrest record I think she has a clear pattern of

11  ties to the community.  But her last arrest seems to

12  be 2019.  State, as it said in the last case, does

13  not think that unsecured bond is ever appropriate

14  because it sets up a lifetime of failure for the

15  person to have to pay a debt that they will forever

16  never be able to pay.  If they can't pay a hundred

17  dollars today, they will never be able to pay a

18  thousand dollars next week or next year.  Pretrial

19  release may be an option.  The victim in this case

20  did suffer physical injuries.  We believe that

21  pretrial release is appropriate if it's supervised

22  by the court.  Thank you.
```

1              MR. IM:   And, Your Honor, if Your Honor

2    has concerns about unsecured bond, certainly we

3    wouldn't oppose (incomprehensible).

4              THE COURT:   Okay.   Okay.   The court has

5    reviewed the pretrial intake sheet and I have

6    reviewed the statement of probable cause and I've

7    heard the argument of counsel.   And applying the

8    factors provided for under Maryland rules, the

9    court -- I mean, I -- I'm going to tell ya, I'm

10   troubled by the statement of probable cause.

11   It's -- the allegations, and I know they're just

12   allegations, but the allegations are that there was

13   continuous screwdriver to the alleged victim's face.

14   And that's not good.   So after reviewing the

15   whole -- all of this, I've determined that there is

16   clear and convincing evidence that no condition of

17   release will reasonably ensure the safety of the

18   complaining witness.   With that said, I'm going to

19   order this defendant be held without bond, but with

20   that said, I will give the pretrial release option

21   and -- and they can review it and apply their

22   criteria.

1          The defense is to have no contact with

2    the victim, state witnesses and codefendants,

3    specifically Keon Mathis or Mathias, stay away from

4    the location of the incident, no guns, no ammo, no

5    CDS.

6          MR. IM:  And -- and, Your Honor, if I

7    may, it's been taking a few weeks to get cases

8    reviewed through the pretrial option.  So would Your

9    Honor consider your order in pretrial or also give

10   it the option of private home detention?  Because

11   that would be the same level of supervision.

12          THE COURT:  Right.  Given the

13   circumstances, no, I'm not going to order it and I

14   am not inclined to do any sort of private -- private

15   home monitoring of any type.  So I'm going to leave

16   this to the pretrial and they can review this and go

17   down and see what happens.  All right.  That

18   concludes this matter.

19          STATE'S ATTORNEY:  Thank you.

20          (The recording was concluded.)

21

22

```
1                CERTIFICATE OF TRANSCRIBER

2         I, Jackie A. Scheer, do hereby certify

3    that the foregoing transcript is a true and correct

4    record of the recorded proceedings; that said

5    proceedings were transcribed to the best of my

6    ability from the audio recording and supporting

7    information; and that I am neither counsel for,

8    related to, nor employed by any of the parties to

9    this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14                  Jackie A. Scheer

15   _____

16        JACKIE A. SCHEER

17        DECEMBER 12, 2022

18

19

20

21

22
```

| A | | | |
|---|---|---|---|

**aa**
3:12
**ability**
8:6
**able**
4:3, 4:6, 5:16,
5:17
**about**
2:21, 6:2
**absolute**
4:14
**abusive**
4:9
**acknowledge**
3:4
**acting**
4:14
**actually**
4:2, 4:5
**adrienne**
1:10, 2:3
**adult**
3:1
**after**
6:14
**afternoon**
2:5
**all**
3:7, 6:15, 7:17
**allegations**
6:11, 6:12
**alleged**
3:20, 6:13
**also**
3:6, 3:7, 3:14,
7:9
**although**
5:7, 5:9
**ammo**
7:4
**any**
3:16, 5:8,
7:14, 7:15, 8:8
**appear**
3:6, 5:4
**apply**
6:21

**applying**
6:7
**appropriate**
5:13, 5:21
**area**
2:22
**argument**
6:7
**arrest**
5:10, 5:11
**asking**
2:19
**assistant**
2:6
**attorney**
5:2, 7:19
**audio**
8:6
**away**
7:3

| B | | | |
|---|---|---|---|

**back**
3:9, 3:22, 4:12
**background**
2:21
**because**
3:9, 3:16, 4:3,
5:14, 7:10
**been**
2:22, 3:10,
3:11, 3:14, 5:5,
5:6, 5:7, 7:7
**before**
4:21
**behalf**
2:6
**being**
4:19
**believe**
5:20
**best**
8:5
**bit**
2:21, 4:5, 4:8
**bond**
2:20, 4:2,
4:16, 4:21,

5:13, 6:2, 6:19
**boyfriend**
4:10

| C | | | |
|---|---|---|---|

**can't**
5:16
**car**
3:21, 3:22,
4:11, 4:12
**case**
2:19, 4:20,
5:12, 5:19, 8:9
**cases**
7:7
**cause**
6:6, 6:10
**cds**
7:5
**certainly**
4:13, 4:20, 6:2
**certificate**
8:1
**certify**
8:2
**charges**
2:8, 3:19
**children**
3:1
**circumstances**
7:13
**clarity**
4:5, 4:9
**clean**
3:10
**clear**
5:10, 6:16
**codefendants**
7:2
**community**
3:3, 5:9, 5:11
**complaining**
6:18
**completely**
3:19
**concerns**
6:2
**concluded**
7:20

**concludes**
7:18
**condition**
6:16
**consider**
3:8, 3:15, 7:9
**consistently**
3:14
**contact**
7:1
**contacts**
3:4
**continuous**
6:13
**conviction**
3:5
**convincing**
6:16
**correct**
8:3
**could**
2:14
**counsel**
2:17, 6:7, 8:7
**couple**
5:8
**court**
2:3, 2:9, 2:13,
2:16, 4:17,
4:19, 5:1, 5:22,
6:4, 6:9, 7:12
**court's**
5:5
**criminal**
5:3
**criteria**
6:22
**currently**
2:8

| D | | | |
|---|---|---|---|

**day**
5:8
**days**
5:8
**debt**
5:15
**december**
1:11, 8:17

**defendant**
2:10, 5:3, 6:19
**defender**
2:6
**defender's**
2:7
**defense**
7:1
**detention**
7:10
**determined**
6:15
**different**
3:10
**dollars**
5:17, 5:18
**down**
4:3, 7:17
**dozen**
3:2
**driver's**
4:1

**E**

**eight**
3:11
**employed**
8:8
**employment**
5:9
**ensure**
4:17, 6:17
**ever**
5:13
**evidence**
6:16
**explained**
4:18
**extra**
5:8

**F**

**face**
6:13
**factors**
6:8
**failure**
5:4, 5:14

**failures**
3:6, 5:3
**few**
7:7
**financial**
8:9
**five**
5:3
**foregoing**
8:3
**forever**
5:15
**formal**
2:8
**frank**
3:19

**G**

**getting**
3:16
**give**
2:15, 6:20, 7:9
**given**
7:12
**giving**
2:21
**go**
7:16
**goes**
3:12
**going**
3:20, 6:9,
6:18, 7:13, 7:15
**good**
2:5, 2:9, 6:14
**gotten**
4:8
**grandchildren**
3:2
**group**
3:13
**guns**
7:4

**H**

**happens**
7:17
**hard**
3:20

**hear**
2:17
**heard**
6:7
**hearing**
1:10, 4:2
**held**
4:21, 6:19
**hereby**
8:2
**home**
7:10, 7:15
**honor**
2:5, 2:18,
2:20, 3:3, 3:9,
3:15, 3:18, 4:7,
4:8, 4:15, 4:19,
5:2, 6:1, 7:6,
7:9
**huge**
3:13
**hundred**
5:16

**I**

**im**
2:5, 2:6, 2:12,
2:14, 2:18, 6:1,
7:6
**importance**
4:19
**incident**
7:4
**inclined**
7:14
**incomprehensible**
5:7, 6:3
**information**
8:7
**injuries**
5:20
**intake**
6:5
**interest**
8:9
**investigation**
4:10

**J**

**jackie**
1:22, 8:2, 8:16

**jail**
3:17, 4:3
**job**
1:20
**jumped**
4:12
**jumps**
3:21, 3:22

**K**

**keon**
3:21, 4:9, 7:3
**kind**
4:20
**knife**
4:13
**know**
6:11

**L**

**last**
3:5, 5:11, 5:12
**leave**
7:15
**level**
7:11
**life**
3:10
**lifetime**
5:14
**little**
2:21, 3:19,
4:1, 4:5, 4:8
**location**
7:4

**M**

**male**
2:2
**maryland**
6:8
**mathias**
7:3
**mathis**
3:21, 7:3
**matter**
7:18
**mean**
6:9

medication
3:14
meetings
3:13
member
3:2
might
4:10
monitoring
7:15
more
4:9
motor
5:4

**N**

neither
8:7
never
5:16, 5:17
next
5:18
number
4:18

**O**

office
2:7
okay
2:9, 2:13,
2:16, 5:1, 6:4
old
3:5, 3:8
oppose
6:3
option
5:19, 6:20,
7:8, 7:10
order
6:19, 7:9, 7:13
otherwise
8:10
out
3:21, 4:11
outcome
8:10
over
3:1, 3:5, 3:7

**P**

pages
1:21
parties
8:8
passed
4:2
pattern
5:10
pay
5:15, 5:16,
5:17
person
5:15
peter
2:6
phone
4:18
phones
4:3
phonetic
3:21
physical
5:20
please
2:15
position
4:15
present
4:6
pretrial
3:3, 5:5, 5:18,
5:21, 6:5, 6:20,
7:8, 7:9, 7:16
prior
5:3, 5:4
private
7:10, 7:14
probable
6:6, 6:10
proceedings
8:4, 8:5
proffer
4:10
provided
6:8
public
2:6, 2:7

puzzling
4:1

**R**

reading
2:8
reasonably
6:17
record
5:10, 8:4
recorded
8:4
recording
7:20, 8:6
related
8:8
release
5:19, 5:21,
6:17, 6:20
released
2:19
return
4:17
review
6:21, 7:16
reviewed
6:5, 6:6, 7:8
reviewing
6:14
right
3:17, 4:14,
7:12, 7:17
rules
6:8

**S**

safety
6:17
said
5:12, 6:18,
6:20, 8:4
same
7:11
scheer
1:22, 8:2, 8:16
screwdriver
6:13
seat
4:1

see
2:9, 7:17
seems
5:11
self-defense
4:14
service
5:5
sets
5:14
sheet
3:3, 6:5
should
4:21
show
4:10
signature-pb8sv
8:14
sober
3:11
some
3:4
somehow
3:22
sort
7:14
speak
4:4
specifically
7:3
sponsor
3:12
stabbing
4:12
start
2:20
started
4:11
state
5:1, 5:12, 7:2
state's
5:2, 7:19
statement
3:18, 6:6, 6:10
stay
7:3
suffer
5:20

| | |
|---|---|
| sufficient | trial |
| 4:16 | 4:22 |
| supervised | troubled |
| 5:21 | 6:10 |
| supervision | true |
| 7:11 | 8:3 |
| support | trying |
| 3:13, 3:16 | 4:6 |
| supporting | turning |
| 8:6 | 3:18 |

**T**

takes
3:14
taking
7:7
tell
3:20, 6:9
ten
3:5, 3:7
thank
2:2, 2:18, 5:22, 7:19
therapy
3:15
think
5:10, 5:13
thousand
5:18
three
3:1, 5:4
through
3:13, 7:8
thumbs
2:15, 2:16
ties
5:9, 5:11
tires
4:12
today
4:7, 5:17
transcribed
1:22, 8:5
transcriber
8:1
transcript
8:3
treatment
3:12

type
7:15

**U**

unable
5:5, 5:7
under
6:8
understand
5:6
understanding
3:7
unsecured
2:20, 4:16, 5:13, 6:2
upstanding
3:2

**V**

vehicle
5:4
verify
5:6, 5:8
victim
3:21, 5:19, 7:2
victim's
6:13
voice
2:2

**W**

waiving
2:8
want
2:20
we're
2:19
week
5:18

weeks
7:7
whole
6:15
without
4:21, 6:19
witness
6:18
witnesses
7:2
worthington
1:10, 2:3, 2:7, 2:10, 2:11, 2:12, 2:19, 2:22, 4:4, 4:13, 4:21
worthington's
3:9, 4:9, 4:17
wouldn't
6:3

**Y**

ya
6:9
year
5:18
years
3:1, 3:5, 3:8, 3:11
yesterday
4:2

**1**

12
8:17

**2**

20
2:22
2019
5:12
2021
1:11
2022
8:17
28
1:11

**4**

473710
1:20

**5**

5e
2:4

**7**

705808
2:4



# Transcript of Hearing

**Date:** February 9, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6

7

8

9

10                  Hearing in Re: Adrienne Worthington

11                        February 9, 2022

12

13

14

15

16

17

18

19

20   Job No.:  473710

21   Pages 1 - 11

22   Transcribed by:  Jackie Scheer

**JA1067**

1                    P R O C E E D I N G S

2              THE COURT:  I think Adrienne Worthington

3    is out and that's 5E705808?  And I'm getting a wave

4    from Ms. Worthington, thank you, Ms. Worthington.

5              Ms. Saffron (phonetic), this is one where

6    you're asking to modify a condition of a release.

7    Do you have the fact that she's scheduled for trial

8    April 5th, 845 Hyattsville 3?

9              MS. SAFFRON:  I do, Your Honor.  I

10   apologize, Your Honor, my phone just rang

11   (incomprehensible).  Did you call the case, Your

12   Honor?

13             THE COURT:  I did.

14             MS. SAFFRON:  Okay.  Suzy Saffron for the

15   record on behalf of Ms. Worthington, who's present

16   via Zoom.  This is the defense motion for a bond

17   review in this case.  And the reason is that Ms.

18   Worthington has been accepted into the Damascus

19   Program RISTORe, and I did speak to or e-mail Ms.

20   Burke, which is --

21             (Speaking out of hearing.)

22             MS. SAFFRON:  Pardon me?

1          THE COURT:  Keep going.  That's another

2  line that's still open.

3          STATE'S ATTORNEY:  Did we lose Ms.

4  Saffron?

5          THE COURT:  No.

6          MS. SAFFRON:  No, I'm right here.

7          THE COURT:  Go ahead.

8          STATE'S ATTORNEY:  Oh, okay.

9          THE COURT:  So you spoke with --

10          MS. SAFFRON:  Okay.  Yes, I spoke with

11  Ms. Burke and she indicated at -- at the Damascus

12  Program that there are curfews, that the first --

13  I'm just reading her e-mail -- that it's a

14  transitional home where we could stay there for up

15  to a year and that there are also a curfew of

16  10:00 p.m., but after I believe it's the first 60

17  days, there is a -- a black-out period where she is

18  not allowed to leave the facility.  So they do do a

19  lot of monitoring.  Because currently Ms.

20  Worthington is on a pretrial level four and she's

21  happy to be on that, but with this program she would

22  be grateful to Your Honor if she was to be released

1   on pretrial.  I'm sorry, not pretrial, but personal

2   recognizance or unsecured bond.  The RISTORe Program

3   deals with substance abuse, mental health diagnosis,

4   transition to a permanent affordable housing.  So

5   she's -- it's a very good program.  It will be very

6   beneficial to her.  The only requirement is that she

7   presents a negative PCR COVID test dated 72 hours or

8   less before her move-in date.  Again, the person I

9   spoke to or e-mailed, Ms. Cucina Burke (phonetic),

10  she's the executive administrator.  So what we need

11  to do is update her address to the Damascus house

12  address or have her on unsecured or pretrial or --

13  sorry, personal recognizance.

14              THE COURT:  All right.  Madame State.

15              STATE'S ATTORNEY:  All right.  When is

16  her trial date again?  Because I'm -- we're talking

17  about a 60 day black-out period.  I just want to

18  make sure her trial date doesn't fall in the middle

19  of that.

20              THE COURT:  No, it falls at the end --

21              MS. SAFFRON:  -- April 5th.

22              THE COURT:  Falls at the end.

1            STATE'S ATTORNEY:  April 5th.

2            THE COURT:  So we can --

3            STATE'S ATTORNEY:  -- at the very end.

4            THE COURT:  Yeah, we can do the math.  If

5    today's date is the 9th, so.

6            MS. WORTHINGTON:  Well, can I say

7    something?

8            THE COURT:  Sure.

9            MS. WORTHINGTON:  Okay.  Good.  So even

10   though I'm in a black-out period only means that I

11   can't go out to the community.  I'll still be able

12   to do things like go to my doctor's visits, go to

13   court, and any pertinent things that I need to do

14   for my behalf.

15           THE COURT:  Gotcha.

16           STATE'S ATTORNEY:  Okay.  Then unsecured

17   bond might be workable as long as there's no contact

18   with the witnesses.

19           THE COURT:  Gotcha.  And what's the name

20   of the program again?  Is it RISTORe?

21           MS. SAFFRON:  Yes.  It's the Damascus --

22   Lauren, do you have the motion that I filed?  I

1    attached the pamphlet that they gave to me.  Is that

2    in the court file?

3                THE COURT:  Ah, it is.  It was the last

4    page.

5                MS. SAFFRON:  Okay.  It would be -- that

6    should have all the information.  If it doesn't I

7    can get it for you.

8                THE COURT:  No.  I looked for it and

9    didn't see it the first time through.  Feel like I

10   was surprised because it's, like, ah, she says a

11   RISTORe but I don't see what it is.  So that was

12   my -- my problem.

13               MS. SAFFRON:  And, Ms. Martin, I'm having

14   the same problem over here, I just got kicked out of

15   all my programs.

16               STATE'S ATTORNEY:  It's just --

17               MS. SAFFRON:  -- just when my case is

18   called.

19               STATE'S ATTORNEY:  My internet just went

20   out for, like, 15 minutes for no apparent reason.

21               THE COURT:  Yes.

22               FEMALE VOICE:  She is (speaking out of

1    hearing).

2             THE COURT:  She's going to have to go to

3    the defense center to have the monitor removed.

4             (Speaking out of hearing.)

5             STATE'S ATTORNEY:  To that

6    (incomprehensible) I keep my cell phone right next

7    to me.  Oh, I was able to call in.

8             MS. SAFFRON:  Is it -- it is a 60 day.

9             THE COURT:  And you said that's going to

10   be in Gaithersburg?

11            MS. SAFFRON:  Yeah, it's Temple Hill --

12   at Temple Hills, Maryland.  That's -- that's where

13   she was residing.  According to the e-mail is the

14   4818 Saint Barnabas Road.  Is that correct, Ms.

15   Worthington?  Yes.

16            MS. WORTHINGTON:  Yeah, that's the

17   address, uh-huh.

18            MS. SAFFRON:  Okay.  So that's the 4818

19   Saint Barnabas Road, Temple Hills, Maryland 20748.

20            THE COURT:  Okay.  Make sure I got it

21   right.  4818 Temple Hills Road in Temple Hills?

22            MS. SAFFRON:  Saint Barnabas Road.

1           THE COURT:  Saint Barnabas Road, okay,

2     gotcha.

3           So a couple of issues.  And the first

4     one, Counsel, is obviously if she's out on pretrial

5     level four, right, so she has to go back to the jail

6     to have them remove the monitor.  Second problem is

7     if I set her in an unsecured bond she has to sign

8     the contract.

9           MS. SAFFRON:  Yes.

10          THE COURT:  So how do we get her in to

11    sign the contract?

12          MS. SAFFRON:  Ms. Worthington, when you

13    go over to the jail to take off your anklet -- Your

14    Honor, could she come over to the courthouse?

15          THE COURT:  I mean, when is she going to

16    do it?

17          MS. WORTHINGTON:  I can come today.

18          MS. SAFFRON:  Okay.

19          THE COURT:  All right.  So if she can get

20    here to 261 B in the afternoon, I'll be in here, 261

21    B.

22          MS. WORTHINGTON:  Okay.

1          THE COURT:  And we'll have the paperwork

2    here then.  Perfect.

3          MS. WORTHINGTON:  261 -- thank you,

4    Judge.

5          THE COURT:  261 on the Bourne wing,

6    B-o-u-r-n-e.

7          MS. WORTHINGTON:  I'm familiar with it

8    (incomprehensible) --

9          THE COURT:  -- so, yeah, I'll set it at

10   15,000.

11         MS. SAFFRON:  And --

12         THE COURT:  -- 15,000 unsecured, no

13   contact with the complaining witness, stay away from

14   his residence, place of employment, and she's

15   required to reside at the RISTORe Community

16   Development Program in --

17         MS. SAFFRON:  Damascus House.

18         THE COURT:  Yeah, in -- on Saint Barnabas

19   Road, 4818 I believe it was.  Okay.

20         STATE'S ATTORNEY:  4818.  Your Honor,

21   what was the unsecured amount?

22         THE COURT:  15,000.

1              STATE'S ATTORNEY:  15,000.  Okay.  Ms.

2    Worthington, if you do not show up then that's

3    15,000 you have to owe.

4              MS. WORTHINGTON:  I'll show up.

5              STATE'S ATTORNEY:  I understand.  All

6    right.  Thank you, Your Honor.

7              THE COURT:  Okay.  Thank you, Ms.

8    Worthington.  Thank you, Counsel.

9              STATE'S ATTORNEY:  Have a great after --

10   morning, everyone.

11             THE COURT:  Thanks.

12             MS. WORTHINGTON:  Thank you, good-bye.

13             THE COURT:  Is that a (incomprehensible)?

14             (The recording was concluded.)

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER

2         I, Jackie A. Scheer, do hereby certify

3    that the foregoing transcript is a true and correct

4    record of the recorded proceedings; that said

5    proceedings were transcribed to the best of my

6    ability from the audio recording and supporting

7    information; and that I am neither counsel for,

8    related to, nor employed by any of the parties to

9    this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14

15   _____

16        JACKIE A. SCHEER

17        DECEMBER 12, 2022

18

19

20

21

22
```

**A**

ability
11:6
able
5:11, 7:7
about
4:17
abuse
4:3
accepted
2:18
according
7:13
address
4:11, 4:12,
7:17
administrator
4:10
adrienne
1:10, 2:2
affordable
4:4
after
3:16, 10:9
afternoon
8:20
again
4:8, 4:16, 5:20
ah
6:3, 6:10
ahead
3:7
all
4:14, 4:15,
6:6, 6:15, 8:19,
10:5
allowed
3:18
also
3:15
amount
9:21
anklet
8:13
another
3:1
any
5:13, 11:8

apologize
2:10
apparent
6:20
april
2:8, 4:21, 5:1
asking
2:6
attached
6:1
attorney
3:3, 3:8, 4:15,
5:1, 5:3, 5:16,
6:16, 6:19, 7:5,
9:20, 10:1,
10:5, 10:9
audio
11:6
away
9:13

**B**

b-o-u-r-n-e
9:6
back
8:5
barnabas
7:14, 7:19,
7:22, 8:1, 9:18
because
3:19, 4:16,
6:10
been
2:18
before
4:8
behalf
2:15, 5:14
believe
3:16, 9:19
beneficial
4:6
best
11:5
black-out
3:17, 4:17,
5:10
bond
2:16, 4:2,

5:17, 8:7
bourne
9:5
burke
2:20, 3:11, 4:9

**C**

call
2:11, 7:7
called
6:18
can't
5:11
case
2:11, 2:17,
6:17, 11:9
cell
7:6
center
7:3
certificate
11:1
certify
11:2
come
8:14, 8:17
community
5:11, 9:15
complaining
9:13
concluded
10:14
condition
2:6
contact
5:17, 9:13
contract
8:8, 8:11
correct
7:14, 11:3
could
3:14, 8:14
counsel
8:4, 10:8, 11:7
couple
8:3
court
2:2, 2:13, 3:1,

