# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons,

*Plaintiffs-Appellants*

*v.*

PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
For the District of Maryland, Case No. 8:22-cv-01768

## JOINT APPENDIX
## VOLUME III of IV (JA1211–1540)

Jeremy D. Cutting
Sumayya Saleh
Jeffrey D. Stein
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
cody@civilrightscorps.org

Elizabeth R. Cruikshank
Mary B. McCord
William Powell
Seth Wayne
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY
   LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
erc56@georgetown.edu

*Counsel for Plaintiffs-Appellants*

Shelley L. Johnson
Andrew J. Murray
PRINCE GEORGE'S COUNTY
   OFFICE OF LAW
1301 McCormick Dr., Suite 4100
Largo, Maryland 20774
sljohnson@co.pg.md.us

*Counsel for County-Appellees*

Kathryn Elizabeth Hummel
Kevin M. Cox
James O. Spiker IV
OFFICE OF THE ATTORNEY
   GENERAL OF MARYLAND
200 St Paul Pl., 20th Floor
Baltimore, MD 21202
khummel@oag.state.md.us

*Counsel for Judge-Appellees*

(listing of counsel continued on next page)

Howard M. Shapiro
Matthew T. Martens
Sonika Data
Britany Riley-Swanbeck
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
howard.shapiro@wilmerhale.com

Robert L. Boone
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
robert.boone@wilmerhale.com

*Additional counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

## Volume I

Page

Docket Entries re Case No. 8:22-cv-01768.............................................JA1

Doc. 1: Complaint, filed July 19, 2022.................................................JA20

Exhibits to Plaintiffs' Motion for Preliminary Injunction, filed July 19, 2022

    Doc. 2-4:  Declaration of Peter Im ......................................... JA70
    Doc. 2-5:  Declaration of Allison Heldreth  ............................. JA82
    Doc. 2-6:  Case Documents of Leslie Sharp ........................... JA94
    Doc. 2-11: Declaration of Christina Meiring............................JA111
    Doc. 2-15: Pretrial Division Response to Maryland Public
        Information Act Request (May 2022) ......................... JA119
    Doc. 2-16: Pretrial Division Response to Maryland Public
        Information Act Request (March 2021)............................ JA130
    Doc. 2-22: Declaration of Jeffrey Campbell and Exhibit A .................... JA141
    Doc. 2-23: Declaration of Brandon Ruben and Exhibit A ...................... JA162
    Doc. 2-24: Declaration of Maria Hughes ................................. JA177
    Doc. 2-25: Declaration of Claire Glenn (2022) ........................ JA181
    Doc. 2-31: Declaration of Miramba Williams ........................ JA190
    Doc. 2-33: Declaration of Claire Glenn (2020) ........................ JA193
    Doc. 2-35: Case Documents of Donnell Davis ........................ JA197
    Doc. 2-36: Case Documents of Robert Frazier ......................... JA213
    Doc. 2-38: Case Documents of Anibal Hernandez ................... JA224
    Doc. 2-39: Declaration of Christopher Butler........................ JA226
    Doc. 2-43: Declaration of Allie Horwitz................................. JA228
    Doc. 2-48: Declaration of Elmer Laguan-Salinas ..................... JA233
    Doc. 2-49: Declaration of Adrienne Worthington ................... JA248

Doc. 59: County Defendants' Notice Regarding Named Plaintiffs,
    filed August 3, 2022 ..................................................JA256

    Doc. 59-1: Robert Frazier Court Records ............................... JA264
    Doc. 59-2: Anibal Hernandez Court Records .......................... JA274
    Doc. 59-3: D.P. Court Records ............................................ JA284
    Doc. 59-4: Christopher Butler Court Records ......................... JA293
    Doc. 59-5: Miramba Williams Court Records ......................... JA296
    Doc. 59-6: Donnell Davis Court Records ............................... JA307

    Doc. 59-7: Leslie Sharp Court Records ................................................. JA317

    Doc. 59-8: Elmer Laguan-Salinas Court Records ................................... JA334

    Doc. 59-9: Adrienne Worthington Court Records .................................. JA352

Doc. 60: County Defendants' Corrected Notice Regarding Named Plaintiffs,
    filed August 4, 2022 ...................................................................................... JA370

Exhibits to Defendants' Motion to Dismiss and Opposition to Motion for Preliminary
    Injunction, filed September 26, 2022

    Doc. 64-1: County Defendants' Memorandum of Law in Support ......... JA378

    Doc. 64-2: Affidavit of Jeffery Logan .................................................... JA415

    Doc. 64-3: Pretrial PowerPoint ............................................................. JA420

    Doc. 64-4: Levels of Pretrial Supervision ............................................. JA428

    Doc. 64-5: Pretrial Policy Manual ......................................................... JA437

    Doc. 64-6: Notification to Court ............................................................ JA458

Doc. 65: Affidavit of Corenne Labbé ................................................................ JA461

Doc. 66: Judge Defendants' Motion to Dismiss ................................................ JA463

    Doc. 66-3: Plaintiffs' Status – Summary Chart ..................................... JA465

    Doc. 66-4: Affidavit of Jeffrey Logan .................................................... JA467

    Doc. 66-5: Robert Frazier's Case Docket (District Court) ...................... JA473

    Doc. 66-6: Robert Frazier's Case Docket (Circuit Court) ....................... JA475

    Doc. 66-7: Anibal Hernandez's Case Docket (District Court) ................ JA479

    Doc. 66-8: Christopher Butler's Case Docket (District Court) ................ JA482

    Doc. 66-9: Christopher Butler's Case Docket (Circuit Court) ................ JA485

    Doc. 66-10: Miramba Williams's Case Docket (District Court) ............. JA491

    Doc. 66-11: Elmer Laguan-Salinas's Case Docket (District Court) ........ JA494

    Doc. 66-12: Elmer Laguan-Salinas's Case Docket (Circuit Court) .......... JA497

    Doc. 66-13: Transcript, Telephone Conference,
        August 17, 2022 (excerpts) ................................................. JA501

Exhibit to County Defendants' Supplement to their Motion to Dismiss,
    filed October 7, 2022

    Doc. 69-1: Affidavit of Guy Merritt ....................................................... JA517

Exhibits to Judge Defendants' Supplement to their Motion to Dismiss,
    filed October 7, 2022

Doc. 70-1: Affidavit of Guy Merritt.......................................................... JA518
Doc. 70-2: Plaintiffs' Status – Summary Chart ........................................ JA520

Exhibit to Plaintiffs' Reply in Support of Their Motion for Preliminary Injunction, filed October 10, 2022

Doc. 72-4: D. Owens Declaration ............................................................ JA522

Doc. 80: Order Granting Motion to Dismiss for Lack of Jurisdiction, filed October 25, 2022 ...................................................................... JA526

## Volume II

Exhibits to Plaintiffs' Notice of Filing Court Records, filed November 24, 2022

Doc. 83-1: Robert Frazier Court Records .................................................. JA528
Doc. 83-2: Anibal Hernandez Court Records ........................................... JA600
Doc. 83-4: Christopher Butler Court Records .......................................... JA616
Doc. 83-5: Miramba Williams Court Records ......................................... JA721
Doc. 83-6: Elmer Laguan-Salinas Court Records ................................... JA728
Doc. 83-7: Donnell Davis Court Records ................................................. JA754
Doc. 83-8: Leslie Sharp Court Records ................................................... JA769
Doc. 83-9: Adrienne Worthington Court Records ................................... JA782

Doc. 85: Plaintiffs' Supplemental Notice of Filing Court Records, filed December 16, 2022............................................................................ JA805

Doc. 85-1: Robert Frazier Supplemental Case Documents ...................... JA818
Doc. 85-2: Anibal Hernandez Supplemental Case Documents ................ JA823
Doc. 85-3: Miramba Williams Supplemental Case Documents ............... JA894
Doc. 85-4: Elmer Laguan-Salinas Supplemental Case Documents.......... JA927
Doc. 85-5: Donnell Davis Supplemental Case Documents ...................... JA985
Doc. 85-6: Leslie Sharp Supplemental Case Documents ...................... JA1017
Doc. 85-7: Adrienne Worthington Supplemental Case Documents ....... JA1043

Doc. 87: Plaintiffs' Second Supplemental Notice of Filing Court Records and Response to Defendants' Letter, filed January 12, 2023 ..................... JA1082

Doc. 87-3: Christopher Butler Hearing Transcript, October 28, 2021 ............................................................................... JA1141

Doc. 87-4: Leslie Sharp Hearing Transcript, June 14, 2021 .................JA1167

Doc. 90: Memorandum Opinion on Defendants' Motions to Dismiss .............JA1184

Doc. 91: Order on Defendants' Motions to Dismiss .......................................JA1209


**Volume III**

Doc. 92: Plaintiffs' Third Supplemental Notice of Filing Court Record, filed
February 1, 2023 .......................................................................................JA1211

Doc. 92-1: Christopher Butler Supplemental Case Documents..............JA1223
Doc. 92-2: Robert Frazier Transcript of Hearing, May 31, 2022 ..........JA1228

Doc. 97-2: Plaintiffs' Motion for Reconsideration Under Rule 54(b) .............JA1291

Exhibits to Judge Defendants' Motion for Clarification and Reconsideration, filed
February 21, 2023

Doc. 98-1: Plaintiffs' Status Updates......................................................JA1293
Doc. 98-2: Miramba Williams's Case Docket (Circuit Court) ...............JA1294
Doc. 98-3: Christopher Butler Trial Assignment...................................JA1298
Doc. 98-4: Miramba Williams Bail Order ..............................................JA1300

Doc. 104: Order Regarding Class Certification, Motions for Reconsideration,
Motion for Preliminary Injunction, filed March 3, 2023 ...........................JA1301

Doc. 108: Order Denying Motion for Preliminary Injunction,
filed March 14, 2023....................................................................................JA1303

Exhibit to Judge Defendants' Reply in Support of Motion for Clarification and
Reconsideration, filed March 27, 2023

Doc. 112-1: Plaintiffs' Status Updates....................................................JA1304

Doc. 118: Correspondence re: Letter to Hon. Peter J. Messitte,
filed April 7, 2023, with Attachments A & B .............................................JA1307

Exhibit to County's Status Report, filed April 28, 2023

Doc. 124-1: Revised Pretrial Release Level 4 SOP ...............................JA1312
Doc. 124-2: Pretrial Release Document....................................................JA1326
Doc. 124-3: Response to Appendix A Questions....................................JA1330

Doc. 128: Memorandum Opinion on Motions for Reconsideration ................JA1333

Doc. 129: Order on Motions for Reconsideration ..............................................JA1344

Doc. 137: Memorandum Order ........................................................................JA1346

Doc. 143: Memorandum Opinion Denying Plaintiff's Motion for
Partial Judgment or for Certification or Partial Appeal .............................JA1347

Doc. 144: Order Denying Plaintiff's Motion for Partial Judgment
or for Certification or Partial Appeal .........................................................JA1352

Doc. 147: Judge Defendants' Notice, excerpts .................................................JA1354

Doc. 149: Scheduling Order ............................................................................JA1358

Doc. 151: County Defendant's Answer..............................................................JA1363

Doc. 153: Judge Defendants' Answer, excerpts.................................................JA1381

Doc. 156: Memorandum Opinion Denying Plaintiffs' Motion
for Preliminary Injunction, filed November 22, 2023 .................................JA1385

Doc. 157: Order Denying Plaintiffs' Motion for Preliminary Injunction
and Setting Hearing ...................................................................................JA1395

Doc. 170-1: Transcript of Status Conference Held on 12/20/23 .......................JA1396

Doc. 173: County Defendant's Motion for Judgment on the Pleadings ...........JA1421

Doc. 173-1: Memorandum of Law in Support.......................................JA1423

Doc. 174: Judge Defendants' Motion for Judgment on the Pleadings..............JA1435

Doc. 174-1: Memorandum of Law in Support.......................................JA1437

Doc. 175: Judge Defendants' Motion to Quash ...................................................JA1456

Doc. 180: Order Granting Motion to Stay Discovery .......................................JA1458

Exhibit to County Defendant's Notice, filed January 30, 2024

     Doc. 183-1: Butler Sentencing Docs.........................................................JA1460

Doc. 184: Memorandum Regarding Deadlines .................................................JA1462

Doc. 185: Plaintiffs' Opposition to Judges' Motion to Quash .........................JA1463

     Doc. 185-1: Plaintiffs' First Interrogatories to Judge Defendants..........JA1489

Doc. 211: Memorandum Opinion Granting Motion to Quash and Motions for
     Judgment on the Pleadings ..........................................................................JA1498

Doc. 212: Order Granting Motion to Quash and Motions for
     Judgment on the Pleadings ..........................................................................JA1537

Doc. 213: Notice of Appeal .............................................................................JA1539

## Volume IV—Sealed

Exhibit to Plaintiffs' Notice of Filing Court Records, filed November 24, 2022

     Doc. 84: D.P. Court Records [FILED UNDER SEAL] .........................JA1541

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' THIRD SUPPLEMENTAL NOTICE OF FILING COURT RECORDS**

Plaintiffs submit the attached records regarding the Named Plaintiffs' state criminal court proceedings as a supplement to their prior submissions, Docs. 83, 85, 87. While the Court's Order on Defendants' Motions to Dismiss, Doc. 90, may render moot the Order to produce these records, Doc. 80, Plaintiffs submit them out of an abundance of caution. With this submission, Plaintiffs have supplied all of the requested records that they were able to obtain. For the Court's convenience, Plaintiffs have updated their index of records on the following pages of this Notice.

Additionally, for the Court's convenience, Plaintiffs' provide three factual updates relevant to the Court's Order on Defendants' Motions to Dismiss. First, Plaintiff Elmer Laguan-Salinas was released from the Prince George's County Jail on December 6, 2022, Doc. 87 at 9, and the State subsequently dropped all charges against him. Second, Plaintiff Robert Frazier is no longer awaiting trial; the State dropped all charges against him, too. Doc. 87 at 4. Finally, Plaintiff Christopher Butler's trial has been postponed until July 31, 2023. *See* Exhibit A at 5.

1

**JA1211**

<table>
<tr><td colspan="4" align="center">**Plaintiff: Robert Frazier**<br>Status: Released on August 26, 2022<br>District Court Case No. 3E00714640 (Closed, Case Indicted)<br>Circuit Court Case No. CT220860X (Closed, State Dropped All Charges)</td></tr>
</table>

| Date | Record Type | Judge | Page Nos. |
|------|-------------|-------|-----------|
| 05/31/22 | Pretrial Intake Sheet | -- | Doc. 83-1 at 2-3. |
| 05/31/22 | Initial Bail Review Transcript | District Judge Bryon Bereano (Defendant) | Exhibit B at 2-12. |
| 05/31/22 | Initial Bail Order | Judge Bereano | Doc. 85-1 at 2. |
| 06/06/22 | Motion for Bail Review | Notes by District Judge Robert Heffron (Defendant) | Doc. 83-1 at 4. |
| 06/15/22 | Motion for Bail Review | -- | Doc. 83-1 at 5-7. |
| 06/21/22 | Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | Exhibit B at 13-25. |
| 06/21/22 | Bail Order | Judge Clark-Edwards | Doc. 85-1 at 3. |
| 06/28/22 | Preliminary Hearing | District Judge Brian Denton (Defendant) | Exhibit B at 26-63. |
| 06/28/22 | Bail Order | Judge Denton | Doc. 85-1 at 4. |
| 07/08/22 | Motion for Bail Review | -- | Doc. 83-1 at 8-11. |

**JA1212**

| 07/14/22 | Order Setting Bail Review | Hearing never occurred | Doc. 85-1 at 5. |
| 07/18/22 | Motion for Bail Review (refiled in Circuit Court) | -- | Doc. 83-1 at 12-15. |
| 08/01/22 | Order | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-1 at 16. |
| 08/16/22 | Bail Review Transcript | Circuit Judge Lawrence Hill (non-Defendant) | Doc. 83-1 at 17-57. |
| 08/16/22 | Bail Order | Judge Hill | Doc. 83-1 at 58. |
| 08/25/22 | Bail Review Transcript | Judge Hill | Doc. 83-1 at 59-70. |
| 08/25/22 | Bail Order | Judge Hill | Doc. 83-1 at 71-72. |

| **Plaintiff: Anibal Hernandez**<br>Status: Released on July 25, 2022<br>District Court Case No. 5E00715391 (Closed, Information Filed)<br>Circuit Court Case No. CT221365X (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/24/22 | Pretrial Intake Sheet | -- | Doc. 83-2 at 2. |
| 06/24/22 | Initial Bail Review Transcript | District Judge LaKeecia Allen (Defendant) | Doc. 85-2 at 2-14. |
| 06/24/22 | Initial Bail Order | Judge Allen | Doc. 83-2 at 3. |

3

**JA1213**

| 07/12/22 | Motion to Show Cause | -- | Doc. 83-2 at 4-12. |
|---|---|---|---|
| 07/13/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-2 at 13-14. |
| 07/25/22 | Bail Review Transcript | District Judge Katina Steuart (non-Defendant) | Doc. 85-2 at 15-71. |
| 07/25/22 | Bail Order | Judge Steuart | Doc. 83-2 at 15-16. |

| **Plaintiff D.P.**<br>Status: Released on August 30, 2022<br>District Court Case No. 3E00715403 (Closed, Indicted)<br>Circuit Court Case No. CT221051X (Closed, Transferred to Juvenile Court) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/21/22 | Pretrial Intake Sheet | -- | Doc. 83-3 at 2. |
| 06/21/22 | Initial Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | Doc. 89 at 2-16. |
| 06/21/22 | Initial Bail Order | Judge Clark-Edwards | Doc. 83-3 at 3-4. |
| 06/28/22 | Bail Review Transcript | District Judge Brian Denton (Defendant) | Doc. 89 at 17-46. |
| 06/28/22 | Bail Order | Judge Denton | Doc. 83-3 at 5. |
| 07/28/22 | Motion for Bail Review | -- | Doc. 83-3 at 6-9. |

4

**JA1214**

| 07/28/22 | Hearing Transcript | | Doc. 89 at 47-58. |
|---|---|---|---|
| 08/01/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-3 at 10-11. |
| 08/17/22 | Bail Review Transcript | -- | Doc. 89 at 59-98. |
| 08/24/22 | Bail Review Transcript | Circuit Judge Wytonja Curry (non-Defendant) | The clerk stated that no recording/transcript exists. |
| 08/24/22 | Bail Order | Judge Curry | The clerk continues to deny Plaintiffs' counsel direct access to D.P.'s case file. Doc. 88 at 2. |

| **Plaintiff Christopher Butler**<br>Status: Detained since October 27, 2021<br>District Court Case No. 5E00704415 (Closed, Indicted)<br>Circuit Court Case No. CT211239X (Open, Awaiting Trial) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 10/28/21 | Pretrial Intake Sheet | -- | Doc. 83-4 at 2. |
| 10/28/21 | Initial Bail Review Transcript | District Judge Ada Clark-Edwards (Defendant) | Doc. 87-3 at 2-12. |
| 10/28/21 | Initial Bail Order | Judge Clark-Edwards | Doc. 83-4 at 3-5. |
| 10/29/21 | Bail Review Transcript | District Judge Clayton Aarons (non-Defendant). | Doc. 87-3 at 13-26. |

5

| 10/29/21 | Bail Order | Judge Aarons | Doc. 83-4 at 6-8. |
| 01/06/22 | Motion for Bail Review | -- | Doc. 83-4 at 9-10. |
| 01/18/22 | Order | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-4 at 11. |
| 02/18/22 | Bail Review Transcript | Circuit Judge Cathy Serrette (Defendant) | Doc. 83-4 at 12-46. |
| 02/18/22 | Bail Order | Judge Serrette | Doc. 83-4 at 47. |
| 06/29/22 | Status Hearing Transcript | Judge Serrette | Doc. 83-4 at 48-62. |
| 07/25/22 | Bail Review Transcript | Circuit Judge Krystal Alves (non-Defendant) | Doc. 83-4 at 63-67. |
| 07/26/22 | Bail Review Transcript | Judge Alves | Doc. 83-4 at 68-87. |
| 07/28/22 | Bail Review Transcript | Judge Alves | Doc. 83-4 at 88-105. |

| **Plaintiff Miramba Williams**<br>Status: Detained since July 1, 2022<br>District Court Case No. 2E00715535 (Closed, Indicted)<br>Circuit Court Case No. C-16-CR-22-000236 (Open, Awaiting Trial) | | | |
| --- | --- | --- | --- |
| **Date** | **Record Type** | **Judge** | **Page Nos.** |

**JA1216**

| 07/05/22 | Pretrial Intake Sheet | -- | Doc. 83-5 at 2. |
|---|---|---|---|
| 07/05/22 | Initial Bail Review Transcript | District Judge Gregory Powell (Defendant) | Doc. 85-3 at 2-9. |
| 07/05/22 | Bail Order | Judge Powell | Doc. 83-5 at 3-4. |
| 07/15/22 | Notice of Pretrial Ineligibility | -- | Doc. 83-5 at 5-6. |
| 08/12/22 | Bail Review Transcript | District Judge Patrice Lewis (non-Defendant) | Doc. 85-3 at 10-33. |
| 08/12/22 | Bail Order | Judge Lewis | Doc. 83-5 at 7. |

| **Plaintiff Elmer Laguan-Salinas**<br>Status: Released on December 6, 2022<br>District Court Case No. 1E00721379 (Closed, Indicted)<br>Circuit Court Case No. CT221040X (Closed, State Dropped All Charges) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 03/17/22 | Pretrial Intake Sheet | -- | Doc. 83-6 at 2-3. |
| 03/17/22 | Initial Bail Review Transcript | District Judge Stacey Cobb Smith (Defendant) | Doc. 85-4 at 2-15. |
| 03/17/22 | Initial Bail Order | Judge Cobb Smith | Doc. 83-6 at 4-5. |
| 04/15/22 | Bail Order | District Judge Scott Carrington | Doc. 83-6 at 6-7. |

7

|  |  | (Defendant) |  |
|---|---|---|---|
| 05/12/22 | Bail Review Transcript | District Judge John Bielec (Defendant) | Doc. 85-4 at 16-35. |
| 05/12/22 | Bail Order | Judge Bielec | Doc. 83-6 at 8-9. |
| 06/14/22 | Motion for Bail Review | -- | Doc. 83-6 at 10-11. |
| 06/17/22 | Bail Review Transcript | District Judge Patrice Lewis (non-Defendant) | Doc. 85-4 at 36-58. |
| 06/17/22 | Bail Order | Judge Lewis | Doc. 83-6 at 12-15. |
| 08/16/22 | Indictment | -- | Doc. 83-6 at 16-19. |
| 10/06/22 | Motion for Bail Review | Circuit Judge Nicholas Rattal (non-Defendant) | Doc. 83-6 at 20-21. |
| 11/10/22 | Bail Review Transcript | Judge Rattal | Doc. 83-6 at 22-26. |

| **Plaintiff Donnell Davis** Status: Case Closed District Court Case No. 3E00713044 (Not Guilty) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 10/09/20 | Pretrial Intake Sheet | -- | Doc. 83-7 at 2-3. |
| 10/09/20 | Initial Bail Review | District Judge Robert Heffron | Doc. 85-5 at 2-12. |

8

**JA1218**

|  | Transcript | (Defendant) |  |
|---|---|---|---|
| 10/09/20 | Initial Bail Order | Judge Heffron | Doc. 83-7 at 4-5. |
| 10/28/20 | Notice of Pretrial Ineligibility | -- | Doc. 83-7 at 6-7. |
| 11/09/20 | Preliminary Hearing Transcript | Judge Heffron | Doc. 85-5 at 13-19. |
| 11/09/20 | Bail Order | Judge Heffron | Doc. 83-7 at 8-9. |
| 12/03/20 | Notice of Pretrial Ineligibility | -- | Doc. 83-7 at 10-11. |
| 12/10/20 | Motion for Bail Review | -- | Doc. 83-7 at 12-13. |
| 12/16/20 | Bail Review Transcript | District Judge Stacey Cobb Smith (Defendant) | Doc. 85-5 at 20-32. |
| 12/16/20 | Bail Order | Judge Cobb Smith | Doc. 83-7 at 14-15. |

| **Plaintiff Leslie Sharp**<br>Status: Case Closed<br>District Court Case No. 3E00701207 (State Dropped All Charges) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 06/14/21 | Pretrial Intake Sheet | -- | Doc. 83-8 at 2-3. |

9

**JA1219**

| 06/14/21 | Initial Bail Review Transcript | District Judge Brian Denton (Defendant) | Doc. 87-4 at 2-17. |
|---|---|---|---|
| 06/14/21 | Initial Bail Order | Judge Denton | Doc. 59-7 at 13. |
| 06/16/21 | Motion for Bail Review | -- | Doc. 83-8 at 4-5. |
| 06/24/21 | Bail Review Transcript | District Judge Scott Carrington (Defendant) | Doc. 85-6 at 2-14. |
| 06/24/21 | Bail Order | Judge Carrington | Doc. 83-8 at 6-7. |
| 06/30/21 | Notice of Pretrial Ineligibility | -- | Doc. 83-8 at 8-9. |
| 07/07/21 | Motion for Bail Review | -- | Doc. 83-8 at 10-11. |
| 07/14/21 | Bail Review Transcript | District Judge Donnaka Varner Lewis (Defendant) | Doc. 85-6 at 15-25. |
| 07/14/21 | Bail Order | Judge Varner Lewis | Doc. 83-8 at 12-13. |

| **Plaintiff Adrienne Worthington**<br>Status: Case Closed<br>District Court Case No. 5E00705808 (State Dropped All Charges) | | | |
|---|---|---|---|
| **Date** | **Record Type** | **Judge** | **Page Nos.** |
| 12/27/21 | Initial Bail Review Transcript | District Judge Wennesa Bell Snoddy (non-Defendant) | Doc. 85-7 at 2-11. |

10

**JA1220**

| 12/27/21 | Initial Bail Order | Judge Bell Snoddy | Doc. 83-9 at 2-4. |
|----------|--------------------|--------------------|--------------------|
| 12/28/21 | Pretrial Intake Sheet | -- | Doc. 83-9 at 5-6. |
| 12/28/21 | Bail Review Transcript | District Judge John Bielec (Defendant) | Doc. 85-7 at 12-24. |
| 12/28/21 | Bail Order | Judge Bielec | Doc. 83-9 at 7-9. |
| 12/29/21 | Motion for Bail Review | -- | Doc. 83-9 at 10-12. |
| 01/24/22 | Trial Summary | -- | Doc. 83-9 at 13-14. |
| 02/01/22 | Bail Order | -- | Doc. 83-9 at 15. |
| 02/02/22 | Motion for Bail Review | -- | Doc. 83-9 at 16-18. |
| 02/09/22 | Bail Review Transcript | District Judge Robert Heffron (Defendant) | Doc. 85-7 at 25-40. |
| 02/09/22 | Bail Order | Judge Heffron | Doc. 83-9 at 19-23. |

**JA1221**

Respectfully submitted this 1st day of February, 2023.

| | |
|---|---|
| /s/ Ellora Thadaney Israni | Edward Williams (D. Md. Bar 20944) |
| Ellora Thadaney Israni* | Matthew Martens* |
| Ryan Downer* | Thomas Bredar (D. Md. Bar 21635) |
| Jeremy D. Cutting* | Ellen Connell* |
| CIVIL RIGHTS CORPS | Donna Farag* |
| 1601 Connecticut Ave. NW, Suite 800 | Ayana Williams* |
| Washington, D.C. 20009 | Sonika Data* |
| (202) 894-6132 | Yoseph Desta* |
| ellora@civilrightscorps.org | Britany Riley-Swanbeck (D. Md. Bar 21843) |
| | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| Seth Wayne* | 1875 Pennsylvania Ave. NW |
| INSTITUTE FOR CONSTITUTIONAL ADVOCACY | Washington, D.C. 20006 |
| AND PROTECTION | (202) 663-6487 |
| GEORGETOWN UNIVERSITY LAW CENTER | ed.williams@wilmerhale.com |
| 600 New Jersey Ave. NW | matthew.martens@wilmerhale.com |
| Washington, D.C. 20001 | |
| (202) 662-9042 | Robert Boone* |
| sw1098@georgetown.edu | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| | 7 World Trade Center |
| | 250 Greenwich Street |
| | New York, NY 10007 |
| | (212) 230-8800 |
| * admitted *pro hac vice* | robert.boone@wilmerhale.com |
| | |
| *Counsel for Plaintiffs* | Timothy Perla* |
| | WILMER CUTLER PICKERING |
| | HALE AND DORR LLP |
| | 60 State Street |
| | Boston, MA 02109 |
| | (617) 526-6000 |
| | timothy.perla@wilmerhale.com |

# EXHIBIT A

## Case Information

CT211239X | State of Maryland vs Christopher Daniel Butler

| Case Number | Court | Judicial Officer |
|---|---|---|
| CT211239X | Prince Georges Circuit Court | Alves, Krystal Quinn |
| File Date | Case Type | Case Status |
| 11/18/2021 | Criminal Indictment | Open |

## Events and Hearings

| |
|---|
| 11/18/2021 Criminal Indictment |
| 11/18/2021 Criminal Indictment |
| 11/18/2021 District Court Transmittal |
| 11/24/2021 Hearing Result |
| 11/24/2021 Motion - MD Rule 4-252 (Motions) |
| 11/29/2021 Notice |
| 11/30/2021 Statement of Charges |
| 11/30/2021 Commitment Pending Hearing |
| 12/10/2021 Hearing - Initial Appearance ▲ |
| 12/10/2021 Motion / Request / Demand for Discovery |
| 12/10/2021 Motion / Request / Demand for Discovery and Inspection |
| 12/10/2021 CC Letter State's Attorneys Office |
| 12/10/2021 CC Letter State's Attorneys Office |

**JA1224**

| 12/10/2021 Answer |
| 12/10/2021 Opposition |
| 12/10/2021 Opposition |
| 12/10/2021 Notice Filed |
| 12/10/2021 Notice Filed |
| 12/10/2021 Notice/Designation - Expert Witness(es) |
| 12/10/2021 Notice/Designation - Expert Witness(es) |
| 12/14/2021 Memorandum - SAO |
| 12/14/2021 Demand for Bill of Particulars |
| 12/14/2021 Line |
| 12/27/2021 Opposition |
| 01/06/2022 Motion |
| 01/31/2022 Notice |
| 02/01/2022 Court Order Entered |
| 02/01/2022 Court Order Entered |
| 02/18/2022 Hearing - Bail/ Bond Review ▲ |
| 02/18/2022 Hearing - Status ▲ |
| 02/18/2022 Hearing Result |
| 02/18/2022 Hearing Result |
| 02/18/2022 Hearing Result |
| 02/18/2022 See Open Court Proceedings |
| 02/18/2022 See Open Court Proceedings |
| 02/22/2022 Notice |
| 03/17/2022 Notice Filed |
| 06/29/2022 Hearing - Motion ▲ |

**JA1225**

| 06/29/2022 Hearing Result |
| 06/29/2022 See Open Court Proceedings |
| 06/30/2022 Line |
| 07/13/2022 Court Order Entered |
| 07/22/2022 Court Order Entered |
| 07/25/2022 Hearing - Motion ▲ |
| 07/25/2022 Hearing Result |
| 07/25/2022 See Open Court Proceedings |
| 07/26/2022 Hearing - Bail/ Bond Review ▲ |
| 07/26/2022 Hearing - Motion ▲ |
| 07/26/2022 Hearing Result |
| 07/26/2022 Hearing Result |
| 07/26/2022 See Open Court Proceedings |
| 07/28/2022 Hearing ▲ |
| 07/28/2022 Hearing Result |
| 07/28/2022 See Open Court Proceedings |
| 07/29/2022 Notice |
| 08/16/2022 Notice Filed |
| 08/22/2022 Motion - Compel |
| 08/22/2022 Response/Reply |
| 09/19/2022 Court Order Entered |
| 10/16/2022 Converted Event Type |
| 10/19/2022 Motion |
| 10/28/2022 Order ▲ |
| 10/31/2022 Writ /Summons/Pleading - Electronic Service |

**JA1226**

| 01/05/2023 Hearing - Motion ▲ |
| 01/05/2023 Motion - Postponement/Continuance |
| 01/05/2023 Hearing Sheet ▲ |
| 01/06/2023 Motion |
| 01/11/2023 Order ▲ |
| 01/18/2023 Writ /Summons/Pleading - Electronic Service |
| 01/24/2023 Order ▲ |
| 01/26/2023 Writ /Summons/Pleading - Electronic Service |
| 01/27/2023 Writ /Summons/Pleading - Electronic Service |
| 01/27/2023 Writ /Summons/Pleading - Electronic Service |

07/31/2023 Trial - Jury ▼

Judicial Officer
**Alves, Krystal Quinn**

Hearing Time
**9:00 AM**

**JA1227**

# EXHIBIT B



# Transcript of Hearing in Re Robert Frazier

**Date:** May 31, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10            Bond Hearing in Re: Robert Frazier
11                 Case No. 3E00714640
12                    May 31, 2022
13
14
15
16
17
18
19
20   Job No.:  478437
21   Pages 1 - 7
22   Transcribed by:  Jackie Scheer
```

```
1                P R O C E E D I N G S

2          THE CLERK:  Robert Frazier, 3E714640,

3    related traffic.

4          FEMALE VOICE:  For the record,

5    (incomprehensible) Office of the Public

6    Defender (incomprehensible) on behalf of

7    Mr. Frazier.

8          THE COURT:  Okay.  I'll hear from you.

9          FEMALE VOICE:  I do believe a preliminary

10   hearing's already set in this case.

11         Mr. Frazier, if that's you, could you give

12   us a thumbs up, please?

13         Excellent.  All right.  Your Honor, it's

14   my understanding that Mr. Frazier is currently

15   being held without bond under Maryland code

16   5202 F.  At this time we would be asking for a

17   secured bond of no more than $500 because that

18   is what his family has indicated that they are

19   willing to pay.  Mr. Frazier is -- is 40 years

20   old and he currently works in construction

21   labor.  His fiance, Erica, is here, share

22   children with his fiance, Erica Fishell
```

1   (phonetic).  There's technically three children

2   and one granddaughter.  They did have four

3   children.  Unfortunately I did the supporting

4   his fiance through the death of their infant

5   child -- the recent death of their infant

6   child.

7       I will find it important to note that

8   Mr. Frazier's mother is very, very ill.  She

9   has late (incomprehensible) cancer.

10  Mr. Frazier does assist in taking care of her

11  but it's gotten to the point where she has been

12  moved from a nursing home to the family home

13  because she wants to and I believe it's

14  Mr. Frazier quoting his mother, as she wants to

15  die around family.  I also received notice from

16  his sister when I spoke to her that his mother

17  was recently placed on a breathing machine, so

18  needless to say she's not long for this world.

19      Mr. Frazier only has one failure to appear

20  and the vast majority of his criminal history

21  is from the early 2000s.  And in reading

22  related the charges, there's nothing to

1   indicate anything other than a light,

2   cooperative, and compliant with law enforcement

3   instruction.  And so to allow him to be with

4   his family during this very trying time, we

5   would request either an unsecured personal bond

6   or a secured bond of no more than $500.

7        THE COURT:  Okay.  And are you here to

8   speak on his behalf?

9        MR. PINKNEY:  Can't hear that good.

10       THE COURT:  Sir, are you here to speak on

11  his behalf?

12       MALE VOICE:  Yeah.

13       THE COURT:  And your name, please?

14       MALE VOICE:  Robert Pinkney (phonetic).

15       THE COURT:  Okay.  I'll hear from you,

16  sir.  What would you like me to know?  What did

17  you want me to know, sir, about Mr. Frazier?

18       MALE VOICE:  I don't know.  Here's his

19  wife.

20       THE COURT:  Ma'am, are you here to speak

21  on behalf of Mr. Frazier?

22       FEMALE VOICE:  Yes.

1    THE COURT:  All right.  What would you

2 like me to know, ma'am?

3    FEMALE VOICE:  I just wanted to say that

4 I've provided an address in D.C. that he'll be

5 staying at.  And I guess that's it.

6    THE COURT:  Okay.  I'm going to continue

7 to hold Mr. Frazier without bond.  Pretrial

8 release level four is an option.  The fact that

9 he's got a gun hidden in the car, obliterated

10 serial number -- allegedly, he's innocent until

11 proven guilty -- but again, with the gun

12 violence going on in this community, that --

13 that warrants a no bond.  That's a danger to

14 the community and there's nothing else that

15 would ensure the safety of the community

16 without him being held without bond.  Again,

17 pretrial release level four.  If he does get

18 out, he's not to own, possess, or be near any

19 firearms.

20    Madame Public Defender, you had said

21 June 28th, 8:45 for the preliminary hearing?

22    FEMALE VOICE:  Yeah, I believe that that's

1    correct.

2          THE COURT:  Yes.

3          FEMALE VOICE:  Your Honor, given the

4    familial circumstance, would you be open to

5    ordering pretrial level four as opposed to

6    offering?

7          THE COURT:  No.

8          (The recording was concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2          I, Jackie A. Scheer, do hereby certify

 3    that the foregoing transcript is a true and correct

 4    record of the recorded proceedings; that said

 5    proceedings were transcribed to the best of my

 6    ability from the audio recording and supporting

 7    information; and that I am neither counsel for,

 8    related to, nor employed by any of the parties to

 9    this case and have no interest, financial or

10    otherwise in its outcome.

11

12

13

14

15   _____

16          JACKIE A. SCHEER

17          JANUARY 24, 2023

18

19

20

21

22
```

| A | | | |
|---|---|---|---|

**A**

**ability**
7:6
**about**
4:17
**address**
5:4
**again**
5:11, 5:16
**all**
2:13, 5:1
**allegedly**
5:10
**allow**
4:3
**already**
2:10
**also**
3:15
**any**
5:18, 7:8
**anything**
4:1
**appear**
3:19
**around**
3:15
**asking**
2:16
**assist**
3:10
**audio**
7:6

**B**

**because**
2:17, 3:13
**been**
3:11
**behalf**
2:6, 4:8, 4:11,
4:21
**being**
2:15, 5:16
**believe**
2:9, 3:13, 5:22
**best**
7:5

**bond**
1:10, 2:15,
2:17, 4:5, 4:6,
5:7, 5:13, 5:16
**breathing**
3:17

**C**

**can't**
4:9
**cancer**
3:9
**car**
5:9
**care**
3:10
**case**
1:11, 2:10, 7:9
**certificate**
7:1
**certify**
7:2
**charges**
3:22
**child**
3:5, 3:6
**children**
2:22, 3:1, 3:3
**circumstance**
6:4
**clerk**
2:2
**code**
2:15
**community**
5:12, 5:14,
5:15
**compliant**
4:2
**concluded**
6:8
**construction**
2:20
**continue**
5:6
**cooperative**
4:2
**correct**
6:1, 7:3

**could**
2:11
**counsel**
7:7
**court**
2:8, 4:7, 4:10,
4:13, 4:15,
4:20, 5:1, 5:6,
6:2, 6:7
**criminal**
3:20
**currently**
2:14, 2:20

**D**

**danger**
5:13
**death**
3:4, 3:5
**defender**
2:6, 5:20
**die**
3:15
**during**
4:4

**E**

**early**
3:21
**either**
4:5
**else**
5:14
**employed**
7:8
**enforcement**
4:2
**ensure**
5:15
**erica**
2:21, 2:22
**excellent**
2:13

**F**

**fact**
5:8
**failure**
3:19

**familial**
6:4
**family**
2:18, 3:12,
3:15, 4:4
**female**
2:4, 2:9, 4:22,
5:3, 5:22, 6:3
**fiance**
2:21, 2:22, 3:4
**financial**
7:9
**find**
3:7
**firearms**
5:19
**fishell**
2:22
**foregoing**
7:3
**four**
3:2, 5:8, 5:17,
6:5
**frazier**
1:10, 2:2, 2:7,
2:11, 2:14,
2:19, 3:10,
3:14, 3:19,
4:17, 4:21, 5:7
**frazier's**
3:8

**G**

**give**
2:11
**given**
6:3
**going**
5:6, 5:12
**good**
4:9
**gotten**
3:11
**granddaughter**
3:2
**guess**
5:5
**guilty**
5:11

| | | | |
|---|---|---|---|
| **gun** | **instruction** | **more** | **ordering** |
| 5:9, 5:11 | 4:3 | 2:17, 4:6 | 6:5 |
| **H** | **interest** | **mother** | **other** |
| **he'll** | 7:9 | 3:8, 3:14, 3:16 | 4:1 |
| 5:4 | **J** | **moved** | **otherwise** |
| **hear** | **jackie** | 3:12 | 7:10 |
| 2:8, 4:9, 4:15 | 1:22, 7:2, 7:16 | **N** | **out** |
| **hearing** | **january** | **name** | 5:18 |
| 1:10, 5:21 | 7:17 | 4:13 | **outcome** |
| **hearing's** | **job** | **near** | 7:10 |
| 2:10 | 1:20 | 5:18 | **own** |
| **held** | **june** | **needless** | 5:18 |
| 2:15, 5:16 | 5:21 | 3:18 | **P** |
| **here** | **K** | **neither** | **pages** |
| 2:21, 4:7, | **know** | 7:7 | 1:21 |
| 4:10, 4:20 | 4:16, 4:17, | **note** | **parties** |
| **here's** | 4:18, 5:2 | 3:7 | 7:8 |
| 4:18 | **L** | **nothing** | **pay** |
| **hereby** | **labor** | 3:22, 5:14 | 2:19 |
| 7:2 | 2:21 | **notice** | **personal** |
| **hidden** | **late** | 3:15 | 4:5 |
| 5:9 | 3:9 | **number** | **phonetic** |
| **history** | **law** | 5:10 | 3:1, 4:14 |
| 3:20 | 4:2 | **nursing** | **pinkney** |
| **hold** | **level** | 3:12 | 4:9, 4:14 |
| 5:7 | 5:8, 5:17, 6:5 | **O** | **placed** |
| **home** | **light** | **obliterated** | 3:17 |
| 3:12 | 4:1 | 5:9 | **please** |
| **honor** | **long** | **offering** | 2:12, 4:13 |
| 2:13, 6:3 | 3:18 | 6:6 | **point** |
| **I** | **M** | **office** | 3:11 |
| **ill** | **ma'am** | 2:5 | **possess** |
| 3:8 | 4:20, 5:2 | **okay** | 5:18 |
| **important** | **machine** | 2:8, 4:7, 4:15, | **preliminary** |
| 3:7 | 3:17 | 5:6 | 2:9, 5:21 |
| **incomprehensible** | **madame** | **old** | **pretrial** |
| 2:5, 2:6, 3:9 | 5:20 | 2:20 | 5:7, 5:17, 6:5 |
| **indicate** | **majority** | **one** | **proceedings** |
| 4:1 | 3:20 | 3:2, 3:19 | 7:4, 7:5 |
| **indicated** | **male** | **only** | **proven** |
| 2:18 | 4:12, 4:14, | 3:19 | 5:11 |
| **infant** | 4:18 | **open** | **provided** |
| 3:4, 3:5 | **maryland** | 6:4 | 5:4 |
| **information** | 2:15 | **opposed** | **public** |
| 7:7 | | 6:5 | 2:5, 5:20 |
| **innocent** | | **option** | **Q** |
| 5:10 | | 5:8 | **quoting** |
| | | | 3:14 |

**R**

reading
3:21
received
3:15
recent
3:5
recently
3:17
record
2:4, 7:4
recorded
7:4
recording
6:8, 7:6
related
2:3, 3:22, 7:8
release
5:8, 5:17
request
4:5
right
2:13, 5:1
robert
1:10, 2:2, 4:14

**S**

safety
5:15
said
5:20, 7:4
say
3:18, 5:3
scheer
1:22, 7:2, 7:16
secured
2:17, 4:6
serial
5:10
set
2:10
share
2:21
signature-b7fzp
7:14
sir
4:10, 4:16,

4:17
sister
3:16
speak
4:8, 4:10, 4:20
spoke
3:16
staying
5:5
supporting
3:3, 7:6

**T**

taking
3:10
technically
3:1
th
5:21
three
3:1
through
3:4
thumbs
2:12
time
2:16, 4:4
traffic
2:3
transcribed
1:22, 7:5
transcriber
7:1
transcript
7:3
true
7:3
trying
4:4

**U**

under
2:15
understanding
2:14
unfortunately
3:3
unsecured
4:5

until
5:10

**V**

vast
3:20
violence
5:12
voice
2:4, 2:9, 4:12,
4:14, 4:18,
4:22, 5:3, 5:22,
6:3

**W**

want
4:17
wanted
5:3
wants
3:13, 3:14
warrants
5:13
wife
4:19
willing
2:19
without
2:15, 5:7, 5:16
works
2:20
world
3:18

**Y**

yeah
4:12, 5:22
years
2:19

**$**

$500
2:17, 4:6

**0**

00714640
1:11

**2**

2000
3:21

2022
1:12
2023
7:17
24
7:17
28
5:21

**3**

31
1:12
3e
1:11, 2:2

**4**

40
2:19
45
5:21
478437
1:20

**5**

5202
2:16

**7**

714640
2:2

**8**

8
5:21



# Transcript of Hearing in Re Robert Frazier

**Date:** June 21, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6

7

8

9

10              Bond Hearing in Re: Robert Frazier

11                  Case No. 3E00714640

12                    June 21, 2022

13

14

15

16

17

18

19

20    Job No.:  478437

21    Pages: 1 - 8

22    Transcribed by:  Jackie Scheer

```
 1              P R O C E E D I N G S

 2         THE CLERK:  Frazier.  Okay.  All right.

 3    Calling Robert Frazier.  3E714640.

 4         MR. IM:  Morning again, Your Honor, Peter

 5    Im, assistant public defender, standing in for

 6    my colleague, Mr. Greg Campbell, on behalf of

 7    Mr. Frazier.  We're here on Mr. Campbell's bond

 8    review motion.

 9         THE COURT:  Okay.  Mr. Stewart, I think

10    our court reporter is trying to communicate

11    with you via chat if you can check your chat

12    messages.

13         Okay.  We're here for the preliminary

14    hearing and the review?

15         MR. IM:  Your Honor, I -- I believe the

16    preliminary hearing is scheduled for a week

17    from today.

18         THE COURT:  That's correct, I'm sorry.

19    June 28th, that's correct.

20         All right.  And I'll hear from you with

21    respect to his bond amount.

22         MR. IM:  Thank you, Your Honor.  We're
```

1    asking that you release Mr. Frazier today, Your

2    Honor, and -- and Mr. Frazier's in -- in a bit

3    of a unique situation.  I'll explain.  He

4    currently has a pretrial option at level four

5    but pretrial will not release him because of

6    their policy that they won't release anyone

7    with a detainer.  And, Your Honor, while

8    that -- that policy may make sense, he has a

9    Virginia detainer for an alluding charge.  It's

10   a traffic charge from Arlington.  It's

11   something that, you know, if he were arrested

12   or if he had a warrant that in our jurisdiction

13   he would not be held.  Your Honor, his arrest

14   warrant, it does not come from a failure to

15   appear.  And Mr. Campbell has confirmed with

16   the police department over in Arlington that

17   the underlying charge is from October 2019.

18        Your Honor, (incomprehensible) was working

19   with the attorneys in Virginia to try to get

20   that recalled.  However, (incomprehensible) to

21   do over there, apparently, other

22   (incomprehensible) possible with the arrest

1   warrant.

2        Your Honor, Mr. Frazier is 40 years old,

3   he has three children, two of whom are under 18

4   and it's a lot of hardships.  His stepmother

5   was mauled to death by a dog three years ago.

6   His father later committed suicide.  Your

7   Honor, at the initial bond review hearing the

8   bond attorney incomprehensible) to the court

9   that (incomprehensible) mother was deathly ill

10  and unfortunately she has passed away in the

11  last few weeks, and Mr. Frazier would like to

12  be out with his family during this difficult

13  time.  He's certainly fine with an ankle

14  monitor.  And so but he's asking that he be

15  released on an unsecured bond in order to turn

16  himself in (incomprehensible), and that after

17  that, he can turn himself in back here,

18  (incomprehensible).

19       Your Honor, I know that's a little bit

20  unconventional but that's what we're asking

21  for.  We're asking that he be released and can

22  take care of that Virginia warrant.  We're

1  actually, with an unsecured bond, I supposed he

2  could be transported over to Virginia and then

3  he would come back here and -- and be on

4  monitoring, but that way he could still be with

5  his family during this difficult time.

6       THE COURT:  All right.  Mr. Stewart?

7       MR. STEWART:  Thank you, Your Honor.  Your

8  Honor, the State would object to any

9  modification to bond.  First, the defendant is

10 in possession of a firearm to which he admitted

11 was his.  He is prohibited by law from

12 possessing a firearm.  He's indicated the

13 statement of probable cause based upon one,

14 two, three, four, five, five prior convictions.

15 Unlawful taking motor vehicle, which is a

16 felony.  UUB, which carries a minimum two

17 years.  Armed robbery, along with possession of

18 a firearm.  Assault on a police officer.  The

19 unlawful possession of a firearm occurred in

20 the District of Columbia in 2019 as well as

21 assault on police officer in 2019.

22      The State does believe he has demonstrated

1   he is a danger to the community and should

2   remain held on bond.

3       Furthermore on the second issue, pretrial

4   cannot take him now, seeing that there is an

5   active detainment holding him, therefore, the

6   jail cannot physically release somebody until

7   the detainer that is lodged against him is

8   dealt with.  Thank you.

9       THE COURT:  Okay.  Anything else, Counsel?

10      MR. IM:  Your Honor, as -- as to the

11  detainer point, I would just, again, for the

12  record that it's for a traffic charge.  It says

13  that it's extradition from surrounding states,

14  and so if Virginia releases him, then the

15  court -- if Your Honor releases him today and

16  tranported him (incomprehensible) and then come

17  back and turn himself in on private

18  (incomprehensible).  That's what we're asking.

19      THE COURT:  I'm not -- I'm not going to do

20  that.  I think that he's a danger and I'm not

21  going to release him to then just turn himself

22  back in.  That's -- I'm not going to do that.

1       MR. IM:  In that case, Your Honor, would

2   Your Honor consider ordering pretrial release?

3       THE COURT:  I will do that.

4       All right.  Defendant is not to own or

5   possess any firearms or ammunition.  All other

6   conditions remain the same.  Thank you.

7       MR. IM:  Thank you, Your Honor.

8       And, Mr. Frazier, please give Mr. Campbell

9   a call.  I'll let him know what happened today.

10      (The recording was concluded.)

11

12

13

14

15

16

17

18

19

20

21

22

1                CERTIFICATE OF TRANSCRIBER

2         I, Jackie A. Scheer, do hereby certify

3    that the foregoing transcript is a true and correct

4    record of the recorded proceedings; that said

5    proceedings were transcribed to the best of my

6    ability from the audio recording and supporting

7    information; and that I am neither counsel for,

8    related to, nor employed by any of the parties to

9    this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14

15   _____

16        JACKIE A. SCHEER

17        JANUARY 24, 2023

18

19

20

21

22

## A

**ability**
8:6
**active**
6:5
**actually**
5:1
**admitted**
5:10
**after**
4:16
**again**
2:4, 6:11
**against**
6:7
**ago**
4:5
**all**
2:2, 2:20, 5:6,
7:4, 7:5
**alluding**
3:9
**along**
5:17
**ammunition**
7:5
**amount**
2:21
**ankle**
4:13
**any**
5:8, 7:5, 8:8
**anyone**
3:6
**anything**
6:9
**apparently**
3:21
**appear**
3:15
**arlington**
3:10, 3:16
**armed**
5:17
**arrest**
3:13, 3:22
**arrested**
3:11

**asking**
3:1, 4:14,
4:20, 4:21, 6:18
**assault**
5:18, 5:21
**assistant**
2:5
**attorney**
4:8
**attorneys**
3:19
**audio**
8:6
**away**
4:10

## B

**back**
4:17, 5:3,
6:17, 6:22
**based**
5:13
**because**
3:5
**behalf**
2:6
**believe**
2:15, 5:22
**best**
8:5
**bit**
3:2, 4:19
**bond**
1:10, 2:7,
2:21, 4:7, 4:8,
4:15, 5:1, 5:9,
6:2

## C

**call**
7:9
**calling**
2:3
**campbell**
2:6, 3:15, 7:8
**campbell's**
2:7
**cannot**
6:4, 6:6

**care**
4:22
**carries**
5:16
**case**
1:11, 7:1, 8:9
**cause**
5:13
**certainly**
4:13
**certificate**
8:1
**certify**
8:2
**charge**
3:9, 3:10,
3:17, 6:12
**chat**
2:11
**check**
2:11
**children**
4:3
**clerk**
2:2
**colleague**
2:6
**columbia**
5:20
**come**
3:14, 5:3, 6:16
**committed**
4:6
**communicate**
2:10
**community**
6:1
**concluded**
7:10
**conditions**
7:6
**confirmed**
3:15
**consider**
7:2
**convictions**
5:14
**correct**
2:18, 2:19, 8:3

**could**
5:2, 5:4
**counsel**
6:9, 8:7
**court**
2:9, 2:10,
2:18, 4:8, 5:6,
6:9, 6:15, 6:19,
7:3
**currently**
3:4

## D

**danger**
6:1, 6:20
**dealt**
6:8
**death**
4:5
**deathly**
4:9
**defendant**
5:9, 7:4
**defender**
2:5
**demonstrated**
5:22
**department**
3:16
**detainer**
3:7, 3:9, 6:7,
6:11
**detainment**
6:5
**difficult**
4:12, 5:5
**district**
5:20
**dog**
4:5
**during**
4:12, 5:5

## E

**else**
6:9
**employed**
8:8

| | | | |
|---|---|---|---|
| **explain** | **greg** | **information** | **messages** |
| 3:3 | 2:6 | 8:7 | 2:12 |
| **extradition** | **H** | **initial** | **minimum** |
| 6:13 | **happened** | 4:7 | 5:16 |
| **F** | 7:9 | **interest** | **modification** |
| **failure** | **hardships** | 8:9 | 5:9 |
| 3:14 | 4:4 | **issue** | **monitor** |
| **family** | **hear** | 6:3 | 4:14 |
| 4:12, 5:5 | 2:20 | **J** | **monitoring** |
| **father** | **hearing** | **jackie** | 5:4 |
| 4:6 | 1:10, 2:14, | 1:22, 8:2, 8:16 | **morning** |
| **felony** | 2:16, 4:7 | **jail** | 2:4 |
| 5:16 | **held** | 6:6 | **mother** |
| **few** | 3:13, 6:2 | **january** | 4:9 |
| 4:11 | **here** | 8:17 | **motion** |
| **financial** | 2:7, 2:13, | **job** | 2:8 |
| 8:9 | 4:17, 5:3 | 1:20 | **motor** |
| **fine** | **hereby** | **june** | 5:15 |
| 4:13 | 8:2 | 1:12, 2:19 | **N** |
| **firearm** | **himself** | **jurisdiction** | **neither** |
| 5:10, 5:12, | 4:16, 4:17, | 3:12 | 8:7 |
| 5:18, 5:19 | 6:17, 6:21 | **K** | **O** |
| **firearms** | **holding** | **know** | **object** |
| 7:5 | 6:5 | 3:11, 4:19, 7:9 | 5:8 |
| **first** | **honor** | **L** | **occurred** |
| 5:9 | 2:4, 2:15, | **last** | 5:19 |
| **five** | 2:22, 3:2, 3:7, | 4:11 | **october** |
| 5:14 | 3:13, 3:18, 4:2, | **later** | 3:17 |
| **foregoing** | 4:7, 4:19, 5:7, | 4:6 | **officer** |
| 8:3 | 5:8, 6:10, 6:15, | **law** | 5:18, 5:21 |
| **four** | 7:1, 7:2, 7:7 | 5:11 | **okay** |
| 3:4, 5:14 | **however** | **level** | 2:2, 2:9, 2:13, |
| **frazier** | 3:20 | 3:4 | 6:9 |
| 1:10, 2:2, 2:3, | **I** | **little** | **old** |
| 2:7, 3:1, 4:2, | **ill** | 4:19 | 4:2 |
| 4:11, 7:8 | 4:9 | **lodged** | **one** |
| **frazier's** | **im** | 6:7 | 5:13 |
| 3:2 | 2:4, 2:5, 2:15, | **lot** | **option** |
| **furthermore** | 2:22, 6:10, 7:1, | 4:4 | 3:4 |
| 6:3 | 7:7 | **M** | **order** |
| **G** | **incomprehensible** | **make** | 4:15 |
| **give** | 3:18, 3:20, | 3:8 | **ordering** |
| 7:8 | 3:22, 4:8, 4:9, | **mauled** | 7:2 |
| **going** | 4:16, 4:18, | 4:5 | **other** |
| 6:19, 6:21, | 6:16, 6:18 | | 3:21, 7:5 |
| 6:22 | **indicated** | | **otherwise** |
| | 5:12 | | 8:10 |

out
4:12
outcome
8:10
over
3:16, 3:21, 5:2
own
7:4

**P**

pages
1:21
parties
8:8
passed
4:10
peter
2:4
physically
6:6
please
7:8
point
6:11
police
3:16, 5:18,
5:21
policy
3:6, 3:8
possess
7:5
possessing
5:12
possession
5:10, 5:17,
5:19
possible
3:22
preliminary
2:13, 2:16
pretrial
3:4, 3:5, 6:3,
7:2
prior
5:14
private
6:17
probable
5:13

proceedings
8:4, 8:5
prohibited
5:11
public
2:5

**R**

recalled
3:20
record
6:12, 8:4
recorded
8:4
recording
7:10, 8:6
related
8:8
release
3:1, 3:5, 3:6,
6:6, 6:21, 7:2
released
4:15, 4:21
releases
6:14, 6:15
remain
6:2, 7:6
reporter
2:10
respect
2:21
review
2:8, 2:14, 4:7
right
2:2, 2:20, 5:6,
7:4
robbery
5:17
robert
1:10, 2:3

**S**

said
8:4
same
7:6
says
6:12

scheduled
2:16
scheer
1:22, 8:2, 8:16
second
6:3
seeing
6:4
sense
3:8
should
6:1
signature-bi6ds
8:14
situation
3:3
somebody
6:6
something
3:11
sorry
2:18
standing
2:5
state
5:8, 5:22
statement
5:13
states
6:13
stepmother
4:4
stewart
2:9, 5:6, 5:7
still
5:4
suicide
4:6
supporting
8:6
supposed
5:1
surrounding
6:13

**T**

take
4:22, 6:4

taking
5:15
th
2:19
thank
2:22, 5:7, 6:8,
7:6, 7:7
therefore
6:5
think
2:9, 6:20
three
4:3, 4:5, 5:14
time
4:13, 5:5
today
2:17, 3:1,
6:15, 7:9
traffic
3:10, 6:12
tranported
6:16
transcribed
1:22, 8:5
transcriber
8:1
transcript
8:3
transported
5:2
true
8:3
try
3:19
trying
2:10
turn
4:15, 4:17,
6:17, 6:21
two
4:3, 5:14, 5:16

**U**

unconventional
4:20
under
4:3
underlying
3:17

**unfortunately**
4:10
**unique**
3:3
**unlawful**
5:15, 5:19
**unsecured**
4:15, 5:1
**until**
6:6
**uub**
5:16

### V

**vehicle**
5:15
**via**
2:11
**virginia**
3:9, 3:19,
4:22, 5:2, 6:14

### W

**warrant**
3:12, 3:14,
4:1, 4:22
**way**
5:4
**we're**
2:7, 2:13,
2:22, 4:20,
4:21, 4:22, 6:18
**week**
2:16
**weeks**
4:11
**working**
3:18

### Y

**years**
4:2, 4:5, 5:17

### 0

**00714640**
1:11

### 1

**18**
4:3

### 2

**2019**
3:17, 5:20,
5:21
**2022**
1:12
**2023**
8:17
**21**
1:12
**24**
8:17
**28**
2:19

### 3

**3e**
1:11, 2:3

### 4

**40**
4:2
**478437**
1:20

### 7

**714640**
2:3



# Transcript of Hearing in Re Robert Frazier

**Date:** June 28, 2022
**Case:** Transcription Services

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

1

2

3

4

5

6

7

8

9

10          Preliminary Hearing in Re: Robert Frazier

11                  Case No. 3E00714640

12                     June 28, 2022

13

14

15

16

17

18

19

20  Job No.:  478437

21  Pages 1 - 28

22  Transcribed by:  Jackie Scheer

```
 1            P R O C E E D I N G S

 2       THE CLERK:  Robert Frazier.  Case number

 3  3E714640.

 4       THE COURT:  Robert Frazier and related

 5  traffic.

 6       MALE VOICE:  Good morning.

 7       FEMALE VOICE:  Good morning, Your Honor.

 8  Just give me one moment.  Mr. Campbell is

 9  logged in and he is his attorney but I know

10  he's also logged into another courtroom, so let

11  me just alert him that this has been called.

12  He may not have heard it.

13       THE COURT:  That'd be great.

14       (Speaking out of hearing and cross talk.)

15       Mrs. -- Mr. Frazier is not in jail and

16  he's not here.  That's all I can tell you.

17       (Speaking out of hearing.)

18       STATE'S ATTORNEY:  Mr. Who.  Is this

19  Mr. Who?

20       FEMALE VOICE:  No, it's a Mr. Harvey.

21       THE COURT:  Mr. Harvey.

22       STATE'S ATTORNEY:  Harvey, okay.
```

1        FEMALE VOICE:  Mr. Frazier's right here.

2        THE COURT:  Is that you?

3        FEMALE VOICE:  Mr. Frazier, if that's you,

4    can you please nod your head?

5        THE COURT:  Yeah, okay, that's good.

6    Okay.  Mr. Frazier's joined us.  That's

7    3E714640.

8        STATE'S ATTORNEY:  And Mr. Frazier's in

9    the detention center?

10        THE COURT:  He is.

11        FEMALE VOICE:  He's online right now.

12        THE COURT:  And --

13        FEMALE VOICE:  -- Mr. Campbell should be

14    on in just a moment, Your Honor.

15        THE COURT:  Thank you to the Spanish

16    interpreter who's present.

17        And I don't think we need him for

18    Mr. Frazier, but we'll let you know when we

19    need you.  Standby.

20        STATE'S ATTORNEY:  We need him to go back

21    for Mr. -- all right, not in this case.  Nunez

22    Cadillo (phonetic).

1        THE COURT:  No, remember, he spoke

2    English, as it turned out.

3        STATE'S ATTORNEY:  Oh.

4        THE COURT:  There are bilingual people

5    everywhere.  And I am struggling because I'm --

6    I would like to be trilingual, but I -- it just

7    doesn't seem to work out.

8        STATE'S ATTORNEY:  I understand.  And I

9    think try as I might --

10        THE COURT:  -- Mr. Campbell --

11    Mr. Campbell has joined us, let's proceed.

12    What are we doing with Mr. Frazier's case?

13        STATE'S ATTORNEY:  We're going to do a

14    preliminary hearing with Mr. Frazier.

15        THE COURT:  Call your first witness.

16        STATE'S ATTORNEY:  It would be Officer

17    Woodruff (phonetic).

18        THE COURT:  Officer Woodruff?

19        STATE'S ATTORNEY:  Wood-riff.

20        OFFICER WOODRUFF:  Yes, ma'am.

21        THE COURT:  Would you be kind enough to

22    raise your right hand and listen to what my

1    clerk has to say?

2           THE CLERK:  Good morning.

3           OFFICER WOODRUFF:  Good morning.

4           THE CLERK:  Do you solemnly swear or

5    affirm under the penalties of perjury that the

6    responses given and statements made will be the

7    whole truth and nothing but the truth?

8           OFFICER WOODRUFF:  I do.

9           THE CLERK:  Did you raise your right hand?

10   I didn't see you raise your right hand.

11          THE COURT:  He -- I saw him raise his

12   right hand.

13          THE CLERK:  Okay.

14          THE COURT:  He could -- you could -- I

15   still had to go up, his screen is sort of small

16   and I saw him come down, too, afterwards.

17          THE CLERK:  Thank you.

18          THE COURT:  Thank you.  Tell me your name

19   now that you're under oath, sir.

20          OFFICER WOODRUFF:  Corporal John Woodruff.

21          THE COURT:  How --

22          OFFICER WOODRUFF:  -- 3756, Prince

1        George's County Police.

2              THE COURT:  Counsel, you may inquire.

3   BY STATE'S ATTORNEY:

4        Q    Thank you.  Good morning, Officer

5   Woodruff.

6        A    Good morning.

7        Q    I would like to direct your attention to

8   May 28th, 2022.  The location being the 5900 block

9   of Martin Luther King Jr. Highway, Seat Pleasant,

10  Prince George's County, Maryland.  Did you have

11  occasion to be involved in an incident that occurred

12  at that location on that date?

13       A    I did.

14       Q    Would you briefly tell the court the facts

15  and circumstances of what occurred at that location

16  on that date?

17       A    At that location I conducted a traffic

18  stop on a black LEXUS.  It had a Virginia temp tag

19  which was expired on it, and I know through training

20  experience that Virginia temp tags are -- oh, sorry,

21  West Virginia temp tags are often fake.  They're

22  very easy to fake.  They're usually just printed out

1   on pieces of paper with no (incomprehensible) going

2   into NCIC or anything, anywhere where you would be

3   able to look up the tag.  So I conducted a traffic

4   stop on a black LEXUS because the, again, the tag

5   displayed expired, and said it expired I believe in

6   January but I don't have that in front of me.  When

7   I approached the vehicle, the -- Mr. Frazier was

8   driving the vehicle.  I asked him for his license

9   and registration, he told me he didn't have a

10  license, which is okay.  He handed me an ID card.

11  He had a passenger, a Ms. Fishell (phonetic), who

12  also stated she did not have a license.  He didn't

13  have registration or insurance on the vehicle.

14             I then conducted a warrant check with

15  his license, so it came back that he did have a

16  warrant through Arlington, Virginia, for alluding.

17  At that point they were both taken out of the

18  vehicle.  He was placed in custody.  The vehicle was

19  searched for (incomprehensible) because we had to

20  impound it anyway.  During that search, a handgun

21  was located in a satchel on the passenger seat.

22  When the handgun was located, both the arrested and

1   his passenger were placed in handcuffs.  At that

2   time, the passenger advised that the handgun was his

3   and the -- I'm sorry, the driver advised the handgun

4   was his, and the passenger was released.  And the

5   driver was placed in custody and transported to

6   Upper Marlboro.

7        Q    All right.  Now, during the course of

8   processing Mr. Frazier, what, if anything, did you

9   learn with respect to his criminal history?

10       A    So whenever we have a handgun arrest, we

11  notify Maryland State Police Gun Center.  The gun

12  center got back to me, advised that he was

13  prohibited from possessing a firearm, in addition

14  to -- to the fact that he did have the open warrant

15  through Virginia.  And he also had several prior

16  convictions.  The first is 2 -- February 28th, 2002,

17  motor vehicle, unlawful taking, Montgomery County, I

18  got a case number if you need it.  The next one

19  would be 7/21 of 2003, unauthorized use of a vehicle

20  in D.C.  Again, I have -- have case numbers for all

21  these if you need them.  Third would be July 26th of

22  2005 for armed robbery.

```
 1              MR. CAMPBELL:  Judge, it looks like --
 2         sorry to interrupt -- it looks like Corporal
 3         Woodruff is reeding and I'm -- I'm sure I'm
 4         wrong about that, but I -- it's just giving me
 5         a sneaking suspicion.
 6              STATE'S ATTORNEY:  Yeah, but he's reading
 7         his --
 8              THE COURT:  -- he's reading what he --
 9         I'm -- if that's -- if that was a speaking
10         objection, overruled.  Go ahead.
11         A    Okay.  I'll continue.  11/25/2019 for
12    unlawful possession of a firearm.  Had another one
13    11/25 of '19 for assault on a police officer.  Both
14    of those are in Washington, D.C.
15         Q    All right.  Now, can you see the gentleman
16    at the detention center?
17         A    I can.
18         Q    All right.  Let me see if he's masked.
19              THE COURT:  He is masked.
20         A    He is.
21              THE COURT:  Fully masked.  You want --
22              STATE'S ATTORNEY:  -- Mr. Campbell --
```

1      THE COURT:  -- Mr. Campbell, what's your

2  pleasure?

3      STATE'S ATTORNEY:  Or?

4      MR. CAMPBELL:  No.

5      THE COURT:  All right.

6      STATE'S ATTORNEY:  Okay.

7      THE COURT:  He's unmasked now.  You can

8  mask yourself again.

9      Could you see him or does he need to get

10  in the light?

11      OFFICER WOODRUFF:  That's -- that's

12  Mr. Frazier.  He was driving the vehicle that

13  day.

14      THE COURT:  All right.  Identification of

15  the defendant for the record.

16      STATE'S ATTORNEY:  And with that, I have

17  nothing further, Your Honor.

18      THE COURT:  Mr. Campbell, what do you want

19  to do now?

20      MR. CAMPBELL:  I'm sorry, Your Honor?

21      THE COURT:  What's your pleasure?

22      MR. CAMPBELL:  Cross-examination, Your

1      Honor.

2          THE COURT:  Let her go.

3  BY MR. CAMPBELL:

4      Q     Thank you.  Good morning, Corporal

5  Woodruff.

6      A     Good morning.

7      Q     What were you reading from?

8      A     My case record from this case.

9      Q     What is a case record?

10     A     It's our initial report that we do for all

11 incidents on the police's part.

12     Q     Okay.  How many pages is it?

13         STATE'S ATTORNEY:  Objection.

14         THE COURT:  Sustained.  Go ahead, ask

15     another question.

16     Q     You said the gun was found in a satchel?

17     A     Yes.

18     Q     What is a satchel that the gun was found

19 in?

20     A     It was a black bag with a strap that would

21 go around one shoulder.

22     Q     Like a purse?

1      A     Sure.

2      Q     Did it have a brand name?

3      A     I don't recall.

4      Q     What was it made out of?

5      A     Again, I don't recall.  Probably cloth or

6 leather or something like that.  It was soft.  It

7 wasn't hard.  It wasn't, like, plastic or anything.

8      Q     Oh, okay.  How did it open?

9            STATE'S ATTORNEY:  I'm going to object --

10           THE COURT:  -- sustained and out open.

11           (Speaking out of hearing and cross talk.)

12     Q     When -- when you saw this -- this black

13 bag and -- I'm sorry, I think you said it was black

14 bag on the passenger's seat?

15     A     On the passenger's floor.

16     Q     On the passenger's floor, okay.  And --

17 and Mr. Frazier was the driver, right?

18     A     Yes.

19     Q     And there was someone sitting in the

20 passenger seat, right?

21     A     Yes.

22     Q     That was Erica Fishell?

1          A      Yes.

2          Q      And she was a -- appeared to you to be a

3    woman, right?

4          A      Yes.

5          Q      Okay.  And this -- this bag as you said is

6    like a purse, it appeared to you to be a woman's

7    bag, didn't it?

8          A      Yes.  I mean, it could be.

9          Q      And you started by saying yes and then you

10   said it could be, sure.  What caused you to change

11   your mind?

12              STATE'S ATTORNEY:  Objection.

13              THE COURT:  Sustained to the form of the

14         question.  I think he said it appeared to be

15         a -- I think -- he said what he said.  I don't

16         think he changed his mind.

17         Q      Is that a yes to my question, it appeared

18   to be a woman's bag?

19         A      I mean, I --

20              THE COURT:  -- he said it could be.

21         This -- I already sustained it.  Ask another

22         question.

1          MR. CAMPBELL:  Sorry, Judge, I thought you

2     sustained it to the form so I was rephrasing.

3          THE COURT:  No.

4     Q    And -- and how -- how old are you,

5 Corporal Woodruff?

6          STATE'S ATTORNEY:  Objection.

7          THE COURT:  Sustained.

8     Q    All right.  In -- in your years on this

9 earth, however many they may be, about how many

10 times have you seen a man carrying a bag like the

11 one that you saw on the passenger floor

12 (incomprehensible)?

13          STATE'S ATTORNEY:  Objection.

14          THE COURT:  Sustained.

15     Q    Have you ever seen a bag like that sold

16 for sale at a department store?

17          STATE'S ATTORNEY:  Objection.

18          THE COURT:  Sustained.

19          MR. CAMPBELL:  Court's brief indulgence.

20          THE COURT:  Sure.

21     Q    When -- you mentioned that the -- the car

22 was searched, right?

```
 1        A    Yes.

 2        Q    And before that happened you had the

 3   driver and the passenger sat down in the car,

 4   correct?

 5        A    Yes.

 6        Q    And -- and then the gun was recovered from

 7   the bag?

 8        A    Yes.

 9        Q    And then how did -- how did the

10   conversation go?  Did you -- did you or any other

11   police officer say anything to the two of them?

12             STATE'S ATTORNEY:  Objection.

13             THE COURT:  Sustained.

14        Q    Did the passenger make any statements

15   after the gun was recovered?

16             STATE'S ATTORNEY:  Objection.

17             THE COURT:  Sustained.

18             STATE'S ATTORNEY:  Judge, may I be heard

19        on that?  The -- the issue of possession,

20        they're using my client's statement to try to

21        make it seem like he was in possession.  I

22        don't know why it wouldn't be relevant to
```

1          probable cause whether the passenger made any

2          statements.

3               THE COURT:  I -- I was listening to the

4          testimony.  I don't agree with your analysis.

5          I mean, if you were paying attention.

6          Sustained.

7               STATE'S ATTORNEY:  Hold on.  Just a

8          court's brief indulgence.

9               THE COURT:  This is a probable cause

10         hearing.  Do you have anything on probable

11         cause?

12              STATE'S ATTORNEY:  Yes, I do, Your Honor.

13              THE COURT:  Go ahead.

14    BY STATE'S ATTORNEY:

15         Q    And I -- I'd be correct to say that the

16    gun wasn't visible outside of the bag, right?  It

17    was -- you had to open the bag in order to see the

18    gun?

19         A    That's correct.

20         Q    Okay.  What else was in the bag?

21         A    I don't recall anything.  But I could be

22    wrong.  I -- I don't remember anything else that I

1    noted being in the bag.

2         Q    Did you seize the bag?

3         A    No.

4         Q    Okay.  Then you didn't create an inventory

5    of its contents?

6         A    So there would be an impound inventory

7    which would be the listing of the property that was

8    in the car that was relevant.  However, Maryland did

9    not inventory that specific bag.

10        Q    So the impound --

11        A    -- (incomprehensible) impound inventory.

12        Q    Sorry, didn't mean to interrupt you,

13   Corporal.  So the impound inventory did or didn't

14   cover the contents of the bag?

15             STATE'S ATTORNEY:  Objection.

16             THE COURT:  Sustained.

17             STATE'S ATTORNEY:  Asked and answered.

18             THE COURT:  Asked and answered.

19        Q    Was the bag released to the passenger?

20        A    Yes.  Well, actually, no.  It was still in

21   the car when the car was impounded.  Although the

22   passenger was allowed to retrieve their medications,

1    some other things in the car that the passenger was

2    allowed to retrieve.  So I don't know if she

3    retrieved that specific bag or not.

4         Q    (Incomprehensible) asked and answered, if

5    you know?

6         A    Correct.

7              MR. CAMPBELL:  No further questions, Your

8         Honor.

9              STATE'S ATTORNEY:  No redirect with

10        respect to this, Your Honor.  I'll submit on

11        the testimony.

12             THE COURT:  Mr. Campbell?

13             MR. CAMPBELL:  Thank you, Your Honor.  We

14        heard that the gun was found, it wasn't

15        visible.  It was in a bag, that the bag was in

16        a black purse.  The -- the bag was a soft black

17        bag with a strap over the shoulder like a

18        purse.  Like something a woman would wear.  And

19        that trooper does not know if it was released

20        to the passenger.  I mean, the passenger was

21        the one sitting by that bag.  But that was Ms.

22        Fishell, not my client, Mr. Frazier.  Based on

1  all that, there is not probable cause to find

2  possession in this case.

3      THE COURT:  Anything else?

4      MR. CAMPBELL:  No, Your Honor.

5      THE COURT:  The court finds probable

6  cause.  Men carry bags.

7      STATE'S ATTORNEY:  I -- I was going to

8  tell Mr. Campbell that -- that my late husband

9  carried a shoulder bag for about 20 years.

10     MR. CAMPBELL:  It's interesting.  All

11 this -- all -- all these answers to the

12 questions that weren't relevant for me to ask

13 on cross are now suddenly so key.

14     Can I be heard on bond, Your Honor?

15     THE COURT:  Sure.

16     MR. CAMPBELL:  Thank you.  So Mr. Frazier

17 is currently been ordered at level four to

18 pretrial services.  I've been in constant

19 conversation with Mr. Logan about the status of

20 that release.  On last Wednesday, Mr. Logan

21 told me that he hoped to have an answer for me

22 by the end of the day on whether they would be

1    releasing Mr. Frazier --

2         THE COURT:  -- actually, Mr. Campbell,

3    that's not true what you just said.  He was not

4    ordered released on -- on level four.  It was

5    given as an option.

6         MR. CAMPBELL:  So I wasn't -- I -- I could

7    be wrong, but that was the original bond, but I

8    do think at the last bond review hearing he was

9    ordered released.  I -- I had a colleague stand

10   in for me, so I'm relying on (incomprehensible)

11   there, which is sometimes wrong.  But does the

12   court's second order of the bond review hearing

13   (incomprehensible) court ordered?

14        THE COURT:  What day are you talking

15   about?

16        MR. CAMPBELL:  That would have been on the

17   21st of this month.

18        THE COURT:  I show pretrial level option

19   on the 31st of May.  And that's the last thing

20   I have --

21        MR. CAMPBELL:  -- bond review hearing on

22   June 21st of this month.

1      THE COURT:  I don't have anything on that.

2  You're telling me there was another bond review

3  on June 21st?

4      MR. CAMPBELL:  That is correct, Your

5  Honor.

6      THE COURT:  Let me look.

7      MR. CAMPBELL:  And I would -- and I was

8  told by my colleague that --

9      THE COURT:  -- could be.  Could be.  Let

10 me look.

11     MR. CAMPBELL:  -- pretrial release.

12     THE COURT:  Oh, it was, yep.  Judge -- oh,

13 Clark-Edwards.  Yes, she did.  On 6/21, which

14 was a week ago.  Court ordered release on level

15 four.  That's correct.

16     MR. CAMPBELL:  I -- I -- I appreciate the

17 court's amendment on that.  So -- so it was

18 court ordered a week ago and as I was saying, I

19 have been following up with Mr. Logan about

20 that.  On Wednesday he was going to try to get

21 back with me by the end of the day.  I followed

22 up twice again since then.  He said he'll reach

1   out again but they're not taking any action.

2   At this point it's been a, you know, I don't

3   (incomprehensible) at the pretrial often, but

4   now an additional week with the pretrial level

5   four ordered.

6        Mr. -- Mr. Frazier has a -- a traffic

7   warrant out in Virginia from 2019.  What I

8   would ask the court to do --

9        THE COURT:  -- so we've heard.

10       MR. CAMPBELL:  -- is just -- what I would

11  ask the court to do is release him to that

12  detainer.  I don't anticipate that it will

13  result in any prolonged detention there,

14  probably none at all.  I've been in contact

15  with their police department.  It's not an FDA

16  warrant.  It's just a warrant that was issued,

17  you know, like an arrest warrant.  And -- and

18  so I don't expect that it will hold him up long

19  at all.  But at this point with the delay on

20  the court's order of pretrial, I would ask that

21  he be released to that detainer so that we can

22  speed things up.

1        THE COURT:  I'll -- I'll give you the

2   benefit of the doubt that you weren't on the --

3   you weren't on this docket earlier.  We have

4   someone we've been trying to get out of

5   Virginia for months now and they're declining

6   to honor our writ.  And you're telling me you

7   don't think it would take long, I understand

8   that.  But I'm -- I'm disinclined to release

9   anybody to a -- to a state that does not honor

10  our writs with the expectation that it won't

11  take long at all based on the --

12       MR. CAMPBELL:  -- the reason -- the reason

13  that I think that, Your Honor, isn't that I

14  think that he is going to be locked up in

15  Virginia and that they're going to honor our

16  writ.  It's because I don't think there's any

17  realistic chance that this is going to result

18  in him being detained in Virginia.  I've spoken

19  to him about this case.  This was, as I said,

20  an arrest warrant, not a bench warrant.  I

21  think it came due to a misunderstanding in the

22  registration of the car that they issued the

1    warrant for.  And as I've said, it was from

2    2019, so the -- the fact that it's, you know,

3    it's popping up now, you know, Mr. Frazier

4    believes that there are other chances where if

5    this were a situation, you know, that they

6    might have served this warrant on him earlier,

7    but they didn't.  But either way, it's a --

8    it's a traffic charge from 2019.  So I don't

9    think it's going to result in -- I, you know, I

10   expect that he will just receive personal

11   recognizance on this case once the warrant is

12   served.

13       Mr. Frazier, since he's been in jail, his

14   mother passed away.  He has the power of

15   attorney in that case.

16       THE COURT:  I'm sorry to hear that.

17       MR. CAMPBELL:  Thank you, Your Honor.  And

18   so his -- his detention here has been severely

19   hampering his family's ability to move forward

20   with her funeral proceedings.  He's the one in

21   charge of making decisions as to what happens

22   with her remains and memorial service.  And

1   while he's -- he's working hard to try to help

2   with that, obviously his continued custody

3   is -- is getting in the way of that very

4   significantly.

5        He -- he also has had -- had one and has

6   more dental surgeries scheduled in the future.

7   I'm -- I'm working on gathering the records

8   about that.  But he -- he is supposed to be

9   undergoing continuing dental care and his --

10  his continuing custody is interfering with that

11  as well.  So, you know, there -- there already

12  is an order to release him.  Pretrial has not

13  done anything and they have not responded to my

14  repeated inquiries about following that order.

15  So at this point the -- I think the only

16  sensible, humane thing to do in this situation

17  is to allow Mr. Frazier to be released to the

18  detainer.

19       THE COURT:  I'm going to -- I'm

20  disinclined to do that for the reasons that I

21  stated before, and I'll double down on the

22  notion that we have a prohibited person that

1  has an armed robbery conviction, among others,

2  who's in possession of a firearm in this case.

3  I'll -- I will do you a favor and not amend

4  judge -- the previous judge's order, and I will

5  leave it the same as the court ordered pretrial

6  release on level four.  I won't withdraw that,

7  which would be one way of solving your problem.

8  That would be unpleasant to Mr. Frazier, so I

9  won't do that.  You know, I -- I heard the

10  facts of this case so I'm not inclined to do

11  that.  He's driving an un -- you know, the

12  vehicle he was driving wasn't exactly -- the

13  paperwork wasn't exactly square on that either.

14  Thank you so much though, Mr. Campbell, have a

15  pleasant day.

16      MR. CAMPBELL:  You, too, Your Honor, it's

17  always a pleasure.

18      THE COURT:  That's my line, thank you very

19  much.

20      MALE VOICE:  Your Honor, may I be excused?

21      THE COURT:  Yes, please, unless you have

22  some other business before the court.

1      MALE VOICE:  I do not.  You have a good

2  day.

3      THE COURT:  You, too.

4      (The recording was concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
1                CERTIFICATE OF TRANSCRIBER

2          I, Jackie A. Scheer, do hereby certify

3    that the foregoing transcript is a true and correct

4    record of the recorded proceedings; that said

5    proceedings were transcribed to the best of my

6    ability from the audio recording and supporting

7    information; and that I am neither counsel for,

8    related to, nor employed by any of the parties to

9    this case and have no interest, financial or

10   otherwise in its outcome.

11

12

13

14

15   _____

16          JACKIE A. SCHEER

17          JANUARY 24, 2023

18

19

20

21

22
```

| A | | | |
|---|---|---|---|

**ability**
24:19, 28:6
**able**
7:3
**about**
9:4, 14:9,
19:9, 19:19,
20:15, 21:19,
23:19, 25:8,
25:14
**action**
22:1
**actually**
17:20, 20:2
**addition**
8:13
**additional**
22:4
**advised**
8:2, 8:3, 8:12
**affirm**
5:5
**after**
15:15
**afterwards**
5:16
**again**
7:4, 8:20,
10:8, 12:5,
21:22, 22:1
**ago**
21:14, 21:18
**agree**
16:4
**ahead**
9:10, 11:14,
16:13
**alert**
2:11
**all**
2:16, 3:21,
8:7, 8:20, 9:15,
9:18, 10:5,
10:14, 11:10,
14:8, 19:1,
19:10, 19:11,

22:14, 22:19,
23:11
**allow**
25:17
**allowed**
17:22, 18:2
**alluding**
7:16
**already**
13:21, 25:11
**also**
2:10, 7:12,
8:15, 25:5
**although**
17:21
**always**
26:17
**amend**
26:3
**amendment**
21:17
**among**
26:1
**analysis**
16:4
**another**
2:10, 9:12,
11:15, 13:21,
21:2
**answer**
19:21
**answered**
17:17, 17:18,
18:4
**answers**
19:11
**anticipate**
22:12
**any**
15:10, 15:14,
16:1, 22:1,
22:13, 23:16,
28:8
**anybody**
23:9
**anything**
7:2, 8:8, 12:7,
15:11, 16:10,

16:21, 16:22,
19:3, 21:1,
25:13
**anyway**
7:20
**anywhere**
7:2
**appeared**
13:2, 13:6,
13:14, 13:17
**appreciate**
21:16
**approached**
7:7
**arlington**
7:16
**armed**
8:22, 26:1
**around**
11:21
**arrest**
8:10, 22:17,
23:20
**arrested**
7:22
**asked**
7:8, 17:17,
17:18, 18:4
**assault**
9:13
**attention**
6:7, 16:5
**attorney**
2:9, 2:18,
2:22, 3:8, 3:20,
4:3, 4:8, 4:13,
4:16, 4:19, 6:3,
9:6, 9:22, 10:3,
10:6, 10:16,
11:13, 12:9,
13:12, 14:6,
14:13, 14:17,
15:12, 15:16,
15:18, 16:7,
16:12, 16:14,
17:15, 17:17,
18:9, 19:7,
24:15

**audio**
28:6
**away**
24:14

| B | | | |
|---|---|---|---|

**back**
3:20, 7:15,
8:12, 21:21
**bag**
11:20, 12:13,
12:14, 13:5,
13:7, 13:18,
14:10, 14:15,
15:7, 16:16,
16:17, 16:20,
17:1, 17:2,
17:9, 17:14,
17:19, 18:3,
18:15, 18:16,
18:17, 18:21,
19:9
**bags**
19:6
**based**
18:22, 23:11
**because**
4:5, 7:4, 7:19,
23:16
**been**
2:11, 19:17,
19:18, 20:16,
21:19, 22:2,
22:14, 23:4,
24:13, 24:18
**before**
15:2, 25:21,
26:22
**being**
6:8, 17:1,
23:18
**believe**
7:5
**believes**
24:4
**bench**
23:20
**benefit**
23:2

best
28:5
bilingual
4:4
black
6:18, 7:4,
11:20, 12:12,
12:13, 18:16
block
6:8
bond
19:14, 20:7,
20:8, 20:12,
20:21, 21:2
both
7:17, 7:22,
9:13
brand
12:2
brief
14:19, 16:8
briefly
6:14
business
26:22

**C**

cadillo
3:22
call
4:15
called
2:11
came
7:15, 23:21
campbell
2:8, 3:13,
4:10, 4:11, 9:1,
9:22, 10:1,
10:4, 10:18,
10:20, 10:22,
11:3, 14:1,
14:19, 18:7,
18:12, 18:13,
19:4, 19:8,
19:10, 19:16,
20:2, 20:6,
20:16, 20:21,

21:4, 21:7,
21:11, 21:16,
22:10, 23:12,
24:17, 26:14,
26:16
car
14:21, 15:3,
17:8, 17:21,
18:1, 23:22
card
7:10
care
25:9
carried
19:9
carry
19:6
carrying
14:10
case
1:11, 2:2,
3:21, 4:12,
8:18, 8:20,
11:8, 11:9,
19:2, 23:19,
24:11, 24:15,
26:2, 26:10,
28:9
cause
16:1, 16:9,
16:11, 19:1,
19:6
caused
13:10
center
3:9, 8:11,
8:12, 9:16
certificate
28:1
certify
28:2
chance
23:17
chances
24:4
change
13:10
changed
13:16

charge
24:8, 24:21
check
7:14
circumstances
6:15
clark-edwards
21:13
clerk
2:2, 5:1, 5:2,
5:4, 5:9, 5:13,
5:17
client
18:22
client's
15:20
cloth
12:5
colleague
20:9, 21:8
come
5:16
concluded
27:4
conducted
6:17, 7:3, 7:14
constant
19:18
contact
22:14
contents
17:5, 17:14
continue
9:11
continued
25:2
continuing
25:9, 25:10
conversation
15:10, 19:19
conviction
26:1
convictions
8:16
corporal
5:20, 9:2,
11:4, 14:5,
17:13

correct
15:4, 16:15,
16:19, 18:6,
21:4, 21:15,
28:3
could
5:14, 10:9,
13:8, 13:10,
13:20, 16:21,
20:6, 21:9
counsel
6:2, 28:7
county
6:1, 6:10, 8:17
course
8:7
court
2:4, 2:13,
2:21, 3:2, 3:5,
3:10, 3:12,
3:15, 4:1, 4:4,
4:10, 4:15,
4:18, 4:21,
5:11, 5:14,
5:18, 5:21, 6:2,
6:14, 9:8, 9:19,
9:21, 10:1,
10:5, 10:7,
10:14, 10:18,
10:21, 11:2,
11:14, 12:10,
13:13, 13:20,
14:3, 14:7,
14:14, 14:18,
14:20, 15:13,
15:17, 16:3,
16:9, 16:13,
17:16, 17:18,
18:12, 19:3,
19:5, 19:15,
20:2, 20:13,
20:14, 20:18,
21:1, 21:6,
21:9, 21:12,
21:14, 21:18,
22:8, 22:9,
22:11, 23:1,
24:16, 25:19,

| | | | |
|---|---|---|---|
| 26:5, 26:18, 26:21, 26:22, 27:3 | 25:18 | end 19:22, 21:21 | firearm 8:13, 9:12, 26:2 |
| court's 14:19, 16:8, 20:12, 21:17, 22:20 | detention 3:9, 9:16, 22:13, 24:18 | english 4:2 | first 4:15, 8:16 |
| courtroom 2:10 | direct 6:7 | enough 4:21 | fishell 7:11, 12:22, 18:22 |
| cover 17:14 | disinclined 23:8, 25:20 | erica 12:22 | floor 12:15, 12:16, 14:11 |
| create 17:4 | displayed 7:5 | ever 14:15 | followed 21:21 |
| criminal 8:9 | docket 23:3 | everywhere 4:5 | following 21:19, 25:14 |
| cross 2:14, 12:11, 19:13 | doing 4:12 | exactly 26:12, 26:13 | foregoing 28:3 |
| cross-examination 10:22 | done 25:13 | excused 26:20 | form 13:13, 14:2 |
| currently 19:17 | double 25:21 | expect 22:18, 24:10 | forward 24:19 |
| custody 7:18, 8:5, 25:2, 25:10 | doubt 23:2 | expectation 23:10 | found 11:16, 11:18, 18:14 |
| | down 5:16, 15:3, 25:21 | experience 6:20 | four 19:17, 20:4, 21:15, 22:5, 26:6 |
| **D** | driver 8:3, 8:5, 12:17, 15:3 | expired 6:19, 7:5 | frazier 1:10, 2:2, 2:4, 2:15, 3:3, 3:18, 4:14, 7:7, 8:8, 10:12, 12:17, 18:22, 19:16, 20:1, 22:6, 24:3, 24:13, 25:17, 26:8 |
| date 6:12, 6:16 | driving 7:8, 10:12, 26:11, 26:12 | **F** | |
| day 10:13, 19:22, 20:14, 21:21, 26:15, 27:2 | due 23:21 | fact 8:14, 24:2 | |
| decisions 24:21 | during 7:20, 8:7 | facts 6:14, 26:10 | |
| declining 23:5 | **E** | fake 6:21, 6:22 | frazier's 3:1, 3:6, 3:8, 4:12 |
| defendant 10:15 | earlier 23:3, 24:6 | family's 24:19 | front 7:6 |
| delay 22:19 | earth 14:9 | favor 26:3 | fully 9:21 |
| dental 25:6, 25:9 | easy 6:22 | fda 22:15 | funeral 24:20 |
| department 14:16, 22:15 | either 24:7, 26:13 | february 8:16 | further 10:17, 18:7 |
| detained 23:18 | else 16:20, 16:22, 19:3 | female 2:7, 2:20, 3:1, 3:3, 3:11, 3:13 | |
| detainer 22:12, 22:21, | employed 28:8 | financial 28:9 | |
| | | find 19:1 | |
| | | finds 19:5 | |

future
25:6

**G**

gathering
25:7
gentleman
9:15
george's
6:1, 6:10
getting
25:3
give
2:8, 23:1
given
5:6, 20:5
giving
9:4
go
3:20, 5:15,
9:10, 11:2,
11:14, 11:21,
15:10, 16:13
going
4:13, 7:1,
12:9, 19:7,
21:20, 23:14,
23:15, 23:17,
24:9, 25:19
good
2:6, 2:7, 3:5,
5:2, 5:3, 6:4,
6:6, 11:4, 11:6,
27:1
great
2:13
gun
8:11, 11:16,
11:18, 15:6,
15:15, 16:16,
16:18, 18:14

**H**

hampering
24:19
hand
4:22, 5:9,
5:10, 5:12

handcuffs
8:1
handed
7:10
handgun
7:20, 7:22,
8:2, 8:3, 8:10
happened
15:2
happens
24:21
hard
12:7, 25:1
harvey
2:20, 2:21,
2:22
he'll
21:22
head
3:4
hear
24:16
heard
2:12, 15:18,
18:14, 19:14,
22:9, 26:9
hearing
1:10, 2:14,
2:17, 4:14,
12:11, 16:10,
20:8, 20:12,
20:21
help
25:1
here
2:16, 3:1,
24:18
hereby
28:2
highway
6:9
history
8:9
hold
16:7, 22:18
honor
2:7, 3:14,
10:17, 10:20,

11:1, 16:12,
18:8, 18:10,
18:13, 19:4,
19:14, 21:5,
23:6, 23:9,
23:13, 23:15,
24:17, 26:16,
26:20
hoped
19:21
however
14:9, 17:8
humane
25:16
husband
19:8

**I**

id
7:10
identification
10:14
impound
7:20, 17:6,
17:10, 17:11,
17:13
impounded
17:21
incident
6:11
incidents
11:11
inclined
26:10
incomprehensible
7:1, 7:19,
14:12, 17:11,
18:4, 20:10,
20:13, 22:3
indulgence
14:19, 16:8
information
28:7
initial
11:10
inquire
6:2
inquiries
25:14

insurance
7:13
interest
28:9
interesting
19:10
interfering
25:10
interpreter
3:16
interrupt
9:2, 17:12
inventory
17:4, 17:6,
17:9, 17:11,
17:13
involved
6:11
issue
15:19
issued
22:16, 23:22

**J**

jackie
1:22, 28:2,
28:16
jail
2:15, 24:13
january
7:6, 28:17
job
1:20
john
5:20
joined
3:6, 4:11
jr
6:9
judge
9:1, 14:1,
15:18, 21:12,
26:4
judge's
26:4
july
8:21
june
1:12, 20:22,

21:3

**K**

key
19:13
kind
4:21
king
6:9
know
2:9, 3:18,
6:19, 15:22,
18:2, 18:5,
18:19, 22:2,
22:17, 24:2,
24:3, 24:5,
24:9, 25:11,
26:9, 26:11

**L**

last
19:20, 20:8,
20:19
late
19:8
learn
8:9
leather
12:6
leave
26:5
let's
4:11
level
19:17, 20:4,
20:18, 21:14,
22:4, 26:6
lexus
6:18, 7:4
license
7:8, 7:10,
7:12, 7:15
light
10:10
line
26:18
listen
4:22

listening
16:3
listing
17:7
located
7:21, 7:22
location
6:8, 6:12,
6:15, 6:17
locked
23:14
logan
19:19, 19:20,
21:19
logged
2:9, 2:10
long
22:18, 23:7,
23:11
look
7:3, 21:6,
21:10
looks
9:1, 9:2
luther
6:9

**M**

ma'am
4:20
made
5:6, 12:4, 16:1
make
15:14, 15:21
making
24:21
male
2:6, 26:20,
27:1
man
14:10
many
11:12, 14:9
marlboro
8:6
martin
6:9
maryland
6:10, 8:11,

17:8
mask
10:8
masked
9:18, 9:19,
9:21
mean
13:8, 13:19,
16:5, 17:12,
18:20
medications
17:22
memorial
24:22
men
19:6
mentioned
14:21
might
4:9, 24:6
mind
13:11, 13:16
misunderstanding
23:21
moment
2:8, 3:14
montgomery
8:17
month
20:17, 20:22
months
23:5
more
25:6
morning
2:6, 2:7, 5:2,
5:3, 6:4, 6:6,
11:4, 11:6
mother
24:14
motor
8:17
move
24:19
much
26:14, 26:19

**N**

name
5:18, 12:2

ncic
7:2
need
3:17, 3:19,
3:20, 8:18,
8:21, 10:9
neither
28:7
next
8:18
nod
3:4
none
22:14
noted
17:1
nothing
5:7, 10:17
notify
8:11
notion
25:22
number
2:2, 8:18
numbers
8:20
nunez
3:21

**O**

oath
5:19
object
12:9
objection
9:10, 11:13,
13:12, 14:6,
14:13, 14:17,
15:12, 15:16,
17:15
obviously
25:2
occasion
6:11
occurred
6:11, 6:15
officer
4:16, 4:18,

4:20, 5:3, 5:8,
5:20, 5:22, 6:4,
9:13, 10:11,
15:11
**often**
6:21, 22:3
**oh**
4:3, 6:20,
12:8, 21:12
**okay**
2:22, 3:5, 3:6,
5:13, 7:10,
9:11, 10:6,
11:12, 12:8,
12:16, 13:5,
16:20, 17:4
**old**
14:4
**once**
24:11
**one**
2:8, 8:18,
9:12, 11:21,
14:11, 18:21,
24:20, 25:5,
26:7
**online**
3:11
**only**
25:15
**open**
8:14, 12:8,
12:10, 16:17
**option**
20:5, 20:18
**order**
16:17, 20:12,
22:20, 25:12,
25:14, 26:4
**ordered**
19:17, 20:4,
20:9, 20:13,
21:14, 21:18,
22:5, 26:5
**original**
20:7
**other**
15:10, 18:1,

24:4, 26:22
**others**
26:1
**otherwise**
28:10
**out**
2:14, 2:17,
4:2, 4:7, 6:22,
7:17, 12:4,
12:10, 12:11,
22:1, 22:7, 23:4
**outcome**
28:10
**outside**
16:16
**over**
18:17
**overruled**
9:10

**P**

**pages**
1:21, 11:12
**paper**
7:1
**paperwork**
26:13
**part**
11:11
**parties**
28:8
**passed**
24:14
**passenger**
7:11, 7:21,
8:1, 8:2, 8:4,
12:20, 14:11,
15:3, 15:14,
16:1, 17:19,
17:22, 18:1,
18:20
**passenger's**
12:14, 12:15,
12:16
**paying**
16:5
**penalties**
5:5

**people**
4:4
**perjury**
5:5
**person**
25:22
**personal**
24:10
**phonetic**
3:22, 4:17,
7:11
**pieces**
7:1
**placed**
7:18, 8:1, 8:5
**plastic**
12:7
**pleasant**
6:9, 26:15
**please**
3:4, 26:21
**pleasure**
10:2, 10:21,
26:17
**point**
7:17, 22:2,
22:19, 25:15
**police**
6:1, 8:11,
9:13, 15:11,
22:15
**police's**
11:11
**popping**
24:3
**possessing**
8:13
**possession**
9:12, 15:19,
15:21, 19:2,
26:2
**power**
24:14
**preliminary**
1:10, 4:14
**present**
3:16
**pretrial**
19:18, 20:18,

21:11, 22:3,
22:4, 22:20,
25:12, 26:5
**previous**
26:4
**prince**
5:22, 6:10
**printed**
6:22
**prior**
8:15
**probable**
16:1, 16:9,
16:10, 19:1,
19:5
**probably**
12:5, 22:14
**problem**
26:7
**proceed**
4:11
**proceedings**
24:20, 28:4,
28:5
**processing**
8:8
**prohibited**
8:13, 25:22
**prolonged**
22:13
**property**
17:7
**purse**
11:22, 13:6,
18:16, 18:18

**Q**

**question**
11:15, 13:14,
13:17, 13:22
**questions**
18:7, 19:12

**R**

**raise**
4:22, 5:9,
5:10, 5:11
**reach**
21:22

reading
9:6, 9:8, 11:7
realistic
23:17
reason
23:12
reasons
25:20
recall
12:3, 12:5,
16:21
receive
24:10
recognizance
24:11
record
10:15, 11:8,
11:9, 28:4
recorded
28:4
recording
27:4, 28:6
records
25:7
recovered
15:6, 15:15
redirect
18:9
reeding
9:3
registration
7:9, 7:13,
23:22
related
2:4, 28:8
release
19:20, 21:11,
21:14, 22:11,
23:8, 25:12,
26:6
released
8:4, 17:19,
18:19, 20:4,
20:9, 22:21,
25:17
releasing
20:1
relevant
15:22, 17:8,

19:12
relying
20:10
remains
24:22
remember
4:1, 16:22
repeated
25:14
rephrasing
14:2
report
11:10
respect
8:9, 18:10
responded
25:13
responses
5:6
result
22:13, 23:17,
24:9
retrieve
17:22, 18:2
retrieved
18:3
review
20:8, 20:12,
20:21, 21:2
right
3:1, 3:11,
3:21, 4:22, 5:9,
5:10, 5:12, 8:7,
9:15, 9:18,
10:5, 10:14,
12:17, 12:20,
13:3, 14:8,
14:22, 16:16
robbery
8:22, 26:1
robert
1:10, 2:2, 2:4

**S**

said
7:5, 11:16,
12:13, 13:5,
13:10, 13:14,

13:15, 13:20,
20:3, 21:22,
23:19, 24:1,
28:4
sale
14:16
same
26:5
sat
15:3
satchel
7:21, 11:16,
11:18
saw
5:11, 5:16,
12:12, 14:11
say
5:1, 15:11,
16:15
saying
13:9, 21:18
scheduled
25:6
scheer
1:22, 28:2,
28:16
screen
5:15
search
7:20
searched
7:19, 14:22
seat
6:9, 7:21,
12:14, 12:20
second
20:12
see
5:10, 9:15,
9:18, 10:9,
16:17
seem
4:7, 15:21
seen
14:10, 14:15
seize
17:2
sensible
25:16

served
24:6, 24:12
service
24:22
services
19:18
several
8:15
severely
24:18
should
3:13
shoulder
11:21, 18:17,
19:9
show
20:18
signature-sc3
28:14
significantly
25:4
since
21:22, 24:13
sir
5:19
sitting
12:19, 18:21
situation
24:5, 25:16
small
5:15
sneaking
9:5
soft
12:6, 18:16
sold
14:15
solemnly
5:4
solving
26:7
some
18:1, 26:22
someone
12:19, 23:4
something
12:6, 18:18
sometimes
20:11

sorry
6:20, 8:3, 9:2,
10:20, 12:13,
14:1, 17:12,
24:16
sort
5:15
spanish
3:15
speaking
2:14, 2:17,
9:9, 12:11
specific
17:9, 18:3
speed
22:22
spoke
4:1
spoken
23:18
square
26:13
st
20:17, 20:19,
20:22, 21:3
stand
20:9
standby
3:19
started
13:9
state
8:11, 23:9
state's
2:18, 2:22,
3:8, 3:20, 4:3,
4:8, 4:13, 4:16,
4:19, 6:3, 9:6,
9:22, 10:3,
10:6, 10:16,
11:13, 12:9,
13:12, 14:6,
14:13, 14:17,
15:12, 15:16,
15:18, 16:7,
16:12, 16:14,
17:15, 17:17,
18:9, 19:7

stated
7:12, 25:21
statement
15:20
statements
5:6, 15:14,
16:2
status
19:19
still
5:15, 17:20
stop
6:18, 7:4
store
14:16
strap
11:20, 18:17
struggling
4:5
submit
18:10
suddenly
19:13
supporting
28:6
supposed
25:8
sure
9:3, 12:1,
13:10, 14:20,
19:15
surgeries
25:6
suspicion
9:5
sustained
11:14, 12:10,
13:13, 13:21,
14:2, 14:7,
14:14, 14:18,
15:13, 15:17,
16:6, 17:16
swear
5:4

T

tag
6:18, 7:3, 7:4

tags
6:20, 6:21
take
23:7, 23:11
taken
7:17
taking
8:17, 22:1
talk
2:14, 12:11
talking
20:14
tell
2:16, 5:18,
6:14, 19:8
telling
21:2, 23:6
temp
6:18, 6:20,
6:21
testimony
16:4, 18:11
th
6:8, 8:16, 8:21
thank
3:15, 5:17,
5:18, 6:4, 11:4,
18:13, 19:16,
24:17, 26:14,
26:18
that'd
2:13
thing
20:19, 25:16
things
18:1, 22:22
think
3:17, 4:9,
12:13, 13:14,
13:15, 13:16,
20:8, 23:7,
23:13, 23:14,
23:16, 23:21,
24:9, 25:15
third
8:21
thought
14:1

through
6:19, 7:16,
8:15
time
8:2
times
14:10
told
7:9, 19:21,
21:8
traffic
2:5, 6:17, 7:3,
22:6, 24:8
training
6:19
transcribed
1:22, 28:5
transcriber
28:1
transcript
28:3
transported
8:5
trilingual
4:6
trooper
18:19
true
20:3, 28:3
truth
5:7
try
4:9, 15:20,
21:20, 25:1
trying
23:4
turned
4:2
twice
21:22
two
15:11

U

un
26:11
unauthorized
8:19

under
5:5, 5:19
undergoing
25:9
understand
4:8, 23:7
unlawful
8:17, 9:12
unless
26:21
unmasked
10:7
unpleasant
26:8
upper
8:6
use
8:19
using
15:20
usually
6:22

**V**

vehicle
7:7, 7:8, 7:13,
7:18, 8:17,
8:19, 10:12,
26:12
virginia
6:18, 6:20,
6:21, 7:16,
8:15, 22:7,
23:5, 23:15,
23:18
visible
16:16, 18:15
voice
2:6, 2:7, 2:20,
3:1, 3:3, 3:11,
3:13, 26:20,
27:1

**W**

want
9:21, 10:18
warrant
7:14, 7:16,

8:14, 22:7,
22:16, 22:17,
23:20, 24:1,
24:6, 24:11
washington
9:14
way
24:7, 25:3,
26:7
we'll
3:18
we're
4:13
we've
22:9, 23:4
wear
18:18
wednesday
19:20, 21:20
week
21:14, 21:18,
22:4
weren't
19:12, 23:2,
23:3
west
6:21
whenever
8:10
whether
16:1, 19:22
whole
5:7
withdraw
26:6
witness
4:15
woman
13:3, 18:18
woman's
13:6, 13:18
wood-riff
4:19
woodruff
4:17, 4:18,
4:20, 5:3, 5:8,
5:20, 5:22, 6:5,
9:3, 10:11,

11:5, 14:5
work
4:7
working
25:1, 25:7
wouldn't
15:22
writ
23:6, 23:16
writs
23:10
wrong
9:4, 16:22,
20:7, 20:11

**Y**

yeah
3:5, 9:6
years
14:8, 19:9
yep
21:12
yourself
10:8

**0**

00714640
1:11

**1**

11
9:11, 9:13
19
9:13

**2**

20
19:9
2002
8:16
2003
8:19
2005
8:22
2019
9:11, 22:7,
24:2, 24:8
2022
1:12, 6:8

2023
28:17
21
8:19, 20:17,
20:22, 21:3,
21:13
24
28:17
25
9:11, 9:13
26
8:21
28
1:12, 1:21,
6:8, 8:16

**3**

31
20:19
3756
5:22
3e
1:11, 2:3, 3:7

**4**

478437
1:20

**5**

5900
6:8

**7**

714640
2:3, 3:7

**9**

92
28:14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR RECONSIDERATION UNDER RULE 54(b)**

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiffs Robert Frazier, Anibal Hernandez, D.P., Christopher Butler, Miramba Williams, Donnell Davis, Leslie Sharp, Elmer Laguan-Salinas, and Adrienne Worthington, on behalf of themselves and a class of similarly situated persons, respectfully move for reconsideration of this Court's opinion and order entered January 24, 2023, granting in part and denying in part Defendants' motions to dismiss. Docs. 90-91. As discussed in Plaintiffs' attached memorandum of law, the Court's finding that quasi-judicial immunity applies to Defendant Prince George's County is in tension with a long line of controlling precedent establishing that quasi-judicial immunity is unavailable to municipalities. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 701 (1978); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993). This case law was not provided to the Court because the affirmative defense of quasi-judicial immunity was not raised by the County. Plaintiffs respectfully seek the Court's reconsideration to reach the correct judgment under law and reinstate Plaintiffs' claims for money damages against the County.

**JA1291**

Respectfully submitted this 21st day of February, 2023.

/s/ Jeremy D. Cutting
Ellora Thadaney Israni*
Ryan Downer*
Jeremy D. Cutting*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org


Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu




* admitted *pro hac vice*

*Counsel for Plaintiffs*

Edward Williams (D. Md. Bar 20944)
Matthew Martens*
Thomas Bredar (D. Md. Bar 21635)
Ellen Connell*
Donna Farag*
Ayana Williams*
Sonika Data*
Britany Riley-Swanbeck (D. Md. Bar 21843)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6487
ed.williams@wilmerhale.com
matthew.martens@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com

| Plaintiff | Arrest Date | Most Serious Charge | Initial Appearance and Bail Reviews | Detention Status[1] | Judge Defendants Claimed Against | Current Court and Case Status |
|---|---|---|---|---|---|---|
| Frazier | 5/28/22 | Firearm poss. w/ felony conviction | District Court: 5/29/22; 5/31/22; 6/21/22; 6/28/22 Circuit Court: 8/16/22; 8/25/22 | Not detained | Bereano Clark-Edwards | Case Closed |
| Hernandez | 6/22/22 | CDS import into state | District Court: 6/23/22; 6/24/22; 7/25/22 | Not detained | Allen | District Court Trial – 3/23/23 |
| D.P. | 6/16/22 | Armed robbery | District Court: 6/16/22; 6/21/22; 6/28/22; 8/17/22 | Not detained | Clark-Edwards Denton | Case Closed |
| Butler | 10/27/21 | Murder, 2nd deg. | District Court: 10/27/21; 10/28/21; 10/29/21 Circuit Court: 2/18/22; 6/29/22; 7/26/22; 7/28/22 | Detained | Serrette | Circuit Court Trial – 7/31/23 |
| Williams | 6/30/22 | Firearm/Drug traff. crime | District Court: 7/1/22; 7/5/22; 8/12/22 Circuit Court: 12/2/22 | Detained | Powell | Circuit Court Trial – 4/4/23 |
| Davis | 10/9/20 | Assault, 1st deg. | District Court: 10/8/20; 10/9/20; 11/9/20; 12/16/20 | Not detained | Heffron Jr. Cobb Smith | Case Closed |
| Sharp | 6/11/21 | Assault, 2nd deg. | District Court: 6/12/21; 6/14/21; 6/24/21; 7/14/21 | Not detained | Carrington Varner Lewis | Case Closed |
| Laguan-Salinas | 3/15/22 | Assault, 1st deg. | District Court: 3/16/22; 3/17/22; 5/12/22; 6/17/22; 11/10/22 Circuit Court: 12/6/22 | Not detained | Cobb Smith | Case Closed |
| Worthington | 12/23/21 | Assault, 1st deg. | District Court: 12/24/21; 12/28/21; 2/9/22 | Not detained | Bielec | Case Closed |

---

[1] *See* the table recently submitted by Plaintiffs on February 1, 2023 (ECF No. 92), confirming the Plaintiffs' detention status set forth herein.  Plaintiff Laguan-Salinas was released on December 6, 2022.  (*See* ECF No. 92 at 7.)

| CaseSearch | Circuit Court of Maryland |
|---|---|

## Case Information

| | |
|---|---|
| Court System: | **Circuit Court For Prince George's County - Criminal** |
| Location: | **Prince Georges Circuit Court** |
| Case Number: | **C-16-CR-22-000236** |
| Title: | **State of Maryland vs. Miramba Kinte Williams** |
| Case Type: | **Criminal Indictment** |
| Filing Date: | **11/10/2022** |
| Case Status: | **Open** |
| Tracking Number(s): | **180001569952** |

## Other Reference Numbers

Forwarded to Circuit Court **2E00715535**

Co-Defendants **C-16-CR-22-000237**

## Defendant Information

## Defendant

| | |
|---|---|
| Name: | **Williams, Miramba Kinte** |
| Race: | **Black**   Sex: **Male**   Height: **0'0"**   Weight: **0** |
| HairColor:   EyeColor: | |
| DOB: | **10/03/1994** |
| Address: | **2516 Darel Dr #102** |
| City: | **Suitland**   State: **MD**   Zip Code: **20746** |

### Attorney(s) for the Defendant

| | |
|---|---|
| Name: | **HILLER, KEITH LEE** |
| Appearance Date: | **12/02/2022** |
| Address Line 1: | **8955 A Edmonston Road** |
| City: | **Greenbelt**   State: **MD**   Zip Code: **20770** |

## Involved Parties Information

## Plaintiff

Name: **State of Maryland**

### Attorney(s) for the Plaintiff

| | |
|---|---|
| Name: | **State's Attorney, Prince George's** |
| Appearance Date: | **11/10/2022** |
| Address Line 1: | **14735 Main Street** |
| Address Line 2: | **Suite M3403** |

**JA1294**

City:                    **Upper Marlboro**   State: **MD**   Zip Code: **20772**


Name:                    **Alston, Jason A**
Appearance Date: **01/27/2023**
Address Line 1:    **Prince George's County State's Attorney**
Address Line 2:    **14735 Main St, Suite M3403**
City:                    **Upper Marlboro**   State: **MD**   Zip Code: **20772**

## Court Scheduling Information

| Event Type | Event Date | Event Time | Court Location | Court Room | Result |
|---|---|---|---|---|---|
| **Hearing** - Initial Appearance | 12/02/2022 | 10:00:00 | Criminal Calendar | | **CancelledReason:** Waived |
| **Hearing** - Initial Appearance | 12/02/2022 | 10:00:00 | Criminal Calendar | | **CancelledReason:** Waived |
| **Hearing** - Initial Appearance | 12/02/2022 | 10:00:00 | Criminal Calendar | Courtroom M1410 | **CancelledReason:** Waived |
| **Hearing** - Initial Appearance | 12/02/2022 | 11:00:00 | Criminal Calendar | | **CancelledReason:** Waived |
| **Hearing** - Initial Appearance | 12/23/2022 | 08:30:00 | Criminal Calendar | | **CancelledReason:** Error |
| **Hearing** - Initial Appearance | 01/13/2023 | 08:30:00 | Criminal Calendar | Courtroom M1410 | **CancelledReason:** Error |
| **Hearing** - Motion | 03/10/2023 | 08:00:00 | Criminal Calendar | | |
| Trial - Jury | 04/04/2023 | 09:00:00 | Criminal Calendar | | |

## Charge and Disposition Information

Charge No:  **1**  CJIS Code: **1-0233**  Statute Code: **CR.5.602**
Charge Description:  **CDS POSS W/INT TO DIST**  Charge Class: **Felony Circuit Court**
Probable Cause:
Offense Date From: **06/30/2022**  To:
Agency Name:            Officer ID:

Charge No:  **2**  CJIS Code: **1-1564**  Statute Code: **CR 5 601 (a)(1)**
Charge Description:  **CDS: Poss marijuana 10 Gm+**  Charge Class: **Misdemeanor**
Probable Cause:
Offense Date From: **06/30/2022**  To:
Agency Name:            Officer ID:

Charge No:  **3**  CJIS Code: **1-0487**  Statute Code: **CR.5.621.(b)(2)**
Charge Description:  **CDS: DISTR ETC. W/FIREARM**  Charge Class: **Felony Circuit Court**
Probable Cause:
Offense Date From: **06/30/2022**  To:
Agency Name:            Officer ID:

Charge No:  **4**  CJIS Code: **1-1106**  Statute Code: **PS.5.133.(B)**
Charge Description:  **REG FIREARM:ILLEGAL POSSESSION**  Charge Class: **Misdemeanor**
Probable Cause:
Offense Date From: **06/30/2022**  To:
Agency Name:            Officer ID:

Charge No:  **5**  CJIS Code: **1-5212**  Statute Code: **CR.4.203**
Charge Description:  **HANDGUN ON PERSON**  Charge Class: **Misdemeanor**

**JA1295**

Probable Cause:
Offense Date From:  **06/30/2022**  To:
Agency Name:          Officer ID:

Charge No:  **6**  CJIS Code: **1-1455**  Statute Code: **CR.4.203.(a)(1)(v)**
Charge Description:  **Loaded Handgun On Person**  Charge Class: **Misdemeanor**
Probable Cause:
Offense Date From:  **06/30/2022**  To:
Agency Name:          Officer ID:

## Document Information

File Date:        **11/10/2022**
Filed By:
Document Name: **Criminal Indictment**

File Date:        **11/14/2022**
Filed By:
Document Name: **Summons Issued (Service Event)**

File Date:        **12/01/2022**
Filed By:
Document Name: **Defense Attorney Appearance Filed**

File Date:        **12/01/2022**
Filed By:
Document Name: **Motion / Request / Demand for Discovery and Inspection**

File Date:        **12/01/2022**
Filed By:
Document Name: **Motion to Suppress / Exclude Evidence, Dismiss and Severance**

File Date:        **12/01/2022**
Filed By:
Document Name: **Motion / Request - For Bail Review**

File Date:        **12/02/2022**
Filed By:
Document Name: **Order**

File Date:        **12/08/2022**
Filed By:
Document Name: **Writ /Summons/Pleading - Electronic Service**

File Date:        **12/12/2022**
Filed By:
Document Name: **District Court Transmittal**

File Date:        **12/12/2022**
Filed By:
Document Name: **Statement of Charges**

File Date:        **12/12/2022**
Filed By:
Document Name: **Commitment Pending Hearing**

File Date:        **01/27/2023**

**JA1296**

Filed By:

Document Name: **Attorney Appearance for State**

## Service Information

| Service Type | Issued Date | Service Status |
|---|---|---|
| Summons Issued | 11/14/2022 | |

*This is an electronic case record. Full case information cannot be made available either because of legal restrictions on access to case records found in Maryland Rules, or because of the practical difficulties inherent in reducing a case record into an electronic format.*

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

STATE OF MARYLAND

     VS.                                                    CASE # CT211239X

CHRISTOPHER DANIEL BUTLER

TO: The Honorable Krystal Q. Alves,

    The above cases(s) have been specially assigned to you for trial and all proceedings except Hicks waiver and continuances beyond Hicks date.

        Scheduled Trial Date: January 17, 2022  at 9:00 A.M.

        Estimated Trial Time: 3 days

        Scheduled Motions Date: July 25, 2022 at 1:30PM

        Scheduled Status Date:     at 9:00 A.M.

              _____
              CHIEF AND ADMINISTRATIVE JUDGE

             7-22-2022
                 Date

Copies sent by Calendar Management to:

Specially Assigned Judge: Krystal Q. Alves

Asst. State's Attorney: Steven D. Smith

Defense Attorney: Allison E. Heldreth
              Office of the Public Defender

ENTERED: 7/22/22 # 363

**JA1298**

FILED

JUL 2 2 2022

CLERK OF THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY, MD

ENTERED:

IN THE CIRCUIT COURT FOR
PRINCE GEORGE'S COUNTY, MARYLAND

```
_____ )
                                 )
STATE OF MARYLAND,               )
                                 )
                                 )
           Plaintiff,            )
                  v.             ) Case No. C16CR22000236
MIRAMBA KINTE WILLIAMS,          )
                                 )
                                 )
           Defendant.            )
                                 )
_____ )
```

ORDER

Upon consideration of the Defendant's Motion To Reduce
Bond, and the answer of the State, if any, it is hereby

     ORDERED, this _____ day of _____,
12/02/2022____, that

a motion is set for a hearing.

**DENIED**

_____
                      Herman Dawson
Judge
Prince George's County Circuit Court
**12/02/2022 4:33:31 PM**

**JA1300**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ROBERT FRAZIER, *et al.*, individually and on
behalf of a class of similarly situated persons,

      Plaintiffs,

      v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

      Defendants.

Civil No. **22-1768 PJM**

## ORDER

Following a telephone conference conducted on March 2, 2023 with counsel for the parties,
it is, this ___ day of March 2023, for the reasons stated on the record:

**ORDERED**

1. Plaintiffs' Motion for Class Certification (ECF No. 4) is **DENIED WITHOUT PREJUDICE.** Plaintiffs are given leave to file an Amended Motion for Class Certification after the Court decides the Motions for Reconsideration of Plaintiffs (ECF No. 97) and of the Judge Defendants (ECF No. 98).

2. Oppositions to the pending Motions for Reconsideration **SHALL** be filed no later than March 16, 2023, and Replies **SHALL** be filed no later than March 27, 2023.

3. Within ten (10) days of the date of this Order, the parties **SHALL** advise the Court whether they have reached an agreement with respect to preliminary relief in connection with Plaintiffs' Motion for Preliminary Injunction (ECF No. 2).

**JA1301**

4. No later than March 31, 2023, the County **SHALL** file its updated policy governing the pretrial release process in Prince George's County.

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

ROBERT FRAZIER, *et al.*, individually and on
behalf of a class of similarly situated persons,

      Plaintiffs,

      v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

      Defendants.

Civil No. **22-1768 PJM**

**ORDER**

    Having considered Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) as to

Defendant Prince George's County, which included extensive exhibits; the County's oppositions

thereto (ECF Nos. 64, 78); Plaintiffs' Reply (ECF No. 72); and the parties' joint status report dated

March 13, 2023 stating that they have not reached an agreement as to preliminary relief (ECF No.

106), it is, this 14 day of March 2023, for the reasons stated on the record during the March 2,

2023 telephone conference

    **ORDERED**

    Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) is **DENIED WITHOUT**

**PREJUDICE**.

                                     **PETER J. MESSITTE**
                         **UNITED STATES DISTRICT JUDGE**

**JA1303**

# Exhibit A

| Plaintiff | Arrest Date | Most Serious Charge | Initial Appearance and Bail Reviews | Detention Status[1] | Judge Defendants Claimed Against | Current Court and Case Status |
|---|---|---|---|---|---|---|
| Frazier | 5/28/22 | Firearm poss. w/ felony conviction | District Court: 5/29/22; 5/31/22; 6/21/22; 6/28/22 Circuit Court: 8/16/22; 8/25/22 | Not detained | Bereano Clark-Edwards | Case Closed |
| Hernandez | 6/22/22 | CDS import into state | District Court: 6/23/22; 6/24/22; 7/25/22 | Not detained | Allen | Circuit Court Trial – 4/13/23 |
| D.P. | 6/16/22 | Armed robbery | District Court: 6/16/22; 6/21/22; 6/28/22; 8/17/22 | Not detained | Clark-Edwards Denton | Case Closed |
| Butler | 10/27/21 | Murder, 2nd deg. | District Court: 10/27/21; 10/28/21; 10/29/21 Circuit Court: 2/18/22; 6/29/22; 7/26/22; 7/28/22 | Detained | Serrette | Circuit Court Trial – 7/31/23 |
| Williams | 6/30/22 | Firearm/Drug traff. crime | District Court: 7/1/22; 7/5/22; 8/12/22 Circuit Court: 12/2/22 | Detained | Powell | Circuit Court Trial – 4/4/23 |
| Davis | 10/9/20 | Assault, 1st deg. | District Court: 10/8/20; 10/9/20; 11/9/20; 12/16/20 | Not detained | Heffron Jr. Cobb Smith | Case Closed |
| Sharp | 6/11/21 | Assault, 2nd deg. | District Court: 6/12/21; 6/14/21; 6/24/21; 7/14/21 | Not detained | Carrington Varner Lewis | Case Closed |
| Laguan-Salinas | 3/15/22 | Assault, 1st deg. | District Court: 3/16/22; 3/17/22; 5/12/22; 6/17/22; 11/10/22 Circuit Court: 12/6/22 | Not detained | Cobb Smith | Case Closed |
| Worthington | 12/23/21 | Assault, 1st deg. | District Court: 12/24/21; 12/28/21; 2/9/22 | Not detained | Bielec | Case Closed |

---

[1] *See* the table recently submitted by Plaintiffs on February 1, 2023 (ECF No. 92), confirming the Plaintiffs' detention status set forth herein.  Plaintiff Laguan-Salinas was released on December 6, 2022.  (*See* ECF No. 92 at 7.)



**ANTHONY G. BROWN**
*Attorney General*

**CANDACE MCLAREN LANHAM**
*Chief Deputy Attorney General*

**CAROLYN QUATTROCKI**
*Deputy Attorney General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**

FACSIMILE NO.
(410) 576-6393

WRITER'S CONTACT:
(410) 576-6389
jspiker@oag.state.md.us

**OFFICE OF THE ATTORNEY GENERAL**
**COURTS & JUDICIAL AFFAIRS DIVISION**

April 7, 2023

Hon. Peter J. Messitte
United States District Court for the District of Maryland
6500 Cherrywood Lane
Suite 475A
Greenbelt, MD  20770

> Re:   *Robert Frazier, et al. v. Prince George's County, Maryland, et al.*
>       Case No.: 8:22-cv-01768-PJM

Dear Judge Messitte:

On behalf of the Judge Defendants, I am writing to bring two updates to your attention.

First, on March 31, 2023, Plaintiff Miramba Williams was released from detention. *See* Attachment A, Criminal Docket Sheet dated March 31, 2023.  This means that Plaintiff Christopher Butler is now the sole detained Plaintiff.  An updated version of the chart previously supplied by the Judge Defendants is provided as Attachment B.

Second, also on March 31, 2023, in *Daves v. Dallas County, Texas*, 18-11368, 2023 WL 2720444 (5th Cir. Mar. 31, 2023), the Fifth Circuit held that *Younger* abstention applied to claims challenging the constitutionality of Texas state court procedures for pretrial bail, explicitly overruling *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018). *ODonnell* was cited by Plaintiffs for the position that the Fifth Circuit had rejected *Younger* abstention in challenge to bail proceedings.  (*See* ECF No. 71, at 27 n14 (Plaintiffs' memorandum in response to motion to dismiss).)  For your reference, a copy of *Daves* is provided as Attachment C.

200 Saint Paul Place ❖ Baltimore, Maryland, 21202-2021
Main Office (410) 576-6300 ❖ Main Office Toll Free (888) 743-0023
Consumer Complaints and Inquiries (410) 528-8662 ❖ Health Advocacy Unit/Billing Complaints (410) 528-1840
Health Advocacy Unit Toll Free (877) 261-8807 ❖ Homebuilders Division Toll Free (877) 259-4525 ❖ Telephone for Deaf (410) 576-6372
www.marylandattorneygeneral.gov

JA1306

Hon. Peter J. Messitte
April 7, 2023
Page 2

Very truly yours,

/s/ *James O. Spiker IV*

James O. Spiker IV
Deputy Chief Counsel

cc      All counsel of record via ECF.

# ATTACHMENT A

513

State of Maryland vs. Miramba Kinte Williams
Plaintiff Attorney: Alston, Jason A
Defendant Attorney: HILLER, KEITH LEE
Defendant [ ] Present [✓] Not Present

Case No: C-16-CR-22-000236

Date: 03/31/2023

Clerk: ___705MZ___

Code: ___660___

# CRIMINAL DOCKET SHEET

① Judge: Rettal _____ ; CS-M2408 _____ Reporter

② Reset to 5/16/23 for Trial _____

③ Joint / State / ~~Defendant~~'s continuance – granted/~~denied~~ essential witness unavailable

④ Reset to 4/21/23 ~~AM / PM~~ for Motions

5. Motions withdrawn without prejudice.

6. Plea of not guilty withdrawn and _____ plea of guilty entered to Count _____

___Verdict guilty / Court accepts plea___

7. Pre-sentence / Pre-plea investigation ordered. Short / Long form. Sentencing Date: _____
   at 9:30am before Judge: _____.
   Bond to continue / Remanded to custody of the sheriff pending sentencing. All parties and attorneys notified.

8. Pre-sentence Report waived / sealed and filed.

9. Sentenced to the Jurisdiction of the Division of Correction / County Correctional Facility   as follows:
   Count _____ for a period of _____ years; all but _____ suspended.
   Count _____ for a period of _____ years, concurrent with / consecutive to Count _____
   all but _____ suspended.
   Count _____ for a period of _____ years, concurrent with / consecutive to Count _____
   all but _____ suspended.
   Count _____ pay a fine of $ _____.

10. Sentence to commence as of _____. ( _____ days credit given).

11. All but _____ suspended and defendant is placed on supervised / unsupervised / unpapered probation
    for a period of _____

12. Sentence to be served at the County Correctional Facility.

13. Sentence to incarceration is suspended and defendant is placed on supervised / unsupervised / unpapered probation
    for a period of _____.

14. Further proceedings deferred. Entry of judgment is stayed pursuant to Criminal Procedure Section 6-220, and the
    defendant is placed on unsupervised / supervised / unpapered probation for a period of _____.

15. Court costs assessed / waived $ _____. Public Defender fee $ _____.

16. Order for Probation, filed.

17. ( ) Stet   ( ) Nolle Pros   ( ) Not guilty   ( ) Judgment of Acquittal   ( ) Nolle Pros remaining counts.

18. Defendant failed to answer. Appeal is dismissed. Case returned to District Court.

19. Defendant failed to answer. Ordered that bond forfeit / bond revoked. Bench Warrant issue, returnable to Circuit
    Court Only. No Bond / Bond set at _____. FTA: _____

20. Any bench warrants are recalled. Any bond discharged.

21. Court ( ) Recommends   ( ) Orders   ( ) Home Detention   ( ) Interlock Device

22. Restitution of $ _____ To: _____

23. Defendant released as to this case only.

24. TTP Approved

25. ( ) AGD Domestic Violence Guilty ( ) AGP Domestic Violence PBJ

26. ( ) AGO Order to Surrender firearms granted and signed and attached

27. Defendant's Motion (Short) to reduce bond to personal recognizance-
    Granted

_____ _____

9:54am - 9:55am

DFC OM Givens 549
3/31/23

**JA1309**

# ATTACHMENT B

| Plaintiff | Arrest Date | Most Serious Charge | Initial Appearance and Bail Reviews | Detention Status | Judge Defendants Claimed Against | Current Court and Case Status |
|---|---|---|---|---|---|---|
| Frazier | 5/28/22 | Firearm poss. w/ felony conviction | District Court: 5/29/22; 5/31/22; 6/21/22; 6/28/22 Circuit Court: 8/16/22; 8/25/22 | Not detained | Bereano Clark-Edwards | Case Closed |
| Hernandez | 6/22/22 | CDS import into state | District Court: 6/23/22; 6/24/22; 7/25/22 | Not detained | Allen | Circuit Court Trial – 4/13/23 |
| D.P. | 6/16/22 | Armed robbery | District Court: 6/16/22; 6/21/22; 6/28/22; 8/17/22 | Not detained | Clark-Edwards Denton | Case Closed |
| Butler | 10/27/21 | Murder, 2nd deg. | District Court: 10/27/21; 10/28/21; 10/29/21 Circuit Court: 2/18/22; 6/29/22; 7/26/22; 7/28/22 | Detained | Serrette | Circuit Court Trial – 7/31/23 |
| Williams | 6/30/22 | Firearm/Drug traff. crime | District Court: 7/1/22; 7/5/22; 8/12/22 Circuit Court: 12/2/22 | Not detained | Powell | Circuit Court Trial – 5/16/23 |
| Davis | 10/9/20 | Assault, 1st deg. | District Court: 10/8/20; 10/9/20; 11/9/20; 12/16/20 | Not detained | Heffron Jr. Cobb Smith | Case Closed |
| Sharp | 6/11/21 | Assault, 2nd deg. | District Court: 6/12/21; 6/14/21; 6/24/21; 7/14/21 | Not detained | Carrington Varner Lewis | Case Closed |
| Laguan-Salinas | 3/15/22 | Assault, 1st deg. | District Court: 3/16/22; 3/17/22; 5/12/22; 6/17/22; 11/10/22 Circuit Court: 12/6/22 | Not detained | Cobb Smith | Case Closed |
| Worthington | 12/23/21 | Assault, 1st deg. | District Court: 12/24/21; 12/28/21; 2/9/22 | Not detained | Bielec | Case Closed |

# Prince George's County Department of Corrections



## Home Monitoring Program

### *for*

### *Pretrial Defendants and Sentenced Offenders*

# Standard Operating Procedures Manual

JA1312

# **Table of Contents**

Introduction, Types of Commitments …………………………………………   3-4

Definitions, ……………………………………………………………………..   4

Program Eligibility, Program Overview…………..……………………………… 5-7

Program Acceptance/Enrollment………………………….......…………………..  7

- Orientation/Agreement
- Substance Use/Testing/Treatment

Daily Duties & Responsibilities…………………………………………………   8-10

- Home Monitoring Program Manager
- Home Monitoring Case Manager
- Home Monitoring Investigator
- Investigator

Violation Procedures……………………………………………………………..   11-12

- Violations Occurring During Non-Operational Hours
- Cell Phone Alerts

Disciplinary/Adjustment Procedures …………….…………….....………………   13-15

- Infractions
- Sanctions
- Reincarceration Process
- Obtaining Arrest Warrants

**JA1313**

## Introduction

In accordance with departmental policy, Chapter 20.3, the Prince George's County Department of Corrections' Home Monitoring Program (HMP), formerly known as Home Detention, is an alternative-to-incarceration program for both the pretrial defendant and sentence offender. The HMP uses an active monitoring system to track and ensure the participant's presence remains within the confines of their residence or any other authorized area, 24 hours per day, 7 days-a-week.  The system's equipment is placed on the participant and installed within the participant's home. Any tampering with the ankle bracelet, installed equipment, leaving the confines of residence, or a pre-authorized area will alert the department.  All HMP participants will be monitored by this system.  Random visits are conducted by departmental staff to ensure program compliance.

The Prince George's County Department of Corrections (PGCDOC) is responsible for the custodial care of pretrial and sentenced individuals.  The *commitment* is the legal document that authorizes the incarceration.  There are different types of commitments that employees are to familiarize themselves with the different types so they can see the correlation between the courts, the participant, and the HMP program.  Below are the various types of commitments:

## Types of Commitments

1) <u>In Jail Court Referred Commitments</u>
   Defendants incarcerated/detained who are court-referred to the HMP for eligibility determination.
2) <u>Split Sentence Commitments</u>
   Split Sentence Commitments are those in which a Judge sentences a Defendant to serve a prescribed period of incarceration and recommends the remainder of the sentence to be served on the HMP.
3) <u>Deferred Commitments</u>
   At the time of sentencing, the Judge may defer the start date of a Defendant's sentence. Upon receipt of the commitment, unless the defendant has been ordered to report on a specific date by the Court, the Defendant will contact the Monitoring Service and schedule an interview prior to the start date.  A Defendant reporting to HMP on a deferred commitment will be handled in the following manner:
   a) The Defendant must turn himself/herself in to the PGCDOC based on the court's deferred commitment sentence turn-in date.
   b) Once the Defendant is processed into the facility, s/he will be met by the HMP Program Manager or his/her designee.
   c)  If an interview has not already been completed, one will be completed at that time.
   d)  If an interview has been completed, the information will be reviewed with the Defendant to ensure information is still accurate.
   e) The HMP Program Manager or designee will conduct an updated criminal history check for any new or pending charge(s), warrant(s) check, and NCIC.

JA1314

f)  The completed case will be submitted to the HMP Unit Coordinator for review.

g)  The HMP Unit Coordinator will submit the recommendation through the chain-of-command for final approval.  In the absence of the Division Chief or Assistant Division Chief, the Section Chief of Community Supervision will make a recommendation.

***Note:***  In cases where the court orders electronic monitoring and the Defendant is reporting to the Department of Corrections to immediately start the program, the procedures under "Deferred Commitments" will be followed.  At no time will an inmate being released from the facility be permitted to drive themself home.  The Records Unit will forward a copy of all deferred commitments to HMP.  The HMP Program Manager will keep an electronic index file/tickler system of all deferred commitments to ensure Defendants report to the facility/PGCDOC as directed.  In the event a Defendant does not appear, it will be the responsibility of the Program Manager to notify the Records Unit Coordinator. The Records Unit Coordinator will complete a request for a Bench Warrant and send it to the Sentencing Judge.

## **Definitions**

1.  Courts: The judicial system or a court official associated with either the Fifth Judicial District Court and/or the Seventh Judicial Circuit Court.

2.  Home Monitoring Program: The Department of Corrections' alternative-to-incarceration program where pretrial defendants and sentenced offenders are court-ordered, given the option, or selected to participate in the program.

3.  Radio Frequency Device (RFD): – ankle bracelet device that attaches to the participant and monitors the participant while confined to residence.

4.  Global Positioning System (GPS): satellite tracking that identifies the location the whereabouts of participant while in the community.

5.  Road Sheet: Departmental form used by HMP Investigators to verify status of the participant to ensure program compliance.  The form collects participant demographic information such as: participant's name   participant's status (pre-trial or sentenced), residence address and phone number, date/time visited/checked, equipment check verification, type of check (phone/on-site), staff name/signature and comments.

6.  Level IV Electronic Monitoring – court-ordered electronic monitoring for pretrial Defendants.

7.  Forthwith Bench Warrant – a show cause warrant requested by DOC and issued by the Courts for program non-compliance.

## Program Eligibility

Participants are either pretrial or sentenced Defendants that are authorized to eligibility determination.  All participants must meet these HMP's eligibility requirements:

1) Must have a verifiable Prince George's County address as documented by a rental agreement or mortgage statement and a government-issued picture ID.
2) No outstanding warrants, detainers, and/or pending charges from other jurisdictions.
3) Have and maintain an operable landline (telephone) or cellphone.
4) Conditions of the residence are a consideration of eligibility, e.g., illicit substance use, condemn properties, and known criminal activity.

Additional considerations are given to the criteria stated in Maryland Rule 4-216.1.

## Program Overview

1. The HMP staff will daily check the sentence commitment report to determine potential program participants.  Also, a sentenced Defendant may request to participate in the program.  The Pretrial Investigation Unit will send the daily bond hearing sheets to the HMP for its notification of potential pretrial Defendants court-referred to Level IV electronic monitoring evaluation.   Once the HMP receives a referral, the program will have 72 hours to complete an interview with the detainees.  All cases must have a prescreening interview and criminal history compiled before program placement date.  All prescreening interviews will be scheduled and set up by the HMP staff.

2. The HMP Program Manager or designee will interview and conduct a criminal history profile on the offender and forward a recommendation through the Section Chief of Community Supervision to the Assistant Division Chief/Division Chief for approval. If the HMP manager or designee discovers an ineligible criminal history, the HMP manager will have the Asst. Division Chief or Division Chief to affix signature to ineligibility form and notification will be made to the offender within 5 days.

3. The HMP staff will conduct a complete criminal history record check.  The check will be conducted in the following format:
   a) Offender Management System (OMS).
   b) Police PIX3.
   c) Sheriff Warrants (RMS).
   d) Court System (CAP).
   e) Maryland State (SID):
   f) Meters (NCIC).
   g) Parole & Probation (OBII)

4. The HMP staff will interview the prospective participant using the Unit's Interview Form. The form will be completed in its entirety to obtain the Defendant's demographics. Individuals coming from the community must have proper identification to be allowed into jail for an interview.

5. Employment/educational/vocational verification – Employment and vocational activities must be verified before the Defendant's involvement.   The supervisor must agree to provide a work schedule to HMP staff.  If during the investigation discrepancies appear in residence, employment, or criminal history, the HMP manager will notify the Court in writing.  The program manager will be guided by the Court's decision.

6. Review Process– when HMP staff completes the verification process, the case file will be submitted to the program manager for their review and initial approval.  The program manager will submit it through the Chain-of-Command (Section Chief of Community Supervision, Assistant Division Chief/and or Division Chief of Community Corrections) for final review and approval.

7. If the staff has been unable to verify necessary case information within ten (10) business days of receipt of the courts bond determination order, a note will be placed in OMS to that effect, and the Court, State's Attorney's Office, Office of the Public Defender, and/or private counsel will be notified via email, and Defendant will be notified via departmental mail. If the Defendant is not eligible for release, a letter will be submitted to the Court as soon as a determination of ineligibility is made but all eligibility determinations must be made within 10 business days of receipt of the courts bond determination order.  Court Correspondence will be used for Defendants who received a court authorization for eligibility determination but are ineligible for program placement and the correspondence will explain the reason(s) for the determination of ineligibility. The detainee, defense attorney, and prosecutors will be copied on all correspondences.

8. Approval Process – The Chain-of-Command reviews and approves the case file.  Upon final approval, the information contained in the file must be signed by at least two of the following: Section Chief of Community Supervision, Assistant Division Chief/and or Division Chief of Community Corrections:
   a. The HMP Case Manager will notify and ensure the appropriate Release Form is submitted to the Records Unit with a complete NCIC/MILES/1029 printout.
   b. The transporting staff, typically an Investigator, will verify that the Defendant's Prince George's County residence is still valid.
   c. The transporting staff will call the residence to ensure someone is readily available at the residence before the detainee is released.

    d. A copy of the HMP Road Sheet will be given to the transporting staff before transporting the defendant to their residence.

    e. The transporting staff will notify the Records Unit and the Records Unit will prepare the defendant for release.

8. Release Process – When a Defendant is ready for release, the following will take place:

    a. Security staff escorts the Defendant to the Release Team for clearance. The Release Team turns over the participant to the HMP transporting staff.

    b. HMP staff transports the participant to the approved residence and connects monitoring equipment.

## Program Acceptance/Enrollment

**Orientation and Agreement**

The approved Defendants and the authorized residence owner will receive an orientation from the HMP staff before the Defendant is placed on the program.  The purpose of the orientation is to inform the stakeholders about program expectations and the importance of remaining in compliance with program guidelines.

The following information will be fully explained to Defendants, and they must sign the Program Agreement acknowledging their understanding of the rules of the program before release:

1) Operation & Use of Equipment
    a) Abuse or misuse of equipment is grounds for violation.
2) Rules & regulations of the program & Court-Ordered restrictions
3) Enrollment in required programming
4) Financial Obligations
    a) Program fees if applicable
    b) Program fees waived for unemployed participants
    c) Family responsibilities, etc.
5) Schedule of Approved Activities
6) Residential visits by monitoring Services Investigators
7) Rule Violations
    a) Adjustment procedures and possible sanctions.

**Substance Use Treatment and Testing**

Defendants are required to remain drug and alcohol-free.  Defendants will be required to report to the PGCDOC Drug Lab for random drug testing.  The HMP Program Manager will maintain a weekly rotating file of all program participants.  The Drug Monitoring Lab will notify the Program Manager within 48 hours of any positive test results.

The Program Manager, with administrative approval, may modify these procedures based on individual circumstances.  Participation in substance use treatment or support groups is encouraged and may be required if participant tests positive for drugs.  The Investigator suspecting a violation will notify the Program Manager who will schedule a random test

Defendants will be required to remain drug and alcohol-free.  However, those who submit sixteen (16) consecutive negative urinalysis tests may be reduced to once per week.  If a positive test is provided or a participant fails to report, they will be required to increase their testing days and attend a community-based treatment program.  Notification of this sanction will be provided to the Court.

## <u>HMP Staff Daily Duties and Responsibilities</u>

## I. Program Manager or Designee:

A. Will examine and review the following:

    1. Check daily monitoring violations, to include equipment failures and follow up.

    3. Review previous night's Road Sheet and submit to Section Chief.

        a. Incident reports and recommendations must be forwarded through the chain of command.

        b. Notify staff of any action taken because of their report on home visits.

    4. Review all court-ordered commitments.

    5. Examine all program files for accuracy and complete documentation quarterly.
    6. Forward all cases and subsequent recommendations through the chain-of-command for approval.
    7. Ensure disciplinary and adjustment procedures are followed as outlined in P&P 14.
    8. Submit all violations requiring court notification through the chain of command.
    9. Submit monthly statistical report of program activities through the chain of command. (Number of investigations; number of hearings; number of new installs).
    10. Maintain a 31-day file (tickler)of cases to be terminated, added to the program, deferred commitments, or to be reinstated to the program.
    11. Review monthly bills and payments to ensure accuracy.
    12. Ensure and document that violations are communicated up the chain-of-command and the Courts as necessary, within 48 hours.

## II. Case Manager:

When a Defendant is referred to participate in HMP, they will be assigned a Case Manager.  The Case Manager will be responsible for the following:

1. Ensure complete criminal history.
2. Contact owner/leaser of participant's address to explain program and obtain their approval.
3. Review Pre-Trial Fact Sheet, commitment, and attached records.
4. Ensure complete interview and verifications.  Staff will complete only those areas not verified by pre-trial staff.
5. Contact owner/leaser of participant's address to explain program and obtain their approval.

## III. Investigator:

A. Investigators will conduct the following tasks:

1.  Submit a Road Sheet to the Program Manager for approval.
2. Conduct on-site visits to Defendant's home, school, and work at least three times per week.
3. Review and respond to all special requests from program participants, specifically, approval/denial of leaving residence, attending church, employment interviews, etc.

4. Maintain drug monitoring file.

5.  Maintain equipment as directed by the Program Manager.

6.  Transport new participants and connect monitoring equipment as directed.

7. Conduct random checks with participant's employer, household members, etc. to verify compliance.

8. Submit copies of the On-site Form to Program Manager.

9.  Complete On-site Form in its entirety.

## III. Transport Responsibilities:

A. When transporting a Defendant to their residence for equipment hook-up, Investigators or staff will:

1. Notify Central Control of the program participant's address.
    a.  Central Control will log unit #, time, and location.
2. Upon arrival at Defendant's residence:
    a)  Notify Central Control of arrival
    b)  Central Control will log unit #, time, and location
    c)  Begin equipment hook-up to last twenty (20) minutes
3. If hook-up takes longer than twenty (20) minutes, Investigator will advise Central Control of estimated time to complete

4.  Central Control will log the time projected.
5.  If hook-up is not completed in projected time, Investigator will notify Central Control via telephone and ask for a time check.
6.  Central Control will log the time of the time check request.
    a)  If Investigator does not contact Central Control at expiration of time, Central will attempt to contact the Investigator or program participant's telephone number located on the log.
    b)  If contact cannot be made, immediate notification to Shift Commander will be made for further instruction.  Shift Commander will then initiate a welfare check.
7.  Investigator will contact HMP manager and Central Control upon completion assignment.
8.  Upon completion of assignment, investigator will return to workplace or personal home.


B.  Random On-site checks:
Random on-site checks are to be done 3 times-a-week
1.  Investigator will contact Central Control by phone, notifying their location.
2. Central Control Officer will log the location and the time.
    a. If the on-site checks last longer than ten (10) minutes, Investigator will check back in every 10 minutes until complete.
    b.  If Central Control does not hear back from the Investigator as scheduled, Central Control will initiate a call back to the Investigator.
    c.  If no contact is made, Central Control will immediately contact the shift Commander for further instructions.
    d. Shift Commander should authorize contacting Prince George's County Police to have site immediately checked including checking for the Investigator's vehicle.  The Vehicle ID number and description of the vehicle will be placed on the Locator List next to the Investigators' names.
    e.  If contact is made and investigator responds with 10-59 (hostage) or SIG 13 (need help, in trouble), Central Control will immediately contact Prince George's County Police Communications advising we have an investigator in trouble: give location, name of program Defendant, name and other relevant information.
    f. Notify Shift Commander
        i. Shift Commander will:
            a. Contact Processing instructing them to:
            b. Retrieve Personnel Identifiers of Defendant from Inmate Accounting system
            c. Retrieve picture of Defendant
            d. Ensure incident report is written
            e. Will ensure notification procedure is initiated

**JA1321**

    3. If the investigator believes the location may not be safe, the investigator may call the participant and ask the participant to come outside for verification. Investigator shall document the reason for the location being unsafe on the Road Sheet.

## Violation Procedures

Home Monitoring Program Responsibilities**:**

Once a Defendant is released to HMP, they are expected to follow all program guidelines. Any program violation(s) will result in appropriate disciplinary action.

HMP Staff has approximately three hours to investigate alleged violations and make notification through the chain of command. Written notification of the violation shall be made to the **Director and** the **Courts within 24 hours**.  If the immediate supervisor is unavailable, staff is to move up the chain-of-command until they reach the supervisor.

Violations Occurring During Non-Operational Hours**:**

1) Upon notification of a violation, immediately call the program Defendant's residence via a telephone:
   A) Contact made
      1) Ascertain problem and resolve.
   B) No contact made
   1) Call the Monitoring Program voice mail to determine if the program Defendant left any messages.
   2) Call other Prince George's County Public Safety/Police/Hospitals to determine if they responded to any assistance calls for the program Defendant's residence.
   3) Notify the HMP Program Manager.

Cell Phone Alerts

Program Manager Responsibilities**:**

1. Manager must be available in emergency situations to provide supervision to the staff working the call and ensures communication moves in accordance with departmental policies and procedures and to the appropriate chain-of-command as needed.

Staff Responsibilities**:**

1) Responds to reported violations received from their assigned cellphone.  For any violation that cannot be resolved during business hours, the staff contacts the Program Manager for instruction.
   a) Anklet Tampered – Goes to location and investigate; Checks Anklet for damage (cut, tear, etc.).  If intentionally damaged, contact the Program Manager.
   b) If there is no damage, reset tamper.
2) Upon arrival at the Defendant's residence (participant home)

     a)  Check equipment for proper working order.
     b)  Re-explain program rules and regulations of remaining within the control area.

1)  If the participant is not home:

     a)  Gather information from other residents and/or neighbors about the Defendant's whereabouts and when they were last seen.

          a.  Contact the Public Safety Communication System to see if Police/Fire has any call(s) for assistance at this address.

          b.  Contact the Defendant's employer if possible.

     b)  If whereabouts cannot be explained, contact the HMP Program Manager.

     c)  Complete an Incident Report.

## Disciplinary/Adjustment Procedures

Any violation of the HMP rules or court-ordered restrictions will result in some form of disciplinary action. Disciplinary action may range from counseling to re-incarceration. All disciplinary actions must be reviewed and approved by the Program Manager or above.

The following procedures will be utilized:

1)  The Defendant will be required to report to PGCDOC for an administrative hearing.
2)  Staff will follow the PGCDOC policy for Disciplinary Hearing
3)  The Court, SAO, OPD and/or private defense counsel must be notified the Defendant is being re-incarcerated.
4)  In cases involving emergent circumstances **(anytime a Defendant poses a threat or a danger to others)**, staff may request a Bench Warrant without an Administrative Hearing with the approval of management.

### Infractions:

#### Minor Infractions

1)  Failure to notify staff if delayed and not able to return to residence by scheduled time.
2)  Failure to make scheduled call-in.
3)  Failure to respond to page/message if acknowledged.
4)  Failure to cooperate with or obey requests by staff.

#### Major Infractions

1)  Failure to maintain an operable cellphone or a landline.
2)  Changing telephone number without obtaining staff approval.
3)  Use of an extension telephone, cordless telephone, I.D. block, or other unauthorized telecommunications equipment of features.
4)  Failure to reside at approved residence.

**JA1323**

5) Failure to inform staff immediately of a change in school/work status or location, reduction or increase in hours, or schedule change.
6) Failure to go or return directly from school/work or other authorized locations.
7) Failure to be able to account for time whole on authorized leave from residence.
8) Unexcused absence from school/work or other authorized destination.
9) Threatening language or combative posture toward staff and or threatening staff with bodily harm or with any offense against his/her person.
10) Lying or knowingly providing a false statement to staff.
11) Two (2) documented minor violations.
12) Re-arrest.

**Note:** Loss of phoneline, housing, or other program requirements that occur outside of the Defendant's control are not to be considered rule violations.

**<u>Sanctions</u>**:

For minor and major infractions, one or more of the following sanctions may be imposed:
1) Verbal counseling (2) by the case manager.
2) Written warning (final warning)
3) Decrease the number of pre-authorized locations.
4) Bench warrant requested for re-incarceration.

<u>Reincarceration Process</u>

1. When evidence indicates a need to re-incarcerate, the following steps will be initiated:
   a) A decision to re-incarcerate must be reached by the appropriate supervisor.
   b) Monitoring Program staff processing the reincarceration must notify the Shift Commander.
   c) The Records Unit will be notified by either the Program Manager or the responsible Investigator.
   d) Program staff will cut the anklet off the participant prior to their release to Security staff.
   e) The program participant's family will be notified by the Monitoring Program staff.
   f) The Presiding Judge will be notified in writing.
   g) HMP vendor will be contacted to deactivate equipment and discharge the participant from their system.
   h) Arrangements will be made to pick up the equipment at the residence.
   i) Incident Report will be completed in OMS, and a copy will be distributed to the Records Unit and the chain of command.
   j) A copy of the hearing will be submitted to the Classification Unit.
   k) A copy of the hearing will be placed in the detainee's Monitoring Program base file folder.

**JA1324**

l) In cases where Defendants are incarcerated by agencies outside of HMP, staff will coordinate with Security to retrieve the equipment.

Obtaining Arrest Warrants

When obtaining an arrest warrant the following procedures are to occur:

1) The Investigator must complete the "Application for Statement of Charges" in its entirety.
2) The Investigator must appear before a District Court Commissioner and present the completed application for the arrest warrant to be issued.
3) Once the arrest warrant is issued by the District Court Commissioner, it will be hand-carried to the Prince George's County Sheriff's Department to be processed.

JA1325

**Pretrial Release Process**

After a defendant's initial appearance before a Commissioner, the defendant may be released on their own recognizance and, if not released on their own recognizance, then the defendant will be held, either on a bond or on no bond, and a bond review hearing should be scheduled by the Court before a Judge on the next available court date.  If a money bond has been set by a Commissioner or a Judge, then the defendant must post the bond amount to be released.

Individuals detained at the Prince George's County Department of Corrections (PGCDOC) are detained because a judicial officer of the courts (Commissioner and or Judge) has ordered the defendant to be committed (held) to the custody of the PGCDOC.

If you listened to or attended a bond review hearing, you witnessed a hearing held by a Judge of the District Court of Maryland or the Seventh Judicial Circuit Court of Maryland, or a Judge sitting in senior status.  At the initial bond review hearing, and subsequent bond review hearings, the Judge has the options of, included, **but not limited to**, releasing on personal recognizance, lowering the bond, raising the bond, allowing the bond to remain the same, or authorizing Pretrial Services of PGCDOC to determine eligibility under the Pretrial Release Program that is described below.  If a defendant is authorized by the Judge under the Pretrial Release Program, then they may be released on a level of pretrial release but only if eligible. The Judge may also require that Pretrial Services of PGCDOC verify certain information prior to release.  If found eligible following an investigation by the Pretrial Release Program, then the defendant will be released and supervised by PGCDOC in accordance with the Pretrial Release Program.  If a defendant is found ineligible under the Pretrial Release Program or no determination of eligibility is made within ten (10) business days after the authorization by a Judge for pretrial release eligibility determination, then PGCDOC will notify in writing as soon as possible or upon the expiration of the ten (10) business days period, the defendant, the defendant's counsel, the Prince George's County State's Attorney's Office (SAO), and the Court of PGCDOC's determination and recommendation or that no determination has been made.  The defendant or their counsel may then request in writing, and the Court may grant, another bond review hearing where the Court may

consider the determination by Pretrial Services of PGCDOC, and/or any additional arguments by the SAO or the defense.

## Pretrial Investigation Unit

During the initial intake process, the PGCDOC's Pretrial Investigations Unit will interview the defendant. The interview will collect personal and criminal history information that will be used at the bond review hearing to provide the Judge with information to assist the Judge's decision regarding bond, personal recognizance, or pretrial release. If the defendant is released on personal recognizance, then the defendant's release will occur immediately after processing the release and their responsibility will be to report to their scheduled court dates and comply with any conditions including not engaging in criminal conduct and appearing in court when required to do so. If a defendant is granted bond, then they will be required to make the required cash or minimum percentage (%) costs to obtain release on bond and they will be responsible to report to their scheduled court dates and comply with any conditions including not engaging in criminal conduct and appearing in court when required to do so. If a defendant is released on pretrial supervision, they will be supervised by the pretrial program granted; required to follow the program conditions and report to their scheduled court dates and comply with any conditions including not engaging in criminal conduct and appearing in court when required to do so.

## Pretrial Release Program

The Pretrial Release Program is a supervisory alternative-to-incarceration program that allows those committed to the custodial care of the jail to be released from incarceration while awaiting adjudication of their case. Program eligibility is based on a number of factors outlined in Maryland Rule 4-216.1 that include the seriousness of current charges, past criminal history, history of failure to appear in court, prior pretrial release history and program compliance, parole and probation violations, and significant and social ties to the local community. Note: Any defendant charged with an offense considered to be serious and violent is only and potentially eligible for a Level IV. PGCDOC departmental staff are responsible for the verification of program eligibility and will conduct interviews with all defendants recommended to the program by the Court and/or any self-referrals. Any inmate interested in the Pretrial Release Program may submit an Inmate Request Form to the attention of the Population Management Division. If found to be eligible, program participants are assigned to a supervisory level that can be authorized by a Judge at a bond review hearing and/or referred by departmental staff

2

for judicial authorization.  The Population Management Division of PGCDOC will respond to all Court recommendations and self-referral requests within ten (10) business days regarding a defendant's eligibility.  For anyone who does not meet the eligibility criteria of the Pretrial Release Program, departmental staff will provide the Court, SAO, the defendant, and the defendant's counsel with the ineligibility status in writing.  If a defendant is deemed ineligible due to status changes, departmental staff will verify any status changes within 10-15 business days.  If there is any status change that would deem a defendant eligible, departmental staff will notify the Court for approval and automatic admittance to the program.  It is vitally important that a defendant provide accurate, thorough, and verifiable information to the PGCDOC's Pretrial Investigations Unit personnel when they are interviewed.  The Pretrial Investigations Unit's personnel will attempt to verify the information a defendant has voluntarily provided.  The Pretrial Investigations Unit's personnel will contact the housing unit a defendant is assigned to if they need or require additional information from a defendant.

Defendants with detainers from other jurisdictions are generally ineligible for participation in the Pretrial Release Program.

The Pretrial Release Program has four (4) supervisory levels.  Once accepted into the program, a defendant will be placed on a supervisory level and must adhere to the program requirements of the assigned level.  Below is an outline of the supervisory levels:

Level I

Defendants assigned to Level I have been arrested and detained on a non-violent misdemeanor, for example, fishing without a license, non-felony Motor Vehicle Association case/fine, and trespassing/vagrancy.  The defendant must also have no criminal history, no failures to appear, and no pending cases.  This level requires weekly calls to the assigned Case Manager.

Level II

Defendants assigned to Level II are more likely to be in jail for the first or second time with a criminal history.  However, their record must reflect no recent convictions involving felony or violent crimes and they may only have up to three (3) failures-to-appear in court.  This level requires contacting and meeting with the assigned Case Manager every two (2) weeks and weekly drug testing.

Level III

Defendants assigned to Level III are more likely to have an extensive criminal history and/or more serious charges. This level requires contacting and meeting with the assigned Case Manager weekly and weekly drug testing.

3

Level IV (Home Monitoring Program)

Defendants assigned to Level IV are charged with serious and violent felonies. This is the most restrictive supervision. It requires participants to be supervised and monitored through a global positioning system (GPS) and an electronic device. The electronic device is affixed to a defendant's leg and must be remain intact during the entire time in the program. Defendants assigned to this level are supervised by Case Managers and an Investigator daily and may be subject to weekly drug testing.

**If you have additional questions regarding the Pretrial Release Program, please call 301-952-7127 or 301-952-7200.**

Prince Georges County Department of Corrections


**ANSWERS TO APPENDIX A - Frazier et al. v. County DOC**


1. **Are some release considerations absolutely critical, while others are less so?**

   **Answer:** Yes. Public safety is the foremost concern when determining pretrial release risk, followed by risk of flight.  All variables are important when considering a pretrial defendant's release eligibility, but none exclusively prevent a release to some level of PGCDOC supervision.  A defendant charged with a violent felony may find themselves under greater scrutiny based on the heightened risk of committing a similar offense if released or flight. However, the seriousness of the offense is a consideration for the court, and regardless of the seriousness of the offense if a defendant is referred to the Pre-trial release program by the court the program does not then consider the nature of the offense in determining pre-trial release eligibility. Critical considerations are the ability to supervise the defendant if released which means that the defendant must have a verifiable address and phone.  Also, the existence of a detainer from another jurisdiction may disqualify a detainee from the program.


2. **Insofar as a fixed address or telephone are deemed critical for purposes of maintaining contact with a releasee, to what extent would the nonfulfillment of those factors automatically result in a defendant not being released? (Paraphrasing-what else can be done for individuals who are homeless, who do not have access to a telephone, and could separate arrangements be made to help place someone into a halfway house?**

   **Answer:**  Depending on the level of pretrial supervision set forth by the court, the ability to locate, communicate, and supervise a defendant are vitally important to both court proceedings and supervision requirements such as routine checks and drug testing.  As such, an address of some sort – be it private residence or shelter – and a reliable method of communication are paramount. PGCDOC staff have worked with community stakeholders such as the Department of Social Services to remedy such issues in individual cases.

1

Prince Georges County Department of Corrections

**3. How many calls per day, per week, should be made etc., by the Pretrial Division, to verify release considerations while the defendant remains detained?**

**Answer:**  The process of verification begins immediately.  Calls should be made daily to verify any information needed for release. It is important to note that the pretrial release program employees do not have any control over when individuals needed to provide necessary information contact them back.  Not having critical information from persons who do not return phone calls will delay and at times halt a defendant's ability to be released.  Pretrial Release, to include both the Case Management Unit and the Home Monitoring Program (Pretrial Release Level IV and County Home Detention), have always submitted written correspondence to the court once an individual is found to be ineligible for program placement, as well as the Office of the Public Defender and the State Attorney's Office, and private defense attorneys. This is now a written directive as part of the Home Monitoring Program standard operating procedure.

**4. Should the Pretrial Division be required to report back to the Bail Judge with respect to its efforts to determine an individual's release status both when it has determined that a detainee should be released and when it has determined that the individual should be detained? Should a form be used? What information should the form contain? With what level of specificity should the Pretrial Division's efforts be documented? With what frequency should the form be sent to the judge? Must the judge have to periodically sign off on the individual's release or his or her continued detention?**

**Answer:** PGCDOC does not notify the court if a defendant is released following the Court's order/referral to the program. It has always immediately submitted written correspondence to the court once an individual is found to be ineligible for program placement.  The Office of the Public Defender, the State Attorney's Office, and private defense attorneys receive a copy of the written correspondence' as well. The defendant also receives written notification via housing unit mail delivery. The standard operating procedure of the Home Detention Program/Level IV Pretrial Release now requires that the Court be

2

**JA1331**

Prince Georges County Department of Corrections

notified, within 10 business days of receipt of the Court's bond order referring a defendant to the pretrial release program, of any issues/problems that the program is having in making an eligibility recommendation, i.e., problem(s) obtaining or verifying necessary information.  The SOP also requires that, within 10 business days of receipt of the Court's bond hearing order, all eligibility determinations will be made and, in the case of ineligibility, the Court, defendant's counsel and the defendant are notified in writing of the ineligible recommendation and the reason(s) for the ineligibility determination.

5. **Should defense counsel be given expedited attention by the Pretrial Division when calling to inquire as to the status of a client/detainee, e.g., should counsel receive a response within 24 hours?**

**Answer:**  It is unrealistic to expect a response in 24 hours to inquiries regarding in-process new cases.  The Pretrial Release Program shares pertinent information with the judiciary, SAO and the defense attorneys regarding eligibility as soon as the information is available.  PGCDOC always strives to process and release pretrial detainees as quickly and safely as possible, which benefits both the Department and the defendant.

6. **To what extent has limited manpower in the pretrial division been the reason that pretrial decisions are delayed?  Is that an appropriate justification for delaying release decisions?  What level of manpower would permit more expedited pretrial release decision-making?**

**Answer:**  Limited manpower is an issue as investigators and case managers have extensive caseloads. The Department of Corrections has no control over the fluctuating crime rates and cases that are referred to the Pretrial Release Program. However, the current Pretrial Release Program staffing level believes that it can comply with its new standard operating procedure of making all pretrial release decisions within 10 business days and making notifications to the Court, counsel and defendant.  Decisions have always been made at PGCDOC as expeditiously as possible; obtaining verifications from the information defendants provide and obtaining alternative housing from community resources is most often the cause for any delay in release.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT FRAZIER, *et al.*, individually and on
behalf of a class of similarly situated persons,

     Plaintiffs,

     v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

     Defendants.

Civil No. **22-1768 PJM**

### MEMORANDUM OPINION

This putative class action has been brought by current and former detainees charged with crimes in Prince George's County, Maryland against Defendants Prince George's County, individual Prince George's County officials, and Maryland state court judges sitting in Prince George's County. It challenges the process by which pretrial release determinations are accomplished in Prince George's County.

In its Memorandum Opinion dated January 24, 2023 (ECF No. 90), the Court granted in part and denied in part the Motions to Dismiss of the County (ECF No. 64) and of the Judge Defendants (ECF No. 66). The Court dismissed all claims of Plaintiffs Frazier, Hernandez, Davis, D.P., Sharp, and Worthington, who were no longer being held as of the date of its Opinion (the "Released Plaintiffs"), as well as the claims for monetary damages of the remaining

1

"Detained Plaintiffs" (Butler, Williams, and Laguan-Salinas[1]). The Court preserved the claims of the Detained Plaintiffs against all remaining Defendants for prospective equitable relief.

On February 21, 2023, Plaintiffs filed a Motion for Reconsideration Under Rule 54(b) (ECF No. 97-2) and the Judge Defendants filed a Motion for Clarification and Reconsideration or, in the Alternative, to Substitute Defendant Proper Parties (ECF No. 98), both of which have been fully briefed.[2]

With leave of court, on April 28, 2023, the County filed a Revised Pretrial Release Standard Operating Procedure (SOP), then requested dismissal of the case based on its view that the new process resolved Plaintiffs' concerns and therefore rendered this lawsuit moot. ECF No. 124. Plaintiffs argue that the new process remains constitutionally deficient. ECF No. 126.

Having reviewed the parties' briefing on the Motions for Reconsideration and on the Revised Pretrial Release SOP, the Court **DENIES** the Motions for Reconsideration (ECF Nos. 97-2, 98) as well as the County's renewed request to dismiss Plaintiffs' Complaint (ECF No. 124).

## I.  BACKGROUND

The background and procedural history of this case are set forth in detail in the Court's Memorandum Opinion on the Motions to Dismiss, which the Court incorporates by reference. *See* Mem. Op. (Jan. 24, 2023), ECF No. 90. To recap in brief: any individual, including Plaintiffs, who is arrested in Prince George's County is entitled to receive a prompt bail review

---

[1] When the Court issued its Memorandum Opinion on the Motions to Dismiss on January 24, 2023, ECF No. 90, it was unaware that Laguan-Salinas had been released and therefore erroneously categorized him as a "Detained Plaintiff." Because Laguan-Salinas was released before January 24, 2023, he is dismissed from this case. Because Butler and Williams remained detained on January 24, 2023, they will continue as named Plaintiffs regardless of their custody status at present or in the future.

[2] The County did not file its own Motion for Reconsideration but responded in opposition to Plaintiffs' Motion.

hearing before a judge of the District or the Circuit Courts of the County. According to Plaintiffs, while the judge initially decides whether pretrial release or detention of the defendant is appropriate, in reality actual release of the individual occurs only when the Pretrial Division of the County determines that the individual satisfies certain eligibility criteria. And, Plaintiffs contend, the Pretrial Division is in practice making the release decisions on its own, based on vague and arbitrary factors, and, in any event, is taking too long to make its decisions. All the while the individual detainee remains in custody. As indicated, Plaintiffs persist in their challenge to the constitutionality of the recently revised Pretrial Release SOP.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) governs motions for reconsideration of orders that do not constitute final judgments in a case, such as the Court's Order granting in part and denying in part Defendants' Motions to Dismiss. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991). Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time." Fed. R. Civ. P. 54(b). Reconsideration of a non-final order under Rule 54(b) is left to the discretion of the district court. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). The end goal of reconsideration "is to reach the correct judgment under law." *Netscape Commc'n Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 547 (E.D. Va. 2010).

3

**JA1335**

### III.  DISCUSSION

A.    Plaintiffs' Motion for Reconsideration

Plaintiffs seek to reinstate their claims for monetary damages against the County on the grounds that quasi-judicial immunity is an individual defense not available to municipalities. They cite case law to the effect that, as a rule, a municipality is not entitled to absolute immunity under § 1983. *See* Pls.' Mot. Recons., ECF No. 97-3 at 4–6 (collecting cases).  As a general proposition, the Court agrees that municipalities are not immune from suit under § 1983.  But the Court views what is involved here as something different.

The Supreme Court has long directed courts to determine immunity from suit based on the function an entity performs, not merely the formal name of the entity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *Forrester v. White*, 484 U.S. 219, 229 (1988); *Burns v. Reed*, 500 U.S. 478, 485 (1991).  In this circumstance, Prince George's County, at least as the Court understands the current process, appears to be functioning as a county in name only: in fact, its involvement in the pre-trial release process "constitutes nothing less than the extension of a judicial function."  Mem. Op. (Jan. 24, 2023), ECF No. 90 at 17.  That factual distinction, in the Court's view, distinguishes what the County does here from those functions typically implicated in § 1983 lawsuits.  Nothing in the suit, as it stands, suggests that the Pretrial Division is refusing to implement a bail judge's decision, as for example, by declining to release an individual whom the bail judge has ordered to be released forthwith.  The judges are said to be delegating to the Pretrial Division the task of seeing whether a given individual should be released, based on certain factors, but it still appears to be left ultimately to the judge to decide whether the release criteria in a given case have been met.

The Court revisits the immunity analysis it articulated in its prior Opinion.

A judge's immunity extends to subordinates with respect to "functions that are more administrative in character [that] have been undertaken pursuant to the [judge's] explicit direction." *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008) (quotation omitted). In this case, from all appearances, the Pretrial Division resembles the many court employees who have previously been afforded judicial immunity for carrying out a judge's order. *See Shifflette v. Baltimore Cnty. Cir. Cts.*, No. 1:21-CV-3074-LKG, 2022 WL 36450, at *2 (D. Md. Jan. 4, 2022) (clerk of court who docketed a judge's order dismissing the plaintiff's petition, "an official act required by a judge," could adopt immunity); *Pope v. Fletcher-Hill*, No. 21-CV-2935-LKG, 2021 WL 5882464, at *2 (D. Md. Dec. 10, 2021) (clerk of court who followed the "legal requirements" in the Maryland Rules of Procedure when he docketed the dismissal of plaintiff's case for failure to prosecute held immune); *Williams v. United States*, No. CV DKC-21-537, 2021 WL 1720230, at *5 (D. Md. Apr. 30, 2021) ("United States Pretrial and Probation Office employees are also entitled to absolute quasi-judicial immunity for their role in investigating, preparing, and submitting reports."); *Grant v. Maryland*, No. CV PWG-17-2816, 2018 WL 1069363, at *2 (D. Md. Feb. 26, 2018) (granting immunity to Court Commissioners for setting conditions of release and bond, as authorized by the state court judges). While, as Plaintiffs allege, the Pretrial Division may be failing to implement the judges' release directives in a prompt and timely manner, at the end of the day it is virtually impossible to conclude that it is not acting "in obedience to" and under the "direction" of the judges. *Battle v. Morrison*, No. 97-1637, 1998 WL 116169, at *1 (4th Cir. Mar. 17, 1998). This particular case is not, in the Court's

5

view, an occasion to open the Pretrial Division, i.e., the County, to money damages simply for

not carrying out a judge's directives with greater possible dispatch.[3]

Plaintiffs attempt to distinguish the cases on quasi-judicial immunity that the Court cited

in its Memorandum Opinion on the Motions to Dismiss (ECF No. 90 at 16-18) by the fact that

the defendants there were individuals, whereas the County is not. But that distinction is not

conclusive. There has never been a rule that only individuals, and not entities, can come within

the protection of quasi-judicial immunity. To the contrary: *See Gilmore v. Bostic*, 636 F. Supp.

2d 496, 506 (S.D.W. Va. 2009) (finding that the West Virginia Parole Board was a "quasi-

judicial entity" that was entitled to immunity); *Goluszek v. H.P. Smith Paper Co.*, No. 93 C

5329, 1993 WL 358160, at *2 (N.D. Ill. Sept. 14, 1993) (holding that a committee of the Illinois

Supreme Court charged with administering attorney discipline was a "quasi-judicial entity" that

could invoke immunity).

The County's role in this case may also be distinguishable because the cases Plaintiffs

cite in their Motion for Reconsideration (ECF No. 97-3 at 4-6) ultimately stand for the

proposition that municipalities cannot invoke § 1983 immunity for their own independent

constitutional violations. *E.g.*, *Owen v. City of Independence, Mo.*, 445 U.S. 622, 650 (1980)

(holding that municipalities do not benefit from the qualified immunity of their own officers)

(emphasis added); *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 302 (1995)

"[A] municipality is not entitled to an absolute immunity for the actions of its legislature.")

(emphasis added). Here, the supposed constitutional violations that the Pretrial Division is said

to have committed are not their own violations but the violations that the judges, were it not for

---

[3] As an aside, the Court notes its concern that adopting Plaintiffs' view of the law would
potentially invite essentially unlimited opportunities for detainees to sue the County for monetary
damages whenever they feel their cases are not being handled in a manner they deem sufficiently
prompt.

6

the shield of judicial immunity, might be held to account for. *See* Mem. Op. (Jan. 24, 2023), ECF No. 90 at 17-18 ("[T]here can be no mistaking that the Judge Defendants' allegedly improper delegation of pretrial decisions by to the County is the very heart of Plaintiffs' claims.").[4]

There is a further distinction that can be made "between protection from liability simply for following a judge's order and protection from liability for carrying out a judge's order in a manner not sanctioned by the judge." *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008). The Court does not understand the Pretrial Division to be carrying out the judges' orders in an unsanctioned manner. Again, no judge has ordered the release of a Plaintiff that the Pretrial Division refused to carry out; all the judges in effect have been asking the Pretrial Division to evaluate a Plaintiff's eligibility, but the final word remains with the judges. For that reason, the facts of the present case are presumably distinguishable from those alleged in the recent settlement involving detainees at the Rikers Island complex in New York. Insofar as the Court has been able to discern the facts of that settlement, there was clear non-fulfillment of judicial orders because the named plaintiffs (and perhaps others) were being held for 18 to 23 hours after the posting of their bail, which should have triggered their immediate, unconditional release. *Lynch v. City of N.Y.*, No. 1:17-cv-7577-JGK-BCM (S.D.N.Y. Sept. 28, 2018). In contrast, the judges here have never issued an immediate, unconditional release order for the Plaintiffs that the Pretrial Division has ignored. The Pretrial Division, from all that appears, seeks only to apply criteria consistent with the judges' directives.

For all these reasons, Plaintiffs' Motion for Reconsideration is **DENIED.**

---

[4] Further, the Court notes that not all functions that a municipality performs automatically subject them to § 1983 liability, such as running a cafeteria or parking lot.

7

B.    The Judge Defendants' Motion for Clarification and Reconsideration or, in the
      Alternative, to Substitute Defendant Proper Parties

The Judge Defendants make a number of requests in their Motion for Reconsideration.

First, they seek clarification about whether the Judges who conducted the bail hearings

for the now-dismissed Released Plaintiffs have been dismissed as Defendants.  The short answer

is that they have not.  As the Court explained in its Opinion, "it makes sense to keep the current

roster of Judge Defendants in place" because this case remains a putative class action and

therefore "all of [the judges] might be subject to such remedy as the Court might order."  Mem.

Op. (Jan. 24, 2023), ECF No. 90 at 21.

Second, the Judge Defendants suggest that any basis for class certification is now void

because the Court has denied Plaintiffs' Motion for Class Certification (ECF No. 104).  The

Court did deny the Motion, but the denial was explicitly without prejudice and was made with

the clear understanding that Plaintiffs could renew their Motion for Class Certification after the

Court had resolved any Motions for Reconsideration.  The Court has not yet definitively

concluded that this suit may not proceed as a class action.[5]  Indeed, an Amended Complaint

would seem to be in order, given the County's adoption of the revised Pretrial Release SOP.

Third, the Judge Defendants seek clarification as to whether the Court dismissed the

claims against them in their personal capacities, leaving only the official capacity claims.  The

Court did just that.  The claims against the Judge Defendants will move forward only in their

official capacities.  Judges are not subject to personal liability unless they were acting "in clear

absence of all jurisdiction."  *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).  Nothing in the

suit suggests that the judges were so acting in the present case.

---

[5] For the same reason, there is no need, as Defendants request, to compel Plaintiffs to substitute
other non-party judges as Defendants.

8

JA1340

Fourth, the Judge Defendants argue that the Court erred in applying the *Ex Parte Young* exception to their potential liability for equitable relief because the facts alleged here do not establish that a "special relationship" existed between them and Plaintiffs. But the requirement for a "special relationship" is much less stringent than the Judge Defendants claim; it is enough to suggest that "some connection" exists between the two. *Doyle v. Hogan*, 1 F.4th 249, 254 (4th Cir. 2021). The Court believes that requirement has been met because the Judge Defendants in fact adjudicated and very likely will in the future adjudicate the release statuses of Plaintiffs (including the members of a possible future class).

Finally, the Judge Defendants re-argue their original points about justiciability, mootness, and failure to state a claim. But they raise no new authority suggesting why the Court's treatment of these issues in its Memorandum Opinion on the Motions to Dismiss (ECF No. 90) should, on reconsideration, be deemed erroneous.

For all these reasons, the Judge Defendants' Motion for Clarification and Reconsideration or, in the Alternative, to Substitute Defendant Proper Parties (ECF No. 98) is **DENIED**.

C.     Updated Pretrial Release SOP

On April 28, 2023, the County filed with the Court the updated Pretrial Release SOP. ECF No. 124. Changes appear to include: a requirement that release eligibility determinations be made within 10 business days of the bail judge's referral for release; that the Pretrial Division provide written notice to the bail judge within 10 business days of the judge's order of any issues it may be having with obtaining the information needed to make an appropriate eligibility determination; and, further, what appears to be a commitment by the Pretrial Division to verify any eligibility changes within 10 to 15 business days. ECF Nos. 124-1, 124-2, 124-3.

As noted earlier, the County believes this new process resolves all of Plaintiffs' concerns and that their claims should therefore be dismissed. Plaintiffs oppose dismissal, arguing that the new process remains constitutionally deficient in a number of ways, including that the Defendant Judges continue to delegate too much of the release decision-making to the discretion of the Pretrial Division. ECF No. 126.

Such changes as included in the new SOP may or may not be ameliorative at least in some respects. But the Court is not prepared to dismiss this case based on the County's submission alone. Plaintiffs will have the opportunity to file an Amended Complaint that addresses the updated policy with specificity so that Defendants can respond to a current rather than outdated process. Accordingly, the County's renewed request to dismiss Plaintiffs' Complaint (ECF No. 124) is **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** that:

1.  Plaintiffs' Motion for Reconsideration Under 54(b) (ECF No. 97-2) is **DENIED**.

2.  The Judge Defendants' Motion for Clarification and Reconsideration or, in the Alternative, to Substitute Defendant Proper Parties (ECF No. 98) is **DENIED**.

3.  The County's request to dismiss Plaintiff's Complaint (ECF No. 124) is **DENIED.**

4.  Within twenty (20) days from the date of this Order, Plaintiffs **MAY** file an Amended Complaint that addresses the County's updated Pretrial Release SOP.

5.  Within thirty (30) days from the date of this Order, counsel for the parties **SHALL SUBMIT** a Joint Proposed Scheduling Order to the Court that includes a timetable for discovery as well as a proposed briefing schedule to address, if appropriate, any Amended Motion for Class Certification that Plaintiffs might choose to file.

6. The Clerk of Court is **DIRECTED** to update the caption of this case to reflect that the sole remaining Plaintiffs are Christopher Butler and Miramba Williams.

A separate Order will ISSUE.

June 7, 2023

_____
PETER J. MESSITTE

11

**JA1343**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ROBERT FRAZIER, *et al.*, individually and on
behalf of a class of similarly situated persons,

    Plaintiffs,

    v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

    Defendants.

Civil No. **22-1768 PJM**

### ORDER

Having considered:

Plaintiffs' Motion for Reconsideration Under Rule 54(b) (ECF No. 97-2), Defendant Prince

George's County's opposition thereto (ECF No. 109), and Plaintiffs' Reply (ECF No. 111);

The Judge Defendants' Motion for Clarification and Reconsideration or, in the Alternative,

to Substitute Defendant Proper Parties (ECF No. 98), Plaintiffs' opposition thereto (ECF No. 110),

and the Judge Defendants' Reply (ECF No. 112); and

The County's request (ECF No. 124) to dismiss Plaintiff's Complaint in light of the new

pretrial release process, Plaintiffs' opposition thereto (ECF No. 126), and the County's Reply (ECF

No. XYZ);

No hearing being necessary, it is this _7_ day of June 2023, for the reasons stated in the

accompanying Memorandum Opinion,

### ORDERED

1. Plaintiffs' Motion for Reconsideration Under 54(b) (ECF No. 97-2) is **DENIED.**

**JA1344**

2. The Judge Defendants' Motion for Clarification and Reconsideration or, in the Alternative, to Substitute Defendant Proper Parties (ECF No. 98) is **DENIED**.

3. The County's request to dismiss Plaintiff's Complaint (ECF No. 124) is **DENIED.**

4. Within twenty (20) days from the date of this Order, Plaintiffs **MAY** file an Amended Complaint that addresses the County's updated Pretrial Release SOP.

5. Within thirty (30) days from the date of this Order, counsel for the parties **SHALL SUBMIT** a Joint Proposed Scheduling Order to the Court that includes a timetable for discovery as well as a proposed briefing schedule to address, if appropriate, any Amended Motion for Class Certification that Plaintiffs might choose to file.

6. The Clerk of Court is **DIRECTED** to update the caption of this case to reflect that the remaining Plaintiffs in this case are Christopher Butler and Miramba Williams.

_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
301-344-0632

## MEMORANDUM ORDER

TO:        Counsel of Record

FROM:    Judge Peter J. Messitte

RE:        <u>Butler v. Prince George's County, Md.</u>
             No. 22-cv-1768

DATE:    July 5, 2023

* * *

On June 29, 2023, the Court conducted a telephone conference with counsel for the parties to discuss the status of this case.  For the reasons stated on the record, the Court **ORDERS** that

1. Defendant Prince George's County **SHALL** have until July 7, 2023, to file a response to Plaintiffs' Motion for Entry of Judgment under Rule 54(b) or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132), and Plaintiffs shall have fourteen (14) days thereafter to file a reply;

2. The parties **SHALL** submit a joint proposed scheduling order to the Court no later than twenty (20) days after the Court rules on Plaintiff's Motion for Entry of Judgment under Rule 54(b) or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132);

3. Defendants need not file their Answers to Plaintiffs' Complaint until after the Court enters a Scheduling Order in this case; and

4. No later than July 31, 2023, Plaintiffs **MAY**, but are not required to, provide Defendants with a list of intended discovery pursuits (e.g. interrogatories, document production, and depositions), indicating the topics to be covered in such pursuits.  The list is intended only to give Defendants some idea of how discovery might proceed at such time as it begins.

Despite the informal nature of this ruling, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.

Peter J. Messitte
United States District Judge

CC:    Court file

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | Civil No. **22-1768 PJM** |
| v. | |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

This putative class action has been brought by current and former detainees charged with crimes in Prince George's County, Maryland against Defendants Prince George's County (the "County") and Maryland state court judges sitting in Prince George's County. It challenges the process by which pretrial release determinations are accomplished in the County.

The Court considers Plaintiffs' Motion for Entry of Judgment Under Rule 54(b), or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132). For the following reasons, the Motion is **DENIED**.

### I.

The background and procedural history of this case are set forth in detail in the Court's Memorandum Opinion dealing with Defendants' Motions to Dismiss and the Court's Memorandum Opinion with respect to the Motions for Reconsideration, which the Court incorporates by reference. *See* Mem. Op. (Jan. 24, 2023), ECF No. 90; Mem Op. (Jun. 7, 2023), ECF No. 128.

1

In its Memorandum Opinion dated June 7, 2023 (ECF No. 128), the Court denied Plaintiffs' Motion for Reconsideration Under Rule 54(b) (ECF No. 97-2) and the Judge Defendants' Motion for Clarification and Reconsideration or, in the Alternative, to Substitute Defendant Proper Parties (ECF No. 98).

On June 20, 2023, Plaintiffs filed a Motion for Entry of Judgment Under Rule 54(b), or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132). In their Motion, Plaintiffs ask the Court to enter partial judgment with respect to the Court's dismissal of their monetary damages claims against the County so that Plaintiffs may pursue an immediate appeal. *See* Doc. 128 at 6; *see also* Doc. 90 at 16-18. Alternatively, Plaintiffs ask the Court to certify for appeal the question of the County's quasi-judicial immunity pursuant to 28 U.S.C. § 1292. The County opposes the Motion.

Having considered the parties' arguments, no hearing being necessary, the Court **DENIES** the Motion for Entry of Judgment Under Rule 54(b), or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132).

## II.

A.    <u>Partial Judgment Pursuant to Rule 54(b)</u>

Plaintiffs first request the Court to enter partial judgment with respect to its dismissal of their monetary damages claims pursuant to Federal Rule of Civil Procedure 54(b).

Rule 54(b) permits a district court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties" where an order "adjudicates fewer than all claims or fewer than all parties," but only where the court "expressly determines there is no just reason for delay." Fed. R. Civ. P. 54(b); *see also Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335

2

(4th Cir. 1993) ("Rule 54(b) certification is recognized as the exception rather than the norm.").

In determining whether there is no just reason for delay, the court may consider:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 1335-36.

Additionally, "the fact the parties on appeal remain contestants below," as is the case here, typically "militates against the use of Rule 54(b)." *Id.* at 1336 (quoting *Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 45 (1st Cir. 1998)).

Based on these factors, the Court finds just reasons to delay entry of final judgment under Rule 54(b). Plaintiffs' money damages claim is directly tied to the question still before the Court of Defendant Prince George's County's liability for injunctive relief. It is still not clear, in the absence of discovery, just what it is that Plaintiffs claim Defendant County is doing illegally, much less what remedies against the County for its conduct, if any, would be appropriate. It is therefore premature for Plaintiffs to appeal the separate issue of money damages prior to the determination of what exactly Defendants are alleged to have done in this case. Indeed, the money damages claim may well be mooted in whole or part by a finding in favor of Prince George's County on the unadjudicated claim. Furthermore, certifying partial final judgment at this stage would further delay discovery in a case that both sides, the Court believes, are eager to resolve. Finally, entering

3

partial judgment would conflict with the Fourth Circuit's well-known aversion to piecemeal appeals, especially where "the parties on appeal remain contestants below."[1]

Accordingly, the Court **DENIES** Plaintiff's request for partial judgment pursuant to Rule 54(b) on the monetary damages question.

B. Certificate of Appealability Pursuant to § 1292

In the alternative, Plaintiffs request that the Court grant them a certificate of appealability with respect to the monetary damages issue pursuant to 28 U.S.C. § 1292.

Generally, "interlocutory appeals—appeals before the end of district court proceedings— are the exception, not the rule." *Johnson v. Jones*, 515 U.S. 304, 309 (1995); *see* 2 Fed. Proc., Lawyers Edition § 3:212 (2021) ("Because certification is contrary to federal policy against piecemeal appeals, it is not a routine procedure."). § 1292(b) provides the exception: a district court may certify for immediate review any nonfinal order that involves "[1] a controlling question of law as to which [2] there is a substantial ground for difference of opinion" and where "[3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292. But the Fourth Circuit has cautioned that § 1292(b) "should be used sparingly and thus that its requirements must be strictly construed." *Myles v. Laffite*, 881 F.2d 125, 127 (4th Cir. 1989).

The issue of monetary damages in this case does not meet the criteria for certification because it does not pose a "controlling question of law." The issue is not "controlling" because its disposition on appeal would not resolve the entire litigation, in which a viable claim for

---

[1] Plaintiffs already have one appeal pending before the Fourth Circuit regarding the Court's denial of a preliminary injunction. *See* Notice of Appeal (Apr. 11, 2023), ECF No. 119. Interlocutory appeal from the denial of a preliminary injunction is an appeal of right under 28 U.S.C. § 1292(a). Here again, it is the lack of clarity as to what the County is doing and what relief, if any, would be appropriate that informed the Court's decision to deny the Motion for Preliminary Injunction.

4

injunctive relief unquestionably remains. Further, the issue of monetary damages is not a pure "question of law." To be precise: Plaintiffs do not contest the existence of the legal principle of quasi-judicial immunity of judges, but rather the Court's extension of the principle to the County, based on a functional and fact-specific inquiry. § 1292(b) certification is not appropriate for that type of mixed-law-and-fact question.

Accordingly, the Court **DENIES** Plaintiff's request for a certificate of appealability on the issue of monetary damages pursuant to § 1292(b).

### III.

For the foregoing reasons, Plaintiffs' Motion for Entry of Judgment Under Rule 54(b), or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132) is **DENIED.**

Within thirty (30) days from the date of this Order, counsel for all parties **SHALL SUBMIT** a Joint Proposed Scheduling Order to the Court that includes a timetable for discovery as well as a proposed briefing schedule to address, if appropriate, any Amended Motion for Class Certification that Plaintiffs might choose to file.

A separate Order will ISSUE.

August 9, 2023

PETER J. MESSITTE
U.S. DISTRICT JUDGE

5

**JA1351**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BUTLER, *et al.*, individually
and on behalf of a class of similarly situated
persons,

      Plaintiffs,

      v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

      Defendants.

Civil No. **22-1768 PJM**

## ORDER

Having considered Plaintiffs' Motion for Entry of Judgment Under Rule 54(b) or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132); Defendant Prince George's County opposition thereto (ECF No. 140); and Plaintiffs' Reply (ECF No. 142); no hearing being necessary, it is, this $\underline{3}$ day of August, 2023, for the reasons stated in the accompanying Memorandum Opinion

**ORDERED**

1. Plaintiffs' Motion for Entry of Judgment Under Rule 54(b) or, in the Alternative, to Certify a Partial Appeal Under 28 U.S.C. § 1292 (ECF No. 132) is **DENIED**.

2. Within thirty (30) days from the date of this Order, counsel for the parties **SHALL SUBMIT** a Joint Proposed Scheduling Order to the Court that includes a timetable

1

for discovery as well as a proposed briefing schedule to address, if appropriate, any

Amended Motion for Class Certification that Plaintiffs might choose to file.

_____
PETER J. MESSITTE
U.S. DISTRICT JUDGE

2

IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

STATE OF MARYLAND

VS.

CASE No.: CT 2112 34X

Christopher Batty

## WAIVER OF RIGHTS /GUILTY PLEA

I understand by pleading guilty, I surrender the following rights:

1. The right to a speedy trial with the close assistance of competent counsel. The right to a trial conducted by a judge or a jury.

2. The right to a bench or jury trial with a jury composed of twelve (12) individuals selected from the community. The right to have counsel and myself challenge prospective jurors who demonstrated bias or who are otherwise unqualified, and the right to strike a certain number of jurors peremptorily. The right to have the jury instructed that I am presumed innocent and that presumption could only be overcome by proof beyond a reasonable doubt. I understand all twelve (12) persons of the jury, after hearing the evidence, must be persuaded by the evidence of my guilt beyond a reasonable doubt before I can be found guilty.

3. The right to have witnesses come before me in open Court and present evidence and/or testify.

4. The right to cross-examine all witnesses against me, which means asking those witnesses any reasonable questions about the evidence they are presenting....

5. The right to call witnesses to testify on my behalf and the right to have the Court issue summonses to require them to come to court.

6. The right to remain silent and not testify.

7. The right to inform the jury that if I choose not to testify, that my decision to do so could not be held against me or considered in any way.

8. The right to take the witness stand and testify on my own behalf.



STATE'S EXHIBIT
ct 2112 39x

I acknowledge the following:

1. I understand all the above rights.

2. That by pleading guilty, I am waiving all of the above listed rights, freely and voluntarily.

3. I give up my right to litigate the manner in which the State gathered the evidence against me, to include seizures, identification, confessions, etc. If I have already litigated those motions, they are not preserved for appeal.

4. I fully understand the charge of _Murder second degree_ and the elements of the offense(s).

5. The maximum penalty for the offense(s) to which I am pleading guilty is _____ (years/months) and the offense(s) is a felony and/or a misdemeanor.

6. That pleading guilty may result in a violation of parole or probation, if I am presently on parole or probation.

7. If I am not a citizen of the United States, a plea of guilty may result in a denial of United States citizenship and/or deportation.

8. I understand that if my plea includes a plea of guilty to a gun offense, I am required to register with the Prince George's County Police in accordance with County Code 14-189. I understand that if I fail to register in accordance with County Code 14-189, I could be charged with a misdemeanor, and upon conviction, I could be sentenced to incarceration and/or a fine. I understand that registration is mandatory and having acknowledged my understanding, it is my responsibility to ensure I get the information I need about registration.

9. I was not threatened in any way, through use of physical force, violence or intimidation, to enter this guilty plea. That I was not made any promises, commitments or induced in any way to enter this plea.

10. I am satisfied with the services of my attorney.

11. I will not be able to file a direct appeal in my case, but I can request an Appellate Court to review this plea and that request must be in writing and filed within thirty (30) days of today's date. I am aware that the Appellate Court will review my case on the following four (4) grounds: (1) jurisdiction, (2) legality of sentence, (3) voluntariness, and (4) my

attorney's competence. I am also aware that if I want my sentence reconsidered, I will have to inform the court within ninety (90) days of today's date.

Defendant: _Chris Butler_____ Date _07/31/23_____

I hereby certify that I am the defendant's attorney and have advised the defendant of:

1. The nature of the charge(s); the elements of all of the charges; all possible defenses to those charges and any and all plea offers.
2. The maximum penalty that defendant faces under this plea; and
3. Any applicable collateral consequences of this plea, including, but not limited to: immigration, parole, probation, and/or gun registration.

Attorney Name: _Allison Heldreth_____

Attorney Email: _allison.heldreth @ usdoj.gov_

Date: _7/31/23_____

Page 3 of 3

J1

# IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

## DAILY SHEET

State of Maryland

Case # C16CR22000236

Plaintiff,

Jason          Alston
Plaintiff's or States Attorney

— vs —

Miramme   Kinte  Williams
Defendant  ( ) Present  (✓) Not Present

Judge Rattal

Date  7-31-2023

Keith      Hiller
Defendant's Attorney

Court Clerk  782

[ ] J    [ ] C       Day_____
(J=Jury Sworn)      (C=Court Trial)
Deliberations Start Date: 10:16 am
Deliberations End Date: 10:25 am
# Alt. Jurors _____

## DOCKET ENTRIES

Hearing on Defendant's motion to Dismiss

Judge Rattal, CSD2022

Defendant's Motion to Dismiss-Granted

Case is hereby dismissed

Any bench warrants are recalled; Any bond discharged

Court costs waived

Defendant released as to this case only

P.G.C. FORM #2222 (Rev. 7/05)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BUTLER, et al.,

      Plaintiffs

      v.                     Civil Action No. 8:22-cv-01768-PJM

PRINCE GEORGE'S COUNTY, et al.,

      Defendants

\* \* \* \* \* \*

## SCHEDULING ORDER

This scheduling order is being entered pursuant to Local Rule 103.9. Any inquiries concerning the schedule should be directed to my chambers, not to the Clerk's Office. Any party who believes that any deadline set forth in this Scheduling Order is unreasonable may request in writing a modification of the Order or that a conference be held for the purpose of seeking a modification of the Order, and any such request must be made on or before the first date set forth in Paragraph I below. Thereafter, **the schedule will not be changed except for good cause.**

This case is subject to electronic filing. Please familiarize yourself with the procedures for electronic filing available at: www.mdd.uscourts.gov. You must use the electronic filing system for filing documents with the Clerk and sending case related correspondence to chambers. **When you electronically file a document that, including attachments, is 15 pages or longer, you must also provide me a paper copy of the document and a paper copy of the notice of electronic filing.** The paper copy should be sent to the Clerk's Office, not directly to my chambers.

I. DEADLINES

September 29, 2023:      Defendants' Answers

October 6, 2023:      Deadline for conference about discovery of electronically stored information. (If either or both parties intend to take such discovery, before the conference counsel should review the Principles for the Discovery of Electronically Stored Information in Civil Cases prepared by a Joint bench/bar committee published on the Court's website.)

| October 13, 2023: | Joint request for early settlement/ADR conference (This request will not postpone discovery unless otherwise ordered.) |
| October 13, 2023: | Initial report whether there is unanimous consent to proceed before a United States Magistrate Judge |
| October 20, 2023: | Deadline for Rule 26(f) report |
| October 20, 2023: | Discovery begins |
| October 27, 2023: | Rule 26(a)(1) initial disclosures |
| November 10, 2023: | Moving for joinder of additional parties and amendment of pleadings |
| February 16, 2024: | Plaintiff's Rule 26(a)(2) disclosures |
| March 8, 2024: | Defendant's Rule 26(a)(2) disclosures |
| March 29, 2023: | Plaintiff's rebuttal Rule 26(a)(2) disclosures |
| April 12, 2024: | Rule 26(e)(2) supplementation of disclosures and responses |
| April 26, 2024: | Discovery deadline; submission of status report |
| May 3, 2024: | Requests for admission |
| May 15, 2024: | Amended motion for class certification |
| May 29, 2024: | Responses to amended motion for class certification |
| June 12, 2024: | Replies in support of motion for class certification |
| June 25, 2024: | Class certification hearing |
| June 26, 2024: | Dispositive motions deadline |
| July 10, 2024: | Responses to dispositive motions |
| July 24, 2024: | Replies in support of dispositive motions |

2

Trial:                              Week of September 23, 2024

## II. DISCOVERY

<u>Initial Disclosures</u>

This is an action in which Fed. R. Civ. P. 26(a)(1) disclosures need not be made.

<u>Discovery Conference</u>

This action is exempted from the requirements of Fed. R. Civ. P. 26(d)(1) and from Fed. R. Civ. P. 26(f). However, you are encouraged to confer with one another immediately in order to: (a) identify the issue(s), (b) set a discovery plan, (c) determine if the case can be resolved before your clients incur further litigation expense, (d) discuss any issues about preserving discoverable information, and (e) establish a cordial professional relationship among yourselves.

<u>Procedure</u>

All the provisions of Local Rule 104 apply, including the following:

      a.    All discovery requests must be served in time to assure that they are answered before the discovery deadline. An extension of the deadline will not be granted because of unanswered discovery requests.

      b.    The existence of a discovery dispute as to one matter does not justify delay in taking any other discovery. The filing of a motion to compel or a motion for a protective order will not result in a general extension of the discovery deadline.

      c.    No discovery materials, including Rule 26(a)(1) and Rule 26(a)(2) disclosures, should be filed with the court.

      d.    Motions to compel shall be filed in accordance with Local Rule 104.8 and the applicable CM/ECF procedures.

      e.    Please be familiar with the Discovery Guidelines of this Court which are Appendix A to the Local Rules. Appendix D contains guidelines for form discovery requests and confidentiality orders that may be helpful to you.

## III. STATUS REPORT

The parties shall file on the day of the discovery deadline a status report covering the following matters:

3

**JA1360**

a.       Whether discovery has been completed;

b.       Whether any motions are pending;

c.       Whether any party intends to file a dispositive pretrial motion;

d.       Whether the case is to be tried jury or non-jury and the anticipated length of trial;

e.       A certification that the parties have met to conduct serious settlement negotiations; and the date, time and place of the meeting and the names of all persons participating therein;

f.       Whether each party believes it would be helpful to refer this case to another judge of this court for a settlement or other ADR conference, either before or after the resolution of any dispositive pretrial motion;

g.       Whether all parties consent, pursuant to 28 U.S.C. § 636(c), to have a U.S. Magistrate Judge conduct all further proceedings in this case, either before or after the resolution of any dispositive pretrial motion, including trial (jury or non-jury) and entry of final judgment.

h.       Any other matter which you believe should be brought to the court's attention.

## IV.  DISPOSITIVE PRETRIAL MOTIONS

If more than one party intends to file a summary judgment motion, the provisions of Local Rule 105.2.c apply.

After motions and responses thereto have been filed, I will advise you if a hearing is to be scheduled.

## V.  STATUS AND PRETRIAL CONFERENCES

I will set a scheduling conference after the status report has been filed, unless that report indicates that one or more of you intends to file a dispositive pretrial motion. In the latter event I will not set a scheduling conference until after I have ruled upon the motion (or the dispositive pretrial motion deadline passes without the anticipated motion being filed).

At the scheduling conference:

4

**JA1361**

    a.     I will set a deadline for submitting the pretrial order, motions in limine, proposed voir dire questions and proposed jury instructions;

    b.     I will set a pretrial conference date and a trial date; and

    c.     I will ask you whether a settlement conference or other ADR conference with a judicial officer would be useful, and whether all parties would consent to trial (jury or non-jury) before a U.S. Magistrate Judge. **Please confer with your client about these matters before the conference so that you are in a position to respond.**

## VI.  ATTORNEYS' FEES

In any case where attorneys' fees may be sought by the prevailing party, counsel must be familiar with the provisions of Local Rule 109.2 and the Rules and Guidelines for Determining Attorneys' Fees in Certain Cases which are Appendix B to the Local Rules.

## VII.  COMPLIANCE WITH LOCAL RULES AND CM/ECF PROCEDURES

The court will demand compliance with the Local Rules and CM/ECF procedures. If you need to obtain a copy of the Local Rules or the CM/ECF procedures, they are available on our website at www.mdd.uscourts.gov.

## VIII.  COMPLIANCE WITH PRIVACY PROTECTION RULE

Counsel are reminded that the Federal Rules of Civil Procedure were amended, effective December 1, 2007, with the addition of a new Rule 5.2 which has detailed requirements requiring the redaction of filings with this court that contain an individual's social security number, tax payer identification number, or birth date, the name of an individual known to be a minor, or a financial account number. It is essential that counsel comply with this rule and with the revised version of the Judicial Conference Privacy Policy adopted in March 2008. For further information on the Judicial Conference Privacy Policy see:
http://www.mdd.uscourts.gov/news/news/privacy_memo.pdf.

Date: September 1?, 2023

                                 Peter J. Messitte
                                   United States District Judge

5

**JA1362**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHRISTOPHER BUTLER**, *et al*, | * |
| | * |
| **Plaintiffs,** | * |
| | * |
| **v.** | * **Case No. 8:22-cv-1768 PJM** |
| | * |
| **PRINCE GEORGE'S COUNTY, MARYLAND** | * |
| **et al,** | * |
| | * |
| **Defendants.** | * |

## DEFENDANT PRINCE GEORGE'S COUNTY'S MARYLAND'S ANSWER TO CLASS ACTION COMPLAINT

Defendants, Prince George's County, Maryland, Corenne Labbe, Jefferey Logan, Kenneth Gray and Tanya Law, by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure 8 and 12, respectfully submit the following answer and defenses to the Complaint filed herein:

## I.  GENERAL DENIAL

The defendants deny the allegations of liability in the complaint and that this court has jurisdiction to entertain it.

## II.  RESPONSE TO SPECIFIC AVERMENTS OF FACT

### STATEMENT OF THE CASE

1.  Defendant denies the allegations in paragraph 1 of the Complaint.

2.  Defendant denies the allegations in paragraph 2 of the Complaint.

3.  Defendant denies the allegations in paragraph 3 of the Complaint.

4.  Defendant denies the allegations in paragraph 4 of the Complaint.

5.  Defendant denies the allegations in paragraph 5 of the Complaint.

6. Defendant denies the allegations in paragraph 6 of the Complaint.

7. Defendant denies the allegations in paragraph 7 of the Complaint.

8. Defendant denies the allegations in paragraph 8 of the Complaint.

9. Defendant denies the allegations in paragraph 9 of the Complaint.

10. Defendant denies the allegations in paragraph 10 of the Complaint.

11. Defendant denies the allegations in paragraph 11 of the Complaint.

12. Defendant denies the allegations in paragraph 12 of the Complaint.

13. Defendant denies the allegations in paragraph 13 of the Complaint.

14. Defendant denies Leslie Sharp was detained for 29 days after a judge ordered him released. Defendant is without sufficient information and knowledge to admit or deny the remaining allegations in paragraph 14 of the Complaint.

15. Defendant denies Elmer Laguan-Slainas was detained for 92 days after a judge authorized his release. Defendant is without sufficient information and knowledge to admit or deny the remaining allegations in paragraph 15 of the Complaint.

16. Defendant denies that Adrienne Worthington was detained for more than a week after a judge authorized her release. Defendant is without sufficient information and knowledge to admit or deny the remaining allegations in paragraph 16 of the Complaint.

17. Defendant denies that Plaintiffs Robert Frazier, Anibal Hernandez, D.P., Miramba Williams, and Christopher Butler remain jailed and denies that any of their detentions were illegal.

18. Defendant denies the allegations in paragraph 18 of the Complaint.

19. Defendant denies the allegations in paragraph 19 of the Complaint.

20. Defendant denies the allegations in paragraph 20 of the Complaint.

21. Defendant denies the allegations in paragraph 21 of the Complaint.

2

22. Defendant denies the allegations in paragraph 22 of the Complaint.

23. Defendant denies the allegations in paragraph 23 of the Complaint.

24. To the extent that paragraph 24 asserts Plaintiffs demand for relief, no answer is required.

## JURISDICTION AND VENUE

25. Defendant denies the allegations in paragraph 25 of the complaint because plaintiffs' lack Article III standing and because the Younger abstention doctrine applies.

26. Defendant denies the allegations in paragraph 26 of the Complaint and asserts that venue is proper in the Circuit Court for Prince George's County, Maryland.

## THE LAW OF BAIL AND PRETRIAL RELEASE

27. Paragraph 27 states a misleading conclusion of law to which no response is required, however, Defendant admits that the Supreme Court noted in its decision on issue involving the Bail Reform Act of 1984 that "in our society liberty is the norm, and detention prior to trial or without bail is the carefully limited exception." *U.S. V. Salerno*, 481 U.S. 739, 755,107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

28. Defendant denies that the assertion in paragraph 28 applies to all bail hearings.

29. Defendant denies that the Supreme Court stated that the right to pretrial liberty is "fundamental." *Id*. at 750 as asserted in paragraph 29 of the Complaint.

30. Defendant denies the "orders of pretrial detention are only constitutionally adequate if they are the product of a 'full-blown adversary hearing.'"  Defendant admits the remaining allegations in paragraph 30 of the Complaint to the extent that they apply to the judiciary, otherwise the allegations are denied.

31. Paragraph 31 alleges a misleading conclusion of law to which no response is

required, however, Defendant admits the allegations in paragraph 31 of the Complaint in so far is it applies only to "preventive detention".

32.   Defendant admits the allegations in paragraph 32 of the Complaint insofar as it applies to the judiciary.

33.   To the extent that the allegations in paragraph 33 are a restatement of Maryland Rule 4-216.1(b)(2)-(3), no answer is required.

34.   To the extent that the allegations in paragraph 34 are a restatement of Maryland Rule 4-216.1, no answer is required.

## STATEMENT OF THE FACTS

35.   To the extent that paragraph 35 of the Complaint fails to assert any allegations against Defendant Prince George's County, Maryland, no answer is required.

36.   Defendant admits the allegations in paragraph 36 of the Complaint.

37.   Defendant admits the allegations in paragraph 37 of the Complaint.

38.   Defendant admits the allegations in paragraph 38 of the Complaint.

39.   Defendant admits the allegations in paragraph 39 of the Complaint.

40.   Defendant admits the allegations in paragraph 40 of the Complaint.

41.   Defendant admits the allegations in paragraph 41 of the Complaint.

42.   Defendant admits the allegations in paragraph 42 of the Complaint.

43.   Defendant admits the allegations in paragraph 43 of the Complaint.

44.   Defendant admits the allegations in paragraph 44 of the Complaint.

45.   Defendant admits the allegations in paragraph 45 of the Complaint.

46.   Defendant admits the allegations in paragraph 46 of the Complaint.

47.   Defendant admits that the Intake Fact Sheet may not be complete or inaccurate due

4

**JA1366**

the unavailability of information or information is unable to be verified.

48.   Defendant admits the allegations in paragraph 48 of the Complaint.

49.   Defendant admits that the defense counsel may be asked to speak first due to the rebuttable presumption stated in Md. Ann. Code, Crim. Proc. §5-202.

50.   Defendant admits the allegations in paragraph 50 of the Complaint.

51.   Defendant admits the allegations in paragraph 51 of the Complaint.

52.   Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 52 of the Complaint.

53.   Defendant admits the allegations in paragraph 53 of the Complaint.

54.   Defendant admits the allegations in paragraph 54 of the Complaint

55.   Defendant denies the allegations in paragraph 55 of the Complaint.

56.   Defendant admits the allegations in paragraph 56 of the Complaint.

57.   Defendant admits the allegations in paragraph 57 of the Complaint.

58.   Defendant admits the allegations in paragraph 58 of the Complaint.

59.   Defendant denies the allegations in paragraph 59 of the Complaint.

60.   Defendant admits the allegations in paragraph 60 of the Complaint.

61.   Defendant denies the allegations in paragraph 61 of the Complaint.

62.   Defendant denies the allegations in paragraph 62 of the Complaint.

63.   Defendant denies the allegations in paragraph 63 of the Complaint.

64.   Defendant denies the allegations in paragraph 64 of the Complaint.

65.   Defendant denies the allegations in paragraph 65 of the Complaint.

66.   Defendant denies the allegations in paragraph 66 of the Complaint.

67.   Defendant admits the allegations in paragraph 67 of the Complaint.

68. Defendant denies the allegations in paragraph 68 of the Complaint.

69. Defendant admits the allegations in paragraph 69 of the Complaint.

70. Defendant denies the allegations in paragraph 70 of the Complaint.

71. Defendant denies the allegations in paragraph 71 of the Complaint.

72. Defendant denies the allegations in paragraph 72 of the Complaint.

73. Defendant admits the allegations in paragraph 73 of the Complaint.

74. Defendant denies the allegations in paragraph 74 of the Complaint.

75. Defendant denies the allegations in paragraph 75 of the Complaint.

76. Defendant denies the allegations in paragraph 76 of the Complaint.

77. Defendant denies the allegations in paragraph 77 of the Complaint.

78. Defendant denies the allegations in paragraph 78 of the Complaint.

79. Defendant admits the allegations in paragraph 79 of the Complaint.

80. Defendant admits that Pretrial Services Division makes a determination on whether the arrestee is eligible to participate in the Department of Corrections Pretrial Release program, a nonmandated program.

81. Defendant denies the allegations in paragraph 81 of the Complaint.

82. Defendant denies the allegations in paragraph 82 of the Complaint.

83. Defendant denies the allegations in paragraph 83 of the Complaint.

84. Defendant denies the allegations in paragraph 84 of the Complaint.

85. Defendant denies the allegations in paragraph 85 of the Complaint.

86. Defendant denies the allegations in paragraph 86 of the Complaint.

87. Defendant admits that in all cases Pretrial Divisions notifies the Court that the arrestee fails to meet the requirements for pretrial release through its program and the arrestee

**JA1368**

remains jailed until the Court modifies its bail determination or resolution of their criminal case.

88. Defendant admits that arrestee is notified of its eligibility determination by written notification, that his/her attorney is notified in writing, and that written notification is sent to the court. Defendant denies the remaining allegations in paragraph 88 of the Complaint.

89. Defendant denies the allegations in paragraph 89 of the Complaint.

90. Defendant denies the allegations in paragraph 90 of the Complaint.

91. Defendant denies the allegations in paragraph 91 of the Complaint.

92. Defendant denies the allegations in paragraph 92 of the Complaint.

93. Defendant denies the allegations in paragraph 93 of the Complaint.

94. Defendant denies the allegations in paragraph 94 of the Complaint.

95. Defendant denies the allegations in paragraph 95 of the Complaint.

96. Defendant denies the allegations in paragraph 96 of the Complaint.

97. Defendant admits that an ineligibility determination may be made based on no verifiable address. Defendant denies the remaining allegations in paragraph 97 of the Complaint.

98. Defendant denies the allegations in paragraph 98 of the Complaint.

99. Defendant admits the allegations in paragraph 99 of the Complaint.

100. Defendant admits the allegations in paragraph 100 of the Complaint but denies that such "institutional" behavior is not defined.

101. Defendant denies the allegations in paragraph 101 of the Complaint.

102. Defendant denies the allegations in paragraph 102 of the Complaint.

103. Defendant denies the allegations in paragraph 103 of the Complaint.

104. Defendant denies the allegations in paragraph 104 of the Complaint.

105. Defendant denies the allegations in paragraph 105 of the Complaint.

106. To the extent that the allegations in paragraph 106 are not asserted against the County, no answer is required.

107. To the extent that the allegations in paragraph 107 are not asserted against the County, no answer is required.

108. Defendant denies the allegations in paragraph 108 of the Complaint.

109. To the extent that the allegations in paragraph 109 are not asserted against the County, no answer is required.

110. To the extent that the allegations in paragraph 110 are not asserted against the County, no answer is required.

111. To the extent that the allegations in paragraph 111 are not asserted against the County, no answer is required.

112. Defendant denies the allegations in paragraph 112 of the Complaint.

113. Defendant denies the allegations in paragraph 113 of the Complaint.

114. Defendant admits that the in recent months, the jail population stood at more than 900 detainees and that during the pandemic the jail population was reduced to less than 600 detainees. Defendant denies the remaining allegations in paragraph 114 of the Complaint.

115. Defendant admits the allegations in paragraph 115 of the Complaint.

116. Defendant admits the allegations in paragraph 116 of the Complaint but denies that the presumption of innocence has any relevance because probable cause to believe the detainee(s) has committed a crime has been found by a neutral and detached magistrate to detain the accused and the court has issued a commitment order based on that finding requiring the jail to detain the arrestee.

117. Defendant denies the allegations in paragraph 117 of the Complaint.

**JA1370**

118. Defendant denies the allegations in paragraph 118 of the Complaint.

119.   Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 119 of the Complaint.

120. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 120 of the Complaint.

121. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 121 of the Complaint.

122. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 122 of the Complaint.

123. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 123 of the Complaint.

124. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 124 of the Complaint.

125. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 125 of the Complaint.

126. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 126 of the Complaint.

127. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 127 of the Complaint.

128. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 128 of the Complaint.

129. Defendant admits that it was sued for its response to the COVID-19 pandemic but denies remaining allegations in paragraph 129 of the Complaint.

130. Defendant admits the allegations in paragraph 130 of the Complaint but denies that it has any relevance to this case.

131. Defendant denies the allegations in paragraph 131 of the complaint.

132. Defendant admits that visitation was halted during the COVID-19 pandemic to protect the health and safety of those detained and working the jail but denies the remaining allegations in paragraph 132 of the Complaint.

133. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 133.

134. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 134.

135. Defendant denies the allegations in paragraph 135 of the Complaint.

136. Defendant denies the allegations in paragraph 136 of the Complaint.

137. Defendant admits the allegations in paragraph 137 of the Complaint.

138. Defendant denies the allegations in paragraph 138 of the Complaint.

**PARTIES**

139. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 139 of the Complaint.

140. Defendant admits the allegations in paragraph 140 of the Complaint.

141. Defendant admits the allegations in paragraph 141 of the Complaint.

142. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 142 of the Complaint.

143. Defendant denies the allegations in paragraph 143 of the Complaint.

144. Defendant that the jail suspended visitation during the COVID-19 pandemic to

protect the health and safety of detainees and those working at the jail.  Defendant denies the remaining allegations in paragraph 144 of the Complaint.

145. Defendant denies the allegations in paragraph 145 of the Complaint.

146. Defendant denies the allegations in paragraph 146 of the Complaint.

147. Defendant denies the allegations in paragraph 147 of the Complaint.

148. Defendant denies the allegations in paragraph 148 of the Complaint.

149. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 149 of the Complaint.

150. Defendant admits the allegations in paragraph 150 of the Complaint.

151. Defendant admits the allegations in paragraph 151 of the Complaint.

152. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 152 of the Complaint.

153. Defendant denies the allegations in paragraph 153 of the Complaint.

154. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 154 of the Complaint.

155. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 155 of the Complaint.

156. Defendant denies the allegations in paragraph 156 of the Complaint.

157. Defendant is without sufficient information to either admit or deny the allegations in paragraph 57 of the Complaint.

158. Defendant admits the allegations in paragraph 158 of the Complaint.

159. Defendant admits that D.P was issued a referral by the Court, Defendant denies the remaining allegations in paragraph 159 of the Complaint.

160. Defendant denies the allegations in paragraph 160 of the Complaint.

161. Defendant denies the allegations in paragraph 161 of the Complaint.

162. Defendant denies the allegations in paragraph 162 of the Complaint.

163. Defendant denies the allegations in paragraph 163 of the Complaint.

164. Defendant denies the allegations in paragraph 164 of the Complaint.

165. Defendant admits that D.P. may be held back a grade but denies the remaining allegations in paragraph 165 of the Complaint.

166. Defendant denies the allegations in paragraph 166 of the Complaint.

167. Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 167 of the Complaint.

168. Defendant denies the allegations in paragraph 168 of the Complaint.

169. Defendant denies the allegations in paragraph 169 of the Complaint.

170. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 170 of the Complaint.

171. Defendant denies the allegations in paragraph 171 of the Complaint.

172. Defendant denies the allegations in paragraph 172 of the Complaint.

173. Defendant is without sufficient information and knowledge to either admit or deny the allegations in paragraph 173 of the Complaint.

174. Defendant admits the allegations in paragraph 174 of the Complaint.

175. Defendant admits the allegations in paragraph 175 of the Complaint.

176. Defendant denies the allegations in paragraph 176 of the Complaint.

177. Defendant denies the allegations in paragraph 177 of the Complaint.

178. Defendant denies the allegations in paragraph 178 of the Complaint.

179. Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 179 of the complaint.

180. Defendant admits the allegations in paragraph 180.

181. Defendant admits the allegations in paragraph 181.

182. Defendant admits that Davis was incarcerated but denies that there was inaction by the County's pretrial release services or that its notice failed to state a reason for Davis's program ineligibility.

183. Defendant admits that Davis's felony charge was dismissed but is without sufficient knowledge or information to admit or deny the remaining allegations in paragraph 183.

184. Defendant admits that the pretrial services division notified the court of Davis's ineligibility for pretrial release under the jail's program but denies the remaining allegations of paragraph 184.

185. Defendant is without sufficient knowledge or information to admit or deny the allegations in paragraph 185.

186. Defendant admits the allegations in paragraph 186.

187. Defendant denies the allegations in paragraph 187.

188. Defendant admits the allegations in paragraph 188.

189. Defendant denies the allegations in paragraph 189.

190. Defendant admits the allegations in paragraph 190 but denies that the Court authorized Davis's release to the extent that the allegations infer that the authorized released was unconditional or that Davis's continued detention was not also authorized or reasonable.

191. Defendant is without sufficient knowledge to enable them to either admit or deny the allegations in paragraph 191 of the Complaint.

**JA1375**

192. Defendant admits the allegations in paragraph 192.

193. Defendant is without sufficient knowledge at this time to enable them to either admit or deny the allegations in paragraph 193 of the Complaint.

194. Defendants are without sufficient knowledge at this time to either admit or deny the allegations contained in paragraph 194 of the complaint.

195. Defendant admits the allegations in paragraph 195.

196. Defendant denies the allegations contained in 196.

197. Defendant admits that they did not release the detainee but is without sufficient information and knowledge to admit or deny the remaining allegations in paragraph 197 of the Complaint.

198. Defendant is without sufficient knowledge or information at this time to enable them to either admit or deny the allegations contained in paragraph 198.

199. Defendant denies the allegations in paragraph 199.

200. Defendant admits the allegations in paragraph 200.

201. Defendant is without sufficient knowledge to enable them to either admit or deny the allegations in paragraph 201 of the Complaint.

202. Defendant denies the allegations in paragraph 202.

203. Defendant is without sufficient knowledge to enable them to admit or deny the allegations in paragraph 203.

204. Defendant is without sufficient information and knowledge to admit or deny when the offenses occurred for which Laguan-Salinas charged but otherwise admit the remainder of paragraph 204.

205. Defendant admits the allegations in paragraph 205.

14

206. Defendant admits that the Pretrial Division prepared an Intake Fact Sheet that stated, among other things, that Mr. Laguan-Salinas had two open cases and it was noted that the Pretrial Division was "unable to interview" regarding residence and employment but denies the remaining allegations in paragraph 206 of the Complaint.

207. Defendant admits the allegations in paragraph 207.

208. Defendant denies the allegations in paragraph 208.

209. Defendant denies the inference that Defendant violated a court order authorizing Mr. Laguan-Salinas release prior to May 25, 2022.  Defendant admits the remaining allegations in paragraph 209 of the Complaint.

210. Defendant admits that Mr. Laguan-Salinas would not be released without a verifiable address but deny the remaining allegations in paragraph 210 of the Complaint.

211. Defendant admits the allegations that the Court released Mr. Laguan-Salinas on a unsecured bond but denies the remaining allegations in paragraph 211 of the Complaint.

212.  Defendant denies the allegations in paragraph 212 of the Complaint.

213. Defendant denies the allegations in paragraph 213 of the Complaint.

214. Defendant denies the inference in the allegations of paragraph 214 that Defendant should have released Mr. Laguan-Salinas at any point earlier than it did.

215. Defendant is without sufficient information to enable it to admit or deny the allegations in paragraph 215 of the Complaint.

216. Defendant admits the allegations in paragraph 216.

217. Defendant admits the allegations in paragraph 217.

218. Defendant admit the allegations in paragraph 218.

219. Defendant admits that Worthington was notified that she would not be release on

15

**JA1377**

pretrial release level 4 but is without sufficient knowledge at this time to enable them to admit or deny the remainder of the allegations in paragraph 219 of the complaint.

220. Defendant admits the allegations in paragraph 220.

221. Defendant admits the allegations in paragraph 221.

222. Defendant denies the allegation that plaintiff's detention was prolonged and are without sufficient information to enable them to admit or deny the remaining allegations in paragraph 222, but specifically denies that the County's pretrial release program caused any alleged injuries or is legally answerable for them.

223. Defendant is without sufficient knowledge to either admit or deny the allegations in paragraph 223 but denies that the pretrial release program caused plaintiff's losses or is legally answerable for them.

224. Defendant is without any information regarding the allegations in paragraph 224 and thus cannot admit or deny them, but specifically denies that the pretrial release program caused the injuries alleged and is legally answerable for them.

225. Defendant denies the allegations in paragraph 225.

226.  Defendant is without sufficient information and knowledge to admit or deny the allegations in paragraph 226 of the Complaint and denies the inference that Defendant caused her to contract an airborne virus, COVID-19 that thousands of Prince George's County residents contracted and died from.

227.  Defendant denies that it detained Ms. Worthington after she was ordered released. Defendant admits that the criminal charges filed against Ms. Worthington were ultimately dismissed by the State.

**CLASS ACTION COMPLAINT AND SPECIFIC CAUSES OF ACTION**

16

228. Paragraph 228-235 identify the parties and their job titles and the claims asserted by Plaintiffs, which Defendant admits, but denies the remainder of the allegations in these paragraphs to the extent that they allege the Defendant's employees violated any rights of the Plaintiffs.

236. Defendant admits that Plaintiffs provided notice pursuant to the Local Government Tort Claims Act.

237. Defendant denies the allegations in paragraph 237 of the Complaint.

238. The allegations in paragraphs 238-282, which espouse legal theories of liability intertwined with allegations of fact, are denied.

## III. AFFIRMATIVE DEFENSES

1. The claims asserted in the complaint are barred by the Younger abstention doctrine.

2. The claims asserted are barred by the Rooker-Feldman doctrine.

3. The money damages claims are barred by quasi-judicial immunity.

4. Plaintiffs lack standing.

5. Plaintiff failed to state a claim for relief against Prince George's County, Maryland.

6. Plaintiff failed to exhaust state remedies.

Respectfully submitted,

RHONDA L. WEAVER
COUNTY ATTORNEY

SHELLEY L. JOHNSON
DEPUTY COUNTY ATTORNEY


*Shelley Johnson*
Shelley L. Johnson
Deputy County Attorney
Maryland Federal Bar No. 15853
Andrew J. Murray Bar No. 10511
Wayne K. Curry County Administration Building
1301 McCormick Drive, Suite 4100
Largo, Maryland 20772
(301) 952-3932 voice
(301) 952-3071 facsimile

Filed:  09/29/23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CHRISTOPHER BUTLER, et al.                    *

        *Plaintiffs*,                              *

        v.                                      *

                                                *   No. 8:22-cv-01768-PJM

PRINCE GEORGE'S COUNTY, et al.                *

        *Defendants*.                             *

\*       \*       \*       \*       \*       \*       \*       \*       \*

**JUDGE DEFENDANTS' ANSWER AND**
**AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT**

    Defendants, the Honorable LaKeecia R. Allen, the Honorable Bryon S. Bereano, the

Honorable John A. Bielec, the Honorable Scott M. Carrington, the Honorable Ada E. Clark-

Edwards, the Honorable Stacey M. Cobb Smith, the Honorable Brian C. Denton, the Honorable

Robert W. Heffron, Jr., the Honorable Donnaka V. Lewis, the Honorable Gregory C. Powell, and

the Honorable Cathy H. Serrette (the "Judge Defendants"), sued solely in their official capacities,

by counsel, file their Answer and Affirmative Defenses to Plaintiffs' Complaint and state as

follows:

**I. SPECIFIC ADMISSIONS/DENIALS**

**A. Statement of the Case:**

    1.    The allegations in paragraph 1 of the Complaint amount to sweeping

generalizations concerning the processing of criminal defendants who are not identified by name,

the nature of their crimes, the criminal charges, the criminal case numbers, the names of the

presiding judge, or the conditions of bail and, thus, the Judge Defendants lack sufficient knowledge

or information upon which to admit or deny the allegations.  Each criminal defendant's case is

unique and presents individualized considerations for pretrial release decisions.  With that said,

dated January 24, 2023 (ECF No. 91); Order dated March 2, 2023 (ECF No. 104); Order dated

March 14, 2023 (ECF 108); Memorandum Opinion dated June 7, 2023 (ECF No. 128); and Order

dated June 7, 2023 (ECF No. 129).

All allegations in the Complaint not explicitly admitted herein are denied.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Judge Defendants generally deny the allegations contained in the Complaint and insist

upon strict proof of facts in support of Plaintiffs' claims.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state any claim or cause of action against the Judge

Defendants upon which relief can be granted.

### THIRD AFFIRMATIVE DEFENSE

The Court should abstain from exercising jurisdiction in this case.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because their rights under the Fourteenth Amendment have

not been violated by the Judge Defendants.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because their rights under the Maryland Constitution,

Declaration of Rights, Article 24 have not been violated.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because their rights under the Maryland Constitution,

Declaration of Rights, Article 8 have not been violated.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims against the Judge Defendants are moot because either their underlying criminal cases are closed, Plaintiffs are no longer detained, there is no longer a live case or controversy, or this Court has already dismissed certain claims. *See* Memorandum Opinion dated January 24, 2023 (ECF No. 90); Order dated January 24, 2023 (ECF No. 91); Order dated March 2, 2023 (ECF No. 104); Order dated March 14, 2023 (ECF 108); Memorandum Opinion dated June 7, 2023 (ECF No. 128); and Order dated June 7, 2023 (ECF No. 129).

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims against the Judge Defendants are barred by Eleventh Amendment Immunity.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims against the Judge Defendants are barred by absolute judicial immunity.

**TENTH AFFIRMATIVE DEFENSE**

This Court lacks jurisdiction under the *Rooker-Feldman* doctrine.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs fail to set forth a cognizable cause of action for declaratory relief.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs cannot recover monetary damages, attorneys' fees, and/or costs against the Judge Defendants.

**THIRTEENTH AFFIRMATIVE DEFENSE**

The Judge Defendants incorporate by reference as if fully stated herein their legal arguments previously raised in this case. *See* Judge Defendants' Motion to Dismiss (ECF No. 66) with Memorandum in Support (ECF No. 66-1); Judge Defendants' Reply Memorandum in Support

134

**JA1383**

of Motion to Dismiss (ECF No. 77); Judges Defendants' Motion for Clarification and Reconsideration (ECF No. 98); and Judge Defendants' Reply to Plaintiffs' Opposition to Motion for Clarification and Reconsideration (ECF No. 112).

**FOURTEENTH AFFRIMATIVE DEFENSE**

Plaintiffs' constitutional rights, in whole or in part, were knowingly and voluntarily waived through their defense attorneys in the underlying criminal cases.

**FIFTEENTH AFFRIMATIVE DEFENSE**

Plaintiffs lack standing to sue.

**SIXTEENTH AFFRIMATIVE DEFENSE**

The Judge Defendants reserve the right to assert such additional defenses as may be learned during the course of discovery.

WHEREFORE, having fully answered the Complaint, the Judge Defendants request that the Complaint be dismissed with prejudice or, in the alternative, that judgment be entered in favor of the Judge Defendants on all claims in the Complaint.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Kevin M. Cox
_____
KEVIN M. COX (Federal Bar No. 29012)
JAMES O. SPIKER IV (Federal Bar No 30189)
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
kcox@oag.state.md.us
jspiker@oag.state.md.us
(410) 576-6388
(410) 576-6393 (facsimile)

September 29, 2023                    Attorneys for the Judge Defendants

135

**JA1384**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | Civil No. **22-1768 PJM** |
| v. | |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

In this case, *pro bono* counsel, on behalf of one or more individuals detained on a pretrial basis in Prince George's County, Maryland, have filed suit in this Court, urging the Court to, in effect, reform the procedures by which pretrial release of detainees in the County are administered and decided. The suit suggests that a number of Prince County judges—at both the Circuit and District Court levels—have routinely ordered the release of detainees, while the County, acting independently of the judges, determines appropriate pretrial release conditions for the detainees, ignoring purported orders of the judges to release the detainees.

The case is back before the Court on remand from the U.S. Court of Appeals for the Fourth Circuit, which ordered the Court to provide its reasons for denying Plaintiffs' Motion for Preliminary Injunction as required by Federal Rule of Civil Procedure 52(a)(2). Based on the parties' earlier briefing, their submissions, and the current record, the Court explains its reasoning for denying Plaintiffs' Motion for Preliminary Injunction (ECF No. 2).

1

**I.**

The Court previously set forth the background of this case in detail in its Memorandum Opinion, dated January 24, 2023, addressing Defendants' motions to dismiss. *See* ECF No. 90. The Court adopts and reasserts that background here and supplements it as necessary.

When an individual is arrested in Prince George's County, he or she is taken before a District Court Commissioner[1] for an initial determination of release or detention. Any individual ordered to be detained is given a prompt bail review hearing, typically within 24 hours, by a judge of the Circuit or District Court of the County. The judge decides whether pretrial release or detention is appropriate. Maryland law directs that the judge's decision be based, *inter alia*, on the recommendation of the Population Management Division of the Prince George's County Department of Corrections (the "Pretrial Division"). Md. Code Crim. Proc. § 4-216.1(f)(1).

In making its recommendation, the Pretrial Division is required to consider the factors outlined in Maryland Rule of Criminal Procedure 4-216.1, which "include the seriousness of current charges, past criminal history, history of failure to appear in court, prior pretrial release history and program compliance, parole and probation violations, and significant and social ties to the local community." ECF No. 124-2.[2] Defendants claim that although "[a]ll variables are important when considering a pretrial defendant's release eligibility, . . . none exclusively prevent

---

[1] For the sake of those unfamiliar with the structure of its courts, Maryland's two trial courts consist of a "District" Court of limited jurisdiction and a "Circuit" court of general jurisdiction. Md. Code Ann., Cts. & Jud. Proc. §§ 1-501, 1-601. The state District Court for a given County, e.g., for Prince George's County, should not be confused with the United States District Court for the District of Maryland, the Federal trial court where this suit is pending.

[2] As Plaintiffs note, ECF No. 126 at 7 & n.3, there are some internal consistencies in Defendants' policies. For example, although a new four-page primer for the public on the County's pretrial release policies suggests that the County considers the "seriousness of current charges," ECF No. 124-2, Defendants suggest in a separate submission to the Court that such a consideration is left solely to the Court and is not considered by the Pretrial Division. *See* ECF No. 124-3.

2

a release to some level of [Prince George's County Department of Corrections] supervision." ECF No. 124-3.

Under a new policy (adopted during the pendency of this suit), the County requires that the Pretrial Division make "all eligibility determinations" within "10 business days of receipt of the court[']s bond determination order." ECF No. 124-1 at 6. If the Pretrial Division determines that a detainee is not eligible for release, "a letter will be submitted to the [state] Court as soon as a determination of ineligibility is made." *Id.* "[T]he correspondence will explain the reason(s) for the determination of ineligibility," and "[t]he detainee, defense attorney, and prosecutors will be copied on all correspondences." *Id.*

Whether and how the Pretrial Division actually abides by these requirements is arguable, Plaintiffs' central claim being that these procedures are often ignored, meaning that individual defendants are detained for an unduly long time. In essence, Plaintiffs argue that when a judge makes a referral to the Pretrial Division, the judge is more or less absolutely authorizing the detainee's release, and as a result, the judge is unconstitutionally placing in the hands of non-judicial officers the ultimate judicial determination with respect to the conditions that will ensure safety to the community and prevent the risk of flight. Defendants' response is that, by referring a defendant to the Pretrial Division, the judge has already determined that the defendant may pose a risk of flight or threat to the community and is merely directing the Pretrial Division to release the defendant if he or she meets the criteria the County is obliged to follow.

Plaintiffs filed suit in this Court seeking a review of the County's pretrial detention and release system on July 19, 2022 (ECF No. 1). They filed their Motion for Preliminary Injunction (ECF No. 2) that same day. After extensive briefing by the parties on several preliminary issues,

3

followed by the Court's opinion of January 24, 2023,[3] the Court held a telephone conference on March 2, 2023, during which Plaintiffs' Motion for Preliminary Injunction was discussed (ECF No. 103). The Court explained that, on the record before it, it was disinclined to grant Plaintiffs' Motion. Advising the parties that discovery on the preliminary injunction and merits discovery would likely be "duplicative" because the preliminary relief sought by Plaintiffs largely mirrors the relief that they would ultimately seek at the conclusion of the case, the Court explained that it would "almost certainly" deny the preliminary injunction without prejudice. ECF No. 155 at 16:14-21. Notwithstanding its reservations, the Court granted the parties ten days to come to an agreement as to possible immediate, preliminary relief that the Court could order. *Id.* at 18:18-22. When the parties failed to reach an agreement, ECF No. 106, the Court denied Plaintiffs' Motion for Preliminary Injunction, ECF No. 108.

## II.

To obtain a preliminary injunction, a moving party must establish that (1) the movant is likely to succeed on the merits of the suit; (2) the movant is likely to suffer irreparable harm if the requested preliminary relief is not granted; (3) the balance of equities favors the movant; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III.

The Court finds, based on the briefs, the submissions of the parties, and the current record, that several propositions of Plaintiffs' case, both legal and factual, are doubtful. Therefore, the Court concludes, at least at this stage, that Plaintiffs are unlikely to succeed on the merits, and that a preliminary injunction should not be granted.

---

[3] *See* ECF Nos. 2, 56, 57, 58, 59, 60, 61, 64, 66, 71, 77, 90.

Why does the Court reach this conclusion? Start with the relief that Plaintiffs seek. In their proposed preliminary injunction order, Plaintiffs request that the Court order that "County Defendants [be] enjoined from detaining at the Prince George's County Detention Center any person who has been arrested for a criminal offense and who has not received, at a minimum" a list of "procedural and substantive safeguards" that Plaintiffs believe meet constitutional requirements. ECF No. 2-3 at 3. In other words, Plaintiffs would have this Federal Court more or less immediately order the County to release every criminal defendant who has not received a constitutional bail review hearing before a "neutral and detached decision-maker, i.e., a judicial officer" within 48 hours of being arrested. *Id.* at 2-3 at 3-4. Setting aside that, as a matter of fact, criminal defendants in Prince George's County (including all Plaintiffs) are already given prompt bail review hearings, typically within 24 hours of being arrested, the Court finds Plaintiffs' requested relief quite extraordinary. Were the Court to enter a preliminary injunction of the tenor Plaintiffs' counsel proposes, the U.S. District Court for the District of Maryland—not the Circuit or District Courts of Prince George's County—would have the final say on whether a criminal defendant, prosecuted by the State of Maryland in Maryland state courts, should be released pending trial. Assuming that the procedural and substantive safeguards requested by Plaintiffs have not been met, criminal defendants would apparently be released irrespective of whether they pose a risk to the community or a risk of flight. But even if there were questions as to whether those safeguards *have* been met, it is likely to mean that this Court would have to perform an extensive review of the state court record and proceedings to enforce the preliminary injunction in every individual case.

The other, more deep-seated problem with Plaintiffs' requested relief is that, by requiring that the County release detainees unless the requested safeguards are met, this Court's proposed

5

preliminary injunctive relief would in effect bind the judges of the Circuit and District Courts of Prince George's County. As the Court has explained, *see e.g.*, ECF Nos. 90, 155, it views the pretrial release procedures implemented by the County as simply an extension of decisions by the state judges, not decisions rendered by the County on an independent basis. The determination of whether to release detainees, at least on the record before the Court at this juncture, remains with the judges, not the County. As alluded to in its Opinion of January 24, 2023, this understanding raises serious concerns as to the nature of the relief, if any, that might be fashioned against the County, since, as the Court sees it, the County, acting in tandem with the state judges, may well enjoy a form of quasi-judicial immunity. *See* ECF No. 90 at 18.

Setting aside the questions of judicial and quasi-judicial immunity, it is also the case that Plaintiffs have not shown, on this record, that any judge of the Prince George's County Circuit or District Courts has ever entered an absolute, final order of release without supervised release conditions, such that the County has actually acted in disregard of such an order. Although there are minimal suggestions in the record that some judges of the Prince George's County Circuit or District Courts may not "be receptive" to holding hearings on repetitious motions for bail review, ECF No. 2-1 at 11 (citing declarations), Plaintiffs still have given no compelling justifications for why *this* Court should intervene and effectively strip the state court judges of the right to act according to their own judicial prerogatives. Nor, it may be noted, is there any evidence that any detainee seeking pretrial release (including Plaintiffs) has ever sought habeas corpus or appellate relief in the state courts.[4]

---

[4] Notwithstanding Plaintiffs' implied suggestion that judges must first enter final orders of detention before habeas relief can be sought, ECF No. 2-1 at 11-12, the fact remains that the record is devoid of any attempts to seek review of a Circuit or District Court judge's pretrial referral order.

6

In view of the foregoing, the Court was and continues to be unable to conclude that Plaintiffs are likely to succeed on the merits of their claims, because the ultimate relief they seek asks, in essence, that this Court to wade into the minutiae of how, when, and under what conditions pretrial determinations are made by the state courts in Prince George's County. Such an extraordinary request requires very compelling factual and legal justification, which Plaintiffs, despite their good intentions, have failed to present at this stage. In sum, the Court finds that Plaintiffs have failed to satisfy the first criterion for a preliminary injunction because, at this stage, they have not shown that they are likely to proceed on the merits.

Although the Court's conclusion that Plaintiffs have failed to demonstrate that they are likely to succeed on the merits obviates the need for the Court to address the other criteria of a preliminary injunction, *Winter*, 555 U.S. at 20, the Court will nonetheless comment on the remaining considerations.

The next factor the Court considers, at least at this juncture, is whether Plaintiffs have shown that they will be irreparably harmed if a preliminary injunction does not issue. If, as Plaintiffs allege, they have been unduly detained without appropriate constitutional safeguards, such pretrial detention, particularly for those later found to be innocent, has long been recognized as inflicting irreparable harm. *See Barker v. Wingo*, 407 U.S. 514, 532-33 (1972).

That said, however, the Court concludes, for now, that the balance of equities tips in favor of Defendants. The County, which, again, the Court understands to be nothing less than an extension of the judges, is tasked with following the judges' directives to assure that detainees can be released without adversely affecting the safety of the community and to ensure that the detainees return to court for their criminal trials. The County and its judges have a strong interest in overseeing, maintaining, and implementing the State of Maryland's criminal justice system. While

7

the detainees are surely interested in an expedited review of the reasons for their detention, the Court finds that the importance of maintaining the integrity of the state criminal justice system, at this stage of the proceedings anyway, outweighs the detainees' interest in a major overhaul, directed by this Federal Court, of that system.

For the same reasons, the Court finds, again, at this juncture at least, that the public interest favors denial of a preliminary injunction until a full examination of the ways that the County, either as an extension of the state court judges or independently, has acted to frustrate any legitimate entitlement of detainees to their release.

In sum, the Court concludes that Plaintiffs have failed to establish their entitlement to a preliminary injunction.

That said, the Court remains willing to reconsider its determination and, to that end, will schedule another hearing during the second of week of January 2024 to reconsider the propriety vel non of issuing such relief.

At that hearing, the Court expects, at a minimum, to receive proof (including live testimony from the Defendant Judges, if possible) that addresses whether any of the state judges, upon referring detainees to the County's Pretrial Division, believe that they have ceded final control of the decision to release the detainees prior to trial. Further, as to any detainee who claims to have been detained notwithstanding a state judge's order purportedly releasing him or her, the Court will need to know whether any of those court orders specified that additional conditions of release be imposed before the release could be effectuated. In a recent report in the *Washington Post*, one counsel for Plaintiffs apparently represented that "[o]ne plaintiff was jailed for 174 days after a judge said he could be released," and another "was jailed for 75 days after a judge's order

8

**JA1392**

authorizing pretrial release."[5] The Court asks to receive evidence concerning what charges were brought against those particular individuals, including evidence of whether the release orders in their cases were absolute or whether they contemplated the imposition of release conditions; whether the state judge in fact retained ultimate control over the case; and whether those individuals ever sought subsequent bail review hearings, writs of habeas corpus, writs of mandamus, or appeals to the state appellate courts.

It was further suggested by Plaintiffs' attorney in the *Post* article that, after a period of time, the pending charges against these and other Plaintiffs were dropped. The Court assumes that the decisions to drop the charges was made by prosecutors, not by judges or the County's Pretrial Division. In so far as the prosecutors dropped the charges, what were the reasons? The Court assumes the prosecutors are protected by absolute immunity, but Plaintiffs' counsel may believe otherwise.

The Court also expects from Plaintiffs' counsel evidence and argument on the question of whether there is a legal remedy, injunctive or monetary, for an individual detained pretrial who is then released on charges that the prosecutor chose not to pursue.

This is a very serious case. What it asks this Federal Court to do is involve itself in review of pretrial release conditions and determinations presumably established by state court judges. Any relief, especially injunctive relief, preliminary or permanent, in the Court's view, could have monumental effects on the administration of Maryland's entire criminal justice system or, indeed,

---

[5] Katie Mettler, *U.S. Judge Ordered to Rethink Ruling on Prince George's Pretrial System*, Wash. Post (Nov. 18, 2023), https://www.washingtonpost.com/dc-md-va/2023/11/18/pretrial-release-lawsuit-prince-georges/.

on the administration of such systems in other jurisdictions.  At this stage, at least, Plaintiffs have

not shown that they are entitled to such a potentially disruptive[6] intervention.

**CONCLUSION**

For the foregoing reasons, the Court **ORDERS** that:

1.  Plaintiffs' Motion for Preliminary Injunction (ECF No. 2) is **DENIED**; and

2.  The parties **SHALL** appear for a further hearing on the propriety of reconsidering the

    issuance of a preliminary injunction on January 9, 2024.

A separate Order will **ISSUE**.

November __, 2023

PETER J. MESSITTE
U.S. District Judge

---

[6] The Court in no way uses this term in a pejorative sense, but instead in its more contemporary sense of "chang[e in] the traditional way that an industry operates, especially in a new and effective way." *Disruptive*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/disruptive.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BUTLER, *et al.*, individually
and on behalf of a class of similarly situated
persons,

    Plaintiffs,

    v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

    Defendants.

Civil No. **22-1768 PJM**

## ORDER

Having considered Plaintiffs' Motion for a Preliminary Injunction (ECF No. 2) as to
Defendant Prince George's County, Defendants' response in opposition (ECF Nos. 64, 78), and
Plaintiffs' reply thereto (ECF Nos. 72), it is, for the reasons stated in the accompanying
Memorandum Opinion, this 22 day of November, 2023, by the United States District Court for
the District Court of Maryland,

    **ORDERED**:

1. Plaintiffs' Motion for a Preliminary Injunction (ECF No. 2) is **DENIED WITHOUT
   PREJUDICE**; and

2. The Court **SHALL** hold a hearing to reconsider the propriety of issuing preliminary
   injunctive relief on January 9, 2024.

November 22, 2023

_____
**PETER J. MESSITTE**
**U.S. District Judge**

**JA1395**

# Exhibit 1

1                   IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF MARYLAND

3                            SOUTHERN DIVISION

4   CHRISTOPHER BUTLER et al.,      ) CIVIL ACTION
                                    ) NO. PJM-22-1768
5             Plaintiffs,           )
                                    )
6   v.                              )
                                    )
7   PRINCE GEORGES COUNTY,          )
    MARYLAND et al.,                )
8                                   )
              Defendants.           )
9
                 TRANSCRIPT OF TELEPHONIC PROCEEDINGS
10            BEFORE THE HONORABLE PETER J. MESSITTE
                    UNITED STATES DISTRICT JUDGE
11            TUESDAY, DECEMBER 20, 2023; 5:30 P.M.
                        GREENBELT, MARYLAND
12
    APPEARANCES:
13
    FOR THE PLAINTIFFS:
14
              INSTITUTE FOR CONSTITUTIONAL ADVOCACY AND PROTECTION
15            BY:  SETH WAYNE, ESQUIRE
              600 New Jersey Avenue NW
16            Washington, DC  20001
              (202) 662-9042
17
    FOR THE DEFENDANT PRINCE GEORGES COUNTY, MARYLAND:
18
              PRINCE GEORGES COUNTY OFFICE OF LAW
19            BY:  SHELLEY L. JOHNSON, ESQUIRE
              BY:  ANDREW J. MURRAY, ESQUIRE
20            1301 McCormick Drive, Suite 4100
              Largo, Maryland  20774
21            (301) 952-5225

22
    OFFICIAL COURT REPORTER:
23  Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

24      ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

25

```
1    APPEARANCES (Continued):

2
     FOR THE JUDGE DEFENDANTS:
3
                 OFFICE OF THE ATTORNEY GENERAL
4                BY:  KEVIN M. COX, ESQUIRE
                 200 St. Paul Place, 20th Floor
5                Baltimore, Maryland  21202
                 (410) 576-6388
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Call to order of the Court.)

2          THE COURT:  Counsel, Judge Messitte here.  Renee, are

3   you with us?

4          THE COURT REPORTER:  I'm here, Judge.

5          THE COURT:  Okay.  Good.

6       Counsel for plaintiff, would you identify yourselves?

7          MR. WAYNE:  Good afternoon.  Yes, Your Honor.  Seth

8   Wayne here on behalf of the plaintiffs.  There are a number of

9   other attorneys on the line with me.  I don't know if you want

10  all of us to identify ourselves.

11         THE COURT:  Are you the only person going to be

12  speaking?

13         MR. WAYNE:  I am the only person who will be

14  speaking, Your Honor.

15         THE COURT:  Fair enough.  Okay.

16      For the County?

17         MS. JOHNSON:  This is Shelley Johnson, the Deputy

18  County Attorney.

19         THE COURT:  For the State judges?

20         MR. COX:  This is Kevin Cox, Your Honor.

21         THE COURT:  All right.  Anybody else on the call who

22  intends to speak?

23         MR. MURRAY:  Good afternoon, Judge Messitte.  This is

24  Andy Murray for the County defendants.  I think Ms. Johnson

25  will do most of the talking.  I suppose there is a possibility

1    I may talk, but I will defer primarily to her.

2            THE COURT:  All right.  Well, okay.  We have a few

3    matters to discuss at this point, and before I sort of cut into

4    specifics, I would sort of like to know what the status of the

5    case is right now.  Is there any sort of discovery that's gone

6    on?  Do you want to answer that, Mr. Wayne?

7            MR. WAYNE:  Yes, Your Honor.  This is Seth Wayne for

8    the plaintiffs.

9        The discovery is in process.  Both plaintiffs and

10   defendants have served discovery requests on each other and are

11   in the process right now of exchanging documents and other

12   forms of written discovery.  And while there have been no

13   depositions yet, but I expect they will be coming along

14   shortly.

15           THE COURT:  No depositions, you say?

16           MR. WAYNE:  To this point, Your Honor.

17           THE COURT:  All right.  And so there has been a

18   formal request for documents or formal interrogatories that

19   have gone out?

20           MR. WAYNE:  Correct.  Both sides have issued requests

21   for documents and interrogatories, I believe, and both sides

22   are in the process of exchanging those right now.

23           THE COURT:  All right.  And have there been any

24   problems with the flow, that is, either side objecting to

25   documents being produced or interrogatories being answered?

1          MR. WAYNE:  There have been a number of objections,

2     Your Honor, to different things.  I think we are still in the

3     process of sorting out whether any of those would require the

4     Court's intervention, although one thing that -- that is --

5     that needs to be the subject of a meet and confer to come is

6     the plaintiffs issued a subpoena to the Administrative Office

7     of the Courts, which defendants are objecting to and not

8     responding to, so whether or not that needs to involve the

9     Court is still to be determined.

10          THE COURT:  County want to respond to that,

11     Ms. Johnson?

12          MS. JOHNSON:  That is not our purview.  That is --

13     that is the -- that is the administrator of the courts.  I have

14     no -- I have no authority over them, nor do I represent them.

15          THE COURT:  Is that you, Mr. Cox, then?

16          MR. COX:  Yes, Your Honor.  That would be -- that

17     would be me.  And the state -- the Administrative Office of the

18     Courts is a state entity, and we filed timely objections, and

19     the plaintiffs have not filed a motion to compel.

20          THE COURT:  All right.  Okay.  Well, I am not

21     prepared to make any final decisions at the moment, but let me

22     -- let me go out with you.  Mr. -- well, I understand -- and I

23     am not sure whether the County has filed a formal paper on this

24     or the State -- but there is an objection, as I understand it,

25     to any sort of deposition being given by a judge.  Am I correct

1 on that?  Ms. Johnson, do you want to answer that, or Mr. Cox?

2    MS. JOHNSON:  I will defer to Mr. Cox since he is

3 counsel for those judges.

4    THE COURT:  Well, they are district -- district

5 judges as well would be covered by the State, you are right.

6 Mr. Cox.

7    MR. COX:  Sorry, Judge.  I guess I am not sure I

8 understand the question.  At this point, no deposition notices

9 have been issued, no depositions have been requested of any

10 parties or any witnesses or the Public Defender's office, for

11 example, and the Assistant Public Defenders.  No depositions

12 have even been discussed among the parties at this point, Your

13 Honor.

14    THE COURT:  Well, am I wrong?  Did someone not

15 represent that the County -- I thought it was the County, but

16 it would apply to the State, obviously -- the judges would

17 refuse to be deposed?  Am I misstating my understanding?

18    MR. COX:  Well, I don't want to put words in anyone's

19 mouth or take them out, necessarily, Your Honor.  I don't think

20 Mr. Wayne said that the judge defendants refused to be deposed.

21 The issue hasn't come up at all, frankly, so it's possible you

22 misheard him, Judge.  But, again, depositions have not been

23 discussed among any of the parties yet.

24    THE COURT:  Well, I thought I understood as well,

25 though, that some alternative proposals were made as to the

1    position of the judges in this case, but, again, maybe I

2    misunderstood.  Is that, in fact, a correct statement?

3            MR. COX:  Yes.  I believe so.  And just to be clear,

4    this is Mr. Cox again, Your Honor.  There has been -- there was

5    a meet and confer among the parties about what to do in terms

6    of several things, including the live testimony of judges at

7    the upcoming hearing on the preliminary injunction, and it --

8    this was not went into detail in our filing, but one thing that

9    was floated was, Well, wouldn't supplemental answers to

10   interrogatories that addressed Judge Messitte's -- or Your

11   Honor's opinion, and wouldn't that satisfy and alleviate the

12   need for live testimony of the judges at the upcoming hearing,

13   and that was shot down, Your Honor.  The plaintiffs are clear

14   they want live testimony, they want judges in the seat, and

15   that would be District Court Judges Heffron and Allen.

16           THE COURT:  Okay.  Well, let me, before I -- I have

17   some tentative views I will give you on that in a moment.

18   Let's go forward and assume that we would have the kind of

19   hearing that both plaintiff -- plaintiffs and defendant --

20   defendants contemplate.  What I'd like to hear from you,

21   Mr. Wayne, are who are the witnesses you propose to call, and

22   in brief, what do you propose -- what do you intend -- what do

23   you expect they will say?

24           MR. WAYNE:  Yes, Your Honor.  Thank you very much.

25       At this point, I believe we have identified eight

1  expected witnesses in four different categories, and the

2  purpose of these is to respond to what we believe are the

3  things Your Honor has identified as important facts to the

4  determination of our motion.

5       The first witnesses we would plan to call would be judge

6  witnesses, and they would testify about their process of

7  referring individuals for release by the pretrial division and

8  about how they understand that the pretrial division applies

9  its own criteria behind closed doors to decide who is released

10 on their own schedule.

11      The second individuals we would plan to call are two

12 employees of the pretrial division who could testify about

13 their knowledge that they have the authority to release people

14 after receiving referrals from the Court based on their own

15 criteria, including what process they apply during that --

16 during that referral, which is essential to plaintiffs' claims.

17      The third individuals we would plan to call are two

18 public defenders, either current or former attorneys, who can

19 testify about how, when their clients get referrals as part of

20 the process the plaintiffs challenge, that they receive no

21 information about Pretrial's process, they don't have an

22 opportunity to challenge evidence, and how -- what the outcome

23 of that process is for their client as they have directly been

24 involved and observed what happens when a pretrial referral is

25 issued.

1        And the last individuals we would plan to call would be

2    impacted people, that is, people similar to this and to our

3    clients, who could testify about their experience of the

4    process of pretrial referral and what harms that process has

5    caused to meet the plaintiffs' burden to show irreparable harm

6    stemming from the practices they challenge.

7        So we have four buckets.  We plan to call two people in

8    each of those buckets in order to meet our burden to show these

9    facts.

10        THE COURT:  And although this will not be part of the

11    preliminary injunction hearing in any case, but I take it you

12    are still seeking money damages for these people?

13        MR. WAYNE:  Your Honor, my -- my understanding is

14    that in -- in ruling on the motions to dismiss, Your Honor has

15    dismissed the claims that would result in money damages, and

16    currently the only live claims are those seeking equitable

17    relief.

18        THE COURT:  Well, I don't know whether you are trying

19    to preserve that issue for appeal or not, but I am not sure the

20    Fourth Circuit, in its recent opinion, quite appreciated what

21    the scope of your requested relief was.  And hopefully, or at

22    some point, I would like to lay out for them where I think the

23    case is right now especially in terms of what I certainly

24    understood was part of the projected relief that plaintiffs

25    were seeking.

1          While I am on that, let me just go to this issue, which

2     was somewhat bothersome.  And I know the newspaper reports

3     aren't always reliable, but some one of your colleagues,

4     Mr. Wayne, and maybe it was you, told a reporter that people

5     were detained for anywhere from 75 to 150-plus days, and it

6     seemed to suggest that either that was -- and then they were

7     released, I guess, or somebody else was eventually released,

8     and somehow that was either my decision or the decision of the

9     County.  Is there somebody in that category or are there people

10    in that category?

11          MR. WAYNE:  Your Honor, I am afraid I am at a bit of

12    a -- a loss as to the -- the question here.  My understanding

13    of the content of that article is that it reflected facts that

14    were asserted in the complaint and along with the preliminary

15    injunction.  These were facts about the named plaintiffs in the

16    case and allegations that were -- were included in filings in

17    this case.  I don't believe there was anything in that article

18    that differed -- that departed from things that were already

19    made public in the filings in this federal case.

20          THE COURT:  Well, are there people who have -- is it

21    your contention that there are people who are being detained

22    now who should have been released and are not being released?

23    Is that part of your position today?

24          MR. WAYNE:  Your Honor, I think it's -- it's our

25    position throughout this case that there are many people who

1   have had their releases authorized by this process of pretrial

2   referral.  That authorization includes implicitly a finding

3   that they can be released on certain conditions.  It authorizes

4   the County to release them pursuant to the County's own process

5   and criteria, and that people then being held for days, weeks,

6   or months, despite that authorization for release, are held in

7   violation of the constitutional requirements for pretrial

8   detention.

9           THE COURT:  Are you also claiming in this case,

10  though -- and this is not clear and I am trying to understand

11  what's going on in this case -- that there are people who were

12  eventually released, that is, the charges were dropped by

13  either a judge or the County as opposed to prosecutors?  Or are

14  there people who -- as to who charges were dropped after being

15  detained for whatever period of time, and that that was a

16  decision by the County or a decision by a judge or what?  I am

17  trying to understand what you are claiming here.

18          MR. WAYNE:  No.  We are not claiming that the County

19  has dismissed cases against individuals, and, in fact, the

20  status of the criminal case itself really is not dispositive of

21  any of plaintiffs' claims.

22      Plaintiffs' claims are that the process for detaining

23  people charged with crimes is in violation of bedrock

24  constitutional requirements for pretrial detention.  That is,

25  we have sought this injunction because people who are facing

1    crimes, however those crimes ultimately are resolved, whether

2    they are convicted or whether those -- those cases are

3    dismissed, the people who are facing these charges are facing

4    indefinite, prolonged detention, a presumptively innocent

5    person.  Even though that the -- the Court has not made the

6    findings or gone through the process, we are constitutionally

7    required to cause someone to be detained before trial.

8          THE COURT:  And that hits a point, though, that's

9    important.  You said, "The Court."  Are you saying the judges

10   are not acting promptly enough and that the federal court needs

11   to intervene to make the state court judges act more promptly?

12   Is that part of your claim?

13         MR. WAYNE:  That is part of our claim, Your Honor.

14   We are saying that the -- the state court judges, who must be

15   the ones to decide whether pretrial detention occurs and they

16   must decide it by constitutional process, unlawfully

17   authorizing the County to apply its own process to determine

18   who gets released before trial.  It certainly is about the

19   actions of the judge deferring that authority to other actors

20   who then engage in a black box, closed process that doesn't

21   include any of the procedural requirements for evaluating

22   whether pretrial detention is necessary.

23         So the state court judges' actions certainly are a big

24   part of what's going on here, and there is a federal

25   constitutional issue that the plaintiffs have asked the federal

1   court to declare what federal law requires in these

2   circumstances.

3          THE COURT:  All right.  Let me go back to the County

4   for a moment.  I understood the County's position was that

5   perhaps you'd want an hour and a half for the preliminary

6   injunction hearing.  Am I correct on that?

7          MS. JOHNSON:  You are correct, Judge Messitte.  This

8   is Shelley Johnson speaking.

9          THE COURT:  And who or what would you propose to do

10  in that hour and a half?

11         MS. JOHNSON:  I would propose that I would provide

12  you with the live person who provided an affidavit to outline

13  the process of the pretrial release program and outline what

14  our authority is.  You know, one, we -- we don't have any

15  control over who gets referred to us; that this is a county

16  program, not a state program; that not every county in the

17  state has a pretrial release program; that -- and, so, although

18  the Court can refer people to us, they can't -- you know, they

19  cannot force us to release somebody in our program.  It is our

20  program.

21         So they are evaluated to see if we accept them.  If we

22  accept them into our program, then the Court says, Okay.  You

23  don't have to bring him back to me if he's accepted into your

24  program; I have already given you authority to release him on

25  this level, but I want you to -- what they can say is they can

1   refer someone to us for evaluation to see if they are accepted

2   into the County program.  If not, then they aren't committed to

3   the County -- to the County Detention Center per the commitment

4   order that is issued in each one of those bond hearings.

5              THE COURT:  Well, are you conceding, then, that the

6   judges are giving up control on this issue?

7              MS. JOHNSON:  No.

8              THE COURT:  I thought --

9              MS. JOHNSON:  No, I am not.

10             THE COURT:  Well, let me finish because we are on the

11  record.  I thought your position was that you were essentially

12  an extension of the judges, but now I have heard you say

13  something that sounds like, Yes, we are independent, we make

14  our own decision.  Now, which is it?

15             MS. JOHNSON:  The way the process works, and what we

16  have submitted, is that, again, this is not a state program.

17  This is a county program.  Okay?  And that the Court makes the

18  decision on whether or not they can be released on pretrial

19  release, whether the Court is comfortable for them to be

20  released on pretrial release.

21        But the Court can't force us to accept somebody into our

22  program.  We still can evaluate them and say, No, we don't want

23  to accept them in the pretrial release program.  And we use the

24  criteria that is set forth in the Maryland rules, and if we

25  reject them, we notify the Court why we reject them, and the

1   Court sets another bond hearing and decides whether or not

2   there are other conditions for release that they are

3   comfortable with.

4          THE COURT:  Do you keep the Court advised as to what

5   you are doing if the person has been released?

6          MS. JOHNSON:  If the person -- yes.

7          THE COURT:  Wait a minute.

8          MS. JOHNSON:  Yes.  They are --

9          THE COURT:  Stop.  I got to get my question straight.

10  Do you keep the Court advised as to what you are doing in the

11  case while you are doing it, or do you only advise the Court

12  when you can't find a reason to release?

13         MS. JOHNSON:  When the -- when the person is -- when

14  they are referred to us by the Court, the Court has already

15  said that, you know, this person can be released on Level 4

16  with these special conditions.  So if we approve it, then they

17  are released on those conditions.  We advise the Court if they

18  -- if they violate those conditions, and then the Court will

19  issue an order having us pick them up and bring them before the

20  Court for a violation of their pretrial release order.

21         THE COURT:  Okay.  Now, this still goes to the core

22  issue as far as I'm concerned, which I have said now in a

23  number of opinions, at least three, that to the extent that

24  these -- that the judges have not ceded ultimate control over

25  the decision to release or not release, that that is a question

1    of judicial immunity or quasi judicial immunity in the case of

2    the County.

3         Now, the County, I think, has accepted the Court's

4    proposition in some of its pleadings that, in fact, it does --

5    it is cloaked by a certain quasi judicial immunity, or is it

6    not?  Again, Ms. Johnson, I ask for clarification.

7         MS. JOHNSON:  And I say that we -- we -- I agree with

8    the Court and the Court's finding that we enjoy a quasi

9    immunity because essentially, as you have found, we -- the --

10   the County uses the criteria set out by the Maryland rules to

11   assess whether or not they are going to accept them into our --

12   into our program, and that -- and, essentially, we are doing

13   the -- the administrative work of making -- or seeing if --

14   looking and seeing if that detainee meets the criteria outlined

15   in the Maryland rules.  If they do not meet that criteria, then

16   we let the Court know.

17        Another way of looking at it is the Court is assuming

18   that the detainee will meet the criteria, and trying to be

19   efficient and not have the detainee come back, you know, so

20   they can see that, oh, yes, you meet the criteria, I will

21   release you on Level 4.  To eliminate that and to lessen the

22   docket, the Court only needs to know when we reject them,

23   because they are assuming that they will meet the criteria, so

24   I am giving my conditional order to release him on Level 4 if

25   you find that he has met the criteria.

1          If he has not met the criteria outlined in the Maryland

2     rules, then the Pretrial Services notifies the Court that they

3     have not met the criteria, and then they are brought in for

4     another bond hearing, and the Court makes a decision on whether

5     or not they are going to be released on some other types of

6     conditions or some other type of way of -- of doing it.

7          But, again, we are acting -- we are doing the kind of

8     administrative investigation under the Maryland rules that --

9     but the Court makes the ultimate decision on whether or not

10    that person is released or not.

11         THE COURT:  Well, all right.  Let me just say this.

12    This is a matter that needs to be considered without a --

13    without a conclusion.  First of all, it certainly is good from

14    the standpoint of -- what did I say? -- of keeping the public

15    aware, that they know what the process is and how it is, in

16    fact, being implemented.

17         It's another thing, though, about whether a lawsuit

18    should be in this circumstance where there is arguably quasi

19    judicial immunity, whether there should be any opportunity to

20    inquire into these things because you can't inquire of the

21    judge as to why you aren't acting promptly enough, and you

22    can't, presumably, call the judge's law clerk and say, Why

23    aren't you acting quickly enough?

24         And if your analysis is correct, Ms. Johnson, that you

25    are merely an administrative arm of the judge, should you be

1    able to file a lawsuit and say you aren't giving us enough

2    reasons either?  Not that it wouldn't be a good idea to give

3    reasons, but is that approach anything like a constitutional

4    issue, and could any lawsuit then allow litigants from whatever

5    place, not just Prince George's County, to file a lawsuit, such

6    as the one that's filed, and then seek to depose judges, who

7    they ordinarily could not depose, to have them explain why they

8    do certain things and how their system works?

9         That's a deeper issue here in terms of every -- well, a

10   lawsuit like this could be filed in 100 jurisdictions across

11   the country, and judges could be sought to be deposed if, in

12   fact, there is not judicial immunity, and so on and so forth.

13   And it may be -- and I don't think I have hidden my cards on

14   this -- but it may be that that's the issue that needs to go

15   up.  Is there, in fact, judicial immunity here which really

16   keeps this kind of lawsuit from being tried in federal court?

17   And is the remedy, if any, and there may well be a need for

18   some transparency and clarity at the State level, something

19   which should be taken up with the State legislature, with the

20   steward of prisons, however it works, with the County?  Those

21   are all issues that I need to weigh as I go forward here.

22        I am pleased that, in fact, you are exchanging some

23   information, but understand this case has deeper implications

24   than just what's going on in Prince George's County, and it

25   gives me some concern.

1          Anyhow, I let you know where I am sort of going on this.

2     I -- and I need to really, I think, perhaps, suggest this.  I

3     mean, plaintiffs suggested, I think, in one of their papers,

4     that there would be some need for motions practice, and I say

5     we can put this thing beyond January the 9th.  I was trying to

6     move things around to give you a more expedited time.

7          But I think, on this issue of judicial immunity or quasi

8     judicial immunity, I need to know specifically what the

9     position of the County is.  And I know the position of

10    plaintiff is that the judge has effectively ceded control --

11    and Ms. Johnson, you have come close to saying that, although

12    not quite -- over these cases, and, therefore, what the County

13    is doing looks like it could be independent, or it looks like

14    it could be still under the judges' control.

15         But if it is, in fact, under the judges' control, and if,

16    in fact, the conclusion is that there is quasi judicial

17    immunity, that may effectively end not only the preliminary

18    inquiry, but it may well dispose of the ultimate decision in

19    the case, and that's what needs to go up.  How much of a record

20    gets to be made before that issue gets tested?

21         What I don't have clearly in front of me right now, and

22    what I think the real focus of the supplemental proceeding on

23    preliminary relief ought to be, is whether the -- the extent to

24    which the judges are effectively controlling the decision and

25    that the County is merely the administrative arm.  I don't care

1   whether it's a state or county program.  The issue is whoever

2   is doing the -- is the County doing the Court's bidding, or is

3   it effectively a situation where it's doing its own thing?  And

4   it looks to have characteristics of both.  That's the issue

5   that I need to try and nail down sooner rather than later, but

6   later, too.

7          I think I'd like to leave it at this.  We will recess the

8   hearing.  We can do it in March.  I have no problem with that.

9   We will get you a date.  I don't have my assistant here to give

10  you a date.  I think, though, that the County needs to address

11  this issue in a pleading and effectively say that -- and maybe

12  embellish on what Ms. Johnson said, and say that we think this

13  is dispositive of the issue, that we are not in -- as far as

14  the federal government -- federal court is concerned, not

15  necessarily dispositive of the issue as far as what would be

16  good -- good pretrial practice.  And then the plaintiff needs

17  to respond to that.

18         I mean, I went back and read the original complaint and

19  -- or even the motion for preliminary injunction, and among the

20  relief that the plaintiff is asking for are notice, looks like

21  provisional counsel, prompt hearings by the County, written

22  decisions by the County.  I mean, it's really -- I have never

23  heard of such a thing anywhere in the United States.  But

24  that's the kind of thing that I am being asked, I think, to

25  consider in this case, and it's a large task.

1        So I would ask the County, Ms. Johnson, and do this in

2   the next, I should say, ten to 20 days, maybe 20 days, file a

3   motion on this point, about this quasi judicial position, and

4   let me know what your position would be.  And if there is an

5   affidavit of a judge who needs to say that, I think that ought

6   to be attached to your motion at least, and then let's give the

7   plaintiff an opportunity to respond and say, No, this is not

8   so; what you are doing is essentially independent.  And then

9   let me see where I am with regard to that.  And it may be, may

10  be, as I say, that the hearing in March could address

11  specifically that issue.

12        So, I think the directive that I would leave you with at

13  this point is that the County and/or the State should file an

14  appropriate motion raising that issue of quasi judicial

15  immunity, and then, let's say, within 20 days after, the

16  plaintiff has an opportunity to respond, and then ten days

17  after, the County a chance to reply.  And then at least I would

18  see where -- where I think we are in the case, and that will

19  help me shape, candidly, what kind of testimony would come in.

20        I think you are -- I don't know, maybe you know this,

21  Ms. Johnson, or the State knows this, Mr. Cox, that the judges

22  would resist being actively deposed about their procedure.  I

23  assume they would, but maybe they won't.  But if that's your

24  position, you need to state it.

25        I wouldn't wait for a notice of deposition to be sent

1  because the proposal by the plaintiff is we want to call two

2  judges live.  Well, that's no different from a deposition.

3  It's the same thing.  Tell us why you do things.  Tell us how

4  you do things.  This is not a speech to the Bar Association.

5  This is a judge under oath being deposed by -- by, in effect,

6  counsel for detainees past and present and future.  A little

7  bit different proposition.

8       All right.  Well, that's my -- before I close, I want to

9  give you each a chance to make final remarks, but that's the

10 way I see this situation right now.

11      Are you okay, Ms. Johnson, with filing such a motion in

12 20 days?

13           MS. JOHNSON:  I will get it done.

14           THE COURT:  All right.  And response by the

15 plaintiff, Mr. Wayne?

16           MR. WAYNE:  Thank you, Your Honor.

17      I will note that Your Honor decided the question of quasi

18 judicial immunity in the motion to dismiss briefing where Your

19 Honor granted quasi judicial immunity from damages to the

20 County, and I don't believe that quasi judicial immunity

21 applies to equitable relief, which is why equitable relief is

22 the sole remaining source of relief that's live in this case.

23      I reckon that plaintiffs agree with the March date,

24 giving us a chance to litigate issues of the judge testimony

25 like Your Honor mentioned, and we are happy to do whatever

1  other briefing is required in the meantime.

2          THE COURT:  All right.  All right.  Well, you may

3  well be right about that, and that's why I want to give you a

4  chance to brief it.  Now that money damages -- at least I don't

5  understand you to be actively pursuing them, I think that's

6  correct -- the issue still remains about whether -- who

7  controls this and whether, in fact, the judges are the ones who

8  should be in the dock, so to speak, on this issue.  And I still

9  am not prepared to tell you definitively that that's so,

10  although it looks to be the case.

11      All right.  Well, 20 days, 20 days, and ten for a reply,

12  and that's where we are.

13      And it's certainly worth having a transcript made, Renee,

14  of this proceeding.

15      Anything else?  Anyone else have anything to say?  Very

16  well.  Thank you, Counsel, and we will be in touch.  Bye-bye.

17      (The proceedings were concluded at 6:05 p.m.)

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3              I, Renee A. Ewing, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that the foregoing is a true and

6    correct transcript of the stenographically reported proceedings

7    taken on the date and time previously stated in the above

8    matter; that the testimony of witnesses and statements of the

9    parties were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15              /s/ Renee A  Ewing

16              Renee A. Ewing, RPR, RMR, CRR

17              Official Court Reporter
                December 20, 2023

18

19

20

21

22

23

24

25

-IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | *    **Case No. 8:22-cv-1768 PJM** |
| | * |
| PRINCE GEORGE'S COUNTY, MARYLAND | * |
| *et a.l*, | * |
| | * |
| Defendants. | * |

### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The Defendant, Prince George's County, Maryland, by undersigned counsel and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, respectfully move for judgment in their favor on the pleadings filed to date, and as reasons therefore state:

1. There are no material disputes of fact generated by the pleadings and the defendant is entitled to judgment on the pleadings;

2. The Defendant respectfully directs the Court's attention to the memorandum of law in support of the defendant's motion filed simultaneously herewith, the arguments and points of authority of which the defendant hereby incorporates by reference.

Respectfully submitted,

*Andrew J. Murray*

Andrew J. Murray, Fed. No. 10511
Associate County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
(301) 952-522
AJMurray@co.pg.md.us

**JA1421**

*Shelley L. Johnson*
Shelley L. Johnson, Fed. No. 15853
Deputy County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
(301) 952-5225 voice
(301) 952-3071 facsimile
Sljohnson@co.pg.md.us

**JA1422**

-IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER BUTLER, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | **Case No. 8:22-cv-1768 PJM** |
| | * | |
| PRINCE GEORGE'S COUNTY, MARYLAND | * | |
| *et a.l*, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The Defendant, Prince George's County, Maryland, by counsel, respectfully submit the following memorandum of law in support of its motion for judgment on the pleadings:

### I.   INTRODUCTION/PROCEDURAL BACKGROUND

The Court is familiar with the factual allegations in the case, having reviewed extensively the prior motions to dismiss, exhibits and affidavits submitted in the case. In a nutshell, this case began as a putative class action brought by nine alleged class representatives – former detainees at the Prince George's County Department of Corrections ("DOC")-who alleged that the Courts in Prince George's County conduct constitutionally inadequate bond review hearings, abdicate their responsibilities to determine the conditions of pretrial release for detainee and instead allow DOC to make such decisions via its pretrial release program, and that the DOC violates the constitution by making the decisions, rather than the judiciary or an "elected official", and that DOC takes too long to make pretrial release decisions (see generally the complaint, ECF 1).

The Court, by memorandum opinion and order dated January 24, 2023, dismissed the plaintiffs' damages claims against the County and its employees, finding that employees of the DOC perform a quasi-judicial function and thus are entitled to quasi-judicial immunity (ECF 90).

The Court also dismissed all individual defendants except three: Laguan Salinas, Christopher Butler and Miramba Williams. Salinas was dismissed by the Court in its memorandum opinion and order denying plaintiffs' motion for reconsideration dated June 7, 2023, wherein the court noted that Salinas had been previously released at the time the court issued its original opinion on January 24, 2023 (ECF 128).

Thus, only two purported class representatives remain, although the motion for class certification was denied the by the court on March 3, 2023 (EFC 104). There have been several significant and material developments since the court's dismissal of the damages claims and denial of the motion for class certification:

First, on April 28, 2023, the DOC revised its pretrial release policy to make decisions on pretrial release eligibility within 10 days of a court order committing a defendant to DOC's custody with the "option" (order or referral) for pretrial release (see ECF 124). Second, on July 31, 2023, plaintiff Christopher Butler plead guilty to second degree murder and use of a handgun in the commission of a crime of violence. He was sentenced on October 19, 2023, to 40 years in prison, with all but 15 years suspended for the murder charge. He was sentenced to twenty years in prison with all but 5 years suspended for the handgun charge, to run concurrently with the murder sentence. *Butler almost certainly received credit for the time he served incarcerated pretrial against his sentences for his charges* (emphasis added). [1]The Court should note that plaintiff Williams had a detainer from Montgomery County and that detainers are automatic disqualifiers for pretrial release under the DOC program (i.e., they require no analysis by the pretrial release unit personnel).

---

[1]  This is the typical sentencing practice of the Circuit Court. The defendant has not verified this statement as it is not indicated in a search of the Maryland Judiciary Case Search docket entries but will do so by reviewing the court file and obtaining the actual sentencing judgment. Alternatively, defendants request that plaintiff acknowledge the statement.

2

**JA1424**

During a court scheduled teleconference on December 19, 2023, the Court invited the County to again brief the issue of its entitlement to quasi-immunity, indicating that such a determination might be dispositive of the case (See ECF 166-transcript of teleconference). Per the court's invitation, the defendant submits the following analysis and arguments that judgment on the pleadings per Rule 12(c) is warranted at this time.

## II.  REVIEW OF THE PRETRIAL RELEASE PROCESS

The court has previously described the pretrial release process in its memorandum and opinion dated January 24, 2023 (EFC 90) and the Judge defendants have also done so in their filing of this date.  The County will highlight some aspects of the process particularly pertinent here. The following statements are based on the previously filed affidavit of Jeffrey Logan (ECF 64-2), "Levels of Pretrial Release" (ECF 64-4), Written notifications to the Court of pretrial release ineligibility (ECF 64-6) and the revised Level IV Pretrial release policy (ECF 124), and the documents identified by the Judge defendants in their Rule 12(c) motion:

Bail review hearings are conducted daily before the District Court. The population management division of the PGCDOC receives a docket of the next day's bail review hearings only hours to a day before. The pretrial release investigator, in preparation for the bail review hearings, begins an investigation into the potential eligibility of a detainee for placement in the PGCDOC pretrial release program (most typically, level IV – home detention with electronic monitoring). That investigation consists of performing a criminal history record check, outstanding warrant and detainer check, and an interview with the detainee to get preliminary information on his/her address, employment, family ties to the area, and telephone number. A pretrial intake fact sheet is filled out containing as much of this information as possible, albeit some may not yet be confirmed.

At the bail review hearings, a representative from the pretrial release program provides the pretrial intake fact sheet to the court and responds to questions from the court. Significantly, the court will ask the pretrial release representative if PGCDOC will accept the detainee into its program (again, typically level IV). The representative will respond that the detainee would not qualify for pretrial release at a particular level (or at all), or that PGCDOC will take the "option" for pretrial release, meaning that in addition to the court's commitment of the defendant to PGCDOC it has tentatively recommended and will accept the court's conditional authorization to place the detainees on pretrial release *if* the detainee qualifies. The Courts (both District Court and Circuit Court on bond review hearings), defense counsel, and the PGCDOC have long understood that commitment orders with the language "PR to PTR", "referred to PTR" or "Option to PTR" all mean the same thing: that the PGCDOC is has tentatively recommended the detainees for admission into the pretrial release program and that the court has pre-authorized the release of detainees on pretrial release if, upon completion of PGCDOC's investigation, the detainee qualifies for the program. The decision of DOC then constitutes DOC's final recommendation. The revised PGCDOC Level IV pretrial release standard operating procedures now require that PGCDOC complete its investigation into a detainee's eligibility for a court authorized referral within 10 days of the issuance of the commitment order. Additionally, the SOP requires that in the event a detainee is determined to be ineligible, the Court, defense counsel and the detainee be notified of this determination in writing. This gives the Court the opportunity to revisit the conditions of the detainee's conditions of pretrial release.

The PGCDOC's investigation into a detainee's eligibility takes into consideration the same concerns of Maryland Rule 4-216.1 – that the detainee will not likely be a threat to the community and will not pose a flight risk. The investigation requires confirmation that the detainee have a

place to live in the County (the County cannot monitor individuals outside of its borders), have a telephone, have no detainers from other jurisdictions, and will not be a threat to others. It also takes all information and utilizes a risk assessment tool to come up with a numerical calculation bearing on flight risk (see ECF 64-4). In the event that PGCDOC determines that the detainee is not eligible, it indicates its recommendation and unwillingness to accept the detainee into the program by notifying the court in writing within 10 days of the referral to pretrial release. [2]

## II. STANDARD OF REVIEW

The principle difference between a motion brought under Rule 12(c) (motion for judgment on the pleadings) and Rule 12(b)(6) (motion to dismiss) is one of timing: a motion brought pursuant to 12(b)(6) to dismiss is brought prior to a responsive pleading and a motion brought pursuant to Rule 12(c) is brought after. Otherwise, the standard of review is the same for each.

Federal Rule of Civil Procedure 12(c) states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In reviewing a Rule 12(c) motion, all well-pleaded facts are assumed to be true, and all reasonable inferences are drawn in favor of the non-moving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016). The Court need not, however, accept as true "the legal conclusions drawn from the facts . . . [or] unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. Partn.*, 213 F.3d 175, 180 (4th Cir. 2000) (internal citations omitted).

"[U]nlike a Rule 12(b)(6) motion, a Rule 12(c) motion requires the court to consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this

---

[2] Defendants also acknowledge and incorporate the pretrial process as indicated in the Judge Defendant's Rule 12(c) motion filed this date.

very early stage in the litigation." *Lang. Doctors, Inc. v. MCM 8201 Corp., LLC*, No. 20-CV-1755, 2021 WL 718940, at *3 (D. Md. Feb. 24, 2021) (internal quotation marks and citations omitted).

It is well established that, on a Rule 12(c) motion, the Court can consider documents "integral to the complaint and authentic" without converting the motion into one for summary judgment. *Rojas v. Huntington Neighborhood Assn.*, No. DLB-21-28, 2022 WL 616815, at *6 (D. Md. Mar. 1, 2022), *aff'd sub nom. Andrews & Lawrence Prof. Services, LLC v. Bertinelli*, No. 22-1592, 2023 WL 4399233 (4th Cir. July 7, 2023) (internal citations omitted).  Moreover, "[w]hen considering a Rule 12(c) motion for judgment on the pleadings, a court may take judicial notice of a public document, without converting the motion into one for summary judgment."  *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, 534 F. Supp. 3d 492, 496 n2 (D. Md. 2021) (internal citations omitted), *aff'd*, No. 21-1493, 2022 WL 2128586 (4th Cir. June 14, 2022).

### III. ARGUMENT

#### A.  THE COURT NEED NOT REVISIT ITS PRIOR DETERMINATION THAT THE DEFENDANTS ARE ENTITLED TO QUASI-JUDICIAL IMMUNITY FROM MONEY DAMAGES CLAIMS BECAUSE PLAINTIFFS HAVE NO PLAUSIBLE CLASS ACTION REPRESENTATIVES.

The court previously dismissed plaintiff's motion for class action (see ECF 104 dated March 3, 2023). Plaintiffs have not filed an amended complaint or otherwise moved for class certification. Thus, there presently is no claim for damages on a class action basis at this time and the court need not revisit the County's entitlement to quasi-judicial immunity.

But, there is another reason that the court need not revisit the issue: the current individual plaintiffs, Christopher Butler and Miramba Williams, cannot serve as class representatives because they cannot demonstrate a constitutional injury that is typical of the class. Rule 23 of the federal rules of civil procedure, captioned "Class Actions", provides in pertinent part that:

(a) PREREQUISITES. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) *the claims or defenses of the representative parties are typical of the claims or defenses of the class*; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(emphasis added). Butler and Williams cannot have typical claims of the class because Butler received credit against his sentence for the time he served in pretrial detention, thus suffering no harm from pretrial detention, and Williams never qualified for pretrial release in the first instance due to a detainer from Montgomery County – a decision that required no analysis by pretrial release personnel (see ECF 83-5 – Written Notice to Court of ineligibility due to detainer). Unable to serve as class representatives, there can be no putative class action presently and accordingly no need to revisit the issue of whether the County is entitled to qualified judicial immunity.

**B.   THE COUNTY IS ENTITLED TO QUALIFIED JUDICIAL IMMUNITY BECAUSE, AS A MATTER OF LAW, ITS PRETRIAL RELEASE UNIT PERFORMS A JUDICIAL FUNCTION AND THIS COURT HAS PROPERLY ANALYZED THE ISSUE IN ITS PRIOR MEMORANDUM OPINION.**

The County adopts by reference the arguments and authorities cited by the Judge defendants in Part II of their memorandum of law in support of their motion for judgment on the pleadings. This court properly concluded in its memorandum opinion dated January 24, 2023 (EFC 90) that the County defendants perform a judicial function when determining whether a detainee may be released on pretrial release in the County's program, entitling it to quasi-judicial immunity from money damages. Nonetheless, and lest there be any doubt about this issue, one only has to

7

look (as this Court previously and quite properly did) at Maryland Rule of Criminal Procedure 4-216.1 to see that a pretrial release program's function is quasi-judicial as a matter of law.

If a judge determines that a criminal defendant should be held in "no bond" status, a criminal defendant in Prince George's County might request—usually through his/her criminal defense attorney—that a judge permit the Prince George's County Department of Corrections ("DOC") to accept and supervise the criminal defendant in the DOC's Pre-Trial Release Program. During a bond review hearing, if a representative from DOC is unable to immediately make an eligibility determination based on then-known information, a judge can order that a criminal defendant be referred to be evaluated by DOC based on DOC's eligibility criteria to determine whether the DOC will agree to accept the defendant into DOC's Pre-Trial Program.

Such referrals to be evaluated by DOC are made in accordance with Md. Rule 4-216.1(d)(2)(K), which provides that criminal defendants can be committed to the custody or supervision of an organization if, *and only if*, the organization *agrees to supervise* the criminal defendant:

> (d) Special Conditions of Release.
>
> . . .
>
> (2) Special Conditions.  Subject to section (b) of this Rule, special conditions of release imposed by a judicial officer under this Rule may include, to the extent appropriate and capable of implementation:
>
> . . .
>
> > (K) committing the defendant to the custody or supervision of a designated person or organization that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court;
>
> Committee note: The judicial officer may commit the

> defendant generally to supervision by a pretrial services
> unit operating in the county, subject to more detailed
> requirements of that unit appropriate to the supervision.

Md. Rule 4-216.1(d)(2)(K) (emphasis added).  "The Committee note that follows subsection (d)(2)(K) . . . confirms the ability of the judicial officer, where there is a pretrial release unit that provides adequate supervisory services, to commit the defendant generally to the supervision of the unit, subject to more particular requirements imposed by the unit as part of the supervision. *See* Maryland Standing Committee on Rules of Practice and Procedure, Supplement to 192nd Report, page 3, Jan. 20, 2017.

If a judge refers a criminal defendant to be evaluated for eligibility by DOC into the Pre-Trial Release Program, the judge has, in essence, found that if the criminal defendant is accepted into DOC's Pre-Trial Release Program then such condition of release is approved by the court.  In other words, if a criminal defendant is authorized by a judge under the Pre-Trial Release Program, then DOC may release the criminal defendant on a level of pretrial release but only if eligible.  If found eligible following an investigation by DOC, then—without additional judicial involvement—DOC will release the criminal defendant pursuant to the judicial referral and supervise the criminal defendant in accordance with the Pre-Trial Release Program.  If, however, DOC finds the criminal defendant ineligible or if the criminal defendant believes that DOC has failed to timely make an eligibility determination, in no event is the criminal defendant prohibited from returning to court to reevaluate bond status and/or conditions of pre-trial release. This process is clearly quasi-judicial in nature triggering the defendant's entitlement to quasi-judicial immunity.

However, there is further clear indication under the Rule  demonstrating that the County defendants perform a judicial or quasi-judicial function. Rule 4-216.1(f) provides:

> **(f)** Consideration of Factors.

**(1)** Recommendation of Pretrial Release Services Program. In determining whether a defendant should be released and the conditions of release, *the judicial officer shall give consideration to the recommendation of any pretrial release services program* that has made a risk assessment of the defendant in accordance with a validated risk assessment tool *and is willing to provide* an acceptable level of supervision over the defendant during the period of release if so directed by the judicial officer.

(emphasis added). The Rule thus requires the Court to consider the recommendation of the pretrial services program. This rule, as a matter of law, inextricably binds the judiciary with the executive (County) for purposes of pretrial release considerations. Accordingly, there can be no doubt that the recommendation of DOC to allow (or not) a defendant into its program is quasi-judicial in nature, thus entitling it to quasi-judicial immunity.  And if there be even the slightest additional doubt remaining, the Court should note that *plaintiffs' complaint specifically alleges and contend that the courts are allowing the County to make pretrial decisions for them*. Plaintiffs thus acknowledge that the defendant performs a judicial function. Accordingly, this court should decline to reconsider its prior ruling on this issue.

### C.  EVEN IF, AS ALLEGED, THE JUDICIARY ABDICATES ITS PRETRIAL RELEASE DESCIONS TO THE COUNTY'S DOC THE COUNTY CANNOT BE LIABLE FOR MONEY DAMAGES

Even if, arguendo, the plaintiffs are correct that the Prince George's County judiciary abdicates its constitutional duty to determine the conditions of pretrial release it does not follow that the County has assumed the constitutional obligation and can be liable in money damages.

Plaintiffs' contentions are circular. First, as previously indicated, plaintiffs contend that the county is making pretrial release decisions in place of the courts, implicitly acknowledging the County's quasi-judicial function.  But there is another reason why the County cannot be liable in money damages:  the policy of the County judiciary to allow DOC to make pretrial release

10

**JA1432**

decisions, if true as alleged, is a policy of State appointed officials who cannot be policymakers for the executive branch (county) under 42 U.S.C. § 1983.

In *Daves v. Dallas County, Texas*, 22 F. 4th 522 (5th Cir. 2022) 540-41 (5th Cir. 2022), a class action for money damages was brought against Dallas County, Texas by detainees of the county. The detainees alleged that the Courts there had an unconstitutional bail "menu" – a certain amount of bail that corresponded to certain offenses, and did not take into consideration the individual circumstances of each individual defendant. There, as here, money damages were sought against the local Sheriff who operated the County jail. The contention was, as is essentially here, that the County was liable for jailing detainees who did not receive due process by the judiciary. The Court found that the Sheriff and the County could not be liable for money damages because the Judges, as state officials, cannot determine the requisite unconstitutional policy on behalf of the County.  See *Daves v. Dallas County, Texas*, 22 F.th 522, 540-41 (Judges in Texas are state officials and the County could not be liable under §1983 for judges' actions in setting bail); See also *O'Donnell v. Harris County*, 892 F.3d 147, 156 (5th Cir. 2018), *overruled* by *Daves v. Dallas County*, supra. ("We agree with the County that its Sheriff is not an appropriate party for attaching municipal liability, however. The Sheriff does not have the same policymaking authority as the County Judges. To the contrary, the Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant—even if prisoners are committed "for want of bail.").  Thus, even if plaintiff's contentions were true, the County cannot have money damages liability.

## IV.    CONCLUSION

For the reasons stated herein, the Court should decline to revisit the issue of qualified judicial immunity and, instead, grant the defendant's motion for judgment on the pleadings.

Respectfully submitted,


*Andrew J. Murray*
Andrew J. Murray, Fed. No. 10511
Associate County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
(301) 952-522
AJMurray@co.pg.md.us


*Shelley L. Johnson*
Shelley L. Johnson, Fed. No. 15853
Deputy County Attorney
Prince George's County Office of Law
1301 McCormick Drive, Suite 4100
Largo, Maryland 20774
(301) 952-5225 voice
(301) 952-3071 facsimile
Sljohnson@co.pg.md.us

12

**JA1434**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BUTLER, *et al.*          *

        *Plaintiffs*,          *

        v.          *          No. 8:22-cv-01768-PJM

PRINCE GEORGE'S COUNTY, *et al.*          *

        *Defendants*.          *

\*          \*          \*          \*          \*          \*          \*          \*          \*

## JUDGE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The Judge Defendants[1], by their undersigned counsel, in accordance with Federal Rule of Civil Procedure 12(c), hereby file this Motion for Judgment on the Pleadings for all claims against them in the complaint, and in support thereof state as follows:

1.      Pursuant to this Court's Scheudling Order (ECF NO. 149), the time for amending pleadings ended on November 10, 2023.

2.      This Court need not accept as true the legal conclusions and unwarranted inferences drawn by Plaintiffs in their complaint.

3.      Under the facts alleged by Plaintiffs in their complaint, the Judge Defendants are entitled to judgment in their favor on the pleadings.

---

[1] The Judge Defendants are LaKeecia R. Allen, Bryon S. Bereano, John A. Bielec, Scott M. Carrington, Ada E. Clark-Edwards, Stacey M. Cobb Smith, Brian C. Denton, Robert W. Heffron, Jr., Donnaka V. Lewis, Gregory C. Powell, and Cathy H. Serrette.

WHEREFORE, for the above-stated reasons and those more fully explained in the accompanying memorandum, the Judge Defendants respectfully request that this Court enter an order directing that the Judge Defendants be granted their motion for judgment on the pleadings as to all claims against them in the complaint. A proposed order is attached.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Kevin M. Cox
_____
KEVIN M. COX
Federal Bar No. 29012
JAMES O. SPIKER IV
Federal Bar No. 30189
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland   21202
kcox@oag.state.md.us
jspiker@oag.state.md.us
(410) 576-6388
(410) 576-6393 (facsimile)

January 18, 2024                              Attorneys for the Judge Defendants

2

JA1436

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BUTLER, *et al.*             *

        *Plaintiffs*,             *

        v.             *          No. 8:22-cv-01768-PJM

PRINCE GEORGE'S COUNTY, *et al.*             *

        *Defendants*.             *

  *    *    *    *    *    *    *    *    *    *    *    *

# MEMORANDUM IN SUPPORT OF
# JUDGE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The Judge Defendants,[1] by their undersigned counsel, submit this memorandum in support of their motion for judgment on the pleadings.

## INTRODUCTION

In this action, the two sole remaining Plaintiffs—Christopher Butler and Miramba Williams—allege that the Judge Defendants violated their state and federal constitutional rights regarding pre-trial detention. Plaintiffs' allegations in the complaint are premised on drawing a legal conclusion or unwarranted deduction of fact that the Judge Defendants have "abdicated their constitutional duties" by granting *Plaintiffs' own* requests to be judicially referred (or considered) for evaluation by the Prince George's County

---

[1] The Judge Defendants are LaKeecia R. Allen, Bryon S. Bereano, John A. Bielec, Scott M. Carrington, Ada E. Clark-Edwards, Stacey M. Cobb Smith, Brian C. Denton, Robert W. Heffron, Jr., Donnaka V. Lewis, Gregory C. Powell, and Cathy H. Serrette.

Department of Corrections ("DOC") for *eligibility* and *possible* acceptance into the DOC's

Pre-Trial Release Program.[2]

Plaintiffs declined this Court's invitation to file an amended complaint after this

Court resolved preliminary motions to dismiss.  (*See* ECF No. 128, Memorandum Opinion

dated June 7, 2023 (commenting that "an Amended Complaint would seem to be in

order").)  Pursuant to this Court's Scheduling Order, the time for amending pleadings

ended on November 10, 2023.  (ECF No. 149.)

As Plaintiffs have plead their case, the sole issue to be decided by this Court (which

requires no factual discovery) is whether it is constitutional for Maryland Rule 4-

216.1(d)(2)(K) to permit judges to order that criminal defendants be authorized to be

released to the supervision of a pretrial services unit operating in a county, subject to the

condition precedent of a pretrial services unit agreeing to accept and supervise the criminal

---

[2] "The Pretrial Release Program is a supervisory alternative-to-incarceration program that allows those committed to the custodial care of the jail to be released from incarceration while awaiting adjudication of their case.  Program eligibility is based on a number of factors outlined in Maryland Rule 4-216.1 that include the seriousness of current charges, past criminal history, history of failure to appear in court, prior pretrial release history and program compliance, parole and probation violations, and significant and social ties to the local community."  (ECF No. 124-2 at 2.)  "If found to be eligible, program participants are assigned to a supervisory level that can be authorized by a Judge at a bond review hearing and/or referred by departmental staff for judicial authorization."  (ECF No. 124-2 at 2-3.)

"The Pretrial Release Program has four (4) supervisory levels."  (ECF No. 124-2 at 3.)  Level I is for non-violent misdemeanor offenses, Level II is for criminal defendants who have little to no criminal history, Level III is for criminal defendants who have an extensive criminal history and/or more serious charges, and Level IV (Home Monitoring Program) is for criminal defendants charged with serious and violent felonies.  (ECF No. 124-2 at 3-4.)

defendants.[3]  The issue as framed for this Court (and as certainly will be on appeal) is simple:  is it constitutional for judges in Prince George's County to order during a bond review hearing that a criminal defendant be authorized to be released from pretrial detention subject to the supervision of DOC, **but only if** DOC agrees to accept the criminal defendant into DOC's Pre-Trial Release Program, even though DOC's eligibility determination will occur subsequent to the subject bond review hearing.[4]

For the reasons herein, the Judge Defendants are entitled to judgment in their favor on the pleadings because there is no meaningful dispute as to the facts in this case and the sole legal issue in this case may be resolved in favor of Defendants at this stage.

---

[3] Undoubtedly, Plaintiffs will argue that Maryland Rule 4-216.1(d)(2)(K) does not allow this and that undersigned counsel misinterprets the Rule herein.  Thus, there is a dispute between the Parties as to the interpretation of the Rule.  Naturally, as the drafter of the Maryland Rules, the Supreme Court of Maryland is best suited to interpret them.  Accordingly, to the extent that Plaintiffs have a legitimate dispute in the interpretation of the Rule, then Plaintiffs should request (or this Court should even consider) certifying the issue to the Supreme Court of Maryland.  *See Liberty Mut. Ins. Co. v. Murphy*, No. 1:20-CV-01961-SAG, 2021 WL 2784264, at *2 (D. Md. July 2, 2021), *certified question answered*, 478 Md. 333 (2022) (stating the legal standard for certifying questions of law from this Court to the Supreme Court of Maryland).

[4] Naturally, the ideal situation is for DOC's decision to be made in real time during bond review hearings, but that is not always feasible with every criminal defendant due to the unique circumstances of each factual case, the crime rates in Prince George's County, and limited resources of DOC.  (*See* ECF No. 124-3 at 3 (the County's answer to question 6).)  Thus, DOC's determination whether to accept a criminal defendant into DOC's Pre-Trial Release Program must often be made after a criminal defendant's initial bond review hearing.  This results in criminal defendants being released after DOC "agrees to supervise the defendant and assist in ensuring the defendant's appearance in court," Maryland Rule 4-216.1(d)(2)(K), but does not require or involve a subsequent court appearance for another bond review hearing because of the prior respective orders authorizing the criminal defendants to be released to the supervision of DOC in the first instance.

## STATEMENT OF FACTS

### Overview of Pretrial Detention in Prince George's County and Maryland Rule 4-216.1

After arrest, a criminal defendant (other than one arrested on a warrant issued by a circuit court) is brought before a commissioner in the District Court of Maryland ("District Court") for an initial appearance.  Md. Rule 4-213.  At the initial appearance, the defendant is provided with a copy of the charging document, advised of the right to counsel and the nature of the charges, and is told whether there is a right to a preliminary hearing.  *Id*.  Initial pretrial release determinations, including whether, and under what conditions, a defendant may be released, are also made at the initial appearance.  *Id*.

If the defendant is denied pretrial release by a commissioner at an initial appearance or who, for any reason, remains in custody after a commissioner has determined conditions of release, that defendant will be taken before a District Court judge if the court is in session or, if the court is not in session, the next session of the District Court for a "bond review."  Md. Rule 4-216.2(a).  At this "bond review," the court shall review the commissioner's pretrial release determination and take appropriate action per the requirements of Maryland Rule 4-216.1.  Md. Rule 4-216.2(c).  A decision by a judge on whether or on what conditions to release a defendant must be based on individualized consideration of specific facts and circumstances.  Md. Rule 4-216.1(b)(2).

If a judge determines that a criminal defendant should be held in "no bond" status, a criminal defendant in Prince George's County might request—usually through his/her

criminal defense attorney—that a judge authorize/permit/refer to/give the option to[5] the Prince George's County Department of Corrections ("DOC") to accept and supervise the criminal defendant in the DOC's Pre-Trial Release Program.[6]  During a bond review hearing, if a representative from DOC is unable to immediately make an eligibility determination based on then-known information, a judge can order that a criminal defendant be referred to be evaluated by DOC based on DOC's eligibility criteria to determine whether the DOC will agree to accept the defendant into DOC's Pre-Trial Program.  *See supra* notes 2 and 6.

Such referrals to be evaluated by DOC are made in accordance with Md. Rule 4-216.1(d)(2)(K), which provides that criminal defendants can be committed to the custody

---

[5] These words and phrases may and are essentially used interchangeably.  No form language is required either constitutionally, statutorily, or in the Maryland Rules, nor do Plaintiffs make such an assertion.  Thus, for purposes of this case, any distinction in the language and word choice is irrelevant.

[6] Naturally, judges may *sua sponte* do this as well.

DOC's revised (April 2023, as a result of this action) Pretrial Release Process is described in great detail in ECF No. 124-2.  The document provided to criminal defendants states in pertinent part:

> If a defendant is **authorized** by the Judge under the Pretrial Release Program, then they **may be released** on a level of pretrial release **but only if eligible**. The Judge may also require that Pretrial Services of PGCDOC verify certain information prior to release.  <u>If found eligible</u> following an investigation by the Pretrial Release Program, <u>then the defendant will be released</u> and supervised by PGCDOC in accordance with the Pretrial Release Program.

(ECF No. 124-2 at 1 (emphasis added).)  And, as to Plaintiffs' complaints of delay by the County, DOC now notifies the courts, criminal defendants, and criminal defendants' counsel within ten business days if DOC is unable to determine a criminal defendant's eligibility for the program.  (ECF No. 124-2 at 1.)  The criminal defendant may request another bond review hearing at such time.  (ECF No. 124-2 at 1.)

or supervision of an organization if, *and only if*, the organization *agrees to supervise* the criminal defendant:

> (d) Special Conditions of Release.
>
> > . . .
> >
> > (2) Special Conditions.  Subject to section (b) of this Rule, special conditions of release imposed by a judicial officer under this Rule may include, to the extent appropriate and capable of implementation:
> >
> > . . .
> >
> > > (K) **committing the defendant to the custody or supervision of a designated person or organization [*e.g.*, DOC] that** <u>**agrees to**</u>[7] **supervise the defendant and assist in ensuring the defendant's appearance in court**;
> > >
> > > Committee note: The judicial officer <u>may commit the defendant generally to supervision by a pretrial services unit operating in the county</u> [*e.g.*, DOC], subject to <u>more detailed requirements of that unit appropriate to the supervision</u>.

Md. Rule 4-216.1(d)(2)(K) (emphasis added).   "The Committee note that follows subsection (d)(2)(K) . . . confirms the ability of the judicial officer, where there is a pretrial release unit that provides adequate supervisory services, to commit the defendant generally to the supervision of the unit, subject to more particular requirements imposed by the unit as part of the supervision."  *See* Maryland Standing Committee on Rules of Practice and Procedure, Supplement to 192nd Report, page 3, Jan. 20, 2017.

---

[7] This is where the condition precedent of the Rule and the process is contained.

If a judge refers a criminal defendant to be evaluated for eligibility by DOC into the Pre-Trial Release Program, the judge has, in essence, found that *if* the criminal defendant is accepted into DOC's Pre-Trial Release Program, only then such condition of release is approved by the court.  In other words, if a criminal defendant is authorized[8] by a judge for pretrial release under DOC's Pre-Trial Release Program, then DOC may release the criminal defendant on a level of pretrial release, but only if eligible.  If found eligible following an investigation by DOC, then—without additional judicial involvement—DOC will release the criminal defendant pursuant to the judicial referral and supervise the criminal defendant in accordance with the Pre-Trial Release Program.  If, however, DOC finds the criminal defendant ineligible or if the criminal defendant believes that DOC has failed to timely make an eligibility determination, in no event is the criminal defendant prohibited from returning to court to reevaluate bond status and/or conditions of pre-trial release.

### Overview of Plaintiffs' Underlying Criminal Cases

#### Plaintiff Christopher Butler

Mr. Butler was arrested on October 27, 2021.  (*See* ECF Nos. 60 and 59-4.)  He was charged with murder in the second degree, manslaughter, assault in the first and second degree, and use of a firearm during the commission of a crime of violence or felony.  (*Id.*)

---

[8] The words "ordered," "referred," and "option" may, for example, also be utilized, though effectively for purposes of this case any distinction in the language is irrelevant and the words may be used interchangeably.  *See supra* note 5.

In the District Court, Mr. Butler had an initial appearance on October 27, 2021 (the day of his arrest).  He then had bail review hearings on October 28 and October 29, respectively before Judge Defendant Clark-Edwards and the Honorable Judge Clayton A. Aarons (not a Defendant).  (*Id.*); (ECF No. 66-8, Butler District Ct. docket.)  During the October 29 hearing, <u>Mr. Butler's defense attorney asked for some option of pre-trial release</u>, but Judge Aarons kept Mr. Butler in <u>no-bond status</u>.  (ECF No. 87-3, Transcript of October 29, 2021 hearing (Public Defender: "Mr. Butler currently is a no-bond status. . . . [W]e would ask the court . . . to consider . . . some option of relief, whether it be pretrial . . . ." Judge Aarons: "[B]ased upon the allegations contained in this particular matter . . . I've reviewed the statement of charges, I agree with the State that [Mr. Butler] is a danger to the community, therefore the bond will remain the same.  It'll be no bond.")).

After Mr. Butler was indicted, his case was transferred to the Circuit Court.  During a bail review hearing on February 18, 2022 (when Mr. Butler was already in <u>no bond status</u>), in response to Mr. Butler's defense attorney's renewed request for pretrial release, Judge Defendant Serrette <u>authorized</u> Mr. Butler to be <u>evaluated</u> by DOC for eligibility on pre-trial release level 4.  (ECF No. 1, Compl. ¶ 168; ECF No. 83-4, Transcript of February 18, 2022 hearing (Judge Serrette: "Defense Attorney is asking that [Mr. Butler] be placed on Pretrial level 4 . . . . I will provide that Mr. Butler may be eligible for Pretrial release, level 4.[9]  The conditions being he may not leave his house, he may not work on Pretrial

---

[9] DOC has four (4) supervisory levels.  *Supra* note 2.  Level 4 is the most restrictive supervision requiring, among other things, that a criminal defendant be supervised daily and monitored through a global positioning system (GPS) device.  (ECF No. 124-2 at 4.)

release.  It will be strictly to stay in his home . . . no other community activities and no other reason to leave the property.").)  Judge Defendant Serrette's ruling was that *if* DOC agreed to accept and supervise Mr. Butler in the DOC's Pre-Trial Release Program, *only then* was Mr. Butler to be released from detention.  Said another way, <u>Mr. Butler's release from detention was **conditional** on DOC agreeing to supervise Mr. Butler</u>.[10]

It is undisputed that DOC never found Mr. Butler eligible for the DOC's Pre-Trial Release Program.  On July 31, 2023, Mr. Butler pled guilty to second degree murder.  (ECF No. 147, Mr. Butler's Guilty Plea.)

As alleged, it is undisputed that Mr. Butler requested that his respective Judge Defendant refer him for evaluation by DOC for eligibility and possible acceptance into the DOC's Pre-Trial Release Program; that pursuant to such judicial referral the DOC was not compelled to accept Mr. Butler into the Pre-Trial Release Program and DOC was otherwise not compelled to "agree[] to supervise [Mr. Butler] and assist in ensuring [Mr. Butler's] appearance in court" within the meaning of Maryland Rule 4-216.1(d)(2)(K); that Mr. Butler was never prohibited from filing a motion for bond review; that Mr. Butler never had a motion for bond review denied without a hearing; that no judge ever refused to consider a motion for bond review filed by Mr. Buter; that Mr. Butler never filed a motion

---

[10] To the extent that Plaintiffs dispute that this was Judge Serrette's ruling, this is exactly why the Judge Defendants are not subject to deposition, as explained in greater detail in the Judge Defendants motion filed simultaneously herewith (ECF 175).  Plaintiffs may not inquire into the Judge Defendants' deliberative process, and no relevant question they ask of any Judge Defendant at deposition will seek any information other than the judge's deliberative process.

seeking clarification of any order issued by a Judge Defendant; that no Judge Defendant ever issued Mr. Butler an absolute, final order of release without supervised release conditions, such that DOC never acted in disregard of such an order; that Mr. Butler never filed a petition for habeas corpus relief; that Mr. Butler never filed a petition for writ of mandamus; and that Mr. Butler never filed an appeal concerning his pre-trial detention status.

### Plaintiff Miramba Williams

Mr. Williams was arrested on June 30, 2022, upon a traffic stop during which marijuana and a loaded handgun were located. (*See* ECF Nos. 60 and 59-5.) At the time, Mr. Williams was prohibited from possessing firearms/ammunition due to him being a respondent of a protective order. (*Id.*) He was, as well, on active probation arising from a prior conviction for illegal possession of a firearm. (*Id.*) Mr. Williams was charged with possession of marijuana over ten grams, possession with intent to distribute, a handgun in a vehicle, distribution with a firearm, a firearm/drug trafficking crime, illegal possession of a regulated firearm, a loaded handgun in a vehicle, illegal possession of ammunition, and firearm use during a felony or violent crime. (*Id.*)

In the District Court, Mr. Williams had an initial appearance on July 1, 2022. (*Id.*) At a bail review hearing on July 5, 2022, Judge Defendant Powell held Mr. Williams without bond, but he also authorized Mr. Williams to be evaluated by DOC for eligibility into the DOC's Pre-Trial Release Program. (ECF No. 85, Transcript of July 5, 2022 hearing (Defense Attorney: "[W]e would be asking that Mr. Williams be released at some par of pretrial release on any level. . . ." Judge Defendant Powell: "He'll be held without

bond or I will authorize pretrial release at option any level.").)  Judge Defendant Powell's ruling was that **_if_** DOC agreed to accept and supervise Mr. Williams in the DOC's Pre-Trial Release Program, **_only then_** was Mr. Williams to be released from detention.  Said another way, <u>Mr. Williams' release from detention was **conditional** on DOC agreeing to supervise Mr. Williams.</u>[11]

At a subsequent bail review hearing on August 12, 2022, the Honorable Judge Patrice E. Lewis (not a Defendant) kept Mr. Williams in no-bond status after it was determined that Mr. Williams was <u>ineligible for DOC's Pre-Trial Release Program due to a detainer.</u>  (ECF No. 85, Transcript of December 8, 2022 hearing (Judge Lewis: "[Mr. Williams] is currently in a no bond [status], but pretrial had the option.  So what are you asking me to do?"  Defense Attorney: "[A]t the time of the [previous bail review] hearing, Judge Powell indicated that if pretrial was no longer an option to file the motion [for another bail review].  Pretrial is no longer an option. . . . [Because] of a detainer. . . ."  Judge Lewis:  "I find that there are no conditions of bond that I could put in place that would provide for the public safety by clear and convincing evidence and/or the witness in this case in particular.  And, therefore, I'm going to leave you in a no bond [status] . . . .").)

---

[11] To the extent that Plaintiffs dispute that this was Judge Powell's ruling, this is exactly why the Judge Defendants are not subject to deposition, as explained in greater detail in the Judge Defendants motion filed simultaneously herewith (ECF 175).  Plaintiffs may not inquire into the Judge Defendants' deliberative process, and no relevant question they ask of any Judge Defendant at deposition will seek any information other than the judge's deliberative process.

It is undisputed that DOC never found Mr. Williams eligible for the DOC's Pre-Trial Release Program. Mr. Williams was not released from detention until the circuit court granted his motion to reduce bond to personal recognizance. (*See* ECF No. 118, Criminal Docket Sheet dated March 31, 2023.) The circuit court eventually granted Mr. Williams' motion to dismiss on July 31, 2023.

As alleged, it is undisputed that Mr. Williams requested that his respective Judge Defendant refer him for evaluation by DOC for eligibility and possible acceptance into the DOC's Pre-Trial Release Program; that pursuant to such judicial referral the DOC was not compelled to accept Mr. Williams into the Pre-Trial Release Program and DOC was not otherwise compelled to "agree[] to supervise [Mr. Williams] and assist in ensuring [Mr. Williams's] appearance in court" within the meaning of Maryland Rule 4-216.1(d)(2)(K); that Mr. Williams was never prohibited from filing a motion for bond review; that Mr. Williams never had a motion for bond review denied without a hearing; that no judge ever refused to consider a motion for bond review filed by Mr. Williams; that Mr. Williams never filed a motion seeking clarification of any order issued by a Judge Defendant; that no Judge Defendant ever issued Mr. Williams an absolute, final order of release without supervised release conditions, such that DOC never acted in disregard of such an order; that Mr. Williams never filed a petition for habeas corpus relief; that Mr. Williams never filed a petition for writ of mandamus; and that Mr. Williams never filed an appeal concerning his pre-trial detention status.

**Plaintiffs' Allegations and Relief Sought Against the Judge Defendants**

Essentially, in their complaint, Plaintiffs draw the legal conclusion that in following Maryland Rule 4-216.1(d)(2)(K) the Judge Defendants have allegedly "abdicated their responsibilities and instead referred to unaccountable non-judicial county officials the decision of whether, when, and under what conditions the presumptively innocent person will be released." (*See* ECF No. 1, Compl. ¶ 5.) Plaintiffs bring five counts against the Judge Defendants, seeking a declaration that the Judge Defendants violated Plaintiffs' constitutional rights. Count I, titled "Fourteenth Amendment Right to Substantive Due Process," asserts that the Judge "Defendants maintain policies and practices that violate Plaintiffs' fundamental right to pretrial liberty by subjecting them to pretrial detention without the substantive findings required by the Constitution" and "issue pretrial referrals knowing that Plaintiffs will be detained at length while the Pretrial Division processes the referral, or indefinitely if the Division refuses to release." (*Id.* at ¶¶ 249-50.) The Judge Defendants allegedly "do so having necessarily found that Plaintiffs may be released by granting the Division authority to release without further judicial involvement." (*Id.* at ¶ 240.)

Count II, titled "Fourteenth Amendment Right to Procedural Due Process," mirrors Count I, but as to procedural due process. (*Id.* at ¶¶ 257-61.) Counts III and IV respectively mirror Counts I and II, but as to the Maryland Constitution. (*Id.* at ¶¶ 264-67; 270-73.)

Finally, Count V, titled "Maryland Constitution, Declaration of Rights, Article 8 Separation of Powers," claims that the Judge Defendants purportedly "delegate[ ] their

authority regarding pretrial release and detention to the Pretrial Division" and, therefore, "abdicate their constitutional duties." (*Id.* at ¶ 278.)

Thus, all five Counts of the complaint as against the Judge Defendants are premised on the fact that Maryland Rule 4-216.1(d)(2)(K) permits judges to conditionally release criminal defendants subject to DOC agreeing to accept and supervise the criminal defendants. Plaintiffs claim that this is unconstitutional. Accordingly, the sole issue in this case is whether it is constitutional for Maryland Rule 4-216.1(d)(2)(K) to permit judges to conditionally release criminal defendants subject to DOC agreeing to accept and supervise the criminal defendants. The answer is a resounding "yes." And, no discovery or further motions practice is required to answer this discrete issue. Instead, this issue is more appropriately addressed by this motion for judgment on the pleadings.

## ARGUMENT

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In reviewing a Rule 12(c) motion, all well-pleaded facts are assumed to be true, and all reasonable inferences are drawn in favor of the non-moving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016). The Court need not, however, accept as true "the legal conclusions drawn from the facts . . . [or] unwarranted inferences, unreasonable conclusions, or arguments." E. *Shore Markets, Inc. v. J.D. Associates Ltd. Partn.*, 213 F.3d 175, 180 (4th Cir. 2000) (internal citations omitted).

"[U]nlike a Rule 12(b)(6) motion, a Rule 12(c) motion requires the court to consider and decide the merits of the case, on the assumption that the pleadings demonstrate that there are no meaningful disputes as to the facts such that the complaint's claims are ripe to be resolved at this very early stage in the litigation." *Lang. Doctors, Inc. v. MCM 8201 Corp., LLC*, No. 20-CV-1755, 2021 WL 718940, at *3 (D. Md. Feb. 24, 2021) (internal quotation marks and citations omitted).

It is well established that, on a Rule 12(c) motion, the Court can consider documents "integral to the complaint and authentic" without converting the motion into one for summary judgment. *Rojas v. Huntington Neighborhood Assn.*, No. DLB-21-28, 2022 WL 616815, at *6 (D. Md. Mar. 1, 2022), *aff'd sub nom. Andrews & Lawrence Prof. Services, LLC v. Bertinelli*, No. 22-1592, 2023 WL 4399233 (4th Cir. July 7, 2023) (internal citations omitted). Moreover, "[w]hen considering a Rule 12(c) motion for judgment on the pleadings, a court may take judicial notice of a public document, without converting the motion into one for summary judgment." *Bel Air Auto Auction, Inc. v. Great N. Ins. Co*., 534 F. Supp. 3d 492, 496 n2 (D. Md. 2021) (internal citations omitted), *aff'd*, No. 21-1493, 2022 WL 2128586 (4th Cir. June 14, 2022).

II.  **PLAINTIFFS' CLAIMS AGAINST THE JUDGE DEFENDANTS FAIL BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS TO ESTABLISH THAT THE STATE RELINQUISHED ULTIMATE CONTROL OVER PLAINTIFFS' CRIMINAL CASES TO DOC, NOR DO PLAINTIFFS ALLEGE FACTS ESTABLISHING THAT JUDICIAL REFERRALS OF PLAINTIFFS FOR ELIGIBILITY DETERMINATIONS BY DOC INTO THE PRE-TRIAL RELEASE PROGRAM VIOLATED MARYLAND RULE 4-216.1(d)(2)(K) AND, EVEN IF PLAINTIFFS MAKE SUCH ALLEGATIONS, MARYLAND RULE 4-216.1(d)(2)(K) CONSTITUTIONALLY PERMITS JUDGES TO ORDER THAT CRIMINAL DEFENDANTS BE CONDITIONALLY RELEASED SUBJECT TO DOC AGREEING TO ACCEPT AND SUPERVISE THEM.**

There is no dispute of material fact concerning the general practice of how judges grant criminal defendants' requests to be considered by DOC for an eligibility determination for possible acceptance into the DOC's Pre-Trial Release Program.  As discussed above, such judicial "referrals" for evaluation by DOC are made in accordance with Maryland Rule 4-216.1(d)(2)(K), which provides that criminal defendants can be committed to the custody or supervision of an organization if, *and only if*, the organization *agrees to supervise* the criminal defendant.  If found eligible following an investigation by DOC, then—without additional judicial involvement—DOC will release the criminal defendant pursuant to the judicial referral and supervise the criminal defendant in accordance with the Pre-Trial Release Program.  This is identified and explained in DOC's description of its "Pretrial Release Process," which is provided to criminal defendants at each bail hearing.  (ECF No. 124-2.)

Here, all of Plaintiffs' claims against the Judge Defendants are premised on Plaintiffs drawing a legal conclusion in their complaint that—in following and interpreting Maryland Rule 4-216.1(d)(2)(K)—the Judge Defendants have allegedly "abdicated their responsibilities and instead referred to unaccountable non-judicial county officials the

decision of whether, when, and under what conditions the presumptively innocent person will be released."  (*See* ECF No. 1, Compl. ¶ 5.)  Such statements in the complaint amount to nothing more than legal conclusions which this Court need not accept on a Rule 12(c) motion.  *See First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (internal citations omitted) ("[C]onclusions of law or unwarranted deductions of fact" need not be deemed admitted in considering a Rule 12(c) motion.); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) ("We do not, however, accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks and citation omitted); *Baumann v. D.C.*, 744 F. Supp. 2d 216, 222 (D. D.C. 2010) (in evaluating a Rule 12(c) motion, "the court is not bound to accept the legal conclusions of the non-moving party.") (internal citations omitted).

Critically, Plaintiffs fail to allege any *facts* that would establish that the Judge Defendants—or, more broadly, the State (through the Judge Defendants)—relinquished ultimate control over Plaintiffs' criminal cases and the decision whether criminal defendants may be released to DOC.  Instead, as alleged by Plaintiffs—and as this Court can take judicial notice from the court orders and hearing transcripts referenced above— judicial referrals/orders/options/authorizations for pre-trial release simply authorize/permit criminal defendants found by judges to be suitable for "no bond" status and held in jail to be released and supervised under DOC's Pre-Trial Release Program *if*, after making an eligibility determination, the DOC *agrees* to accept criminal defendants to participate in the DOC's Pre-Trial Release Program.  Stated differently, even under Plaintiffs' facts alleged in the complaint, at all times relevant a judge maintains authority to grant a criminal

defendant's request to be referred for evaluation by DOC for eligibility and possible acceptance into the DOC' Pre-Trial Release Program (the decision whether DOC will accept someone is solely within DOC's discretion); a judge maintains authority to enter an order for a criminal defendant's absolute, final order of release without supervised release conditions; a judge maintains authority to enter an order releasing a criminal defendant on personal recognizance, to lower a bond, to raise a bond, or to keep a criminal defendant in no-bond status; and a judge maintains authority to hear renewed motions for bond review.

The fact that the Judge Defendants never relinquished ultimate control over the criminal cases is underscored by Messrs. Butler and Williams having appeared in court for subsequent bond reviews even *after* judicial referrals were made to DOC for eligibility determinations.  Messrs. Butler and Williams do not plead that they were ever prohibited from filing a motion for bond review; that they ever had a motion for bond review denied without a hearing; that any judge ever refused to consider a motion for bond review; and that any Judge Defendant ever issued either of them an absolute, final order of release without supervised release conditions, such that DOC ever acted in disregard of such an order.  Moreover, Messrs. Butler and Williams do not plead that pursuant to a judicial referral the DOC was compelled and required to accept them into the DOC's Pre-Trial Release Program or that DOC was otherwise compelled to "agree[] to supervise [Mr. Williams] and assist in ensuring [Mr. Williams's] appearance in court" within the meaning of Maryland Rule 4-216.1(d)(2)(K).  Here, Plaintiffs conveniently plead their facts, which are insufficient to survive judgment on the pleadings.

If Plaintiffs have legal support that Maryland Rule 4-216.1(**d**)(2)(K) does not constitutionally permit judges to order that criminal defendants be released subject to the condition precedent that a pretrial services unit operating in a county agrees to accept and supervise the criminal defendants, such support is not included in their complaint nor have Plaintiffs identified any such support in their 18-months of filings in this case. Thus, we are back to the question Defendants have always had in this case: "What is this case about?" The Court has often had the same question.

Because the pleadings demonstrate that there is no meaningful dispute as to the facts alleged in this case, the complaint's claims are ripe to be resolved now at this early stage in the litigation.

## CONCLUSION

The Judge Defendants' motion for judgment on the pleadings should be granted.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Kevin M. Cox

_____
KEVIN M. COX
Federal Bar No. 29012
JAMES O. SPIKER IV
Federal Bar No. 30189
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
kcox@oag.state.md.us
jspiker@oag.state.md.us
(410) 576-6388

January 18, 2024                    Attorneys for the Judge Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER BUTLER, *et al.* | * | |
| *Plaintiffs*, | * | |
| v. | * | No. 8:22-cv-01768-PJM |
| PRINCE GEORGE'S COUNTY, *et al.* | * | |
| *Defendants*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## HON. LAKEECIA R. ALLEN'S AND HON. ROBERT W. HEFFRON'S MOTION TO QUASH SUBPOENAS FOR IN-PERSON DEPOSITION TESTIMONY AND FOR PROTECTIVE ORDER OR, IN THE ALTERNATIVE, MOTION THAT DEPOSITIONS PROCEED BY WRITTEN QUESTIONS

Hon. LaKeecia R. Allen and Hon. Robert W. Heffron (the "Subpoenaed Judges"), defendants in this matter, by undersigned counsel, in accordance with Fed. R. Civ. P. 26(c) and 45(d), move to quash subpoenas for in-person deposition testimony in this case and for a protective order because questions will invariably seek information protected by judicial deliberative privilege.  In the alternative, the Subpoenaed Judges move that any depositions proceed through written questions pursuant to Fed. R. Civ. P. 31.  In support of this motion, the Subpoenaed Judges rely upon the contemporaneously filed memorandum of law.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Kevin M. Cox

_____

KEVIN M. COX
Federal Bar No. 29012

JAMES O. SPIKER IV
Federal Bar No. 30189
Assistant Attorneys General

200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
kcox@oag.state.md.us
jspiker@oag.state.md.us
(410) 576-6388
(410) 576-6393 (facsimile)

January 18, 2024                    Attorneys for the Judge Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
301-344-0632

**MEMORANDUM**

TO:        Counsel of Record

FROM:   Judge Peter J. Messitte

RE:        <u>Butler, et al. v. Prince George's County, et al.</u>
              No. 22-cv-1768

DATE:    January 2 5, 2024

\* \* \*

The following motions are currently pending before the Court: **(1)** Plaintiffs' Motion to Compel Compliance with Nonparty Subpoena for Documents as to the Maryland Administrative Office of the Courts (ECF No. 169); **(2)** Defendants' Motion to Stay Discovery Pending Resolution of Dispositive Motions (ECF No. 170); **(3)** Defendant Prince George's County's Motion for Judgment on the Pleadings (ECF No. 173); Defendants Lakeecia Allen, Bryon Bereano, John Bielec, Scott Carrington, Ada Clark-Edwards, Brian Denton, Robert Heffron Jr., Donnaka Lewis, Gregory Powell, Cathy Serrette, and Stacey Cobb Smith (the "Judge Defendants")'s Motion for Judgment on the Pleadings (ECF No. 174); and **(4)** Defendants Lakeecia Allen and Robert Heffron Jr.'s Motion to Quash Subpoenas and for Protective Order (ECF No. 175). Of these Motions, two are fully briefed and ripe for resolution: Plaintiffs' Motion to Compel, and Defendants' Motion to Stay.

After reviewing the fully briefed Motions, the Court agrees with Defendants that a **STAY** of all discovery is appropriate pending resolution of Defendants' Motions for Judgment on the Pleadings (ECF Nos. 173, 174), which are not yet fully briefed. *See, e.g., Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) ("A court may, within its discretion, issue a Rule 26(c) protective order to stay discovery pending determination of a dispositive motion.") (citation omitted); *see also* Fed. R. Civ. P. 26(c) (providing that a court may, for good cause, "issue an order to protect a party or person" . . . "forbidding the disclosure or discovery.").

As the Court has previously indicated, the narrow question of judicial and quasi-judicial immunity may well resolve the entirety of the case (*see, e.g.,* ECF Nos. 156, 166).

That said, however, Chambers recently received what appeared to be an *ex parte* voice message from one of Plaintiffs' counsel without any indication that counsel had discussed the contents of the communication or its purpose with opposing counsel. The Court reminds counsel that, aside from minor procedural issues (e.g., informing the Court of availability for hearings), *ex parte* communications are inappropriate, and any communication with the Court should include counsel for all parties.

1

In any event, the voice message asked about the Court's position with respect to fielding objections during depositions. The call was in relation to what the Court understands (based on the parties' filings on Defendants' Motion to Stay) to have been the deposition of former Defendant Jeffrey Logan, Division Chief of the Prince George's County Population Management Division. Assuming that deposition took place, and for future reference should additional discovery be permitted, the parties are directed to make their objections on the record during depositions in the normal fashion for the Court to address at a later time. The parties should not contact Chambers during the actual depositions with questions about objections.

Finally, the Court has provisionally scheduled a preliminary injunction hearing for April 3, 2024. This hearing is subject to cancellation depending on the Court's decision with respect to the Defendants' Motions for Judgment on the Pleadings.

In sum, the Court **ORDERS**:

1. Defendants' Motion to Stay Discovery Pending Resolution of Dispositive Motions (ECF No. 170) is **GRANTED**;
2. All further discovery is **STAYED**; and
3. The Court will **DEFER** ruling on the remaining open Motions pending resolution of Defendants' Motions for Judgment on the Pleadings (ECF Nos. 173, 174), which may, however, be covered in the Court's ruling on the Motions for Judgment on the Pleadings.

Despite the informal nature of this ruling, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.

Peter J. Messitte
United States District Judge

CC:     Court file
        Counsel of Record

2

**JA1459**



CASE NO. CT211239X

## CASE ASSIGNMENT

**State of Maryland vs Christopher Daniel Butler**
Case Type: **Criminal Indictment**
CaseStatus: **Closed**
Case Financial Balance: **$145.00**

Court Address: **14735 Main Street, Upper Marlboro, Maryland, 20772**
Judicial Officer: **Alves**
Assigned On: **07/22/2022**
Filed On: **11/18/2021**

*Circuit Court Clerks: 301-952-3318   Calendar Management: 301-952-3850*

| Related Cases | Cross Reference Numbers |
|---|---|
| | CR5E00704415          Conversion Default Case Cross Reference Numbers |

## PARTY INFORMATION

Attorneys

Plaintiff          State of Maryland

Smith, Steven, D    Removed   05/02/2023
State's Attorney, Prince George's   Retained   02/14/2022
Williams, Stephen, J, Esquire   Retained   05/01/2023

Defendant          Butler, Christopher, Daniel

HELDRETH, ALLISON, ELAINE   Retained   11/24/2021
Public Defender, Prince George's County   Retained   11/24/2021

Judge          Serrette, Cathy, H   Removed On 7/22/2022 2:22:39 PM

Victim Witness Advocate   Burton, Debbie-Ann, K

## CASE INFORMATION

Tracking No (s). *180001450543*

| Offense | Statute | Plea | Plea Date | Disposition | Disp Date |
|---|---|---|---|---|---|
| 1. Murder-Second Degree | CR.2.204 | Guilty | 7/31/2023 | Guilty | 10/19/2023 |
| 2. Use Handgun/Crime Of Viol/Comm(4-204) | 4-204 | Not Guilty | 7/31/2023 | Guilty | 10/19/2023 |

## SENTENCES

Sentence Date: 10/19/2023

**Confinement by Count**

Count: 1. Murder-Second Degree CR.2.204
    Term: 40Y
    Suspend All But: 15Y
    Comments: All but 15 years suspended. Court cost assessed $145.00. Public Defender fee assessed $150.00.
Count: 2. Use Handgun/Crime Of Viol/Comm(4-204) 4-204
    Term: 20Y
    Suspend All But: 5Y
    Comments: All but 5 years suspended. Concurrent with Count 1
Credit for time served
Other Jurisdiction

| | |
|---|---|
| StartDate | 10/26/2021 |
| CalculationStartDate | 10/26/2021 |
| Attachments | Order for Probation |
| CreditDays | 723 |
| TotalSuspTermYears | 40 |
| TotalTimetoServeYears | 15 |
| ConcOuts | |
| Corrections | |
| Calc | |

**JA1460**

## In The Circuit Court for Prince George's County, Maryland

State of Maryland
State's Attorney: Stephen Williams        Date: 10-19-2023

VS

Christopher Daniel Butler        Criminal No. CT211239X

Defendant: [✓] Present    [ ] Not Present

Clerk: 782

Defense Attorney: Allison Heldreth

**DOCKET ENTRIES**

(1) Judge: Alves     :CS M3410       Reporter

2. _____

3. Defendant withdraws plea of "Not Guilty" generally and enters _____ plea of "Guilty" entered to Count _____

    [ ] Defendant found guilty      [ ] Verdict guilty      [ ] Court accepts plea

(4.) Pre-Sentenced Report [✓] sealed and filed   [ ] waived

(5.) Sentenced to the Jurisdiction of the [✓] Division of Correction [ ] County Correctional Facility as follows:
    Count 1 for a period of 40 years; all but 15 years suspended.
    Count 2 for a period of 20 years, concurrent with / ~~consecutive~~ to Count 1
    all but 5 years suspended.
    Count _____ for a period of _____ years, concurrent with / consecutive to Count _____
    all but _____ suspended.
    Count _____ for a period of _____ years, concurrent with / consecutive to Count _____
    all but _____ suspended.
    Count _____ pay a fine of $ _____

(6.) Sentence to commence as of 10/26/2021   ( 723 days credit ~~to be~~ given).

(7.) Upon release, [✓] supervised [ ] unsupervised probation for a period of 3 years

8. Sentence to incarceration is suspended and the defendant is placed on [ ] supervised [ ] unsupervised probation for a period of

9. Defendant to serve _____ consecutive weekends in the County Correctional Facility from Friday 6:00pm to Sunday 6:00pm commencing _____

10. Further proceedings deferred. Entry of judgment is stayed pursuant to Criminal Procedure Code Section 6-220, and
    [ ] supervised     [ ] unsupervised probation for a period of _____ is imposed.

(11) [✓] Court costs assessed/~~waived~~ at $ 145.00 [✓] Public Defender Fee ~~waived~~/assessed at $150.00

12. Restitution of $ _____ To: _____

(13.) (a) Stet    (b) Nolle Pros    (c) Judgment of Acquittal    (d) Verdict: Not Guilty
    (e) Nolle Pros remaining counts    (f) Verdict: Not Criminally Responsible

(14.) Any bench warrants are recalled; Any bond discharged.

(15.) Order for Probation, filed

(16.) Clerk to issue [✓] commitment   [ ] release

17. [ ] TTP Approved

18. [ ] AGD Domestic Violence Guilty     [ ] AGP Domestic Violence PBJ

(19.) Pharaon Program Certificate, Filed _____

White – Case      Pink – Warrant Squad      Green – Detention Center      Lt. Yellow – P&P      Goldenrod – St. Atty.

P.G.C. FORM #1020 (REV.10/12)

CPI Butler #471

**JA1461**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
301-344-0632

**MEMORANDUM**

TO:        Counsel of Record

FROM:   Judge Peter J. Messitte

RE:        Butler, et al. v. Prince George's County, et al.
              No. 22-cv-1768

DATE:    January 31, 2024

\* \* \*

On January 25, 2024, the Court entered an Order staying discovery in the above-captioned case pending the Court's ruling on Defendants' Motions for Judgments on the Pleadings (*see* ECF No. 180). On January 26, 2024, Plaintiffs filed correspondence on the case's docket requesting clarification as to whether the Court's January 25 Order (1) vacated the deadline for Plaintiffs' response in opposition to the Judge Defendants' Motion to Quash; and (2) vacated the deadline for Plaintiffs' Rule 26(a)(2) disclosures (*see* ECF No. 182).

The Court's January 25 Order noted that it would "**DEFER** ruling on the remaining open Motions," including the Judge Defendants' Motion to Quash, and that those Motions "may be covered in the Court's ruling on the Motions for Judgment on the Pleadings." ECF No. 180.

Accordingly, the deadline for Plaintiffs to respond in opposition to the Judge Defendants' Motion to Quash has not been stayed, vacated, or otherwise affected by the Court's prior Order. Plaintiffs' response in opposition remains due on February 5, 2024.

As to Plaintiffs' deadline for Rule 26(a)(2) disclosures, disclosures fall within the bounds of discovery and therefore that deadline is **STAYED** pending the Court's resolution of Defendants' Motions for Judgments on the Pleadings.

Despite the informal nature of this ruling, it shall constitute an Order of the Court and the Clerk is directed to docket it accordingly.

Peter J. Messitte
United States District Judge

CC:    Court file
          Counsel of Record

**JA1462**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, individually and on behalf of a class of similarly situated persons,<br><br>     Plaintiffs,<br><br>  v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,<br><br>     Defendants. | Case No. 8:22-cv-1768 PJM |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT JUDGES' MOTION TO QUASH (DOC. 175)

"An order to vacate notice of taking a deposition is . . . both unusual and unfavored." 10A Fed. Proc., L. Ed. § 26:403; *see also* 8A Wright & Miller Fed. Prac. & Proc. Civ. § 2037 (3d ed.) (collecting cases). The Judge Defendants' Motion to Quash, Doc. 175, does not clear that high hurdle. It is primarily based on premature and sweeping assertions of privilege that fail because they are untethered to any specific questions. The Motion also relies on boilerplate relevance objections and citations to an inapposite Maryland rule. As an alternative, it proposes a protocol for a written deposition that would be both novel and extraordinarily burdensome. This Court should deny the Motion to Quash in full and require the Judge Defendants to meet their discovery obligations under the federal and local rules and submit to oral deposition testimony.

## BACKGROUND

On December 20, 2023, the Court held a status conference to discuss an upcoming hearing on Plaintiffs' Motion for a Preliminary Injunction. In order to decide "what kind of testimony could come in" at "the [preliminary injunction] hearing in March," Doc. 170-1 at 21:10, 21:19, the

Court asked Defendants to brief "the extent to which the judges are effectively controlling the decision[s] [made by the County's Pretrial Division]," *id.* at 19:23 24, and "to file an appropriate motion raising th[e] issue of quasi judicial immunity," *id.* at 21:13 15. Neither the parties nor the Court mentioned the entirely separate issue of judicial deliberative privilege. *See generally* Doc. 170-1.[1]

At that hearing, when asked whether the Judge Defendants would oppose giving deposition testimony, their counsel refused to take a position because no formal deposition notices had been served at that point. *See* Doc. 170-1 at 6:7 13, 6:18 23. Accordingly, pursuant to Federal Rule of Civil Procedure 45, Plaintiffs served deposition subpoenas upon Judge Defendants Robert Heffron and LaKeecia Allen. *See* Doc. 172-1 at 3. Counsel for the Judge Defendants did not file a motion to quash at that juncture. They instead responded that the subpoenaed judges "will not appear for deposition[s] . . . absent a ruling from Judge Messitte on Defendants' forthcoming motion. If Plaintiffs proceed with hiring court reporters or otherwise preparing to depose the judges prior to a ruling from Judge Messitte they do so at their own peril." *Id.* at 2. Plaintiffs asked the Judge Defendants to identify the order from the Court would allow them to evade their discovery obligations. Unable to do so, Defendants moved to stay discovery on the basis of "upcoming dispositive motions." Doc. 170 at 1. In opposition, Plaintiffs pointed out that the proper vehicle to avoid deposition testimony would have been a "timely motion to quash." Doc. 172 at 1. Without

---

[1] Quasi-judicial immunity is an absolute immunity from liability for damages afforded to officials "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Kendrick v. Cavanaugh*, No. 10-CV-2207, 2011 WL 2837910, at *4 (D. Md. July 14, 2011), *aff'd*, 470 F. App'x 194 (4th Cir. 2012) (citation omitted). Judicial deliberative privilege, on the other hand, is an entirely unrelated evidentiary principle that shields judges and their staff from testifying about the reasoning behind their individual decisions—regardless of the subject matter of the underlying lawsuit. *See Matter of Certain Complaints Under Investigation*, 783 F.2d 1488, 1520 (11th Cir. 1986).

filing any such motion, and before this Court had stayed discovery or granted any express authorization, the Judge Defendants failed to appear at duly noticed depositions on January 10 and 11, 2024. They then filed the present motion on January 18, 2024—nearly a month after the subpoenas had been served.[2]

## ARGUMENT

A court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1).[3] But this power "should be sparingly used and cautiously granted." *Medlin v. Andrew*, 113 F.R.D. 650, 652 (M.D.N.C. 1987). The "heavy burden" of establishing good cause falls on the moving party. *Id.* at 653. "Absent a strong showing of good cause and extraordinary circumstances, a court should not prohibit altogether the taking of a deposition." *Motsinger v. Flynt*, 119 F.R.D. 373, 378 (M.D.N.C. 1988).

The Judge Defendants' Motion to Quash presents neither good cause nor extraordinary circumstances, much less the required strong showing of both. Instead, the Judges' argument is

---

[2] The Judge Defendants' present motion is untimely. The Judge Defendants represent that this Court gave them until January 18 to file a motion to quash deposition notices. *See* Doc. 175-1 at 2. However, the transcript of the hearing where the Court supposedly gave this order shows that the Court requested briefing from Defendants on quasi-judicial immunity, not the entirely unrelated issue of whether judicial privilege shields the Judge Defendants from deposition testimony. *See* Doc. 170-1 at 21:13 15. Furthermore, as Plaintiffs have detailed in prior briefing, Defendants misled Plaintiffs into consenting to an extension of Defendants' briefing deadlines. *See* Doc. 172 at 5 6. With that said, as detailed herein, the motion to quash fails on its merits.

[3] "[T]he standard for quashing a deposition subpoena as unduly burdensome is, logically, the same as the standard for prohibiting a deposition as unduly burdensome by protective order." *Gourdine v. Karl Storz Endoscopy-America, Inc.*, 225 F. Supp. 3d 428, 430 n.2 (D.S.C. 2016). While a different rule instructs courts to quash subpoenas that "require[] disclosure of privileged or other protected matter, if no exception or waiver applies," Fed. R. Civ. P. 45(d)(3)(A)(iii), the subpoenas in question do not require disclosure of privileged information, as discussed *infra* in section I.

based on speculation that a deposition *could* touch on issues implicating the judicial deliberative privilege and boilerplate objections that requiring the Judge Defendants to meet their discovery obligations under the federal and local rules is somehow unfair. In the alternative, the Judge Defendants offer an obtuse and unprecedented protocol for depositions by written question that causes more problems than it solves.

The Judge Defendants possess crucial knowledge about the fundamental issues in this case and must be deposed. "All depositions are burdensome." *McNeill v. Cmty. Prob. Servs. LLC.*, No. 1:18-CV-33, 2018 WL 5728527, at *1 (M.D. Tenn. Sept. 25, 2018). Any deposition could involve questions that implicate privilege. Neither of these concerns is sufficient to grant a party broad immunity from the standard discovery obligations prescribed by the Federal Rules. Here, because the Judge Defendants have failed to make any showing that giving deposition testimony would be *unduly* burdensome, this Court should deny their motion in its entirety.

I. **The Judicial Deliberative Privilege Must Be Invoked in Response to Specific Questions and Does Not Provide Blanket Protection to the Judge Defendants from Providing Deposition Testimony.**

The Judge Defendants first argue that they should be wholly exempt from giving deposition testimony based on the "judicial deliberative process privilege." Doc. 175-1 at 4. The blanket invocation of a specific privilege to completely excuse a party from appearing at a deposition fails as a threshold matter. "It is well settled that a witness whose testimony is subpoenaed cannot simply refuse to appear altogether on grounds of privilege, but rather must appear, testify, and invoke the privilege in response to particular questions." *Matter of Certain Complaints Under Investigation*, 783 F.2d 1488, 1518 (11th Cir. 1986) (collecting cases). Without the context of specific questions, the "court would be forced," as it is here, "to attempt to determine the existence, application, and scope of an asserted privilege in ignorance of the context in which it is alleged to apply." *Id.* As is the case with any deposition, Defendants' counsel are fully able to determine

4

**JA1466**

whether a specific question implicates matters protected by judicial deliberative privilege (or, for that matter, any other privilege) and instruct their client not to answer. *See, e.g., Norris v. Fat Burgers Sports Bar & Grill, LLC*, No. 7:22-CV-144, 2023 WL 8440507, at *4 (E.D.N.C. Nov. 9, 2023) (denying motion to quash subpoenas for depositions made on privilege grounds, and instead directing counsel to "instruct [the witness] not to answer questions during the deposition" if they seek privileged information). But neither the Judge Defendants nor this Court are in a position to assess whether any question calls for privileged material before it has been asked or the deposition has even begun. *See Al Otro Lado, Inc. v. Wolf*, No. 317CV02366, 2020 WL 4336064, at *4 (S.D. Cal. July 27, 2020) ("The application of the deliberative process privilege is very fact-specific and is to be made on a case-by-case basis . . . .") (cleaned up); *State ex rel. Veskrna v. Steel*, 894 N.W.2d 788, 796 (Neb. 2017) (same). On this basis alone, the Motion to Quash should be denied.

This is particularly true because of the highly limited nature of the privilege the Judge Defendants assert. The "judicial deliberative privilege," sometimes referred to as a "deliberative process" or "mental process" privilege, "primarily protects judicial decision-making in the context of adjudicating particular cases." *Cain v. City of New Orleans*, No. 15-CV-4479, 2016 WL 7156071, at *4 (E.D. La. Dec. 8, 2016); *see also In re Enf't of Subpoena*, 972 N.E.2d 1022, 1033 (Mass. 2012) (judicial deliberative privilege "covers a judge's mental impressions and thought processes in reaching a judicial decision, whether harbored internally or memorialized in other nonpublic materials"). The privilege exists to protect "confidentiality" in the adjudication of individual cases. *In re Certain Complaints*, 783 F.2d at 1520. But privileges are "in derogation of the search for the truth," and they are "not lightly created nor expansively construed." *United States v. Nixon*, 418 U.S. 683, 710 (1974). As with any privilege, the "party raising a claim of judicial privilege has the burden of demonstrating that the matters under the inquiry fall within the confines

of the privilege." *In re Certain Complaints*, 783 F.2d at 1520; *see also N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011) ("A party asserting privilege has the burden of demonstrating its applicability.").

In light of its underlying aims, the judicial deliberative privilege does not extend beyond a judge's thought processes about individual cases. It does not cover general policy or practice matters. For example, it does not apply to a judicial officer's "understanding of their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties." *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 528 (N.D. Ind. 2005) (internal quotation marks omitted). Nor does the privilege extend to "a judge's memory of nondeliberative events in connection with cases in which the judge participated." *In re Enf't of Subpoena*, 972 N.E.2d at 1033, or "statements of fact" that "do[] not disclose [the judicial officer's] deliberations, mental processes or the reasoning for his decisions," *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-CV-0660, 2016 WL 813709, at *2 (S.D. Ill. Mar. 2, 2016) (noting that disclosure of such information does not waive the privilege because it is not protected by the privilege in the first instance).

Courts around the country have repeatedly overruled objections like those raised by the Judge Defendants, holding in cases similar to this one that the privilege "does not prevent discovery of the general procedures utilized or facts and information available from which to make a decision." *McNeil v. Cmty. Prob. Servs., LLC*, No. 1:18-CV-33, 2019 WL 5958332, at *2 (M.D. Tenn. Jan. 7, 2019). *See also id.* at *3 ("Plaintiffs' limited inquiry into the procedures used by the judges to determine [conditions of pretrial release] does not necessarily implicate the deliberative-process privilege."); *Cain*, 2016 WL 7156071, at *4 (refusing judge-defendants' request for a protective order because "discovery requests . . . address administrative, rather than judicial,

decision-making"); *NAACP v. Bureau of Census*, 401 F. Supp. 3d 608, 615 (D. Md. 2019) (finding that deliberative process privilege did not protect spreadsheets held by the Census Bureau because "the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material" (citations omitted)). These courts have consistently distinguished "factual inquiries"—such as "procedures that were observable during public proceedings or on public dockets; what policies or authority [judges] generally follow; and any training [judges] received in conducting the docket"—from "mental processes or specific adjudications" that "implicate judicial reasoning underlying any specific detention decision." *Feltz v. Bd. of Cnty. Comm'rs of Cnty. of Tulsa*, No. 18-CV-298, 2020 WL 2039250, at *11 (N.D. Okla. Apr. 28, 2020).

So too here. The Judge Defendants possess relevant and critical information that has no relation to their "judicial decision-making" "in particular cases." *See Cain*, 2016 WL 7156071 at *4. Plaintiffs must be permitted to question the Judge Defendants about, *inter alia*, their general "policies" regarding pretrial release, their understanding of their own "authority" with regard to pretrial release, and any "training" they may have received with respect to the same. *Feltz*, 2020 WL 2039250 at *11. These broad inquires go to the Judge Defendants' "understanding of their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties," *Lake Cnty.*, 233 F.R.D. at 528 (internal quotation marks omitted)—not the "reasons for the decisions [they] made" in particular cases, *Irons v. Sisto*, No. CIV S-05-0912, 2007 WL 4531560, at *5 (E.D. Cal. Dec. 18, 2007). *See also McNeil*, 2019 WL 5958332 at *2 ("general procedures utilized or facts and information" are not privileged).

The Judge Defendants' argument that sitting for depositions would necessarily implicate privileged information is pure conjecture. They argue, "[b]ased upon Plaintiffs' interrogatories," that they would "invariably be questioned during in-person depositions into matters" protected by

the privilege. *Id.* Plaintiffs' interrogatories do not provide a basis from which to reach this conclusion, as Plaintiffs are permitted to ask deposition questions that differ entirely from any set of interrogatories, and Judge Defendants can object to any questions that implicate privilege. But in any event, none of Plaintiffs' interrogatories seek information that implicates the judicial deliberative privilege. Instead, the six interrogatories propounded thus far ask the Judge Defendants to: (1) identify persons with relevant information, (2) "State your understanding of what issuing a 'pretrial option' or 'pretrial order' entails," (3) "State your understanding of the County's pretrial release program," (4) "List all [relevant] training manuals, policy documents, practice manuals, or other documents," (5) "State whether you have communicated or corresponded with County Defendants regarding the pretrial release program," and (6) "State your understanding of what steps are taken or should be taken by the County or you if the County does release a detainee referred to pretrial." *See* Exhibit A at 6  7. None of these interrogatories even mention "particular cases," *Cain*, 2016 WL 7156071, at *4, much less require a Judge Defendant to disclose their thought processes or reasoning in any particular case. In fact, the interrogatories specifically and expressly exclude information "related to any individual case or determinations." *See* Ex. A at 7; *see also* Doc. 160 at 3 ("Plaintiffs will of course refrain from asking Defendant State Judges about their deliberative process in any specific case.").

The Judge Defendants cite several cases in support of their blanket assertion of privilege. *See* Doc. 175-1 at 4  5. None supports their cause. Each of these cases simply affirms the principle that the deliberative process privilege is limited to precluding testimony about judges' reasoning *in the context of particular cases*. *See, e.g.*, *Alford v. Aaron Rents, Inc.*, No. 08-CV-683, 2010 WL 3522804, at *1 (S.D. Ill. Sept. 2, 2010) (stating that, while "a judge is not subject to examination of the process by which he or she reaches his or her conclusions," "judicial officials do not enjoy

8

**JA1470**

immunity from subpoena and can be subjected to discovery requests"). None suggests that judges can flout their obligations to provide testimony outside of that particularized and limited context. Indeed, at least one court in this circuit recently rejected another judge's similar argument that one of the cases that the Judge Defendants cite shielded him from being deposed. *See* Order, *United States v. Strickland*, No. 1:20-CV-66, Doc. 203 (W.D.N.C. Apr. 19, 2023) (rejecting claim based on *United States v. Morgan*, 313 U.S. 409 (1941)).

Furthermore, even if Plaintiffs were to ask questions about a judge's reasoning in an individual case, the subject matter of this litigation counsels strongly against applying the privilege at all. The deliberative process privilege is not absolute: It may be overcome by a showing of "[1] the importance of the inquiry for which the privileged information is sought; [2] the relevance of that information to its inquiry; and [3] the difficulty of obtaining the desired information through alternative means." *In re Certain Complaints*, 783 F.2d at 1522. "Like any testimonial privilege, the judicial privilege must be harmonized with the principle that 'the public . . . has a right to every man's evidence.'" *Id.* (quoting *United States v. Bryan*, 339 U.S. 232, 221 (1950)).

Plaintiffs have alleged that the Judge and County Defendants collectively violate the Constitution by detaining individuals in Prince George's County without substantive or procedural due process. Compl.    250, 258. The deliberative process privilege "is routinely denied" where the information sought may shed light on government misconduct because "shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" *In re Sealed Case*, 121 F.3d 729, 738 (D.C. Cir. 1997) (quoting *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 885 (1st Cir. 1995)). Courts around the country have consistently refused to apply the privilege to information that may contain evidence of the civil rights violations alleged by the underlying lawsuit. *See, e.g.*, *Anderson v. Marion Cnty.*

9

*Sheriff's Dep't*, 220 F.R.D. 555, 560 (S.D. Ind. 2004) (collecting cases holding that the privilege does not apply in the civil rights context); *Feltz*, 2020 WL 2039250, at *11 (declining to apply the privilege in an "across-the-board constitutional challenge"); *Swanston v. City of Plano*, No. 4:19-CV-412, 2020 WL 4732214 (E.D. Tex. Aug. 14, 2020) (finding privilege did not apply in housing discrimination case); *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 259 (D.D.C. 2018) (privilege "disappears altogether when there is any reason to believe government misconduct occurred").[4] Shielding the Judge Defendants from giving testimony that may well reveal governmental misconduct would be squarely at odds with the public interest. Furthermore, both the Judge Defendants and the Maryland Administrative Office of the Courts have failed to produce a single document in response to Plaintiffs' Requests for Production made more than three months ago. *See generally* Docs. 169, 171, 177. As such, the importance and relevance of the information sought, as well as the difficulty of obtaining it from alternate sources, counsel in favor of overcoming the qualified privilege in this instance.

At this juncture, the Court lacks sufficient information to make a determination about whether the deliberative process privilege applies to specific inquires, much less whether it can be overcome. The Judge Defendants' assertion of judicial deliberative privilege is premature, speculative, and ultimately baseless and does not support their Motion to Quash.

## II.    The Deposition Testimony Sought from the Judge Defendants Is Neither Cumulative Nor Irrelevant.

The Judge Defendants next argue that they need not give oral deposition testimony because they "speak through their transcripts and their corresponding orders" and their "pre-decisional"

---

[4] *See also Harding v. County of Dallas*, No. 3:15-CV-131, 2016 WL 7426127 (N.D. Tex. Dec. 23, 2016) (racial gerrymandering); *Doe v. City of San Antonio*, No. 14-CV-102, 2014 WL 6390890 (W.D. Tex. Nov. 17, 2014) (police misconduct); *Williams v. City of Boston*, 213 F.R.D. 99, 102 (D. Mass. 2003) (police department misconduct); *Alexander v. F.B.I.*, 193 F.R.D. 1, 10 (D.D.C. 2000) (FBI misconduct).

"mental processes" are not at issue. Doc. 175-1 at 7. They argue that the transcripts and orders in Named Plaintiffs' state criminal court cases, alongside generalized policy and procedure documents filed by the County Defendants, make their oral testimony cumulative and/or not relevant. *See also id.* at 9 10 (arguing that "the only matters relevant to any material issue concerning the Judge Defendants pertain to what happened *on the record* during Plaintiffs' underlying criminal cases"). "[T]he party resisting discovery" "bears the burden of persua[ding]" the court that the information sought is not relevant. *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, No. 1:05-CV-955, 2011 WL 2470460, at *4 (M.D.N.C. June 20, 2011) (collecting cases).

This argument by the Judge Defendants is a red herring. As explained in section I, *supra*, Plaintiffs are fully allowed to depose the Judge Defendants about their policies and practices regarding pretrial release and detention, their understanding of their powers regarding pretrial release and detention, any training they have received on this subject, and the like. Questions about general policies and procedures cannot be answered by state court documents from a particular case. Nor can questions about the *Judge Defendants'* policies and procedures be answered by documents filed by—and applying only to—the *County*.

This argument also reflects a fundamental misunderstanding of Plaintiffs' claims. Plaintiffs' central claim is that the decision regarding whether to deprive a person of their fundamental right to liberty prior to trial is a decision that should be made by a judge on the record in open court, but—for individuals given "pretrial options" and "pretrial orders" in Prince George's County—it is instead made behind closed doors in County offices lacking procedural or substantive due process, including an adequate record. Complaint, Doc. 1,     55, 80. As such, Plaintiffs' claims hinge on certain crucial facts that are not on the state court record. The Judge

11

**JA1473**

Defendants' testimony is the only possible source of many of those facts.

More broadly, Rule 26's relevance standard has been "generously construed to provide a great deal of latitude for discovery." *Harris v. Nelson*, 394 U.S. 286, 297 (1969). In discovery, relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The record is replete with examples of questions for the Judge Defendants that could reasonably lead to relevant matters. For example, the Court has already stated that relevant subject matter includes whether state court judges understand themselves to be "giv[ing] ultimate control over detainees' cases . . . to the County's Pretrial Division." Doc. 161 at 1. How state court judges "understand themselves" to be acting is a question that can necessarily only be answered by the judges, not by an individual case record or a County manual. The Judge Defendants' "boilerplate" objections, *see Ashmore v. Williams*, No. 8:15-CV-3633, 2017 WL 2437082, at *4 (D.S.C. June 6, 2017), on cumulativeness and relevance grounds do not meet their burden to avoid the normal course of discovery.[5]

### III.   The Maryland Rules Do Not Excuse the Judge Defendants from Their Discovery Obligations Under the Federal Rules.

The Judge Defendants next suggest that they somehow cannot give deposition testimony pursuant to Maryland Rule 18-102.10, which provides that judges "shall abstain from public comment that relates to a proceeding pending or impending in any court and that might reasonably be expected to affect the outcome or impair the fairness of that proceeding." The Judge Defendants do not cite any case law in support of this argument.

---

[5] The Judge Defendants argue, in the context of their relevance objection, that "[r]aising question and/or seeking clarification about [pretrial detention] orders now in the context of the federal litigation in this Court is patently improper." Doc. 175-1 at 10. This appears to be a renewal of Defendants' argument that this Court is not a proper forum to adjudicate Plaintiffs' claims—an argument that this Court has already rejected. *See* Doc. 90 at 11 14.

The Rule does not protect the Judge Defendants from giving deposition testimony for the simple reason that a state rule cannot exempt an entity from complying with a properly issued federal subpoena. Courts around the country have repeatedly held that the recipient of a federal discovery subpoena cannot refuse to comply with it on the basis of state law. *See, e.g.*, *Spiegel v. Engagetel*, No. 15-CV-1809, 2015 WL 8986932 (N.D. Ill. Dec. 16, 2015); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590, 2012 WL 5877420, at *2 (S.D.N.Y. Nov. 21, 2012); *S.E.C. v. Pac. Bell*, 704 F. Supp. 11, 16 (D.D.C. 1989). *See also* Doc. 169-1 at 11 14 (collecting additional cases). This stems from the "long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna v. Plumer*, 380 U.S. 460, 473 (1965). *Cf. Hawkins v. Stables*, 148 F.3d 379, 382 (4th Cir. 1998) (stating, in "a civil case based upon a federal cause of action," that whether an evidentiary privilege applies is a matter of federal law). Rule 18-102.10 simply cannot override a federal procedural rule in federal court.

Even if state rules could somehow limit federal subpoenas, the Rule on its face only instructs judges not to provide "public comment" on particular "proceeding[s]" that are "pending or impending." For questions about the Judge Defendants' policies and procedures regarding pretrial release, their understanding of their own powers with respect to pretrial release, conversations they may have had with other Defendants regarding pretrial release (specifically excluding conversations "related to any individual case or determinations," *see* Ex. A at 7), or any cases that are no longer pending, the language of the Rule has no relevance. As is the case with the Judge Defendants' privilege objection, their invocation of Rule 18-210.10 is premature and likely wholly inapposite.

13

**JA1475**

IV.     **The Judge Defendants Have Not Met Their Burden to Justify an Exemption from Oral Deposition Testimony.**

The Judge Defendants propose that, if the Court is not inclined to shield them from giving depositions altogether, it should adopt a complex "protocol" by which they might be permitted to give written testimony instead. *See* Doc. 175-1 at 11  12. The Judge Defendants appear to have invented this protocol out of whole cloth. The proposed protocol appears nowhere in the text of Federal Rule of Civil Procedure 31 (governing written depositions), nor do the Judge Defendants cite any prior case from which this protocol may have been adopted.

"A motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts." *Minter v. Wells Fargo Bank*, 258 F.R.D. 118, 125 (D. Md. 2009). A showing of good cause—supported by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements," *id.* at 124  25 (citation omitted)—is required to overcome this "heavy burden," *Medlin*, 113 F.R.D. at 653. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting *Merit Industries, Inc. v. Feuer*, 201 F.R.D. 382, 384  85 (E.D. Pa. 2001)).

The Judge Defendants do not provide "a particular and specific demonstration of fact" as to why this case presents the type of extraordinary circumstances that justify the prohibition of oral deposition testimony. *Minter*, 258 F.R.D. at 124. Rather, they offer "[b]road allegations," *Baron*, 240 F.R.D. at 202, that complying with the subpoena would "impugn[]" "the integrity of their position as sitting judges and the integrity of the state courts," Doc. 175-1 at 11. They do not explain why complying with standard discovery procedure would cause them extraordinary harm, nor why their alternative proposal does anything to alleviate their purported harm. They provide no "specific examples" at all. *Baron*, 240 F.R.D. at 202. Their "conclusory statements," *Minter*,

14

**JA1476**

258 F.R.D. at 124, do not meet the Judge Defendants' burden under Rule 26(c).

Courts have repeatedly rejected attempts by judges to avoid giving oral deposition testimony in cases challenging their policies and procedures. For example, in *McNeil v. Community Probation Services LLC*, the court rejected a state judge's motion to quash a deposition subpoena because the judge possessed relevant information and, while "[a]ll depositions are burdensome," the judge had not shown that the deposition would be "unduly burdensome." 2018 WL 5728527 at *1. There, as here, the judge had sought to give written rather than oral deposition testimony (and, as here, had sought to do so on the basis of judicial privilege). The court rejected that proposal. *Id. See also, e.g.*, Order, *Strickland v. United States*, No. 1:20-CV-66, Doc. 203 (W.D.N.C. Apr. 19, 2023) (allowing oral deposition of judge who had "relevant, first hand knowledge of discoverable facts"); Memorandum and Opinion, *Russell v. Harris Cnty.*, No. 4:19-CV-226, Doc. 504 (S.D. Tex. May 14, 2021) (same). This Court should follow suit.

While the Judge Defendants assert that their written deposition protocol would be less burdensome on the Court than a standard oral deposition, *see* Doc. 175-1 at 12, they cite no precedent for this claim. The protocol they have invented—which would require the Court to decide another round of fact-intensive, written briefing, and then possibly also referee an oral deposition—is, on its face, *more* cumbersome to the Court and the parties. Courts around the country have routinely found that deposition by written questions is more burdensome, not less, than deposition by oral testimony. *See, e.g.*, *Dallas Buyers Club v. Doe-70.181.229.254*, No. 16-CV-317, 2016 WL 3854547 at *2 (S.D. Cal. July 15, 2016) (rejecting written deposition protocol and stating that the "contention that a deposition by written questions is appropriate here because it is a less intrusive alternative is without merit"); *Folwell v. Hernandez*, 210 F.R.D. 169, 170 (M.D.N.C. 2002) ("reject[ing] the written interrogatory approach" proposed by deponent as "a too

**JA1477**

cumbersome process").

The Judge Defendants have not met their burden to be excused from their normal discovery obligations under the federal and local rules. Their Motion to Quash lacks non-speculative facts or legal support. It is especially meritless against the backdrop of the Judge Defendants' general refusal to provide Plaintiffs with any of the documents they have requested. As with any deposition, should particular questions arise that raise privilege or other concerns, Defendants can object, and the parties can follow the standard process to address those objections. But the Judge Defendants should not be given special and extraordinary immunity from the regular discovery process.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Quash, Doc. 175, and order Defendant Judges LaKeecia Allen and Robert Heffron to timely submit to oral depositions.

Respectfully submitted this 1st day of February, 2024.

/s/ Ellora Thadaney Israni
Ellora Thadaney Israni*
Jeremy D. Cutting*
Jeffrey Stein*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org

Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu

\* admitted *pro hac vice*

*Counsel for Plaintiffs*

Edward Williams (D. Md. Bar 20944)
Matthew Martens*
Thomas Bredar (D. Md. Bar 21635)
Ellen Connell*
Donna Farag*
Sonika Data*
Britany Riley-Swanbeck (D. Md. Bar 21843)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6487
ed.williams@wilmerhale.com
matthew.martens@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

### PLAINTIFF CHRISTOPHER BUTLER'S FIRST SET OF INTERROGATORIES
### TO JUDGE DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 33, Rule 104 of the Local Civil Rules of the United States District Court for the District of Maryland, and Appendix A to the Local Rules (Discovery Guidelines), Christopher Butler, by his undersigned attorneys, propound these Interrogatories, to which the Honorable Lakeecia Allen, Bryon Bereano, John Bielec, Scott Harrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron Jr., Donnaka Lewis, Gregory Powell, and Cathy Serrette ("Prince George's County Judge Defendants") shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Instructions and Definitions set forth hereinafter.

### INSTRUCTIONS

1.     These instructions and definitions should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents,

representatives, and, unless privileged, attorneys.  It is intended that the following discovery

requests will not solicit any information protected either by the attorney/client privilege or work

product doctrine which was created or developed by, counsel for the responding party after the

date on which this litigation was commenced.

      2.     These Interrogatories are continuing in character, so as to require that

supplemental answers be filed seasonably if further or different information is obtained with

respect to any interrogatory.

      3.     Pursuant to Discovery Guideline 10(b), no part of an interrogatory should be left

unanswered merely because an objection is interposed to another part of the interrogatory.

Pursuant to Discovery Guideline 10(a), if a partial or incomplete answer is provided, the

responding party shall state that the answer is partial or incomplete.

      4.     Pursuant to Discovery Guideline 10(d), in accordance with Fed. R. Civ. P.

26(b)(5), where a claim of privilege is asserted in objecting to any interrogatory or part thereof,

and information is not provided on the basis of such assertion:

      A.     In asserting the privilege, the responding party shall, in the objection to the

              interrogatory, or part thereof, identify with specificity the nature of the privilege

              (including work product) that is being claimed.

      B.     The following information should be provided in the objection, if known or

              reasonably available, unless divulging such information would cause disclosure of

              the allegedly privileged information:

        (1)     For oral communications:
              a.     the name of the person making the communication and the names
                    of persons present while the communication was made, and, where
                    not apparent, the relationship of the persons present to the person
                    making the communication;
              b.     the date and place of the communication; and

        c.     the general subject matter of the communication.

(2)    For documents:

        a.     the type of document,

        b.     the general subject matter of the document,

        c.     the date of the document, and

        d.     such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

5.     If the responding party elects to specify and produce business records in answer to any interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as the responding party can, the business records from which the answer may be ascertained or, if produced electronically, produced in a manner consistent with Guideline 2.04 of the District of Maryland ESI Principles.

6.     If, in answering these Interrogatories, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.     *Concerning:*  The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

2.     *Communication:*  The term "communication" means the transmittal of information by any means.

3.     *Document:*  The terms "document" and "documents" are defined to be synonymous in meaning *and* equal in scope to the term "items" in Fed. R. Civ. P. 34(a)(1) and

include(s), but is not limited to, electronically stored information.  The terms "writings,"

"recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to

the usage of those terms in Fed. R. Evid. 1001.  A draft or non-identical copy is a separate

document within the meaning of the term "document."

4.      *Identify (with respect to persons):*  When referring to a person, to "identify"

means to state the *person's* full name, present or last known address, and, when referring to a

natural person, the present or last known place of employment.  If the business and home

telephone numbers are known to the answering party, and if the person is not a party or present

employee of a party, said telephone numbers shall be provided.  Once a person has been

identified in accordance with this subparagraph, only the name of the person need be listed in

response to subsequent discovery requesting the identification of that person.

5.      *Identify (with respect to documents):*  When referring to documents, to "identify"

means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document;

and, (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

6.      *Occurrence/Transaction:*  The terms "occurrence" and "transaction" mean the

events described in the Complaint and other pleadings, as the word "pleadings" is defined in Fed.

R. Civ. P. 7(a).

7.      *Parties:*  The terms "plaintiff" and "defendant" (including, without limitation,

third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant,

and cross-defendant), as well as a party's full or abbreviated name or a pronoun *referring* to a

party, mean that party and, where applicable, its officers, directors, and employees.  This

definition is not intended to impose a discovery obligation on any person who is not a party to

the litigation or to limit the Court's jurisdiction to enter any appropriate order.

8.      *Person:*  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

9.      *You/Your:*  The terms "you" or "your" include the person(s) to whom these requests are addressed, and all of that person's agents, representatives, and attorneys.

10.      The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all;" "any" means "any and all."  "Including" means "including but not limited to."  "And" and "or" encompass both "and" and "or."  Words in the masculine, feminine, or neuter form shall include each of the other genders.

11.      "County" refers to Prince George's County, Maryland.

12.      "County Defendants" refers to the County, Corenne Labbé, Jeffrey Logan, Kenneth Gray, and Tanya Law in their official capacities, including any predecessors or successors as appropriate.

13.      "Defendants" refers to all past and present named defendants in this case.

14.      "Detainee" means any person incarcerated at Prince George's County Jail for any reason from July 19, 2019 to the present.

15.      "Judge Defendants" refers to the Honorable Lakeecia Allen, Bryon Bereano, John Bielec, Scott Harrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron Jr., Donnaka Lewis, Gregory Powell, and Cathy Serrette.

16.      "Named Plaintiffs" refers to Robert Frazier, Anibal Hernandez, D.P., Christopher Butler, Miramba Williams, Donnell Davis, Leslie Sharp, Elmer Laguan-Salinas, and Adrienne Worthington.

17.     "Policies, Practices, or Procedures" refers to any set of rules, guidelines, or norms that employees within Prince George's County should follow.

18.     "Prince George's County Judges" refers to all judges in Prince George's County with decisionmaking authority regarding pretrial release of detainees from July 19, 2019 to present.

19.     "Prince George's County Public Defender" refers to any person working in the Maryland Office of the Public Defender, District 5 (Prince George's County).

## INTERROGATORIES

INTERROGATORY NO. 1:  Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or in your answer to the complaint, and state the subject matter of the personal knowledge possessed by each such person.

INTERROGATORY NO. 2:  State your understanding of what issuing a 'pretrial option' or 'pretrial order' entails, in detail, including, for each, whether either constitutes (a) a court order obligating any individual or entity to engage in any course of conduct; (b) authorization for any individual or entity to engage in any course of conduct they otherwise would not be authorized to engage in; or (c) a recommendation (without obligation) for any individual or entity to engage in any course of conduct.  Include, as part of this description, the specific identities of the individuals or entities subject to these decisions, your understanding of the particulars of any course of conduct involved, and the differences (if any) between what is understood about a pretrial 'option' and pretrial 'order'.

INTERROGATORY NO. 3:  State your understanding of the County's pretrial release program, including but not limited to the process by which detainees' eligibility for release under the program is determined; the available levels of release and their criteria; and your

involvement, if any, in determining such criteria, whether any particular detainee is eligible for release under the criteria, or any other aspect of the County's pretrial release program.

INTERROGATORY NO. 4:  List all training manuals, policy documents, practice manuals, or other documents produced by or provided to you (whether by the County or other entities) that relate to pretrial release and detention determinations.

INTERROGATORY NO. 5:  State whether you have communicated or corresponded with County Defendants regarding the pretrial release program and related policies, apart from discussions related to any individual case or determinations.

INTERROGATORY NO. 6:  State your understanding of what steps are taken or should be taken by the County or you if the County does release a detainee referred to pretrial.

Respectfully submitted this 25th day of October, 2023.

/s/ Ellora Thadaney Israni

Ellora Thadaney Israni*
Ryan Downer*
Jeremy D. Cutting*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org

/s/ Seth Wayne
Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu

s/ Edward Williams

Edward Williams (D. Md. Bar 20944)
Matthew Martens*
Thomas Bredar (D. Md. Bar 21635)
Ellen Connell*
Donna Farag*
Ayana Williams*
Sonika Data*
Britany Riley-Swanbeck (D. Md. Bar 21843)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
(202) 663-6487
ed.williams@wilmerhale.com
matthew.martens@wilmerhale.com

Robert Boone*
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com


* admitted *pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I caused the foregoing to be sent via email to the following counsel:

Kevin M. Cox (Federal Bar No. 29012)
James O. Spiker IV (Federal Bar No 30189)
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
kcox@oag.state.md.us
jspiker@oag.state.md.us


Dated: October 26, 2023                          Respectfully Submitted,


                                                 /s/ Ed Williams
                                                 Edward Williams (D. Md. Bar 20944)
                                                 WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                                 1875 Pennsylvania Ave. NW
                                                 Washington, D.C. 20006
                                                 (202) 663-6487
                                                 ed.williams@wilmerhale.com

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

## PLAINTIFF CHRISTOPHER BUTLER'S FIRST SET OF INTERROGATORIES
## TO JUDGE DEFENDANTS

Pursuant to Federal Rule of Civil Procedure 33, Rule 104 of the Local Civil Rules of the United States District Court for the District of Maryland, and Appendix A to the Local Rules (Discovery Guidelines), Christopher Butler, by his undersigned attorneys, propound these Interrogatories, to which the Honorable Lakeecia Allen, Bryon Bereano, John Bielec, Scott Harrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron Jr., Donnaka Lewis, Gregory Powell, and Cathy Serrette ("Prince George's County Judge Defendants") shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Instructions and Definitions set forth hereinafter.

## INSTRUCTIONS

1. These instructions and definitions should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents,

representatives, and, unless privileged, attorneys.  It is intended that the following discovery

requests will not solicit any information protected either by the attorney/client privilege or work

product doctrine which was created or developed by, counsel for the responding party after the

date on which this litigation was commenced.

     2.     These Interrogatories are continuing in character, so as to require that

supplemental answers be filed seasonally if further or different information is obtained with

respect to any interrogatory.

     3.     Pursuant to Discovery Guideline 10(b), no part of an interrogatory should be left

unanswered merely because an objection is interposed to another part of the interrogatory.

Pursuant to Discovery Guideline 10(a), if a partial or incomplete answer is provided, the

responding party shall state that the answer is partial or incomplete.

     4.     Pursuant to Discovery Guideline 10(d), in accordance with Fed. R. Civ. P.

26(b)(5), where a claim of privilege is asserted in objecting to any interrogatory or part thereof,

and information is not provided on the basis of such assertion:

     A.     In asserting the privilege, the responding party shall, in the objection to the

     interrogatory, or part thereof, identify with specificity the nature of the privilege

     (including work product) that is being claimed.

     B.     The following information should be provided in the objection, if known or

     reasonably available, unless divulging such information would cause disclosure of

     the allegedly privileged information:

     (1)     For oral communications:
         a.     the name of the person making the communication and the names
            of persons present while the communication was made, and, where
            not apparent, the relationship of the persons present to the person
            making the communication;
         b.     the date and place of the communication; and

c.    the general subject matter of the communication.

(2)    For documents:

a.    the type of document,

b.    the general subject matter of the document,

c.    the date of the document, and

d.    such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

5.    If the responding party elects to specify and produce business records in answer to any interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as the responding party can, the business records from which the answer may be ascertained or, if produced electronically, produced in a manner consistent with Guideline 2.04 of the District of Maryland ESI Principles.

6.    If, in answering these Interrogatories, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

## DEFINITIONS

Notwithstanding any definition below, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1.    *Concerning:*  The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

2.    *Communication:*  The term "communication" means the transmittal of information by any means.

3.    *Document:*  The terms "document" and "documents" are defined to be synonymous in meaning *and* equal in scope to the term "items" in Fed. R. Civ. P. 34(a)(1) and

include(s), but is not limited to, electronically stored information.  The terms "writings,"

"recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to

the usage of those terms in Fed. R. Evid. 1001.  A draft or non-identical copy is a separate

document within the meaning of the term "document."

      4.    *Identify (with respect to persons):*  When referring to a person, to "identify"

means to state the *person's* full name, present or last known address, and, when referring to a

natural person, the present or last known place of employment.  If the business and home

telephone numbers are known to the answering party, and if the person is not a party or present

employee of a party, said telephone numbers shall be provided.  Once a person has been

identified in accordance with this subparagraph, only the name of the person need be listed in

response to subsequent discovery requesting the identification of that person.

      5.    *Identify (with respect to documents):*  When referring to documents, to "identify"

means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document;

and, (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

      6.    *Occurrence/Transaction:*  The terms "occurrence" and "transaction" mean the

events described in the Complaint and other pleadings, as the word "pleadings" is defined in Fed.

R. Civ. P. 7(a).

      7.    *Parties:*  The terms "plaintiff" and "defendant" (including, without limitation,

third-party plaintiff, third-party defendant, counter claimant, cross-claimant, counter-defendant,

and cross-defendant), as well as a party's full or abbreviated name or a pronoun *referring* to a

party, mean that party and, where applicable, its officers, directors, and employees.  This

definition is not intended to impose a discovery obligation on any person who is not a party to

the litigation or to limit the Court's jurisdiction to enter any appropriate order.

8.      *Person:*  The term "person" is defined as any natural person or any business, legal or governmental entity or association.

9.      *You/Your:*  The terms "you" or "your" include the person(s) to whom these requests are addressed, and all of that person's agents, representatives, and attorneys.

10.     The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all;" "any" means "any and all."  "Including" means "including but not limited to."  "And" and "or" encompass both "and" and "or."  Words in the masculine, feminine, or neuter form shall include each of the other genders.

11.     "County" refers to Prince George's County, Maryland.

12.     "County Defendants" refers to the County, Corenne Labbé, Jeffrey Logan, Kenneth Gray, and Tanya Law in their official capacities, including any predecessors or successors as appropriate.

13.     "Defendants" refers to all past and present named defendants in this case.

14.     "Detainee" means any person incarcerated at Prince George's County Jail for any reason from July 19, 2019 to the present.

15.     "Judge Defendants" refers to the Honorable Lakeecia Allen, Bryon Bereano, John Bielec, Scott Harrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron Jr., Donnaka Lewis, Gregory Powell, and Cathy Serrette.

16.     "Named Plaintiffs" refers to Robert Frazier, Anibal Hernandez, D.P., Christopher Butler, Miramba Williams, Donnell Davis, Leslie Sharp, Elmer Laguan-Salinas, and Adrienne Worthington.

17.     "Policies, Practices, or Procedures" refers to any set of rules, guidelines, or norms that employees within Prince George's County should follow.

18.     "Prince George's County Judges" refers to all judges in Prince George's County with decisionmaking authority regarding pretrial release of detainees from July 19, 2019 to present.

19.     "Prince George's County Public Defender" refers to any person working in the Maryland Office of the Public Defender, District 5 (Prince George's County).

**INTERROGATORIES**

INTERROGATORY NO. 1:  Identify all persons who are likely to have personal knowledge of any fact alleged in the complaint or in your answer to the complaint, and state the subject matter of the personal knowledge possessed by each such person.

INTERROGATORY NO. 2:  State your understanding of what issuing a 'pretrial option' or 'pretrial order' entails, in detail, including, for each, whether either constitutes (a) a court order obligating any individual or entity to engage in any course of conduct; (b) authorization for any individual or entity to engage in any course of conduct they otherwise would not be authorized to engage in; or (c) a recommendation (without obligation) for any individual or entity to engage in any course of conduct.  Include, as part of this description, the specific identities of the individuals or entities subject to these decisions, your understanding of the particulars of any course of conduct involved, and the differences (if any) between what is understood about a pretrial 'option' and pretrial 'order'.

INTERROGATORY NO. 3:  State your understanding of the County's pretrial release program, including but not limited to the process by which detainees' eligibility for release under the program is determined; the available levels of release and their criteria; and your

involvement, if any, in determining such criteria, whether any particular detainee is eligible for release under the criteria, or any other aspect of the County's pretrial release program.

INTERROGATORY NO. 4:  List all training manuals, policy documents, practice manuals, or other documents produced by or provided to you (whether by the County or other entities) that relate to pretrial release and detention determinations.

INTERROGATORY NO. 5:  State whether you have communicated or corresponded with County Defendants regarding the pretrial release program and related policies, apart from discussions related to any individual case or determinations.

INTERROGATORY NO. 6:  State your understanding of what steps are taken or should be taken by the County or you if the County does release a detainee referred to pretrial.

Respectfully submitted this 25th day of October, 2023.

/s/ Ellora Thadaney Israni

Ellora Thadaney Israni*
Ryan Downer*
Jeremy D. Cutting*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 894-6132
ellora@civilrightscorps.org

/s/ Seth Wayne
Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu

s/ Edward Williams

 Edward Williams (D. Md. Bar 20944)
 Matthew Martens*
 Thomas Bredar (D. Md. Bar 21635)
 Ellen Connell*
 Donna Farag*
 Ayana Williams*
 Sonika Data*
 Britany Riley-Swanbeck (D. Md. Bar 21843)
 WILMER CUTLER PICKERING
  HALE AND DORR LLP
 1875 Pennsylvania Ave. NW
 Washington, D.C. 20006
 (202) 663-6487
 ed.williams@wilmerhale.com
 matthew.martens@wilmerhale.com

 Robert Boone*
 WILMER CUTLER PICKERING
  HALE AND DORR LLP
 7 World Trade Center
 250 Greenwich Street
 New York, NY 10007
 (212) 230-8800

robert.boone@wilmerhale.com

Timothy Perla*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
timothy.perla@wilmerhale.com


\* admitted *pro hac vice*

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2023, I caused the foregoing to be sent via email to the following counsel:

Kevin M. Cox (Federal Bar No. 29012)
James O. Spiker IV (Federal Bar No 30189)
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
kcox@oag.state.md.us
jspiker@oag.state.md.us

Dated: October 26, 2023                    Respectfully Submitted,

                                           /s/ Ed Williams
                                           Edward Williams (D. Md. Bar 20944)
                                           WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                           1875 Pennsylvania Ave. NW
                                           Washington, D.C. 20006
                                           (202) 663-6487
                                           ed.williams@wilmerhale.com



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER BUTLER, *et al.*,
individually and on behalf of a class of
similarly situated persons,

     Plaintiffs,

     v.

PRINCE GEORGE'S COUNTY,
MARYLAND, *et al.*,

     Defendants.

Civil No. **22-1768 PJM**

## MEMORANDUM OPINION

This putative class action proposes to radically restructure pretrial release procedures in criminal cases pending before state courts in Prince George's County, Maryland (and in consequence, perhaps around the country).

While they were still detained, nine criminal defendants in the County, through *pro bono* counsel, filed suit in this Court, challenging the constitutionality of the County's then extant pretrial release system. These nine criminal defendants—original Plaintiffs in the case[1]—

---

[1] As explained, *infra*, the Court has ruled that the only remaining Plaintiffs in this case are Christopher Butler and Miramba Williams, who remained detained at the time of the Court's prior Opinions on Defendants' Motions to Dismiss and the parties' respective Motions for Reconsideration. *See* ECF No. 90 at 15, 18; ECF No. 128 at 2 n.1. Although the Fourth Circuit, in the interlocutory appeal reviewing this Court's denial of Plaintiffs' Motion for Preliminary Injunction, referred to presumably all "Plaintiffs," it did not engage with this Court's decision dismissing several Plaintiffs from the case, since they were no longer detained. This Court's decision and its order of dismissal of certain Plaintiffs still stands. Defendants represent that in the interim between the Court's prior order of dismissal and today, Butler pled guilty to second-degree murder and use of a firearm in the commission of a violent crime and was sentenced to 40 years' incarceration, all but 15 years suspended as to the murder charge, and 20 years all but 5 years suspended as to the firearms charge, but received credit for the time he served in pretrial detention. He is now doing time. Williams never qualified for pretrial release because of a detainer issued by another jurisdiction but was eventually released after the Circuit Court granted

1

initially sought declaratory relief with respect to actions of the Judges of the Circuit and District Courts for the County, as well as declaratory, injunctive, and monetary relief against certain individual County officials and the County itself.[2]

After some twenty months of extensive proceedings, including several motions and requests for lengthy extensions of time from the parties, opinions from this Court, an intermediate modification the County made to its pretrial release policy, and an interlocutory appeal to the U.S. Court of Appeals for the Fourth Circuit, the core issues in the case have crystallized.[3] In the Court's view, the case turns on the following questions: Whether the acts challenged in this suit are part of the Judges' decisionmaking process with respect to pretrial release decisions affecting persons charged with crimes, and, if so, whether both the Judges of the District and Circuit Courts for Prince George's County and by extension the County, insofar

---

his motion to reduce his bond to personal recognizance. *See* ECF No. 173-1 at 2, 7; ECF No. 174-1 at 12. This, at the very least, says the County, should defeat the putative class claims because neither Butler nor Williams can serve as class representatives given their unique circumstances. *See id.* The Court agrees with Plaintiffs that the County's arguments are misplaced because the Court is not at this time considering a Motion for Class Certification. In any case, as the Court has previously discussed, both Butler and Williams' claims fall within the "inherently transitory" exception to mootness doctrine. *See* ECF No. 90 at 21. Moreover, inasmuch as this is styled as a putative class action, the Court has referred to Plaintiffs, in the plural, and will do so in this Opinion.

[2] The Judge Defendants are Prince George's County District Court Judges Lakeecia Allen, Byron Bereano, John Bielec, Scott Carrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron, Jr., Donnaka Lewis, Gregory Powell, and Circuit Court Judge Cathy Serrette. As will be explained, *infra*, the individual County officials were dismissed, since, having been sued in their official capacities, they were in effect surrogates for the County. Prince George's County is therefore the only remaining County Defendant. The "Pretrial Division," a central player in the pretrial release process, is located within the Population Management Division of the Prince George's County Department of Corrections.

[3] The Fourth Circuit noted this Court's "extraordinary" "eight-month delay" in considering the Motion for Preliminary Injunction. *See Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543 (4th Cir. 2023). On occasion, and this case surely qualifies as one, several legal matters (such as standing) preliminary to consideration of a request for a preliminary injunction need to be resolved before a request for preliminary relief can be addressed. In consequence, there may be "extraordinary" delays. Hopefully this will become apparent in the course of this Opinion.

as it participates in the process, are immune from suit on the basis of judicial and quasi-judicial immunity.

Most recently, in pursuit of an answer to this question, Plaintiffs have sought to depose two of the Judge Defendants (Allen and Heffron), who have filed a Motion to Quash Subpoenas for In-Person Deposition Testimony. *See* ECF No. 175. In addition, all the Judge Defendants and the County have filed Motions for Judgment on the Pleadings. *See* ECF Nos. 173, 174. Plaintiffs have opposed each of these Motions, which are now fully briefed. *See* ECF Nos. 185, 186, 191, 193. The Court finds no further hearing necessary. *See* D. Md. Local R. 105.6.

For the following reasons, the Court will **GRANT** the Judge Defendants' Motion to Quash (ECF No. 175) and will also **GRANT** the Judge and County Defendants' Motions for Judgment on the Pleadings (ECF Nos. 173, 174).

## I.   Pretrial Release Procedures in Prince George's County

Although in prior opinions the Court has extensively described the basic process by which pretrial release procedures operate in Prince George's County, *see* ECF Nos. 90, 128, 156, it recounts the basics here as appropriate for a meaningful assessment of the pending Motions.

Individuals arrested for suspected crimes in Prince George's County are promptly brought before state District Court Commissioners of the County for initial determinations of whether they should be released or detained pending trial. *See* ECF No. 90 at 2. Any individuals not ordered released after the Commissioner's determination are detained, and their detentions are reviewed at bail review hearings in front of Judges of the Circuit or District Courts of the County, usually within 24 hours of the Commissioner's determination. *See id.*

3

**JA1500**

At these bail review hearings, Maryland law requires that a defendant be provided the assistance of counsel. *See* Md. R. 4-216.2(b).[4]  Bail review hearings must be conducted in accordance with the procedures and considerations set forth in Maryland Rule of State Court Procedure 4-216.1. *See* Md. R. 4-216(e); *id.* 4-216.2(c).

This Rule contains some features commonly found in jurisdictions across the American legal system, perhaps most importantly the presumption that defendants should be released pending trial unless the Judge finds that "there is a reasonable likelihood that the defendant (i) will not appear as required, or (ii) will be a danger to an alleged victim, another person, or the community," and the requirement that the pretrial release determinations be made on an individualized basis. *Id.* 4-216.1(b)(1)-(2).[5]

Another requirement of Maryland Rule 4-216.1 (also typically found throughout America's criminal justice system)[6] is that a Judge's bail review determination must take into consideration the recommendation of "any pretrial release services program that has made a risk assessment of the defendant in accordance with a validated pretrial risk scoring instrument and is willing to provide an acceptable level of supervision of the defendant." *Id.* 4-216.1(f)(1).  In Prince George's County, the "pretrial release services program" for purposes of this Rule is the County's Pretrial Division.

---

[4] Unless a defendant waives this right to representation, is otherwise represented, or is ineligible to receive the assistance of the public defender, he or she may be represented by a public defender. *See id.*

[5] *See, e.g.*, 18 U.S.C. § 3142(b); Alaska Stat. Ann. § 12.30.011(d)(2)(b); R.I. Gen. Laws Ann. § 12-13-1.3(b); Va. Code Ann. § 19.2-121.

[6] *See, e.g.*, 18 U.S.C. § 3142(c)(1)(B)(i) (federal courts may require a defendant to "remain in the custody of a designated person, who agrees to assume supervision . . . "); Del. Code Ann. tit. 11, § 2108(a)(1) (courts may "[p]lace the defendant in the custody of a designated person or organization agreeing to supervise the defendant"); Ohio Rev. Code Ann. § 2937.011(D)(2) (similar); Colo. Rev. Stat. § 16-4-106 (similar); *see also* ABA, Standards for Criminal Justice: Pretrial Release § 10-1.10 (3d ed. 2007).

4

A Judge considering whether any special conditions of release will suffice to ensure the safety of the community and the defendant's appearance at court may include a condition "committing the defendant to the custody or supervision of a designated person or organization that agrees to supervise the defendant." *Id.* 4-216.1(d)(2)(K). Again, the "organization" contemplated by this provision is, for purposes of the case at hand, the Pretrial Division in Prince George's County. *See* ECF No. 1 ¶¶ 62-63.

Precisely how Judges in Prince George's County interact with the Pretrial Division and how the Pretrial Division implements the Judges' referrals and "agrees to supervise" defendants are the essential challenges that Plaintiffs bring in this litigation.

## II.     The Disputed Procedures

Plaintiffs allege (and Defendants appear to agree) that, in many if not most instances, Prince George's County Judges will "refer" criminal defendants to the Pretrial Division for an assessment of whether the Pretrial Division will agree to supervise the defendants after they are released. *See id.*[7] While the Pretrial Division undertakes this assessment, the defendants remain in custody. *See id.*[8]

Plaintiffs allege that these judicial referrals amount to unconstitutional abdications of the obligations of the Judges to determine the conditions of release for criminal defendants. *See* ECF No. 1 ¶ 5. Plaintiffs say that, instead of release determinations being made by Judges in public view and on the public record, the determinations are made behind closed doors by

---

[7] When making such referrals, Judges will often state that defendants are to be held in "no bond" status and are to be evaluated by the Pretrial Division for possible release on one of four supervisory levels, with Level I requiring the least intensive supervision and Level IV, the most intensive, requiring supervision by electronic monitoring device and frequent contact with a case manager and investigator. *See* ECF No. 90 at 3 n.3; *id.* at 3 n.4; ECF No. 1 ¶¶ 67-72.

[8] These referrals are sometimes called "pretrial options" or "pretrial orders." ECF No. 1 ¶ 60. Although the names differ, all parties agree that these "referrals" are at the heart of Plaintiffs' claims. *See* ECF Nos. 173-1 at 4; 174-1 at 4-5, 186-1 at 11.

unelected, politically unaccountable County bureaucrats. *See id.* Even worse, Plaintiffs aver that these determinations are not being made in expeditious fashion—indeed, Plaintiffs allege (but do not always specify why) that in a number of cases, weeks if not months sometimes pass before the Pretrial Division comes to a decision regarding pretrial release in an individual defendant's case. *See id.* ¶¶ 74-75. These delays are particularly egregious, according to Plaintiffs, because judicial referrals to the Pretrial Division *mandate* the release of defendants. *See* ECF No. 186-1 at 9 (citing ECF No. 1 ¶¶ 86-104). Plaintiffs argue that, by failing to promptly determine whether to accept defendants into its pretrial release program and, in some cases, by refusing to accept defendants into the program based on its own eligibility criteria, the Pretrial Division has as a practical matter ignored the Judges' orders and has usurped judicial authority to order the release or detention of defendants pending trial. *See id.*[9]

The Judge and County Defendants deny that the Judges have ever delegated the ultimate decision of whether to release a defendant to the County. Defendants collectively view judicial referrals to the Pretrial Division not as release orders at all. *See* ECF Nos. 173-1 at 4, 174-1 at 7. Instead, they submit, all referrals to the Pretrial Division are only preliminary determinations by the Judges that a criminal defendant *may* be released, subject, however, to the condition precedent that the Pretrial Division agrees to supervise them. *See id.* Otherwise, the pretrial release decision will bounce back to the Judge for further decision who, in any event, may always be asked by the defendant to conduct a renewed bail review hearing.

---

[9] To be clear, Plaintiffs do not allege and they at no point have shown that judicial referrals to the Pretrial Division constitute final orders of release, such that the Pretrial Division could be said to have ignored or disobeyed a Judge's explicit order of release. *See* ECF No. 128 at 4 ("Nothing in the suit, as it stands, suggests that the Pretrial Division is refusing to implement a bail judge's decision, as for example, by declining to release an individual whom the bail judge has ordered to be released forthwith.").

6

**JA1503**

The County represents that, in reaching an eligibility determination for pretrial release of a criminal defendant, the Pretrial Division considers a number of factors derived from Maryland Rule 4-216.1. *See* ECF No. 173-1 at 4-5. These include: Assessing the defendant's risk of flight and danger to the community; whether the defendant resides within the County's jurisdiction; the existence of any detainers from other jurisdictions; whether the defendant has a fixed place of abode; and whether the defendant may be reached by telephone. *See id.* If the Pretrial Division determines that a defendant meets its eligibility criteria, the County's "acceptance" of the defendant in its pretrial program satisfies the Judge's condition precedent and the defendant is released, frequently without further involvement from the Judge, and the Pretrial Division assumes supervisory responsibility over the individual. *See id.* If, however, the Pretrial Division finds that a defendant is *not* eligible for its program, he or she remains detained, *see id.*, and, as indicated, detainees may seek further judicial review of their detention by requesting a renewed bail review hearing before a Judge. *See* Md. R. 4-216(c); *id.* 4-216.3(b)-(c). Plaintiffs here do not allege that any request for renewed bail hearings has ever been denied.

As to the alleged delays in reaching pretrial release decisions, Defendants claim that it is not always feasible at a defendant's initial bail hearing for a Judge to consider all the relevant factors in the release calculus because of time constraints, the "unique circumstances of each factual case, the crime rates in Prince George's County, and the limited resources" of the Pretrial Division. Anything more than a short-term recommendation to the Judge at the initial bail hearing is said to be impractical. ECF No. 174-1 at 3 n.4.[10] Hence the more extensive investigation undertaken by the Pretrial Division, following referral by the Judge.

---

[10] As described *infra*, during the pendency of this suit, the County has modified certain aspects of its pretrial release program to address the purported delays, in part certainly at the Court's urging. *See* Attachment A hereto.

7

### III.    Procedural History

On July 19, 2022, nine Plaintiffs filed a Complaint in this Court on behalf of themselves and a putative class of all arrestees who have been or will be detained in Prince George's County pursuant to the County's pretrial release procedures. *See* ECF No. 1. The Complaint named as Defendants one Prince George's County Circuit Court Judge, ten County District Court Judges, several individual Prince George's County officials affiliated with the Department of Corrections, and the County itself. *See* ECF No. 1.

The Complaint consists of five counts, all five of which are asserted by all Plaintiffs against all Defendants, collectively praying for monetary damages, as well as declaratory and injunctive relief. The counts include two claims pursuant to 42 U.S.C. § 1983 for the alleged deprivation of Plaintiffs' substantive and procedural due process rights under the Fourteenth Amendment to the U.S. Constitution; two claims for alleged deprivations of substantive and procedural due process under Article 24 of the Maryland Constitution; and one claim under Article 8 of the Maryland Constitution for alleged violations of the separation of powers clause. *Id.* at 44-48.    Plaintiffs also request declaratory relief against the Judge Defendants and declaratory, injunctive, and monetary relief against the County as well as the individual County officials named as Defendants. The same day that Plaintiffs filed their Complaint, they filed a Motion for Preliminary Injunction and a Motion to Certify Class. *See* ECF Nos. 2, 3.

On July 27, 2022, just eight days after Plaintiffs filed their Complaint, the Court held a telephone conference with counsel to discuss the status of the case. ECF No. 52. During the conference, the Court ordered counsel for the County to promptly provide Plaintiffs' counsel and the Court with basic information about the criminal cases and detention status of each named Plaintiff. *See* ECF No. 56. (This the County, in timely fashion, did.) The Court also set an

8

expedited schedule for briefing Defendants' Motions to Dismiss. *See id.* at 2. In addition, Plaintiffs sought expedited discovery relative to their Motion for Preliminary Injunction. The Court at the time deferred ruling on whether a hearing on the preliminary injunction would be expedited, noting that it viewed discovery bearing on the preliminary injunction as essentially coterminous with appropriate discovery going to the merits of the case and suggested that the parties might therefore forgo the preliminary request and proceed directly to discovery and trial on the merits. The Court, however, allowed Plaintiffs to file an appropriate motion relative to any discovery issues that might arise. *See id.* at 2.

On August 17, 2022, at the request of Plaintiffs, the Court held another telephone conference with counsel. *See* ECF No. 62. During that call, defense counsel confirmed that five of the nine named Plaintiffs had in fact been released from custody and that four remained detained. *See* ECF No. 63 at 9:06-10. Counsel for the County explained that three of these four individuals, with the exception of Plaintiff Butler,[11] were being held because of detainers issued from other jurisdictions. Counsel for Plaintiffs requested that, as to the four remaining Plaintiffs, the Court provide "more immediate relief," and "for them . . . not to be held because of the very fact that they have a detainer which . . . we believe is illegal." *Id.* at 20:10-14. The Court declined to take any immediate action, in part because, up to that point, the fundamental matter of its jurisdiction had not yet been determined. *See id.* at 26:18-27:04.

---

[11] Although Butler was not subject to a detainer, he was facing charges of second-degree murder, assault in the first degree, manslaughter, and use of a firearm by a felon in commission of a violent crime. ECF No. 63 at 31:01-04. In light of these charges, the Court found his detention to be "not unreasonable." *Id.* at 30:11-12. Still, the Court refrained from taking any action one way or another regarding Butler's release, given the uncertainty as to the nature of his referral to the Pretrial Division, despite the fact that Plaintiffs' counsel chose to characterize the Judge's referral of Butler to the Pretrial Division as *an order* of release. *See id.* at 32.

9

Thereafter, the Judge Defendants and County Defendants filed Motions to Dismiss. *See* ECF Nos. 64, 66. On October 25, 2022, after briefing had been completed, the Court held a hearing on the Motions. *See* ECF Nos. 77, 78, 79.

At the hearing, the Court granted in part the County Defendants' Motion to Dismiss, dismissing the claims against the individual County officials on the grounds that they had been sued in their official capacities and, as such, the claims against them actually ran against the County, not the individuals. *See* ECF No. 80. Equally important, the Court noted that it really did not "know what's going on right now with the County" vis-à-vis its release procedures, ECF No. 79 at 118:02-03, and given that many questions, including the basic one of the Court's jurisdiction, remained open, *id.* at 119:06-10, indicated that it would defer ruling on the remainder of Defendants' Motions. In consequence, the Court cancelled a previously scheduled preliminary injunction hearing pending the Court's rulings on the other aspects of the Motions to Dismiss. *See* ECF No. 80. Additionally, the Court directed counsel for Plaintiffs to provide the Court and defense counsel, within 30 days, copies of any and all petitions for bail review hearings, transcripts of bail review hearings, judicial decisions emanating therefrom, and any documents created by the Pretrial Division with respect to each of the named Plaintiffs. *See id.*

On January 12, 2023, Plaintiffs filed the requested documents, and twelve days later, on January 24, 2023, the Court issued its Memorandum Opinion and Order on Defendants' Motions to Dismiss. *See* ECF Nos. 90, 91. In its Opinion, the Court granted in part and denied in part the Motions, concluding that: (1) the Court did have jurisdiction over at least some of Plaintiffs' claims and that it did not have to abstain from deciding them; (2) the case was justiciable; but that (3) Plaintiffs' claims for monetary damages against the County were foreclosed by reason of the doctrine of quasi-judicial immunity. *See* ECF No. 90. The Court additionally dismissed the

claims of the named Plaintiffs who had been released during the pendency of the suit but preserved the claims of Plaintiffs Butler and Williams since, as of that time, they remained detained. *See id.* The Court clarified that only Butler and Williams' claims for prospective equitable relief against the Judge and County Defendants could proceed. *See id.*

On February 21, 2023, both Plaintiffs and the Judge Defendants filed respective Motions for Reconsideration of the Court's January 24, 2023 Opinion and Order. *See* ECF Nos. 97, 98.

On March 2, 2023, the Court held a telephone conference with counsel to discuss a Joint Status Report that the parties had previously submitted. During that call, counsel for the County announced that, in light of these proceedings, it would be changing fundamental components of its pretrial release policy.[12]  *See* ECF 105 at 25:16-24. Because the prospect of change raised questions as to who might become the proper Defendants after the new policy went into effect, and how the modification might affect any class that might be certified, *see id.* at 34:17-20, counsel for Plaintiffs represented that they were amenable to filing a new motion to certify the class addressing the County's imminent new policy. *See id.* 38:13-18. Accordingly, the Court denied without prejudice Plaintiffs' Motion to Certify Class and gave Plaintiffs leave to refile the motion (which to date they have never done). *See id.* 38:19-39:06. In the meantime, since there now appeared to be considerable uncertainty regarding many material facts, the Court asked counsel if, within ten days, they could agree on a set of stipulated facts upon which the Court might base its ruling on Plaintiffs' Motion for Preliminary Injunction. *Id.* at 39:07-09. The Court indicated that, if the parties were unable to agree and did not submit stipulations within

---

[12] In its Opinion and Order dated January 24, 2023, the Court had appended a list of six questions that the County might consider as the case proceeded. *See* ECF No. 90 at 23-25. A copy of that list of questions is Attachment A hereto.

that timeframe, it was inclined to deny the Motion for Preliminary Injunction without prejudice. *See id.* at 39:11-13.

Ten days passed without the parties submitting any stipulations, in consequence of which, on March 13, 2023, the Court denied the Motion for Preliminary Injunction. *See* ECF No. 108. On April 13, 2023, Plaintiffs noticed an appeal from that denial to the U.S. Court of Appeals for the Fourth Circuit. *See* ECF No. 121. The Judge Defendants thereupon filed a Motion to Stay proceedings while Plaintiffs' interlocutory appeal was pending, which the Court denied. *See* ECF No. 127.

Meanwhile, on April 28, 2023, the County filed a revised pretrial release policy. ECF No. 124. Under the revised policy, the Pretrial Division, *inter alia*, would be required to make an eligibility determination as to any detainee within ten days of receiving a judicial referral. The Judge who made the referral, the defendant, and his or her counsel, among others, would have to be notified as to the Pretrial Division's decision within that same timeframe. ECF No. 124-1 at 6.[13]

At the same time, the parties' respective Motions for Reconsideration, filed earlier, remained open. On June 7, 2023, the Court issued its Memorandum Opinion and Order addressing the Motions. *See* ECF Nos. 128, 129. In its Opinion, the Court denied the Motions, explaining that, among other things, it continued to hold to the view that the County enjoys quasi-judicial immunity with respect to Plaintiffs' damages claims, but that the Judge and County Defendants remained subject to prospective equitable relief, and that these conclusions were not changed by subsequent factual developments, including the County's revisions of its

---

[13] At this stage, the constitutionality of the County's modified policy is not at issue, and the Court recites these details merely for narrative completeness. The Court has not relied on the County's modified policy to resolve the pending Motions.

pretrial release policy. *See id.* The Court also denied a renewed Motion to Dismiss filed by the County. *See id.*

The case thereafter continued in discovery for several months. *See* ECF No. 149.

Then, on November 15, 2023, the Fourth Circuit issued an opinion in respect to this Court's denial of Plaintiffs' Motion for Preliminary Injunction. ECF No. 155-1. The appellate court vacated that denial on the grounds that this Court had not sufficiently articulated its reasons for denying the preliminary injunctive relief when it issued its ruling back in March. *See id.*

One week later, on November 22, 2023, consistent with the Fourth Circuit ruling, this Court issued a Memorandum Opinion and Order setting forth its reasons for denying Plaintiffs' Motion for Preliminary Injunction. ECF No. 156, 157. The November 22 Opinion nevertheless left open the possibility that the Court would be amenable to reconsidering the propriety of granting injunctive relief, subject to arguments that might be made and evidence that might be offered at a future preliminary injunction hearing. *See id.*

By Memorandum Order dated December 8, 2023, the Court directed counsel to advise the Court about how much time would be required for them to argue and present evidence at the preliminary injunction hearing. *See* ECF No. 159. Plaintiffs responded that they anticipated they would need two-and-a-half days for presentation of their case in chief, including testimony from families of some of the detainees, and requested that the Court set the hearing for February 6, 2024 (or later), so that before then they could conduct hearing-specific discovery and submit appropriate motions. ECF No. 160.

On December 19, 2023, the Court held another telephone conference with counsel, this time to discuss the contours of the proposed preliminary injunction hearing. Plaintiffs explained that they intended to call, among others (including family members of detainees), various Judge

13

**JA1510**

Defendants to testify about their understanding of what they do when they make referrals to the Pretrial Division. Plaintiffs additionally indicated that they sought to depose those Judge Defendants prior to the hearing in order to further build evidentiary support for their claims. The Court observed during the call that Plaintiffs' plan raised a new question of whether they could compel state-court Judges to testify about any aspect of their judicial activities in a court proceeding, federal or otherwise. The Court further reiterated that, in its view, the case could perhaps be resolved altogether by simply answering the question of whether the Judge Defendants in any significant way relinquished ultimate control over the decision to release or detain a defendant when they make a referral to the Pretrial Division. If the answer was that the Judges did retain such control, the case might be resolved on the grounds of both judicial and, as far as the County was concerned, quasi-judicial immunity. Accordingly, the Court invited the parties to brief these issues prior to any hearing on the Motion for Preliminary Injunction and set a briefing schedule.

Two days later, Plaintiff's counsel noticed the depositions of Defendant Judges Lakeecia Allen and Robert Heffron, Jr. (the "Subpoenaed Judges") for late December 2023 and early January 2024. The Judge Defendants, in response, filed a Motion to Stay Discovery Pending Resolution of Dispositive Motions, *see* ECF No. 170, which Plaintiffs opposed. *See* ECF No. 172. On January 25, 2024, the Court granted Defendants' Motion to Stay Discovery on the grounds that the "narrow question of judicial and quasi-judicial immunity may well resolve the entirety of the case." ECF No. 180 at 1.

On January 18, 2024, the Subpoenaed Judges filed a Motion to Quash their depositions, *see* ECF No. 175, and that same day all the Judge and County Defendants filed their respective

14

Motions for Judgment on the Pleadings. *See* ECF Nos. 173, 174. Oppositions and replies thereto have since been filed, ECF Nos. 185, 186, 191, 193, and the Motions stand ripe for decision.

## III.   The Subpoenaed Judges' Motion to Quash

### A.   Legal Standard

A federal district court must quash a subpoena when the subpoena would require "disclosure of privileged or other protected matter, if no exception or waiver applies," or if the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). The party asserting a claim of privilege bears "the burden of demonstrating its applicability." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011).

### B.   Whether the Subpoenas Should Be Quashed on the Basis of the Deliberative Process Privilege

The Subpoenaed Judges ask the Court to quash the subpoenas for their depositions primarily on the grounds of what they assert is their deliberative process privilege. *See* ECF No. 175-1 at 4. According to the Subpoenaed Judges, Plaintiffs intend to question them about how they go about deciding whether and when they refer criminal defendants to the Pretrial Division to explore pretrial release options. *See id.* These questions, say the Subpoenaed Judges, strike at the heart of their adjudicative processes, which have long been protected against compelled inquiry, at least in the context of court proceedings. *See id.* at 4-6. Plaintiffs counter that the Subpoenaed Judges' concerns are speculative at best because, at this stage, the Judges have not been asked any questions at all. *See* ECF No. 185 at 4. Plaintiffs posit that, if the Judges feel that a particular line of inquiry ventures into privileged territory, they will be free to raise the deliberative process privilege (or any other privilege they believe applies) in response to questions they deem objectionable during their depositions. *See id.* at 4-10. Plaintiffs urge the Court to adopt the procedure outlined by the Eleventh Circuit in *In re Certain Complaints Under*

15

**JA1512**

*Investigation by an Investigating Committee*, 783 F.2d 1488 (11th Cir. 1986), because, they say, doing so will preserve any legitimate privilege the Subpoenaed Judges might have, while at the same time permitting Plaintiffs to ask other, non-objectionable questions. This process, say Plaintiffs, will better inform the Court when evaluating the Subpoenaed Judges' assertions of privilege. *See* ECF No. 185 at 4. The Court engages with these arguments.

"The decision making process of a judge is usually not a discoverable matter." *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202 (E.D. Pa. 2009). Analogously, in *United States v. Morgan*, 313 U.S. 409 (1941), the U.S. Supreme Court elucidated this principle as it applied to compelling the testimony of the Secretary of Agriculture. *See id.* at 421-22. The Court there held that "the Secretary should never have been subjected" to examination because the Secretary's decisionmaking process, which was challenged in that case, had "a quality resembling that of a judicial proceeding," and a "judge cannot be subjected to such a scrutiny." *Id.* at 422 (citing *Fayweather v. Ritch*, 195 U.S. 276, 306-07 (1904)).

Counsel in the present case have not cited, nor this Court is aware of, any Fourth Circuit decisions opining on the propriety of a federal court ordering the deposition of a state Judge regarding any aspect of his or her decisionmaking, individually or as a matter of policy, made in the course of performing his or her official duties. Since *Morgan*, however, lower courts have derived the "general rule . . . that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties." *Ciarlone*, 263 F.R.D. at 202 (citing *United States v. Roebuck*, 271 F. Supp. 2d 712, 718 (D.V.I. 2003) (collecting cases)). That said, it has been noted, correctly or not, that "a judge may be called to testify to relevant [matters] of fact that do not probe into or compromise the mental processes employed in formulating the judgment in

16

question." *Roebuck*, 271 F. Supp. 2d at 718 (citing *Standard Packaging Corp. v. Curwood, Inc.*, 365 F. Supp. 134, 135 (N.D. Ill. 1973)).

The leading federal case touching on this question appears to be the aforementioned *In re Certain Complaints Under Investigation by an Investigating Committee* from the Eleventh Circuit. *See Cain v. City of New Orleans*, Civ. No. 15-4479, 2016 U.S. Dist. LEXIS 169819, at *13 (E.D. La. Dec. 8, 2016) (surveying the case law on judicial deliberative privilege and characterizing *In re Certain Complaints* as "the leading case in the federal courts").

In that case, the Eleventh Circuit held that the judicial deliberative process privilege is a "qualified" one, which may be overcome by a showing of "the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means." 783 F.2d at 1522. The court specifically considered the applicability of the privilege to subpoenas to compel testimony from the law clerks and staff of a federal district Judge who was under investigation by the Investigating Committee of the Judicial Council of the Eleventh Circuit. *See id.* at 1491. The investigation concerned allegations that the Judge in question had committed grave ethical violations by, among other things, soliciting a bribe, accepting "financial donations from lawyers and others to defray the costs of his criminal defense," and "in particular cases . . . 'completely abdicat[ing] and delegat[ing]' his decisionmaking authority to his law clerk." *Id.* at 1492.

With some relevance to the case at bar, the court also found that the much of the testimony sought from the Judge's law clerks was "presumptively privileged" because it focused on communications between the Judge about the performance of his official business. *Id.* at 1522. But that presumption, the court believed, was "overridden," by the investigating committee's need for the law clerk's testimony about a "matter of surpassing importance" (i.e.,

17

serious allegations of "grave" judicial impropriety), for which there was "no adequate substitute." *Id.*

A few district courts have drawn lessons from this: "Oral examination of a judicial or quasi-judicial officer as to matters within the scope of his adjudicative duties should be permitted only upon a strong showing of bad faith or improper behavior." *Ciarlone*, 263 F.R.D. at 202 (quoting *United States v. Ianniello*, 740 F. Supp. 171, 187 (S.D.N.Y. 1990)). The reason for such a restrictive rule is simple. As one district court has described it, if a Judge were "vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to 'frivolous attacks upon its dignity and integrity, and . . . interruption of its ordinary and proper functioning.'" *Ianello*, 740 F. Supp. at 187 (quoting *United States v. Dowdy Co.*, 440 F. Supp. 894, 896 (W.D. Va. 1977)); *see Morgan*, 313 U.S. at 421-22.

How do these authorities bear upon the present case? The Court concludes that, because any questioning of the Subpoenaed Judges about their involvement in the pretrial release process is "highly likely to invade" the Judges' "decision-making process[es] and therefore target privileged material," the subpoenas here should be quashed. *See, e.g., Mendez v. City of Chicago*, No. 18 CV 5560, 2020 U.S. Dist. LEXIS 47530, at *5 (N.D. Ill. Mar. 19, 2020); *see Ciarlone*, 263 F.R.D. at 202; *Taylor v. Grisham*, No. 1:20-cv-00267-JB-JHR, 2020 U.S. Dist. LEXIS 207243, at *6 (D.N.M. Nov. 4, 2020); *United States v. Roth*, 332 F. Supp. 2d 565, 567-68 (S.D.N.Y. 2004).

Since the Court has more than once stated its view that the controlling question that "may well resolve the entirety of the case" is the "narrow question of judicial and quasi-judicial immunity," ECF No. 180 at 1 (citing ECF Nos. 156, 166), the Court finds that the only relevant inquiries that Plaintiffs could plausibly pursue at a Defendant Judge's deposition would

18

necessarily probe the Subpoenaed Judge's "mental processes used in formulating official judgments or the reasons that motivated him [or her] in the performance of his [or her] official duties." *Ciarlone*, 263 F.R.D. at 202. The jugular inquiry would inevitably be whether the Judge Defendants *believe* that they relinquish control over their decisions to release or detain criminal defendants when they refer those defendants to the County's Pretrial Division. The questioning would necessarily plumb the Subpoenaed Judges' decisionmaking with respect to their official duties, in flat contradiction of the proposition that Judges "cannot be subjected" to the scrutiny of oral testimony. *Morgan*, 313 U.S. at 422.

Although earlier in the proceedings the Court indicated that it hoped to hear testimony from the Judge Defendants on this question at a preliminary injunction hearing, *see* ECF No. 156 at 9, the Court expressed this sentiment before either party had raised the prospect of issuing subpoenas to the Judge Defendants. The legal ramifications of that sentiment were not then, but are now, four-square before the Court to decide. After reviewing the parties' submissions and the case law pertinent to this question, the Court decides that the judicial deliberative process privilege precludes any effort to require a state-court Judge to testify about his or her mental processes, whether individually or as a matter of collective policy, in reaching pretrial release decisions in the cases before them.

Plaintiffs object to this conclusion because they believe their questions would only probe the Judges' "understanding of their powers and responsibilities pursuant to all applicable laws, and how they interpret those powers and responsibilities in carrying out their duties," or the Judges' "memor[ies] of nondeliberative events in connection with cases in which" they participated, or mere "statement of facts," not their deliberative processes. ECF No. 185 at 6 (citing *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 528 (N.D. Ind. 2005); *In re*

19

**JA1516**

*Enf't of Subpoena*, 972 N.E.2d 1022, 1033 (Mass. 2012); *Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-cv-660, 2016 WL 813709, at \*2 (S.D. Ill. Mar. 2, 2016)). Stated differently, Plaintiffs characterize their deposition subpoenas as requesting testimony from the Judges on "administrative" matters rather than "judicial decision-making." *Id.* at 6-7.

Plaintiffs rely principally on *Cain v. City of New Orleans*, No. CV 15-4479, 2016 U.S. Dist. LEXIS 169819 (E.D. La. Dec. 8, 2016), and *McNeil v. Community Probation Services, LLC.*, No. 1:18-cv-00033, 2019 U.S. Dist. LEXIS 41253 (M.D. Tenn. Jan. 7, 2019).

In *Cain*, a putative class of plaintiffs alleged that the defendants, among them thirteen state-court Judges and the judicial administrator for the court, "unconstitutionally use[d] threats of imprisonment, imprisonment and arrest warrants issued by the court's collections department, rather than by judges themselves, to collect court debts from indigent criminal defendants." 2016 U.S. Dist. LEXIS 169819 at \*3. The plaintiffs claimed that, "because some of the assessed fees" could be used by the Judges for 'financing some of the court's and their expenses, the judges ha[d] an intolerable financial conflict of interest that deprived plaintiffs of their due process rights to neutral judicial action.'" *Id.* The defendants sought a protective order that would preclude the plaintiffs from pursuing *any* discovery based on the Judges' assertions of deliberative process privilege. *Id.* The district court, however, declined to issue a protective order prohibiting all discovery after concluding that, under *In re Certain Complaints*, "plaintiffs' need for discovery outweighs defendants' interest in a blanket prohibition of all discovery, including depositions, from these defendants." *Id.* at \*16-17. To the extent that the Louisiana district court addressed the question of deposing the Judges, it said that it could not "foresee every deposition question that might be asked," and thus allowed inquiry into "administrative or executive matters," while acknowledging the right of the Judges to raise the deliberative process

privilege with respect to questions that may stray "into the arena of a particular judge's adjudicative deliberations." *Id.* at \*17.

*McNeil* concerned a putative class action by indigent misdemeanor probationers who alleged that the probation system in Giles County, Tennessee, violated their constitutional rights because the county contracted out probationary supervision to private companies that were incentivized to "maximize their own profits by acting as probation officers for the purpose of collecting fines, costs, fees, and litigation taxes." Complaint at 8, ECF No. 41, *McNeil*, No. 18-cv-33 (July 13, 2018). Although no Judges were named as defendants in that case, *see id.*, plaintiffs sought the deposition testimony of several Judges to build a record for a preliminary injunction hearing. *See* 2019 U.S. Dist. LEXIS 41253, at \*4 (discussing motions to quash filed by two of the non-party Judges). Relevant here, the plaintiffs specified that they intended to ask questions about which factors the Judges considered "in general when determining conditions of release . . . following arrest for alleged violation of misdemeanor probation and what information is available to [them] in general when [they] consider[ed] such factors." *Id.* at \*6-7. The court found that these questions fell under a "narrow scope" that would not implicate the deliberative process privilege. *Id.* In response to the Judge's objection that a live deposition would be unduly burdensome given his busy calendar, the court observed that "[a]ll depositions are burdensome," and found "no compelling reason" to either quash the deposition or order it be conducted through written questions. *Id.* at \*7, \*10-11.

These decisions are, of course, not binding on this Court. Indeed, it would be entirely proper for the Court to deem the decisions wrongly decided in some if not all respects.[14] But in fact the Court finds Plaintiffs' decisions to be materially distinguishable from the present case.

Unlike the allegations against the defendants in *Cain*, there is no suggestion here that the Judge Defendants have ever been engaged in a scheme to criminally augment court revenues. Unlike in *McNeil*, Plaintiffs' allegations do not concern allegedly unlawful conduct by private actors, operating independently of both the state Judges and the County, who purportedly have illicit financial incentives to penalize probationers simply to generate revenue.   In such a

---

[14] Take, for example, the *McNeil* court's observation that "all depositions are burdensome" and that that fact was not a "compelling reason" to keep Judges from having to give them. But depositions of Judges are not only burdensome, they are inherently invasive. In effect, the Judge (presumably accompanied by his or her own counsel) is obliged to appear at the insistence of a plaintiff based on the plaintiff's belief that the Judge may, in some way, have acted in an unconstitutional or otherwise illegal manner and will have to sit through an inquiry, wading through all the questioning plaintiff poses, while having to be alert to claim deliberative process privilege at various points along the way. In the present case, there is the remarkable—and, in the Court's view, quite extraordinary—prospect of arrested and detained criminal defendants qua Plaintiffs, calling the Judges of the court who will judge them to account, a remarkable sort of turning of the tables. Further, it is simply not the case that the arrestees/detainees have no avenue to pursue their grievances. They can challenge delays in implementing a bail decision by seeking a renewed bail hearing before a Judge. *See* Md. R. 4-216.3(b)-(c). They can seek an appeal of an arbitrary bail decision to the Maryland Appellate Court. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-707. They can file for a writ of habeas corpus. *See* Md. Code Ann., Cts. & Jud. Proc. § 3-702. They can air their grievances publicly, or to the trial Judges themselves or their affiliates, or to judicial councils, or to the state legislature. (For example, in the present case, the head of the County's Department of Corrections did not challenge and voluntarily sat for a deposition. *See* ECF No. 180 at 2.)  Aggrieved parties can even file grievances against an individual Judge or the Judges collectively with appropriate disciplinary authorities. There may be some bumps in the road in pursuit of these options, to be sure, but there is a reason for that. Directly calling Judges to account in a lawsuit for (at least noncriminal) performance of their professional duties is not what the criminal system contemplates. In the Court's view, what Plaintiffs are trying to establish would be nothing less than a revolutionary new procedure when it comes to Judges and how they arrive at their pretrial release decisions. *See* Note 19, *infra*. A federal court, presumably on a continuing basis over time, is being asked to monitor the extent to which state-court Judges and their pretrial release affiliates would be acting in compliance with the federal court's rulings.  Federal oversight of police misconduct is one thing; invoking continuing federal oversight over state-court Judges would enter far different terrain.

22

JA1519 is footer.

scenario, a Judge arguably may have relevant information about how those private actors are permitted to further their allegedly unconstitutional, for-profit schemes, without disclosing their own judicial processes or mental impressions in any pending case.   But here Plaintiffs' allegations turn precisely on what the Subpoenaed Judges mean, i.e., what they have in mind, when they refer criminal defendants to the Pretrial Division for possible pretrial release.   So, while the testimony from the Judges in *McNeil* arguably touches "administrative" matters, which is to say, non-judicial conduct, in this case any testimony from the Subpoenaed Judges would inevitably probe directly into their deliberative processes in the performance of their official duties.

More fundamentally, the Court is unpersuaded by Plaintiffs' attempted distinction between a Judge's "administrative" and "judicial" functions, at least as applied to this case.[15]   As the Court has noted, Plaintiffs' Complaint makes clear, despite their counsel's protestations, that it is the *Judges'* conduct that is at issue here, not the independent acts of the County.   ECF No.

---

[15] While this case can be decided on the basis of the deliberative privilege aspect of judicial immunity, the doctrine of judicial immunity in fact sweeps more broadly.   A Judge does many things, and indeed may have many policies, administrative in nature, that do not, strictly speaking, involve deliberation.   The Judge, for instance, may keep very short hours in chambers, never receive attorneys in chambers, never schedule oral argument on motions, and be consistently uncivil in his treatment of lawyers and litigants.   But the Judge cannot be haled into court by private litigants to account for such actions.   In contrast to the *Gibson* case, discussed *infra*, where the Judge went to the house of the plaintiff and told the plaintiff's ex-wife what items of property she could take, all the examples just mentioned are well within the "most common understandings of the proper judicial role." *Gibson v. Goldston*, 85 F.4th 218, 223 (4th Cir. 2023).   In the instances the Court cites a remedy may be available, *see* Note 14, *supra*, but the remedy does not include a lawsuit against the Judge by an aggrieved attorney or litigant.

Another distinction, for what it is worth, between the case at bar and the *Cain* and *McNeil* cases is that both those cases suggest the presence of possible raw criminality or at least the acquiescence in same by the Judges who were sought to be deposed.   Such circumstances are emphatically not present here.   That is to say, Plaintiffs have made nothing like the "strong showing of bad faith or improper behavior" that courts have found necessary before entertaining requests to depose Judges in any way pertaining to their official duties.   *Ianniello*, 740 F. Supp. at 187.

90 at 17-18 ("[T]here can be no mistaking that the Judge Defendants' allegedly improper delegation of pretrial decisions to the County is the very heart of Plaintiffs' claims."). But the Judge Defendants' decisions to refer defendants to the Pretrial Division are unquestionably "judicial functions," even if they are in a sense "administrative" because, purely and simply, they involve determinations made by the Judges, individually and collectively, while presiding over proceedings well within "the common understandings of the proper judicial role." *Gibson*, 85 F.4th at 223.

In short, permitting Plaintiffs to depose the Judge Defendants about these decisions, in the Court's view, would undermine the bedrock principle that judicial decisionmaking, individually or collectively, must be insulated against compelled inquiry. *See Morgan*, 313 U.S. at 422. Allowing that Plaintiffs' allegations in this case may be grave, a federal court order compelling the Subpoenaed Judges to appear for a deposition into their thought processes would open the state judiciary here and very likely elsewhere to other "frivolous attacks upon its dignity and integrity, and . . . interruption of its ordinary and proper functioning." *Dowdy*, 440 F. Supp. at 896.

The Court is particularly sensitive to these concerns insofar they arise in the context of a federal challenge to the processes of a state court. Consideration must unquestionably be given to the disruption of the governing processes of a separate sovereign. As the Supreme Court has instructed, although federal courts should "vindicate and protect federal rights and federal interests," they must "do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris*, 401 U.S. 37, 44 (1971). In the Court's view, permitting private litigants to make the the Subpoenaed Judges to sit for depositions and inquire about their pretrial release decisionmaking would do just that.

Accordingly, the Court will **GRANT** the Subpoenaed Judges' Motion to Quash Subpoenas for In-Person Testimony and for Protective Order or, in the Alternative, Motion That Depositions Proceed by Written Questions (ECF No. 175).[16]

## IV. The Judge and County Defendants' Motions for Judgment on the Pleadings

### A. Legal Standard

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

"A motion to dismiss tests the sufficiency of the complaint." *Id.* (citing *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012)). To survive a motion to dismiss, a complaint must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint does so if it contains allegations of fact sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss is properly granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244. In the context of civil-rights complaints, courts must be "especially solicitous of the wrongs alleged" and may not dismiss a complaint unless the plaintiff "would not be entitled to

---

[16] Because the Court concludes that the subpoenas should be quashed on the basis of the deliberative process privilege, the Court need not address the Subpoenaed Judges' arguments that they are precluded from testifying by Maryland Rule 18-102.10 or their request that depositions be permitted through written questions pursuant to Federal Rule of Civil Procedure 31.

relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.* (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)). Courts are not, however, "required to accept as true the legal conclusions" in a complaint, *id.*, even if couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or even if they consist of conclusory factual allegations devoid of any reference to actual events. *See United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

If a party presents materials outside of the pleadings in support of its motion and those materials are not excluded from the court's consideration, the court must convert the motion for judgment on the pleadings into one for summary judgment. *See* Fed. R. Civ. P. 12(d). A court need not, however, convert a motion under Rule 12(c) into a motion for summary judgment if it considers documents that are "integral to the complaint" and whose authenticity cannot reasonably be disputed. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). The court may also "take judicial notice of public records" without converting a motion into one for summary judgment. *Ancient Coin Collectors Guild v. U.S. Customs & Border Prot.*, 801 F. Supp. 2d 383, 410 (D. Md. 2011) (citing *Papasan*, 478 U.S. at 269 n.1); *Bel Air Auto Auction, Inc. v. Great N. Ins. Co.*, 534 F. Supp. 3d 492, 496 n.2 (D. Md. 2021).

**B.   The Parties' Contentions**

The Judge Defendants argue that they are entitled to judgment on the pleadings because "all of Plaintiffs' claims are premised on Plaintiffs drawing a legal conclusion that—in following and interpreting Maryland Rule [of Procedure] 4-216.1(d)(2)(K)[17]—the Judge Defendants," have

---

[17] "[S]pecial conditions of release imposed by a judicial officer under this Rule may include, to the extent appropriate and capable of implementation: . . . committing the defendant to the custody or supervision of a designated person or organization that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court." Md. R. 4-216.1(d)(2)(K). The Committee Note to the Rule provides: "The judicial officer may commit the defendant

"'abdicated their responsibilities and instead referred to unaccountable non-judicial county officials the decision of whether, when, and under what conditions the presumptively innocent person will be released.'" ECF No. 174-1 at 16-17 (quoting ECF No. 1 ¶ 5). Beyond these conclusory statements, say the Judge Defendants, Plaintiffs have failed to allege facts showing that any Judge Defendant has ever relinquished ultimate control over "the decision whether criminal defendants may be released." *Id.* at 17.[18] The clear subtext of the Judge Defendants' argument is that because they have never relinquished ultimate control over pretrial release decisions, they are absolutely immune from suit, because such decisions remain well within the scope of their judicial functions, an argument the Judge Defendants explicitly made in their Motion to Dismiss and Motion for Reconsideration. *See* ECF Nos. 66, 98.

For its part, the County argues that it is entitled to judgment on the pleadings because the Court has already determined that the County—effectively functioning as an arm of the Judges much like an assistant working in a Judge's chambers might—enjoys quasi-judicial immunity against Plaintiffs' damages claims. *See* ECF No. 173-1 at 6-11. Specifically, as to Plaintiffs' claims for injunctive relief, the County argues that Plaintiffs' request "remains a mystery,"[19]

---

generally to supervision by a pretrial services unit operating in the county, subject to more detailed requirements of that unit appropriate to the supervision."

[18] The Judge Defendants invoke Maryland Rule 4-216.1 and cite to court records from various Plaintiffs' underlying criminal cases in support of their arguments. ECF No. 174-1 at 7-13, 17-18.

[19] Actually, the Court believes Plaintiffs have outlined the injunctive relief they seek quite pointedly, some of it quite startling. The Complaint asks for "[p]reliminary and permanent injunctions" requiring the County to "promptly release all persons who have been given a pretrial referral and who have not received" what they believe to be the necessary due process. ECF No. 1 at 49. The relief requested in Plaintiffs' Motion for Preliminary Injunction is similar. ECF No. 2-3 at 3. Among other things, Plaintiffs would also require written decisions by the Pretrial Division with respect to its release decisions as well as a requirement that it hold hearings at which detainees or their counsel might challenge those decisions. The radical implications of such relief, particularly if issued from a federal court, were an important reason why the Court denied Plaintiffs' Motion for Preliminary Injunction. *See* ECF No. 156 at 5-6.

such that, in the County's view, the Court correctly denied Plaintiffs' requested relief in their Motion for Preliminary Injunction, which was a "drastic" request to enjoin "the County from accepting the Circuit Court's commitment orders." ECF No. 193 at 4.[20]

Plaintiffs' first-line argument relies on the standard of review on a motion for judgment on the pleadings. *See* ECF No. 186-1 at 8, 9. They argue that because the Court previously denied the Judge and County Defendants' prior Motions to Dismiss, the same result should obtain here. *See id.* In any event, Plaintiffs argue, Defendants' own submissions demonstrate that the Pretrial Division operates independently from the Judges. *See id.* at 10-12 (citing statements made by counsel for the County during the December 19 telephone conference). Plaintiffs further reiterate their arguments that the County does not and cannot enjoy quasi-judicial immunity, *see id.* at 12-14, 17-18, arguments which the Court has already twice rejected. *See* ECF Nos. 90, 128.

As indicated, *supra*, the Court notes that, as the case has progressed, it has become increasingly clear that the overall dispute may be resolved by answering narrow questions about judicial and quasi-judicial immunity.

Resolution of these narrow questions does not require the Court to make any factual determinations one way or the other, whatever specific relief Plaintiffs may be praying for. The Court's focus is on a different aspect of the question, namely whether, given the Court's prior rulings as to judicial and quasi-judicial immunity, Plaintiffs have plausibly stated a claim *"for which relief may be granted."* Fed. R. Civ. P. 12(b)(6). The Court concludes that they have not.

---

[20] The County also raises an argument related to Plaintiffs' efforts to certify a class in this matter. ECF No. 173-1 at 6-7. Plaintiffs suggest that this argument is misplaced, given that the Court has already denied without prejudice their Motion to Certify Class, and that a renewed motion is not due until May 15, 2024. *See* ECF No. 186-1. The Court agrees with Plaintiffs but in any event, given the Court's ultimate decision herein, the point is moot.

28

**C.    Plaintiffs' Claims for Equitable Relief Are Barred by the Doctrines of Judicial and Quasi-Judicial Immunity**

"Generally, judicial officers are entitled to absolute immunity from suit under both the Eleventh Amendment and the common law." ECF No. 90 at 15 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-45 (1993)).  That immunity can extend, in certain circumstances, to a Judge's subordinates who put a Judge's rulings or orders into effect, provided that they engage in conduct that is undertaken pursuant to the Judge's direction. *See* ECF No. 128 at 5.  This latter immunity is known as "quasi-judicial immunity," and is coextensive with judicial immunity. *See id.* (citing, e.g., *Shifflette v. Baltimore City Cnty. Cir. Cts.*, No. 21-cv-3074-LKG, 2022 WL 36450, at *2 (D. Md. Jan. 4, 2022) (applying quasi-judicial immunity to clerk of court)).  At the time of its January 24, 2023 Opinion, the Court concluded that the Judge and County Defendants enjoyed judicial and quasi-judicial immunity against Plaintiffs' damages claims. ECF No. 90 at 16-17; ECF No. 128 at 5-6. The Court did, however, allow Plaintiffs' claims for equitable relief go forward against both the Judge and County Defendants, based on its determination that those immunities did not extend to "suits for prospective equitable relief."  ECF No. 90 at 15 (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Lewis v. Blackburn*, 734 F.2d 1000, 1008 (4th Cir. 1984)).

Since that time, however, the U.S. Court of Appeals for the Fourth Circuit has issued a decision that the Court finds critical in delineating the proper scope of judicial and quasi-judicial immunity as applied to this case.

In *Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023), the Fourth Circuit considered a state Judge's claim of judicial immunity in defense of a suit brought under 42 U.S.C. § 1983. *See id.* at 222.  There the plaintiff sought injunctive, declaratory, and monetary relief against a state

29

Judge who was alleged to have violated the plaintiff's Fourth and Fourteenth Amendment rights. *See id.* Those alleged constitutional violations arose in the context of the Judge's adjudication of plaintiff's divorce proceedings with his ex-wife. *See id.* at 220. When the plaintiff's ex-wife petitioned the Judge for an order compelling the plaintiff to relinquish assets pursuant to the terms of a property-distribution settlement, the Judge ordered the parties to meet at the plaintiff's house. *See id.* at 221. Once at the house, the Judge herself entered with a "list of unproduced assets in hand" and "directed [the] proceedings" by telling the plaintiff's ex-wife she could take various items. *See id.* at 221-22.

The Fourth Circuit rejected the Judge's claim of judicial immunity against a suit brought by the ex-husband. *See id.* at 223. The court observed that "[j]udicial immunity is strong medicine. When it applies it is absolute. It not only protects judges from ultimate liability in a case, but also serves as a complete bar to suit." *Id.* (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). The court recognized that this "strong medicine" derives from the "general principle" that "a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Id.* (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)); *see also Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Nonetheless, the immunity "does not protect *judges*" merely because they are Judges; "it protects the judicial acts they undertake as part of their public service." *Id.* (Emphasis in original.) "As such, judges are not protected if they act in the 'clear absence of all jurisdiction over the subject-matter' or when they engage in nonjudicial acts.'" *Id.* (quoting *Bradley*, 80 U.S. (13 Wall.) at 351; *Stump*, 435 U.S. at 360). In *Gibson*, the court found that the Judge had not only "engaged in a nonjudicial act," but in doing so, "the judge clearly exceeded the most common understandings of the proper judicial role." *Id.* Given this, the plaintiff's

claims—again, for injunctive, declaratory, and monetary relief—were permitted to proceed against the Judge. *See id.* at 223, 226.

The Judge's actions in *Gibson* are a far cry from the actions of the Judge Defendants challenged here. Rather than alleging that the Judge Defendants have "engaged in a *non*judicial act," Plaintiffs allege that, essentially, while the judicial act of presiding over and deciding the conditions of a criminal defendant's pretrial release is involved, the Judges have failed to properly perform that act by outsourcing the release decision to the Pretrial Division. ECF No. 1 ¶ 5. But these allegations continue to strike at the heart of a Judge's judicial function, and most assuredly involve decisions over which the Judge Defendants possess jurisdiction, i.e., presiding over bond review hearings in which they determine pretrial release conditions. *See Mireles*, 502 U.S. at 12. The acts challenged in this case are likewise nowhere near nonjudicial acts that exceed the most common understanding of the proper judicial role. Based on *Gibson*, the Judge Defendants in this case would certainly appear to enjoy absolute immunity, not only against any claim for money damages, but against any suit at all. *See Gibson*, 85 F.4th at 222. Given that quasi-judicial immunity, a "derivative of judicial immunity," is likewise "absolute," as Plaintiffs recognize, *see* ECF No. 185-1 at 11, the County would also appear to be immune from suit.

Plaintiffs resist this conclusion on the grounds that "decades of precedent" teach that Judges are not immune from prospective injunctive relief. *Id.* at 10-11. Fair enough. Most of the precedents cited by Plaintiffs, however, including *Pulliam v. Allen*, 466 U.S. 522 (1984) and *Livingston v. Guice*, 68 F.3d 460 (4th Cir. 1995) (unpublished) (reported at 995 U.S. App. LEXIS 29238 (4th Cir. Oct. 18, 1995)), predate the amendment of 42 U.S.C. § 1983 by Congress in 1996.

That amendment changed the text of Section 1983 in material ways with respect to the scope of judicial immunity. The statute now reads in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.*

42 U.S.C. § 1983 (emphasis added); Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847 (1996) (amending Section 1983). As other courts since the amendment have observed, this language was added to the statute to explicitly reject *Pulliam*'s holding. *See, e.g., Moore v. Urquhart*, 899 F.3d 1094, 1104 (9th Cir. 2018); *Allen v. Debello*, 861 F.3d 433, 439 (3d Cir. 2017); *Kuhn v. Thompson*, 304 F. Supp. 2d 1313, 1322 (M.D. Ala. 2004); *see also Lepelletier v. Tran*, 633 F. App'x 126, 127 (4th Cir. 2016) (per curiam) (holding that plaintiff's "claims seeking injunctive relief against a sitting state-court judge for actions taken in his judicial capacity also were barred by the plain language of 42 U.S.C. § 1983").[21]

Plaintiffs cite two cases that followed the 1996 amendment to Section 1983 that touch upon the matters of judicial immunity or quasi-judicial immunity, but both are distinguishable.

---

[21] Although the Court previously accepted per *Ex parte Young* that state Judges were subject to prospective injunctive relief, *see* ECF No. 90 at 15, the Supreme Court has more recently clarified the proper scope of *Ex parte Young*. In *Whole Women's Health v. Jackson*, 595 U.S. 30 (2021), the Supreme Court observed that while *Ex parte Young* is a "narrow exception" to a state's Eleventh Amendment sovereign immunity, "this traditional exception does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Id.* at 39. This is so because state-court judges and clerks "do not enforce state laws as executive officials," the true subjects of *Ex parte Young* actions. Instead, state-court Judges and clerks "work to resolve disputes between parties." *Id.* "'An injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'" *Id.* (citing *Ex parte Young*, 209 U.S. at 163).

32

As to judicial immunity, Plaintiffs cite this Court's own decision in *Schiff v. Bonifant*, No. PJM-23-1563, 2023 U.S. Dist. LEXIS 105078 (D. Md. June 15, 2023) (Messitte, J.). In that case, the Court relied on *Pulliam* to observe that "[j]udicial immunity does not prohibit injunctive relief against a state-court judge." *Id.* at *5. Notwithstanding this observation, the Court found equitable and declaratory relief to be unwarranted on the facts of that case because while "[t]he relief contemplated by the provision contained in § 1983 presupposes that the declaratory or injunctive relief pertains to enforcement of an unconstitutional law or practice," the plaintiff had failed to identify any such law or practice that allegedly violated his federal constitutional rights. *See id.* at *6-7.

Mea culpa. The Court in *Schiff* simply overlooked the critical language of the 1996 amendment to Section 1983. (The ultimate decision in *Schiff*, however, remains defensible because even if the Court got it wrong on the law as to the availability of equitable relief, the plaintiff had nevertheless failed to cite any law or practice allegedly violative of his constitutional rights.) The Court in *Schiff* did note that federal courts "'should not sit in constant supervision of the actions of state judicial officers, whatever the scope of authority under § 1983 for issuing an injunction against a judge.' Considerations of comity must still apply to limit the need for such an intrusion." *Id.* at *6 (quoting *Pulliam*, 466 U.S. at 539). Fair enough: The Court accepts that a declaratory judgment must be in place before any injunctive relief can be ordered.

As to quasi-judicial immunity, the only post-1996 case Plaintiffs cite is *Moore v. Urquhart*, 899 F.3d 1094 (9th Cir. 2018). There a putative class action concerned "the constitutionality of a [State of] Washington statute that allow[ed] tenants to be evicted from their homes without a court hearing." *Id.* at 1097. The sheriff of King County was apparently

33

responsible for enforcing the statute by executing eviction orders. *See id.* The Ninth Circuit refused to apply quasi-judicial immunity to shield the sheriff from equitable relief because, in the appellate court's view, the sheriff had executed the eviction orders in a "quintessentially executive function, not a judicial one." *Id.* at 1105-06. The court's conclusion was based in part on the observation that "[e]xtending immunity from injunctive relief to executive branch officials like the Sheriff would strip federal courts of the authority to enjoin enforcement of any facially unconstitutional state statute that is invoked at the behest of private parties through the courts." *Id.* at 1105. This Court will not undertake to grapple with the entire rationale of the *Moore* decision.

It is true that, like the sheriff in *Moore*, Defendant County and its officers for most purposes are members of the state's executive branch, not its judiciary. Nevertheless, unlike the sheriff in *Moore*, the County in this particular instance, that is, the Pretrial Division, clearly functions in a judicial, rather than executive, capacity responsive to the Judges' decisions—it does not act on behalf of other executive officials—when it evaluates criminal defendants for possible acceptance into its pretrial release program pursuant to judicial referrals. *See* ECF No. 128 at 5-6 ("In this case, from all appearances, the Pretrial Division resembles the many court employees who have previously been afforded judicial immunity for carrying out a judge's order" because "it is virtually impossible to conclude that [the Pretrial Division] is not acting 'in obedience to' and under the 'direction' of the judges.").

On this point, the Court joins courts across the country that have confronted similar circumstances to conclude that Plaintiffs' claims for injunctive relief may not proceed against Judges or their affiliates, in view of the doctrines of judicial and quasi-judicial immunity, and based on considerations of federal-state comity. *See, e.g., Cain v. City of New Orleans*, 184 F.

Supp. 3d 379, 391 (E.D. La. 2016) (applying quasi-judicial immunity to court administrator and dismissing claims for monetary and injunctive relief); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (similar); *Nollet v. Justs. of the Trial Ct.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000) (similar).

What about Plaintiffs' pending claims for declaratory relief against the Judge and County Defendants? To be sure, under the Declaratory Judgment Act, a federal court may issue a declaratory judgment if it serves a "useful purpose in clarifying and settling the legal relations in issue." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

But serious questions of federal-state relations would arise if a federal court were to take over the restructuring and subsequent monitoring of how state Judges and their affiliates engage in pretrial release decisionmaking.

More important, for all the reasons stated in connection with the Court's judicial and quasi-judicial immunity analysis, there is no discernible basis on which a declaratory decree against Defendants could be fashioned, the violation of which could sustain a finding that a federal constitutional violation has occurred. The inevitable determination would still be that the Judge Defendants and, by extension, the County Defendant still enjoy judicial and quasi-judicial immunity with respect to their pretrial release decisionmaking. In other words, ultimately, there would be no declaratory relief to be had.

Accordingly, the Court will **GRANT** the Judge and County Defendants' Motions for Judgment on the Pleadings. The Court will accordingly cancel the preliminary injunction hearing scheduled for April 3, 2024.

## V.    Conclusion

For the foregoing reasons, the Court **ORDERS** that:

1. The Subpoenaed Judges' Motion to Quash (ECF No. 175) is **GRANTED**;

2. The County's Motion for Judgment on the Pleadings (ECF No. 173) is **GRANTED**;

3. The Judge Defendants' Motion for Judgment on the Pleadings (ECF No. 174) is **GRANTED**;

4. The preliminary injunction hearing currently scheduled for April 3, 2024 is **CANCELLED**;

5. Final judgment is **ENTERED** in favor of all Defendants and against all Plaintiffs; and

6. The Clerk of Court is directed to **CLOSE** this case.

A separate Order will **ISSUE**.

March 29, 2024

_____
**PETER J. MESSITTE**
U.S. District Judge

36

**JA1533**

**ATTACHMENT A**

(Previously appended to ECF No. 90)

Without intending to formally define or limit the field of inquiry, the Court believes it may be helpful to suggest to the parties some questions that might aid exploration of how the pretrial release process in Prince George's County might be reformed, if at all. Thus, for example:

1. Are some release considerations absolutely critical, while others are less so? For example, in the case of Plaintiff Butler, state defense counsel suggested in a bail review that he was not recommended for release simply because the Pretrial Division determined that the charge against him, i.e., murder, was too serious. ECF No. 83-4 at 57–59. Is the nature of the charged offense alone a proper basis for the Pretrial Division (or even a Trial Judge) to deny pretrial release? What relevance, if any, should the nature of the charge or charges against the defendant have on the pre-release decision? Is the nature of the charge more appropriately taken into account in determining the individual's danger to the community and risk of flight if released?

2. Insofar as a fixed address and a telephone are deemed critical for purposes of maintaining contact with a releasee, to what extent would the non-fulfillment of those factors automatically result in an individual not being released? What is or should be done with respect to a "homeless" detainee? Or one who cannot afford a telephone? Can separate arrangements be made for them, e.g., placement in a halfway house?

3. How many calls per day, per week, etc. should be made by the Pretrial Division to verify release considerations while the individual remains detained? The transcript of the June 17, 2022 bail hearing for Plaintiff Laguan-Salinas suggests that the Pretrial Division took

1

more than a month to review his case. ECF No. 85-4 at 41, 46–47. Is that appropriate? Is it too long? How soon after the Judge refers the defendant to the Pretrial Division should the process of verification by the Pretrial Division begin?

4. Should the Pretrial Division be required to report back to the Bail Judge with respect to its efforts to determine an individual's release status both when it has determined that a detainee should be released and when it has determined that the individual should be detained? Should a form be used? What information should the form contain? With what level of specificity should the Pretrial Division's efforts be documented? With what frequency should the form be sent to the judge? Must the judge have to periodically sign off on the individual's release or his or her continued detention?

5. Should defense counsel be given expedited attention by the Pretrial Division when calling to inquire as to the status of a client/detainee, e.g., should counsel receive a response within 24 hours?

6. To what extent has limited manpower in the Pretrial Division been the reason that pretrial release decisions may be delayed? Is that an appropriate justification for delaying release decisions? What level of manpower would permit more expedited pretrial release decision-making?

\*     \*     \*

To repeat: these questions are meant to be suggestive only. They may or may not be deemed relevant and they certainly may be modified by the parties. Ultimately, however, should the Court determine that the pretrial release process is constitutionally deficient in one respect or

2

**JA1535**

another, the Court will be looking to the parties to suggest what remedies, including what enforcement mechanisms, they believe would be appropriate to satisfy constitutional requirements.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**CHRISTOPHER BUTLER**, *et al.*,
individually and on behalf of a class of
similarly situated persons,

      Plaintiffs,

      v.

**PRINCE GEORGE'S COUNTY,
MARYLAND**, *et al.*,

      Defendants.

Civil No. **22-1768 PJM**

## ORDER

Having considered the Motion of Judge Defendants LaKeecia Allen and Robert Heffron, Jr. (the "Subpoenaed Judges") to Quash Subpoenas for In-Person Deposition Testimony and for Protective Order Or, in the Alternative, Motion that Depositions Proceed by Written Questions (ECF No. 175), as well as the Judge and County Defendants' respective Motions for Judgment on the Pleadings (ECF No. 173, 174), and the Oppositions and Replies thereto (ECF Nos. 185, 186, 191, 193), it is, this 29 day of March, 2024, for the reasons stated in the accompanying Memorandum Opinion, by the United States District Court for the District of Maryland,

**ORDERED**:

1. The Subpoenaed Judges' Motion to Quash (ECF No. 175) is **GRANTED**;

2. The County's Motion for Judgment on the Pleadings (ECF No. 173) is **GRANTED**;

3. The Judge Defendants' Motion for Judgment on the Pleadings (ECF No. 174) is **GRANTED**;

1

4. The preliminary injunction hearing currently scheduled for April 3, 2024 is **CANCELLED**;

5. Final judgment is **ENTERED** in favor of all Defendants and against all Plaintiffs; and

6. The Clerk of Court is directed to **CLOSE** this case.

PETER J. MESSITTE
U.S. District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| CHRISTOPHER BUTLER, *et al.*, individually and on behalf of a class of similarly situated persons, | |
| Plaintiffs, | |
| v. | Case No. 8:22-cv-1768 PJM |
| PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*, | |
| Defendants. | |

**NOTICE OF APPEAL**

Pursuant to 28 U.S.C. § 1291, Plaintiffs appeal to the United States Court of Appeals for the Fourth Circuit from this Court's orders dismissing the individual County Defendants, Doc. 80; granting in part and denying in part Defendants' Motions to Dismiss, Doc. 91; denying Plaintiffs' Motion to Reconsider, Doc. 129; granting the Defendant Judges' Motion to Quash, granting Defendants' Motions for Judgment on the Pleadings, canceling the hearing on Plaintiffs' Motion for Preliminary Injunction, and issuing a final judgment dismissing the case, Doc. 212; and all opinions, orders, and decisions embedded therein.

(signatures on the following page)

**JA1539**

Respectfully submitted this 26th day of April, 2024.


/s/ Jeremy D. Cutting
Jeremy D. Cutting*
Sumayya Saleh*
Jeffrey D. Stein*
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009
(202) 932-1278
sumayya@civilrightscorps.org

Seth Wayne*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
AND PROTECTION
GEORGETOWN UNIVERSITY LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
(202) 662-9042
sw1098@georgetown.edu

Howard M. Shapiro (D. Md. Bar 14731)
Donna Farag*
Sonika Data*
Britany Riley-Swanbeck (D. Md. Bar 21843)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 663-6606
howard.shapiro@wilmerhale.com

Robert Boone*
Thomas Bredar (D. Md. Bar 21635)
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
robert.boone@wilmerhale.com

Sarah E. Maciel*
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real
Suite 400
Palo Alto, CA 94306
(650) 600-5048
sarah.maciel@wilmerhale.com


* admitted *pro hac vice*

*Counsel for Plaintiffs*