No. 24-1380
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT
_____

## ROBERT FRAZIER, *et al.*,

*Plaintiffs-Appellants*,

## v.

## PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,

*Defendants-Appellees.*
_____

On Appeal from the United States District Court for the District of Maryland
(Peter J. Messitte, District Judge)
_____

## BRIEF OF APPELLEE
## PRINCE GEORGE'S COUNTY, MARYLAND
_____

RHONDA L. WEAVER
County Attorney for Prince George's
County, Maryland

SHELLEY L. JOHNSON
DEPUTY COUNTY ATTORNEY
ANDREW J. MURRAY
Associate County Attorney
1301 McCormick Drive, Suite 4100
Largo, Maryland 20772
@SLjohnson@co.pg.md.us
(301) 952-5225
(301) 952-3071 (facsimile)

August 23, 2024                    Attorneys for County Appellee

# TABLE OF CONTENTS

Page

ISSUES PRESENTED FOR REVIEW ..................................................................2

SUMMARY OF ARGUMENT .........................................................................3

ARGUMENT ........................................................................................4

I. THE STANDARD OF REVIEW IS DE NOVO. ........................................4

II. THE COMPLAINT FAILS TO ASSERT FACTS ESTABLISHING THAT THE
COUNTY JAIL'S ACTIONS OF DETERMINING ELIGIBILITY INTO ITS PRETRIAL
PROGRAM ARE NOT QUASI-JUDICIAL ENTITLING IT TO IMMUNITY. .....................4

    A. "Functional Approach" entitles County to quasi-judicial immunity ............ 6

    B. County effectuates Judges' Orders .............................................. 8

    C. The County complies with Rule 4-216.1……………………………..10

        i. County conduct explicitly directed by Maryland Rules.................. 13

        ii. County's Pretrial Release Program's conduct is judicial conduct .... 15

III. ANY ERROR COMMITTED BY THE DISTRICT COURT WAS HARMLESS
BECAUSE PLAINTIFFS' FAILED TO ALLEGE FACTS DEMONSTRATING A DUE
PROCESS ENTITLEMENT TO SUCCESSFULLY PARTICIPATE IN THE JAIL'S
VOLUNTARILY PROVIDED PRETRIAL RELEASE PROGRAM. ...............................17

**IV. THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS OF THE
THEN RELEASED PLAINTIFFS.** .....................................................25

V. THE DISTRICT COURT PROPERLY DENIED EQUITABLE RELIEF BECAUSE THE
RELIEF SOUGHT WAS AGAINST THE IMPROPER PARTY .....................................25

VI. CONCLUSION...........................................................................26

REQUEST FOR ORAL ARGUMENT ..................................................27

CERTIFICATE OF COMPLIANCE ...................................................27

ADDENDUM ....................................................................... 28-53

# TABLE OF AUTHORITIES

Page

Cases

*Baugh v. Woodward*, 604 F. Supp. 1529 (E.D. NC 1985)......................................23
*Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)..............................................6, 8
*Burns v. Reed*, 500 U.S. 478, 485 (1991) ...........................................................6, 8
*Bush v. Rauch*, 38 F.3d 842, 847 (6th Circ. 1994) ..................................................12
*Cf. Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464–65, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) ................................................................................19
*Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) ..................................................................................22
*County of Sacramento v. Lewis*................................................................................22
*Daves v. Dallas County, Texas*, 22 F.4th 522, 540-41 (5th Cir. 2022)......... 17-18, 26
*Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)...22
*Forrester v. White*, 484 U.S. 219, 229 (1988) ......................................................6, 8
*Gerstein v. Pugh,* 95 S. Ct. 854 (1975)....................................................................19
*Gilmore v. Bostic*, 636 F.Supp.2d 496 (2009) .................................................. 6-7, 9
*Goluzek v. H.P. Smith Paper Co.*, No. 93 C 5329 1993 WL 358160 at *2 (N.D. Ill. Sept. 14, 1993)...................................................................................7, 9
*Hawkins v. Freeman*, 195 F.2d 721-723, 732, 747-748 (4th Cir. 1999) ........... 20-25
*Howard v. Food Lion Inc.*, 232 F.Supp.2d 585, 594 (M.D.N.C. 2002) ..................13
*Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) ................................................12
*Monell v. Dept. of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct 2018, 2036 (1978), 98 S.Ct at 2037-38.....................................................................17
*O'Donnell v. Harris County*, 892 F.3d 147, 156 (5th Cir. 2018) ................ 17-18, 25
*Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999).........................................13
*Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298 (1986) ...............................................................................................................17
*Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) ..................................................................................19
*Sanchez v. Hill*, 2022 WL1178572 (D. Wyoming April 15, 2022)........................23
*Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989)....................................12
*Shifflette v. Baltimore Cnty. Circuit Courts*, No. 1:21-CV-3074-LKG, 2022 WL 36450, at *2, 11 (D. Md. Jan. 4, 2022)................................................... 12-13
*Spears v. Jones*, 2012 WL 4460514 (W.D. Va. 2012) ...........................................23
*Traversa v. Ford*, 718 F. Supp. 2d 639 (2010) ....................................................6, 8
*Wiley v. Buncome County*, 846 F.Supp.2d 480....................................................6, 8

Statutes

Maryland Rule of Criminal Procedure 4-216.1............................................................4-25
Maryland Annotated Code, Correctional Services Article, Subtitle 7,
    §11-702, §11-703, and §11-726...........................................................................22
Tex. Code Crim. Pro. arts. 2.13, 2.16, 2.18 ......................................................18, 25
Tex. Loc. Gov't Code § 351.041(a) .........................................................................18

No. 24-1380
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
_____

**CHRISTOPHER BUTLER, *et al*.,**

*Plaintiffs-Appellants*,

v.

**PRINCE GEORGE'S COUNTY, *et al*.,**

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Maryland
(Peter J. Messitte, District Judge)
_____

**BRIEF OF APPELLEE PRINCE GEORGE'S COUNTY, MARYLAND**
_____

## ISSUES PRESENTED FOR REVIEW

1.     Did the District Court properly dismiss Plaintiffs' suit against the County based on the application of Quasi-Judicial Immunity?

2.     Was any error committed by the District Court harmless because appellants had no due process entitlement to successfully participate in the jail's voluntarily provided pretrial release program?

3.     Did the District Court properly dismiss Plaintiffs' suit for equitable relief against the County because they sued the wrong party?

4. Did the District Court properly dismiss the named Plaintiffs who had been released from custody?

## STATEMENT OF THE CASE

Prince George's County, Maryland, accepts, and hereby adopts, the statement of the case as presented in the Appellee Judge's Brief. The County offers the following additional statement of facts:

Of the State of Maryland's twenty-three counties and Baltimore City, six county jails do not offer a pretrial release program. JA 461. Of those that do, the jail administrator or local sheriff establishes the criteria for their programs. *Id.*

# SUMMARY OF ARGUMENT

The District Court properly granted the County's motion for judgment on the pleadings, thereby dismissing Plaintiffs' claims. The Plaintiffs failed to allege facts demonstrating the County jail's actions in accepting referrals from the trial court judges for evaluation of eligibility into the jail's pretrial release program is a non-judicial act in violation of the Maryland Rules of Criminal Procedure. In fact, they concede that the County jail was performing a judicial function by asserting that the Courts were abdicating their constitutional obligations to set conditions of pretrial release and instead allowed the jail's pretrial release program to make the decisions. Accordingly, the Court properly applied quasi-judicial immunity to the County and dismissed Appellants' claims.

Further, Plaintiffs failed to allege facts demonstrating that they have a constitutional right of automatic eligibility into the jail's pretrial release program. As a matter of law, they do not. Additionally, the District Court properly dismissed the claims of the released Plaintiffs. Finally, the District Court properly dismissed the Plaintiffs' claims for equitable relief because the relief they sought was against the incorrect party.

# ARGUMENT

## I.   THE STANDARD OF REVIEW IS DE NOVO.

The County adopts the Judge Appellees statement of the standard of review.

## II.   THE COMPLAINT FAILS TO ASSERT FACTS ESTABLISHING THAT THE COUNTY JAIL'S ACTIONS OF DETERMINING ELIGIBILITY INTO ITS PRETRIAL PROGRAM ARE NOT QUASI-JUDICIAL ENTITLING IT TO IMMUNITY.

