No. 24-1380

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

## ROBERT FRAZIER, *et al*.,

*Plaintiffs-Appellants*,

**v.**

## PRINCE GEORGE'S COUNTY, MARYLAND, *et al*.,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Maryland
(Peter J. Messitte, District Judge)

_____

## BRIEF OF APPELLEES
## LAKEECIA RENEE ALLEN, BRYON BEREANO,
## JOHN BIELEC, SCOTT CARRINGTON, ADA E. CLARK-EDWARDS,
## STACEY COBB SMITH, BRIAN DENTON, ROBERT HEFFRON, JR.,
## DONNAKA LEWIS, GREGORY POWELL, AND CATHY SERRETTE

_____

ANTHONY G. BROWN
Attorney General of Maryland

KEVIN M. COX
JAMES O. SPIKER IV
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
kcox@oag.state.md.us
(410) 576-6389
(410) 576-6393 (facsimile)

August 23, 2024                    Attorneys for Appellees

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ..........................................................................1

ISSUES PRESENTED FOR REVIEW....................................................................2

STATEMENT OF THE CASE ................................................................................3

    Procedural Background ....................................................................................3

    Factual Background .........................................................................................7

    The General Pretrial Release Procedure..........................................................7

    The Pretrial Procedure at Issue Here ............................................................10

    Plaintiff Butler's Underlying Pretrial Proceedings .......................................12

    Plaintiff Williams's Underlying Pretrial Proceedings...................................13

    Plaintiff Davis's Underlying Pretrial Proceedings .......................................15

    Plaintiff Frazier's Underlying Pretrial Proceedings .....................................15

    Plaintiff Hernandez's Underlying Pretrial Proceedings ...............................16

    Plaintiff D.P.'s Underlying Pretrial Proceedings .........................................17

    Plaintiff Sharp's Underlying Pretrial Proceedings .......................................17

    Plaintiff Worthington's Underlying Pretrial Proceedings.............................18

    Plaintiff Laguan-Salinas's Underlying Pretrial Proceedings........................18

SUMMARY OF ARGUMENT................................................................................19

ARGUMENT ..........................................................................................................20

I.      THE STANDARD OF REVIEW IS DE NOVO.......................................................20

II.     PLAINTIFFS' COMPLAINT DOES NOT ALLEGE FACTS TO ESTABLISH THAT THE JUDGES RELINQUISHED ULTIMATE CONTROL OVER THEIR CRIMINAL CASES TO THE COUNTY DEPARTMENT OF CORRECTIONS. ..............................21

III.    THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS AGAINST THE JUDGES BASED ON ABSOLUTE JUDICIAL IMMUNITY. ......................................23

IV.     THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT BECAUSE DECLARATORY RELIEF AGAINST THE JUDGES IS UNAVAILABLE. ...................25

V.      PLAINTIFFS' CLAIMS AGAINST THE JUDGES ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY..................................................................................27

VI.     PLAINTIFFS' CLAIMS AGAINST THE JUDGES DO NOT FALL WITHIN THE EX PARTE YOUNG EXCEPTION TO ELEVENTH AMENDMENT IMMUNITY. ..........28

        A.      The Relief Sought by Plaintiffs Is Retrospective................................28

        B.      There Is No Special Relation to the Alleged Unconstitutional Act. ....................................................................................................29

VII.    THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS OF THE THEN-RELEASED PLAINTIFFS. ...................................................................................31

VIII.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN QUASHING SUBPOENAS FOR DEPOSITION TESTIMONY OF CERTAIN JUDGES BECAUSE THOSE JUDGES WOULD INVARIABLY HAVE BEEN QUESTIONED ABOUT INFORMATION PROTECTED BY THE JUDICIAL DELIBERATIVE PROCESS PRIVILEGE..................................................................................................32

CONCLUSION.................................................................................................35

REQUEST FOR ORAL ARGUMENT...................................................................36

CERTIFICATE OF COMPLIANCE .......................................................................36

# TABLE OF AUTHORITIES

## Cases

*Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co*., 139 F.3d 419 (4th Cir. 1998)... 25, 26

*Alford v. Aaron Rents, Inc*., No. 08-CV-683 MJR DGW, 2010 WL 3522804
(S.D. Ill. Sept. 2, 2010) ...................................................................................34

*Bass v. Weinstein Mgmt. Co.*, 56 F.4th 355 (4th Cir. 2022) ............................. 20, 21

*Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001)...............................27

*Bowling v. Dahlheimer*, No. 4:18-CV-610, 2019 WL 3712025
(E.D. Tex. Aug. 7, 2019) ...................................................................................29

*Bowling v. McCraw*, No. 4:18-CV-610-ALM-CAN, 2019 WL 2517834
(E.D. Tex. Mar. 7, 2019).....................................................................................28

*Bradley v. Fisher*, 80 U.S. 335 (1871)............................................................. 23, 24

*Chapman v. Clarendon Nat'l Ins. Co*., 299 F. Supp. 2d 559
(E.D. Va. 2004).......................................................................................... 25, 26

*Ciarlone v. City of Reading*, 263 F.R.D. 198 (E.D. Pa. 2009) ...............................33

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) .......................................32

*Dawson v. Newman*, 419 F.3d 656 (7th Cir. 2005) ..............................................24

*Ex Parte Young*, 209 U.S. 123 (1998) ..................................................... 28, 29, 30

*Falwell v. City of Lynchburg, Va.*, 198 F. Supp. 2d 765 (W.D. Va. 2002). ..... 29, 30

*Fayerweather v. Ritch*, 195 U.S. 276 (1904)...........................................................33

*Forrester v. White*, 484 U.S. 219 (1988) ...............................................................23

*Gerstein v. Pugh*, 420 U.S. 1037 (1975)................................................................32

*Gibson v. Goldston*, 85 F.4th 218 (4th Cir. 2023) .......................................... 20, 24

*Hinton v. District of Columbia*, 567 F. Supp. 3d 30 (D. D.C. 2021).......................31

*In re Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d 1488 (11th Cir.1986)...............33

*In re Enforcement of Subpoena*, 463 Mass. 162 (2012) ..........................................33

*King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992)....................................................23

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922 (4th Cir. 1995) ...............................................................................21

*Martino v. Campbell*, No. 8:20-CV-694-T-33SPF, 2020 WL 2307559 (M.D. Fla. May 8, 2020) ....................................................28

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) ................................... 28, 30

*Mireles v. Waco*, 502 U.S. 9 (1991)................................................................. 23, 25

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalfe & Easy, Inc.*, 506 U.S. 139 (1993)............................................................................................27

*Republic of Paraguay v. Allen*, 134 F.3d 622 (4th Cir. 1998)................................29

*Sosna v. Iowa*, 419 U.S. 393 (1975) ........................................................................32

