# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT FRAZIER; ANIBAL HERNANDEZ; D.P., a minor, by and through his next friend and guardian, K.P.; CHRISTOPHER BUTLER; MIRAMBA WILLIAMS; DONNELL DAVIS; LESLIE SHARP; ELMER LAGUAN-SALINAS; and ADRIENNE WORTHINGTON, individually and on behalf of a class of similarly situated persons,

*Plaintiffs-Appellants*,

v.

PRINCE GEORGE'S COUNTY, MARYLAND; CORENNE LABBÉ, in her official capacity as Director of the Prince George's County Department of Corrections; JEFFREY LOGAN, in his official capacity as Division Chief of the Prince George's County Population Management Division; KENNETH GRAY, in his official capacity as Section Chief of the Prince George's County Community Supervision Section; TANYA LAW, in her official capacity as Unit Chief of the Prince George's County Monitoring Services Unit; LAKEECIA ALLEN; BRYON BEREANO; JOHN BIELEC; SCOTT CARRINGTON; ADA CLARK-EDWARDS; STACEY COBB SMITH; BRIAN DENTON; ROBERT HEFFRON, JR.; DONNAKA LEWIS; GREGORY POWELL; and CATHY SERRETTE, in their personal capacities and official capacities as District and Circuit Court Judges for the District and Circuit Courts of Maryland for Prince George's County,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Maryland, Case No. 8:22-cv-01768
Before the Honorable Peter J. Messitte

## REPLY BRIEF OF APPELLANTS

(counsel listed on next page)

William Powell
Elizabeth R. Cruikshank
Mary B. McCord
Seth Wayne
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY LAW
    CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 661-6629
whp25@georgetown.edu

Jeremy D. Cutting
Sumayya Saleh
Jeffrey D. Stein
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW
Suite 800
Washington, D.C. 20009
Phone: (202) 894-6132
cody@civilrightscorps.org

Howard M. Shapiro
Matthew T. Martens
Sonika Data
Britany Riley-Swanbeck
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
Phone: (202) 663-6487
howard.shapiro@wilmerhale.com

Robert L. Boone
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Phone: (212) 230-8800
robert.boone@wilmerhale.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

INTRODUCTION ..........................................................................................................1

ARGUMENT ................................................................................................................2

    I.    Defendants' arguments on judicial and quasi-judicial immunity fail........2

        A.  Prince George's County is ineligible for quasi-judicial immunity. ......2

        B.  Neither Judge Defendants nor the County is immune from declaratory relief, which is available.........................................................8

    II.    Defendants' alternative arguments for affirmance fail. ...........................12

        A.  The Eleventh Amendment does not bar Plaintiffs' claims for prospective declaratory relief. ................................................................12

        B.  The County's argument that Plaintiffs sought equitable relief from the wrong party misconstrues Plaintiffs' claims. ................................15

        C.  This Court should not reach Defendants' merits arguments, which are wrong anyway. ................................................................................17

    III.    The district court erred in dismissing named Plaintiffs who were released after the complaint was filed. ......................................................21

    IV.    The district court erred by granting the motion to quash.......................24

CONCLUSION ...........................................................................................................26

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Andrews v. Daw,*
201 F.3d 521 (4th Cir. 2000) ........................................................................12

*Bostic v. Schaefer,*
760 F.3d 352 (4th Cir. 2014) ................................................................... 14, 15

*Brillhart v. Excess Ins. Co. of Am.,*
316 U.S. 491 (1942) ............................................................................... 10, 11

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993) ......................................................................................4

*Burns v. Reed,*
500 U.S. 478 (1991) ......................................................................................4

*Butz v. Economou,*
438 U.S. 478 (1978) ............................................................................... 6, 7, 8

*Caliste v. Cantrell,*
329 F. Supp. 3d 296 (E.D. La. 2018) ............................................................11

*Centennial Life Ins. Co. v. Poston,*
88 F.3d 255 (4th Cir. 1996) ..........................................................................11

*Chase Brexton Health Servs., Inc. v. Maryland,*
411 F.3d 457 (4th Cir. 2005) ........................................................................11

*Cleavinger v. Saxner,*
474 U.S. 193 (1985) ................................................................................. 6, 7

*Cnty. of Riverside v. McLaughlin,*
500 U.S. 44 (1991) ......................................................................................23

*CSX Transp., Inc. v. Bd. of Pub. Works of State of W.Va.,*
138 F.3d 537 (4th Cir. 1998) ........................................................................14

*Edwards v. City of Goldsboro,*
178 F.3d 231 (4th Cir. 1999) ........................................................................17

*Ex parte Young,*
209 U.S. 123 (1908) ............................................................................... 12, 13

*Foster v. Fisher,*
694 F. App'x 887 (4th Cir. 2017) ............................................................... 3, 4

*Foucha v. Louisiana,*
    504 U.S. 71 (1992) ........................................................................ 17, 18

*Frew ex rel. Frew v. Hawkins,*
    540 U.S. 431 (2004) ............................................................................ 12

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) ............................................................................ 23

*Gibbons v. Gibbs,*
    99 F.4th 211 (4th Cir. 2024) ................................................................ 9

*Gilmore v. Bostic,*
    636 F. Supp. 2d 496 (S.D.W. Va. 2009) .............................................. 5

*Goluszek v. H.P. Smith Paper Co.,*
    No. 93-CV-5329, 1993 WL 358160 (N.D. Ill. Sept. 14, 1993) ............... 5

*Great Am. Ins. Co. v. Gross,*
    468 F.3d 199 (4th Cir. 2006) ........................................................ 10, 11

*Hamdi v. Rumsfeld,*
    542 U.S. 507 (2004) ............................................................................ 20

*Hawkins v. Freeman,*
    195 F.3d 732 (4th Cir. 1999) ........................................................ 20, 21

