# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

ROBERT FRAZIER; ANIBAL HERNANDEZ; D.P., a minor, by and through his next friend and guardian, K.P.; CHRISTOPHER BUTLER; MIRAMBA WILLIAMS; DONNELL DAVIS; LESLIE SHARP; ELMER LAGUAN-SALINAS; and ADRIENNE WORTHINGTON, individually and on behalf of a class of similarly situated persons,

*Plaintiffs-Appellants*,

v.

PRINCE GEORGE'S COUNTY, MARYLAND; CORENNE LABBÉ, in her official capacity as Director of the Prince George's County Department of Corrections; JEFFREY LOGAN, in his official capacity as Division Chief of the Prince George's County Population Management Division; KENNETH GRAY, in his official capacity as Section Chief of the Prince George's County Community Supervision Section; TANYA LAW, in her official capacity as Unit Chief of the Prince George's County Monitoring Services Unit; LAKEECIA ALLEN; BRYON BEREANO; JOHN BIELEC; SCOTT CARRINGTON; ADA CLARK-EDWARDS; STACEY COBB SMITH; BRIAN DENTON; ROBERT HEFFRON, JR.; DONNAKA LEWIS; GREGORY POWELL; CATHY SERRETTE, in their personal capacities and official capacities as District and Circuit Court Judges for the District and Circuit Courts of Maryland for Prince George's County,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Maryland, Case No. 8:22-cv-01768
Before the Honorable Peter J. Messitte

## APPELLANTS' PETITION FOR PANEL REHEARING

(counsel listed on next page)

Elizabeth R. Cruikshank
Mary B. McCord
William Powell
Seth Wayne
INSTITUTE FOR CONSTITUTIONAL
    ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY
    LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001
Phone: (202) 661-6629
whp25@georgetown.edu

Jeremy D. Cutting
Jeffrey D. Stein
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW
Suite 800
Washington, D.C. 20009
Phone: (202) 894-6132
cody@civilrightscorps.org

Howard M. Shapiro
Matthew T. Martens
Sonika Data
Britany Riley-Swanbeck
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037
Phone: (202) 663-6487
howard.shapiro@wilmerhale.com

Robert L. Boone
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Phone: (212) 230-8800
robert.boone@wilmerhale.com

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT .................................................................................................................. 1

    I.    Over a Century of Precedent Supports the Conclusion that Plaintiffs Are Adverse to Judge Defendants. ............................................................ 1

        A.   Courts Generally Recognize Claims Against Judges Acting in a Judicial Capacity. ............................................................................................ 2

        B.   The *In re Justices* Rule Applies Only to Suits Challenging the Constitutionality of State Statutes that Judges Merely Interpret. ............. 6

    II.   Other Dispositive Errors Affected the Panel's Decision. ...................... 11

        A.   A Declaratory Judgment Against Judge Defendants Will Redress Plaintiffs' Injury. ......................................................................................... 11

        B.   Alternative Forms of Relief Do Not Affect the Standing Analysis. 13

CONCLUSION .............................................................................................................. 15

CERTIFICATE OF COMPLIANCE ......................................................................... 17

CERTIFICATE OF SERVICE ................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Allen v. DeBello,*
   861 F.3d 433 (3d Cir. 2017) ....................................................................... 6

*Antilles Cement Corp. v. Fortuno,*
   670 F.3d 310 (1st Cir. 2012) ................................................................... 12

*Argen v. Att'y Gen. N.J.,*
   No. 21-2571, 2022 WL 3369109 (3d Cir. Aug. 16, 2022) ......................... 7, 8

*Bauer v. Texas,*
   341 F.3d 352 (5th Cir. 2003) ..................................................................... 6

*Bradley v. Fisher,*
   13 Wall. 335 (1872) .................................................................................. 4

*Brandon E. ex rel. Listenbee v. Reynolds,*
   201 F.3d 194 (3d Cir. 2000) ...................................................................... 6

*Cain v. White,*
   937 F.3d 446 (5th Cir. 2019) .................................................................. 5, 8

*Caliste v. Cantrell,*
   937 F.3d 525 (5th Cir. 2019) ............................................................. 5, 8, 13

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ................................................................................... 3

*Comite de Apoyo a los Trabajadores Agricolas v. U.S. Dep't of Labor,*
   995 F.2d 510 (4th Cir. 1993) ................................................................... 13

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
   637 F.3d 435 (4th Cir. 2011) ................................................................... 11