3:5, 3:7, 3:9,
4:14, 4:20,
4:22, 5:2, 5:4,
5:8, 5:13, 5:15,
5:19, 6:2, 6:3,
6:8, 6:21, 7:2,
7:9, 7:20, 8:1,
8:10, 8:15,
8:19, 9:1, 9:5,
9:9, 9:12, 9:18,
9:22, 10:7,
10:11, 10:13
courthouse
8:14
covid
4:7
cucina
4:9
curfew
3:15
curfews
3:12
currently
3:19

**D**

damascus
2:18, 3:11,
4:11, 5:21, 9:17
date
4:8, 4:16,
4:18, 5:5
dated
4:7
day
4:17, 7:8
days
3:17
deals
4:3
december
11:17
defense
2:16, 7:3
development
9:16
diagnosis
4:3

| | | | |
|---|---|---|---|
| **doctor's** | **foregoing** | **home** | **lauren** |
| 5:12 | 11:3 | 3:14 | 5:22 |
| **E** | **four** | **honor** | **leave** |
| **e-mail** | 3:20, 8:5 | 2:9, 2:10, | 3:18 |
| 2:19, 3:13, | **G** | 2:12, 3:22, | **less** |
| 7:13 | **gaithersburg** | 8:14, 9:20, 10:6 | 4:8 |
| **e-mailed** | 7:10 | **hours** | **level** |
| 4:9 | **gave** | 4:7 | 3:20, 8:5 |
| **employed** | 6:1 | **house** | **line** |
| 11:8 | **getting** | 4:11, 9:17 | 3:2 |
| **employment** | 2:3 | **housing** | **long** |
| 9:14 | **go** | 4:4 | 5:17 |
| **end** | 3:7, 5:11, | **hyattsville** | **looked** |
| 4:20, 4:22, 5:3 | 5:12, 7:2, 8:5, | 2:8 | 6:8 |
| **even** | 8:13 | **I** | **lose** |
| 5:9 | **going** | **incomprehensible** | 3:3 |
| **everyone** | 3:1, 7:2, 7:9, | 2:11, 7:6, 9:8, | **lot** |
| 10:10 | 8:15 | 10:13 | 3:19 |
| **executive** | **good** | **indicated** | **M** |
| 4:10 | 4:5, 5:9 | 3:11 | **madame** |
| **F** | **good-bye** | **information** | 4:14 |
| **facility** | 10:12 | 6:6, 11:7 | **make** |
| 3:18 | **gotcha** | **interest** | 4:18, 7:20 |
| **fact** | 5:15, 5:19, 8:2 | 11:9 | **martin** |
| 2:7 | **grateful** | **internet** | 6:13 |
| **fall** | 3:22 | 6:19 | **maryland** |
| 4:18 | **great** | **issues** | 7:12, 7:19 |
| **falls** | 10:9 | 8:3 | **math** |
| 4:20, 4:22 | **H** | **J** | 5:4 |
| **familiar** | **happy** | **jackie** | **mean** |
| 9:7 | 3:21 | 1:22, 11:2, | 8:15 |
| **february** | **health** | 11:16 | **means** |
| 1:11 | 4:3 | **jail** | 5:10 |
| **feel** | **hearing** | 8:5, 8:13 | **mental** |
| 6:9 | 1:10, 2:21, | **job** | 4:3 |
| **female** | 7:1, 7:4 | 1:20 | **middle** |
| 6:22 | **here** | **judge** | 4:18 |
| **file** | 3:6, 6:14, | 9:4 | **might** |
| 6:2 | 8:20, 9:2 | **K** | 5:17 |
| **filed** | **hereby** | **keep** | **minutes** |
| 5:22 | 11:2 | 3:1, 7:6 | 6:20 |
| **financial** | **hill** | **kicked** | **modify** |
| 11:9 | 7:11 | 6:14 | 2:6 |
| **first** | **hills** | **L** | **monitor** |
| 3:12, 3:16, | 7:12, 7:19, | **last** | 7:3, 8:6 |
| 6:9, 8:3 | 7:21 | 6:3 | **monitoring** |
| | | | 3:19 |

| morning | owe | program | ristore |
|---|---|---|---|
| 10:10 | 10:3 | 2:19, 3:12, | 2:19, 4:2, |
| **motion** | **P** | 3:21, 4:2, 4:5, | 5:20, 6:11, 9:15 |
| 2:16, 5:22 | **page** | 5:20, 9:16 | **road** |
| **move-in** | 6:4 | **programs** | 7:14, 7:19, |
| 4:8 | **pages** | 6:15 | 7:21, 7:22, 8:1, |
| **N** | 1:21 | **R** | 9:19 |
| **name** | **pamphlet** | **rang** | **S** |
| 5:19 | 6:1 | 2:10 | **saffron** |
| **need** | **paperwork** | **reading** | 2:5, 2:9, 2:14, |
| 4:10, 5:13 | 9:1 | 3:13 | 2:22, 3:4, 3:6, |
| **negative** | **pardon** | **reason** | 3:10, 4:21, |
| 4:7 | 2:22 | 2:17, 6:20 | 5:21, 6:5, 6:13, |
| **neither** | **parties** | **recognizance** | 6:17, 7:8, 7:11, |
| 11:7 | 11:8 | 4:2, 4:13 | 7:18, 7:22, 8:9, |
| **next** | **pcr** | **record** | 8:12, 8:18, |
| 7:6 | 4:7 | 2:15, 11:4 | 9:11, 9:17 |
| **O** | **perfect** | **recorded** | **said** |
| **obviously** | 9:2 | 11:4 | 7:9, 11:4 |
| 8:4 | **period** | **recording** | **saint** |
| **oh** | 3:17, 4:17, | 10:4, 11:6 | 7:14, 7:19, |
| 3:8, 7:7 | 5:10 | **related** | 7:22, 8:1, 9:18 |
| **okay** | **permanent** | 11:8 | **same** |
| 2:14, 3:8, | 4:4 | **release** | 6:14 |
| 3:10, 5:9, 5:16, | **person** | 2:6 | **say** |
| 6:5, 7:18, 7:20, | 4:8 | **released** | 5:6 |
| 8:1, 8:18, 8:22, | **personal** | 3:22 | **says** |
| 9:19, 10:1, 10:7 | 4:1, 4:13 | **remove** | 6:10 |
| **one** | **pertinent** | 8:6 | **scheduled** |
| 2:5, 8:4 | 5:13 | **removed** | 2:7 |
| **only** | **phone** | 7:3 | **scheer** |
| 4:6, 5:10 | 2:10, 7:6 | **required** | 1:22, 11:2, |
| **open** | **phonetic** | 9:15 | 11:16 |
| 3:2 | 2:5, 4:9 | **requirement** | **second** |
| **otherwise** | **place** | 4:6 | 8:6 |
| 11:10 | 9:14 | **reside** | **see** |
| **out** | **present** | 9:15 | 6:9, 6:11 |
| 2:3, 2:21, | 2:15 | **residence** | **set** |
| 5:11, 6:14, | **presents** | 9:14 | 8:7, 9:9 |
| 6:20, 6:22, 7:4, | 4:7 | **residing** | **should** |
| 8:4 | **pretrial** | 7:13 | 6:6 |
| **outcome** | 3:20, 4:1, | **review** | **show** |
| 11:10 | 4:12, 8:4 | 2:17 | 10:2, 10:4 |
| **over** | **problem** | **right** | **sign** |
| 6:14, 8:13, | 6:12, 6:14, 8:6 | 3:6, 4:14, | 8:7, 8:11 |
| 8:14 | **proceedings** | 4:15, 7:6, 7:21, | **signature-msgxh** |
| | 11:4, 11:5 | 8:5, 8:19, 10:6 | 11:14 |

| | | | |
|---|---|---|---|
| **something** | **things** | **wave** | **15** |
| 5:7 | 5:12, 5:13 | 2:3 | 6:20 |
| **sorry** | **think** | **we'll** | **15,000** |
| 4:1, 4:13 | 2:2 | 9:1 | 9:10, 9:12, |
| **speak** | **through** | **we're** | 9:22, 10:1, 10:3 |
| 2:19 | 6:9 | 4:16 | **2** |
| **speaking** | **time** | **went** | **2022** |
| 2:21, 6:22, 7:4 | 6:9 | 6:19 | 1:11, 11:17 |
| **spoke** | **today** | **wing** | **20748** |
| 3:9, 3:10, 4:9 | 8:17 | 9:5 | 7:19 |
| **state** | **today's** | **witness** | **261** |
| 4:14 | 5:5 | 9:13 | 8:20, 9:3, 9:5 |
| **state's** | **transcribed** | **witnesses** | **4** |
| 3:3, 3:8, 4:15, | 1:22, 11:5 | 5:18 | **473710** |
| 5:1, 5:3, 5:16, | **transcriber** | **workable** | 1:20 |
| 6:16, 6:19, 7:5, | 11:1 | 5:17 | **4818** |
| 9:20, 10:1, | **transcript** | **worthington** | 7:14, 7:18, |
| 10:5, 10:9 | 11:3 | 1:10, 2:2, 2:4, | 7:21, 9:19, 9:20 |
| **stay** | **transition** | 2:15, 2:18, | **5** |
| 3:14, 9:13 | 4:4 | 3:20, 5:6, 5:9, | **5e** |
| **still** | **transitional** | 7:15, 7:16, | 2:3 |
| 3:2, 5:11 | 3:14 | 8:12, 8:17, | **5th** |
| **substance** | **trial** | 8:22, 9:3, 9:7, | 2:8, 4:21, 5:1 |
| 4:3 | 2:7, 4:16, 4:18 | 10:2, 10:4, | **6** |
| **supporting** | **true** | 10:8, 10:12 | **60** |
| 11:6 | 11:3 | **Y** | 3:16, 4:17, 7:8 |
| **sure** | **U** | **yeah** | **7** |
| 4:18, 5:8, 7:20 | **uh-huh** | 5:4, 7:11, | **705808** |
| **surprised** | 7:17 | 7:16, 9:9, 9:18 | 2:3 |
| 6:10 | **understand** | **year** | **72** |
| **suzy** | 10:5 | 3:15 | 4:7 |
| 2:14 | **unsecured** | **Z** | **8** |
| **T** | 4:2, 4:12, | **zoom** | **845** |
| **take** | 5:16, 8:7, 9:12, | 2:16 | 2:8 |
| 8:13 | 9:21 | **0** | **9** |
| **talking** | **update** | **00** | **9th** |
| 4:16 | 4:11 | 3:16 | 5:5 |
| **temple** | **V** | **1** | |
| 7:11, 7:12, | **via** | **10** | |
| 7:19, 7:21 | 2:16 | 3:16 | |
| **test** | **visits** | **11** | |
| 4:7 | 5:12 | 1:21 | |
| **thank** | **voice** | **12** | |
| 2:4, 9:3, 10:6, | 6:22 | 11:17 | |
| 10:7, 10:8, | **W** | | |
| 10:12 | **want** | | |
| **thanks** | 4:17 | | |
| 10:11 | | | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' SECOND SUPPLEMENTAL NOTICE OF FILING COURT RECORDS AND RESPONSE TO DEFENDANTS' LETTER  DOC.**

Pursuant to the Court's Order, Doc. 80, Plaintiffs submit the attached records regarding the Named Plaintiffs' state criminal court proceedings as a supplement to their prior submissions, Docs. 83, 85, and in response to Defendants' Letter to the Court, Doc. 86.

As Defendants' Letter notes, Plaintiffs reached out to defense counsel several months ago to request assistance procuring records from defense counsel's client, the State of Maryland. Doc. 86 at 2. Defense counsel provided limited assistance at that juncture. Now, apparently, defense counsel has conferred with the Administrative Clerk for the District Court for Prince George's County to facilitate Plaintiffs' acquisition of these records. These records are attached here.[1] For the Court's convenience, Plaintiffs have updated the indices provided with their previous filings on the following pages of this Notice.

---

[1] The Administrative Clerk is still refusing Plaintiffs' counsel direct access to certain documents relating to Plaintiff D.P. *See* Exhibit A at 2.

1

**JA1082**

Additionally, Plaintiffs are compelled to correct several misstatements in Defendants' Letter to the Court. First, Defendants' letter falsely states that Plaintiffs have  yet to avail themselves of the option of having D.P. himself or his criminal attorney make a request for records.  Doc. 86 at 2. As the Administrative Clerk himself confirmed, Plaintiffs' counsel worked with D.P.'s criminal defense attorney to submit a request for recordings of D.P.'s bail hearings before Defendants' Letter was sent. Ex. A at 2. Plaintiffs did not receive a response to their request until after Defendants filed their Letter (which requested that Plaintiffs email the Administrative Clerk directly), and Plaintiffs accordingly emailed the Administrative Clerk, received the recordings, and had them transcribed. The transcripts are attached here. *See* Exhibit B.

Second, Defendants dispute Plaintiffs' assertion that the District Court refused to accept Plaintiffs' requests for recordings of Plaintiff Leslie Sharp's June 14, 2021 hearing, and Plaintiff Christopher Butler's October 28-29, 2021 hearings. Defendants state that  t he District Court is unable to confirm any record of a request  for these recordings. Doc. 86 at 3. But there is a simple reason the District Court has no record of these requests: It refused to accept the requests in the first instance. Plaintiffs' counsel personally delivered the requests to the District Court Clerk on November 16, 2022. Ex. A at 6  7 (requests dated Nov. 16, 2022). However, the Clerk would not accept them.[2] Requests for recordings of these three hearings were finally accepted by the Administrative Clerk in response to Defendants' Letter. Ex. A at 2. Transcripts of the recordings are attached here. *See* Exhibits C, D.

Finally, Defendants dispute Plaintiffs' statement that the Clerk was  unable to locate  Mr. Sharp's case file when Plaintiffs tried to view it, because, Defendants say,  t he District Court has

---

[2] The copy of a *different* records request attached by Defendants, Doc. 86-4, also proves nothing. As noted above, Plaintiffs submitted a request for recordings of these hearings on November 16, 2022. Ex. A at 6  7.

confirmed that it is and always has been in possession of Mr. Sharp's file.   Doc. 86 at 3. That the file was *so   e   here* in Defendants' possession does nothing to refute Plaintiffs' statement that, on the dates that Plaintiffs' counsel went to the courthouse to obtain the file, the Clerk's Office employee on duty was unable to locate it. In any case, the Court has now been provided with the relevant records from Mr. Sharp's file. Docs. 59-7, 83-8, 85-6.

Defendants accuse Plaintiffs of making misstatements in their filings, but as described above, those false accusations are based on Defendants' own misstatements. Plaintiffs attach here the records that they were finally able to access after defense counsel addressed the issue with their client, the State of Maryland, two months after Plaintiffs first requested they do so. Plaintiffs invite defense counsel to reach out to Plaintiffs directly with any further questions.[3]

---

[3] As noted in Plaintiffs' prior filing, Doc. 85 at n.1, Plaintiffs are still awaiting a final production of records from the state courts and will produce them to this Court promptly upon receipt. Plaintiffs expect that to be the final production of records pursuant to the Court's Order, Doc. 80, absent further intervention from Defendants.

3

<table>
<tr><td colspan="4" align="center">**Plaintiff: Robert Frazier**<br>Status: Released on August 26, 2022<br>District Court Case No. 3E00714640 (Closed, Case Indicted)<br>Circuit Court Case No. CT220860X (Closed, State Dropped All Charges)</td></tr>
</table>

| Date | Record Type | Judge | Page Nos. |
|------|-------------|-------|-----------|
| 05/31/22 | Pretrial Intake Sheet | -- | Doc. 83-1 at 2-3. |
| 05/31/22 | Initial Bail Review Transcript | District Judge Bryon Bereano (Defendant) | *See* Doc. 85 n.1. |
| 05/31/22 | Initial Bail Order | Judge Bereano | Doc. 85-1 at 2. |
| 06/06/22 | Motion for Bail Review | Notes by District Judge Robert Heffron (Defendant) | Doc. 83-1 at 4. |
| 06/15/22 | Motion for Bail Review | -- | Doc. 83-1 at 5-7. |
| 06/21/22 | Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | *See* Doc. 85 n.1. |
| 06/21/22 | Bail Order | Judge Clark-Edwards | Doc. 85-1 at 3. |
| 06/28/22 | Preliminary Hearing | District Judge Brian Denton (Defendant) | *See* Doc. 85 n.1. |
| 06/28/22 | Bail Order | Judge Denton | Doc. 85-1 at 4. |
| 07/08/22 | Motion for Bail Review | -- | Doc. 83-1 at 8-11. |

4

| 07/14/22 | Order Setting Bail Review | Hearing never occurred | Doc. 85-1 at 5. |
| 07/18/22 | Motion for Bail Review (refiled in Circuit Court) | -- | Doc. 83-1 at 12-15. |
| 08/01/22 | Order | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-1 at 16. |
| 08/16/22 | Bail Review Transcript | Circuit Judge Lawrence Hill (non-Defendant) | Doc. 83-1 at 17-57. |
| 08/16/22 | Bail Order | Judge Hill | Doc. 83-1 at 58. |
| 08/25/22 | Bail Review Transcript | Judge Hill | Doc. 83-1 at 59-70. |
| 08/25/22 | Bail Order | Judge Hill | Doc. 83-1 at 71-72. |

| **Plaintiff: Anibal Hernandez**<br>Status: Released on July 25, 2022<br>District Court Case No. 5E00715391 (Closed, Information Filed)<br>Circuit Court Case No. CT221365X (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/24/22 | Pretrial Intake Sheet | -- | Doc. 83-2 at 2. |
| 06/24/22 | Initial Bail Review Transcript | District Judge LaKeecia Allen (Defendant) | Doc. 85-2 at 2-14. |
| 06/24/22 | Initial Bail Order | Judge Allen | Doc. 83-2 at 3. |

**JA1086**

| 07/12/22 | Motion to Show Cause | -- | Doc. 83-2 at 4-12. |
| 07/13/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-2 at 13-14. |
| 07/25/22 | Bail Review Transcript | District Judge Katina Steuart (non-Defendant) | Doc. 85-2 at 15-71. |
| 07/25/22 | Bail Order | Judge Steuart | Doc. 83-2 at 15-16. |

| **Plaintiff D.P.** Status: Released on August 30, 2022 District Court Case No. 3E00715403 (Closed, Indicted) Circuit Court Case No. CT221051X (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/21/22 | Pretrial Intake Sheet | -- | Doc. 83-3 at 2. |
| 06/21/22 | Initial Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | Ex. B at 2-16. |
| 06/21/22 | Initial Bail Order | Judge Clark-Edwards | Doc. 83-3 at 3-4. |
| 06/28/22 | Bail Review Transcript | District Judge Brian Denton (Defendant) | Ex. B at 17-46. |
| 06/28/22 | Bail Order | Judge Denton | Doc. 83-3 at 5. |
| 07/28/22 | Motion for Bail Review | -- | Doc. 83-3 at 6-9. |

| 07/28/22 | Hearing Transcript | | Ex. B at 47-58. |
| 08/01/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-3 at 10-11. |
| 08/17/22 | Bail Review Transcript | -- | Ex. B at 59-98. |
| 08/24/22 | Bail Review Transcript | Circuit Judge Wytonja Curry (non-Defendant) | The clerk stated that no recording/transcript exists. |
| 08/24/22 | Bail Order | Judge Curry | The clerk continues to deny Plaintiffs' counsel direct access to D.P.'s case file. *See* Ex. A at 2. |

**Plaintiff Christopher Butler**
Status: Detained since October 27, 2021
District Court Case No. 5E00704415 (Closed, Indicted)
Circuit Court Case No. CT211239X (Open, Awaiting Trial)

| Date | Record Type | Judge | Page Nos. |
|------|-------------|-------|-----------|
| 10/28/21 | Pretrial Intake Sheet | -- | Doc. 83-4 at 2. |
| 10/28/21 | Initial Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | Ex. C at 2-12. |
| 10/28/21 | Initial Bail Order | Judge Clark-Edwards | Doc. 83-4 at 3-5. |
| 10/29/21 | Bail Review Transcript | District Judge Clayton Aarons (non-Defendant). | Ex. C at 13-26. |

| 10/29/21 | Bail Order | Judge Aarons | Doc. 83-4 at 6-8. |
| 01/06/22 | Motion for Bail Review | -- | Doc. 83-4 at 9-10. |
| 01/18/22 | Order | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-4 at 11. |
| 02/18/22 | Bail Review Transcript | Circuit Judge Cathy Serrette (Defendant) | Doc. 83-4 at 12-46. |
| 02/18/22 | Bail Order | Judge Serrette | Doc. 83-4 at 47. |
| 06/29/22 | Status Hearing Transcript | Judge Serrette | Doc. 83-4 at 48-62. |
| 07/25/22 | Bail Review Transcript | Circuit Judge Krystal Alves (non-Defendant) | Doc. 83-4 at 63-67. |
| 07/26/22 | Bail Review Transcript | Judge Alves | Doc. 83-4 at 68-87. |
| 07/28/22 | Bail Review Transcript | Judge Alves | Doc. 83-4 at 88-105. |

| **Plaintiff Miramba Williams** Status: Detained since July 1, 2022 District Court Case No. 2E00715535 (Closed, Indicted) Circuit Court Case No. C-16-CR-22-000236 (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |

8

**JA1089**

| 07/05/22 | Pretrial Intake Sheet | -- | Doc. 83-5 at 2. |
|---|---|---|---|
| 07/05/22 | Initial Bail Review Transcript | District Judge Gregory Powell (Defendant) | Doc. 85-3 at 2-9. |
| 07/05/22 | Bail Order | Judge Powell | Doc. 83-5 at 3-4. |
| 07/15/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-5 at 5-6. |
| 08/12/22 | Bail Review Transcript | District Judge Patrice Lewis (non-Defendant) | Doc. 85-3 at 10-33. |
| 08/12/22 | Bail Order | Judge Lewis | Doc. 83-5 at 7. |

**Plaintiff Elmer Laguan-Salinas**
Status: Released on December 6, 2022
District Court Case No. 1E00721379 (Closed, Indicted)
Circuit Court Case No. CT221040X (Open, Awaiting Trial)

| Date | Record Type | Judge | Page Nos. |
|---|---|---|---|
| 03/17/22 | Pretrial Intake Sheet | -- | Doc. 83-6 at 2-3. |
| 03/17/22 | Initial Bail Review Transcript | District Judge Stacey Cobb Smith (Defendant) | Doc. 85-4 at 2-15. |
| 03/17/22 | Initial Bail Order | Judge Cobb Smith | Doc. 83-6 at 4-5. |
| 04/15/22 | Bail Order | District Judge Scott Carrington | Doc. 83-6 at 6-7. |

9

**JA1090**

| | | (Defendant) | |
|---|---|---|---|
| 05/12/22 | Bail Review Transcript | District Judge John Bielec (Defendant) | Doc. 85-4 at 16-35. |
| 05/12/22 | Bail Order | Judge Bielec | Doc. 83-6 at 8-9. |
| 06/14/22 | Motion for Bail Review | -- | Doc. 83-6 at 10-11. |
| 06/17/22 | Bail Review Transcript | District Judge Patrice Lewis (non-Defendant) | Doc. 85-4 at 36-58. |
| 06/17/22 | Bail Order | Judge Lewis | Doc. 83-6 at 12-15. |
| 08/16/22 | Indictment | -- | Doc. 83-6 at 16-19. |
| 10/06/22 | Motion for Bail Review | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-6 at 20-21. |
| 11/10/22 | Bail Review Transcript | Judge Rattal | Doc. 83-6 at 22-26. |

| Plaintiff Donnell Davis<br>Status: Case Closed<br>District Court Case No. 3E00713044 (Not Guilty) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 10/09/20 | Pretrial Intake Sheet | -- | Doc. 83-7 at 2-3. |
| 10/09/20 | Initial Bail Review | District Judge Robert Heffron | Doc. 85-5 at 2-12. |