The District Court correctly granted the County's motion for judgment on the pleadings and found the County enjoyed quasi-judicial immunity. The District Court correctly focused on the function performed by the County's Pretrial Services Division and found it was judicial in nature. Plaintiffs concede this point when they argue that the Judicial Defendants improperly delegated their duties to Prince George's County (hereinafter County). However, Maryland Rule of Criminal Procedure 4-216.1 contemplates the procedure implemented in the County where a judge refers an individual to the County's Pretrial Service Division for evaluation for eligibility into its pretrial release program.

Plaintiffs also claim the District Court erred in finding the County enjoys quasi-judicial immunity when the County renders pretrial release decisions based on its own criteria, without judicial control, public transparency, or procedural protections. App. Br. p. 7. Plaintiffs contend the Court has all necessary information it needs at bond review hearings when it makes referrals to the jail's pretrial release and the County should just place a GPS monitor on the individual and release them.

4

App. Br. p. 27. But Plaintiffs conveniently ignore the condition precedent to release explicitly stated in Rule 4-216.1 requiring the County's Pretrial Services Division to "agree to supervise the defendant and assist in ensuring the defendant's appearance in court." And "the [District and Circuit Court Judges] may commit the defendant generally to the supervision by pretrial services division operating in the county, subject to more detailed requirements of that unit appropriate to the supervision." Md. Rule 4-216.1(d)(2)(K), Committee note. The Rule explicitly illustrates that the Judges and the County's Pretrial Release Program work hand-in-hand to facilitate the release of a detained individual on pretrial release.

First, Plaintiffs' contention failed to demonstrate that the County violated any court order for their immediate release. Plaintiffs also fail to consider the realities that Judges often rely on subordinate for information in rendering decisions. And finally, Plaintiffs ignore the procedural safeguards demonstrated by the record that most, if not all, Plaintiffs availed themselves to multiple bond hearings where conditions of pretrial release were revisited.

**A. "Functional approach" entitles County to quasi-judicial immunity**.

The District Court properly found the County enjoys quasi-judicial immunity because, like a Judge's subordinate, the County's Pretrial Services Division effectuates the Judge's orders by evaluating the criminal defendant for eligibility into its program pursuant to Maryland Rule 4-216.1(f). First, Plaintiffs contend quasi-judicial immunity only applies to individual officials sued in their official capacities and municipal bodies, sued under §1983, cannot be entitled to an absolute immunity.

As the District Court found, the Supreme Court applies the "functional approach" that examines the nature of the function performed, and not the identity of the actor who performed it in determining whether immunity applies. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), *Forrester v. White*, 484 U.S. 219, 229 (1988); *Burns v. Reed*, 500 U.S. 478, 485 (1991). In cases where individuals and entities have been sued in the professional capacity, the courts have found quasi-judicial immunity applied for task performed in further of a judge's function. *See Wiley v. Buncome County*, 846 F.Supp.2d 480 (W.D.N.C./ 2012)(County Clerk enjoy quasi-judicial immunity to pretrial detainee's 1983 claim.); *Traversa v. Ford*, 718 F. Supp. 2d 639 (2010)(employees of state Commission on Human Relations entitled to quasi-judicial immunity for alleged civil rights violations in delaying investigation and denial of his disability discrimination claim.); *Gilmore v. Bostic*,

6

636 F.Supp.2d 496 (2009)(West Virginia parole board members enjoyed quasi-judicial immunity to prison inmate's constitutional claims.); *Goluzek v. H.P. Smith Paper Co.,* No. 93 C 5329 1993 WL 358160 at \*2 (N.D. Ill. Sept. 14, 1993) (finding that a committee of the Supreme Court of Illinois charged with administering attorney discipline was a "quasi-judicial" entity that could invoke immunity).

Plaintiffs contend the County's Pretrial Services Division does not act "quasi-judicially' when it applies is own policies to determine whether, when, and under what conditions detainees will be released before trial. App. Br. p. 20. However, Plaintiffs' contention utterly ignore the realities present in the County and many other jurisdictions that Judges rely on information from subordinates and other agencies to make decisions on pretrial release. And like a law clerk that prepares a Judge's docket each day, the County's Pretrial Services Division prepares an Intake Fact Sheet to assist the judges in making pretrial release decisions, but that often times is not complete due to circumstances beyond their control (i.e. verifying address, working phone, employment, victim fears, etc.). And instead of forcing continued detainment until the court's docket allows for another bail review hearing, the court issues a conditional release order dependent upon the results of pretrial release eligibility determination by the Pretrial Services Division. Thus, the District Court properly focused on the tasks performed and the finding of quasi-judicial immunity must be affirmed.

## B. County Effectuates Judge's Orders.

As correctly found by the District Court, the County enjoys quasi-judicial immunity because, like a Judge's subordinate, the County's Pretrial Services Division effectuates the Judge's orders by evaluating the criminal defendant for eligibility into its program pursuant to Maryland Rule 4-216.1(f). First, Plaintiffs contend quasi-judicial immunity only applies to individual officials sued in their official capacities and municipal bodies, sued under §1983 cannot be entitled to an absolute immunity.

As the District Court properly noted, the Supreme Court applies the "functional approach" that examines the nature of the function performed, and not the identity of the actor who performed it in determining whether absolute immunity applies. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), *Forrester v. White*, 484 U.S. 219, 229 (1988); *Burns v. Reed*, 500 U.S. 478, 485 (1991). In cases where individuals and entities have been sued in their professional capacities, the courts have found that quasi-judicial immunity applied for tasks performed in furtherance of a judge's function. *See Wiley v. Buncome County*, 846 F.Supp.2d 480 (W.D.N.C./ 2012)(County Clerk enjoy quasi-judicial immunity to pretrial detainee's 1983 claim.); *Traversa v. Ford*, 718 F. Supp. 2d 639 (2010)(State Commission on Human Relations employees entitled to quasi-judicial immunity for alleged civil rights violations in delaying investigation and denial of his disability discrimination

claim.); *Gilmore v. Bostic*, 636 F.Supp.2d 496 (2009)(West Virginia parole board members enjoyed quasi-judicial immunity to prison inmate's constitutional claims.); *Goluzek v. H.P. Smith Paper Co.*, No. 93 C 5329 1993 WL 358160 at *2 (N.D. Ill. Sept. 14, 1993) (finding committee of the Supreme Court of Illinois charged with administering attorney discipline was a "quasi-judicial" entity that could invoke immunity).

Plaintiffs contend the County's Pretrial Services Division does not act "quasi-judicially' when it applies its own policies in private to determine whether, when, and under what conditions detainees will be released before trial. App. Br. p. 20. However, Plaintiffs' contention ignores the simple fact that Judges, in the County and everywhere, rely on information from subordinates and other agencies to make decisions. The Pretrial Services Division prepares an Intake Fact Sheet that often times is not complete due to circumstances beyond their control (i.e. verifying address, working phone, employment, victim fears, etc.). And instead of continued detainment until the court's docket allows for another bail review hearing, the court issues a conditional release order dependent upon the results of pretrial release eligibility determination by the Pretrial Services Division. Thus, the District Court properly focused on the tasks performed and the finding of quasi-judicial immunity must be affirmed.

### C. The County complies with Rule 4-216.1.

Plaintiffs' claims are premised on the "County designs and administers its own internal policies for the timing and outcome of pretrial release and detention decisions without judicial oversight, it does not operate as a mere arm of the court, nor does it apply procedural safeguards or any other trappings of 'judicial' action'." App. Br. p. 23. Such contention completely ignores Maryland Rule of Civil Procedure 4-216.1 and the record in this case.

When a County Judge refers/orders a criminal defendant to the County's Pre-Trial Release Program at a bond review hearing, it commits him/her to the custody or supervision of the jail that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court. Rule 4-216.1(d)(2)(K). The Committee note that follows this section further permits "the [Court] to commit the defendant generally to supervision by a pretrial services unit, operating in the county, <u>subject to more detailed requirements of that unit appropriate for supervision</u>." Md. Rule 4-216.1(d)(2)(K)(emphasis added), JA265-369.

Rule 4-216.1 explicitly permits the County's Pretrial Services Division to evaluate each individual by its requirements to ensure appropriate supervision, presence at their next court date, protection of victims, witnesses, and community, and maintain the integrity of the judicial process. Plaintiffs in this matter were not charged with petty crimes. On the contrary, Plaintiffs represent individuals charged

with serious criminal offenses like murder (Butler), armed robbery (D.P.), felon in possession of handgun (Frazier), possession of CDS and possession of handgun (Hernandez and Williams), Assault 1st degree (Davis), Assault 2nd degree (Sharp), Assault 2nd degree, attempted home-invasion – two separate cases (Laguan-Salinas) and assault 1st degree (Worthington). JA256-262. Also, Plaintiffs Frazier, D.P., Sharp, and Williams had detainers from other jurisdictions. JA265-369, JA. 1542-1551.