*Stump v. Sparkman,* 435 U.S. 349 (1978).................................................................24

*Telco Commc'n, Inc. v. Carbaugh*, 885 F.2d 1225 (4th Cir. 1989)........................31

*United States v. Morgan*, 313 U.S. 409 (1941) .......................................... 32, 33, 34

*Verizon Md. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002) ........................28

*Weldon v. Kapetan*, No. 1:17-cv-01536-LJO-SKO, 2018 WL 2127060 (E.D. Cal. May 9, 2018)..................................................................................26

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) ................................................................26

*Younger v. Harris*, 401 U.S. 37 (1971)....................................................................32

## Constitutional Provisions

Md. Const. art. IV, § 20 ..................................................................7

Md. Const. art. IV, § 21 ..................................................................7

Md. Const. art. IV, § 41A ................................................................7

U.S. Const. amend. XI ................................................. 20, 29, 30

## Statutes

28 U.S.C. § 1291 ...........................................................................2

28 U.S.C. § 1331 ...........................................................................2

28 U.S.C. § 2201 ................................................................. 1, 3, 25

42 U.S.C. § 1983 ................................................................ 1, 3, 23

Md. Code Ann., Cts. & Jud. Proc. § 1-501 (LexisNexis 2020) ................7

Md. Code Ann., Cts. & Jud. Proc. § 1-503 (LexisNexis 2020) ................7

Md. Code Ann., Cts. & Jud. Proc. § 1-601 (LexisNexis 2020) ................7

Md. Code Ann., Cts. & Jud. Proc. § 4-301 (LexisNexis 2020) ................7

## Rules

Fed. R. Civ. P. 12(c)....................................................................20

Fed. R. Civ. P. 54(b) .....................................................................6

Md. Rule 4-213 ............................................................................8

Md. Rule 4-216.1 ................................................. 8, 9, 10, 11, 12, 21, 22

Md. Rule 4-216.2 ...........................................................................8

Md. Rule 4-216.3 .........................................................................10

No. 24-1380

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## CHRISTOPHER BUTLER, *et al.*,

*Plaintiffs-Appellants*,

v.

## PRINCE GEORGE'S COUNTY, *et al.*,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the District of Maryland
(Peter J. Messitte, District Judge)

_____

## BRIEF OF APPELLEES
## LAKEECIA RENEE ALLEN, BRYON BEREANO,
## JOHN BIELEC, SCOTT CARRINGTON, ADA E. CLARK-EDWARDS,
## STACEY COBB SMITH, BRIAN DENTON, ROBERT HEFFRON, JR.,
## DONNAKA LEWIS, GREGORY POWELL, AND CATHY SERRETTE

_____

## JURISDICTIONAL STATEMENT

In this civil action, nine criminal detainees (the "plaintiffs") asserted a claim

for declaratory relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, alleging

violations of the right to procedural and substantive due process under the Fourteenth

Amendment to the United States Constitution and the Maryland Constitution and of

the separation of powers established by the Maryland Constitution, against Prince George's County, Maryland (the "County"), various officials of the County, and eleven Maryland state court judges (the "judges").  The plaintiffs also asserted claims for money damages, injunctive relief, and attorneys' fees and costs against the County.  The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and 2201.  On March 29, 2024, the district court entered final judgment for defendants (J.A. 1537), and on April 26, 2024, plaintiffs filed a timely notice of appeal from the district court's final judgment (J.A. 1539).  The district court's judgment finally disposed of all the claims; consequently, this Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.     Did the district court properly dismiss plaintiffs' suit against the judges, because it is constitutional for judges to order during a bond-review hearing that a criminal defendant be authorized to be released from pretrial detention subject to the supervision of a county's department of corrections, conditioned on the department of corrections agreeing to accept the criminal defendant into a pretrial-release program, even though the department of corrections' eligibility determination will occur subsequent to the subject bond-review hearing?

2.     Did the district court properly dismiss plaintiffs' suit against the judges, because the judges are absolutely immune from suit and declaratory relief cannot be awarded to plaintiffs under these circumstances?

3.     Did the district court properly dismiss plaintiffs' suit against the judges as to plaintiffs who were no longer detained because those plaintiffs' claims were moot?

4.     Did the district court properly grant the judges' motion to quash subpoenas for deposition testimony of the judges because the judges would invariably have been questioned about information protected by the judicial deliberative process privilege?

## STATEMENT OF THE CASE

### Procedural Background

On July 19, 2022, the nine criminal detainee plaintiffs[1] filed this action under 42 U.S.C. § 1983, 28 U.S.C. § 2201, the Fourteenth Amendment, and the Maryland

---

[1] The plaintiffs are Robert Frazier, Anibal Hernandez, D.P. (a minor), Christopher Butler, Miramba Williams, Donnell Davis, Leslie Sharp, Almer Laguan-Salinas, and Addrienne Worthington. (J.A. 20.)

Constitution. They sued the County, four County officials,[2] and 11 judges.[3] The five-count complaint alleged that, in subjecting plaintiffs to certain pretrial detention practices (*i.e.*, a process where a criminal defendant detainee's pretrial release under the County's pretrial-release program is conditioned by a judge on the County agreeing to supervise the detainee under the program), the defendants collectively denied plaintiffs their rights to substantive and procedural due process (Counts I, II, III and IV) and their rights under the separation-of-powers provision of Maryland Declaration of Rights (Count V). (J.A. 20-69.)

The plaintiffs asserted "that the [judges] improperly delegated decisions regarding their pretrial release to" the County "and that the process by which all Defendants made release determinations violated their due process rights." (J.A. 1184.) They sought compensatory damages, declaratory and injunctive relief, and

---

[2] The four county officials sued in their official capacities were Corenne Labbe, the Director of the Department of Corrections, Jeffrey Logan, Chief of the Population Management Division, Kenneth Gray, the Chief of the Community Supervision Section, and Tanya Law, the Chief of the Monitoring Services Division. (J.A. 21.)

[3] The named judges are nine judges and one retired judge of the District Court of Maryland for Prince George's County (LaKeecia Allen, Bryon Bereano, John Bielec, Scott Carrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron, Jr., Donnaka Lewis, and Gregory Powell (ret.)) and one retired judge of the Circuit Court for Prince George's County (Cathy Serrette (ret.)). (J.A. 20-21.)

attorneys' fees and costs against the County. (J.A. 64-68.) They sought only declaratory relief against the judges. (J.A. 68.)

On October 25, 2022, following a hearing on the defendants' respective motions to dismiss, the district court dismissed as defendants the four County officials. (J.A. 526-527.) The district court also cancelled a hearing on plaintiffs' motion for preliminary injunction against the County. (J.A. 526-527.)