*Hinton v. District of Columbia,*
    567 F. Supp. 3d 30 (D.D.C. 2021) ................................................ 23, 24

*Hutto v. S.C. Ret. Sys.,*
    773 F.3d 536 (4th Cir. 2014) .............................................................. 14

*Imbler v. Pachtman,*
    424 U.S. 409 (1976) .............................................................................. 4

*In re Grand Jury Proceedings,*
    33 F.3d 342 (4th Cir. 1994) ................................................................ 25

*In re Humphrey,*
    482 P.3d 1008 (Cal. 2021) .................................................................. 21

*In re Mills,*
    287 F. App'x 273 (4th Cir. 2008) ......................................................... 6

*Indus. Servs. Grp., Inc. v. Dobson,*
    68 F.4th 155 (4th Cir. 2023) .............................................................. 14

*Jonathan R. ex rel. Dixon v. Justice,*
    41 F.4th 316 (4th Cir. 2022) .................................................................. 23, 24

*Kincaid v. Vail,*
    969 F.2d 594 (7th Cir. 1992) ........................................................................6

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit,*
    507 U.S. 163 (1993) ........................................................................................3

*Lee-Thomas v. Prince George's Cnty. Pub. Schs.,*
    666 F.3d 244 (4th Cir. 2012) ......................................................................12

*Lopez-Valenzuela v. Arpaio,*
    770 F.3d 772 (9th Cir. 2014) (en banc) ....................................................21

*Lytle v. Griffith,*
    240 F.3d 404 (4th Cir. 2001) ......................................................................14

*McNeil v. Cmty. Prob. Servs., LLC,*
    945 F.3d 991 (6th Cir. 2019) ......................................................................16

*Med. Mut. Ins. Co. of N.C. v. Littaua,*
    35 F.4th 205 (4th Cir. 2022) .......................................................................11

*Mireles v. Waco,*
    502 U.S. 9 (1991) ............................................................................................9

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ........................................................................................3

*Moore v. Urquhart,*
    899 F.3d 1094 (9th Cir. 2018) ................................................................ 3, 16

*Olson v. Brown,*
    594 F.3d 577 (7th Cir. 2010) ......................................................................23

*Ostrzenski v. Seigel,*
    177 F.3d 245 (4th Cir. 1999) .................................................................. 6, 12

*Owens v. Balt. City State's Att'ys Off.,*
    767 F.3d 379 (4th Cir. 2014) ........................................................................3

*Pulliam v. Allen,*
    466 U.S. 522 (1984) .................................................................................. 3, 8

*Reno v. Flores,*
    507 U.S. 292 (1993) ......................................................................................17

*Republic of Paraguay v. Allen,*
    134 F.3d 622 (4th Cir. 1998) ................................................................. 13, 14

*Richardson v. Clarke,*
    52 F.4th 614 (4th Cir. 2022) ................................................................. 10

*S.C. State Bd. of Dentistry v. FTC,*
    455 F.3d 436 (4th Cir. 2006) ................................................................. 3

*State v. Mascareno-Haidle,*
    514 P.3d 454 (N.M. 2022) ................................................................. 21

*Timmerman v. Brown,*
    528 F.2d 811 (4th Cir. 1975) ................................................................. 8

*Traversa v. Ford,*
    718 F. Supp. 2d 639 (D. Md. 2010) ................................................................. 5

*U.S. Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980) ................................................................. 23, 24

*United Capitol Ins. Co. v. Kapiloff,*
    155 F.3d 488 (4th Cir. 1998) ................................................................. 10

*United States v. Salerno,*
    481 U.S. 739 (1987) ................................................................. 17, 18, 20, 21

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) ................................................................. 13

*vonRosenberg v. Lawrence,*
    781 F.3d 731 (4th Cir. 2015) ................................................................. 10, 11

*Ward v. City of Norwalk,*
    640 F. App'x 462 (6th Cir. 2016) ................................................................. 8

*Wheeler v. State,*
    864 A.2d 1058 (Md. Ct. Spec. App. 2005) ................................................................. 21

*Wiley v. Buncombe Cnty.,*
    846 F. Supp. 2d 480 (W.D.N.C. 2012) ................................................................. 5

*Wilson v. Gordon,*
    822 F.3d 934 (6th Cir. 2016) ................................................................. 23

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ................................................................. 10, 11

*Xactware Sols., Inc. v. Buildxact Software Ltd.*,
    95 F.4th 810 (4th Cir. 2024) ........................................................................24

*Younger v. Harris*,
    401 U.S. 37 (1971) .......................................................................................11

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ............................................................................. 18, 20

**Statutes**

42 U.S.C. § 1983 .................................................................................................. 3, 12

Federal Courts Improvement Act of 1996,
    Pub. L. No. 104-317, 110 Stat. 3847....................................................... 3, 8

**Rules**

Md. Rule 4-216.1(b)(1)(B) ........................................................................................20

Md. Rule 4-216.1(b)(3)..............................................................................................20

Md. Rule 4-216.1(d)(2)(K)........................................................................................19

# INTRODUCTION

Defendants' briefs throw so many issues at the wall that it could be easy to lose track of what is actually at the center of this appeal: the district court's erroneous decisions dismissing this case based on inapplicable immunity doctrines. The district court held that quasi-judicial immunity barred Plaintiffs' claims seeking damages, injunctive relief, and declaratory relief against Prince George's County. And it held that judicial immunity barred Plaintiffs' claims seeking only declaratory relief against Judge Defendants. In their opening brief, Plaintiffs explained why the district court's reasoning on each of those points was wrong under settled law.

Defendants' briefs make little attempt to defend the district court's immunity decisions. The County fails entirely to engage with Supreme Court precedent holding that personal immunities are categorically unavailable to municipalities. The County also ignores precedent holding that such immunities do not apply to claims for declaratory or injunctive relief. Judge Defendants likewise offer no response to binding authority establishing that judicial immunity does not apply to declaratory relief.