*Ex parte Virginia,*
   100 U.S. 339 (1879) ................................................................................. 5

*FDA v. Alliance for Hippocratic Med.,*
   602 U.S. 367 (2024) ............................................................................... 11

*Fernandez v. Trias Monge,*
   586 F.2d 848 (1st Cir. 1978) ..................................................................... 5

*Franklin v. Massachusetts,*
   505 U.S. 788 (1992) ........................................................ 12

*Frazier v. Prince George's Cnty.,*
   86 F.4th 537 (4th Cir. 2023) ........................................ 10

*Georgevich v. Strauss,*
   772 F.2d 1078 (3d Cir. 1985) .......................................... 7

*Gerstein v. Pugh,*
   420 U.S. 103 (1975) ................................................... 4, 14

*Grant v. Johnson,*
   15 F.3d 146 (9th Cir. 1994) ............................................. 6

*Heimbach v. Village of Lyons,*
   597 F.2d 344 (2d Cir. 1979) ............................................ 4

*In re Justs. of Sup. Ct. of Puerto Rico,*
   695 F.2d 17 (1st Cir. 1982) ....................................3, 6, 7, 12

*Knick v. Twp. of Scott,*
   588 U.S. 180 (2019) .................................................... 15

*Lindke v. Tomlinson,*
   31 F.4th 487 (6th Cir. 2022) ........................................... 6

*Mendez v. Heller,*
   530 F.2d 457 (2d Cir. 1976) ............................................ 6

*Mitchum v. Foster,*
   407 U.S. 225 (1972) .................................................... 5

*Pakdel v. City & Cnty. of San Francisco,*
   594 U.S. 474 (2021) ................................................... 15

*Patsy v. Bd. of Regents of Fla.,*
   457 U.S. 496 (1982) ................................................... 15

*Pulliam v. Allen,*
   466 U.S. 522 (1984) ................................................2, 3, 4

*Randall v. Brigham,*
   7 Wall. 523 (1868) ..................................................... 4

*Reule v. Jackson,*
   114 F.4th 360 (5th Cir. 2024) .......................................... 7

*Slavin v. Curry,*
574 F.2d 1256 (5th Cir.) ........................................................................... 5

*Steffel v. Thompson,*
415 U.S. 452 (1974) .............................................................................. 12

*Stump v. Sparkman,*
435 U.S. 349 (1978) ............................................................................... 4

*Sup. Ct. of Va. v. Consumers Union of U.S., Inc.,*
446 U.S. 719 (1980) ............................................................................... 4

*United States v. McLeod,*
385 F.2d 734 (5th Cir. 1967) ................................................................... 5

*Utah v. Evans,*
536 U.S. 452 (2002) .......................................................................... 12, 13

*Uzuegbunam v. Preczewski,*
592 U.S. 279 (2021) .............................................................................. 12

*Ward v. City of Norwalk,*
640 F. App'x 462 (6th Cir. 2016) ........................................................... 5

*Whole Woman's Health v. Jackson,*
595 U.S. 30 (2021) ........................................................................... 4, 7, 8

*WXYZ, Inc. v. Hand,*
658 F.2d 420 (6th Cir. 1981) ................................................................. 5

**Statutes**

42 U.S.C. 1983 ........................................................................................ 5

**Rules**

Fed. R. App. P. 40(b)(1) .......................................................................... 1

Md. R. 4-216(e) ....................................................................................... 9

Md. R. 4-216.1(f) ..................................................................................... 9

Plaintiffs respectfully request panel rehearing of the determination that the Court lacks subject-matter jurisdiction over Plaintiffs' claims against Judge Defendants, a question that was not addressed by the district court or in the parties' briefing before oral argument. The panel's decision, issued following limited supplemental briefing and without further argument, includes errors of law and fact as to the nature of Plaintiffs' claims and the remedy sought. *See* Fed. R. App. P. 40(b)(1).

## ARGUMENT

### I. Over a Century of Precedent Supports the Conclusion that Plaintiffs Are Adverse to Judge Defendants.

The common law has traditionally permitted equitable suits against judges acting in a judicial capacity. The exception to that general rule is that a person lacks standing to sue a judge to challenge the constitutionality of a state statute. Courts applying this rule, however, distinguish between judges who merely interpret or apply a statute, who lack the requisite institutional interest in defending the law to give rise to a justiciable controversy, and judges who themselves create, enforce, or administer the challenged practice. The panel erred in extending this principle here, where Plaintiffs challenge a policy Judge Defendants created and administer. Under the panel's rule, which to Plaintiffs' knowledge no other court has adopted, a judge could never be sued for such a judge-made policy or practice.