**JA1091**

|  | Transcript | (Defendant) |  |
|---|---|---|---|
| 10/09/20 | Initial Bail Order | Judge Heffron | Doc. 83-7 at 4-5. |
| 10/28/20 | Notice of Pretrial Ineligibility | -- | Doc. 83-7 at 6-7. |
| 11/09/20 | Preliminary Hearing Transcript | Judge Heffron | Doc. 85-5 at 13-19. |
| 11/09/20 | Bail Order | Judge Heffron | Doc. 83-7 at 8-9. |
| 12/03/20 | Notice of Pretrial Ineligibility | -- | Doc. 83-7 at 10-11. |
| 12/10/20 | Motion for Bail Review | -- | Doc. 83-7 at 12-13. |
| 12/16/20 | Bail Review Transcript | District Judge Stacey Cobb Smith (Defendant) | Doc. 85-5 at 20-32. |
| 12/16/20 | Bail Order | Judge Cobb Smith | Doc. 83-7 at 14-15. |

| **Plaintiff Leslie Sharp**<br>Status: Case Closed<br>District Court Case No. 3E00701207 (State Dropped All Charges) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/14/21 | Pretrial Intake Sheet | -- | Doc. 83-8 at 2-3. |

**JA1092**

| 06/14/21 | Initial Bail Review Transcript | District Judge Brian Denton (Defendant) | Ex. D at 2-17. |
|---|---|---|---|
| 06/14/21 | Initial Bail Order | Judge Denton | Doc. 59-7 at 13. |
| 06/16/21 | Motion for Bail Review | -- | Doc. 83-8 at 4-5. |
| 06/24/21 | Bail Review Transcript | District Judge Scott Carrington (Defendant) | Doc. 85-6 at 2-14. |
| 06/24/21 | Bail Order | Judge Carrington | Doc. 83-8 at 6-7. |
| 06/30/21 | Notice of Pretrial Ineligibility | -- | Doc. 83-8 at 8-9. |
| 07/07/21 | Motion for Bail Review | -- | Doc. 83-8 at 10-11. |
| 07/14/21 | Bail Review Transcript | District Judge Donnaka Varner Lewis (Defendant) | Doc. 85-6 at 15-25. |
| 07/14/21 | Bail Order | Judge Varner Lewis | Doc. 83-8 at 12-13. |

| **Plaintiff Adrienne Worthington**<br>Status: Case Closed<br>District Court Case No. 5E00705808 (State Dropped All Charges) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 12/27/21 | Initial Bail Review Transcript | District Judge Wennesa Bell Snoddy (non-Defendant) | Doc. 85-7 at 2-11. |

**JA1093**

| 12/27/21 | Initial Bail Order | Judge Bell Snoddy | Doc. 83-9 at 2-4. |
|---|---|---|---|
| 12/28/21 | Pretrial Intake Sheet | -- | Doc. 83-9 at 5-6. |
| 12/28/21 | Bail Review Transcript | District Judge John Bielec (Defendant) | Doc. 85-7 at 12-24. |
| 12/28/21 | Bail Order | Judge Bielec | Doc. 83-9 at 7-9. |
| 12/29/21 | Motion for Bail Review | -- | Doc. 83-9 at 10-12. |
| 01/24/22 | Trial Summary | -- | Doc. 83-9 at 13-14. |
| 02/01/22 | Bail Order | -- | Doc. 83-9 at 15. |
| 02/02/22 | Motion for Bail Review | -- | Doc. 83-9 at 16-18. |
| 02/09/22 | Bail Review Transcript | District Judge Robert Heffron (Defendant) | Doc. 85-7 at 25-40. |
| 02/09/22 | Bail Order | Judge Heffron | Doc. 83-9 at 19-23. |

**JA1094**

Respectfully submitted this 12th day of January, 2023.

| | |
|---|---|
| /s/ Ellora Thadaney Israni | Edward Williams (D. Md. Bar 20944) |
| Ellora Thadaney Israni* | Matthew Martens* |
| Ryan Downer* | Thomas Bredar (D. Md. Bar 21635) |
| Jeremy D. Cutting* | Ellen Connell* |
| CIVIL RIGHTS CORPS | Donna Farag* |
| 1601 Connecticut Ave. NW, Suite 800 | Ayana Williams* |
| Washington, D.C. 20009 | Sonika Data* |
| (202) 894-6132 | Yoseph Desta* |
| ellora@civilrightscorps.org | Britany Riley-Swanbeck (D. Md. Bar 21843) |
| | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| Seth Wayne* | 1875 Pennsylvania Ave. NW |
| INSTITUTE FOR CONSTITUTIONAL ADVOCACY | Washington, D.C. 20006 |
| AND PROTECTION | (202) 663-6487 |
| GEORGETOWN UNIVERSITY LAW CENTER | ed.williams@wilmerhale.com |
| 600 New Jersey Ave. NW | matthew.martens@wilmerhale.com |
| Washington, D.C. 20001 | |
| (202) 662-9042 | Robert Boone* |
| sw1098@georgetown.edu | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| | 7 World Trade Center |
| | 250 Greenwich Street |
| | New York, NY 10007 |
| | (212) 230-8800 |
| * admitted *pro hac vice* | robert.boone@wilmerhale.com |
| | |
| *Counsel for Plaintiffs* | Timothy Perla* |
| | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| | 60 State Street |
| | Boston, MA 02109 |
| | (617) 526-6000 |
| | timothy.perla@wilmerhale.com |

**JA1095**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

Robert Frazier et al

**Plaintiff**

**v.**

Prince George's County et al

**Defendant.**                              *

Case No.   8:22-cv-1768 PJM

**NOTICE OF FILING OF DOCUMENT UNDER SEAL**

Chec  one.

☒   Exhibit ___A___ which is an attachment to _____

Pls.' Second Supplemental Filing of Court Records and Response to Dfs.' Letter

will be electronically filed under seal within 24 hours of the filing of this Notice.

☐   _____

(title of document)

will be electronically filed under seal within 24 hours of the filing of this Notice.

I certify that at the same time I am filing this Notice, I will serve copies of the document

identified above by using the CM/ECF system for electronic filing .

01/12/2023
Date

*[signature]*
Signature

Ellora Israni, D.C. Bar 1740904
Printed Name and Bar Number

1601 Connecticut Ave. NW, Ste. 800, Washington, D.C. 20009
Address

ellora@civilrightscorps.org
Email Address

202-894-6132
Telephone Number

_____
Fax Number

**JA1096**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Robert Frazier et al

**Plaintiff**

**v.**

Prince George's County et al

**Defendant.**                    *

Case No.  8:22-cv-1768 PJM

### NOTICE OF FILING OF DOCUMENT UNDER SEAL

**Chec   one.**

☒   Exhibit  B_____  which is an attachment to _____

Pls.' Second Supplemental Filing of Court Records and Response to Dfs.' Letter

will be electronically filed under seal within 24 hours of the filing of this Notice.

☐   _____

(title of document)

will be electronically filed under seal within 24 hours of the filing of this Notice.

I certify that at the same time I am filing this Notice, I will serve copies of the document

identified above by using the CM/ECF system for electronic filing_____.

01/12/2023

Date

Signature

Ellora Israni, D.C. Bar 1740904

Printed Name and Bar Number

1601 Connecticut Ave. NW, Ste. 800, Washington, D.C. 20009

Address

ellora@civilrightscorps.org

Email Address

202-894-6132

Telephone Number

_____

Fax Number

**JA1097**

# Exhibit C



# Transcript of Hearing

**Date:** October 28, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7

8

9

10              Hearing in Re: Christopher Butler

11                    October 28, 2021

12

13

14

15

16

17

18

19

20    Job No.:  476967

21    Pages 1 - 7

22    Transcribed by:  Jackie Scheer

1              P R O C E E D I N G S

2         FEMALE VOICE:  Christopher Butler,

3    5E00704415.

4         THE COURT:  Are you here on behalf of

5    Christopher Butler?

6         FEMALE VOICE:  I'm his (incomprehensible).

7         THE COURT:  Okay.  You can just come --

8    where do you want them?

9         All right.  Christopher Butler.

10        MS. RICHARDSON:  And, Your Honor,

11   (incomprehensible) counsel for or?

12        THE COURT:  It is -- no, no, his -- it

13   looks like I think his parents?

14        FEMALE VOICE:  Yes.

15        MS. RICHARDSON:  (Incomprehensible.)

16        THE COURT:  Okay.

17        MS. RICHARDSON:  (Incomprehensible) on

18   behalf of (incomprehensible) I believe has been

19   set.

20        THE COURT:  Yes.  He does have a

21   preliminary hearing date set for November 24th

22   at 8:45.  I will note his demand for a

1    preliminary hearing as well.  Currently being

2    held on no bond.  And, Mr. Smith, are you here

3    on that case?

4           MR. SMITH:  Yes, Your Honor, thank you.

5           THE COURT:  Okay.

6           MR. SMITH:  (Incomprehensible) Smith on

7    behalf of the State.  I'm sorry, can you just

8    tell me the -- the P H date again?

9           THE COURT:  I can.  November 24th at 8:45.

10          MR. SMITH:  Thank you.

11          THE COURT:  All right.  And, Ms.

12   Richardson, I'll hear from you with respect to

13   Mr. Butler's -- and this is Mr. Butler we have,

14   correct?

15          Okay, very good.  I'll hear from you with

16   respect to his bond amount.

17          MS. RICHARDSON:  Thank you, Your Honor.

18   Your Honor, unfortunately Mr. Butler and I were

19   unable to meet.  I do understand he was in

20   (incomprehensible) a proper (incomprehensible)

21   prior to the bond hearing.  If Mr. Butler,

22   considering that these are probably

1    (incomprehensible) he would like to have the

2    opportunity to speak with counsel, then I would

3    ask (incomprehensible) bond hearing to be

4    passed.  But if Mr. Butler would like to move

5    forward today, then I would proceed with

6    (incomprehensible).

7        THE COURT:  Okay.  Mr. Butler, do you wish

8    to have an opportunity to speak with counsel?

9        MR. BUTLER:  Yes, ma'am.

10        THE COURT:  Okay.  Before proceeding,

11    okay.  And so, Ms. Richardson, we -- you want

12    this passed to tomorrow?

13        MS. RICHARDSON:  Yes, and I can give

14    Mr. Butler my phone number so that he can

15    (incomprehensible).

16        THE COURT:  Okay.  So let me just advise

17    his parents, who are in the courtroom, what's

18    happening.  So he's got a public defender right

19    now assigned to his case but they've not been

20    able to speak, and today he's scheduled for a

21    bond hearing.  Before he proceeds with the bail

22    review, which can determine his release or

1    conditions of his release, then he's asked to

2    have an opportunity to speak with his attorney.

3    And so she'll do that today, he'll reach out to

4    her today, they'll speak today, and we'll set

5    this back in tomorrow.

6         MALE VOICE:  Do you know what time?

7         THE COURT:  Yeah, it'll be the same time.

8         MS. RICHARDSON:  (Incomprehensible.)

9         THE COURT:  Say that again?

10        MS. RICHARDSON:  Your Honor,

11   (incomprehensible) also take my phone number

12   down if they'd like to (incomprehensible).

13        THE COURT:  Okay.  All right.  So do you

14   have a pen and paper?  I'll take it down and

15   I'll give it to you.  Okay.  What's the number?

16        MS. RICHARDSON:  The number's 240 --

17        THE COURT:  -- well, is there -- does

18   Mr. Butler have something or is someone taking

19   the number down for him?

20        MALE VOICE:  It's all right, ma'am, I'm

21   taking the number down.

22        THE COURT:  Okay.  Very good.  All right.

1        MS. RICHARDSON:  (240)718-8420.

2        THE COURT:  Ms. Richardson, give me your

3    first name?

4        MS. RICHARDSON:  Jasmine.

5        THE COURT:  Okay.  So I'm passing the

6    number to the parents so they have that number

7    as well.  And I'm gonna reset this for tomorrow

8    at 1:15.  Bond remains (incomprehensible).

9        MR. SMITH:  Thank you, Your Honor.

10       THE COURT:  Okay.  Yeah.  Thank -- you

11   welcome, Mr. Smith.

12       MR. SMITH:  Okay.  Have a good day.

13       THE COURT:  You as well.

14       MR. SMITH:  Thank you.

15       (The recording was concluded.)

16

17

18

19

20

21

22

```
 1                    CERTIFICATE OF TRANSCRIBER

 2            I, Jackie A. Scheer, do hereby certify

 3     that the foregoing transcript is a true and correct

 4     record of the recorded proceedings; that said

 5     proceedings were transcribed to the best of my

 6     ability from the audio recording and supporting

 7     information; and that I am neither counsel for,

 8     related to, nor employed by any of the parties to

 9     this case and have no interest, financial or

10     otherwise in its outcome.

11

12

13
           Jackie A. Scheer
14

15

16            JACKIE A. SCHEER

17            JANUARY 11, 2023

18

19

20

21

22
```

## A

**ability**
7:6
**able**
4:20
**advise**
4:16
**again**
3:8, 5:9
**all**
2:9, 3:11,
5:13, 5:20, 5:22
**also**
5:11
**amount**
3:16
**any**
7:8
**asked**
5:1
**assigned**
4:19
**attorney**
5:2
**audio**
7:6

## B

**back**
5:5
**bail**
4:21
**been**
2:18, 4:19
**before**
4:10, 4:21
**behalf**
2:4, 2:18, 3:7
**being**
3:1
**believe**
2:18
**best**
7:5
**bond**
3:2, 3:16,
3:21, 4:3, 4:21,

6:8
**butler**
1:10, 2:2, 2:5,
2:9, 3:13, 3:18,
3:21, 4:4, 4:7,
4:9, 4:14, 5:18
**butler's**
3:13

## C

**case**
3:3, 4:19, 7:9
**certificate**
7:1
**certify**
7:2
**christopher**
1:10, 2:2, 2:5,
2:9
**come**
2:7
**concluded**
6:15
**conditions**
5:1
**considering**
3:22
**correct**
3:14, 7:3
**counsel**
2:11, 4:2, 4:8,
7:7
**court**
2:4, 2:7, 2:12,
2:16, 2:20, 3:5,
3:9, 3:11, 4:7,
4:10, 4:16, 5:7,
5:9, 5:13, 5:17,
5:22, 6:2, 6:5,
6:10, 6:13
**courtroom**
4:17
**currently**
3:1

## D

**date**
2:21, 3:8

**day**
6:12
**defender**
4:18
**demand**
2:22
**determine**
4:22
**down**
5:12, 5:14,
5:19, 5:21

## E

**employed**
7:8

## F

**female**
2:2, 2:6, 2:14
**financial**
7:9
**first**
6:3
**foregoing**
7:3
**forward**
4:5

## G

**give**
4:13, 5:15, 6:2
**gonna**
6:7
**good**
3:15, 5:22,
6:12

## H

**happening**
4:18
**he'll**
5:3
**hear**
3:12, 3:15
**hearing**
1:10, 2:21,
3:1, 3:21, 4:3,
4:21

**held**
3:2
**here**
2:4, 3:2
**hereby**
7:2
**honor**
2:10, 3:4,
3:17, 3:18,
5:10, 6:9

## I

**incomprehensible**
2:6, 2:11,
2:15, 2:17,
2:18, 3:6, 3:20,
4:1, 4:3, 4:6,
4:15, 5:8, 5:11,
5:12, 6:8
**information**
7:7
**interest**
7:9
**it'll**
5:7

## J

**jackie**
1:22, 7:2, 7:16
**january**
7:17
**jasmine**
6:4
**job**
1:20

## K

**know**
5:6

## L

**looks**
2:13

## M

**ma'am**
4:9, 5:20
**male**
5:6, 5:20

meet
3:19
move
4:4

**N**

name
6:3
neither
7:7
note
2:22
november
2:21, 3:9
number
4:14, 5:11,
5:15, 5:19,
5:21, 6:6
number's
5:16

**O**

october
1:11
okay
2:7, 2:16, 3:5,
3:15, 4:7, 4:10,
4:11, 4:16,
5:13, 5:15,
5:22, 6:5, 6:10,
6:12
opportunity
4:2, 4:8, 5:2
otherwise
7:10
out
5:3
outcome
7:10

**P**

pages
1:21
paper
5:14
parents
2:13, 4:17, 6:6
parties
7:8

passed
4:4, 4:12
passing
6:5
pen
5:14
phone
4:14, 5:11
preliminary
2:21, 3:1
prior
3:21
probably
3:22
proceed
4:5
proceeding
4:10
proceedings
7:4, 7:5
proceeds
4:21
proper
3:20
public
4:18

**R**

reach
5:3
record
7:4
recorded
7:4
recording
6:15, 7:6
related
7:8
release
4:22, 5:1
remains
6:8
reset
6:7
respect
3:12, 3:16
review
4:22

richardson
2:10, 2:15,
2:17, 3:12,
3:17, 4:11,
4:13, 5:8, 5:10,
5:16, 6:1, 6:2,
6:4
right
2:9, 3:11,
4:18, 5:13,
5:20, 5:22

**S**

said
7:4
same
5:7
say
5:9
scheduled
4:20
scheer
1:22, 7:2, 7:16
set
2:19, 2:21, 5:4
she'll
5:3
signature-mig2k
7:13
smith
3:2, 3:4, 3:6,
3:10, 6:9, 6:11,
6:12, 6:14
someone
5:18
something
5:18
sorry
3:7
speak
4:2, 4:8, 4:20,
5:2, 5:4
state
3:7
supporting
7:6

**T**

take
5:11, 5:14

taking
5:18, 5:21
tell
3:8
th
2:21, 3:9
thank
3:4, 3:10,
3:17, 6:9, 6:10,
6:14
they'd
5:12
think
2:13
time
5:6, 5:7
today
4:5, 4:20, 5:3,
5:4
tomorrow
4:12, 5:5, 6:7
transcribed
1:22, 7:5
transcriber
7:1
transcript
7:3
true
7:3

**U**

unable
3:19
understand
3:19
unfortunately
3:18

**V**

voice
2:2, 2:6, 2:14,
5:6, 5:20

**W**

want
2:8, 4:11
we'll
5:4

```
welcome
6:11
wish
4:7
```

| Y |
| --- |

```
yeah
5:7, 6:10
```

| 0 |
| --- |

```
00704415
2:3
```

| 1 |
| --- |

```
1
6:8
11
7:17
15
6:8
```

| 2 |
| --- |

```
2021
1:11
2023
7:17
24
2:21, 3:9
240
5:16, 6:1
28
1:11
```

| 4 |
| --- |

```
45
2:22, 3:9
476967
1:20
```

| 5 |
| --- |

```
5e
2:3
```

| 7 |
| --- |

```
718
6:1
```

| 8 |
| --- |

```
8
2:22, 3:9
```

```
8420
6:1
```



# Transcript of Hearing

**Date:** October 29, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6

7

8

9

10          Hearing in Re: Christopher Butler

11               October 29, 2021

12

13

14

15

16

17

18

19

20    Job No.:  476967

21    Pages 1 - 9

22    Transcribed by:  Jackie Scheer

1              P R O C E E D I N G S

2          FEMALE VOICE:  Christopher Butler.

3     5E704415.

4          STATE'S ATTORNEY:  Good afternoon, Your

5     Honor.  Steven (incomprehensible).  I'm

6     standing in on this case (incomprehensible).

7          THE COURT:  Okay.

8          MS. RICHARDSON:  Good afternoon, Your

9     Honor.  Jasmine Richardson on behalf of

10    Mr. Butler.  (Incomprehensible.)

11         THE COURT:  His date is November 24th.

12    261 at 8:45.

13         MS. RICHARDSON:  Thank you, Your Honor.

14         THE COURT:  Okay.

15         MS. RICHARDSON:  And, Your Honor,

16    (incomprehensible) Mr. Butler

17    (incomprehensible).  If I can be heard?

18         THE COURT:  Sure.  Go right ahead.

19         MS. RICHARDSON:  Thank you.  Mr. Butler

20    currently is a no bond status.  Your Honor, we

21    would ask the court (incomprehensible) to

22    consider (incomprehensible) from a no bond

1    status to allow for some option of relief,

2    whether it be pretrial (incomprehensible).

3    Your Honor, (incomprehensible) but I do also

4    (incomprehensible) parents, Ms. Cherry and

5    Kevin Butler are present and would like to

6    be -- be heard also if the court will allow.

7        But in any event, Mr. Butler is 32 years

8    old.  He is currently (incomprehensible)

9    currently working as an usher at

10   (incomprehensible).  The two months prior to

11   that he was also working for the Department of

12   Veterans Affairs.  He has a 9 year old

13   daughter, Your Honor, who does virtual

14   schooling from his home.  And he has her pretty

15   much every day of the week and then also on

16   alternating weekends.

17       Your Honor, turning to the pretrial sheet,

18   as you can see, he does have very minimal

19   contact with any jurisdiction.

20   (Incomprehensible) any contact he does have in

21   our jurisdiction all have either

22   (incomprehensible).  He has always showed up

1   for court and he does have a stable address

2   that he's been at for his entire life, 32

3   years.  Your Honor, he does have some ties to

4   the community.  He has people willing to be

5   (incomprehensible) to be sure that he complies

6   with any court order that (incomprehensible),

7   and also that he does come to court

8   (incomprehensible).

9        So, Your Honor, given the fact that he has

10  no convictions on his record and he's not on

11  parole, probation, there's nothing indicating

12  on the pretrial sheet and he doesn't have any

13  violent protective orders against him.  We

14  would ask that the court, you know, consider

15  modifying his bond from a no bond status to

16  (incomprehensible), even if it's with

17  conditions that require him to be

18  electronically monitored.  And I will

19  (incomprehensible) that will allow

20  (incomprehensible).

21       FEMALE VOICE:  Hello, Your Honor.

22  Christopher, as she said, he has a 9 year old

1  daughter and she's here practically every day

2  of the week.  Chris helps me at home.  He is

3  the only male figure in my house right at the

4  moment.  He -- he would not (incomprehensible)

5  would not do anything to -- to -- to -- I'm

6  sorry, I'm sorry.  He --

7        MALE VOICE:  -- he's not a --

8        FEMALE VOICE:  -- he's not a flight risk.

9  He wouldn't -- he wouldn't (incomprehensible)

10  and he's here.  And he's not gonna go anywhere.

11  He's here with me and his sister.  His father

12  is here almost every other day.  Christopher is

13  not a flight risk.  Christopher would not

14  (incomprehensible) --

15        (Cross talk.)

16        FEMALE VOICE:  -- I'm -- I'm sorry, I'm

17  upset.

18        THE COURT:  Okay.  I need to -- I need --

19        MALE VOICE:  -- we will make sure that he

20  (incomprehensible).  I will make sure that he

21  there 'cuz I'm here all the time with him at

22  (incomprehensible) when he had to come.  So I

1   (incomprehensible).  Thank you for your time.

2        THE COURT:  Not a problem.

3        FEMALE VOICE:  Thank you, Judge.

4        THE COURT:  State.

5        STATE'S ATTORNEY:  Thank you, Your Honor.

6   The State would be opposed to any

7   (incomprehensible) being set in this matter.

8   In full record, I -- I don't know whether or

9   not the victim's family is on the call.  I know

10  they were on yesterday --

11       FEMALE VOICE:  -- I'm on the call.

12  (Incomprehensible) mother, I'm here.