To effectuate the general principle outlined by Rule 4-216.1, and the Court's order/referral to the County's Pretrial Release Division, the County evaluates each individual pursuant to a "more detailed requirements" to ensure appropriate supervision as explicitly stated in the Rule and following Committee note. To believe the County refuses to accept defendants for supervision based on arbitrary reasons totally ignores the record in this matter. Nor has Plaintiffs identified any instance where one of the Plaintiffs, who were all represented by counsel, were denied pretrial release following the Court's order for his/her release forthwith.

Denials of pretrial release were based solely on the legitimate grounds of detainers from other jurisdictions, no verifiable address or working telephone. JA104-105, 1550-1551. Such requirements could never be considered arbitrary or outrageous when the goal is to ensure the safety of the victim, witnesses, the community and to ensure the individual's appearance at their next court date, which

upholds the integrity of the judicial process. Thus, the Judges and the County's Pretrial Services Division work hand-in-hand to effectuate the principles of the Rule 4-2-16.1.

Judicial immunity is extended "to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.*, citing *Bush v. Rauch*, 38 F.3d 842, 847 (6th Circ. 1994). The court in *Shifflette* appears to have foreseen this case when it recognized that "the doctrine of absolute quasi-judicial immunity has been further adopted and extended to court support personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts....' " *Shifflette v. Baltimore Cnty. Circuit Courts*, No. 1:21-CV-3074-LKG, 2022 WL 36450, at *2, 11 (D. Md. Jan. 4, 2022), quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (quoting *Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989)).

In *Shifflette*, a self-represented plaintiff, Roger Lee Shifflette, filed a civil rights complaint against a Baltimore County Court, a Baltimore County Judge and the Clerk of the Court when the judge denied his petition for writ of habeas corpus without a hearing. *Shifflette v. Baltimore Cnty. Circuit Courts*, No. 1:21-CV-3074-LKG, 2022 WL 36450, at *2, 11 (D. Md. Jan. 4, 2022). In finding quasi-judicial

immunity applied to the Clerk of the Court, the Court identified three factors: "(1) whether the official's function [is] similar to those of a judge; (2) whether a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation; and (3) whether adequate procedural safeguards exists to protect against constitutional deprivations." *Id*. at *2, quoting *Howard v. Food Lion Inc.*, 232 F.Supp.2d 585, 594 (M.D.N.C. 2002) (citing *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999).

The court found the Clerk of the Court's act of docketing of an order dismissing plaintiff's petition was an official act required by a judge satisfying the first factor. *Id*. As to the other two factors, the court found the Clerk of the Court must be permitted to perform her duties without fear of harassment brought by unwarranted lawsuits and plaintiff's allegations of due process violations may be address through the normal course of appellate review. *Id*.

### i. County conduct explicitly directed by Maryland Rules.

As in *Shifflette*, the County, was extended absolute quasi-judicial immunity because it, through its employees, completed an evaluation for eligibility into its pretrial release program as ordered by Court. Despite Plaintiffs' allegations that the judges have not explicitly directed the County's conduct, the record reflects that no such finding by the state court. Nor has the Judicial Defendants asserted that their orders are not being followed by the County. On the contrary, the record reflects

that in the event an individual is not accepted into the County's pretrial release program, their counsel filed a motion for another bond hearing where the judge revisited conditions for his/her release.  JA. 265-369,  JA. 1542-1551.

The County's Pretrial Release Division utilizes factors as outlined in Rule 2-416.1(f)(1) and (2).  A plain reading of the rule demonstrates that the Court and the County's Pretrial Services Division work hand-in-hand to facilitate the release of criminal defendants on pretrial release.  The Pretrial Services Division assists the judge by performing evaluating for eligibility into its pretrial release program.  This allows the Court to make well-informed decisions regarding pretrial release promoting the general principles of the pretrial release while protecting the public.

The fact that the Committee Note for Rule 4-216.1(d)(2)(K) explicitly references such a pretrial release program demonstrates the State Courts recognition of a need for such a program to perform the function.  Finally, contrary to Plaintiffs' assertions that there are no procedural safeguards to protect against constitutional deprivations, the record demonstrates each Plaintiff received due process in the form of multiple bond review hearings and were represented by counsel.  JA. 265-369, JA. 1542-1551.  It must be noted that none of the Plaintiffs allege they were denied another bond review hearing or reconsideration of bond conditions.  Thus, there are adequate procedural safeguards (i.e. subsequent bond review hearings) that all Plaintiffs were afforded to protect against any alleged constitutional deprivations.

Thus, based on Rule 4-216.1 and the record, the County's Pretrial Services Program is an arm of the judiciary in the limited context of assisting the Court in facilitating the release of individuals on pretrial release. Rule 4-216.1 explicitly permits the County's Pretrial Services Program to reject an individual based on their criteria. See Md. Rule 4-216.1(d)(2)(K) and (f)(1). Neither the Defendant Judges nor the County contend they do not comply with the Rule nor is it alleged by the Plaintiffs. Therefore, based on the plain language of Rule 4-216.1 and the record in this matter, the District Court's finding that the County enjoys quasi-judicial immunity must be affirmed.

      ii.    <u>County's Pretrial Release Program's conduct is judicial conduct</u>.

Plaintiffs contend "the County harms them through its policies governing its own internal policies and practices following a pretrial release authorization, which causes Plaintiffs to remain unlawfully detained without constitutionally adequate process." App. Br. p. 27. Again, there is no evidence in the record of the County defying a Court order for the immediate release of any Plaintiff or anyone else. Nor are there any allegations nor evidence that any Plaintiff was denied a bond review hearing when requested due to the County's Pretrial Service Unit rejection into their program. As to the criteria used to evaluate criminal defendants referred to the County's Pretrial Services Unit, the factors utilized in evaluating are based on Rule 4-216.1(f)(2).

According to Plaintiff, the County should not disqualify an individual from its program because he/she lives in adjoining county or are unhoused. Plaintiffs argue these factors are already known by the Judge. App. Br. p. 27. Without piercing the judicial deliberative process privilege, logic dictates that the Court may hope that the Pretrial Services Program could find housing for the individual with a relative or other program in the County. But, the reality of limited resources precludes pretrial release investigators from traveling into multiple neighboring jurisdictions as plaintiffs would have them do and have no authority to take violators into custody in those jurisdictions.

However, what is clear is that the criminal defendant is committed to the custody of the County jail as a condition precedent to release. JA265-369, JA. 1542-1551. When the Court commits an individual to the jail's custody, it has custody and control over the criminal defendant. If released on pretrial release, the jail has committed to ensure the defendant complies with his/her conditions of release. Requirements of a County residence and a working phone in the residence to permit the Pretrial Release Program employees to verify compliance are reasonable and basic requirements. The integrity of the judicial process would be irrevocably harmed and rendered utterly dysfunctional if the Court released individuals on pretrial release who had no manner of receiving court notices of court dates or, in

the event of failure to appear, the Court order issued in the County having no enforceable effect in the adjoining jurisdiction.

The criteria utilized by the Pretrial Services Program ensures individuals released can abide by the conditions of release and are routinely monitored to ensure the safety of victims, witnesses and the community.  A review of the criteria shows that it mirrors the factors outlined in Rule 4-216.1(f)(2) and more importantly, the information is verified as being accurate by the person undertaking the responsibility of monitoring that individual.    JA. 428-457.    And more importantly, any recommendation made by the  Pretrial Services Program regarding denial of eligibility may be reviewed by the Court at the next bond hearing where conditions of release may be modified.  Thus, the Court is the ultimate authority on pretrial release.