On January 24, 2023, the district court dismissed all claims of plaintiffs Frazier, Hernandez, D.P., Davis, Sharp, and Worthington, because at the time of the district court's decision they had been released from detention and, therefore, their claims were moot.[4] (J.A. 1209-1210.) The district court also dismissed all claims for compensatory damages against the County. (J.A. 1209-1210.) The sole remaining plaintiffs were Butler and Williams.

On March 2, 2023, the district court denied plaintiffs' motion for class certification without prejudice.[5] (J.A. 1301-1302.) On March 14, 2023, the district court denied plaintiffs' motion for preliminary injunction against the County. (J.A. 1303.)

---

[4] The district court later recognized that plaintiff Laguan-Salinas was dismissed as well because he had also been released before January 24, 2023. (J.A. 1334.)

[5] The request for class certification was never revived and the case was never certified as a class action. (J.A. 1-19.)

On June 7, 2023, the district court denied various motions for reconsideration and clarification but confirmed that all claims against the judges "against them in their personal capacities" were dismissed and that only the claims against them "in their official capacities" survived. (J.A. 1340, J.A. 1344-1345.) On August 9, 2023, the district court denied plaintiffs' motion for a partial judgment under Federal Rule of Civil Procedure 54(b) on the district court's dismissal of plaintiffs' compensatory damages claims against the County. (J.A. 1347-1353.)

On November 15, 2023, this Court vacated the district court's order entered March 14, 2023, denying plaintiffs' motion for preliminary injunction against the County, and remanded the case for further proceedings. On November 22, 2023, the district court again denied plaintiffs' motion for preliminary injunction. (J.A. 1385-1395.)

Despite the district court's statement that "an Amended Complaint would seem to be in order," plaintiffs did not amend their complaint. (J.A. 1340, J.A. 1-19.) Discovery ensued and on January 25, 2024, the district court stayed discovery and deferred a ruling on other pending motions.[6] (J.A. 1458-1459.) On March 29, 2024, the district court granted the County's motion for judgment on the pleadings,

---

[6] Only one deposition (nearly seven hours) was taken in this case of the County's Department of Corrections Chief of Population Management Division by plaintiffs and defendants answered written discovery. (ECF 190, Reply to Motion at 8).

the judges' motion for judgment on the pleadings, and the judges' motion to quash subpoenas for in-person deposition testimony of certain judges. (J.A. 1498-1538.) Plaintiffs timely noted this appeal on April 26, 2024. (J.A. 1539.)

**Factual Background**

The judicial branch of Maryland has a trial court of limited jurisdiction, the District Court of Maryland, and 24 trial courts of general jurisdiction, the circuit courts for each county and the City of Baltimore. (J.A. 1185.) These courts exercise the state's judicial power, with judges who wield the sovereign power of the state. Md. Code Ann., Cts. & Jud. Proc. §§ 1-501, 1-503, 1-601 (LexisNexis 2020); Md. Const. art. IV, §§ 20, 21, 41A.

The state District Court has exclusive or concurrent jurisdiction in certain criminal cases. Cts. & Jud. Proc. §§ 4-301, 4-302 (LexisNexis 2020). The circuit courts are the "highest common-law and equity courts of record exercising original jurisdiction within the State." Cts. & Jud. Proc. § 1-501. Each circuit court "has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county . . . ." *Id*.

**The General Pretrial Release Procedure**

In Prince George's County, as in every jurisdiction in Maryland, when an individual is arrested without a circuit court warrant, an initial appearance before a District Court of Maryland commissioner is the first step in the pretrial release

process.  Md. Rule 4-213.  At the initial appearance, the commissioner provides the arrestee with the charging documents, advises the arrestee of various rights, and determines whether or under what conditions the arrestee may be released pending trial.  *Id*.

An arrestee who is not released from custody at the initial appearance, and thus becomes a detainee, then appears before a judge for a review hearing[7] on the same day, or if court is not in session on the following court day.  Md. Rule 4-216.2.  At the review hearing, the detainee has a right to counsel.  *Id*.  The judge is required to review the court commissioner's pretrial release determination and follow detailed standards to determine whether continued detention is necessary.  *Id*.

"The judge decides whether pretrial release or detention is appropriate." (J.A. 1185.)  Like every county with a pretrial release services program, in Prince George's County, "the judge's decision must be based, *inter alia*, on the recommendation of the Population Management Division of the Prince George's County Department of Corrections (the 'Pretrial Division')." (J.A. 1185 (citing Md. Rule 4-216.1(f)(1)).  "What that requirement has meant in practice, in Prince

---

[7] The phrases "review hearing," "bond-review hearing" and "bail-review hearing" are often used interchangeably to describe the at-issue review hearing.  The applicable Maryland Rule defines the word "bond" (and not "bail").  Md. Rule 4216.1(a)(2).  Because these hearings encompass more than just issues related to bond, however, and because bond is not specifically at issue here, the broader term "review hearing" is the most accurate term for the purposes of this matter.

George's County at least, is that, while the judge authorizes pretrial release, actual release occurs only when the Pretrial Division determines that a defendant satisfies certain criteria making him or her eligible for release." (J.A. 1185-1186.)

"'Authorize' is a key word in evaluating the [pretrial release] process." (J.A. 1185 n.5.) As the district court accurately noted, the transcripts of plaintiffs' various bail-review hearings confirm that no judge ever ordered immediate, unconditional release of any plaintiff. "Instead, the judges' decisions are best understood as conditional orders, or 'options,' authorizing release only if and when the [County's] Pretrial Division finds a defendant to be eligible for release." (J.A. 1185 n. 5.)

There are three broad categories of potential review hearing results: (1) the judge may determine that continued detention is necessary pending trial, (2) the judge may determine that an unconditioned release is appropriate (*i.e.*, release on one's "own recognizance"), or (3) the judge may determine that, *if certain conditions are met*, then the detainee need not be incarcerated pending trial. Under this third category, all of the conditions must be "capable of implementation." Md. Rule 4-216.1(d).

Also, under this third category of potential review hearing results, certain conditions are conditions subsequent and certain conditions are conditions precedent. That is, for certain types of conditioned releases, if the condition is not met after the detainee is released, then the individual's conditional release may be

revoked.  Md. Rule 4-216.3(d).  For example, a detainee may be released at the review hearing, subject to the condition subsequent that she refrains from possessing a firearm.  Md. Rule 4-216.1(d)(2)(F).  For the other category of conditioned releases, *i.e.*, conditions precedent, if a specified condition is not met, then the detainee is never released.  Md. Rule 4-216.1.  For example, a detainee's release may be conditioned on first executing a bond secured by a collateral deposit (*i.e.,* posting bond); in those cases, if the detainee never posts bond, then the detainee is never released pending trial.  Md. Rule 4-216.1(d)(2)(N).