Perhaps recognizing the weakness of their immunity arguments, Defendants assert several alternative grounds for affirmance. But those arguments are meritless, and several would require this Court to reach merits questions and resolve factual disputes that the district court has not yet addressed. This Court should reverse the district court's erroneous immunity holdings and leave the merits for the district court to consider on a more developed record.

In addition, this Court should correct two of the district court's other errors. First, the Court should reinstate the claims of named Plaintiffs who were released from detention after the filing of the complaint because the inherently transitory mootness exception applies to this putative class action. Second, the Court should reverse the district court's order granting Judge Defendants' motion to quash deposition subpoenas, which rested on errors of law.

## ARGUMENT

### I. Defendants' arguments on judicial and quasi-judicial immunity fail.

Defendants barely defend the district court's reasoning for granting them judicial and quasi-judicial immunity. That is no surprise: Binding precedent establishes that Defendants are not immune from Plaintiffs' claims.

#### A. Prince George's County is ineligible for quasi-judicial immunity.

The County fails to address two categorical reasons it is not entitled to quasi-judicial immunity. First, quasi-judicial immunity is available only to individual officers sued in their personal capacities—not to municipalities sued for unconstitutional policies and practices. Second, quasi-judicial immunity applies only to damages claims; even for officials who can properly invoke its protections, quasi-judicial immunity does not bar injunctive relief. In any event, the County cannot meet its burden to show it acts quasi-judicially when it applies its own policies to determine whether people will be released from detention before trial.

### 1. Quasi-judicial immunity does not protect municipalities and does not apply to injunctive relief.

As Plaintiffs explained (Opening Br. 20-22), the Supreme Court has held that "municipal bodies sued under § 1983 cannot be entitled to an absolute immunity" like quasi-judicial immunity. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 701 (1978); *see also Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993). Simply put, "municipalities, unlike public officials, cannot claim immunity from suit." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014); *see also S.C. State Bd. of Dentistry v. FTC*, 455 F.3d 436, 446 (4th Cir. 2006). The County is therefore categorically ineligible for quasi-judicial immunity.

Further, quasi-judicial immunity does not apply to claims for injunctive relief. As Plaintiffs also explained (Opening Br. 29-30), the Supreme Court held in *Pulliam v. Allen* that common-law judicial immunity does not bar "prospective injunctive relief against a judicial officer acting in her judicial capacity." 466 U.S. 522, 541-42 (1984). Congress later amended Section 1983 to provide greater statutory protection from injunctive relief to "a judicial officer for an act or omission taken in such officer's judicial capacity." *See* Federal Courts Improvement Act of 1996 (FCIA), Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983). But Congress did not extend that protection to quasi-judicial officers, leaving intact the common-law principle recognized in *Pulliam* that they can be sued for injunctive relief. *See Moore v. Urquhart*, 899 F.3d 1094, 1104-05 (9th Cir. 2018); *see also Foster v. Fisher*, 694 F. App'x

887, 889 (4th Cir. 2017) (reaffirming pre-FCIA case law holding that "judicial immunity does not apply to claims for equitable relief").

The County's claim of immunity thus runs headlong into these two well-established propositions: Quasi-judicial immunity does not apply to municipalities and does not apply to claims for injunctive relief. That alone requires reversal of the district court's decision granting quasi-judicial immunity to the County, including from Plaintiffs' claims for injunctive relief. Yet the County cites no authority supporting its contrary position and makes no effort to distinguish the many binding authorities foreclosing that position.

Instead, the County suggests that it is eligible for quasi-judicial immunity because absolute immunities depend on the "nature of the function performed" rather than "the identity of the actor." County Br. 6. But this argument mistakes what is actually a *limit* on the scope of absolute immunity for an *expansion* of such immunity. Under the Supreme Court's functional approach, individual officials who are eligible for absolute immunities can invoke them only for those "functions to which the reasons for absolute immunity apply." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). For example, prosecutors who are generally eligible to claim absolute immunity from damages for their prosecutorial functions cannot do so when engaged in non-prosecutorial functions, such as giving advice to the police or speaking with the press. *See Burns v. Reed*, 500 U.S. 478, 496 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259, 277-78 (1993). None of those cases extended personal immunities to municipalities or other ineligible parties. Because the

County is categorically excluded from claiming absolute immunity, it makes no difference how the County is functioning.

The County cites four district court cases that it claims show that "individuals and entities" sued in their "professional capacity" can receive quasi-judicial immunity "for task[s] performed in further [sic] of a judge's function." County Br. 6. But none of those decisions granted immunity to a municipality. *See Wiley v. Buncombe Cnty.*, 846 F. Supp. 2d 480, 485 (W.D.N.C. 2012) (clerk of court); *Traversa v. Ford*, 718 F. Supp. 2d 639, 646-47 (D. Md. 2010) (employees of state commission sued in their individual capacities); *Gilmore v. Bostic*, 636 F. Supp. 2d 496, 506 (S.D.W. Va. 2009) (state parole board); *Goluszek v. H.P. Smith Paper Co.*, No. 93-CV-5329, 1993 WL 358160, at *2 (N.D. Ill. Sept. 14, 1993) (state supreme court committee). To the extent that some of those decisions granted quasi-judicial immunity rather than sovereign immunity to state entities, they likely erred. Regardless, they provide no support for extending quasi-judicial immunity to municipalities, let alone enough to lead this Court to pioneer such a holding. The County is not quasi-judicially immune.