## A. Courts Generally Recognize Claims Against Judges Acting in a Judicial Capacity.

As the Supreme Court made clear in *Pulliam v. Allen*, 466 U.S. 522 (1984), there is an extensive common-law history of cases permitting suits against judges acting in their judicial capacity. In *Pulliam*, plaintiffs challenged a judge's "practice of imposing bail on persons arrested for nonjailable offenses under [state] law and of incarcerating those persons if they could not meet the bail." *Id.* at 524-25. The district court enjoined the practice and awarded costs and attorney's fees, and this Court affirmed the award, rejecting the judge's argument that it was barred by judicial immunity. *Id.* at 525.

The Supreme Court affirmed. It began by surveying the long English tradition of courts granting prospective relief against judges acting in a judicial capacity, concluding that common-law prerogative writs were available against judges who had "exceeded [their] jurisdiction" or "misconstrued an Act of Parliament." *Id.* at 534. Turning to case law from this country, the Court noted that it had "never … had a rule of absolute judicial immunity from prospective relief," no court of appeals had ever "concluded that immunity bars injunctive relief against a judge," and at least seven circuits had "indicated affirmatively that there is no immunity bar to such relief" in cases seeking to enjoin judges. *Id.* at 536-37. *Pulliam* accordingly recognized the availability of prospective relief against judges acting in a judicial capacity, canvassing an extensive history of such cases both in England and in the United States. And it did so in a case where, as here, plaintiffs sued a judge over a general policy regarding bail determinations

she had created and administered in the course of rendering individual bail adjudications.

It is true that *Pulliam* "express[ed] no opinion as to the propriety of the injunctive relief awarded." Op. 13 (quoting *Pulliam*, 466 U.S. at 542). Because the judge defendant did not appeal the injunction, the Court did not consider "whether respondents had an adequate remedy at law, rendering equitable relief inappropriate, or whether the order itself should have been more narrowly tailored." *Pulliam*, 466 U.S. at 542-43. Nor did it directly "answer the jurisdictional questions" at issue here, Op. 13, because the case concerned judicial immunity rather than standing.

But that does not mean the Court did not consider the judge defendant's susceptibility to injunctive relief—indeed, the bulk of *Pulliam* was dedicated to determining that "prospective injunctive relief against a judicial officer acting in her judicial capacity" was available. *Pulliam*, 466 U.S. at 541-42. And although the Court acknowledged that "Article III … imposes limitations on the availability of injunctive relief against a judge," Op. 13 (quoting *Pulliam*, 466 U.S. at 538 n.18), the only such limitations it identified were in circumstances where "a judge … adjudicates claims under a statute and a litigant … attacks the constitutionality of the statute" and where "claims for injunctive relief against [an] unconstitutional state practice [were] too speculative." *Pulliam*, 466 U.S. at 538 n.18 (first citing *In re Justs. of Sup. Ct. of Puerto Rico*, 695 F.2d 17, 21 (1st Cir. 1982); then citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)). Thus, the Court in *Pulliam* explicitly referenced the narrow circumstances under which

standing principles might preclude suit against a judge; indicated that those circumstances arose in relevant part in contexts in which parties challenged the constitutionality of a statute by suing the adjudicating judge; and did so without indicating that those circumstances applied in a case strikingly like this one. *See id.* As the Supreme Court later recognized in *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021), *Pulliam* suggests that standing principles would not preclude adverseness in a case where a plaintiff sued a judge "to prevent the judge from enforcing a rule of her own creation," *id.* at 42, as Plaintiffs have done here.

*Pulliam* reflects the Supreme Court's development of a carefully circumscribed doctrine of judicial immunity against a background of judicial accountability. Since 1869, the Court has held that judges are immune from damages—though not declaratory or injunctive relief—for adjudicatory acts. *See, e.g.*, *Randall v. Brigham*, 7 Wall. 523 (1868); *Bradley v. Fisher*, 13 Wall. 335 (1872); *Stump v. Sparkman*, 435 U.S. 349 (1978); *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 735 (1980). If there were no standing in these cases, this jurisprudence would have served no purpose.