13       STATE'S ATTORNEY:  Okay, thank you.  So,

14  Your Honor, in this case obviously the

15  defendant is charged with murder.  The

16  defendant admitted his involvement in this

17  case.  While counsel did state, and it is true,

18  we both have the same pretrial sheet, but it is

19  worth knowing that barely two months ago he did

20  have a charge and was charged with possession

21  of (incomprehensible) handgun.

22       (Interference.)

1     STATE'S ATTORNEY:  Can you please mute

2  your phones, please?  While we -- thank you.

3        And so for starters, you should know that

4  he had a handgun in the first place.  Ms.

5  Bates -- or Ms. Banning, there's cases that the

6  victim is someone who is known to him.  There

7  was some sort of altercation in a house and the

8  defendant produced a handgun and shot the

9  victim.  There's no indication that he believed

10  his life was in danger, he was being threatened

11  with any use of force that would have

12  necessitated him shooting the victim.  But that

13  is what he did.  So he is a danger to the

14  community.  Whether or not he's a flight risk,

15  he is facing a charge that carries a

16  significant amount of time.  So I guess from

17  that standpoint, anyone could potentially be a

18  flight risk.  But more importantly, he does

19  present a danger to the community and we would

20  ask that he remains in a no bond status.  Thank

21  you, Your Honor.

22        THE COURT:  All right, thank you.  So

1    based upon the allegations contained in this

2    particular matter and the arguments of counsel,

3    I've reviewed the statement of charges, I agree

4    with the State that he is a danger to the

5    community, therefore the bond will remain the

6    same.  It'll be no bond.  Preliminary hearing

7    date now will be November 24th, 261 at 8:45.

8         STATE'S ATTORNEY:  Thank you, Your Honor.

9         (The recording was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

```
1                   CERTIFICATE OF TRANSCRIBER

2              I, Jackie A. Scheer, do hereby certify

3       that the foregoing transcript is a true and correct

4       record of the recorded proceedings; that said

5       proceedings were transcribed to the best of my

6       ability from the audio recording and supporting

7       information; and that I am neither counsel for,

8       related to, nor employed by any of the parties to

9       this case and have no interest, financial or

10      otherwise in its outcome.

11

12

13
            Jackie A. Scheer
14

15

16             JACKIE A. SCHEER

17             JANUARY 11, 2023

18

19

20

21

22
```

**A**

ability
9:6
address
4:1
admitted
6:16
affairs
3:12
afternoon
2:4, 2:8
against
4:13
ago
6:19
agree
8:3
ahead
2:18
all
3:21, 5:21,
7:22
allegations
8:1
allow
3:1, 3:6, 4:19
almost
5:12
also
3:3, 3:6, 3:11,
3:15, 4:7
altercation
7:7
alternating
3:16
always
3:22
amount
7:16
any
3:7, 3:19,
3:20, 4:6, 4:12,
6:6, 7:11, 9:8
anyone
7:17
anything
5:5

anywhere
5:10
arguments
8:2
attorney
2:4, 6:5, 6:13,
7:1, 8:8
audio
9:6

**B**

banning
7:5
barely
6:19
based
8:1
bates
7:5
been
4:2
behalf
2:9
being
6:7, 7:10
believed
7:9
best
9:5
bond
2:20, 2:22,
4:15, 7:20, 8:5,
8:6
both
6:18
butler
1:10, 2:2,
2:10, 2:16,
2:19, 3:5, 3:7

**C**

call
6:9, 6:11
carries
7:15
case
2:6, 6:14,
6:17, 9:9

cases
7:5
certificate
9:1
certify
9:2
charge
6:20, 7:15
charged
6:15, 6:20
charges
8:3
cherry
3:4
chris
5:2
christopher
1:10, 2:2,
4:22, 5:12, 5:13
come
4:7, 5:22
community
4:4, 7:14,
7:19, 8:5
complies
4:5
concluded
8:9
conditions
4:17
consider
2:22, 4:14
contact
3:19, 3:20
contained
8:1
convictions
4:10
correct
9:3
could
7:17
counsel
6:17, 8:2, 9:7
court
2:7, 2:11,
2:14, 2:18,
2:21, 3:6, 4:1,

4:6, 4:7, 4:14,
5:18, 6:2, 6:4,
7:22
cross
5:15
currently
2:20, 3:8, 3:9
cuz
5:21

**D**

danger
7:10, 7:13,
7:19, 8:4
date
2:11, 8:7
daughter
3:13, 5:1
day
3:15, 5:1, 5:12
defendant
6:15, 6:16, 7:8
department
3:11

**E**

either
3:21
electronically
4:18
employed
9:8
entire
4:2
even
4:16
event
3:7
every
3:15, 5:1, 5:12

**F**

facing
7:15
fact
4:9
family
6:9

| | | | |
|---|---|---|---|
| **father**<br>5:11 | **hereby**<br>9:2 | **jasmine**<br>2:9 | **mute**<br>7:1 |
| **female**<br>2:2, 4:21, 5:8,<br>5:16, 6:3, 6:11 | **home**<br>3:14, 5:2 | **job**<br>1:20 | **N** |
| **figure**<br>5:3 | **honor**<br>2:5, 2:9, 2:13,<br>2:15, 2:20, 3:3,<br>3:13, 3:17, 4:3,<br>4:9, 4:21, 6:5,<br>6:14, 7:21, 8:8 | **judge**<br>6:3 | **necessitated**<br>7:12 |
| **financial**<br>9:9 | **house**<br>5:3, 7:7 | **jurisdiction**<br>3:19, 3:21 | **need**<br>5:18 |
| **first**<br>7:4 | **I** | **K** | **neither**<br>9:7 |
| **flight**<br>5:8, 5:13,<br>7:14, 7:18 | **importantly**<br>7:18 | **kevin**<br>3:5 | **nothing**<br>4:11 |
| **force**<br>7:11 | **incomprehensible**<br>2:5, 2:6, 2:10,<br>2:16, 2:17,<br>2:21, 2:22, 3:2,<br>3:3, 3:4, 3:8,<br>3:10, 3:20,<br>3:22, 4:5, 4:6,<br>4:8, 4:16, 4:19,<br>4:20, 5:4, 5:9,<br>5:14, 5:20,<br>5:22, 6:1, 6:7,<br>6:12, 6:21 | **know**<br>4:14, 6:8, 6:9,<br>7:3 | **november**<br>2:11, 8:7 |
| **foregoing**<br>9:3 | | **knowing**<br>6:19 | **O** |
| **full**<br>6:8 | | **known**<br>7:6 | **obviously**<br>6:14 |
| **G** | | **L** | **october**<br>1:11 |
| **given**<br>4:9 | | **life**<br>4:2, 7:10 | **okay**<br>2:7, 2:14,<br>5:18, 6:13 |
| **go**<br>2:18, 5:10 | | **M** | **old**<br>3:8, 3:12, 4:22 |
| **gonna**<br>5:10 | **indicating**<br>4:11 | **make**<br>5:19, 5:20 | **only**<br>5:3 |
| **good**<br>2:4, 2:8 | **indication**<br>7:9 | **male**<br>5:3, 5:7, 5:19 | **opposed**<br>6:6 |
| **guess**<br>7:16 | **information**<br>9:7 | **matter**<br>6:7, 8:2 | **option**<br>3:1 |
| **H** | **interest**<br>9:9 | **minimal**<br>3:18 | **order**<br>4:6 |
| **handgun**<br>6:21, 7:4, 7:8 | **interference**<br>6:22 | **modifying**<br>4:15 | **orders**<br>4:13 |
| **heard**<br>2:17, 3:6 | **involvement**<br>6:16 | **moment**<br>5:4 | **other**<br>5:12 |
| **hearing**<br>1:10, 8:6 | **it'll**<br>8:6 | **monitored**<br>4:18 | **otherwise**<br>9:10 |
| **hello**<br>4:21 | **J** | **months**<br>3:10, 6:19 | **outcome**<br>9:10 |
| **helps**<br>5:2 | **jackie**<br>1:22, 9:2, 9:16 | **more**<br>7:18 | **P** |
| **here**<br>5:1, 5:10,<br>5:11, 5:12,<br>5:21, 6:12 | **january**<br>9:17 | **mother**<br>6:12 | **pages**<br>1:21 |
| | | **much**<br>3:15 | **parents**<br>3:4 |
| | | **murder**<br>6:15 | **parole**<br>4:11 |

particular
8:2
parties
9:8
people
4:4
phones
7:2
place
7:4
please
7:1, 7:2
possession
6:20
potentially
7:17
practically
5:1
preliminary
8:6
present
3:5, 7:19
pretrial
3:2, 3:17,
4:12, 6:18
pretty
3:14
prior
3:10
probation
4:11
problem
6:2
proceedings
9:4, 9:5
produced
7:8
protective
4:13

**R**
record
4:10, 6:8, 9:4
recorded
9:4
recording
8:9, 9:6
related
9:8

relief
3:1
remain
8:5
remains
7:20
require
4:17
reviewed
8:3
richardson
2:8, 2:9, 2:13,
2:15, 2:19
right
2:18, 5:3, 7:22
risk
5:8, 5:13,
7:14, 7:18

**S**
said
4:22, 9:4
same
6:18, 8:6
scheer
1:22, 9:2, 9:16
schooling
3:14
see
3:18
set
6:7
sheet
3:17, 4:12,
6:18
shooting
7:12
shot
7:8
should
7:3
showed
3:22
signature-b7fzp
9:13
significant
7:16
sister
5:11

some
3:1, 4:3, 7:7
someone
7:6
sorry
5:6, 5:16
sort
7:7
stable
4:1
standing
2:6
standpoint
7:17
starters
7:3
state
6:4, 6:6, 6:17,
8:4
state's
2:4, 6:5, 6:13,
7:1, 8:8
statement
8:3
status
2:20, 3:1,
4:15, 7:20
steven
2:5
supporting
9:6
sure
2:18, 4:5,
5:19, 5:20

**T**
talk
5:15
th
2:11, 8:7
thank
2:13, 2:19,
6:1, 6:3, 6:5,
6:13, 7:2, 7:20,
7:22, 8:8
therefore
8:5
threatened
7:10

ties
4:3
time
5:21, 6:1, 7:16
transcribed
1:22, 9:5
transcriber
9:1
transcript
9:3
true
6:17, 9:3
turning
3:17
two
3:10, 6:19

**U**
upset
5:17
use
7:11
usher
3:9

**V**
veterans
3:12
victim
7:6, 7:9, 7:12
victim's
6:9
violent
4:13
virtual
3:13
voice
2:2, 4:21, 5:7,
5:8, 5:16, 5:19,
6:3, 6:11

**W**
week
3:15, 5:2
weekends
3:16
whether
3:2, 6:8, 7:14

| willing |
| --- |
| 4:4 |
| **working** |
| 3:9, 3:11 |
| **worth** |
| 6:19 |
| **wouldn't** |
| 5:9 |

| Y |
| --- |
| **year** |
| 3:12, 4:22 |
| **years** |
| 3:7, 4:3 |
| **yesterday** |
| 6:10 |

| 1 |
| --- |
| **11** |
| 9:17 |

| 2 |
| --- |
| **2021** |
| 1:11 |
| **2023** |
| 9:17 |
| **24** |
| 2:11, 8:7 |
| **261** |
| 2:12, 8:7 |
| **29** |
| 1:11 |

| 3 |
| --- |
| **32** |
| 3:7, 4:2 |

| 4 |
| --- |
| **45** |
| 2:12, 8:7 |
| **476967** |
| 1:20 |

| 5 |
| --- |
| **5e** |
| 2:3 |

| 7 |
| --- |
| **704415** |
| 2:3 |

| 8 |
| --- |
| **8** |
| 2:12, 8:7 |

# Exhibit D



# Transcript of Hearing

**Date:** June 14, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7

8

9

10                    Hearing in Re: Leslie Sharp

11                        June 14, 2021

12

13

14

15

16

17

18

19

20   Job No.:  476967

21   Pages 1 - 10

22   Transcribed by:  Jackie Scheer

**JA1126**

1              P R O C E E D I N G S

2        THE COURT:  Thank you.

3        FEMALE VOICE:  Leslie Sharp, 3701207.

4        MR. IM:  Good morning, Your Honor.  Peter

5    Im, Assistant Public Defender on behalf of

6    Mr. Sharp.

7        Mr. Sharp, if that's you, could you give

8    me a thumbs up?

9        THE COURT:  All right.  Great.

10       MR. IM:  Your Honor, Public Defender's

11   Office is provisionally entering to waive the

12   matter.

13       THE COURT:  Great.  All right.  What do

14   you wanna tell me, Mr. Im?

15       MR. IM:  Your Honor, Mr. Sharp is

16   currently being held without bond.  We're

17   asking that he be released on an unsecured

18   bond.  Wanna start out with the fact that he

19   has no failures to appear.  He will be here in

20   court and so the only -- the only factor to be

21   determined is dangerousness.

22       THE COURT:  Yeah, that's the one.

1        MR. IM:  Mr. Sharp has a GED from D.C.

2    Your Honor, I will acknowledge that he's had

3    some prior convictions on his pretrial sheet.

4    But almost all of them appear to be from at

5    least nine years ago.  I only see one from 2016

6    and he's 33 years old, too, Your Honor.  I

7    would certainly ask you to consider the age of

8    the prior convictions.  I wanna --

9        THE COURT:  -- I -- I have him on

10   probation currently until 2024.  You don't have

11   that?

12       MR. IM:  I do have that, Your Honor.

13       THE COURT:  Oh, okay, all right.

14       MR. IM:  I had that that was the

15   conviction from 2016 that I mentioned.  But,

16   Your Honor --

17       THE COURT:  -- it shows here 2019.

18       MS. MARTIN:  Yeah.  I'm looking at 5/19.

19       MR. IM:  I -- I believe that might have

20   been a release date.  But the -- the case

21   number shows 2015 as -- but I'm not seeing

22   anything from --

1      THE COURT:  -- yeah, but sometimes people

2   are out for a little while before they pick

3   them up and get their convictions, you follow

4   where I'm going?  But go ahead.  I -- I -- I

5   don't know --

6      MR. IM:  -- I wanted to let you know

7   Mr. Sharp actually just got a job last week at

8   the Old Ebbitt Grill.  He'll be working there

9   as a dish -- dishwasher.  He was supposed to be

10  starting today but he's been struggling with

11  unemployment in the past, and he's certainly

12  looking forward to working at the Old Ebbitt

13  Grill.  The complaining witness in this case is

14  Mr. Sharp's wife.  And so --

15     THE COURT:  -- yeah.

16     MR. IM:  -- you'll see that she's not in

17  fear of him, doesn't believe that he's a

18  danger, and is not interested in pressing

19  charges.  I believe she's also on the line

20  if -- and I think she would like to address the

21  court.

22     THE COURT:  You know, Mr. Im, here --

1    here's what I gotta tell you about that.  You

2    have ethical concerns about that.  She is

3    unrepresented in this case.  Do I need to go

4    further about what I'm talking about the thing?

5          MR. IM:  Your Honor, well, well, certainly

6    as an officer of the court, I -- I will

7    represent then that she has told me she's not

8    in fear and doesn't believe --

9          THE COURT:  -- thank you.

10         MR. IM:  -- to her.  And, Your Honor, I

11   would also note to the court that she's been on

12   the line just to watch this hearing for nearly

13   two hours now.  She's certainly committed to

14   him being out.  So, Your Honor, for all of

15   those reasons, we're asking that Mr. Sharp be

16   released on an unsecured bond.

17         THE COURT:  Okay.  Ms. Martin, what's your

18   position on this?

19         MS. MARTIN:  Here's the concern I have.

20   It's a domestic with visible physical injuries.

21   So while I don't have a problem with pretrial

22   release, the gentleman, among other things, is

1  on active probation.  So that's as far as I'm

2  willing to go.

3       MR. IM:  And -- and, Your Honor, if I may

4  be heard briefly about pretrial release.  If

5  the court is interested -- I don't know if the

6  court is leaning towards pretrial release.  I

7  would note for Your Honor that although he has

8  that Prince George County address --

9       THE COURT:  -- he does.

10      MR. IM:  -- in Beltsville, that is the

11 location of the alleged incident.  The only

12 place that he has --

13      THE COURT:  -- it is.

14      MR. IM:  -- to stay is -- is his father's

15 address, which is in D.C.  And so we would ask

16 the court to order pretrial release at level

17 three.

18      THE COURT:  All right.  Thank you.

19      All right.  Here's what we have.  I have

20 a -- an individual who's charged with -- and

21 convicted of possession intent to distribute.

22 Apparently it -- it dates from earlier but the

1   conviction didn't occur until 2019, for

2   possession with intent to distribute and a

3   firearm violation.  He also has a conviction

4   for robbery in Montgomery County, a conviction

5   for a gun robbery in the District of Columbia.

6   He had a failure to appear for an armed robbery

7   in the District of Columbia.  I have him with

8   other charges such as bail jumping, narcotics

9   charges in 2012, conviction for an unauthorized

10  use in 2008, destruction of property in 2011.

11  There's a -- carrying a pistol without a

12  license in 2016.  Prior parole violations

13  alleged as well, although I don't have

14  dispositions on those.

15       In this case, this is an assault in a

16  domestic violence situation.  Mr. Im, you know,

17  it's not unusual for a -- a person who's been

18  assaulted in a domestic violence situation to

19  say that -- at a court proceeding that they

20  want to say something positive for the -- the

21  defendant.  Sometimes it's legitimately true

22  that they really aren't afraid.  Sometimes

1   they're afraid not to say that they're not

2   afraid.  In this instance, the allegations

3   involved domestic violence with visible

4   injuries, it was not charged by the victim in

5   this case, but rather charged by an officer who

6   came on to the scene and saw damage to the

7   home, a -- a person who appeared to have been

8   drinking, and a victim who had visible injuries

9   to -- multiple injuries to her face.

10  Montgomery County Fire Department, ambulance

11  was required to come to the scene, and of

12  course the defendant said he didn't touch her.

13  The -- the victim was disinclined to cooperate.

14      The court finds by clear and convincing

15  evidence under Salerno versus the United

16  States, given his background and -- and the

17  facts of this case and under Wheeler versus

18  State there are no conditions of bond

19  sufficient to protect the public and

20  specifically this individual, who I know wants

21  to speak up and say, oh, I'm not afraid of him,

22  I got that.  You know, but it appears he --

1   he -- he's gonna be on probation until 2024,

2   and this could constitute a violation of that

3   probation.  So the court's gonna hold him

4   without bond pending the setting of a trial

5   date in this case at this time.  You know where

6   I am, Mr. Im.

7        MR. IM:  Your Honor, for the record, would

8   the court consider pretrial release given that

9   the -- the state's not opposed?

10       THE COURT:  I most definitely did consider

11  it and I'm going to decline to do so at this

12  time.  Again, you know, I'm willing to listen

13  to other options.  He seems to have a substance

14  abuse issue.  I'm more than happy to hear

15  you -- you, you know, if that becomes

16  available, I'd certainly be willing to

17  consider, you know, some other remedy, but not

18  at this time.  Thank you.

19       (The recording was concluded.)

20

21

22

```
 1               CERTIFICATE OF TRANSCRIBER

 2          I, Jackie A. Scheer, do hereby certify

 3   that the foregoing transcript is a true and correct

 4   record of the recorded proceedings; that said

 5   proceedings were transcribed to the best of my

 6   ability from the audio recording and supporting

 7   information; and that I am neither counsel for,

 8   related to, nor employed by any of the parties to

 9   this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14

15

16          JACKIE A. SCHEER

17          JANUARY 11, 2023

18

19

20

21

22
```

| A | | | |
|---|---|---|---|

**ability**
10:6
**about**
5:1, 5:2, 5:4,
6:4
**abuse**
9:14
**acknowledge**
3:2
**active**
6:1
**actually**
4:7
**address**
4:20, 6:8, 6:15
**afraid**
7:22, 8:1, 8:2,
8:21
**again**
9:12
**age**
3:7
**ago**
3:5
**ahead**
4:4
**all**
2:9, 2:13, 3:4,
3:13, 5:14,
6:18, 6:19
**allegations**
8:2
**alleged**
6:11, 7:13
**almost**
3:4
**also**
4:19, 5:11, 7:3
**although**
6:7, 7:13
**ambulance**
8:10
**among**
5:22
**any**
10:8

**anything**
3:22
**apparently**
6:22
**appear**
2:19, 3:4, 7:6
**appeared**
8:7
**appears**
8:22
**aren't**
7:22
**armed**
7:6
**asking**
2:17, 5:15
**assault**
7:15
**assaulted**
7:18
**assistant**
2:5
**audio**
10:6
**available**
9:16

| B | | | |
|---|---|---|---|

**background**
8:16
**bail**
7:8
**becomes**
9:15
**been**
3:20, 4:10,
5:11, 7:17, 8:7
**before**
4:2
**behalf**
2:5
**being**
2:16, 5:14
**believe**
3:19, 4:17,
4:19, 5:8
**beltsville**
6:10

**best**
10:5
**bond**
2:16, 2:18,
5:16, 8:18, 9:4
**briefly**
6:4

| C | | | |
|---|---|---|---|

**came**
8:6
**carrying**
7:11
**case**
3:20, 4:13,
5:3, 7:15, 8:5,
8:17, 9:5, 10:9
**certainly**
3:7, 4:11, 5:5,
5:13, 9:16
**certificate**
10:1
**certify**
10:2
**charged**
6:20, 8:4, 8:5
**charges**
4:19, 7:8, 7:9
**clear**
8:14
**columbia**
7:5, 7:7
**come**
8:11
**committed**
5:13
**complaining**
4:13
**concern**
5:19
**concerns**
5:2
**concluded**
9:19
**conditions**
8:18
**consider**
3:7, 9:8, 9:10,