**III.** **ANY ERROR COMMITTED BY THE DISTRICT COURT WAS HARMLESS BECAUSE PLAINTIFFS FAILED TO ALLEGE FACTS DEMONSTRATING A DUE PROCESS ENTITLEMENT TO ENTRY INTO THE JAIL'S PRETRIAL RELEASE PROGRAM.**

Prince George's County, Maryland, as a municipality, can only be liable for money damages under 42 U.S.C §1983 for *its* unconstitutional policies, practices or customs (emphasis added).  *Monell v. Dept. of Social Services*, 436 U.S. 658, 691-94, 98 S.Ct 2018, 2036 (1978), 98 S.Ct at 2037-38; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80, 106 S.Ct. 1292, 1298 (1986).  Prince George's County cannot, however, be liable for the decisions and policies of the state judiciary. See *Daves v.*

*Dallas County, Texas*, 22 F.4th 522, 540-41 (5th Cir. 2022)(Judges in Texas are state officials and the County could not be liable under §1983 for judges' actions in setting bail); See also *O'Donnell v. Harris County*, 892 F.3d 147, 156 (5th Cir. 2018), *overruled* by *Daves v. Dallas County*, supra. ("We agree with the County that its Sheriff (the local jailor) is not an appropriate party for attaching municipal liability, however. The Sheriff does not have the same policymaking authority as the County Judges. To the contrary, the Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant—even if prisoners are committed "for want of bail." *See* Tex. Code Crim. Pro. Arts. 2.13, 2.16, 2.18; Tex. Loc. Gov't Code § 351.041(a) (noting the Sheriff's authority is "subject to an order of the proper court"). State statutes, in other words, do not authorize the County Sheriff to avoid executing judicial orders imposing secured bail by unilaterally declaring them unconstitutional. Accordingly, the County Sheriff does not qualify as a municipal policymaker under § 1983"). The judges in Maryland are State, not County, officials. Thus, the Plaintiffs must point to a source of due process owed by the County itself. This they cannot do.

Plaintiffs, without citation to any authority, simply assert the County has no authority to make pretrial release decisions and their "fundamental liberty interest" is thereby violated. Moreover, Plaintiffs contend the County judiciary abdicates its constitutional obligations to set the terms of an arrested person's pretrial release and,

despite this non-delegable duty that it delegates to the executive branch, the County is liable. However, Plaintiffs assiduously avoid any discussion of the source of their contention that the County owes them a constitutional duty of due process. This has forced Plaintiffs to improperly phrase the issue in the manner required by law. This is no mistake because, when properly phrased, it is clear that Plaintiffs have no substantive liberty interest in participating in a non-mandated, gratuitously provided pretrial release program offered by a jail.

Nothing in Federal or Maryland law requires a local jail to offer a pretrial release program. Plaintiffs have pointed to no authority suggesting otherwise.[1] In Maryland, six of its 24 counties do not have a pretrial release program. JA. 462. The Fourth Circuit Court of Appeals has made it clear that substantive due process protection is only created by the Constitution. *Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring). And such right is certainly not created by conduct of state officials. *Cf. Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 464–65, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) (holding that constitutionally protected liberty interest in

---

[1] Even Appellants' repeated mantra in the pleadings below and in their brief before this court that the detainees are "presumptively innocent" is misplaced in the context of this case. The Supreme Court long ago held that the 4th Amendment, not the 14th Amendment, was the source for analysis of continued detention beyond arrest and that probable cause (not the presumption of innocence) was the touchstone for required extended detention following arrest. *Gerstein v. Pugh,* 95 S. Ct. 854 (1975).

commutation of prisoner's sentence "cannot be created—as if by estoppel"—from consistent practice of commutation by state officials in "most" cases) (quotation omitted). *Hawkins v. Freeman*, 195 F.2d 732, 748 (4th Cir. 1999).

Further, analyzing a substantive due process claim (at least when legislation is the source of the claim) starts with a "careful description" of the asserted liberty right or interest that avoids overgeneralization in the historical inquiry. *See id.* at 722–23, 117 S.Ct. 2258 (narrowing descriptions used by lower court and urged by claimants in defining liberty interest allegedly violated by assisted-suicide legislative ban). General references like "freedom from unjust incarceration," and the "right to be free from arbitrary incarceration," are issue-begging generalizations that cannot serve the inquiry. *Hawkins v. Freeman*, supra at 747. This court rephrased the question in *Hawkins* as whether a parolee had a substantive due process right to remain free on erroneously granted parole so long as he did not contribute to or know of the error and has for an appreciable time remained on good behavior to the point that his expectations for continued freedom from incarceration had crystalized. *Id*.

Plaintiffs here have engaged in the same "issue begging generalizations" description of a fundamental right asserted. It is not one simply to be free from pretrial incarceration but, rather:

> whether plaintiffs who are committed by court order
> to the custody of a local jail are entitled to automatic

> entry into a non-legally mandated pretrial release program offered and administered by a local jail and where the court has authorized, but not ordered, their release *if* the detainee qualifies under the jail's criteria, and where if not qualified the Court is subsequently notified so that it may reconsider the conditions of pretrial release that it set.

The answer is no – they have no concrete or "crystalized" expectation that they will be released based on the criteria established and administered by jail officials. The following discussion illustrates why.

In *Hawkins v. Freeman*, infra, a man (Hawkins) was released on parole by a State of North Carolina parole official. North Carolina had statutes governing parole and the criteria for release on parole. Freeman had been released for almost two years when a parole official determined that he had made a mistake and parole should not have been granted. The State of North Carolina then revoked Freeman's parole and reincarcerated him to serve the remainder of his sentence. While Freeman was on parole he was gainfully employed, reunited with his family and had incurred no other offenses. Freeman filed a *habeas corpus* petition in federal court contending that his reincarceration violated his due process rights. The Fourth Circuit Court of Appeals analyzed the case under the alternative theories/assumptions that the revocation of parole was by 1) an executive act of a state official; and 2) mandated by state legislation. In either case, the court found that Hawkins had no fundamental liberty interest in remaining free on an erroneously granted parole. Under the executive act

analysis, the Court found there was no intent to punish Hawkins and thus the act of revoking parole did not "shock the conscience of the court". The Court also noted the kind of executive conduct that fairly can be said to "shock the conscience," is conduct that involves "abusing [executive] power, or employing it as an instrument of oppression." *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 126, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)(quotation omitted). More objectively, it is conduct more blameworthy than simple negligence, which never can support a claim of substantive due process violation by executive act. *See County of Sacramento v. Lewis* (citing *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)). While intentional conduct alone will not suffice; the conduct must be "intended to injure in some way *unjustifiable by any government interest.*" *Id.* (emphasis added).

As previously noted, there is no legislation that requires that a local jail in Maryland maintain a pretrial release program. In those counties that do have them, or some form of release program, all create and administer their own criteria. *See* for example, the Maryland Annotated Code, Correctional Services Article, Subtitle 7, §11-702, §11-703, and §11-726, applicable only to Prince George's County, which authorizes the County jail administrator, in her discretion, to have a work-release program for sentenced prisoners and adopt the rules and regulations for the program. In each statute, the establishment and administration of a jail's pretrial release and/or

work-release program is left to the jails, not the courts.

Prince George's is no different, and no law compels its existence.[2] Thus, Plaintiffs have no substantive due process liberty interest in participating in the jail's pretrial release program or in contesting its criteria. See *Baugh v. Woodward*, 604 F. Supp. 1529 (E.D. NC 1985) (transfer decision is solely within the discretion of prison officials and prisoners have no justifiable expectation that they will not be transferred absent a specified event or condition then no state-created liberty interest arises ); *Hawkins*, supra (no liberty interest in continued parole where parole erroneously granted); *Spears v. Jones*, 2012 WL 4460514 (W.D. Va. 2012) (no liberty interest in work-release program even though ordered by a judge because determination left to jail officials as a matter of Virginia law); *Sanchez v. Hill*, 2022 WL1178572 (D. Wyoming April 15, 2022)(no due process violations found and motion for preliminary injunction denied where pretrial detainees participating in Wyoming's "24/7" Sobriety Program administered by local sheriff and where detainees were re-arrested and incarcerated for failing to show up for twice daily breath tests).

The Maryland Rules of Criminal Procedure Rule 4-216.1(d)(2)(K) recognize that jails are not obligated to accept a detainee into a pretrial release program. If

---

[2] Indeed, the County could moot much of this action by simply discontinuing its pretrial release program as nothing prevents it from doing so.

Plaintiffs had a constitutional right to a jail's pretrial release program, the above rule would be superfluous. Analytically, and boiled to its essence, Plaintiffs argue that this rule of procedure is unconstitutional.

Significantly, what the record in this case does *not* disclose is more telling than what it does: Plaintiffs cite not a single instance where the County was held in contempt for violating a court order for pretrial release, or even a *habeas corpus* petition ordering the release of a detainee. This is because the Court does not "order" pretrial release but, rather, merely authorizes it. The jail cannot release someone committed to its custody without court authority. If Plaintiffs had a constitutional right to the jail's pretrial release program, the court authorization and referrals would not be necessary. This is the crux of this case: Plaintiffs contend that the Court's referrals to the County's pretrial release program constitute unconditional orders for release. But, again, they are not. There is no precedent for Plaintiffs' contention.