### The Pretrial Procedure at Issue Here

The review-hearing result at issue here is one in which a detainee's pretrial release is conditioned on a supervisory-services program agreeing to supervise the detainee, under Maryland Rule 4-216.1(d)(2)(K).  In Prince George's County, the relevant program is the "pretrial-release program." (J.A. 415.)  It was created by the County's Department of Corrections ("DOC") as part of the population management subdivision.  (J.A. 415.)  The goal of the program is to provide a supervisory alternative to detainees who would otherwise be incarcerated pending trial or disposition.  (J.A. 415.)  It "allows those committed to the custodial care of the jail to be released from incarceration while awaiting adjudication of their case." (J.A. 1327.)  Program eligibility is based on several factors outlined in Maryland Rule 4-216.1 that include" (1) the seriousness of current charges; (2) criminal history;

(3) history of failure to appear in court; (4) prior pretrial release history and program compliance; (5) parole and probation violations; and (6) significant and social ties to the local community. (J.A. 1327.) "If found to be eligible, program participants are assigned to a supervisory level that can be authorized by a Judge at a bond-review hearing and/or referred by departmental staff for judicial authorization." (J.A. 1327-1328.)

"The Pretrial Release Program has four (4) supervisory levels." (J.A. 1328.) Level I is for non-violent misdemeanor offenses, Level II is for criminal defendants who have little to no criminal history, Level III is for criminal defendants who have an extensive criminal history or more serious charges, and Level IV (Home Monitoring Program) is for criminal defendants charged with serious and violent felonies. (J.A. 1328-1329.)

A detainee's release under the County's special condition program is conditioned on the pretrial-release program agreeing to supervise the detainee. *See* Md. Rule 4-216.1(d)(2)(K) (a judge may impose "special conditions of release . . . to the extent appropriate and capable of implementation," including committing the detainee "to the custody or supervision of a designated person or organization *that agrees* to supervise the defendant . . . .") (emphasis added); *see also* Md. Rule 4-216.1(d)(2)(K) committee note ("The judicial officer may commit the defendant

generally to supervision by a pretrial services unit operating in the county, subject to more detailed requirements of that unit appropriate to the supervision.").

Pretrial release determinations must be considered under specific criteria. (J.A. 1326-1329). *See* Md. Rule 4-216.1(f). Public safety is an important consideration. (J.A. 417-418.) *See* Md. Rule 4-216.1(f)(2)(H).

Under the pretrial-release program, if it has been more than ten days since a referral for a determination of eligibility for the pretrial-release program, a detainee and his or her counsel will promptly receive notification of the same and the detainee may promptly request another review hearing. (J.A. 1326.) The County has no authority to release a person committed to its custody by court order without authorization from the Court. (J.A. 415.)

## Plaintiff Butler's Underlying Pretrial Proceedings

Plaintiff Butler was arrested on October 27, 2021, and charged with second-degree murder, among other offenses. (J.A. 259.)

In the District Court of Maryland, Mr. Butler had an initial appearance on October 27, 2021 (the day of his arrest). (J.A. 259.) He was held without bond. (J.A. 259.) He then had bail-review hearings on October 28 and October 29. (J.A. 259, J.A. 483.)

At the hearing on October 29, 2021, Plaintiff Butler admitted to shooting and killing an acquaintance. (J.A. 1159-1160.) During the hearing, Mr. Butler's defense

attorney asked for some option of pretrial release, but the judge kept Mr. Butler in no-bond status. (J.A. 1160-1161 (the judge confirmed that Mr. Butler was a danger to the community, therefore Mr. Butler remained in "no bond" status and was ineligible for pretrial release).)

After Mr. Butler was indicted, his case was transferred to the circuit court. During a bail-review hearing on February 18, 2022 in response to Mr. Butler's defense attorney's renewed request for pretrial release, Judge Serrette authorized Mr. Butler to be evaluated by DOC for eligibility on pretrial release level 4. (J.A. 658.) The ruling was that *if* DOC agreed to accept and supervise Mr. Butler in DOC's pretrial-release program, *only then* was Mr. Butler to be released from detention. Said another way, Mr. Butler's release from detention was *conditional* on DOC agreeing to supervise Mr. Butler.

DOC's pretrial-release program determined that Mr. Butler was ineligible for pretrial release based on his mental-health status and that he was charged with murder. (J.A. 418.) On October 19, 2023, Mr. Butler pleaded guilty to second-degree murder. (J.A. 1460-1461.) He was sentenced to 40 years of incarceration with all but 15 years suspended. (J.A. 1460-1461.)

### Plaintiff Williams's Underlying Pretrial Proceedings

Mr. Williams was arrested on June 30, 2022, after police found a loaded handgun during a traffic stop. (J.A. 259.) At the time, Mr. Williams was prohibited

from possessing firearms and ammunition by a domestic violence protective order. (J.A. 370, J.A. 296.) He was also on probation for illegal possession of a firearm. (J.A. 370, J.A. 296.)

In the District Court of Maryland, Mr. Williams had an initial appearance on July 1, 2022. (J.A. 370, J.A. 296.) At a bail-review hearing on July 5, 2022, Judge Powell held Mr. Williams without bond, but he also authorized Mr. Williams to be evaluated by DOC for eligibility into DOC's pretrial-release program. (J.A. 52 ¶175.)

At a subsequent bail-review hearing on August 12, 2022, Mr. Williams was kept in no-bond status after it was determined that he was ineligible for DOC's pretrial-release program due to a detainer. (J.A. 903 (Judge: "[Mr. Williams] is currently in a no bond [status], but pretrial had the option. So what are you asking me to do?" Defense Attorney: "[A]t the time of the [previous bail-review] hearing, Judge Powell indicated that if pretrial was no longer an option to file the motion [for another bail review]. Pretrial is no longer an option. . . . [Because] of a detainer. . . ." Judge: "I find that there are no conditions of bond that I could put in place that would provide for the public safety by clear and convincing evidence and/or the witness in this case in particular. And, therefore, I'm going to leave you in a no bond [status] . . . .").)

It is undisputed that DOC never found Mr. Williams eligible for DOC's pretrial-release program. Mr. Williams was released from detention when his motion to reduce bond to personal recognizance was granted. (J.A. 1309.)

## Plaintiff Davis's Underlying Pretrial Proceedings

Plaintiff Davis was arrested on October 8, 2020, and charged with first- and second-degree assault. (J.A. 260.) He was initially held without bond, and then had three bail-review hearings. (J.A. 1189.) At each bail-review hearing Judges Heffron and Cobb Smith authorized pretrial release. (J.A. 757-758, J.A. 761, J.A. 767-768, J.A. 991, J.A. 1010-1011.) The pretrial-release program did not agree to supervise Plaintiff Davis because he never provided a verifiable address. (J.A. 166, J.A. 260, J.A. 759.) He was detained pending his trial. (J.A. 260-261, J.A. 1189.)