> ## 2. *Even if quasi-judicial immunity could apply to a municipality, it would not protect the County's alleged actions here.*

Even if the County were eligible for quasi-judicial immunity, it would not be immune for the conduct challenged in the complaint. The district court erred by granting the County the form of quasi-judicial immunity that applies to a judge's subordinates. Opening Br. 23-26. That type of quasi-judicial immunity applies only to

officials who act under the "'explicit direction'" of a judge. *In re Mills*, 287 F. App'x 273, 279 (4th Cir. 2008) (quoting *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992)). Here, Plaintiffs allege that after a judge issues a referral order, the County exercises unfettered discretion as to whether, when, and under what conditions people will be released before trial. Not only are the County's decisions not at the "explicit direction" of a judge, but the County has also repeatedly emphasized its independence from judges, stating that "although the Court can refer people to [the program] . . . , they cannot force us to release somebody in our program." JA1409.

For the first time on appeal, the County appears to invoke (County Br. 6-7) a different type of quasi-judicial immunity that protects officials who carry out duties "functionally comparable" to those of judges. *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). To determine whether an official's duties are similar enough to those of a judge to warrant immunity, courts consider several factors: 1) the need to guard against harassment or intimidation; 2) the presence of safeguards that reduce the need for private damages actions to control unconstitutional conduct; 3) insulation from political influence; 4) the importance of precedent; 5) the adversary nature of the process; and 6) the correctability of error on appeal. *Id.* at 202; *see also Butz*, 438 U.S. at 512; *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999).

The *Cleavinger* factors weigh heavily against immunity. Most significantly, the Pretrial Division's program lacks any procedural safeguards akin to those of a court.

The presence of procedures that guard against erroneous deprivations of liberty "reduce[s] the need for private damages actions as a means of controlling unconstitutional conduct." *Butz*, 438 U.S. at 512. But here, the Pretrial Division's detention decisions take place in private. People who are referred receive no notice. No hearing. No application of evidentiary rules. No opportunity to be heard. No opportunity to present evidence. No recourse for countering inaccurate information. No transcript. No written or oral findings. JA34-35. This opaque decision-making is the opposite of judicial process. *See Butz*, 438 U.S. at 513. And the County's contention that "adequate procedural safeguards" are available from judges during "subsequent bond review hearings," County Br. 14, has no bearing on whether the County itself is functioning judicially when it creates and applies its own pretrial policies.

The other factors confirm the County's policies are non-judicial. No risk of intimidation or political influence justifies extending absolute immunity to a municipality, as opposed to an individual named in their personal capacity. *See Cleavinger*, 474 U.S. at 202. The County's challenged functions take place without any semblance of the adversarial process present when absolute immunity has been granted, like the presence of counsel. Nor can the County Pretrial Division be a neutral and detached hearing body when it is part of the same Department of Corrections that receives funding for every person jailed. *See id.* at 204. The County's decisions are inconsistent and unguided by precedent, and the County gives detainees no opportunity to appeal. In sum, the County's proceedings do not "share[] enough of the characteristics of the

judicial process that those who participate in such adjudication should also be immune from suits for damages." *Butz*, 438 U.S. at 512-13.

### B. Neither Judge Defendants nor the County is immune from declaratory relief, which is available.

Defendants ignore Plaintiffs' argument that judicial and quasi-judicial immunity do not apply to claims for declaratory relief. The County never mentions declaratory relief in its brief. And instead of defending the district court's immunity reasoning, Judge Defendants raise a novel and inapposite abstention argument. This Court should hold that Defendants have not met their burden to establish immunity from declaratory relief, as they have all but conceded. It should also reject Defendants' newly conjured abstention argument, which precedent forecloses.

#### 1. *Judicial and quasi-judicial immunity do not apply to declaratory actions.*

As Plaintiffs explained (Opening Br. 33-36), both the Supreme Court and this Court have held that judicial and quasi-judicial immunity do not apply to claims for declaratory relief. *See Pulliam*, 466 U.S. at 541-42; *Timmerman v. Brown*, 528 F.2d 811, 814 (4th Cir. 1975). Although Congress amended Section 1983 to shield judges (but not other officials) from injunctive relief, the amendment did nothing to curtail declaratory relief. *See* FCIA, 110 Stat. at 3853. Rather, the amended text "now implicitly recognizes that declaratory relief is available against judicial officers." *Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016). This Court thus remains bound by its precedent holding that judicial and quasi-judicial immunity do not apply to declaratory relief. *See*

*Gibbons v. Gibbs*, 99 F.4th 211, 216 (4th Cir. 2024) (noting that, although the intersection of Section 1983 and immunity doctrines "can pose difficult legal questions," "one benefit of stare decisis is we need only answer those questions once").

Defendants say nothing about any of those controlling authorities. They do not even cite *Pulliam*, *Timmerman*, or the amended text of Section 1983, much less substantively respond to Plaintiffs' arguments for why judicial and quasi-judicial immunity do not apply to declaratory relief.

Judge Defendants simply observe that judicial immunity has been described as an "'immunity from suit.'" Judges Br. 23 (quoting *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam)). But Judge Defendants take this stray quote from the Supreme Court's *Mireles* decision badly out of context. Judicial immunity is an "immunity from suit" only with respect to suits *for damages*. *Mireles* did not involve a claim for declaratory relief and held only that "generally, a judge is immune from a suit for money damages." *Mireles*, 502 U.S. at 9. *Mireles* explicitly noted that "a judge is not absolutely immune . . . from a suit for prospective injunctive relief," *id.* at 10 n.1, and the same goes for declaratory relief. The FCIA, enacted after *Mireles*, confirms as much. *Mireles* is no help to Defendants.

### 2. *Brillhart/Wilton abstention does not apply.*

Rather than defend the district court's reasoning with respect to immunity, Judge Defendants contend that declaratory relief is "unavailable" based on a doctrine known as *Brillhart/Wilton* abstention. Judges Br. 25-26; *see also Brillhart v. Excess Ins. Co. of Am.*,

316 U.S. 491 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). This issue was not raised before the district court and is thus forfeited. *See Richardson v. Clarke*, 52 F.4th 614, 625 (4th Cir. 2022). Regardless, *Brillhart/Wilton* is inapplicable.