Accordingly, the Supreme Court and courts of appeals have long allowed claims for prospective relief against judges without suggesting a lack of adverseness. In *Gerstein v. Pugh*, 420 U.S. 103, 107 (1975), for instance, the Supreme Court affirmed an injunction requiring judges to provide timely probable cause hearings. The Second Circuit in *Heimbach v. Village of Lyons*, 597 F.2d 344 (2d Cir. 1979), affirmed an injunction against a judge for signing an allegedly unlawful criminal arrest warrant. And in *Fernandez v.*

*Trias Monge*, 586 F.2d 848 (1st Cir. 1978), the First Circuit permitted a claim to enjoin judges from detaining juveniles without a probable cause hearing. *See also, e.g.*, *United States v. McLeod*, 385 F.2d 734, 738 & n.3, 749-50 (5th Cir. 1967); *Slavin v. Curry*, 574 F.2d 1256, 1264 (5th Cir.), *vacated as moot*, 583 F.2d 779 (5th Cir. 1978); *Caliste v. Cantrell*, 937 F.3d 525, 532 (5th Cir. 2019); *Cain v. White*, 937 F.3d 446, 450 (5th Cir. 2019); *WXYZ, Inc. v. Hand*, 658 F.2d 420, 423 (6th Cir. 1981); *Ward v. City of Norwalk*, 640 F. App'x 462, 468 (6th Cir. 2016).

Likewise, Congress has never understood standing to preclude all relief against judges acting in a judicial capacity. The Civil Rights Act of 1871 was enacted to permit redress against Reconstruction-era judges who violated the Constitution. "The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'" *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1879)). Indeed, the legislation's proponents emphasized that "state courts were being used to harass and injure individuals," in part because the courts "were in league with those who were bent upon abrogation of federally protected rights." *Id.* at 240. And when Congress responded to *Pulliam* by statutorily limiting judicial liability in the 1996 amendment to § 1983, it preserved declaratory relief "against a judicial officer for an act or omission taken in such officer's judicial capacity." 42 U.S.C. 1983.

## B. The *In re Justices* Rule Applies Only to Suits Challenging the Constitutionality of State Statutes that Judges Merely Interpret.

Against this backdrop, the courts of appeals have recognized a circumstance in which plaintiffs lack standing to sue judges: A case or controversy "ordinarily" does not exist "between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute." *In re Justs.*, 695 F.2d at 21. In such cases, "[j]udges sit as arbiters without a personal or institutional stake on either side of the constitutional controversy." *Id.* "Almost invariably, they have played no role in the statute's enactment," and thus "[t]hey are without any interest beyond the merits of the case." *Id.* Accordingly, courts have found that judges lacked the requisite institutional stake and therefore were not proper defendants in attacks on state statutes where the judge defendant's connection was simply as an adjudicator of claims under the challenged law. *See, e.g.*, *Mendez v. Heller*, 530 F.2d 457, 459-60 (2d Cir. 1976); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197-200 (3d Cir. 2000); *Allen v. DeBello*, 861 F.3d 433, 440 (3d Cir. 2017); *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003); *Lindke v. Tomlinson*, 31 F.4th 487, 489 (6th Cir. 2022); *Grant v. Johnson*, 15 F.3d 146, 148 (9th Cir. 1994).

Two conditions cabin the scope of the *In re Justices* rule. In each case applying it to find a lack of the requisite adverseness, plaintiffs were challenging the constitutionality of a state statute. *See, e.g.*, *DeBello*, 861 F.3d at 440 (limiting exception "to a Section 1983 suit challenging the constitutionality of [a] statute"); *Lindke*, 31 F.4th at 495 (limiting exception to "a challenge to a state statute brought under § 1983 against

a state-court judge"). And in each case, the "only function" of the judges being sued "concerning the statutes being challenged [wa]s to act as neutral adjudicators rather than as administrators, enforcers, or advocates." *In re Justs.*, 695 F.2d at 21. *Whole Woman's Health* affirmed both limitations. 595 U.S. at 40 (exception applies where "a judge … adjudicates claims under a statute and a litigant … attacks the constitutionality of the statute").