9:17
**constitute**
9:2
**convicted**
6:21
**conviction**
3:15, 7:1, 7:3,
7:4, 7:9
**convictions**
3:3, 3:8, 4:3
**convincing**
8:14
**cooperate**
8:13
**correct**
10:3
**could**
2:7, 9:2
**counsel**
10:7
**county**
6:8, 7:4, 8:10
**course**
8:12
**court**
2:2, 2:9, 2:13,
2:20, 2:22, 3:9,
3:13, 3:17, 4:1,
4:15, 4:21,
4:22, 5:6, 5:9,
5:11, 5:17, 6:5,
6:6, 6:9, 6:13,
6:16, 6:18,
7:19, 8:14, 9:8,
9:10
**court's**
9:3
**currently**
2:16, 3:10

| D | | | |
|---|---|---|---|

**damage**
8:6
**danger**
4:18
**dangerousness**
2:21
**date**
3:20, 9:5

| | | | |
|---|---|---|---|
| dates | | given | 6:7, 9:7 |
| 6:22 | **F** | 8:16, 9:8 | hours |
| decline | face | go | 5:13 |
| 9:11 | 8:9 | 4:4, 5:3, 6:2 | **I** |
| defendant | fact | going | im |
| 7:21, 8:12 | 2:18 | 4:4, 9:11 | 2:4, 2:5, 2:10, |
| defender | factor | gonna | 2:14, 2:15, 3:1, |
| 2:5 | 2:20 | 9:1, 9:3 | 3:12, 3:14, |
| defender's | facts | good | 3:19, 4:6, 4:16, |
| 2:10 | 8:17 | 2:4 | 4:22, 5:5, 5:10, |
| definitely | failure | gotta | 6:3, 6:10, 6:14, |
| 9:10 | 7:6 | 5:1 | 7:16, 9:6, 9:7 |
| department | failures | great | incident |
| 8:10 | 2:19 | 2:9, 2:13 | 6:11 |
| destruction | far | grill | individual |
| 7:10 | 6:1 | 4:8, 4:13 | 6:20, 8:20 |
| determined | father's | gun | information |
| 2:21 | 6:14 | 7:5 | 10:7 |
| dish | fear | **H** | injuries |
| 4:9 | 4:17, 5:8 | happy | 5:20, 8:4, 8:8, |
| dishwasher | female | 9:14 | 8:9 |
| 4:9 | 2:3 | he'll | instance |
| disinclined | financial | 4:8 | 8:2 |
| 8:13 | 10:9 | hear | intent |
| dispositions | finds | 9:14 | 6:21, 7:2 |
| 7:14 | 8:14 | heard | interest |
| distribute | fire | 6:4 | 10:9 |
| 6:21, 7:2 | 8:10 | hearing | interested |
| district | firearm | 1:10, 5:12 | 4:18, 6:5 |
| 7:5, 7:7 | 7:3 | held | involved |
| domestic | follow | 2:16 | 8:3 |
| 5:20, 7:16, | 4:3 | here | issue |
| 7:18, 8:3 | foregoing | 2:19, 3:17, | 9:14 |
| drinking | 10:3 | 4:22 | **J** |
| 8:8 | forward | here's | jackie |
| **E** | 4:12 | 5:1, 5:19, 6:19 | 1:22, 10:2, |
| earlier | further | hereby | 10:16 |
| 6:22 | 5:4 | 10:2 | january |
| ebbitt | **G** | hold | 10:17 |
| 4:8, 4:12 | ged | 9:3 | job |
| employed | 3:1 | home | 1:20, 4:7 |
| 10:8 | gentleman | 8:7 | jumping |
| entering | 5:22 | honor | 7:8 |
| 2:11 | george | 2:4, 2:10, | june |
| ethical | 6:8 | 2:15, 3:2, 3:6, | 1:11 |
| 5:2 | give | 3:12, 3:16, 5:5, | **K** |
| evidence | 2:7 | 5:10, 5:14, 6:3, | know |
| 8:15 | | | 4:5, 4:6, 4:22, |

6:5, 7:16, 8:20,
8:22, 9:5, 9:12,
9:15, 9:17

**L**

**last**
4:7
**leaning**
6:6
**least**
3:5
**legitimately**
7:21
**leslie**
1:10, 2:3
**level**
6:16
**license**
7:12
**line**
4:19, 5:12
**listen**
9:12
**little**
4:2
**location**
6:11
**looking**
3:18, 4:12

**M**

**martin**
3:18, 5:17,
5:19
**matter**
2:12
**mentioned**
3:15
**might**
3:19
**montgomery**
7:4, 8:10
**more**
9:14
**morning**
2:4
**most**
9:10

**multiple**
8:9

**N**

**narcotics**
7:8
**nearly**
5:12
**need**
5:3
**neither**
10:7
**nine**
3:5
**note**
5:11, 6:7
**number**
3:21

**O**

**occur**
7:1
**office**
2:11
**officer**
5:6, 8:5
**oh**
3:13, 8:21
**okay**
3:13, 5:17
**old**
3:6, 4:8, 4:12
**one**
2:22, 3:5
**only**
2:20, 3:5, 6:11
**opposed**
9:9
**options**
9:13
**order**
6:16
**other**
5:22, 7:8,
9:13, 9:17
**otherwise**
10:10
**out**
2:18, 4:2, 5:14

**outcome**
10:10

**P**

**pages**
1:21
**parole**
7:12
**parties**
10:8
**past**
4:11
**pending**
9:4
**people**
4:1
**person**
7:17, 8:7
**peter**
2:4
**physical**
5:20
**pick**
4:2
**pistol**
7:11
**place**
6:12
**position**
5:18
**positive**
7:20
**possession**
6:21, 7:2
**pressing**
4:18
**pretrial**
3:3, 5:21, 6:4,
6:6, 6:16, 9:8
**prince**
6:8
**prior**
3:3, 3:8, 7:12
**probation**
3:10, 6:1, 9:1,
9:3
**problem**
5:21

**proceeding**
7:19
**proceedings**
10:4, 10:5
**property**
7:10
**protect**
8:19
**provisionally**
2:11
**public**
2:5, 2:10, 8:19

**R**

**rather**
8:5
**really**
7:22
**reasons**
5:15
**record**
9:7, 10:4
**recorded**
10:4
**recording**
9:19, 10:6
**related**
10:8
**release**
3:20, 5:22,
6:4, 6:6, 6:16,
9:8
**released**
2:17, 5:16
**remedy**
9:17
**represent**
5:7
**required**
8:11
**right**
2:9, 2:13,
3:13, 6:18, 6:19
**robbery**
7:4, 7:5, 7:6

**S**

**said**
8:12, 10:4

| | | | |
|---|---|---|---|
| **salerno** | **state** | **transcriber** | **wanna** |
| 8:15 | 8:18 | 10:1 | 2:14, 2:18, 3:8 |
| **saw** | **state's** | **transcript** | **want** |
| 8:6 | 9:9 | 10:3 | 7:20 |
| **say** | **states** | **trial** | **wanted** |
| 7:19, 7:20, | 8:16 | 9:4 | 4:6 |
| 8:1, 8:21 | **stay** | **true** | **wants** |
| **scene** | 6:14 | 7:21, 10:3 | 8:20 |
| 8:6, 8:11 | **struggling** | **two** | **watch** |
| **scheer** | 4:10 | 5:13 | 5:12 |
| 1:22, 10:2, | **substance** | **U** | **we're** |
| 10:16 | 9:13 | **unauthorized** | 2:16, 5:15 |
| **see** | **sufficient** | 7:9 | **week** |
| 3:5, 4:16 | 8:19 | **under** | 4:7 |
| **seeing** | **supporting** | 8:15, 8:17 | **wheeler** |
| 3:21 | 10:6 | **unemployment** | 8:17 |
| **seems** | **supposed** | 4:11 | **wife** |
| 9:13 | 4:9 | **united** | 4:14 |
| **setting** | **T** | 8:15 | **willing** |
| 9:4 | **talking** | **unrepresented** | 6:2, 9:12, 9:16 |
| **sharp** | 5:4 | 5:3 | **without** |
| 1:10, 2:3, 2:6, | **tell** | **unsecured** | 2:16, 7:11, 9:4 |
| 2:7, 2:15, 3:1, | 2:14, 5:1 | 2:17, 5:16 | **witness** |
| 4:7, 5:15 | **thank** | **until** | 4:13 |
| **sharp's** | 2:2, 5:9, 6:18, | 3:10, 7:1, 9:1 | **working** |
| 4:14 | 9:18 | **unusual** | 4:8, 4:12 |
| **sheet** | **thing** | 7:17 | **Y** |
| 3:3 | 5:4 | **use** | **yeah** |
| **shows** | **things** | 7:10 | 2:22, 3:18, |
| 3:17, 3:21 | 5:22 | **V** | 4:1, 4:15 |
| **signature-p1kal** | **think** | **versus** | **years** |
| 10:13 | 4:20 | 8:15, 8:17 | 3:5, 3:6 |
| **situation** | **three** | **victim** | **1** |
| 7:16, 7:18 | 6:17 | 8:4, 8:8, 8:13 | **10** |
| **some** | **thumbs** | **violation** | 1:21 |
| 3:3, 9:17 | 2:8 | 7:3, 9:2 | **11** |
| **something** | **time** | **violations** | 10:17 |
| 7:20 | 9:5, 9:12, 9:18 | 7:12 | **14** |
| **sometimes** | **today** | **violence** | 1:11 |
| 4:1, 7:21, 7:22 | 4:10 | 7:16, 7:18, 8:3 | **19** |
| **speak** | **told** | **visible** | 3:18 |
| 8:21 | 5:7 | 5:20, 8:3, 8:8 | **2** |
| **specifically** | **touch** | **voice** | **2008** |
| 8:20 | 8:12 | 2:3 | 7:10 |
| **start** | **towards** | **W** | **2011** |
| 2:18 | 6:6 | **waive** | 7:10 |
| **starting** | **transcribed** | 2:11 | |
| 4:10 | 1:22, 10:5 | | |

**2012**
7:9
**2015**
3:21
**2016**
3:5, 3:15, 7:12
**2019**
3:17, 7:1
**2021**
1:11
**2023**
10:17
**2024**
3:10, 9:1

**3**

**33**
3:6
**3701207**
2:3

**4**

**476967**
1:20

# Exhibit C



# Transcript of Hearing

**Date:** October 28, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7

8

9

10              Hearing in Re: Christopher Butler

11                   October 28, 2021

12

13

14

15

16

17

18

19

20   Job No.:  476967

21   Pages 1 - 7

22   Transcribed by:  Jackie Scheer

1               P R O C E E D I N G S

2          FEMALE VOICE:  Christopher Butler,

3     5E00704415.

4          THE COURT:  Are you here on behalf of

5     Christopher Butler?

6          FEMALE VOICE:  I'm his (incomprehensible).

7          THE COURT:  Okay.  You can just come --

8     where do you want them?

9          All right.  Christopher Butler.

10         MS. RICHARDSON:  And, Your Honor,

11    (incomprehensible) counsel for or?

12         THE COURT:  It is -- no, no, his -- it

13    looks like I think his parents?

14         FEMALE VOICE:  Yes.

15         MS. RICHARDSON:  (Incomprehensible.)

16         THE COURT:  Okay.

17         MS. RICHARDSON:  (Incomprehensible) on

18    behalf of (incomprehensible) I believe has been

19    set.

20         THE COURT:  Yes.  He does have a

21    preliminary hearing date set for November 24th

22    at 8:45.  I will note his demand for a

1  preliminary hearing as well.  Currently being

2  held on no bond.  And, Mr. Smith, are you here

3  on that case?

4      MR. SMITH:  Yes, Your Honor, thank you.

5      THE COURT:  Okay.

6      MR. SMITH:  (Incomprehensible) Smith on

7  behalf of the State.  I'm sorry, can you just

8  tell me the -- the P H date again?

9      THE COURT:  I can.  November 24th at 8:45.

10     MR. SMITH:  Thank you.

11     THE COURT:  All right.  And, Ms.

12 Richardson, I'll hear from you with respect to

13 Mr. Butler's -- and this is Mr. Butler we have,

14 correct?

15     Okay, very good.  I'll hear from you with

16 respect to his bond amount.

17     MS. RICHARDSON:  Thank you, Your Honor.

18 Your Honor, unfortunately Mr. Butler and I were

19 unable to meet.  I do understand he was in

20 (incomprehensible) a proper (incomprehensible)

21 prior to the bond hearing.  If Mr. Butler,

22 considering that these are probably

1    (incomprehensible) he would like to have the

2    opportunity to speak with counsel, then I would

3    ask (incomprehensible) bond hearing to be

4    passed.  But if Mr. Butler would like to move

5    forward today, then I would proceed with

6    (incomprehensible).

7         THE COURT:  Okay.  Mr. Butler, do you wish

8    to have an opportunity to speak with counsel?

9         MR. BUTLER:  Yes, ma'am.

10        THE COURT:  Okay.  Before proceeding,

11   okay.  And so, Ms. Richardson, we -- you want

12   this passed to tomorrow?

13        MS. RICHARDSON:  Yes, and I can give

14   Mr. Butler my phone number so that he can

15   (incomprehensible).

16        THE COURT:  Okay.  So let me just advise

17   his parents, who are in the courtroom, what's

18   happening.  So he's got a public defender right

19   now assigned to his case but they've not been

20   able to speak, and today he's scheduled for a

21   bond hearing.  Before he proceeds with the bail

22   review, which can determine his release or

1   conditions of his release, then he's asked to

2   have an opportunity to speak with his attorney.

3   And so she'll do that today, he'll reach out to

4   her today, they'll speak today, and we'll set

5   this back in tomorrow.

6        MALE VOICE:  Do you know what time?

7        THE COURT:  Yeah, it'll be the same time.

8        MS. RICHARDSON:  (Incomprehensible.)

9        THE COURT:  Say that again?

10       MS. RICHARDSON:  Your Honor,

11  (incomprehensible) also take my phone number

12  down if they'd like to (incomprehensible).

13       THE COURT:  Okay.  All right.  So do you

14  have a pen and paper?  I'll take it down and

15  I'll give it to you.  Okay.  What's the number?

16       MS. RICHARDSON:  The number's 240 --

17       THE COURT:  -- well, is there -- does

18  Mr. Butler have something or is someone taking

19  the number down for him?

20       MALE VOICE:  It's all right, ma'am, I'm

21  taking the number down.

22       THE COURT:  Okay.  Very good.  All right.

1        MS. RICHARDSON:  (240)718-8420.

2        THE COURT:  Ms. Richardson, give me your

3   first name?

4        MS. RICHARDSON:  Jasmine.

5        THE COURT:  Okay.  So I'm passing the

6   number to the parents so they have that number

7   as well.  And I'm gonna reset this for tomorrow

8   at 1:15.  Bond remains (incomprehensible).

9        MR. SMITH:  Thank you, Your Honor.

10       THE COURT:  Okay.  Yeah.  Thank -- you

11   welcome, Mr. Smith.

12       MR. SMITH:  Okay.  Have a good day.

13       THE COURT:  You as well.

14       MR. SMITH:  Thank you.

15       (The recording was concluded.)

16

17

18

19

20

21

22

```
1                  CERTIFICATE OF TRANSCRIBER

2           I, Jackie A. Scheer, do hereby certify

3     that the foregoing transcript is a true and correct

4     record of the recorded proceedings; that said

5     proceedings were transcribed to the best of my

6     ability from the audio recording and supporting

7     information; and that I am neither counsel for,

8     related to, nor employed by any of the parties to

9     this case and have no interest, financial or

10    otherwise in its outcome.

11

12

13

14

15

16           JACKIE A. SCHEER

17           JANUARY 11, 2023

18

19

20

21

22
```

| A | |
|---|---|
| **ability** | |
| 7:6 | |
| **able** | |
| 4:20 | |
| **advise** | |
| 4:16 | |
| **again** | |
| 3:8, 5:9 | |
| **all** | |
| 2:9, 3:11, | |
| 5:13, 5:20, 5:22 | |
| **also** | |
| 5:11 | |
| **amount** | |
| 3:16 | |
| **any** | |
| 7:8 | |
| **asked** | |
| 5:1 | |
| **assigned** | |
| 4:19 | |
| **attorney** | |
| 5:2 | |
| **audio** | |
| 7:6 | |

| B |
|---|
| **back** |
| 5:5 |
| **bail** |
| 4:21 |
| **been** |
| 2:18, 4:19 |
| **before** |
| 4:10, 4:21 |
| **behalf** |
| 2:4, 2:18, 3:7 |
| **being** |
| 3:1 |
| **believe** |
| 2:18 |
| **best** |
| 7:5 |
| **bond** |
| 3:2, 3:16, |
| 3:21, 4:3, 4:21, |

6:8
**butler**
1:10, 2:2, 2:5,
2:9, 3:13, 3:18,
3:21, 4:4, 4:7,
4:9, 4:14, 5:18
**butler's**
3:13

| C |
|---|
| **case** |
| 3:3, 4:19, 7:9 |
| **certificate** |
| 7:1 |
| **certify** |
| 7:2 |
| **christopher** |
| 1:10, 2:2, 2:5, |
| 2:9 |
| **come** |
| 2:7 |
| **concluded** |
| 6:15 |
| **conditions** |
| 5:1 |
| **considering** |
| 3:22 |
| **correct** |
| 3:14, 7:3 |
| **counsel** |
| 2:11, 4:2, 4:8, |
| 7:7 |
| **court** |
| 2:4, 2:7, 2:12, |
| 2:16, 2:20, 3:5, |
| 3:9, 3:11, 4:7, |
| 4:10, 4:16, 5:7, |
| 5:9, 5:13, 5:17, |
| 5:22, 6:2, 6:5, |
| 6:10, 6:13 |
| **courtroom** |
| 4:17 |
| **currently** |
| 3:1 |

| D |
|---|
| **date** |
| 2:21, 3:8 |

**day**
6:12
**defender**
4:18
**demand**
2:22
**determine**
4:22
**down**
5:12, 5:14,
5:19, 5:21

| E |
|---|
| **employed** |
| 7:8 |

| F |
|---|
| **female** |
| 2:2, 2:6, 2:14 |
| **financial** |
| 7:9 |
| **first** |
| 6:3 |
| **foregoing** |
| 7:3 |
| **forward** |
| 4:5 |

| G |
|---|
| **give** |
| 4:13, 5:15, 6:2 |
| **gonna** |
| 6:7 |
| **good** |
| 3:15, 5:22, |
| 6:12 |

| H |
|---|
| **happening** |
| 4:18 |
| **he'll** |
| 5:3 |
| **hear** |
| 3:12, 3:15 |
| **hearing** |
| 1:10, 2:21, |
| 3:1, 3:21, 4:3, |
| 4:21 |

**held**
3:2
**here**
2:4, 3:2
**hereby**
7:2
**honor**
2:10, 3:4,
3:17, 3:18,
5:10, 6:9

| I |
|---|
| **incomprehensible** |
| 2:6, 2:11, |
| 2:15, 2:17, |
| 2:18, 3:6, 3:20, |
| 4:1, 4:3, 4:6, |
| 4:15, 5:8, 5:11, |
| 5:12, 6:8 |
| **information** |
| 7:7 |
| **interest** |
| 7:9 |
| **it'll** |
| 5:7 |

| J |
|---|
| **jackie** |
| 1:22, 7:2, 7:16 |
| **january** |
| 7:17 |
| **jasmine** |
| 6:4 |
| **job** |
| 1:20 |

| K |
|---|
| **know** |
| 5:6 |

| L |
|---|
| **looks** |
| 2:13 |

| M |
|---|
| **ma'am** |
| 4:9, 5:20 |
| **male** |
| 5:6, 5:20 |

| | | | |
|---|---|---|---|
| meet<br>3:19<br>move<br>4:4 | passed<br>4:4, 4:12<br>passing<br>6:5 | richardson<br>2:10, 2:15,<br>2:17, 3:12,<br>3:17, 4:11, | taking<br>5:18, 5:21<br>tell<br>3:8 |

**N**

meet
3:19
move
4:4

**N**

name
6:3
neither
7:7
note
2:22
november
2:21, 3:9
number
4:14, 5:11,
5:15, 5:19,
5:21, 6:6
number's
5:16

**O**

october
1:11
okay
2:7, 2:16, 3:5,
3:15, 4:7, 4:10,
4:11, 4:16,
5:13, 5:15,
5:22, 6:5, 6:10,
6:12
opportunity
4:2, 4:8, 5:2
otherwise
7:10
out
5:3
outcome
7:10

**P**

pages
1:21
paper
5:14
parents
2:13, 4:17, 6:6
parties
7:8

passed
4:4, 4:12
passing
6:5
pen
5:14
phone
4:14, 5:11
preliminary
2:21, 3:1
prior
3:21
probably
3:22
proceed
4:5
proceeding
4:10
proceedings
7:4, 7:5
proceeds
4:21
proper
3:20
public
4:18

**R**

reach
5:3
record
7:4
recorded
7:4
recording
6:15, 7:6
related
7:8
release
4:22, 5:1
remains
6:8
reset
6:7
respect
3:12, 3:16
review
4:22

richardson
2:10, 2:15,
2:17, 3:12,
3:17, 4:11,
4:13, 5:8, 5:10,
5:16, 6:1, 6:2,
6:4
right
2:9, 3:11,
4:18, 5:13,
5:20, 5:22

**S**

said
7:4
same
5:7
say
5:9
scheduled
4:20
scheer
1:22, 7:2, 7:16
set
2:19, 2:21, 5:4
she'll
5:3
signature-mig2k
7:13
smith
3:2, 3:4, 3:6,
3:10, 6:9, 6:11,
6:12, 6:14
someone
5:18
something
5:18
sorry
3:7
speak
4:2, 4:8, 4:20,
5:2, 5:4
state
3:7
supporting
7:6

**T**

take
5:11, 5:14

taking
5:18, 5:21
tell
3:8
th
2:21, 3:9
thank
3:4, 3:10,
3:17, 6:9, 6:10,
6:14
they'd
5:12
think
2:13
time
5:6, 5:7
today
4:5, 4:20, 5:3,
5:4
tomorrow
4:12, 5:5, 6:7
transcribed
1:22, 7:5
transcriber
7:1
transcript
7:3
true
7:3

**U**

unable
3:19
understand
3:19
unfortunately
3:18

**V**

voice
2:2, 2:6, 2:14,
5:6, 5:20

**W**

want
2:8, 4:11
we'll
5:4

```
welcome
6:11
wish
4:7
        Y
yeah
5:7, 6:10
        0
00704415
2:3
        1
1
6:8
11
7:17
15
6:8
        2
2021
1:11
2023
7:17
24
2:21, 3:9
240
5:16, 6:1
28
1:11
        4
45
2:22, 3:9
476967
1:20
        5
5e
2:3
        7
718
6:1
        8
8
2:22, 3:9
```

```
8420
6:1
```



# Transcript of Hearing

**Date:** October 29, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6

7

8

9

10                Hearing in Re: Christopher Butler

11                  October 29, 2021

12

13

14

15

16

17

18

19

20 Job No.:  476967

21 Pages 1 - 9

22 Transcribed by:  Jackie Scheer

1          P R O C E E D I N G S

2          FEMALE VOICE:  Christopher Butler.

3     5E704415.

4          STATE'S ATTORNEY:  Good afternoon, Your

5     Honor.  Steven (incomprehensible).  I'm

6     standing in on this case (incomprehensible).

7          THE COURT:  Okay.

8          MS. RICHARDSON:  Good afternoon, Your

9     Honor.  Jasmine Richardson on behalf of

10    Mr. Butler.  (Incomprehensible.)

11         THE COURT:  His date is November 24th.

12    261 at 8:45.

13         MS. RICHARDSON:  Thank you, Your Honor.

14         THE COURT:  Okay.

15         MS. RICHARDSON:  And, Your Honor,

16    (incomprehensible) Mr. Butler

17    (incomprehensible).  If I can be heard?

18         THE COURT:  Sure.  Go right ahead.

19         MS. RICHARDSON:  Thank you.  Mr. Butler

20    currently is a no bond status.  Your Honor, we

21    would ask the court (incomprehensible) to

22    consider (incomprehensible) from a no bond

1    status to allow for some option of relief,

2    whether it be pretrial (incomprehensible).

3    Your Honor, (incomprehensible) but I do also

4    (incomprehensible) parents, Ms. Cherry and

5    Kevin Butler are present and would like to

6    be -- be heard also if the court will allow.

7         But in any event, Mr. Butler is 32 years

8    old.  He is currently (incomprehensible)

9    currently working as an usher at

10   (incomprehensible).  The two months prior to

11   that he was also working for the Department of

12   Veterans Affairs.  He has a 9 year old

13   daughter, Your Honor, who does virtual

14   schooling from his home.  And he has her pretty

15   much every day of the week and then also on

16   alternating weekends.

17        Your Honor, turning to the pretrial sheet,

18   as you can see, he does have very minimal

19   contact with any jurisdiction.

20   (Incomprehensible) any contact he does have in

21   our jurisdiction all have either

22   (incomprehensible).  He has always showed up

1   for court and he does have a stable address

2   that he's been at for his entire life, 32

3   years.  Your Honor, he does have some ties to

4   the community.  He has people willing to be

5   (incomprehensible) to be sure that he complies

6   with any court order that (incomprehensible),

7   and also that he does come to court

8   (incomprehensible).