Even if Plaintiffs have a protected liberty interest in the jail's pretrial release decisions, substantive due process can only be violated by conduct "*intended to injure in some way unjustifiable by any government interest.*" *Hawkins, supra.*. Plaintiffs have not alleged that the administration of the pretrial release program is *intended to injure* Plaintiffs in an unjustifiable way. Nor could they – the jail has no interest in detaining anyone it does not have to and only has detainees by

court order. Accordingly, any error of the District Court was harmless, and its decision should be upheld.

## IV. THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS OF THE THEN RELEASED PLAINTIFFS.

The County adopts the argument asserted by the Judge Defendants on the issue of released Plaintiffs.

## V. THE DISTRICT COURT PROPERLY DENIED EQUITABLE RELIEF BECAUSE THE RELIEF SOUGHT WAS AGAINST THE IMPROPER PARTY

The Plaintiffs in this case filed a Motion for Preliminary Injunction seeking to enjoin the County jail from accepting into its custody detainees. The jail has no authority, as previously noted herein, to disregard a court's commitment order. *See O'Donnell v. Harris County*, 892 F.3d 147, 156 (5th Cir. 2018), *overruled* by *Daves v. Dallas County*, supra. ("…the Sheriff is legally obliged to execute all lawful process and cannot release prisoners committed to jail by a magistrate's warrant— even if prisoners are committed "for want of bail." *See* Tex. Code Crim. Pro. Arts. 2.13, 2.16, 2.18; Tex. Loc. Gov't Code § 351.041(a) (noting the Sheriff's authority is "subject to an order of the proper court"). Thus, the County cannot abide by an injunction order because it has no authority to disobey a court order. Accordingly,

the County was the incorrect subject of Plaintiffs' motion for preliminary injunction

and the District Court properly dismissed it.

## VI.    CONCLUSION

The judgment of the District Court must be affirmed.

Respectfully submitted,

RHONDA L. WEAVER
County Attorney for Prince George's
County, Maryland

/s/ Shelley L. Johnson
_____
SHELLEY L. JOHNSON, DEPUTY COUNTY
ATTORNEY
sljohnson@co.pg.md.us
ANDREW J. MURRAY
ASSOCIATE County Attorney
ajmurray@co.pg.md.us
(301) 952-5225
(301) 952-3071 (facsimile)

Attorneys for Appellee Prince
George's County, Maryland

## REQUEST FOR ORAL ARGUMENT

The County respectfully requests that the Court hear oral argument in this appeal.

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,471 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Shelley L. Johnson

_____

Shelley L. Johnson

_____

**ADDENDUM**
_____

BRIEF OF APPELLEE
PRINCE GEORGE'S COUNTY, MARYLAND

1. Preliminary Injunction Proposed Order
2. Rule 4-2161 Pretrial Release – Standards
3. Maryland Correctional Services Code Section 11-702
4. Maryland Correctional Services Code Section 11-703
5. Maryland Correctional Services Code Section 11-718

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | |
|---|---|
| ROBERT FRAZIER, *et al.*, individually and on behalf of a class of similarly situated persons,<br><br>     Plaintiffs,<br><br>  v.<br><br>PRINCE GEORGE'S COUNTY, MARYLAND, *et al.*,<br><br>     Defendants. | Case No. _____ |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs, on behalf of themselves and those similarly situated, have moved for a Preliminary Injunction against Defendants Prince George's County; Corenne Labbé, in her official capacity as Director of the Prince George's County Department of Corrections; Jeffrey Logan, in his official capacity as Division Chief of the Prince George's Population Management Division; Kenneth Gray, in his official capacity as Section Chief of the Prince George's Supervision Management Section; and Tanya Law, in her official capacity as Unit Chief of the Prince George's County Monitoring Services Unit (collectively, "County Defendants"). Evidence in the record demonstrates that Plaintiffs are likely to succeed on the merits of their claims that County Defendants do not comply with the due process requirements of the Fourteenth Amendment to the U.S. Constitution or Article 24 of the Maryland Declaration of Rights. The remaining factors also

favor the issuance of an injunction. As such, Plaintiffs' Motion for a Preliminary Injunction is **GRANTED**.

It is hereby **ORDERED** that the County Defendants are enjoined from detaining at the Prince George's County Detention Center any person who has been arrested for a criminal offense and who has not received, at a minimum, the following procedural and substantive safeguards:

A. **Timing.** A person who has been arrested must receive a meaningful, individualized hearing within a reasonable time period after arrest, and no later than 48 hours after arrest, at which a judicial officer determines whether the person's ongoing detention is necessary using the standard and policies outlined below. If no judicial officer has determined that the person's ongoing detention is necessary after a reasonable time period, no more than 48 hours, the person must be released.

B. **Substantive Standard.** No person may be detained prior to conviction unless a judicial officer has made a finding, after complying with all procedural requirements in subsection C of this order, that no condition or combination of conditions of release will reasonably protect the safety of the community or ensure that the person returns to court and has issued an order mandating detention. No referral of a case to the County Defendants by a judicial officer that gives discretion to the County Defendants to determine whether, when, and under what circumstances to release the person shall be construed as an order meeting the substantive and procedural requirements for detention.

C. **Procedural Requirements.** In order to determine whether a person's ongoing detention is necessary in accordance with the standard above, the person must be given a meaningful, individualized hearing that includes:

1. Representation by counsel;

2

2.   Notice to the individual of the purpose of the hearing;

3.   A neutral and detached decision-maker, *i.e.*, a judicial officer;

4.   The opportunity to be heard and present evidence;

5.   The opportunity to rebut evidence presented by the State;

6.   A clear-and-convincing evidentiary burden, borne by the State;

7.   Consideration of the necessity of detention in relation to the State's compelling interests (*i.e.*, protecting community safety and against non-appearance);

8.   Consideration of the least restrictive conditions of release that will reasonably protect community safety and ensure return to court;

9.   Verbal or written findings of fact and a statement of reasons for the outcome.

It is further **ORDERED** that the security requirement in Fed. R. Civ. P. 65(c) is hereby waived.

**SO ORDERED**, this _____ day of _____, 2022.

_____
UNITED STATES DISTRICT JUDGE

3

West's Annotated Code of Maryland

   Maryland Rules

     Title 4. Criminal Causes

      Chapter 200. Pretrial Procedures (Refs & Annos)

MD Rules, Rule 4-216.1

RULE 4-216.1. PRETRIAL RELEASE--STANDARDS GOVERNING

Effective: July 1, 2024

Currentness

**(a) Definitions.** The following definitions apply in this Rule:

(1) *Appearance; Appear.* "Appearance" or "appear" means the appearance of the defendant in court whenever required.

(2) *Bond.* "Bond" means a written obligation of the person signing the bond conditioned on the appearance of the defendant and providing for the payment of a penalty sum according to its terms.

(3) *Collateral Security.* "Collateral security" means any property deposited, pledged, or encumbered to secure the performance of a bond.

(4) *Compensated Surety.* "Compensated surety" means a person who is licensed to become a surety on bonds written in the county and who charges compensation for acting as surety for defendants.

(5) *Pretrial Risk Scoring Instrument.* "Pretrial risk scoring instrument" means a tool, a metric, an algorithm, or software that is used to assist in determining the eligibility of a defendant for pretrial release in a pretrial proceeding based on the defendant's flight risk and threat to community safety.

**Cross reference:** See Code, Criminal Procedure, § 5-103.

(6) *Release on Personal Recognizance.* "Release on personal recognizance" means a release, without the requirement of a bond, based on a written promise by the defendant (A) to appear in court when required to do so, (B) to commit no criminal offense while on release, and (C) to comply with all other conditions imposed by the judicial officer pursuant to this Rule, Rule 4-216.2, or by other law while on release.

**Committee note:** The principal differences between a personal recognizance and a bond are that the former does not provide for payment of a penalty sum if the defendant fails to appear when required and is not subject to any financial conditions.

(7) *Special Condition.* "Special condition" means a condition of release required by a judicial officer, other than the conditions that the defendant appear in court when required to do so and commit no criminal offense while on release.

(8) *Special Condition of Release with Financial Terms.* "Special condition of release with financial terms" means the requirement of collateral security or the guarantee of the defendant's appearance by a compensated surety as a condition of the defendant's release. The term does not include (A) an unsecured bond by the defendant or (B) the cost associated with a service that is a condition of release and is affordable by the defendant or waived by the court.

**Committee note:** Examples of a condition of release that is not a special condition of release with financial terms are participation in an ignition interlock program, use of an alcohol consumption monitoring system, and GPS monitoring.