## Plaintiff Frazier's Underlying Pretrial Proceedings

Mr. Frazier was arrested on May 28, 2022. (J.A. 256.) He was charged with possession of a loaded firearm in a vehicle, possession of a firearm with a felony conviction, knowingly altering a firearm identification number, and several other offenses. (J.A. 257.) He had five prior convictions at the time of his arrest, including assaulting a police officer and armed robbery. (J.A. 1245, J.A. 1279.) At the time of his arrest, Mr. Frazier had an outstanding warrant in Virginia, and although prohibited from possessing firearms, Mr. Frazier had a firearm hidden in his vehicle.

(J.A. 1259-1261.)  Mr. Frazier was initially held without bond and then had four review hearings.  (J.A. 256-273, J.A. 1212.)

At Mr. Frazier's first bond-review hearing, Judge Bereano authorized pretrial release.  (J.A. 1234.)  At a subsequent bond-review hearing, Judge Clark-Edwards again referred Mr. Frazier to the pretrial-release program (J.A. 1247), but a grand jury indicted him on July 14, 2022, and the Virginia warrant acted as a detainer (J.A. 257).  At a review hearing on August 24, 2022, a circuit court judge ordered that Mr. Frazier be transferred to Virginia, and he was released from Virginia's custody that day and then from Maryland's custody on August 25, 2022.  (J.A. 256-257.)

### Plaintiff Hernandez's Underlying Pretrial Proceedings

Plaintiff Hernandez was arrested on June 22, 2022, and charged with possessing a controlled dangerous substance with intent to distribute, importing a controlled dangerous substance into the State, and using a firearm in the commission of a drug trafficking crime.  (J.A. 257-258.)  He was initially held without bond, and then had two bail-review hearings.  (J.A. 257-258.)  Judge Allen authorized pretrial release, conditioned on the County agreeing to supervise him.  The pretrial-release program did not agree to supervise plaintiff Hernandez because he never provided a verifiable address.  (J.A. 257-258.)  He was released on bond on July 25, 2022.  (J.A. 257-258.)

## Plaintiff D.P.'s Underlying Pretrial Proceedings

Plaintiff D.P. (a minor) was arrested on June 17, 2022, and charged with possession of a firearm on school property, armed robbery, and several other criminal offenses. (J.A. 258.) D.P. was initially held without bond and then had three bail-review hearings. (J.A. 258.) Judge Clark-Edwards presided over a review hearing on June 21, 2022, and Judge Denton presided over a review hearing on June 28, 2022. (J.A. 1189). Bond was set on August 17, 2022, and D.P. was released upon its posting. (J.A. 418.)

## Plaintiff Sharp's Underlying Pretrial Proceedings

Mr. Sharp was arrested on June 11, 2021, and charged with second-degree assault (domestic violence). (J.A. 327, J.A. 1036.) He was held without bond (J.A. 96-97, J.A. 327) and then had several review hearings (J.A. 319-320, J.A. 325, J.A. 329). He was on probation at the time of his arrest. (J.A. 1128.) Two years earlier he had been convicted for possession with intent to distribute and a firearm violation (J.A. 1130-1132, J.A. 1174-1175) and he had two prior robbery convictions, as well as other prior convictions (J.A. 1132, J.A. 1023-1024).

A judge initially declined pretrial release. (J.A. 1174-1177.) Later, on June 24, 2021, Judge Carrington referred Mr. Sharp to the pretrial-release program. (J.A. 1024-1025, J.A. 1033-1034.)

At a review hearing on July 14, 2021, Judge Lewis explained that the pretrial-release program had not agreed to supervise Plaintiff Sharp because he was on supervised release through another jurisdiction, which made him ineligible for pretrial release. (J.A. 1033-1037.) Also, Mr. Sharp presented a danger due to the physically violent nature of his alleged crime. (J.A. 1036.)

### Plaintiff Worthington's Underlying Pretrial Proceedings

Plaintiff Worthington was arrested on December 23, 2021, and charged with first- and second-degree assault. (J.A. 262.) She was initially held without bond. (J.A. 262.) Judge Bielec presided over her review hearing on December 28, 2021, and Ms. Worthington was held in no-bond status with the option for pretrial release. (J.A. 262, J.A. 1059, J.A. 1190.) On February 9, 2022, Judge Heffron presided over Ms. Worthington's review hearing, and she was released on an unsecured bond. (J.A. 262.)

### Plaintiff Laguan-Salinas's Underlying Pretrial Proceedings

Plaintiff Laguan-Salinas was arrested on March 15, 2022, and charged with second-degree assault. (J.A. 261.) While detained, he was served with a second arrest warrant and charged with first-degree assault, use of a firearm during a felony or violent crime, possession of a firearm by a convicted felon, reckless endangerment, and illegal possession of a firearm. (J.A. 261.) He was initially held without bond and then had several review hearings. (J.A. 261.) Pertaining to his

first set of charges, the charges against him were entered *nolle prosequi*, at which time that case was closed. Pertaining to his second set of charges, he was released on December 6, 2022. (J.A. 811.)

## SUMMARY OF ARGUMENT

The district court properly granted judgment on the pleadings to the judge defendants, thereby dismissing plaintiffs' claims.

Because the plaintiffs allege no facts that would establish that the judges relinquished ultimate control over plaintiffs' criminal cases to the County, their claims fail. Judicial referrals of detainees for evaluation by the County for eligibility for the County's pretrial-release program are made in accordance with Maryland Rule 4-216.1(d)(2)(K), which provides that detainees may be committed to the custody or supervision of an organization if, and only if, the organization agrees to supervise the detainee.

As the judges were acting in a judicial capacity when they presided over and decided the conditions of the plaintiffs' pretrial release, the claims against the judges are barred by judicial immunity.

Because permitting a federal declaratory judgment action to go forward concerning pretrial detention would result in unnecessary entanglement between the federal and Maryland courts, declaratory relief is unavailable.

Plaintiffs' claims are barred by the States' Eleventh Amendment immunity, which extends to state court judges who are sued in their official capacity. Plaintiffs' claims do not fall within the *Ex Parte Young* exception to Eleventh Amendment immunity because the relief sought is retrospective in nature, and the judges had no special relation to the alleged violations of federal law.

The district court properly dismissed several plaintiffs' claims for mootness after they were released from detention. The "inherently transitory" exception to mootness in class actions is not applicable because the district court denied plaintiffs' motion for class certification.

Finally, the district court properly quashed subpoenas for deposition testimony of certain judges on grounds of judicial deliberative process privilege.

## ARGUMENT

## I. THE STANDARD OF REVIEW IS DE NOVO.

A dismissal based on judicial immunity presents a purely legal question, which this Court reviews de novo. *Gibson v. Goldston*, 85 F.4th 218, 223 (4th Cir. 2023) (citations omitted).