*Brillhart/Wilton* abstention recognizes that in certain circumstances, federal courts have "'substantial discretion in deciding whether to declare the rights of litigants'" and may exercise that discretion to "abstain from deciding declaratory judgment actions when concurrent state proceedings are under way." *vonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015) (emphasis omitted) (quoting *Wilton*, 515 U.S. at 286). Courts considering whether to abstain under *Brillhart/Wilton* consult several factors, including "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary 'entanglement' between the state and federal courts; and (4) whether the . . . action is merely the product of forum-shopping." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493-94 (4th Cir. 1998) (internal quotation marks omitted).

Here, the Court need not even consider those factors. Plaintiffs in this case seek "both declaratory and nondeclaratory relief," and this Court has held that in such "mixed cases," a court "is 'not at liberty to abstain from entertaining the declaratory claims.'" *vonRosenberg*, 781 F.3d at 734 (quoting *Great Am. Ins. Co. v. Gross*, 468 F.3d 199,

210 (4th Cir. 2006)); *see also Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 466-67 (4th Cir. 2005). Thus ends the inquiry.

*Brillhart/Wilton* abstention is also inapplicable because that doctrine does not apply to ongoing violations of federal constitutional rights. Courts abstaining under *Brillhart/Wilton* generally do so only where the state and federal cases involve nearly identical disputes governed by state law, such as the interpretation of a contract or an insurance policy. *See Brillhart*, 316 U.S. at 492 (reinsurance contract); *Wilton*, 515 U.S. at 279-80 (insurance policy); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (insurance claims); *Med. Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 212 (4th Cir. 2022) (insurance and contract claims). Here, by contrast, Plaintiffs assert federal constitutional claims that are "entirely collateral" to their state-court criminal prosecutions, as the district court correctly concluded when declining to abstain under *Younger v. Harris*, 401 U.S. 37 (1971). JA1196. Indeed, there are no "concurrent" state proceeding to which the abstention factors could even be applied. *vonRosenberg*, 781 F.3d at 734. *Brillhart/Wilton* abstention is therefore "inapplicable to the matter at hand." *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 308 (E.D. La. 2018), *aff'd*, 937 F.3d 525 (5th Cir. 2019).

Finally, if Judge Defendants were correct that declaratory relief is unavailable here, then they would be subject to injunctive relief under the plain text of Section 1983, which permits injunctive relief against judges when "declaratory relief [is] unavailable,"

42 U.S.C. § 1983. *See* Opening Br. 36. In that scenario, Plaintiffs should be permitted to amend their complaint to seek such relief.

## II. Defendants' alternative arguments for affirmance fail.

Perhaps sensing the weakness of their immunity arguments, Defendants raise several additional arguments for affirming the dismissal of Plaintiffs' claims. All are unpersuasive. And several of them would require the Court to resolve factual disputes between the parties. Although this Court "'may affirm the dismissal by the district court on the basis of any ground supported by the record,'" it will decline to do so where the "record ha[s] not been adequately developed." *Andrews v. Daw*, 201 F.3d 521, 526 n.3 (4th Cir. 2000) (quoting *Ostrzenski*, 177 F.3d at 253). The Court should reject Defendants' alternative arguments.

### A. The Eleventh Amendment does not bar Plaintiffs' claims for prospective declaratory relief.

As the district court correctly held, JA1198, sovereign immunity does not shield Judge Defendants from Plaintiffs' claim for prospective declaratory relief because the *Ex parte Young* exception to the Eleventh Amendment applies. 209 U.S. 123 (1908). That exception "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Lee-Thomas v. Prince George's Cnty. Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). The idea is that state officers who violate the Constitution are "stripped of [their] official or representative character and [are] subjected in [their] person to the consequences of

[their] individual conduct." *Ex parte Young*, 209 U.S. at 160. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks and alterations omitted).

Plaintiffs' allegations against Judge Defendants satisfy both of those "straightforward" requirements. Plaintiffs allege that Judge Defendants engage in an ongoing violation of federal law by unconstitutionally delegating their responsibility to make pretrial detention determinations to the County. JA74. And, as the district court held, Plaintiffs seek declaratory relief properly characterized as prospective for "all people who are now *or will be in the future*" detained under authority Judge Defendants unconstitutionally delegate to the County. JA61.

Judge Defendants' argument that Plaintiffs seek retrospective relief mischaracterizes the nature of the requested declaration. Plaintiffs do not seek to "void[] a final state conviction."[1] Judges Br. 29 (citing *Republic of Paraguay v. Allen*, 134 F.3d 622, 628 (4th Cir. 1998)). Instead, they seek a forward-looking declaration that Judge Defendants must comply with their constitutional responsibilities in future

---

[1] Even Plaintiffs' damages claims against the County (which necessarily address past practices) relate only to unlawful pretrial detention, not any proceedings that affect the validity of a final adjudication in a criminal case.

pretrial hearings. JA68. Circuit precedent makes clear that even when a violation began in the past, relief is prospective if it would prevent future constitutional harm. *See Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 165 (4th Cir. 2023) (holding that the *Ex parte Young* exception applies where a plaintiff "seeks relief that would prohibit Defendants from any *additional* or *future* allegedly unlawful actions"); *see also CSX Transp., Inc. v. Bd. of Pub. Works of State of W.Va.*, 138 F.3d 537, 542 (4th Cir. 1998). In other words, Plaintiffs here properly seek "prospective relief against the continuation of the past violation." *Republic of Paraguay*, 134 F.3d at 628.

Judge Defendants also argue that they lack a sufficient connection to their own challenged actions for the *Ex parte Young* exception to apply. That argument is as puzzling as it sounds.