By contrast, judges may be proper defendants where they have more of a direct connection to a challenged statute than mere adjudication and instead enforce or administer the challenged law. *See, e.g.*, *Georgevich v. Strauss*, 772 F.2d 1078, 1087 (3d Cir. 1985) (permitting claims against judges who were sued "as enforcers of the [challenged] statutes, in other words as administrators of the parole power," in a case where plaintiffs "did not challenge the outcome of any parole decisions already made, but instead sought declaratory and injunctive relief to challenge the manner in which decisions were made"); *Reule v. Jackson*, 114 F.4th 360, 365 (5th Cir. 2024) ("If a judge acts as the enforcer or administrator of a challenged statute, a case or controversy may exist.").

Plaintiffs also have the requisite adverseness against a judge who "enforc[es] a rule of her own creation." *Whole Woman's Health*, 595 U.S. at 42. Thus, the Third Circuit in *Argen v. Attorney General New Jersey.*, No. 21-2571, 2022 WL 3369109 (3d Cir. Aug. 16, 2022), allowed suit by a plaintiff who sought a declaration that a gag order issued against him violated the First Amendment and an injunction prohibiting its enforcement. *Id.* at *2. The court of appeals determined that the family court judge who issued the order

was a proper defendant for the declaratory relief claim because "a judge who makes and enforces a rule of an administrative character" is susceptible to suit under § 1983, and "a judge's crafting of a gag order is administrative in character" and "not purely an exercise of neutral adjudication." *Id.* at *3. In permitting suit against the judge defendant, the court explicitly declined to make it "impossible to bring a federal court challenge to a state court judge's rule of his 'own creation.'" *Id.* at *4 (quoting *Whole Woman's Health*, 595 U.S. at 42).

Neither condition underlying the *In re Justices* rule is met here. As Plaintiffs previously explained, Plaintiffs are not disputing the constitutionality of any state statute, which is the sole circumstance in which courts applying *In re Justices* have found a lack of standing. In particular, they do not challenge the constitutionality of Maryland Rules 4-216 and 4-216.1, which neither compel nor permit Judge Defendants' pretrial referral policy. *See* Reply Br. 14-15, 19-20; Pls.' Supp. Br. 7-8. Declaratory relief is permissible under these circumstances. *See Caliste*, 937 F.3d at 532 (affirming declaratory judgment order against judge acting in his judicial capacity); *Cain*, 937 F.3d at 450 (affirming declaratory judgment order against judges acting in their judicial capacities).

As such, even if Plaintiffs did challenge adjudicatory conduct, they would still have the requisite adverseness. But, in fact, Plaintiffs challenge Judge Defendants' *refusal* to adjudicate through their policy of delegating release decisions to the County—a policy Judge Defendants created, enforce, and administer. As set forth in the complaint, Plaintiffs' core claim against Judge Defendants is that, "instead of making the findings

constitutionally required to justify detention or finding that the State cannot meet its burden to justify detention and releasing on recognizance or conditions, the Judge Defendants follow a policy and practice of abdicating their legal duties to decide whether a person will be released pretrial, and if so when and on what conditions, to the non-judicial officers in the Pretrial Division." JA59; *see also, e.g.*, JA23 ("[I]n each case, the judge delegated the decision about whether and when release would actually occur, and under what conditions, to unaccountable county officials in the Pretrial Division."); JA31 (describing Judge Defendants as "functionally delegating to the Division authority to determine whether the person will be released"). In delegating this decisionmaking authority to the County *rather than* adjudicating bail determinations themselves, "Judge Defendants abdicate their constitutional duties." JA67. Plaintiffs have characterized this delegation as a "policy and practice" followed by judges in Prince George's County rather than a series of one-off decisions arising in individual adjudications. JA59.

The broader context surrounding pretrial referrals supports the conclusion that Judge Defendants are not adjudicating pretrial release issues but rather are outsourcing the decision altogether. For instance, the County actually purports to apply many of the criteria for evaluating eligibility for pretrial release that Judge Defendants are required by state law to consider. *See* Md. R. 4-216(e), 216.1(f); *see also* JA35-36; County Br. 15 ("As to the criteria used to evaluate criminal defendants referred to the County's Pretrial Services Unit, the factors utilized in evaluating are based on Rule 4-216.1(f)(2)."). This

lends credence to the notion that Judge Defendants are actually handing over responsibility for these adjudications to the County rather than applying these criteria themselves. Moreover, if the County refuses to release a detained person after conducting its own evaluation of eligibility for release, it is not uncommon for Judge Defendants to reapply the eligibility criteria on a subsequent bail review hearing and craft their own alternative conditions for release. *See, e.g.*, JA614, JA80-81, JA739-740. These alternative conditions of release would not be possible if Judge Defendants were adjudicating Plaintiffs' eligibility for release in the first instance and determining that only release under supervision by the County could satisfy the public interest.