9        So, Your Honor, given the fact that he has

10  no convictions on his record and he's not on

11  parole, probation, there's nothing indicating

12  on the pretrial sheet and he doesn't have any

13  violent protective orders against him.  We

14  would ask that the court, you know, consider

15  modifying his bond from a no bond status to

16  (incomprehensible), even if it's with

17  conditions that require him to be

18  electronically monitored.  And I will

19  (incomprehensible) that will allow

20  (incomprehensible).

21       FEMALE VOICE:  Hello, Your Honor.

22  Christopher, as she said, he has a 9 year old

1    daughter and she's here practically every day

2    of the week.  Chris helps me at home.  He is

3    the only male figure in my house right at the

4    moment.  He -- he would not (incomprehensible)

5    would not do anything to -- to -- to -- I'm

6    sorry, I'm sorry.  He --

7          MALE VOICE:  -- he's not a --

8          FEMALE VOICE:  -- he's not a flight risk.

9    He wouldn't -- he wouldn't (incomprehensible)

10   and he's here.  And he's not gonna go anywhere.

11   He's here with me and his sister.  His father

12   is here almost every other day.  Christopher is

13   not a flight risk.  Christopher would not

14   (incomprehensible) --

15         (Cross talk.)

16         FEMALE VOICE:  -- I'm -- I'm sorry, I'm

17   upset.

18         THE COURT:  Okay.  I need to -- I need --

19         MALE VOICE:  -- we will make sure that he

20   (incomprehensible).  I will make sure that he

21   there 'cuz I'm here all the time with him at

22   (incomprehensible) when he had to come.  So I

1   (incomprehensible).  Thank you for your time.

2          THE COURT:  Not a problem.

3          FEMALE VOICE:  Thank you, Judge.

4          THE COURT:  State.

5          STATE'S ATTORNEY:  Thank you, Your Honor.

6   The State would be opposed to any

7   (incomprehensible) being set in this matter.

8   In full record, I -- I don't know whether or

9   not the victim's family is on the call.  I know

10  they were on yesterday --

11         FEMALE VOICE:  -- I'm on the call.

12  (Incomprehensible) mother, I'm here.

13         STATE'S ATTORNEY:  Okay, thank you.  So,

14  Your Honor, in this case obviously the

15  defendant is charged with murder.  The

16  defendant admitted his involvement in this

17  case.  While counsel did state, and it is true,

18  we both have the same pretrial sheet, but it is

19  worth knowing that barely two months ago he did

20  have a charge and was charged with possession

21  of (incomprehensible) handgun.

22         (Interference.)

1      STATE'S ATTORNEY:  Can you please mute

2  your phones, please?  While we -- thank you.

3      And so for starters, you should know that

4  he had a handgun in the first place.  Ms.

5  Bates -- or Ms. Banning, there's cases that the

6  victim is someone who is known to him.  There

7  was some sort of altercation in a house and the

8  defendant produced a handgun and shot the

9  victim.  There's no indication that he believed

10  his life was in danger, he was being threatened

11  with any use of force that would have

12  necessitated him shooting the victim.  But that

13  is what he did.  So he is a danger to the

14  community.  Whether or not he's a flight risk,

15  he is facing a charge that carries a

16  significant amount of time.  So I guess from

17  that standpoint, anyone could potentially be a

18  flight risk.  But more importantly, he does

19  present a danger to the community and we would

20  ask that he remains in a no bond status.  Thank

21  you, Your Honor.

22      THE COURT:  All right, thank you.  So

1  based upon the allegations contained in this

2  particular matter and the arguments of counsel,

3  I've reviewed the statement of charges, I agree

4  with the State that he is a danger to the

5  community, therefore the bond will remain the

6  same.  It'll be no bond.  Preliminary hearing

7  date now will be November 24th, 261 at 8:45.

8        STATE'S ATTORNEY:  Thank you, Your Honor.

9        (The recording was concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2         I, Jackie A. Scheer, do hereby certify

 3  that the foregoing transcript is a true and correct

 4  record of the recorded proceedings; that said

 5  proceedings were transcribed to the best of my

 6  ability from the audio recording and supporting

 7  information; and that I am neither counsel for,

 8  related to, nor employed by any of the parties to

 9  this case and have no interest, financial or

10  otherwise in its outcome.

11

12

13
        Jackie A. Scheer
14

15

16         JACKIE A. SCHEER

17         JANUARY 11, 2023

18

19

20

21

22
```

## A

ability
9:6
address
4:1
admitted
6:16
affairs
3:12
afternoon
2:4, 2:8
against
4:13
ago
6:19
agree
8:3
ahead
2:18
all
3:21, 5:21,
7:22
allegations
8:1
allow
3:1, 3:6, 4:19
almost
5:12
also
3:3, 3:6, 3:11,
3:15, 4:7
altercation
7:7
alternating
3:16
always
3:22
amount
7:16
any
3:7, 3:19,
3:20, 4:6, 4:12,
6:6, 7:11, 9:8
anyone
7:17
anything
5:5

anywhere
5:10
arguments
8:2
attorney
2:4, 6:5, 6:13,
7:1, 8:8
audio
9:6

## B

banning
7:5
barely
6:19
based
8:1
bates
7:5
been
4:2
behalf
2:9
being
6:7, 7:10
believed
7:9
best
9:5
bond
2:20, 2:22,
4:15, 7:20, 8:5,
8:6
both
6:18
butler
1:10, 2:2,
2:10, 2:16,
2:19, 3:5, 3:7

## C

call
6:9, 6:11
carries
7:15
case
2:6, 6:14,
6:17, 9:9

cases
7:5
certificate
9:1
certify
9:2
charge
6:20, 7:15
charged
6:15, 6:20
charges
8:3
cherry
3:4
chris
5:2
christopher
1:10, 2:2,
4:22, 5:12, 5:13
come
4:7, 5:22
community
4:4, 7:14,
7:19, 8:5
complies
4:5
concluded
8:9
conditions
4:17
consider
2:22, 4:14
contact
3:19, 3:20
contained
8:1
convictions
4:10
correct
9:3
could
7:17
counsel
6:17, 8:2, 9:7
court
2:7, 2:11,
2:14, 2:18,
2:21, 3:6, 4:1,

4:6, 4:7, 4:14,
5:18, 6:2, 6:4,
7:22
cross
5:15
currently
2:20, 3:8, 3:9
cuz
5:21

## D

danger
7:10, 7:13,
7:19, 8:4
date
2:11, 8:7
daughter
3:13, 5:1
day
3:15, 5:1, 5:12
defendant
6:15, 6:16, 7:8
department
3:11

## E

either
3:21
electronically
4:18
employed
9:8
entire
4:2
even
4:16
event
3:7
every
3:15, 5:1, 5:12

## F

facing
7:15
fact
4:9
family
6:9

**father**
5:11
**female**
2:2, 4:21, 5:8,
5:16, 6:3, 6:11
**figure**
5:3
**financial**
9:9
**first**
7:4
**flight**
5:8, 5:13,
7:14, 7:18
**force**
7:11
**foregoing**
9:3
**full**
6:8

**G**

**given**
4:9
**go**
2:18, 5:10
**gonna**
5:10
**good**
2:4, 2:8
**guess**
7:16

**H**

**handgun**
6:21, 7:4, 7:8
**heard**
2:17, 3:6
**hearing**
1:10, 8:6
**hello**
4:21
**helps**
5:2
**here**
5:1, 5:10,
5:11, 5:12,
5:21, 6:12

**hereby**
9:2
**home**
3:14, 5:2
**honor**
2:5, 2:9, 2:13,
2:15, 2:20, 3:3,
3:13, 3:17, 4:3,
4:9, 4:21, 6:5,
6:14, 7:21, 8:8
**house**
5:3, 7:7

**I**

**importantly**
7:18
**incomprehensible**
2:5, 2:6, 2:10,
2:16, 2:17,
2:21, 2:22, 3:2,
3:3, 3:4, 3:8,
3:10, 3:20,
3:22, 4:5, 4:6,
4:8, 4:16, 4:19,
4:20, 5:4, 5:9,
5:14, 5:20,
5:22, 6:1, 6:7,
6:12, 6:21
**indicating**
4:11
**indication**
7:9
**information**
9:7
**interest**
9:9
**interference**
6:22
**involvement**
6:16
**it'll**
8:6

**J**

**jackie**
1:22, 9:2, 9:16
**january**
9:17

**jasmine**
2:9
**job**
1:20
**judge**
6:3
**jurisdiction**
3:19, 3:21

**K**

**kevin**
3:5
**know**
4:14, 6:8, 6:9,
7:3
**knowing**
6:19
**known**
7:6

**L**

**life**
4:2, 7:10

**M**

**make**
5:19, 5:20
**male**
5:3, 5:7, 5:19
**matter**
6:7, 8:2
**minimal**
3:18
**modifying**
4:15
**moment**
5:4
**monitored**
4:18
**months**
3:10, 6:19
**more**
7:18
**mother**
6:12
**much**
3:15
**murder**
6:15

**mute**
7:1

**N**

**necessitated**
7:12
**need**
5:18
**neither**
9:7
**nothing**
4:11
**november**
2:11, 8:7

**O**

**obviously**
6:14
**october**
1:11
**okay**
2:7, 2:14,
5:18, 6:13
**old**
3:8, 3:12, 4:22
**only**
5:3
**opposed**
6:6
**option**
3:1
**order**
4:6
**orders**
4:13
**other**
5:12
**otherwise**
9:10
**outcome**
9:10

**P**

**pages**
1:21
**parents**
3:4
**parole**
4:11

| | | | |
|---|---|---|---|
| **particular**<br>8:2 | **relief**<br>3:1 | **some**<br>3:1, 4:3, 7:7 | **ties**<br>4:3 |
| **parties**<br>9:8 | **remain**<br>8:5 | **someone**<br>7:6 | **time**<br>5:21, 6:1, 7:16 |
| **people**<br>4:4 | **remains**<br>7:20 | **sorry**<br>5:6, 5:16 | **transcribed**<br>1:22, 9:5 |
| **phones**<br>7:2 | **require**<br>4:17 | **sort**<br>7:7 | **transcriber**<br>9:1 |
| **place**<br>7:4 | **reviewed**<br>8:3 | **stable**<br>4:1 | **transcript**<br>9:3 |
| **please**<br>7:1, 7:2 | **richardson**<br>2:8, 2:9, 2:13,<br>2:15, 2:19 | **standing**<br>2:6 | **true**<br>6:17, 9:3 |
| **possession**<br>6:20 | **right**<br>2:18, 5:3, 7:22 | **standpoint**<br>7:17 | **turning**<br>3:17 |
| **potentially**<br>7:17 | **risk**<br>5:8, 5:13,<br>7:14, 7:18 | **starters**<br>7:3 | **two**<br>3:10, 6:19 |
| **practically**<br>5:1 | | **state**<br>6:4, 6:6, 6:17,<br>8:4 | **U** |
| **preliminary**<br>8:6 | **S** | **state's**<br>2:4, 6:5, 6:13,<br>7:1, 8:8 | **upset**<br>5:17 |
| **present**<br>3:5, 7:19 | **said**<br>4:22, 9:4 | **statement**<br>8:3 | **use**<br>7:11 |
| **pretrial**<br>3:2, 3:17,<br>4:12, 6:18 | **same**<br>6:18, 8:6 | **status**<br>2:20, 3:1,<br>4:15, 7:20 | **usher**<br>3:9 |
| **pretty**<br>3:14 | **scheer**<br>1:22, 9:2, 9:16 | **steven**<br>2:5 | **V** |
| **prior**<br>3:10 | **schooling**<br>3:14 | **supporting**<br>9:6 | **veterans**<br>3:12 |
| **probation**<br>4:11 | **see**<br>3:18 | **sure**<br>2:18, 4:5,<br>5:19, 5:20 | **victim**<br>7:6, 7:9, 7:12 |
| **problem**<br>6:2 | **set**<br>6:7 | **T** | **victim's**<br>6:9 |
| **proceedings**<br>9:4, 9:5 | **sheet**<br>3:17, 4:12,<br>6:18 | **talk**<br>5:15 | **violent**<br>4:13 |
| **produced**<br>7:8 | **shooting**<br>7:12 | **th**<br>2:11, 8:7 | **virtual**<br>3:13 |
| **protective**<br>4:13 | **shot**<br>7:8 | **thank**<br>2:13, 2:19,<br>6:1, 6:3, 6:5,<br>6:13, 7:2, 7:20,<br>7:22, 8:8 | **voice**<br>2:2, 4:21, 5:7,<br>5:8, 5:16, 5:19,<br>6:3, 6:11 |
| **R** | **should**<br>7:3 | **therefore**<br>8:5 | **W** |
| **record**<br>4:10, 6:8, 9:4 | **showed**<br>3:22 | **threatened**<br>7:10 | **week**<br>3:15, 5:2 |
| **recorded**<br>9:4 | **signature-b7fzp**<br>9:13 | | **weekends**<br>3:16 |
| **recording**<br>8:9, 9:6 | **significant**<br>7:16 | | **whether**<br>3:2, 6:8, 7:14 |
| **related**<br>9:8 | **sister**<br>5:11 | | |

| willing |
| --- |
| 4:4 |
| working |
| 3:9, 3:11 |
| worth |
| 6:19 |
| wouldn't |
| 5:9 |

**Y**

| year |
| --- |
| 3:12, 4:22 |
| years |
| 3:7, 4:3 |
| yesterday |
| 6:10 |

**1**

| 11 |
| --- |
| 9:17 |

**2**

| 2021 |
| --- |
| 1:11 |
| 2023 |
| 9:17 |
| 24 |
| 2:11, 8:7 |
| 261 |
| 2:12, 8:7 |
| 29 |
| 1:11 |

**3**

| 32 |
| --- |
| 3:7, 4:2 |

**4**

| 45 |
| --- |
| 2:12, 8:7 |
| 476967 |
| 1:20 |

**5**

| 5e |
| --- |
| 2:3 |

**7**

| 704415 |
| --- |
| 2:3 |

**8**

| 8 |
| --- |
| 2:12, 8:7 |

# Exhibit D



# Transcript of Hearing

**Date:** June 14, 2021
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

Hearing in Re: Leslie Sharp

June 14, 2021

Job No.:  476967

Pages 1 - 10

Transcribed by:  Jackie Scheer

**JA1169**

1              P R O C E E D I N G S

2         THE COURT:  Thank you.

3         FEMALE VOICE:  Leslie Sharp, 3701207.

4         MR. IM:  Good morning, Your Honor.  Peter

5    Im, Assistant Public Defender on behalf of

6    Mr. Sharp.

7         Mr. Sharp, if that's you, could you give

8    me a thumbs up?

9         THE COURT:  All right.  Great.

10        MR. IM:  Your Honor, Public Defender's

11   Office is provisionally entering to waive the

12   matter.

13        THE COURT:  Great.  All right.  What do

14   you wanna tell me, Mr. Im?

15        MR. IM:  Your Honor, Mr. Sharp is

16   currently being held without bond.  We're

17   asking that he be released on an unsecured

18   bond.  Wanna start out with the fact that he

19   has no failures to appear.  He will be here in

20   court and so the only -- the only factor to be

21   determined is dangerousness.

22        THE COURT:  Yeah, that's the one.

1          MR. IM:  Mr. Sharp has a GED from D.C.

2     Your Honor, I will acknowledge that he's had

3     some prior convictions on his pretrial sheet.

4     But almost all of them appear to be from at

5     least nine years ago.  I only see one from 2016

6     and he's 33 years old, too, Your Honor.  I

7     would certainly ask you to consider the age of

8     the prior convictions.  I wanna --

9          THE COURT:  -- I -- I have him on

10    probation currently until 2024.  You don't have

11    that?

12         MR. IM:  I do have that, Your Honor.

13         THE COURT:  Oh, okay, all right.

14         MR. IM:  I had that that was the

15    conviction from 2016 that I mentioned.  But,

16    Your Honor --

17         THE COURT:  -- it shows here 2019.

18         MS. MARTIN:  Yeah.  I'm looking at 5/19.

19         MR. IM:  I -- I believe that might have

20    been a release date.  But the -- the case

21    number shows 2015 as -- but I'm not seeing

22    anything from --

1        THE COURT:  -- yeah, but sometimes people

2    are out for a little while before they pick

3    them up and get their convictions, you follow

4    where I'm going?  But go ahead.  I -- I -- I

5    don't know --

6        MR. IM:  -- I wanted to let you know

7    Mr. Sharp actually just got a job last week at

8    the Old Ebbitt Grill.  He'll be working there

9    as a dish -- dishwasher.  He was supposed to be

10   starting today but he's been struggling with

11   unemployment in the past, and he's certainly

12   looking forward to working at the Old Ebbitt

13   Grill.  The complaining witness in this case is

14   Mr. Sharp's wife.  And so --

15       THE COURT:  -- yeah.

16       MR. IM:  -- you'll see that she's not in

17   fear of him, doesn't believe that he's a

18   danger, and is not interested in pressing

19   charges.  I believe she's also on the line

20   if -- and I think she would like to address the

21   court.

22       THE COURT:  You know, Mr. Im, here --

1    here's what I gotta tell you about that.  You

2    have ethical concerns about that.  She is

3    unrepresented in this case.  Do I need to go

4    further about what I'm talking about the thing?

5         MR. IM:  Your Honor, well, well, certainly

6    as an officer of the court, I -- I will

7    represent then that she has told me she's not

8    in fear and doesn't believe --

9         THE COURT:  -- thank you.

10        MR. IM:  -- to her.  And, Your Honor, I

11   would also note to the court that she's been on

12   the line just to watch this hearing for nearly

13   two hours now.  She's certainly committed to

14   him being out.  So, Your Honor, for all of

15   those reasons, we're asking that Mr. Sharp be

16   released on an unsecured bond.

17        THE COURT:  Okay.  Ms. Martin, what's your

18   position on this?

19        MS. MARTIN:  Here's the concern I have.

20   It's a domestic with visible physical injuries.

21   So while I don't have a problem with pretrial

22   release, the gentleman, among other things, is

1    on active probation.  So that's as far as I'm

2    willing to go.

3        MR. IM:  And -- and, Your Honor, if I may

4    be heard briefly about pretrial release.  If

5    the court is interested -- I don't know if the

6    court is leaning towards pretrial release.  I

7    would note for Your Honor that although he has

8    that Prince George County address --

9        THE COURT:  -- he does.

10       MR. IM:  -- in Beltsville, that is the

11   location of the alleged incident.  The only

12   place that he has --

13       THE COURT:  -- it is.

14       MR. IM:  -- to stay is -- is his father's

15   address, which is in D.C.  And so we would ask

16   the court to order pretrial release at level

17   three.

18       THE COURT:  All right.  Thank you.

19       All right.  Here's what we have.  I have

20   a -- an individual who's charged with -- and

21   convicted of possession intent to distribute.

22   Apparently it -- it dates from earlier but the

1    conviction didn't occur until 2019, for

2    possession with intent to distribute and a

3    firearm violation.  He also has a conviction

4    for robbery in Montgomery County, a conviction

5    for a gun robbery in the District of Columbia.

6    He had a failure to appear for an armed robbery

7    in the District of Columbia.  I have him with

8    other charges such as bail jumping, narcotics

9    charges in 2012, conviction for an unauthorized

10   use in 2008, destruction of property in 2011.

11   There's a -- carrying a pistol without a

12   license in 2016.  Prior parole violations

13   alleged as well, although I don't have

14   dispositions on those.

15        In this case, this is an assault in a

16   domestic violence situation.  Mr. Im, you know,

17   it's not unusual for a -- a person who's been

18   assaulted in a domestic violence situation to

19   say that -- at a court proceeding that they

20   want to say something positive for the -- the

21   defendant.  Sometimes it's legitimately true

22   that they really aren't afraid.  Sometimes

1  they're afraid not to say that they're not

2  afraid.  In this instance, the allegations

3  involved domestic violence with visible

4  injuries, it was not charged by the victim in

5  this case, but rather charged by an officer who

6  came on to the scene and saw damage to the

7  home, a -- a person who appeared to have been

8  drinking, and a victim who had visible injuries

9  to -- multiple injuries to her face.

10 Montgomery County Fire Department, ambulance

11 was required to come to the scene, and of

12 course the defendant said he didn't touch her.

13 The -- the victim was disinclined to cooperate.

14      The court finds by clear and convincing

15 evidence under Salerno versus the United

16 States, given his background and -- and the

17 facts of this case and under Wheeler versus

18 State there are no conditions of bond

19 sufficient to protect the public and

20 specifically this individual, who I know wants

21 to speak up and say, oh, I'm not afraid of him,

22 I got that.  You know, but it appears he --

1   he -- he's gonna be on probation until 2024,

2   and this could constitute a violation of that

3   probation.  So the court's gonna hold him

4   without bond pending the setting of a trial

5   date in this case at this time.  You know where

6   I am, Mr. Im.

7        MR. IM:  Your Honor, for the record, would

8   the court consider pretrial release given that

9   the -- the state's not opposed?

10       THE COURT:  I most definitely did consider

11  it and I'm going to decline to do so at this

12  time.  Again, you know, I'm willing to listen

13  to other options.  He seems to have a substance

14  abuse issue.  I'm more than happy to hear

15  you -- you, you know, if that becomes

16  available, I'd certainly be willing to

17  consider, you know, some other remedy, but not

18  at this time.  Thank you.

19       (The recording was concluded.)

20

21

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2         I, Jackie A. Scheer, do hereby certify

 3   that the foregoing transcript is a true and correct

 4   record of the recorded proceedings; that said

 5   proceedings were transcribed to the best of my

 6   ability from the audio recording and supporting

 7   information; and that I am neither counsel for,

 8   related to, nor employed by any of the parties to

 9   this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14

15

16         JACKIE A. SCHEER

17         JANUARY 11, 2023

18

19

20

21

22
```

## A

**ability**
10:6
**about**
5:1, 5:2, 5:4,
6:4
**abuse**
9:14
**acknowledge**
3:2
**active**
6:1
**actually**
4:7
**address**
4:20, 6:8, 6:15
**afraid**
7:22, 8:1, 8:2,
8:21
**again**
9:12
**age**
3:7
**ago**
3:5
**ahead**
4:4
**all**
2:9, 2:13, 3:4,
3:13, 5:14,
6:18, 6:19
**allegations**
8:2
**alleged**
6:11, 7:13
**almost**
3:4
**also**
4:19, 5:11, 7:3
**although**
6:7, 7:13
**ambulance**
8:10
**among**
5:22
**any**
10:8

**anything**
3:22
**apparently**
6:22
**appear**
2:19, 3:4, 7:6
**appeared**
8:7
**appears**
8:22
**aren't**
7:22
**armed**
7:6
**asking**
2:17, 5:15
**assault**
7:15
**assaulted**
7:18
**assistant**
2:5
**audio**
10:6
**available**
9:16

## B

**background**
8:16
**bail**
7:8
**becomes**
9:15
**been**
3:20, 4:10,
5:11, 7:17, 8:7
**before**
4:2
**behalf**
2:5
**being**
2:16, 5:14
**believe**
3:19, 4:17,
4:19, 5:8
**beltsville**
6:10

**best**
10:5
**bond**
2:16, 2:18,
5:16, 8:18, 9:4
**briefly**
6:4

## C

**came**
8:6
**carrying**
7:11
**case**
3:20, 4:13,
5:3, 7:15, 8:5,
8:17, 9:5, 10:9
**certainly**
3:7, 4:11, 5:5,
5:13, 9:16
**certificate**
10:1
**certify**
10:2
**charged**
6:20, 8:4, 8:5
**charges**
4:19, 7:8, 7:9
**clear**
8:14
**columbia**
7:5, 7:7
**come**
8:11
**committed**
5:13
**complaining**
4:13
**concern**
5:19
**concerns**
5:2
**concluded**
9:19
**conditions**
8:18
**consider**
3:7, 9:8, 9:10,