(9) *Surety.* "Surety" means a person other than the defendant who, by executing a bond, guarantees the appearance of the defendant and includes an uncompensated or accommodation surety.

(10) *Surety Insurer.* "Surety insurer" means a person in the business of becoming, either directly or through an agent, a surety on a bond for compensation.

(11) *Uncompensated Surety.* "Uncompensated surety" means an accommodation surety who does not charge or receive compensation for acting as a surety for the defendant.

**(b) General Principles.**

(1) *Construction.*

(A) This Rule is designed to promote the release of defendants on their own recognizance or, when necessary, unsecured bond. Additional conditions should be imposed on release only if the need to ensure appearance at court proceedings, to protect the community, victims, witnesses, or any other person and to maintain the integrity of the judicial process is demonstrated by the circumstances of the individual case. Preference should be given to additional conditions without financial terms.

(B) This Rule shall be construed to permit the release of a defendant pending trial except upon a finding by the judicial officer that, if the defendant is released, there is a reasonable likelihood that the defendant (i) will not appear when required, or (ii) will be a danger to an alleged victim, another person, or the community. If such a finding is made, the defendant shall not be released.

**Cross reference:** Code, Criminal Procedure Article, § 5-101. For the inapplicability of the Rules in Title 5 to pretrial release proceedings, see Rule 5-101 (b).

(2) *Individualized Consideration.* A decision by a judicial officer whether or on what conditions to release a defendant shall be based on a consideration of specific facts and circumstances applicable to the particular defendant, including the ability of the defendant to meet a special condition of release with financial terms or comply with a special condition and the facts and circumstances constituting probable cause for the charges.

(3) *Least Onerous Conditions.* If a judicial officer determines that a defendant should be released other than on personal recognizance or unsecured bond without special conditions, the judicial officer shall impose on the defendant the least onerous condition or combination of conditions of release set forth in section (d) of this Rule that will reasonably ensure (A) the

appearance of the defendant, and (B) the safety of each alleged victim, other persons, and the community and may impose a financial condition only in accordance with section (e) of this Rule.

**Committee note:** If a defendant was arrested without a warrant and the judicial officer finds no probable cause for any of the charges or for the arrest, Rule 4-216 (a) requires that the defendant be released on personal recognizance, with no conditions imposed.

(4) *Exceptions.* Nothing in this Rule is intended to preclude a defendant from being held in custody based on an alleged violation of (A) a condition of pretrial release, a release under Rule 4-349, or an order of probation or parole previously imposed in another case, or (B) a condition of pretrial release previously imposed in the instant case.

**(c) Release on Personal Recognizance or Unsecured Bond.**

(1) *Generally.* Except as otherwise limited by Code, Criminal Procedure Article, § 5-101 or § 5-202, unless the judicial officer finds that no permissible non-financial condition attached to a release will reasonably ensure (A) the appearance of the defendant, and (B) the safety of each alleged victim, other persons, or the community, the judicial officer shall release a defendant on personal recognizance or unsecured bond, with or without special conditions. If the judicial officer makes such a finding, the judicial officer shall state the basis for it on the record.

**Committee note:** Pursuant to section (b) of this Rule, the preference should be for release on personal recognizance.

**Cross reference:** Code, Criminal Procedure Article, § 5-101 (c) precludes release on personal recognizance if the defendant is charged with certain crimes. Section 5-202 of that Article precludes release by a District Court commissioner if the defendant is charged with certain crimes under certain circumstances.

(2) *Permissible Conditions.* Permissible conditions for purposes of this section include the required conditions set forth in subsection (d)(1) and the special conditions set forth or authorized in subsection (d)(2) of this Rule.

**(d) Special Conditions of Release.**

(1) *Required Conditions.* There shall be included, as conditions of any release of the defendant, that (A) the defendant will not engage in any criminal conduct during the period of pretrial release, and (B) the defendant will appear in court when required to do so.

(2) *Special Conditions.* Subject to section (b) of this Rule, special conditions of release imposed by a judicial officer under this Rule may include, to the extent appropriate and capable of implementation:

(A) one or more of the conditions authorized under Code, Criminal Law Article, § 9-304 reasonably necessary to stop or prevent the intimidation of a victim or witness or a violation of Code, Criminal Law Article, §§ 9-302, 9-303, or 9-305, including a general no-contact order;

(B) reasonable restrictions with respect to travel, association, and place of residence;

(C) a requirement that the defendant maintain employment or, if unemployed, actively seek employment;

(D) a requirement that the defendant maintain or commence an educational program;

(E) a reasonable curfew, taking into account the defendant's employment, educational, or other lawful commitments;

(F) a requirement that the defendant refrain from possessing a firearm, destructive device, or other dangerous weapon;

(G) a requirement that the defendant refrain from excessive use of alcohol or use or possession of a narcotic drug or other controlled dangerous substance, as defined in Code, Criminal Law Article, § 5-101 (f), without a prescription from a licensed medical practitioner;

(H) a requirement that the defendant undergo available medical, psychological, or psychiatric treatment or counseling for drug or alcohol dependency;

(I) electronic monitoring;

(J) periodic reporting to designated supervisory persons;

(K) committing the defendant to the custody or supervision of a designated person or organization that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court;

**Committee note:** The judicial officer may commit the defendant generally to supervision by a pretrial services unit operating in the county, subject to more detailed requirements of that unit appropriate to the supervision.

(L) execution of unsecured bonds by the defendant and an uncompensated surety who (i) has a verifiable and lawful personal relationship with the defendant, (ii) is acceptable to the judicial officer, and (iii) is willing to execute such a bond in an amount specified by the judicial officer;

(M) execution of a bond in an amount specified by the judicial officer secured by the deposit of collateral security equal in value to not more than 10% of the penalty amount of the bond or by the obligation of a surety, including a surety insurer, acceptable to the judicial officer;

(N) execution of a bond secured by the deposit of collateral security of a value in excess of 10% of the penalty amount of the bond or by the obligation of a surety, including a surety insurer, acceptable to the judicial officer; and

**Committee note:** A compensated surety qualified under Rule 4-217 is presumptively acceptable. Before finding an uncompensated surety to be acceptable, the judicial officer should inquire into the ability of the proposed surety to satisfy the condition of the bond if called upon to do so. Whenever possible, however, the judicial officer should give preference to an uncompensated surety having a verifiable and lawful personal relationship with the defendant and, if collateral security is required, should accept the posting of adequate real or personal property of that surety or the defendant. This preference is

based on the inference that the defendant may be more likely to appear when required if the liability and property of a friend or family member is at risk.

(O) any other lawful condition that will help ensure the appearance of the defendant or the safety of each alleged victim, other persons, or the community.

**(e) Release on Special Conditions.**

(1) *Generally.*

(A) A judicial officer may not impose a special condition of release with financial terms in form or amount that results in the pretrial detention of the defendant solely because the defendant is financially incapable of meeting that condition. In making that determination, the judicial officer may consider all resources available to the defendant from any lawful source.

**Committee note:** Information regarding the defendant's financial situation may come from several sources. The Initial Appearance Questionnaire Form used by District Court commissioners seeks information from the defendant regarding employment, occupation, amount and source of income, housing status, marital status, and number of dependents relying on the defendant's income. The criminal and juvenile record checks made by the commissioner also may reveal relevant information. Additional information may be available to the judge at a bail review proceeding from a defense attorney, the State's Attorney, and a pretrial services unit.

(B) Special conditions of release with financial terms are appropriate only to ensure the appearance of the defendant and may not be imposed solely to prevent future criminal conduct during the pretrial period or to protect the safety of any person or the community; nor may they be imposed to punish the defendant or to placate public opinion.

(C) Special conditions of release with financial terms may not be set by reference to a predetermined schedule of amounts fixed according to the nature of the charge.

(2) *Other Permissible Conditions.* If the judicial officer finds that one or more special conditions also may be required to reasonably ensure (A) the appearance of the defendant, and (B) the safety of each alleged victim, other persons, or the community, the judicial officer may impose on the defendant one or more special conditions in accordance with section (d) of this Rule.

**(f) Consideration of Factors.**

(1) *Recommendation of Pretrial Release Services Program.* In determining whether a defendant should be released and the conditions of release, the judicial officer shall give consideration to the recommendation of any pretrial release services program that has made a risk assessment of the defendant in accordance with a validated pretrial risk scoring instrument and is willing to provide an acceptable level of supervision over the defendant during the period of release if so directed by the judicial officer.

**Cross reference:** For validation requirements for pretrial risk scoring instruments, see Code, Criminal Procedure, § 5-103 (b).