This Court also reviews de novo the grant of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Bass v. Weinstein Mgmt. Co.*, 56 F.4th 355, 360 (4th Cir. 2022). In doing so, the Court accepts all well-

pleaded allegations as true, and it views the complaint in the light most favorable to the plaintiffs. *Id.*

"This Court affords a district court substantial discretion in managing discovery" and reviews discovery related decisions for abuse of discretion. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

## II. PLAINTIFFS' COMPLAINT DOES NOT ALLEGE FACTS TO ESTABLISH THAT THE JUDGES RELINQUISHED ULTIMATE CONTROL OVER THEIR CRIMINAL CASES TO THE COUNTY DEPARTMENT OF CORRECTIONS.

There is no dispute of material fact concerning the general practice of how judges grant criminal defendants' requests to be considered by DOC for an eligibility determination for possible acceptance into DOC's pretrial-release program. Judicial "referrals" for evaluation by DOC are made in accordance with Maryland Rule 4-216.1(d)(2)(K), which provides that criminal defendants can be committed to the custody or supervision of an organization if, *and only if*, the organization *agrees to supervise* the criminal defendant. If found eligible following an investigation by DOC, then—without additional judicial involvement—DOC will release the criminal defendant pursuant to the judicial referral and supervise the criminal defendant in accordance with the pretrial-release program.

Here, all of plaintiffs' claims against the judges are premised on drawing a legal conclusion that—in following and interpreting Maryland Rule

4-216.1(d)(2)(K)—the judges have allegedly "abdicated their responsibilities and instead referred to unaccountable non-judicial county officials the decision of whether, when, and under what conditions the presumptively innocent person will be released." (J.A. 24.) Such statements are nothing more than desired legal conclusions—not alleged facts.

Plaintiffs fail to allege any facts that would establish that the judges relinquished ultimate control over plaintiffs' criminal cases and the decision whether they could be released to DOC. Instead, as alleged by plaintiffs, judicial referrals/orders/options/authorizations[8] for pretrial release simply authorize criminal defendants found by judges to be suitable for "no bond" status and held in jail to be nonetheless released and supervised under DOC's pretrial-release program *if*, after making an eligibility determination, DOC *agrees* to accept criminal defendants to participate in DOC's pretrial-release program.

Stated differently, even under the facts alleged in the complaint, at all relevant times a judge—and only a judge—maintains authority to (1) grant a criminal defendant's request to be referred for evaluation by DOC for eligibility and possible acceptance into DOC pretrial-release program (the decision whether DOC will

---

[8] These words and phrases may and are used interchangeably by judges. No form language is required either constitutionally, statutorily, or in the Maryland Rules, nor do plaintiffs make such an assertion. Thus, for purposes of this case, any distinction in the word choice is irrelevant.

accept someone is solely within DOC's discretion); (2) to enter an order for a criminal defendant's absolute, final order of release without supervised release conditions; (3) to enter an order releasing a criminal defendant on personal recognizance, (4) to lower a bond, (5) to raise a bond, (6) to keep a criminal defendant in no-bond status; (7) to enter an order released a criminal defendant to a private home-detention monitoring service; and (8) to hear renewed motions for bond review. Obviously, the County—as contrasted with the presiding judges—is without authority to do any of those things.

## III. THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS AGAINST THE JUDGES BASED ON ABSOLUTE JUDICIAL IMMUNITY.

The judges are absolutely immune from this suit. Judicial immunity is a "sweeping form of immunity," *Forrester v. White*, 484 U.S. 219 (1988), and an aged concept that protects the judicial independence "without which no judiciary can be either respectable or useful," *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). It discourages collateral attacks and "free[s] the judicial process of harassment or intimidation." *Forrester*, 484 U.S. at 225-26. It is an "immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Absolute judicial immunity exists "however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff." *Bradley*, 80 U.S. at 347. It is applicable to suits alleging "a deprivation of civil rights brought under 42 U.S.C. § 1983 . . . ." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992).

The core of plaintiffs' allegations against the judges is that, by referring plaintiffs to the pretrial-release program, the judges improperly "outsource[d]" their judicial decision-making, which they claim caused them to be incarcerated when they should have been released. Appellants' Br. 6. Plaintiffs' allegations center on the alleged *consequences* of the judges' acts. Because, however, absolute immunity exists "however injurious in its consequences it may have proved to the plaintiff," *Bradley*, 80 U.S. at 347, only the act itself and not its consequences are relevant to applying judicial immunity. *Stump v. Sparkman,* 435 U.S. 349, 362 (1978); *see also Dawson v. Newman*, 419 F.3d 656 (7th Cir. 2005) (judicial immunity applied even where the alleged mistake resulted in 14 months of incarceration).[9]

In short, as recognized by the district court, plaintiffs' allegations strike at the heart of a judge's judicial functions and most assuredly involve decisions over which

---

[9] For an example of the extraordinary circumstances needed to take a judge's actions outside the sphere of judicial immunity, *see Gibson*, 85 F.4th 218 (4th Cir. 2023), examined by the district court in this case. (J.A. 1526-1528.) In *Gibson*, when the plaintiff's ex-wife petitioned the judge for an order compelling the plaintiff to relinquish assets pursuant to the terms of a property-distribution settlement, the judge ordered the parties to meet at the plaintiff's house. 85 F.4th at 221. Once at the house, the judge herself entered with a "list of unproduced assets in hand" and "directed [the] proceedings" by telling the plaintiff's ex-wife she could take various items." *Id*. at 221-22. This Court rejected the judge's claim of judicial immunity against a suit brought by the ex-husband. *See id*. at 223. Among other things, this Court found that the judge had not only "engaged in a nonjudicial act" (a search of the premises), but in doing so, "the judge clearly exceeded the most common understandings of the proper judicial role." *Id*. at 223.

the judges possess jurisdiction, *i.e.*, presiding over bond-review hearings in which they determine pretrial-release conditions. (J.A. 1528 (citing *Mireles*, 502 U.S. at 12).) The district court correctly found, under these circumstances, that the judges enjoy absolutely immunity not only against any claim for money damages, *but against any suit at all*. (J.A. 1528.)