When a plaintiff sues "a state officer to enjoin the enforcement of an unconstitutional law," the officer must have "'*some connection* with the enforcement of the act.'" *Bostic v. Schaefer*, 760 F.3d 352, 371 n.3 (4th Cir. 2014) (emphasis added) (quoting *Lytle v. Griffith*, 240 F.3d 404, 412 (4th Cir. 2001)). This modest requirement prevents, for example, plaintiffs from using *Ex parte Young* to sue a state's governor over every allegedly unconstitutional statute merely "by virtue of his general duty to enforce the laws." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014).

Here, contrary to Judge Defendants' unsupported assertions, Plaintiffs do not challenge the constitutionality of any state statute. Instead, Plaintiffs challenge Judge Defendants' local practice of delegating pretrial detention decisions to the County. No

state law compels that practice, which exists in Prince George's County alone.[2] And it is self-evident that Judge Defendants have "some connection" to their own practices.

### B. The County's argument that Plaintiffs sought equitable relief from the wrong party misconstrues Plaintiffs' claims.

Neither the facts nor the law supports the County's contention that it is the "incorrect subject" of Plaintiffs' request for equitable relief. Plaintiffs seek declaratory and injunctive relief against the County based on its own discretionary actions over which it has full control.

The County is wrong to suggest that an injunction would require it to "disobey a court order." County Br. 25-26. The County could comply with an injunction requiring it to release pretrial detainees who have been denied due process without violating a court order for the simple reason that Judge Defendants have authorized release of those detainees. Plaintiffs plausibly allege—and Defendants do not dispute— that once a judge issues a referral, it is the County that decides whether, when, and on what conditions a person is granted supervised pretrial release without further court involvement. JA32. Defendants' own statements confirm that the County has authority to release members of the putative class. For instance, counsel for the County said that

---

[2] Even if Plaintiffs' claims were misconstrued as challenging a state statute setting standards for pretrial release, Judge Defendants' role in administering that statute would be more than sufficient to satisfy *Ex parte Young. See, e.g., Bostic*, 760 F.3d at 371 n.3 (holding that a court clerk bore the requisite connection to the enforcement of state marriage laws because the clerk was responsible for granting and denying marriage licenses).

a referral order is essentially a statement from a judge to the County that "I have already given you authority to release" a defendant. JA1409. And in this Court, Judge Defendants repeatedly affirm that they "authorize[] pretrial release" of detainees, subject to the County's decision on whether to actually release them. Judges Br. 9; *see also id.* at 12-16. If releasing a person in those circumstances complies with the state court's "commitment order," County Br. 25, then so would release in accordance with an injunction.

In any event, the County is wrong that a federal injunction protecting federal constitutional rights cannot command the County to disobey state court orders. A government actor may be enjoined from continuing an "alleged constitutional violation" even if the official is "simply complying with state mandates that afford no discretion." *McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 995-96 (6th Cir. 2019) (internal quotation marks and alterations omitted). In *McNeil*, for instance, the Sixth Circuit held that a county and its sheriff could be sued for injunctive relief based on their role in enforcing a state judge's allegedly unconstitutional bail requirements. *Id.* The sheriff's claim that he was just following state court orders was unavailing—state court detention orders must yield to a federal court's order to cease constitutional violations. As the Sixth Circuit observed, "there are plenty of cases" in which a federal court enjoins "actors at multiple points in the enforcement chain of the challenged" action. *Id.* at 996; *see also Moore*, 899 F.3d at 1103 (permitting injunction action against sheriff for enforcement of allegedly unconstitutional eviction orders).

### C. This Court should not reach Defendants' merits arguments, which are wrong anyway.

Defendants' arguments about the sufficiency of Plaintiffs' claims depend on facts inconsistent with allegations in the complaint. But because the district court dismissed Plaintiffs' claims on the pleadings, the facts in the complaint must be taken "as true" and "all reasonable factual inferences from those facts" must be drawn in Plaintiffs' favor. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The Court should therefore leave the parties' merits disputes for the district court to resolve as this litigation progresses.

In short, however, Plaintiffs plausibly allege violations of their substantive and procedural due process rights. With respect to substantive due process, a person's "interest in liberty" is "fundamental." *United States v. Salerno*, 481 U.S. 739, 750 (1987). The government may not infringe upon a fundamental liberty interest "at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (citing *Salerno*, 481 U.S. at 746). In the pretrial detention context, that means a person cannot be detained while awaiting trial unless no alternative to detention—including any conditions of release—will reasonably protect the community's safety and ensure that the person will return to court. *See Salerno*, 481 U.S. at 748-49; *Foucha v. Louisiana*, 504 U.S. 71, 80-83 (1992). Plaintiffs plausibly allege facts showing that Defendants violate their substantive due process rights. Even though Judge Defendants have authorized Plaintiffs' release

(and thus have necessarily *not* found that Plaintiffs' detention is necessary), Plaintiffs are nonetheless subjected to prolonged pretrial detention based on the County's arbitrary whims. JA31-39, JA63-64.

With respect to procedural due process, a person must receive "strong procedural protections" whenever their bodily liberty is at stake. *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001). These procedures include a "fullblown adversary hearing" in front of a "neutral decisionmaker," consideration of alternative conditions of release, and recorded "findings of fact" and "statement[s] of reasons for a decision to detain." *Salerno*, 481 U.S. at 750-52; *Foucha*, 504 U.S. at 79. Plaintiffs plausibly allege facts showing that Defendants violate these rights. Judge Defendants delegate detention decisions to the County, and the County then makes that determination without providing adequate—or any—procedural safeguards. *See* JA31-39, JA64-65.