In short, Plaintiffs contend that Judge Defendants have created and exclusively administer a general policy of impermissibly delegating their adjudicatory responsibility for making pretrial release determinations to the County, and that it is the application of this general policy to Plaintiffs' individual cases that has caused them injury. The panel concluded to the contrary that, in issuing pretrial referrals, Judge Defendants are in fact determining that each person "may be released only if the Pretrial Division agrees to supervise them" and therefore "adjudicating that person's request for bail." Op. 8. But this contradicts the panel's prior statement that "how the [pretrial referral] program operates"—including "what the 'condition' of pretrial release by Pretrial Services on a commitment order means"—is a "critical factual question" in this case. *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 545-46 (4th Cir. 2023). The panel erred in resolving this factual question against Plaintiffs at the motion-to-dismiss stage rather than drawing

"all reasonable inferences" in Plaintiffs' favor. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

The panel's alternative conclusion was that Plaintiffs lack standing against Judge Defendants because "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." Op. 10-11 (quoting *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024)). But Plaintiffs do not raise a generalized grievance with a government policy. They allege that Judge Defendants applied their policy to Plaintiffs' individual cases, thereby violating Plaintiffs' due process right to have such eligibility determinations made by a neutral arbiter rather than a representative of the jail.

Because Plaintiffs challenge the application of Judge Defendants' pretrial referral policy to their individual cases, the *In re Justices* rule does not apply. In reaching the opposite conclusion, the panel effectively eliminated the distinctions drawn by *In re Justices* and its progeny between various forms of judicial conduct. In the process, it foreclosed the possibility of obtaining declaratory relief against judges who injure people with their own policies while acting in a judicial capacity.

## II. Other Dispositive Errors Affected the Panel's Decision.

### A. A Declaratory Judgment Against Judge Defendants Will Redress Plaintiffs' Injury.

The panel erroneously concluded Plaintiffs have "redressability problems" that preclude suit against Judge Defendants. Op. 11. But an injury may be "redressed by

declaratory relief ... alone." *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992) (plurality opinion), adopted by *Utah v. Evans*, 536 U.S. 452, 460-61 (2002); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) (holding that "a request for nominal damages satisfies the redressability element of standing" and implying the same would be true of declaratory relief); *Steffel v. Thompson*, 415 U.S. 452, 471 (1974) (declaratory relief not limited to cases where an injunction would be appropriate). "The persuasive force of [a declaratory] judgment may lead state prosecutors, courts, and legislators to reconsider their respective responsibilities toward the statute." *Steffel*, 415 U.S. at 470. *See also, e.g.*, *Antilles Cement Corp. v. Fortuno*, 670 F.3d 310, 318 (1st Cir. 2012) ("Antilles need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm.").

Plaintiffs contend that the pretrial referral scheme violates their due process rights in part because Judge Defendants delegate the decision of whether, when, and under what conditions a person should be released from pretrial detention to the County, contrary to constitutional and statutory requirements. Should a court conclude that this scheme is unconstitutional and issue a declaratory judgment to that effect, Judge Defendants will presumably conform their behavior to the declaratory judgment and begin making these decisions themselves, remedying Plaintiffs' injuries. *Cf., e.g.*, *In re Justs.*, 695 F.2d at 23 ("[I]t is ordinarily presumed that judges will comply with a declaration of a statute's unconstitutionality without further compulsion."). Indeed, because Judge Defendants are the ones who issue pretrial referrals to begin with, a

declaratory judgment against them would offer different relief from an injunction against the County alone.

*Comite de Apoyo a los Trabajadores Agricolas v. U.S. Department of Labor*, 995 F.2d 510, 513 (4th Cir. 1993), is not to the contrary. *See* Op. 11. There, plaintiffs sued the Department of Labor, alleging that it permitted their employer to pay improperly calculated wages and seeking a declaration invalidating the methodology. *Comite de Apoyo*, 995 F.2d at 513. This Court concluded that redressability was not met because the employer was not a party and any declaratory judgment could not require it to provide backpay. *Id.* at 513-14. It was in that context that this Court explained that "[b]y itself, a declaratory judgment cannot be the redress that satisfies the third standing prong." *Id.* at 513. Instead, "plaintiffs must identify some further concrete relief that will likely result from the declaratory judgment." *Id.* Plaintiffs here have done just that: The concrete relief they seek is for Judge Defendants to stop outsourcing important pretrial release determinations, which is likely to occur if a declaratory judgment should issue. Declaratory relief would therefore significantly "increase … the likelihood that the plaintiff would obtain relief." *Evans*, 536 U.S. at 464; *see also Caliste*, 937 F.3d at 532 (affirming relief against judge where "[t]hat declaratory relief was all plaintiffs sought").