9:17
**constitute**
9:2
**convicted**
6:21
**conviction**
3:15, 7:1, 7:3,
7:4, 7:9
**convictions**
3:3, 3:8, 4:3
**convincing**
8:14
**cooperate**
8:13
**correct**
10:3
**could**
2:7, 9:2
**counsel**
10:7
**county**
6:8, 7:4, 8:10
**course**
8:12
**court**
2:2, 2:9, 2:13,
2:20, 2:22, 3:9,
3:13, 3:17, 4:1,
4:15, 4:21,
4:22, 5:6, 5:9,
5:11, 5:17, 6:5,
6:6, 6:9, 6:13,
6:16, 6:18,
7:19, 8:14, 9:8,
9:10
**court's**
9:3
**currently**
2:16, 3:10

## D

**damage**
8:6
**danger**
4:18
**dangerousness**
2:21
**date**
3:20, 9:5

dates
6:22
decline
9:11
defendant
7:21, 8:12
defender
2:5
defender's
2:10
definitely
9:10
department
8:10
destruction
7:10
determined
2:21
dish
4:9
dishwasher
4:9
disinclined
8:13
dispositions
7:14
distribute
6:21, 7:2
district
7:5, 7:7
domestic
5:20, 7:16,
7:18, 8:3
drinking
8:8

**E**

earlier
6:22
ebbitt
4:8, 4:12
employed
10:8
entering
2:11
ethical
5:2
evidence
8:15

**F**

face
8:9
fact
2:18
factor
2:20
facts
8:17
failure
7:6
failures
2:19
far
6:1
father's
6:14
fear
4:17, 5:8
female
2:3
financial
10:9
finds
8:14
fire
8:10
firearm
7:3
follow
4:3
foregoing
10:3
forward
4:12
further
5:4

**G**

ged
3:1
gentleman
5:22
george
6:8
give
2:7

given
8:16, 9:8
go
4:4, 5:3, 6:2
going
4:4, 9:11
gonna
9:1, 9:3
good
2:4
gotta
5:1
great
2:9, 2:13
grill
4:8, 4:13
gun
7:5

**H**

happy
9:14
he'll
4:8
hear
9:14
heard
6:4
hearing
1:10, 5:12
held
2:16
here
2:19, 3:17,
4:22
here's
5:1, 5:19, 6:19
hereby
10:2
hold
9:3
home
8:7
honor
2:4, 2:10,
2:15, 3:2, 3:6,
3:12, 3:16, 5:5,
5:10, 5:14, 6:3,

6:7, 9:7
hours
5:13

**I**

im
2:4, 2:5, 2:10,
2:14, 2:15, 3:1,
3:12, 3:14,
3:19, 4:6, 4:16,
4:22, 5:5, 5:10,
6:3, 6:10, 6:14,
7:16, 9:6, 9:7
incident
6:11
individual
6:20, 8:20
information
10:7
injuries
5:20, 8:4, 8:8,
8:9
instance
8:2
intent
6:21, 7:2
interest
10:9
interested
4:18, 6:5
involved
8:3
issue
9:14

**J**

jackie
1:22, 10:2,
10:16
january
10:17
job
1:20, 4:7
jumping
7:8
june
1:11

**K**

know
4:5, 4:6, 4:22,

6:5, 7:16, 8:20,
8:22, 9:5, 9:12,
9:15, 9:17

**L**

**last**
4:7
**leaning**
6:6
**least**
3:5
**legitimately**
7:21
**leslie**
1:10, 2:3
**level**
6:16
**license**
7:12
**line**
4:19, 5:12
**listen**
9:12
**little**
4:2
**location**
6:11
**looking**
3:18, 4:12

**M**

**martin**
3:18, 5:17,
5:19
**matter**
2:12
**mentioned**
3:15
**might**
3:19
**montgomery**
7:4, 8:10
**more**
9:14
**morning**
2:4
**most**
9:10

**multiple**
8:9

**N**

**narcotics**
7:8
**nearly**
5:12
**need**
5:3
**neither**
10:7
**nine**
3:5
**note**
5:11, 6:7
**number**
3:21

**O**

**occur**
7:1
**office**
2:11
**officer**
5:6, 8:5
**oh**
3:13, 8:21
**okay**
3:13, 5:17
**old**
3:6, 4:8, 4:12
**one**
2:22, 3:5
**only**
2:20, 3:5, 6:11
**opposed**
9:9
**options**
9:13
**order**
6:16
**other**
5:22, 7:8,
9:13, 9:17
**otherwise**
10:10
**out**
2:18, 4:2, 5:14

**outcome**
10:10

**P**

**pages**
1:21
**parole**
7:12
**parties**
10:8
**past**
4:11
**pending**
9:4
**people**
4:1
**person**
7:17, 8:7
**peter**
2:4
**physical**
5:20
**pick**
4:2
**pistol**
7:11
**place**
6:12
**position**
5:18
**positive**
7:20
**possession**
6:21, 7:2
**pressing**
4:18
**pretrial**
3:3, 5:21, 6:4,
6:6, 6:16, 9:8
**prince**
6:8
**prior**
3:3, 3:8, 7:12
**probation**
3:10, 6:1, 9:1,
9:3
**problem**
5:21

**proceeding**
7:19
**proceedings**
10:4, 10:5
**property**
7:10
**protect**
8:19
**provisionally**
2:11
**public**
2:5, 2:10, 8:19

**R**

**rather**
8:5
**really**
7:22
**reasons**
5:15
**record**
9:7, 10:4
**recorded**
10:4
**recording**
9:19, 10:6
**related**
10:8
**release**
3:20, 5:22,
6:4, 6:6, 6:16,
9:8
**released**
2:17, 5:16
**remedy**
9:17
**represent**
5:7
**required**
8:11
**right**
2:9, 2:13,
3:13, 6:18, 6:19
**robbery**
7:4, 7:5, 7:6

**S**

**said**
8:12, 10:4

| | | | |
|---|---|---|---|
| **salerno** 8:15 | **state** 8:18 | **transcriber** 10:1 | **wanna** 2:14, 2:18, 3:8 |
| **saw** 8:6 | **state's** 9:9 | **transcript** 10:3 | **want** 7:20 |
| **say** 7:19, 7:20, 8:1, 8:21 | **states** 8:16 | **trial** 9:4 | **wanted** 4:6 |
| **scene** 8:6, 8:11 | **stay** 6:14 | **true** 7:21, 10:3 | **wants** 8:20 |
| **scheer** 1:22, 10:2, 10:16 | **struggling** 4:10 | **two** 5:13 | **watch** 5:12 |
| **see** 3:5, 4:16 | **substance** 9:13 | **U** | **we're** 2:16, 5:15 |
| **seeing** 3:21 | **sufficient** 8:19 | **unauthorized** 7:9 | **week** 4:7 |
| **seems** 9:13 | **supporting** 10:6 | **under** 8:15, 8:17 | **wheeler** 8:17 |
| **setting** 9:4 | **supposed** 4:9 | **unemployment** 4:11 | **wife** 4:14 |
| **sharp** 1:10, 2:3, 2:6, 2:7, 2:15, 3:1, 4:7, 5:15 | **T** | **united** 8:15 | **willing** 6:2, 9:12, 9:16 |
| **sharp's** 4:14 | **talking** 5:4 | **unrepresented** 5:3 | **without** 2:16, 7:11, 9:4 |
| **sheet** 3:3 | **tell** 2:14, 5:1 | **unsecured** 2:17, 5:16 | **witness** 4:13 |
| **shows** 3:17, 3:21 | **thank** 2:2, 5:9, 6:18, 9:18 | **until** 3:10, 7:1, 9:1 | **working** 4:8, 4:12 |
| **signature-p1kal** 10:13 | **thing** 5:4 | **unusual** 7:17 | **Y** |
| **situation** 7:16, 7:18 | **things** 5:22 | **use** 7:10 | **yeah** 2:22, 3:18, 4:1, 4:15 |
| **some** 3:3, 9:17 | **think** 4:20 | **V** | **years** 3:5, 3:6 |
| **something** 7:20 | **three** 6:17 | **versus** 8:15, 8:17 | **1** |
| **sometimes** 4:1, 7:21, 7:22 | **thumbs** 2:8 | **victim** 8:4, 8:8, 8:13 | **10** 1:21 |
| **speak** 8:21 | **time** 9:5, 9:12, 9:18 | **violation** 7:3, 9:2 | **11** 10:17 |
| **specifically** 8:20 | **today** 4:10 | **violations** 7:12 | **14** 1:11 |
| **start** 2:18 | **told** 5:7 | **violence** 7:16, 7:18, 8:3 | **19** 3:18 |
| **starting** 4:10 | **touch** 8:12 | **visible** 5:20, 8:3, 8:8 | **2** |
| | **towards** 6:6 | **voice** 2:3 | **2008** 7:10 |
| | **transcribed** 1:22, 10:5 | **W** | **2011** 7:10 |
| | | **waive** 2:11 | |

**2012**
7:9
**2015**
3:21
**2016**
3:5, 3:15, 7:12
**2019**
3:17, 7:1
**2021**
1:11
**2023**
10:17
**2024**
3:10, 9:1

**3**

**33**
3:6
**3701207**
2:3

**4**

**476967**
1:20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,<br><br>    Defendants. | Civil No. **22-1768 PJM** |

**MEMORANDUM OPINION**

This putative class action challenges the process by which criminal defendants in Prince George's County, Maryland are granted release prior to trial. Plaintiffs are individuals who were arrested and charged with various crimes between October 2020 and June 2022.[1] They assert that the Judge Defendants[2] improperly delegated decisions regarding their pretrial release to Defendant Employees[3] of the County, also a Defendant, and that the process by which all Defendants made release determinations violated their due process rights. Defendants have

---

[1] Plaintiffs are Robert Frazier, Anibal Hernandez, D.P., a minor, Christopher Butler, Miramba Williams, Donnell Davis, Leslie Sharp, Elmer Laguan-Salinas, and Adrienne Worthington.

[2] The Judge Defendants are Prince George's County District Judges Lakeecia Allen, Byron Bereano, John Bielec, Scott Carrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron, Jr., Donnaka Lewis, Gregory Powell, and Circuit Court Judge Cathy Serrette.

[3] The Defendant County Officials were Corenne Labbé, Director of the County Department of Corrections; Jeffrey Logan, Division Chief of the County Population Management Division, Kenneth Gray, Section Chief of the County Community Supervision Section; and Tanya Law, Unit Chief of the County Monitoring Services Unit. Because all the County Officials were sued in their official capacity, the Court, by oral opinion at the hearing on the Motions to Dismiss, dismissed them and made Prince George's County a single defendant in their place. ECF No. 80; *see Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014).

1

**JA1184**

moved to dismiss the case based on lack of subject matter jurisdiction, abstention doctrines, and failure to state a claim.  For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** the Motions to Dismiss of the County (ECF No. 64) and the Judge Defendants (ECF No. 66).

## I.   PRETRIAL RELEASE PROCEEDINGS

### A.  In General

The Court begins with an overview of the pretrial release process in Prince George's County, which it draws from Plaintiffs' Complaint and the arguments of counsel at oral argument on the Motions.

When an individual is arrested in Prince George's County, he or she is taken before a District Court Commissioner[4] for an initial determination of release or detention.  Any individual ordered to be detained is given a prompt bail review hearing, typically within 24 hours, by a judge of the District or the Circuit Courts of the County.  The judge decides whether pretrial release or detention is appropriate.  Maryland law directs that the judge's decision be based, *inter alia*, on the recommendation of the Population Management Division of the Prince George's County Department of Corrections (the "Pretrial Division").  Md. Code Crim. Proc. § 4-216.1(f)(1).  What that requirement has meant in practice, in Prince George's County at least, is that, while the judge authorizes[5] pretrial release, actual release occurs only when the Pretrial

---

[4] For the sake of those unfamiliar with the structure of its courts, Maryland's two trial courts consist of a "District" Court of limited jurisdiction and a "Circuit" court of general jurisdiction. Md. Code Ann., Cts. & Jud. Proc. §§ 1-501, 1-601.  The state District Court for a given County, e.g., for Prince George's County, should not be confused with the United States District Court for the District of Maryland, the federal trial court where this suit is pending.

[5] "Authorize" is a key word in evaluating the process.  A review of transcripts from various Plaintiffs' bail review hearings makes clear that no judge has ever ordered immediate, unconditional release for any of Plaintiffs.  Instead, the judges' decisions are best understood as conditional orders, or "options," authorizing release only if and when the Pretrial Division finds a defendant to be eligible for release.

Division determines that a defendant satisfies certain criteria making him or her eligible for release.[6]  Plaintiffs contend that the methods by which the Pretrial Division decides eligibility are opaque, drawn out, and often arbitrary, during which time of course the defendant unconstitutionally remains in custody.  *See* Compl.  ¶ 6–7.

The Pretrial Division considers a number of criteria in determining a defendant's eligibility for release, including:

- Whether the offense charged is non-violent;

- Whether the defendant's identity, phone number, and residence address can be confirmed;

- Whether there are open warrants, detainers, or other charges against the defendant pending in Prince George's County or another jurisdiction;

- Whether a defendant resides in Prince George's County;

- Whether a defendant, if released, would have access to a working telephone;

- Whether a defendant would be able to reside with a cooperative family member upon release;

- Whether a defendant is employed, in school, or otherwise involved in vocational training, including the name and location of the employer, school, or training program; and

- The defendant's references, employment history, medical information, and past and present substance usage.

Logan Aff., ECF No. 64-2.  At this juncture, the Court has no information before it regarding which of these factors, if any, are deemed mandatory and which are deemed optional in determining a defendant's eligibility for release.

---

[6] The categories for release are organized as "levels" of pretrial release I through IV, the lowest category being for the least extensive supervision, the highest for the more extensive supervision. Those levels are detailed in an exhibit attached to the County's Motion to Dismiss.  ECF No. 64-4.  All, or nearly all, of the named Plaintiffs were authorized for Level IV release, the category where serious felonies have been charged.  Level IV release involves monitoring of the defendant via an electronic device and frequent contact with a Case Manager and Investigator.

The Pretrial Division apparently has no deadline by which it must determine whether a defendant is eligible for release.  *See* Logan Aff., ECF No. 64-2 (explaining that "[t]he time it takes to obtain this information can vary for each defendant" and is dependent both on the promptness of responses by individuals contacted on a defendant's behalf, and on the Pretrial Division's caseload).  At *some* point, however, if the Pretrial Division determines that it cannot confirm whatever information it believes is critical, a defendant is deemed ineligible for pretrial release and remains in custody.  The Pretrial Division is supposed to submit a document to the judge who conducted the bail hearing, explaining the reasons for determining that a defendant is ineligible for release, which the judge may or may not have to sign off on.[7]  A defendant can always request periodic bail review hearings at which the judge is able to change the defendant's detention status.[8]  But the Court has not been advised of any policy or protocol indicating the extent and frequency with which the Pretrial Division must undertake to confirm relevant eligibility factors and report back to the bail judge.

Too often according to Plaintiffs' counsel (relying on oral reports from public defenders representing Plaintiffs in the trial courts), the process of confirming whether a client is eligible for release or even for obtaining information from the Pretrial Division as to a given defendant's status takes an unduly long time.

---

[7] The Court has not received such a form for some of the named Plaintiffs.  A form was supplied as to Plaintiff Williams.  ECF No. 83-5 at 5.  In the case of Plaintiff Laguan-Salinas, however, it is clear from the transcript of a follow-up bail review that no such report was received by the judge, who questioned the fact that it was missing.  ECF No. 85-4 at 41, 47–50.

[8] Indeed, Plaintiffs' multiple requests for bail review hearings have all been granted.

**B.  The Situations of the Named Plaintiffs**

The Court considers the particulars of Plaintiffs' individual cases.

As of November 2022, six of the named Plaintiffs (Frazier, Hernandez, Davis, D.P., Sharp, and Worthington) (collectively, the "Released Plaintiffs") were no longer in custody.  The remaining three Plaintiffs (Butler, Williams, and Laguan-Salinas[9]) (collectively, the "Detained Plaintiffs"), for various reasons, continue to be detained.

1.  <u>Released Plaintiffs</u>

i.  Robert Frazier

Plaintiff Frazier was arrested on May 28, 2022 for allegedly having a loaded handgun in a vehicle, knowingly altering a firearm identification number, illegally possessing an unregistered firearm and ammunition, possessing a firearm with a felony conviction, and committing various traffic code violations.  He had an initial appearance before the District Court on May 29, 2022 and was ordered held without bond.  He had subsequent bail review hearings on May 31, June 21, and June 28, 2022 respectively, before District Court Judge Defendants Bereano, Clark-Edwards, and Denton.  On August 16, 2022, after he was indicted and his case was transferred to Circuit Court, Frazier had a fourth bail review hearing before Circuit Court Judge Lawrence V. Hill, Jr., who is not currently a Defendant in this case.  Judge Hill modified Frazier's bail status to "release-on-recognizance" so that he could be transferred to the General District Court in Arlington County, Virginia to answer to a detainer.  On August 24, 2022, Frazier was transferred to Virginia and released from that state's custody the same day.  He returned to the Maryland Circuit Court on August 25, 2022 and was released from Prince George's County custody following a bail review with Judge Hill.  Frazier is currently awaiting trial.

---

[9] Laguan-Salinas was released in June 2022 but has since been detained on "no bond" status in connection with a separate charge.  ECF No. 70.

ii. Anibal Hernandez

Plaintiff Hernandez was arrested on June 22, 2022 for allegedly possessing with intent to distribute a controlled dangerous substance (CDS), importing a CDS into the state, and committing a firearm/drug trafficking crime.  He had an initial appearance in District Court on June 23, 2022 and was ordered held without bond.  Hernandez then had bail review hearings on June 24, 2022 before District Judge Defendant Judge Allen, and on July 25, 2022 before District Court Judge Katina S. Steuart, who is not currently a Defendant in this case.  At his second bail hearing, Hernandez had a cash bond set at $5,000 and was released the same day after paying it. Hernandez is currently awaiting trial.

iii. Donnell Davis

Plaintiff Davis was arrested on October 8, 2020 and charged with assault in the first and second degree.  He had an initial appearance in the District Court on the same day.  He had bail review hearings on October 9 and November 9, 2020 before District Judge Defendant Heffron, Jr., and on December 16, 2020 before District Judge Defendant Smith.  He was detained pending his trial and on January 7, 2021, at trial, was found not guilty and released.

iv. D.P., a Minor

Plaintiff D.P., a minor, was arrested on June 16, 2022 for allegedly committing armed robbery, theft, using a firearm during a felony or violent crime, possessing a dangerous weapon on school property, committing assault in the first degree, and possessing a firearm as a minor. He had an initial appearance in the District Court that same day and bail review hearings on June 21 and June 28, 2022, respectively before District Judge Defendants Clark-Edwards and Denton, and on August 17, 2022 before District Court Judge Jonas D. Legum, who is not currently a Defendant in this case.  At his August 17, 2022 bail review, D.P. had a cash bond set at $15,000

6

and was released upon payment.  Following his indictment, D.P.'s case was transferred to the Circuit Court, where he is currently awaiting trial.

  v.  Leslie Sharp

Plaintiff Sharp was arrested on June 11, 2021 and charged with assault in the second degree.  He made an initial appearance in the District Court that same day and had bail review hearings on June 14, June 24, and July 14, 2021, respectively before District Judge Defendants Denton, Carrington, and Varner Lewis.  He was detained pending trial and on July 22, 2021, the day of Sharp's trial, the State entered the charges against him *nolle prosequi*, his case was closed, and he was released.

  vi.  Adrienne Worthington

Plaintiff Worthington was arrested on December 23, 2021 and charged with assault in the first and second degrees.  She made an initial appearance in District Court the next day and had bail review hearings on December 28, 2021 before District Judge Defendant Bielec, and on February 9, 2022 before District Judge Defendant Heffron, Jr., when she was released on an unsecured bond.  On April 5, 2022, the State entered *nolle prosequi* in Worthington's case; her case was closed, and she was released.

  2.  <u>Detained Plaintiffs</u>

  i.  Christopher Butler

Plaintiff Butler was arrested on October 27, 2021 and charged with murder in the second degree, manslaughter, assault in the first and second degree, and use of a firearm during the commission of a crime of violence or felony.  He had an initial appearance the day of his arrest and had bail review hearings on October 28, 2021 before District Judge Defendant Clark-Edwards, and on October 29, 2021 before District Court Judge Clayton A. Aarons, who is not

currently a Defendant in this case.  After Butler was indicted, his case was transferred to the

Circuit Court.  He then had bail review hearings on February 18, 2022 before Circuit Judge

Defendant Serrette, who authorized Butler for pretrial release subject to review by the Pretrial

Division, which found him ineligible due to the nature of the pending charge (murder) and his

mental health status.  Logan Aff., ECF No. 64-2.  On July 26 and 28, 2022, Butler had a bail

review hearing before Circuit Judge Krystal Q. Alves, who is not currently a Defendant in this

case.  Judge Alves did not modify Butler's release status.  Butler is currently detained and is

scheduled to be tried starting January 17, 2023.

ii.  Miramba Williams

Plaintiff Williams was arrested on June 30, 2022 and charged with possession of over ten

grams of marijuana, possession with intent to distribute a controlled dangerous substance,

possession of a handgun in a vehicle, distribution with a firearm, a firearm/drug trafficking

crime, illegal possession of a regulated firearm, possession of a loaded handgun in a vehicle,

illegal possession of ammunition, and use of a firearm during a felony or violent crime.

Williams had an initial appearance in District Court on July 1, 2022 and bail review hearings on

July 5, 2022 before District Judge Defendant Gregory Powell, and on August 12, 2022 before

District Court Judge Patrice E. Lewis, who is not currently a Defendant in this case.  Williams

was found to be ineligible for pretrial release because he was already on probation for another

offense and because he had a detainer from Montgomery County, Maryland.  Williams remains

detained and is currently awaiting trial.

iii.  Elmer Laguan-Salinas

Plaintiff Laguan-Salinas was arrested on March 15, 2022 and charged with assault in the

second degree and disorderly conduct (the "First Charge").  While detained, Laguan-Salinas was

served with an arrest warrant for a separate incident involving assault in the first degree, use of a firearm during a felony or violent crime, possession of a firearm by a convicted felon, reckless endangerment, and illegal possession of a firearm (collectively, the "Second Charge"). Laguan-Salinas had an initial appearance in both cases on March 16, 2022, the day after his arrest. He had bail review hearings on March 17 and May 12, 2022, respectively before District Judge Defendants Smith and Bielec. Laguan-Salinas was detained pending trial. On May 25, 2022, the State entered a *nolle prosequi* as to the First Charge. On June 17, 2022, Laguan-Salinas had a bail review hearing before non-Defendant District Court Judge Lewis and was released on an unsecured bond. On August 16, 2022, Laguan-Salinas was indicted on the Second Charge and was transferred to Circuit Court. He was then detained pursuant to a bench warrant and ordered to be held without bond. Laguan-Salinas has been detained since September 10, 2022 and most recently had a bail hearing on November 10, 2022 before non-Defendant District Court Judge Nicholas Rattal, who declined to modify Laguan-Salinas' release conditions. He remains detained while awaiting trial.