(2) *Other Factors.* In addition to any recommendation made in accordance with subsection (f)(1) of this Rule, the judicial officer shall consider the following factors:

(A) the nature and circumstances of the offense charged, the nature of the evidence against the defendant, and the potential sentence upon conviction;

(B) the defendant's prior record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings;

(C) the defendant's family ties, employment status and history, financial resources, reputation, character and mental condition, length of residence in the community, and length of residence in this State;

(D) any request made under Code, Criminal Procedure Article, § 5-201 (a) for reasonable protections for the safety of an alleged victim;

(E) any recommendation of an agency that conducts pretrial release investigations;

(F) any information presented by the State's Attorney and any recommendation of the State's Attorney;

(G) any information presented by the defendant or defendant's attorney;

(H) the danger of the defendant to an alleged victim, another person, or the community;

(I) the danger of the defendant to the defendant's self; and

(J) any other factor bearing on the risk of a willful failure to appear and the safety of each alleged victim, another person, or the community, including all prior convictions and any prior adjudications of delinquency that occurred within three years of the date the defendant is charged as an adult.

**(g) Disclosure.** If the judicial officer requires collateral security, the judicial officer shall advise the defendant that, if the defendant or an uncompensated surety posts the required cash or other property, it will be refunded at the conclusion of the criminal proceedings if the defendant has not defaulted in the performance of the conditions of the bond.

**Source:** This Rule is new.

**Credits**
[Adopted February 16, 2017, eff. July 1, 2017. Amended March 30, 2021, eff. July 1, 2021; March 1, 2024, eff. July 1, 2024.]

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Notes of Decisions (13)

MD Rules, Rule 4-216.1, MD R CR Rule 4-216.1
Current with amendments received through May 1, 2024. Some sections may be more current, see credits for details.

**End of Document**  <span style="float:right">© 2024 Thomson Reuters. No claim to original U.S. Government Works.</span>



⌄ **Go to previous versions of this Section**                                    ↓

# 2023 Maryland Statutes
# Correctional Services
# Title 11 - Local Correctional Facilities
# Subtitle 7 - Individual County Provisions
# Section 11-702 - Allegany County

**Universal Citation:**
MD. Correctional Services Code § 11-702 (2023)  ◯

‹ **Previous**                                                          **Next** ›

(a)   This section applies only in Allegany County.

(b)   (1)   The Sheriff may:

(i)   establish a pretrial release program that offers alternatives to pretrial detention; and

(ii)   adopt regulations to administer the program.

(2)   A court may order an individual to participate in the pretrial release program if the individual:

(i)   appears before the court after being charged and detained on bond; and

(ii)   meets the eligibility requirements of paragraph (4) of this subsection.

40

(3)    The court may make the order at the imposition of bond, on review of bond, or any other time during the individual's pretrial detention.

(4)    An individual is eligible for the pretrial release program if the individual:

(i)    is recommended to the court for placement in the program by the program staff;

(ii)    has no other charges pending in any jurisdiction; and

(iii)    is not in detention for:

1.    a crime of violence; or

2.    the crime of escape under § 9-404 of the Criminal Law Article.

(c)    (1)    The Sheriff's Department may:

(i)    establish and direct a work release program; and

(ii)    adopt guidelines for the operation of the program.

(2)    (i)    At the time of sentencing or at any time during an inmate's confinement, the sentencing judge may order that the inmate participate in the work release program, subject to the guidelines adopted by the Sheriff.

(ii)    If the sentencing judge is unable to act at the time of an inmate's petition for work release, another judge of the committing court may order that the inmate participate in the work release program.

(3)    In ordering an inmate to participate in the work release program, the court may allow the inmate to leave actual confinement to:

(i)    work at gainful, private employment;

(ii)    seek gainful, private employment; or

(iii)    participate in an educational, rehabilitative, or training program in the county.

(4)    Unless the committing court directs otherwise, an inmate shall be confined in the detention center when not participating in the work release program.

(5)    (i)    The Sheriff or the Sheriff's designee shall collect the earnings of an inmate in the work release program, less payroll deductions required by law.

41

(ii)   From the earnings of the inmate, the Sheriff shall deduct and disburse:

1.   an amount determined to be the cost to the county for food, lodging, and clothing for the inmate;

2.   the actual cost of necessary food and travel and other expenses incidental to the inmate's participation in the program;

3.   any amount a court imposes for a fine, cost, or restitution;

4.   any amount that the inmate is legally obligated or reasonably desires to pay for support of a dependent; and

5.   if applicable, any amount that a court orders the inmate to repay to the State or to the county for the services of an attorney appointed by the court.

(iii)   The Sheriff shall:

1.   credit to the inmate's account the remaining balance; and

2.   dispose of the balance in the inmate's account as the inmate reasonably requests and as the Sheriff approves.

(6)   If an inmate violates a trust or a condition that a judge or the Sheriff establishes for conduct or employment, after an administrative hearing that upholds the violation, the inmate is subject to:

(i)   removal from the work release program; and

(ii)   cancellation of any earned diminution of the inmate's term of confinement.

(d)   (1)   The Sheriff shall:

(i)   establish and administer a home detention program; and

(ii)   adopt regulations for the program.

(2)   At the time of sentencing or at any time during an individual's confinement, the sentencing judge may allow an individual who is convicted of a crime and sentenced to imprisonment to participate in the home detention program.

(3)   Subject to paragraph (4) of this subsection, an inmate is eligible for the home detention program if the inmate:

(i)   is recommended for the program by the sentencing judge; and

(ii)   has no other charges pending in any jurisdiction.

(4)   An inmate is not eligible for the home detention program if the inmate:

(i)   is serving a sentence for a crime of violence; or

(ii)   has been found guilty of the crime of:

1.   child abuse under § 3-601 or § 3-602 of the Criminal Law Article; or

2.   escape under § 9-404 of the Criminal Law Article.

(5)   While participating in the home detention program an inmate is responsible for:

(i)   the inmate's medical care and related expenses; and

(ii)   costs of lodging, food, clothing, transportation, restitution, and taxes.

(6)   The Sheriff may:

(i)   collect a reasonable fee from each inmate participating in the home detention program; or

(ii)   waive or reduce the fee.

(7)   The Sheriff may determine the maximum number of inmates that may participate in the home detention program.

(8)   An inmate who knowingly violates a term or a condition of the home detention program is subject to the penalties provided under § 11-726 of this subtitle and other disciplinary action provided by law.

❮ **Previous**                                                                 **Next** ❯

**Disclaimer:** These codes may not be the most recent version. Maryland may have more current or accurate information. We make no warranties or guarantees about the accuracy, completeness, or adequacy of the information contained on this site or the information linked to on the state site. Please check official sources.

43

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.



Go to previous versions of this Section          ↓

# 2023 Maryland Statutes
# Correctional Services
# Title 11 - Local Correctional Facilities
# Subtitle 7 - Individual County Provisions
# Section 11-703 - Anne Arundel County

**Universal Citation:**
MD. Correctional Services Code § 11-703 (2023)  ◯

❮ **Previous**                                          **Next** ❯

(a)   (1)   In this section the following words have the meanings indicated.

(2)   "Administrator" means the Administrator of the county's local correctional facilities.

(3)   "Participant" means an individual who participates in a program under this section.

(4)   "Program" means, unless the context requires otherwise, a rehabilitation, home detention, pretrial release, or work program established and conducted under this section.

(b)   This section applies only in Anne Arundel County.

(c)   (1)   If a provision of this section is inconsistent with another provision in the Code, the provision of this section controls.

45

(2)   The privileges and penalties set forth in subsection (e)(1)(v) and (vi) of this section are the exclusive privileges and penalties that relate to the length of sentence of a participant in a program.

(3)   While released from confinement under the terms of a program, a participant is not an agent, employee, or servant of the county.

(d)   (1)   The Administrator shall:

     (i)   establish and administer a home detention program; and

     (ii)   adopt regulations for the program.

(2)   (i)   When an individual who is convicted of a crime is sentenced or at any time during the individual's confinement as an inmate, a judge may allow the individual to participate in the home detention program.

     (ii)   In addition to participation at the recommendation of a judge under subparagraph (i) of this paragraph, the Administrator may place the inmate in the home detention program unless the court has ordered otherwise.

(3)   Subject to paragraph (4) of this subsection, an inmate is eligible for the home detention program if the inmate:

     (i)   is recommended for the program by a judge or placed in the program by the Administrator under paragraph (2) of this subsection; and

     (ii)   has no other charges pending in any jurisdiction.