IV. **THE DISTRICT COURT PROPERLY DISMISSED THE COMPLAINT BECAUSE DECLARATORY RELIEF AGAINST THE JUDGES IS UNAVAILABLE.**

Title 28 U.S.C. § 2201 affords district courts the discretionary authority to grant declaratory relief in cases where doing so "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Chapman v. Clarendon Nat'l Ins. Co.*, 299 F. Supp. 2d 559, 563 (E.D. Va. 2004) (citing *Aetna Cas. & Sur. Co. v. Ind–Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (footnote omitted)). When determining whether to exercise jurisdiction over a declaratory judgment claim, the court should "take into account considerations of federalism, efficiency, and comity." *Id.* (citing *Aetna*, 139 F.3d at 422). In particular, the court should consider: "(1) the strength of the state's interest in having the issues raised decided in state courts; (2) whether the issues raised can be more efficiently resolved in a pending state court action; (3) whether permitting the action to go forward would result in unnecessary 'entanglement' between the

federal and state courts; and (4) whether the federal action is being used merely as a device for 'procedural fencing.'" *Id*. (citing *Aetna*, 139 F.3d at 424).

Here, several factors weigh heavily in favor of the district court exercising its discretion to find that declaratory relief was unavailable. Foremost, permitting a declaratory judgment action to go forward concerning pretrial detention would result in unnecessary entanglement between the federal and Maryland courts. As the district court recognized, serious questions of federal-state relations would arise if a federal court were to take over the restructuring and subsequent monitoring of how Maryland judges and their affiliates engage in pretrial release decision-making. (J.A. 1532.)

Moreover, issues concerning pretrial release can be more efficiently resolved in the underlying state court actions. Claimants are not entitled to declaratory relief where there was an otherwise adequate remedy available to them. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (citations omitted) ("This Court has held that a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.' [] He must seek federal habeas corpus relief (or appropriate state relief) instead."); *see also Weldon v. Kapetan*, No. 1:17-cv-01536-LJO-SKO, 2018 WL 2127060, at *5 (E.D. Cal. May 9, 2018) (citations omitted) ("[P]rospective declaratory relief requests . . . 'should not be sought to correct past wrongs where

other remedies exist.'"). Here, plaintiffs do not allege, for example, that they were ever denied a motion for a renewed bail-review hearing.

Beyond the foregoing, the district court recognized that there is no discernible basis on which a declaratory decree against the judges could be fashioned, the violation of which could sustain a finding that a federal constitutional violation has occurred. (J.A. 1532.) This flows from the judges possessing judicial immunity with respect to plaintiffs' central allegation—*i.e.*, the judges' pretrial release decision-making. As the district court put it, "there would be no declaratory relief to be had." (J.A. 1532.)

## V. PLAINTIFFS' CLAIMS AGAINST THE JUDGES ARE BARRED BY ELEVENTH AMENDMENT IMMUNITY.

The dismissal of the claims against the judges is properly affirmed based on Eleventh Amendment immunity, which bars suit in federal court against States, their agencies, and officials acting in an official capacity, unless Congress abrogates the immunity, or the State waives it. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalfe & Easy, Inc.*, 506 U.S. 139, 144-45 (1993). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Board of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

Eleventh Amendment immunity extends to state court judges when sued in their official capacity. *Puerto Rico Aqueduct & Sewer*, 506 U.S. at 144-45. Accordingly, plaintiffs' suit against the judges is barred by the Eleventh Amendment

because the judges were acting in an official capacity in adjudicating plaintiffs' bail-review hearings.

## VI. PLAINTIFFS' CLAIMS AGAINST THE JUDGES DO NOT FALL WITHIN THE *EX PARTE YOUNG* EXCEPTION TO ELEVENTH AMENDMENT IMMUNITY.

In *Ex Parte Young*, the Supreme Court created a narrow exception to Eleventh Amendment immunity to allow certain claims that seek prospective equitable relief, 209 U.S. 123 (1998). To determine whether this narrow exception applies, a complaint must allege an ongoing violation of federal law and seek prospective relief. *Verizon Md. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citations omitted). Relatedly, there must be an *ongoing* violation of federal law (*id.*) and the complaint must also demonstrate a "special relation" between the state officers sued and the alleged unconstitutional act or statute. *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex Parte Young*, 209 U.S. at 157)). Plaintiffs' claim against the judges does not meet the requirements of the exception.

### A. The Relief Sought by Plaintiffs Is Retrospective.

Numerous courts have found that plaintiffs seeking relief from *previous* judicial decisions do not qualify for relief under the *Ex Parte Young* exception. *See, e.g.*, *Martino v. Campbell*, No. 8:20-CV-694-T-33SPF, 2020 WL 2307559, at *2 (M.D. Fla. May 8, 2020); *Bowling v. McCraw*, No. 4:18-CV-610-ALM-CAN, 2019 WL 2517834, at *5 (E.D. Tex. Mar. 7, 2019), *report and recommendation adopted*

*sub nom. Bowling v. Dahlheimer*, No. 4:18-CV-610, 2019 WL 3712025 (E.D. Tex. Aug. 7, 2019), *reconsideration denied*, 2020 WL 5096569 (E.D. Tex. Aug. 28, 2020). Plaintiffs' request for declaratory relief against the judges is no different. Plaintiffs are, in essence, asking the federal court to look back at the judge' pretrial referrals in criminal matters that are no longer pending. These requests are retrospective because, to the extent that the judges purportedly violated plaintiffs' rights concerning detention, such violation occurred entirely in the past.

There is no *ongoing* violation of federal law here. *See Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998) (holding that the requested remedy of voiding a final state conviction in that case was "quintessentially retrospective"). Plaintiffs' requested relief is a nullification of past judicial decisions, and therefore, it is retrospective.

### B.      There Is No Special Relation to the Alleged Unconstitutional Act.

To qualify under the *Ex Parte Young* exception to Eleventh Amendment immunity, the suit must name as a defendant a state officer who has a duty to enforce the challenged law. *Ex Parte Young*, 209 U.S. at 155-57. "Plaintiffs must demonstrate a 'special relation' between the state officer sued and the allegedly unconstitutional statute to escape the bar of the Eleventh Amendment." *Falwell v. City of Lynchburg, Va.*, 198 F. Supp. 2d 765, 782-83 (W.D. Va. 2002). "This requirement of 'proximity to and responsibility for the challenged state action,' is

not met when an official merely possesses '[g]eneral authority to enforce the laws of the state[.]'" *McBurney*, 616 F.3d at 399 .

Here, the judges were involved in this matter only because they are judges of Maryland's two trial courts with the authority to adjudicate cases brought before them, such as the determination whether a criminal defendant detainee may receive pretrial release and under what conditions precedent. This fails the "special relation" test in an *Ex Parte Young* analysis.

A judge who serves the role of adjudicator does not bear a significant connection to the challenged statute (or, in this case, Maryland Rule and County procedure) to qualify under the *Ex Parte Young* exception to the Eleventh Amendment. *Falwell*, 198 F. Supp. 2d at 785. That the judges presided over plaintiffs' underlying criminal matters does not give them any authority other than the kind of "general enforcement authority" held by any of the judges in Maryland's two trial courts. Likewise, all the judges of the District Court and Maryland's circuit courts hold general authority in bail review matters when jurisdiction is had over a criminal defendant in their respective court. More importantly, all of plaintiffs' underlying criminal actions are resolved and in four plaintiffs' cases the District Court judges lost jurisdiction over plaintiffs once those four plaintiffs' underlying criminal cases were transferred to circuit court (*i.e.*, out of the jurisdiction of the

District Court of Maryland) (Frazier, Butler, Williams, and Laguan-Salinas).  (J.A. 1311.)