Defendants' contrary arguments are unavailing. Judge Defendants argue that "Plaintiffs fail to allege any facts that would establish that the judges relinquished ultimate control." Judges Br. 21-23. But Plaintiffs' complaint details how Judge Defendants abdicate their responsibility to make pretrial release determinations. JA31-39; *see also* Opening Br. 25. Specifically, Plaintiffs allege that Judge Defendants "frequently provide a 'pretrial option' . . . or a 'pretrial order'" and by doing so "ha[ve] authorized the person's release; but the determination of whether, when, and on what conditions release actually occurs is delegated" to the County. JA31. This "outsource[s] one of the most important decisions in any criminal case—whether a presumptively

innocent person will be jailed awaiting trial—to unelected, non-judicial employees in the County Department of Corrections." *Id.* As noted above, Defendants themselves have repeatedly confirmed those facts. *See, e.g.*, JA1443, JA1454 (Judge Defendants indicating that ultimate release determinations are "solely within DOC's discretion" and that such determinations are made "without additional judicial involvement"); Judges Br. 9 (explaining that judges authorize release before the County decides whether a person will actually be released).

Next, both sets of Defendants incorrectly contend that Maryland Rule 4-216.1 authorizes the County's practices and thus somehow exempts those practices from constitutional scrutiny. *See* Judges Br. 21-22; County Br. 10-17. But Plaintiffs do not challenge the constitutionality of Rule 4-216.1 or whether Defendants comply with that rule. Rather, they challenge only the constitutionality of the pretrial release process in Prince George's County. *See* JA27. Whether the County complies with a state rule has no bearing on whether that process violates the federal Constitution.

Regardless, Rule 4-216.1 does not require the challenged pretrial release process. The rule, in relevant part, permits judges to "commit[] [criminal] defendant[s] to the custody or supervision of a designated person or organization that agrees to supervise the defendant and assist in ensuring the defendant's appearance in court." Md. Rule 4-216.1(d)(2)(K). Nothing in that language—meant for admitting people to halfway houses and mental health facilities—contemplates judges delegating ultimate pretrial

release decision-making authority to supervision agencies. That is precisely what Plaintiffs allege Defendants do here. JA31-38.

If anything, Defendants' actions violate Rule 4-216.1, which prohibits preventive pretrial detention absent a finding that it is absolutely necessary, Md. Rule 4-216.1(b)(1)(B), and instructs judicial officers to impose the least onerous pretrial conditions that will reasonably assure community safety and return to court, Md. Rule 4-216.1(b)(3). Yet people in Prince George's County are routinely subjected to preventive detention for weeks or months even after a judge authorizes their release.

Finally, the County argues that any error by the district court was harmless because Plaintiffs have no substantive due process interest in participating in a pretrial release program. County Br. 17-25. But Plaintiffs do not assert a right to participate in the County's pretrial release program. Rather, Plaintiffs allege that they have a fundamental due process interest in their liberty created not by any County program but by the Constitution itself. *See Salerno*, 481 U.S. at 750; *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas*, 533 U.S. at 690. The County cannot seriously contend that presumptively innocent people who are detained pretrial have no due process rights.

The County's reliance on *Hawkins v. Freeman*, 195 F.3d 732 (4th Cir. 1999), is misplaced for the same reason. The County accuses Plaintiffs of framing the right "to be free from pretrial incarceration" too broadly, citing language from *Hawkins* that cautions against "issue-begging generalizations." County Br. 20. But the plaintiff in *Hawkins* had been convicted of a crime, incarcerated, released on parole, and then

reincarcerated when the parole board realized that his release had been contrary to state law. *Hawkins*, 195 F.3d at 735-37. This Court concluded that mistakenly releasing the plaintiff on parole had not endowed him with a new executively created right to post-conviction liberty. *Id.* at 741-47. Here, the right at issue is not some theoretical right created by executive action but rather the fundamental right to pretrial liberty enshrined in the Constitution, framed no more broadly than in decades of precedent. *See, e.g.*, *Salerno*, 481 U.S. at 749; *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 779-80 (9th Cir. 2014) (en banc); *see also Wheeler v. State*, 864 A.2d 1058, 1062 (Md. Ct. Spec. App. 2005); *State v. Mascareno-Haidle*, 514 P.3d 454, 461-62 (N.M. 2022); *In re Humphrey*, 482 P.3d 1008, 1013 (Cal. 2021). Thus, *Hawkins* does not control.

### III. The district court erred in dismissing named Plaintiffs who were released after the complaint was filed.

Defendants significantly misstate facts and law in arguing that the district court properly dismissed several named Plaintiffs who were released from pretrial detention after the litigation commenced. This litigation has always been a putative class action challenging pretrial detention practices, to which the mootness exception for claims that are inherently transitory applies.

Defendants do not contest that Plaintiffs' claims are inherently transitory. Nor could they. *See* Opening Br. 38-40. Instead, Defendants argue that the inherently transitory exception does not apply because "the district court *denied* plaintiffs' motion for class certification." Judges Br. 31. This argument is premised on an egregious

misrepresentation of the record of this case, which has always been a putative class action. Plaintiffs filed their motion for class certification on the same day they filed their complaint. JA1-2. While that motion was still pending, the district court dismissed the "Released Plaintiffs" solely on the ground that future "changes to the pretrial process" would not affect them. JA1198, JA1201; *see also* JA1204 (holding that "Plaintiffs can fairly invoke the 'inherently transitory' exception").

Later, the district court denied the class certification motion "for administrative purposes," with "leave to re-file" and "without prejudice," "because we try not to have a lot of . . . motions just hanging out there for months." Tr. of Telephonic Proceedings, ECF No. 105, at 38-39. The district court recognized that "this particular motion will be replaced at some point," *id.* at 38, and it issued an order stating that Plaintiffs could later file a renewed class certification motion. JA1301. The district court later ordered Plaintiffs to file their renewed motion by May 15, 2024, shortly after discovery was scheduled to close. JA1359. Although the district court dismissed the case before Plaintiffs could file that motion, the case did not stop being a putative class action just because the district court administratively closed a pending class certification motion for the sake of docket management. Indeed, even in its opinion dismissing this case, the district court referred to the lawsuit as a "putative class action." JA1498.