## B. Alternative Forms of Relief Do Not Affect the Standing Analysis.

The panel concluded that Plaintiffs could cure their injury through alternative remedies. Op. 8-9. But neither an appeal nor habeas relief could remedy Plaintiffs' injury or forestall injury to future class members. At most, habeas could eventually result in

the release of an individual Plaintiff after they had experienced weeks, if not months, of illegal jailing. *Cf., e.g., Gerstein*, 420 U.S. at 107 n.6 (permitting class action challenging pretrial detention practices against judge defendants and distinguishing relief sought from "cases for which habeas corpus is the exclusive remedy"). And it would not eliminate the system of pretrial referrals or remedy the fact that the wrong actor—a representative of the jail rather than a neutral arbiter—had been permitted to decide whether the Plaintiff was to be detained.

Moreover, although individual denials of pretrial release are cognizable in habeas, Plaintiffs allege that in practice neither direct appeal nor habeas is actually available to individuals detained under a pretrial referral. When detained individuals move for bail reconsideration, "[j]udges regularly decline to hear" these motions if they "have been filed by persons for whom the Pretrial Division is delaying or denying release." JA38. They "typically require defense counsel to show 'changed circumstances' in order to entertain a motion for bail reconsideration" and "do not accept the Pretrial Division's delay or refusal to release the referred person as a qualifying changed circumstance." JA38-39. Meanwhile, "[w]hen defense attorneys have filed *habeas corpus* petitions seeking to have their client's pretrial referrals reviewed by a higher court, they are usually sent back to the bail-setting court for a *de novo* bail review hearing" rather than having their habeas claims adjudicated on the merits. JA39; *see also* JA151. In either event, even when "follow-up bail review hearings are granted," "judges typically do not inquire into the

Pretrial Division's delay or refusal to release the person" and "usually accept the Pretrial Division's explanations without question." JA38.

Finally, a theoretically available state remedy has no bearing on Judge Defendants' susceptibility to suit. The "settled rule" is that "exhaustion of state remedies is *not* a prerequisite" to a § 1983 suit. *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474, 479 (2021) (quoting *Knick v. Twp. of Scott*, 588 U.S. 180, 185 (2019)); *see also, e.g.*, *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 500 (1982). Finding that the existence of an alternative form of relief eliminated standing would amount to an exhaustion requirement, which the Supreme Court has consistently rejected.

## CONCLUSION

This Court should grant panel rehearing.

Respectfully submitted this 2nd day of July, 2025.

/s/ *Elizabeth R. Cruikshank*

Elizabeth R. Cruikshank
Mary B. McCord
William Powell
Seth Wayne
INSTITUTE FOR CONSTITUTIONAL
   ADVOCACY AND PROTECTION
GEORGETOWN UNIVERSITY
   LAW CENTER
600 New Jersey Ave. NW
Washington, D.C. 20001

Jeremy D. Cutting
Jeffrey D. Stein
CIVIL RIGHTS CORPS
1601 Connecticut Ave. NW, Suite 800
Washington, D.C. 20009

*Counsel for Plaintiffs-Appellants*

Howard M. Shapiro
Matthew Martens
Sonika Data
Britany Riley-Swanbeck
WILMER CUTLER PICKERING HALE AND
   DORR LLP
2100 Pennsylvania Ave. NW
Washington, D.C. 20037

Robert Boone
Thomas Bredar
WILMER CUTLER PICKERING HALE AND
   DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a). This brief contains 3846 words, excluding the parts of the document exempted by Rule 32(f), and was prepared in fourteen-point Garamond font, a proportionally spaced typeface, using Microsoft Word.

/s/ *Elizabeth R. Cruikshank*
Elizabeth R. Cruikshank
Counsel for Plaintiffs-Appellants

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Elizabeth R. Cruikshank*
Elizabeth R. Cruikshank
Counsel for Plaintiffs-Appellants