*       *       *

In July 2022, the nine named Plaintiffs filed this case against Prince George's County, various County Officials in their official capacities, and Prince George's County District and Circuit Court Judges who made certain decisions regarding the pretrial release status of the various Plaintiffs. On September 26, 2022, Defendants filed separate Motions to Dismiss. On October 25, 2022, the Court heard oral argument on the Motions and took them under advisement. During the hearing, the Court, by oral order, dismissed the individual County Officials from the case since they had only been sued in their official capacities, making the

9

**JA1192**

County the true party in interest.  ECF No. 80; s*ee Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th

Cir. 2014).  The Court considers what remains of Defendants' Motions to Dismiss.[10]

## II.  LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction challenges a court's authority

or competence to hear the case and will be granted "where a claim fails to allege facts upon

which the court may base jurisdiction." *Davis v. Thompson,* 367 F. Supp. 2d 792, 799 (D. Md.

2005).  In this type of facial challenge, a plaintiff is effectively afforded the same procedural

protection as is due under Rule 12(b)(6) consideration.  *Kerns v. United States*, 585 F.3d 187,

192 (4th Cir. 2009).

### B.  Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S.

544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A complaint is properly

dismissed where, as a matter of law, "the allegations in a complaint, however true, could not

raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558.

## III.  DISCUSSION

Defendants' two Motions assert a total of six grounds they believe warrant dismissal: (1)

lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, (2) various

---

[10] Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) and Motion for Class Certification (ECF No. 4) remain pending.

abstraction doctrines,[11] (3) sovereign and judicial immunity, (4) lack of entitlement to monetary damages, (5) failure to state a claim; and (6) lack of justiciability.

## A. Threshold Issues

1. Lack of Subject Matter Jurisdiction Pursuant to *Rooker-Feldman*

Defendants argue that the Court lacks jurisdiction because, they say, pursuant to the *Rooker-Feldman* doctrine, a federal court may not review bail decisions made by Maryland state courts.

*Rooker-Feldman* is a "narrow" doctrine that precludes a federal district court from entertaining suits by "state-court losers" who seek review and rejection of a state court judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). A federal court lacks subject matter jurisdiction pursuant to *Rooker-Feldman* if a plaintiff's requested relief would "reverse or modify" a state court decree. *Adkins v. Rumsfeld*, 464 F.3d 456, 464 (4th Cir. 2006) (citing *Exxon Mobil Corp.*, 544 U.S. at 284).

The Court finds *Rooker-Feldman* inapplicable here. Plaintiffs may indeed be "state-court losers" in the sense that they may not have obtained pretrial release on conditions or in as timely a fashion as they believe they were due, but Plaintiffs do not aim to "reverse or modify" particular bail determinations made by Prince George's County Judges. They do not ask the Court to mandate any particular outcomes regarding their detained status. What they seek in this suit is only to ensure that the *process* by which bail decisions are made in Prince George's County is constitutionally adequate. This may or may not affect an individual Plaintiff's bail outcome in a future bail review proceeding, but it is entirely possible that a different pretrial

---

[11] Both sets of Defendants invoke the *Younger* abstention doctrine. The Judge Defendants additionally raise the *Burford* and *Colorado River* abstention doctrines.

release process would still result in the same bail outcome.  Therefore, Plaintiffs' claims do not amount to relief that would "reverse or modify" a state court decree.

2. <u>Abstention Doctrines</u>

Having established that it has subject matter jurisdiction in this case, the Court considers whether any doctrines nonetheless warrant abstention by the Court.  The Court finds no reason to abstain based on any of these doctrines.

i. *Younger* Abstention

Both the County and Judge Defendants ask the Court to decline to hear Plaintiffs' claims based on *Younger v. Harris*, 401 U.S. 37 (1971), which holds that a federal court should not interfere in an ongoing state criminal proceeding that implicates important state interests and that also provides an adequate opportunity for a plaintiff to raise a constitutional claim.  *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008).  While Plaintiffs do not deny that the State of Maryland, through its judges, has a strong interest in the integrity of the bail decisions of its judges, they submit that this lawsuit will not interfere with their prosecutions and that their criminal trials are not an adequate forum in which to raise constitutional claims about pretrial release.

Preliminarily, of course, the Court must clarify *which* state proceeding is the "relevant" one for purposes of *Younger* analysis.  The Court finds it is Plaintiffs' criminal *trials*, not their bail review hearings, to which *Younger* applies.  *See Schultz v. Alabama*, 42 F.4th 1298, 1312 (11th Cir. 2022) (comparing federal case with state criminal trial for *Younger* purposes); *Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (same); *Atkins v. Michigan*, 644 F.2d 543, 549 (6th Cir. 1981) (same).  That said, the Court finds that *Younger* abstention is inappropriate for two reasons.

First, this lawsuit will not interfere with the determination of guilt or innocence at the trials of Plaintiffs because the issue of pretrial release is entirely collateral to the question of an individual's criminal guilt or innocence. *See Schultz*, 42 F.4th at 1312 (declining to abstain because case seeking faster bail determinations did not interfere with any state prosecution); *Arevalo*, 882 F.3d at 766 (holding *Younger* abstention not appropriate because criminal prosecution would "move forward unimpeded" regardless of how bail issue was resolved); *Atkins*, 644 F.2d at 549 (explaining that issue of bail was "collateral to and independent of the merits of the case pending against" plaintiff). Defendants' reliance on *O'Shea v. Littleton*, 414 U.S. 488 (1974), is misplaced: There, plaintiffs wanted an "injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal *trials*." *Id.* at 500 (emphasis added). Plaintiffs here seek no such thing. *See also supra* Section III.A.1 (discussing how Plaintiffs do not seek to modify or reverse a state court order).[12]

Second, Plaintiff's criminal trials are not an adequate forum for *Younger* purposes because Plaintiffs cannot raise issues of pretrial release as part of their criminal defense. *See Gerstein v. Pugh*, 420 U.S. 103, 108 n.9 (1975) (noting that federal district court properly declined to abstain from hearing bail-related issues because the plaintiffs could not have raised their claims about pretrial detention as part of a criminal defense); *United States v. Bynum*, 83 F. App'x 533, 534 (4th Cir. 2003) (affirming rejection of *Younger* abstention where state criminal proceedings did not provide an adequate opportunity to resolve revocation of supervised release).

---

[12] To be clear, even if the Court considered Plaintiffs' bail hearings to be the "relevant" proceedings for *Younger*, the relief requested in this case still would not amount to interference. As discussed earlier, *supra* Section III.A.1, Plaintiffs seek primarily to modify the pretrial release process in Prince George's County, not to change their individual bail determinations.

ii. *Burford* and *Colorado River* Abstention

The Judge Defendants also ask the Court to abstain based on two other doctrines, *Burford* and *Colorado River*.  Neither doctrine is properly invoked here.  *Burford* abstention applies only to "complex state administrative processes."  *Martin v. Stewart,* 499 F.3d 360, 364 (4th Cir. 2007).  As will be addressed momentarily in the context of "quasi-judicial" immunity, *infra* Section III.B.1.ii, the practices that Plaintiffs challenge do not meet that definition.  The pretrial release program in this case is an integral part of the decision-making of Maryland's judiciary, not an administrative function of the executive branch to which *Burford* abstention might apply.

The Judge Defendants' arguments as to *Colorado River* abstention are similarly unavailing.  *Colorado River* mandates abstention where the federal and state proceedings are "parallel" and where "exceptional circumstances" exist.  *Water Conservation District v. United States*, 424 U.S. 800, 813 (1976).   But this lawsuit is not parallel with the state criminal prosecutions.  The participants and issues are different: Defendants here (the County and the Judge Defendants) are not parties to the state criminal cases of any Plaintiffs.  Moreover, this is a civil suit challenging the constitutionality of the manner in which state court bail determinations are made, whereas the state proceedings consist of prosecutions of specific individuals for violations of specific state criminal laws.

Furthermore, none of the circumstances that the Judge Defendants cite to justify abstention are "exceptional."  The United States District Court for the District of Maryland is certainly not an inconvenient forum to adjudicate pretrial decisions that have taken place entirely within the state.  And, as discussed in relation to *Younger* abstention, *supra* Section III.A.2.i, criminal trials are not an adequate forum in which to raise constitutional claims pertaining to pretrial release.  In sum, *Colorado River* does not mandate abstention in this case.

**B. Remaining Parties and Remedies**

Having established that it has jurisdiction over this case and finding no reason to abstain, the Court considers, as this case moves forward, which parties and remedies belong in the case and which do not.

1. <u>Immunities and Remedies</u>

Both the Judge Defendants and the County claim to be immune from this lawsuit. The Judge Defendants assert sovereign immunity pursuant to the Eleventh Amendment and common law judicial immunity, and the County invokes "quasi-judicial" immunity.

i. The Judge Defendants

The Court considers the Judge Defendants first. Generally, judicial officers are entitled to absolute immunity from suit under both the Eleventh Amendment and the common law. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45 (1993); *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978). Neither type of immunity, however, protects judges from suits for prospective equitable relief. *Ex parte Young*, 209 U.S. 123, 155–56 (1908); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Lewis v. Blackburn*, 734 F.2d 1000, 1008 (4th Cir. 1984). Indeed, Plaintiffs' counsel at oral argument clearly trimmed the sails of their Complaint and conceded that, with regard to the Judge Defendants, they were only seeking prospective equitable relief (namely, changes in the County's pretrial release process), not money damages. But if that is so, then it is only the claims of Plaintiffs who are presently detained that could reasonably be affected by such a remedy; changes to the pretrial process would not affect Plaintiffs who have been released. Accordingly, all the Released Plaintiffs' claims as to the Judge Defendants will be dismissed; the Detained Plaintiffs' claims for prospective equitable relief as to the Judge Defendants, however, will remain.

15

The Court acknowledges the effort of the Judge Defendants to block even the Detained Plaintiffs' requests for prospective equitable relief from going forward by arguing that the relief Plaintiffs seek against them is actually "backward looking."  ECF No. 66-1 at 19 ("Plaintiffs' claims against the Judge Defendants are best characterized as a backwards-looking declaration of the Judge Defendants' purported wrongdoing.").  But there is no "backwards-looking" as to the Detained Plaintiffs; they remain in custody subject to possible future bail reviews to which a modified pretrial release process may well apply.  Moreover, they seek to represent a putative class of individuals who are either currently detained or who will be denied pretrial release in the future and who would also potentially be affected by a modified review process, *supra* Section III.B.3.  Accordingly, the Court **GRANTS** the Judge Defendants' Motion to Dismiss with respect to the Released Plaintiffs, but **DENIES** the Motion with respect to the Detained Plaintiffs.

ii.  The County

The County's immunity status presents a slightly different question.  It rightly does not invoke sovereign immunity.  *See, e.g.*, *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 296 (4th Cir. 1995).  Accordingly, at least initially, Plaintiffs claims against the County for damages as well as for equitable relief would seem to survive.  Nonetheless, the County maintains that it cannot be liable for damages because it is entitled to "quasi-judicial" immunity. The Court agrees.

Non-judicial officers can "adopt" judicial immunity if they perform "tasks so integral or intertwined with the judicial process that [they] are considered an arm of the judicial officer." *Kendrick v. Cavanaugh*, No. CIV. CCB-10-2207, 2011 WL 2837910, at *4 (D. Md. July 14, 2011) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)); *see Briscoe v. LaHue,* 460 U.S.

325, 335 (1983). In determining who is eligible for "quasi-judicial" immunity, a court focuses on the "nature of the function performed," not the title of the person to whom it attaches. *Traversa v. Ford*, 718 F. Supp. 2d 639, 646 (D. Md. 2010); *see Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (applying functional approach). Accordingly, in numerous instances pretrial release officers like the individuals implementing the County's pretrial release program have been granted "quasi-judicial" immunity "for their role in investigating, preparing, and submitting reports." *Williams v. United States*, No. CV DKC-21-537, 2021 WL 1720230, at *5 (D. Md. Apr. 30, 2021); *see Williams v. Hanlon*, No. CV RDB-19-550, 2019 WL 1597320, at *5 (D. Md. Apr. 15, 2019) (same); *see also Whitesel v. Sengenberger*, 222 F.3d 861, 868 (10th Cir. 2000) (granting "quasi-judicial" immunity to pretrial service officers designated by state judges to act as bond commissioners); *Staples v. Edwards*, 592 F. Supp. 763, 764 (E.D. Mo. 1984) (awarding "quasi-judicial" immunity to commissioner who declined to grant pretrial release).

In the present case, the Court finds that the County (through its individual employees acting in their official capacities) is entitled to assert "quasi-judicial" immunity because its (and their) involvement in the pretrial release process constitutes nothing less than the extension of a judicial function. "[T]he decision whether to order the pretrial release of a criminal defendant" is a critical part "of the judicial process." *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986) (granting "quasi-judicial" immunity to parole officer). Whatever may be determined with respect to the constitutionality of the pretrial release process under challenge, there can be no doubt that the County's personnel named here (all acting in their official capacity) have at all times been acting "as [ ] official aide[s]" to the Judge Defendants when they administer the program. *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (citing *Dennis v. Sparks*, 449 U.S. 24, 30 (1980)). And there can be no mistaking that the Judge Defendants' allegedly

improper delegation of pretrial decisions by to the County is the very heart of Plaintiffs' claims. Compl. ¶ 277 (noting a "historical principle that bail falls within the providence of the judiciary and may not be delegated absent explicit statutory authorization").

Plaintiffs suggest that that the County should not be afforded "quasi-judicial" immunity even if its employees are performing a judicial function because they are acting "in clear absence of all jurisdiction." *King v. Myers*, 973 F.2d 354, 357 (4th Cir. 1992) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). The Court is unpersuaded. Maryland law teaches that a judge "shall give consideration to the recommendation of any pretrial release services program." Md. Code Crim. Proc. § 4-216.1(f)(1). Thus, even if it were determined that the County, though its employees, exceeded its authority in one or more respects, it would still have to be said that it "acted within the general subject matter of [its] jurisdiction" granted to it by Maryland law. *Whitesel*, 222 F.3d at 868.

Because the County is entitled to "quasi-judicial" immunity, like the Judge Defendants it can only be liable to Plaintiffs for prospective equitable relief. Accordingly, all of the Plaintiffs' claims for money damages against the County will be **DISMISSED**.

Regarding Plaintiffs' request for future equitable relief, the Court's earlier analysis applies. The only Plaintiffs who remain eligible for such relief are those who remain in custody. As a result, the County's Motion to Dismiss is **GRANTED** in all respects as to the Released Plaintiffs but **DENIED** as to the claim for future equitable relief of the Detained Plaintiffs.

2. <u>Failure to State a Claim</u>

Defendants argue that the Complaint fails to state a claim for two reasons. First, the County asserts that Plaintiffs have no constitutional right to participate in what is an optional pretrial release program which they argue, by the way, already affords due process. But the

18

**JA1201**

County is focusing on the wrong right: Plaintiffs do not claim they are constitutionally entitled to participate in a pretrial release program (although they may indeed have such a right—a question that, at this juncture at least, the Court does not decide). Instead, Plaintiffs say that the existing process that they do opt into amounts to unlawful detention. They accuse Defendants of detaining "presumptively innocent people [ ] for weeks or months without any judicial finding that their detention is necessary to ensure community safety or their return to court." Pls.' Reply, ECF No. 71 at 13. Thus, on the face of the Complaint alone, Plaintiffs have plausibly pled a substantive due process interest (bodily liberty) as well as a procedural due process right that the current pretrial release process arguably violates. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (explaining that a court's job at the motion to dismiss stage is to evaluate the sufficiency of a complaint, not to decide the merits of the case).

Second, the Judge Defendants argue that Plaintiffs fail to state a claim pursuant to the Declaratory Judgment Act. Specifically, they say that no "real and substantial" dispute is involved because Plaintiffs' cases have been closed or transferred to non-Defendant judges. The Court is unconvinced: A declaratory judgment is appropriate anywhere it would "serve a useful purpose in clarifying and settling the legal relations in issue." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). Certainly, as to the Detained Plaintiffs and future participants in the pre-release program (remembering again that class action relief is sought), an order "clarifying and settling" their rights under the pretrial release program, more particularly due process protections, would resolve the claims pending before the Court, regardless of which state court judge might conduct particular bail reviews.

3.  Justiciability

Although justiciability is typically a threshold issue, the Court addresses it last because it is largely resolved by the Court's preceding conclusions.  Given that the Released Plaintiffs are being dismissed from this case on other grounds, the Court need not evaluate justiciability as it relates to them.

As for the Detained Plaintiffs, their claims against both the County and the Judge Defendants are justiciable.  While Defendants make three arguments against justiciability, none withstands scrutiny.  First, the County argues that the Detained Plaintiffs lack standing to bring this lawsuit because they have no right to participate in the pretrial release program and, thus, have suffered no harm.  But Plaintiffs, if they choose, most assuredly have the right to participate in the pretrial release program (what rights would they have if they did not participate?).  And, as just explained, *supra* Section III.B.2, Plaintiffs have asserted substantive and procedural due process rights that they allege have been impaired.

Second, the County asserts that the cases of the Detained Plaintiffs are not ripe because judges have not ordered Plaintiffs to be released, only that their circumstances be reviewed by the Pretrial Division for eligibility for possible release.  But, again, Plaintiffs' claims stem from a process that is allegedly constitutionally deficient, not from violations of any court order mandating immediate and unconditional release, *supra* Sections I.A n.4, III.B.2.

Third, the Judge Defendants argue that the Detained Plaintiffs' claims are moot because their state court cases have been reassigned to non-Defendant judges.  A claim is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citation omitted).  But that is not the case here.  Should the Detained Plaintiffs seek further bail review, they may find themselves

20

**JA1203**

in front of one or more of the Defendant Judges, all of whom are alleged to have unconstitutionally delegated release decisions to the Pretrial Division in the past and all of whom may be inclined to do so again.

Beyond that, the Defendant Judges may not evade review simply by passing the basic responsibility for setting bail on to another judge not presently before the Court.  Plaintiffs can fairly invoke the "inherently transitory" exception, which allows courts to exercise jurisdiction over claims that are likely to become moot before the court can reasonably be expected to rule on them.  *Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991).  Pretrial detention is a classic example of an inherently transitory claim.  *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975) ("Pretrial detention is by nature temporary…The claim, in short, is one that is distinctly 'capable of repetition, yet evading review.'"); *Baxley v. Jividen*, 508 F. Supp. 3d 28, 44 (S.D.W. Va. 2020) (noting that pretrial detention is "precisely" the type of situation for which the inherently transitory exception exists). And if this case proceeds as a class action, it makes sense to keep the current roster of Judge Defendants in place, since all of them might be subject to such remedy as the Court might order. *See Sosna v. Iowa*, 419 U.S. 393, 401 (1975) ("Although the controversy is no longer alive as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent.").

*        *        *

In Appendix A, the Court offers some non-binding suggestions as to areas of inquiry that might be helpful as the case goes forward.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that:

1. The Motions to Dismiss of the County (ECF No. 64) and of the Judge Defendants (ECF No. 66) **ARE GRANTED IN PART AND DENIED IN PART.**

    a. Both Motions are **GRANTED** as to all claims of the Released Plaintiffs Frazier, Hernandez, D.P., Davis, Sharp, and Worthington.

    b. Both Motions are **GRANTED** as to the money damages claims of the Detained Plaintiffs Butler, Williams, and Laguan-Salinas, but **DENIED** as to the claims of those Plaintiffs for prospective equitable relief.

2. Within thirty (30) days from the date of entry of this Order, counsel for the parties are **DIRECTED** to submit a Joint Proposed Scheduling Order to the Court that includes a timetable for discovery as well as a proposed briefing schedule to address, if necessary, Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) and Motion for Class Certification (ECF No. 4).

A separate Order will ISSUE.

January 24, 2023

PETER J. MESSITE

22

**JA1205**

**APPENDIX A**

Without intending to formally define or limit the field of inquiry, the Court believes it may be helpful to suggest to the parties some questions that might aid exploration of how the pretrial release process in Prince George's County might be reformed, if at all.  Thus, for example:

1.  Are some release considerations absolutely critical, while others are less so?  For example, in the case of Plaintiff Butler, state defense counsel suggested in a bail review that he was not recommended for release simply because the Pretrial Division determined that the charge against him, i.e., murder, was too serious.  ECF No. 83-4 at 57–59.  Is the nature of the charged offense alone a proper basis for the Pretrial Division (or even a Trial Judge) to deny pretrial release?  What relevance, if any, should the nature of the charge or charges against the defendant have on the pre-release decision?  Is the nature of the charge more appropriately taken into account in determining the individual's danger to the community and risk of flight if released?

2.  Insofar as a fixed address and a telephone are deemed critical for purposes of maintaining contact with a releasee, to what extent would the non-fulfillment of those factors automatically result in an individual not being released?  What is or should be done with respect to a "homeless" detainee?  Or one who cannot afford a telephone?  Can separate arrangements be made for them, e.g., placement in a halfway house?

3.  How many calls per day, per week, etc. should be made by the Pretrial Division to verify release considerations while the individual remains detained?  The transcript of the June 17, 2022 bail hearing for Plaintiff Laguan-Salinas suggests that the Pretrial Division took

**JA1206**

more than a month to review his case.  ECF No. 85-4 at 41, 46–47.  Is that appropriate?
Is it too long?  How soon after the Judge refers the defendant to the Pretrial Division
should the process of verification by the Pretrial Division begin?

4.  Should the Pretrial Division be required to report back to the Bail Judge with respect to
   its efforts to determine an individual's release status both when it has determined that a
   detainee should be released and when it has determined that the individual should be
   detained?  Should a form be used?  What information should the form contain?  With
   what level of specificity should the Pretrial Division's efforts be documented?  With what
   frequency should the form be sent to the judge?  Must the judge have to periodically sign
   off on the individual's release or his or her continued detention?

5.  Should defense counsel be given expedited attention by the Pretrial Division when calling
   to inquire as to the status of a client/detainee, e.g., should counsel receive a response
   within 24 hours?

6.  To what extent has limited manpower in the Pretrial Division been the reason that pretrial
   release decisions may be delayed?  Is that an appropriate justification for delaying release
   decisions?  What level of manpower would permit more expedited pretrial release
   decision-making?

                              *      *      *

     To repeat: these questions are meant to be suggestive only.  They may or may not be
deemed relevant and they certainly may be modified by the parties.  Ultimately, however, should
the Court determine that the pretrial release process is constitutionally deficient in one respect or
another, the Court will be looking to the parties to suggest what remedies, including what

enforcement mechanisms, they believe would be appropriate to satisfy constitutional requirements.

**JA1208**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT FRAZIER, *et al.*, individually and on
behalf of a class of similarly situated persons,

        Plaintiffs,

        v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

        Defendants.

Civil No. **22-1768 PJM**

## ORDER

Having considered the Motions to Dismiss of the County (ECF No. 64) and of the Judge
Defendants (ECF No. 66), Plaintiffs' joint opposition thereto (ECF No. 71), and the Replies of the
County (ECF No. 78) and of the Judge Defendants (ECF No. 77), it is, this 24 day of January
2023, for the reasons set forth in the accompanying Memorandum Opinion:

**ORDERED**

1. The Motions to Dismiss of the County (ECF No. 64) and of the Judge Defendants (ECF
   No. 66) **ARE GRANTED IN PART AND DENIED IN PART.**

   a. Both Motions are **GRANTED** as to all claims of the Released Plaintiffs Frazier,
      Hernandez, D.P., Davis, Sharp, and Worthington.

   b. Both Motions are **GRANTED** as to the money damages claims of the Detained
      Plaintiffs Butler, Williams, and Laguan-Salinas, but **DENIED** as to the claims
      of those Plaintiffs for prospective equitable relief.

2. Within thirty (30) days from the date of entry of this Order, counsel for the parties are **DIRECTED** to submit a Joint Proposed Scheduling Order to the Court that includes a timetable for discovery as well as a proposed briefing schedule to address, if necessary, Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) and Motion for Class Certification (ECF No. 4).

 

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**JA1210**