(4)   An inmate is not eligible for the home detention program if the inmate:

     (i)   is serving a sentence for a crime of violence; or

     (ii)   has been found guilty of the crime of:

         1.   child abuse under § 3-601 or § 3-602 of the Criminal Law Article; or

         2.   escape under § 9-404 of the Criminal Law Article.

(5)   While participating in the home detention program, an inmate is responsible for:

     (i)   the costs of the inmate's medical care and related expenses; and

(ii)    the costs of the inmate's lodging, food, clothing, transportation, restitution, and taxes.

(6)    The Administrator may:

(i)    collect a reasonable fee from each inmate participating in the home detention program; or

(ii)    waive or reduce the fee.

(7)    The Administrator may determine the maximum number of participants in the home detention program.

(8)    An inmate who knowingly violates a term or condition of the home detention program is subject to:

(i)    the penalties provided under § 11-726 of this subtitle; and

(ii)    any other disciplinary action authorized under law.

(e)    (1)    The Administrator may:

(i)    establish, for the rehabilitation and training of an inmate who is sentenced to imprisonment in a local correctional facility, a program that enables the inmate to:

1.    attend a vocational or educational institution;

2.    work at gainful, private employment; or

3.    participate in any other training or rehabilitation program;

(ii)    establish eligibility criteria for participation in a program;

(iii)    release an eligible inmate from actual confinement to participate in a program;

(iv)    establish any other training or rehabilitation program;

(v)    reduce a participant's sentence 1 day for each day that the participant:

1.    performs with exceptional industry, application, and skill any industrial, agricultural, or administrative task assigned to the participant; or

47

2.   performs with satisfactory industry, application, and progress in the program to which the participant is assigned; and

(vi)   after an administrative hearing, cancel any earned diminution of an inmate's term of confinement if the inmate violates a regulation adopted under this section.

(2)   (i)   The Administrator shall adopt regulations to conduct each program.

(ii)   In adopting the regulations, the Administrator shall consider the safety of the public and the security of a local correctional facility.

(iii)   Except as provided in subsection (g)(2) of this section, if a condition of the sentence imposed by a court on an inmate is inconsistent with a regulation adopted under this subsection, the condition imposed by the court controls as to that inmate.

(3)   While not released from confinement under the terms of a program, each participant shall be confined in a local correctional facility.

(4)   (i)   The Administrator or Administrator's designee shall collect each participant's total earnings, less payroll deductions.

(ii)   From the participant's earnings, the Administrator or designee shall pay:

1.   voluntary or court-ordered payments for support of a dependent; and

2.   court-ordered payments for restitution.

(iii)   The Administrator may:

1.   deduct a reasonable fee from the earnings of each inmate participating in the program; or

2.   waive or reduce the fee.

(iv)   The Administrator or designee shall:

1.   credit to the participant's account any remaining balance; and

2.   dispose of the balance as requested by the participant and as approved by the Administrator.

(5)   A participant who knowingly violates a regulation adopted under this section:

(i)   is subject to removal from the program;

(ii)   after an administrative hearing, is subject to cancellation of any earned diminution of the inmate's term of confinement; and

(iii)   is subject to the provisions of § 11-726 of this subtitle.

(f)   (1)   The Administrator may:

(i)   establish a pretrial release program that offers alternatives to pretrial detention; and

(ii)   adopt regulations to carry out the program.

(2)   A court may order an individual to participate in the pretrial release program if the individual appears before the court after being charged and detained on bond.

(3)   The court may enter the order at the imposition of bond, on review of bond, or any other time during the individual's pretrial detention.

(g)   (1)   At the time of sentencing or at any time during an individual's confinement, the sentencing judge or the Administrator may allow an individual who is convicted of a crime and sentenced to imprisonment to participate in a program established under subsection (e) of this section, provided that the individual meets the eligibility criteria established by the Administrator for participation in that program.

(2)   Subject to the eligibility criteria established by the Administrator, a judge may order that an individual participate in a program established under subsection (e) of this section.

(3)   The Administrator may not allow an individual to participate in a program established under subsection (e) of this section if a court order prohibits the individual from participating in that program.

(h)   (1)   A court may require an individual who is convicted of a crime to satisfy a fine or court costs by participating in a work program established under the jurisdiction of the Division of Parole and Probation.

(2)   An individual who participates in the work program shall receive credit of at least the federal minimum wage per hour toward the fine and court costs.

49

    (i)   If the Administrator establishes and operates a community service program authorized by §§ 8-701 through 8-711 of this article, the Administrator may charge a reasonable fee to each individual participating in the program.

‹ **Previous**                                      **Next** ›

**Disclaimer:** These codes may not be the most recent version. Maryland may have more current or accurate information. We make no warranties or guarantees about the accuracy, completeness, or adequacy of the information contained on this site or the information linked to on the state site. Please check official sources.

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.



> **Go to previous versions of this Section**                    ↓

# 2023 Maryland Statutes
# Correctional Services
# Title 11 - Local Correctional Facilities
# Subtitle 7 - Individual County Provisions
# Section 11-718 - Prince George's County

**Universal Citation:**
MD. Correctional Services Code § 11-718 (2023)  ◯

**‹ Previous**                                          **Next ›**

   (a)   In this section, "administrator" means an administrator of a county detention center.

   (b)   This section applies only in Prince George's County.

   (c)   (1)   Subject to paragraph (2) of this subsection, an administrator may allow an inmate sentenced to imprisonment in a detention center after being convicted of a crime or found in contempt of court to leave actual confinement to:

      (i)   seek or work at gainful, private employment;

      (ii)   participate in a training or rehabilitation program; or

      (iii)   attend educational or vocational institutions in the county.

(2)   The administrator may allow the inmate to leave confinement:

(i)   in accordance with established programs;

(ii)   during necessary and reasonable hours; and

(iii)   after determining that the inmate is eligible for the program and recommending it to and receiving written approval from the sentencing or administrative judge.

(d)   (1)   The administrator shall adopt guidelines and rules for the conduct of the work release program that shall:

(i)   take into consideration the security of the detention center and the safety of the public; and

(ii)   conform with conditions that a sentencing or administrative judge may impose in a particular case.

(2)   When an inmate is not employed or otherwise participating in a work release program, the inmate shall be confined in the detention center in the same manner as any other inmate committed to the custody of the administrator.

(3)   If an inmate violates a trust or a condition that the administrator establishes in the rules for conduct or employment, the inmate is:

(i)   subject to removal from the work release program; and

(ii)   after an administrative hearing, subject to cancellation of any earned diminution of the inmate's term of confinement.

(e)   (1)   The authorized representative of a detention center shall collect the earnings of an inmate, less any payroll deductions.

(2)   From the earnings of the inmate, the authorized representative of the detention center shall deduct:

(i)   the amount determined to be the cost to the county for food, lodging, and clothing for the inmate;

(ii)   actual and necessary food, travel, and other expenses incidental to the inmate's participation in the program;

52

(iii)   an amount the inmate is legally obligated or desires to pay for the support of a dependent; and

(iv)   court–ordered payments for restitution.

(3)   The authorized representative of the detention center shall credit to the inmate's account any remaining balance.

(f)   (1)   An administrator may develop educational and vocational programs to further the educational and vocational training of an inmate sentenced to the detention center.

(2)   (i)   The administrator shall adopt regulations to govern the conduct and participation of an inmate in an educational or vocational program as necessary for the security of the detention center and the safety of the public.

(ii)   If an inmate violates a trust or a condition that the administrator establishes for conduct during participation in an educational or vocational program, the inmate:

1.   is subject to removal from the program, with notice to the sentencing judge; and

2.   after an administrative hearing, is subject to cancellation of any earned diminution of the inmate's term of confinement.

❮ **Previous**                                                        **Next** ❯

---

**Disclaimer:** These codes may not be the most recent version. Maryland may have more current or accurate information. We make no warranties or guarantees about the accuracy, completeness, or adequacy of the information contained on this site or the information linked to on the state site. Please check official sources.

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

53

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| | * | |
| ROBERT FRAZIER, et al., | | |
| | * | |
| *Plaintiffs-Appellants,* | | |
| v. | * | No. 24-1380 |
| | | |
| PRINCE GEORGE'S COUNTY, et al., | * | |
| | * | |
| *Defendants-Appellees.* | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**CERTIFICATE OF SERVICE**

I certify that, on this 23rd day of August, 2024, the Brief of Appellee Prince George's County, Maryland was filed electronically and served by the CM/ECF system on all parties entitled to service.


/s/ Shelley L. Johnson
_____
Shelley L. Johnson