## VII.  THE DISTRICT COURT PROPERLY DISMISSED THE CLAIMS OF THE THEN-RELEASED PLAINTIFFS.

During the litigation, the district court dismissed several plaintiffs—all but Butler and Williams—who were released from pretrial detention after the litigation commenced.  (J.A. 1209-1210, J.A. 1334 n.1).  Assuming that it is necessary to review the district court's decision to dismiss the released plaintiffs, the decision can be properly affirmed.  Once the seven plaintiffs were no longer detained within the pretrial system, the issues they presented were moot.  *See Telco Commc'n, Inc. v. Carbaugh*, 885 F.2d 1225, 1230 (4th Cir. 1989) (citations omitted) (a case is moot where there is no longer a live controversy and "the parties lack[ed] a legally cognizable interest in the outcome").

Plaintiffs claim that the dismissed plaintiffs' claims are not moot because they relate back to the time of filing the complaint under the "inherently transitory" exception available in class actions.  Appellants' Br. 38.  The exception, however, does not apply outside of the class action context.  *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 47 (D. D.C. 2021).  Here, not only was this case never certified as a class action, but the district court *denied* plaintiffs' motion for class certification.  (J.A. 1301-1302).  As such, the opinions resulting from the class action suits cited by plaintiffs do not provide support for their contentions.  *See Gerstein v. Pugh*, 420

U.S. 103, 107 (1975) (case certified as class action); *County of Riverside v. McLaughlin*, 500 U.S. 44, 44 (1991) (case certified as class action; explaining "by obtaining class certification, plaintiffs preserved the merits of the controversy"); *Sosna v. Iowa*, 419 U.S. 393, 397 (1975) (case certified as class action).

## VIII. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN QUASHING SUBPOENAS FOR DEPOSITION TESTIMONY OF CERTAIN JUDGES BECAUSE THOSE JUDGES WOULD INVARIABLY HAVE BEEN QUESTIONED ABOUT INFORMATION PROTECTED BY THE JUDICIAL DELIBERATIVE PROCESS PRIVILEGE.

The district court did not abuse its discretion in quashing the plaintiffs' subpoenas seeking to depose certain judges. The district court correctly reasoned that the judges' decisions to refer criminal defendants to DOC are unquestionably judicial functions, involving determinations made by the judges while presiding over proceedings. (J.A. 1521.) In the district court's view, permitting plaintiffs to depose the judges about these decisions would undermine the bedrock principle that judicial decisionmaking must be insulated against compelled inquiry. (J.A. 1521 (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)).) "As the Supreme Court has instructed, although federal courts should 'vindicate and protect federal rights and federal interests,' they must 'do so in ways that will not unduly interfere with the legitimate activities of the States.'" (J.A. 1521 (quoting *Younger v. Harris*, 401 U.S. 37, 44 (1971)).)

Based upon plaintiffs' interrogatories propounded on the judges—which were timely objected to in writing—the judges would invariably be questioned during deposition into matters seeking insight into their mental processes used in formulating decisions about the operation of pretrial release in criminal cases which either were previously before the judges, are currently before the judges, or will soon be before the judges. Such questions would improperly seek information about matters within the scope of the judges' adjudicative duties, all of which is protected by the deliberative privilege. *See, e.g., Fayerweather v. Ritch*, 195 U.S. 276 (1904) and *United States v. Morgan*, 313 U.S. 409 (1941) (generally recognizing the privilege of government employees to keep confidential their deliberative or mental processes in the discharge of their official acts); *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202 (E.D. Pa. 2009) ("[A] judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties") (internal quotation marks and citations omitted); *In re Enforcement of Subpoena*, 463 Mass. 162 (2012) (generally discussing that the judicial deliberative privilege exists to protect judges from attempts by third parties to extract from judges their deliberative mental processes or intra-court deliberative communications).

To put it mildly, deposing a judge is a serious step that is not permitted absent extraordinary circumstances. It has been noted that "[s]hould a judge be vulnerable

to subpoena as to the basis of every action taken by him or her, the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning." *Alford v. Aaron Rents, Inc*., No. 08-CV-683 MJR DGW, 2010 WL 3522804, at * 1 (S.D. Ill. Sept. 2, 2010) (internal quotation marks and citation omitted). Therefore, "courts have refused to issue subpoenas for oral testimony of the decisionmakers as to the basis for their opinions absent extreme and extraordinary circumstances." *Id*. (internal quotation marks and citation omitted).

The district court properly held that the only relevant inquiry that the plaintiffs could plausibly pursue at a judge's deposition would "necessarily probe the [judges'] 'mental processes used in formulating official judgments or the reasons that motivated him [or her] in the performance of his [or her] official duties.'" (J.A. 1516 (quoting *Ciarlone*, 263 F.R.D. at 202).) "The questioning would necessarily plumb the [judges'] decisionmaking with respect to their official duties, in flat contradiction of the proposition that [j]udges 'cannot be subjected' to the scrutiny of oral testimony." (J.A. 1516 (quoting *Morgan*, 313 U.S. at 422).)

# CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Kevin M. Cox
_____

KEVIN M. COX
JAMES O. SPIKER IV
Assistant Attorneys General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
kcox@oag.state.md.us
(410) 576-6389
(410) 576-6393 (facsimile)

Attorneys for Appellees

## REQUEST FOR ORAL ARGUMENT

The Judge Appellees respectfully request that the Court hear oral argument in this appeal.

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 7,514 words, excluding the parts of the brief exempted by Rule 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Kevin M. Cox

_____

Kevin M. Cox

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| ROBERT FRAZIER, et al., | * | |
| *Plaintiffs-Appellants*, | * | |
| v. | * | No. 24-1380 |
| PRINCE GEORGE'S COUNTY, et al., | * | |
|  | * | |
| *Defendants-Appellees*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CERTIFICATE OF SERVICE

I certify that, on this 23rd day of August, 2024, the Brief of Judges LaKeecia Allen, Bryon Bereano, John Bielec, Scott Carrington, Ada Clark-Edwards, Stacey Cobb Smith, Brian Denton, Robert Heffron, Jr., Donnaka Lewis, Gregory Powell (ret.), and Cathy Serrette (ret.) was filed electronically and served by the CM/ECF system on all parties entitled to service.

/s/ Kevin M. Cox

_____

Kevin M. Cox