Defendants imply that a class action must be certified in order to fall within the inherently transitory exception. Judges Br. 31. That is legally incorrect. Rather, the "essence of the exception" is the "uncertainty about whether a claim will remain alive"

during the pendency of the litigation. *Jonathan R. ex rel. Dixon v. Justice*, 41 F.4th 316, 326 (4th Cir. 2022) (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)); *see also, e.g., Wilson v. Gordon*, 822 F.3d 934, 945 (6th Cir. 2016) ("Courts have distilled . . . two requirements for the 'inherently transitory' exception to apply: (1) that the injury be so transitory that it would likely evade review by becoming moot before the district court can rule on class certification, and (2) that it is certain other class members are suffering the injury."). So long as "the constant existence of a class of persons suffering the deprivation" and "with a continuing live interest in the case" is "certain," the exception applies. *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). Thus, the Supreme Court has applied the inherently transitory exception to a case where "the class was not certified until after the named plaintiffs' claims had become moot," *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991), and even to one in which the named plaintiff's claim was mooted after his motion for class certification was denied on the merits, *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 390, 398-99 (1980).

*Hinton v. District of Columbia*, 567 F. Supp. 3d 30 (D.D.C. 2021), the only case Defendants cite on this issue, actually bolsters Plaintiffs' position. The *Hinton* court denied class certification for failure to satisfy Rule 23's numerosity requirement, but it declined to rule on the defendant's mootness challenge. *Id.* at 47. Instead, it gave the plaintiff (or any additional plaintiffs who might join the litigation) leave to supplement the record and file a renewed class certification motion, adding that if the motion were granted, "a certified class might then be able to rely on the inherently transitory

exception to press its constitutional and statutory challenges." *Id.* (citing *Geraghty*, 445 U.S. at 404). That is, the district court *denied* class certification but nonetheless deferred any ruling on mootness "to avoid premature dismissal" in light of the possibility that a future class might be certified and therefore qualify for the mootness exception. *Id.* That reasoning only highlights the district court's error here in dismissing the named Plaintiffs who were released after the lawsuit and class certification motion had been filed, before the court had an opportunity to rule on the pending class certification motion.[3]

## IV. The district court erred by granting the motion to quash.

Judge Defendants fail to respond substantively to Plaintiffs' arguments for reversing the district court's order quashing the deposition subpoenas, instead parroting the district court's faulty reasoning. As a threshold matter, and contrary to Judge Defendants' representations (Judge Br. 21, 32), while a decision on a motion to quash is generally reviewed for abuse of discretion, conclusions of law in such decisions are reviewed de novo. *See Xactware Sols., Inc. v. Buildxact Software Ltd.*, 95 F.4th 810, 813 (4th Cir. 2024).

---

[3] This Court in *Jonathan R.* explained why judicial economy and timely justice both favor this approach: While dismissing named plaintiffs whose claims would otherwise have been mooted out "would not necessarily end the suit" so long as "their counsel could supplement the complaint," requiring ongoing substitution of named plaintiffs "would needlessly slow the resolution of their essential and urgent claims, perhaps several times over." 41 F.4th at 325.

Judge Defendants do not even acknowledge, much less attempt to defend, the numerous legal errors in the district court's reasoning. They do not respond to Plaintiffs' argument that the judicial deliberative process privilege must be applied on a fact-specific basis to particular questions and cannot be used to protect judges from testifying altogether. *See* Opening Br. 43-44. Nor do they contest that the district court failed to hold them to "their 'burden of establishing that [the] privilege' applied" and instead improperly speculated about questions Plaintiffs might conceivably ask. *See id.* at 44 (alteration in original) (quoting *In re Grand Jury Proceedings*, 33 F.3d 342, 352 (4th Cir. 1994)). They reiterate but do not substantiate (Judge Br. 33-34) the district court's conclusion that "any testimony from the Subpoenaed Judges would inevitably probe directly into their deliberative processes in the performance of their official duties," JA1520, without addressing the wide scope of potentially relevant discovery, *see* Opening Br. 44-45. And they do the same for the district court's error in overstating the scope of the privilege as extending beyond individual adjudications to any topics connected to a judge's official duties. *See* Opening Br. 46-47. These are all reversible legal errors that Judge Defendants do not meaningfully dispute.

Instead, Judge Defendants simply cite cases for the proposition that judges generally cannot be made to testify about their mental processes in individual adjudications. *See* Judges Br. 33-34. This is wasted breath on an undisputed point. That legal principle does not negate the impropriety of the district court's categorical conclusion that the judges could not be asked about anything at all. What's more,

Plaintiffs had expressly disclaimed any intent to inquire into the judges' deliberative processes in individual cases. *See* Opening Br. 43-46. Defendants again have no response beyond repeating the district court's conclusions. *See* Judges Br. 34.

## CONCLUSION

The district court erred by dismissing Plaintiffs' claims and quashing their subpoenas. This Court should vacate and remand for further proceedings.

Respectfully submitted this 13th day of September, 2024.

/s/ William Powell
William Powell
Elizabeth R. Cruikshank
Mary B. McCord
Seth Wayne
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY
   LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001

Jeremy D. Cutting
Sumayya Saleh
Jeffrey D. Stein
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009

*Counsel for Plaintiffs-Appellants*

Howard M. Shapiro
Matthew Martens
Sonika Data
Britany Riley-Swanbeck
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037

Robert Boone
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a). This brief contains 6,470 words, excluding the parts of the document exempted by Rule 32(f), and was prepared in fourteen-point Garamond font, a proportionally spaced typeface, using Microsoft Word.

/s/ William Powell
William Powell
Counsel for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ William Powell
William Powell
Counsel for Plaintiffs-Appellants